















AXR    5/19/06    8:46
3:04-CV-02459   TACKETT V. IMPERIAL COUNTY OF
*47*
*P/A.*

1   J. Scott Tiedemann, Bar No. 180456
stiedemann@lcwlegal.com
2   Mark H. Meyerhoff, Bar No. 180414
mmeyerhoff@lcwlegal.com
3   Laura J. Kalty, Bar No. 199520
lkalty@lcwlegal.com
4   LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
5   6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045
6   Telephone:  (310) 981-2000
Facsimile:   (310) 337-0837
7

8   Attorneys for Defendants
COUNTY OF IMPERIAL and IMPERIAL
9   COUNTY SHERIFF'S DEPARTMENT

FILED

06 MAY 18 AM 11: 50

CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

BY: _____ DEPUTY

10            UNITED STATES DISTRICT COURT

11          SOUTHERN DISTRICT OF CALIFORNIA

12

13   JUSTIN TACKETT, an individual,

14           Plaintiff,

15      v.

16   COUNTY OF IMPERIAL, a
governmental entity, and IMPERIAL
17   COUNTY SHERIFF'S
DEPARTMENT, a governmental
18   entity doing business in the State of
California; and, DOES 1 through 50,
19   inclusive,

20          Defendants.

Case No.:  04cv2459 J (NAJ)

Assigned for All Purposes To:
Judge Napoleon Jones
Courtroom 12

Complaint Filed:  December 9, 2004

**MEMORANDUM OF POINTS AND
AUTHORITIES IN SUPPORT OF
MOTION FOR SUMMARY
JUDGMENT, OR, IN THE
ALTERNATIVE, PARTIAL
SUMMARY JUDGMENT**

**[FRCP Rule 56]**

Date:  June 26, 2006
Time:  10:30 a.m.
Dept:  12

[Filed concurrently with Defendants'
Notice of Motion and Motion for
Summary Judgment or Partial Summary
Judgment; Appendix of Evidentiary
Support; [Proposed] Judgment; and
[Proposed] Order

21

22

23

24

25

26

27

28

189379.13 IM040-015




Memorandum Of Points And Authorities In Support Of
Motion For Summary Judgment  04CV2459 J (NAJ)

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................1

II.  STATEMENT OF FACTS ......................................................2

     A.   Overview of Plaintiff's Employment .......................................2

     B.   Plaintiff is Suspended For Two Days For Damaging Patrol
          Vehicles .........................................................................3

     C.   Plaintiff Participates In Marijuana Seizure ............................3

     D.   Plaintiff Is Suspended Five Days For A Traffic Accident ....................4

     E.   Plaintiff Is Suspended For Two Days For His Conduct During
          His Arrest Of Randall Lackey. ...............................................5

          1.   The Lackey Incident....................................................5

          2.   The Internal Affairs Investigation.................................5

          3.   The Suspension ...........................................................6

          4.   The District Attorney Rejects Charges Against Mr.
               Lackey .....................................................................6

     F.   Plaintiff Is Suspended For 30 Days For Misconduct Relating To
          A Probation Search...............................................................6

          1.   The Probation Search Incident.....................................6

          2.   The Department Conducts An Investigation.....................7

          3.   The Suspension ...........................................................7

     G.   Plaintiff's Discharge is Proposed Based Upon Plaintiff's
          Misconduct In Two Separate Incidents...................................8

          1.   The Bertussi Incident ..................................................8

          2.   The Macias Incident.....................................................9

     H.   Plaintiff Resigns From The Department .................................. 10

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# TABLE OF CONTENTS
## (continued)

Page

III.  ARGUMENT ............................................................................. 11

  A.  Legal Standard On Summary Judgment ............................................. 11

  B.  Plaintiff's Claims Are Procedurally Defective .................................... 12

    1.  Plaintiff's First, Second And Sixth Claims for Relief Are
        Time-Barred Under the California Tort Claims Act ............... 12

    2.  Plaintiff's Sixth Claim Is Also Barred Because Plaintiff's
        Tort Claim Does Not Include Any Emotional Distress
        Claim ............................................................................... 13

    3.  Plaintiff's Fourth And Fifth Claims Are Also Time Barred .... 13

  C.  Plaintiff's Claims Are Substantively Defective ................................. 14

    1.  Plaintiff Cannot State A Viable Claim For Retaliation .......... 14

      a.  Plaintiff's Allegations .................................................. 14

      b.  Plaintiff Fails To Establish Even A Prima Facie
          Case Of Retaliation Under California Labor Code
          §1102.5 ...................................................................... 15

        (1)  Plaintiff did not engage in any "protected
             activity" under Labor Code §1102.5 .................. 16

        (2)  Plaintiff Cannot Prove A Casual Nexus .............. 17

      c.  Plaintiff's Assertions Lie Outside Of Section
          1102.5 ........................................................................ 17

    2.  Defendants Had Established A Legitimate, Non-
        Retaliatory Basis For Disciplining Plaintiff ............................. 19

  D.  Plaintiff's Third Claim Fails To Raise A Triable Issue Of Fact ........ 19

    1.  First Amendment ............................................................... 19

      a.  Plaintiff Cannot Establish Any Adverse Action ............ 19

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# TABLE OF CONTENTS
## (continued)

| | | | Page |
|---|---|---|---|
| | b. | Plaintiff Cannot Establish A Causal Connection | 20 |
| | 2. | Fourth Amendment | 20 |
| | 3. | Sixth Amendment | 21 |
| | 4. | Seventh Amendment | 21 |
| | 5. | Eighth Amendment | 21 |
| | 6. | Thirteenth Amendment | 22 |
| E. | | Plaintiff's Fourth And Fifth Claims For Relief Fail To Raise Triable Issues Of Fact | 22 |
| | 1. | Plaintiff's Allegations | 22 |
| | 2. | Plaintiff Admits That Race Was Not A Factor In Any "Preferential Assignments" He Sought During His Employment | 22 |
| F. | | Plaintiff's Sixth Claim For Relief Fails To Raise A Triable Issue Of Fact | 24 |
| IV. | | CONCLUSION | 25 |

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# TABLE OF AUTHORITIES

Page

## Federal Cases

*Arpin v. Santa Clara Valley Trans. Agency,*
261 F.3d 912 (9th Cir.2001) .................................................. 11

*Bergene v. Salt River Project Agricultural Improvement & Power Dist.,*
272 F.3d 1136 (9th Cir. 2001) ............................................... 11

*Coughlan v. American Seafoods Co., LLC,*
413 F.3d 1090 (9th Cir. 2005) ............................................... 17

*Hernandez v. Spacelabs Medical Inc.,*
343 F.3d 1107 (9th Cir. 2003) ............................................... 11

*Ingraham v. Wright,*
430 U.S. 651 (1977) ........................................................... 22

*Karam v. City of Burbank,*
352 F.3d 1188 (9th Cir. 2003) ............................................... 12

*Lappin v. Laidlaw Transit Inc.,*
179 F.Supp.2d 1111 (N.D.Cal.2001) ....................................... 25

*Love v. v. Motion Industries, Inc.,*
309 F.Supp.2d 1128 (N.D. Cal. 2003) ...................................... 16

*McDonnell Douglas Corp. v. Green,*
411 U.S. 792 (1973) ........................................................... 11

*Neveu v. City of Fresno,*
392 F.Supp.2d 1159 (E.D. Cal. 2005) ...................................... 13

*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.,*
210 F.3d 1099 (9th Cir. 2000) ............................................... 11

*Nunez v. City of Los Angeles,*
147 F.3d 867 (9th Cir. 1998) ................................................. 20

*Patel v. Midland Mem. Hosp. & Med. Ctr.,*
298 F.3d 333 (5th Cir. 2002) ................................................. 11

*Pollock v. Williams,*
322 U.S. 4 (1944) .............................................................. 22

*Raad v. Fairbanks N. Star Borough Sch. Dist.,*
323 F.3d 1185 (9th Cir.2003) ................................................ 17

*Roe v. City of San Diego,* 356 F.3d 1108 (9th Cir. 2004.) .................... 20

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

- iv -

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Simo v. Union of Needletrades,*
  322 F.3d 602 (9th Cir.2003) .................................................................. 25

*Sischo-Nownejad v. Merced Community College Dist.,*
  934 F.2d 1104 (9th Cir. 2001) .............................................................. 23

*Stiesberg v. State of California,*
  80 F.3d 353 (9th Cir. 1996) .................................................................. 18

*United States v. Miller,*
  425 US. 435 (1976) ............................................................................... 21

*Waters v. Churchill,*
  511 U.S. 661 (1994) .............................................................................. 20

**Federal Statutes**

42 U.S.C. §1983 ............................................................................ 11, 19, 20

42 U.S.C. §2000e-5(e)(2) ...................................................................... 14

FRCP 56(c) ............................................................................................ 11

Title VII of the Civil Rights Act of 1964 ........................................ 11, 14

**State Cases**

*Akers v. County of San Diego,*
  95 Cal.App.4th 1441 ............................................................................ 19

*Ard v. County of Contra Costa,*
  93 Cal.App.4th 339 (2001) ................................................................... 12

*Cole v. Fair Oaks Fire Protection District,*
  43 Cal.3d 148 (1987) ............................................................................ 25

*Fall River Joint Unified School Dist. v. Superior Court,*
  206 Cal.App.3d 431 (1988) .................................................................. 13

*McBride v. Boughton,*
  123 Cal.App.4th 379 (2004) ................................................................. 12

*Molko v. Holy Spirit Ass'n.,*
  46 Cal.3d 1092 (1986) .......................................................................... 24

*Palmer v. Regents of University of California,*
  107 Cal.App.4th 899 (2003) ................................................................. 12

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Memorandum Of Points And Authorities In Support Of
Motion For Summary Judgment   04CV2459 J (NAJ)

# TABLE OF AUTHORITIES
## (continued)

Page

*Patten v. Grant Joint Union High School Dist.,*
  134 Cal.App.4th 1378 (2005) ................................................................ 15

*Shoemaker v. Myers,*
  2 Cal.App.4th 1407, 1425-1426 (1992) ................................................ 12

**State Statutes**

California Labor Code Section 1102 ....................................................... 17

California Labor Code Section 1102.5 ................................... 12, 15, 17, 18

California Labor Code Section 1102.5(b) .......................................... 15, 16

California Labor Code Section 1102.5(c) ............................................... 15

Gov. Code §911.2 .................................................................................. 12

Government Code §12900 ...................................................................... 22

Government Code §12960 ...................................................................... 13

Government Code §900 .......................................................................... 12

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

# I.   **INTRODUCTION**

Plaintiff Justin Tackett ("Plaintiff") alleges that Defendants County of Imperial  and Imperial County Sheriff's Department ("Department") retaliated and discriminated against him, deprived him of his constitutional rights (including enslaving him) and exposed him to emotional distress during his employment with the County as a Deputy Sheriff.  Plaintiff has no evidence to support his speculative assertions.  Rather, Plaintiff ***resigned*** from the County after engaging in repeated acts of misconduct and violation of rules and regulations, including, but not limited to, entering and searching residences without a warrant or probable cause, ignoring supervisory orders, lying during a Department investigation and compromising officer safety.   These disciplinary actions are supported by investigations conducted by the Department and/or an independent investigator.  In addition, the evidence shows that no Department employee took any action against Plaintiff on the basis of his race or because Plaintiff engaged in protected activity, as evidenced by declarations and evidence submitted by County employees and third parties.

Against this backdrop, Plaintiff offers nothing more than speculative theories asserting that he was disciplined as a result of retaliation and discrimination.  At the outset, Plaintiff's claims are time barred by the applicable statutes of limitations and, for this reason alone, summary judgment is proper.

In addition, Plaintiff's assertions are not supported by any admissible evidence.  Specifically, Plaintiff alleges retaliation in violation of Labor Code §1102.5, but fails to demonstrate that he has engaged in any protected activity under that statute, or that he was disciplined as a result of engaging in any protected activity.  Rather, Plaintiff's discipline was legitimate, well-founded, and based upon evidence of wrongdoing and misconduct as determined by thorough investigations.

Plaintiff further alleges that he was not given certain assignments within the Department due to his race (Caucasian).  However, Plaintiff cannot identify any evidence to establish this claim and admits race was not a factor in his failure to

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA  90045

1   receive any assignment.  In addition, Plaintiff contends Defendants deprived him of

2   a multitude of constitutional rights (including the sixth, eighth and thirteenth

3   amendments), but cannot begin to produce evidence to support his assertions.

4   Plaintiff also alleges emotional distress, but cannot establish any "outrageous"

5   conduct, or that he was exposed to any action constituting emotional distress.

## II.   STATEMENT OF FACTS

7        Plaintiff contends that during his employment, Defendants retaliated against

8   him for uncovering "criminal activity" of individuals with connections to officials

9   within the County.  (Ex. 1, FAC, ¶¶13, 16, 19, 20, 25.)[1]  Plaintiff also asserts that

10  the County's District Attorney's Office was influenced to not file charges against

11  these "connected" individuals.  (Ex. 1, FAC, ¶¶18, 23.)  As set forth below, the

12  factual evidence refutes Plaintiff's speculative theories.

### A.   Overview of Plaintiff's Employment.

14       In August, 1999, the County hired Plaintiff as a corrections officer in the

15  County jail.  (Ex. 2, Tackett Depo., 10:1-7.)[2]  On or about January 24, 2000, Sheriff

16  Harold Carter, as head of the County's Sheriff's Department, hired Plaintiff as a

17  Deputy Sheriff Recruit.  (Carter Decl., ¶3.)  The Department paid for Plaintiff to

18  attend the police academy.  (Id.)  Plaintiff graduated from the Academy in June,

19  2000.  (Ex. 2, Tackett Depo., 14:11-18.)

20       After graduating, Plaintiff completed the Department's field training program

21  and was assigned to Court Services as a bailiff from September, 2000 through

22  December, 2000.  (Ex. 2, Tackett Depo., 15:7-15.)  The Department then assigned

23  Plaintiff to patrol from December, 2000 to March, 2002, at which time Plaintiff was

24  transferred back to Court Services at his request until approximately March, 2003.

25  (Housouer Decl., ¶3.)  The Department transferred Plaintiff back to patrol from

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

---

[1]    References to Exhibit numbers and Declarations refer to Defendants' Appendix of Evidentiary Support
("Appendix"), filed concurrently herewith.

[2]    "__:__" refers to page and line numbers contained in the certified transcripts of Plaintiff's deposition. Cited
portions of Plaintiff's deposition are attached as Exhibit 2 to Defendants' Appendix. (Meyerhoff Decl., ¶3.)

1    March, 2003 until August, 2003 when Plaintiff returned to Court Services until he

2    resigned in December, 2003. (*Id*.) In total, Plaintiff served as a patrol deputy for

3    only *nineteen months*. (*Id*.) Plaintiff admits that Defendants did not discriminate

4    and/or retaliate against him in any way while he was in Corrections, the Academy,

5    the field training program and/or Court Services. (Ex. 2, Tackett Depo., 47:12-24;

6    48:10-24; 49:21-50:3) The only alleged discrimination and retaliation occurred

7    while Plaintiff was assigned to patrol.

8    **B.    Plaintiff is Suspended For Two Days For Damaging Patrol**

9    **Vehicles.**

10   Shortly after his transfer to patrol in December, 2000, Plaintiff damaged his

11   patrol vehicle on two occasions. (Carter Decl., ¶4, Ex. 7.) Previously, Plaintiff

12   damaged a patrol vehicle during field training. (*Id*.) On September 25, 2001, the

13   Department served Plaintiff with a Notice of Intent to suspend him for two days for

14   violating Department policy relating to the operation of vehicles. (Housouer Decl.,

15   ¶4, Ex. 6.) The Department finalized Plaintiff's two day suspension on *November*

16   *16, 2001*. (Carter Decl., ¶4, Ex. 7.)

17   **C.    Plaintiff Participates In Marijuana Seizure.**

18   In October, 2001, Plaintiff asserts that Defendants retaliated against him after

19   he "made the largest marijuana bust in the inland valley" because the "individual

20   involved with the marijuana was a high profile campaign contributor" to the Sheriff

21   and District Attorney. (Ex. 1, FAC, ¶¶16, 19.) **Yet, Plaintiff admitted at**

22   **deposition that he did not suffer any retaliation related to the marijuana**

23   **seizure.** (Ex. 2, Tackett Depo., 255:7-256:10; 420:9-16.)

24   Indeed, the evidence shows that in October, 2001, an informant advised

25   Plaintiff that marijuana was being cultivated in an agricultural field within the

26   County. (Ex. 2, Tackett Depo., 197:11-198:2) The Department told Plaintiff to

27   notify the Imperial County Narcotic Task Force ("ICNTF"), (Ex. 2, Tackett Depo.,

28   197:11-198:23; 199:19-200:2.), a multi-agency task force comprised of local, state

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Memorandum Of Points And Authorities In Support Of
Motion For Summary Judgment  04CV2459 J (NAJ)

1    and federal law enforcement.  The ICNTF subsequently located approximately one

2    hundred and eighty marijuana plants in a large agricultural field leased by an

3    individual named Naiz Mohammed.  (Coleman Decl., ¶4.)  Michael Coleman, an

4    employee of the California Department of Justice, was in charge of the

5    investigation and seizure of the marijuana plants.  (*Id.*)  Mr. Coleman ordered the

6    marijuana removed from the field.  (Coleman Decl., ¶5.)

7         After interviewing Mr. Mohammed, Mr. Coleman found no evidence that he

8    knew about the marijuana and Mr. Coleman independently decided not to submit

9    any charges against Mr. Mohammed to the District Attorney's Office.  (Coleman

10   Decl., ¶8.)  (*Id.*)

### D.    Plaintiff Is Suspended Five Days For A Traffic Accident.

12        On November 1, 2001, Plaintiff lost control of his vehicle which rolled over,

13   resulting in substantial damage.  (Ex. 2, Tackett Depo., 256:11-20.)  On February 7,

14   2002, the Department's Significant Event Review Committee ("SERC") reviewed

15   the accident.[3]  (Obeso Decl., ¶4, Ex. 8.)  The SERC concluded that Plaintiff caused

16   the accident by driving at an unsafe speed and that Plaintiff had developed a pattern

17   of negligent and reckless vehicle operation as evidenced by at least four prior

18   incidents.  (Obeso Decl., ¶4c, Ex. 8.)

19        On June 21, 2002, the Department served Plaintiff with a Notice of Intent to

20   Suspend him for five days.  (Housouer Decl., ¶5, Ex. 11.)  On July 12, 2002,

21   Undersheriff Charles Jernigan conducted a pre-disciplinary meeting to allow

22   Plaintiff to respond to the Notice of Intent.  (Jernigan Decl., ¶3, Ex. 12.)  On

23   ***October 18, 2002***, the Department finalized the five day suspension.  (Carter Decl.,

24   ¶5, Ex. 13.)

25

26

27   [3]    The SERC is a committee which reviews significant events in order to evaluate whether there should be
changes to certain policies and/or practices of the Department.  The SERC does not handle internal investigations or
28   discipline.  (Obeso Decl., ¶3.)

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

### E.   **Plaintiff Is Suspended For Two Days For His Conduct During His Arrest Of Randall Lackey.**

#### 1.   The Lackey Incident.

On December 29, 2001, Sergeant Myron King, one of Plaintiff's patrol supervisors, notified the Department that he believed Plaintiff engaged in misconduct during an incident on December 28, 2001. (King Decl., ¶3, Ex. 14) On that date, the Brawley Police Department requested the Sheriff's Department to assist in determining if a vehicle parked at a residence was the same vehicle involved in an earlier hit and run accident. (King Decl., ¶3a, Ex. 14.) Plaintiff responded to the request, observed a vehicle which he believed was the vehicle in question and notified the Brawley Police Department. (*Id.*)  Brawley Police advised Plaintiff to standby and await a Brawley police officer to arrive. (*Id.*)

Sergeant King further reported that, rather than wait for Brawley Police to arrive, Plaintiff unnecessarily rousted Lackey, the owner of the residence, engaged him in an altercation, handcuffed him, and took him into custody. Sergeant King reported that Plaintiff made several mistakes during the incident, including failing to wait for the Brawley Police Department, driving onto Mr. Lackey's property without a warrant, failing to properly and thoroughly inspect Mr. Lackey's vehicle (which was not the vehicle involved in the earlier incident), and failing to maintain proper officer safety during the incident. (King Decl., ¶¶3b-d, Ex. 14.)

#### 2.   The Internal Affairs Investigation.

On July 8, 2002, the Department commenced an investigation regarding Plaintiff's conduct during the Lackey incident. (Housouer Decl., ¶6; Sheppeard Decl., ¶5, Ex. 17.)  The investigation concluded that (1) there was insufficient evidence to support Plaintiff's detention of Mr. Lackey, (2) Plaintiff should have detected that Mr. Lackey's vehicle was not the one involved in the hit and run and (3) Plaintiff violated several Department policies including incompetence and conduct unbecoming. (*Id.* at 387-390.)

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

### 3.    The Suspension.

On October 3, 2002, the Department served Plaintiff with a Notice of Intent to suspend him for two days based upon the Lackey incident. (Housouer Decl., ¶8, Ex. 18.)  On November 8, 2002, Plaintiff, and his attorney, met with Sheriff Carter to respond to the proposed Notice of Suspension. (Carter Decl., ¶6, Ex. 19.)  At the pre-disciplinary meeting, Plaintiff claimed he could not see the subject vehicle clearly on the night in question. (*Id.*)  Sheriff Carter ordered a further investigation to determine if Plaintiff's claim was valid. (Carter Decl., ¶6; Sheppeard Dec., ¶5, Ex. 17.)  After conducting a further investigation, the Department determined discipline was still warranted and issued a second Notice of Intent. (Sheppeard Decl., ¶5, Ex. 17; Housouer Decl., ¶9, Ex. 20.)  On *April 4, 2003*, Sheriff Carter finalized the two day suspension. (Carter Decl., ¶7, Ex. 21.)

### 4.    The District Attorney Rejects Charges Against Mr. Lackey.

Plaintiff submitted a report to the County's District Attorney's Office seeking criminal charges against Mr. Lackey. (Owen Decl., ¶¶3-4, Ex. 15; Otero Decl., ¶¶3-4, Ex. 15.)  Deborah Owen, the Deputy District Attorney who reviewed the submission, rejected Plaintiff's submission in the "interests of justice" and for "lack of evidence to prosecute." (Owen Decl., ¶4, Ex. 15; Otero Decl., ¶4, Ex. 15.)  Ms. Owen rejected the charges based upon her own objective review of the case. (Owen Decl., ¶5; Otero Decl., ¶5.)

### F.    Plaintiff Is Suspended For 30 Days For Misconduct Relating To A Probation Search.

### 1.    The Probation Search Incident.

On February 11, 2002, Sergeant Manuel Avila, one of Plaintiff's patrol supervisors, requested that the Department conduct an investigation regarding Plaintiff's alleged dishonesty. (Avila Decl., ¶6, Ex. 22.)  Sergeant Avila had earlier advised Plaintiff that his primary function as a patrol deputy was to respond to calls for service and ordered Plaintiff not to perform probation or parole services. (Avila

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   Decl., ¶¶4-5.)  Sergeant Avila also advised Plaintiff to contact a probation officer or

2   parole agent if he had information on probationers or parolees.  (Avila Decl., ¶4.)

3   Plaintiff admits Sergeant Avila advised him more than once not to conduct

4   probation or parole searches.  (Ex. 2, Tackett Depo., 316:18-21; 317:18-318:3.)

5        Against this backdrop, Sergeant Avila informed the Department that on

6   January 31, 2002, Plaintiff conducted a probation search and misled Sergeant Avila

7   about his actions on that date.  (Avila Decl., ¶6, Ex. 22.)  Sergeant Avila further

8   reported that, after he became aware of Plaintiff's actions on January 31, 2002, he

9   again instructed Plaintiff not to conduct a probation search on that date, yet Plaintiff

10  nonetheless assisted with a probation search.  (Avila Decl., ¶6c, Ex. 22.)  Sergeant

11  Avila notified the Department because he believed Plaintiff engaged in a "major

12  violation" of Department rules, including dishonesty.  (Avila Decl., ¶6, Ex. 22.)

### 2.    The Department Conducts An Investigation.

13  Upon receipt of Sergeant Avila's memorandum, the Department initiated an

14  investigation.  (Housouer Decl., ¶10, Exs. 22-23; Sheppeard Decl., ¶6, Ex. 24.)  The

15  investigation concluded that Plaintiff (1) willfully disobeyed a direct order from

16  Sergeant Avila, (2) provided false and misleading information during the

17  investigation, (3) misrepresented information in order to hide the fact that he was

18  doing a probation search and (4) assisted in a probation search on January 31 in

19  contravention of Sergeant Avila's order.  (Sheppeard Decl., ¶6, Ex. 24 at 841-843.)

### 3.    The Suspension.

20  On October 3, 2002, the Department served Tackett with a Notice of

21  Proposed Termination for (1) knowingly and intentionally violating Sergeant

22  Avila's orders and engaging in conduct unbecoming and (2) attempting to deceive

23  the Department's investigator.  (Housouer Decl., ¶12, Ex. 25.)

24  On November 8, 2002, Plaintiff and his attorney met with Sheriff Carter to

25  respond to the Notice of Intent to Terminate.  (Carter Decl., ¶8, Ex. 19.)  During the

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    meeting, Plaintiff asserted that Sergeant Avila knew he was going to assist with a

2    probation search on January 31, 2002. (Carter Decl., ¶8, Ex. 19.) Sheriff Carter

3    subsequently ordered a further investigation to verify Plaintiff's claim. (Carter

4    Decl., ¶8, Ex. 19; Sheppeard Decl., ¶6, Ex. 24) Following further investigation, the

5    Department determined that Plaintiff's assertion was not valid and issued to

6    Plaintiff a Second Notice of Intent to Terminate. (Housouer Decl., ¶13, Ex. 26.)

7       On *April 4, 2003*, Sheriff Carter issued to Plaintiff a final Notice *reducing*

8    *the discipline against Tackett from a proposed termination to a 30-day*

9    *suspension*. (Carter Decl., ¶9, Ex. 27.) Sheriff Carter reduced Plaintiff's discipline

10    because he believed that Plaintiff could eventually become an effective Deputy and

11    he wanted to give Plaintiff another chance to correct his performance. (*Id.*)

**G.**    **Plaintiff's Discharge is Proposed Based Upon Plaintiff's Misconduct In Two Separate Incidents.**

**1.**    **The Bertussi Incident.**

15       On June 16, 2003, a private citizen named Reno Bertussi filed a citizen

16    complaint alleging that Plaintiff (1) unlawfully entered Mr. Bertussi's property

17    without a warrant or reasonable cause, (2) handcuffed Mr. Bertussi and (3) searched

18    Mr. Bertussi's property and person without consent. (DeVoy Decl., ¶5, Ex. 31.)

19    Mr. Bertussi further claimed that Plaintiff placed him in a patrol vehicle with the

20    windows closed on a hot day, causing Mr. Bertussi to kick out the window of the

21    vehicle in order to get air. (*Id.*)

22       The County commenced an investigation. (Holguin Decl., ¶3, Ex. 33.)

23    Before the investigation was finished, Sheriff Carter requested that an independent

24    investigator complete the investigation in order to avoid even the appearance of

25    impropriety. (Carter Decl., ¶10; Holguin Decl., ¶¶5-6.) The Department thereafter

26    commissioned an independent investigator to investigate the Bertussi matter.

27    (Carter Decl., ¶10.) The independent investigator found that Plaintiff (1)

28    unlawfully entered Mr. Bertussi's property, (2) searched and handcuffed Mr.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1  Bertussi without legal justification, (3) unlawfully searched Mr. Bertussi's

2  workshop, (4) unlawfully removed property from Bertussi's premises, (5)

3  negligently left Mr. Bertussi in a hot patrol vehicle and (5) failed to thoroughly

4  report the incident to the Department.  (McErlain Decl., ¶7, Ex. 33 at 1253-1274.)

5       After the Bertussi incident, Plaintiff submitted charges against Mr. Bertussi

6  to the County's District Attorney's Office.  (Barrett Decl., ¶¶3, 5, Ex. 32; Otero

7  Dec., ¶¶6-7, Ex. 32.)  On October 31, 2005, Deputy District Attorney Beverly

8  Barrett rejected the charges on the grounds that there were "search and seizure

9  issues re the manner in which Tackett entered the property, without warrant, his

10  subsequent search of the business . . . his seizure of property from the home [and]

11  the allegations that he placed [Mr. Bertussi] in a vehicle with no air conditioning."

12  (Barrett Decl., ¶5, Ex. 32.)  Ms. Barrett's rejection was based upon a review of the

13  facts surrounding the Bertussi incident.

14       On or about November 25, 2003, the Department served Plaintiff with a

15  notice of intent to terminate his employment.  (Obeso Decl., ¶7, Ex. 34.)  The

16  notice of intent was based upon the Department's determination that Plaintiff

17  unlawfully entered and searched Mr. Bertussi's property without permission or

18  warrant and subsequently placed Mr. Bertussi in a hot patrol vehicle for an

19  extended period of time.  (*Id.*)

          **2.**    **The Macias Incident.**

21       On July 27, 2003, Plaintiff effected a traffic stop of an individual named

22  Ernesto Macias.  (McErlain Decl., ¶13, Ex. 29.)  Mr. Macias informed Plaintiff that

23  he did not have identification with him, but had a driver's license back at his motel.

24  (*Id.*)  Plaintiff transported Mr. Macias to his motel room and accompanied Mr.

25  Macias inside the room.  (*Id.*)  Mr. Macias advised Plaintiff that he had no

26  identification inside the motel room.  Plaintiff then searched the motel room and

27  asked Mr. Macias to open up a nightstand.  (*Id.*)  Mr. Macias opened the nightstand,

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   Plaintiff observed drug paraphernalia, and arrested Mr. Macias.  (*Id.*)

2   On August 5, 2003, the Department hired Ed McErlain, an independent

3   investigator, to conduct an investigation into the Macias incident.  (McErlain Decl.,

4   ¶¶9-10; Carter Decl., ¶10.)  Mr. McErlain found that Plaintiff engaged in an

5   unlawful search and invasion of privacy at the time he entered and searched Mr.

6   Macias's motel room. (McErlain Decl., ¶13e, f, Ex. 29 at 1054-1081.)

7   After the Macias incident, Plaintiff referred the charges to the District

8   Attorney. (Barrett Decl., ¶¶7, 9, Ex. 28; Otero Decl., ¶¶9-10, Ex. 28.)  Upon

9   reviewing the charges, Deputy District Attorney Barrett rejected Plaintiff's

10   submission on the grounds that, among other things, Plaintiff's Fourth Amendment

11   violations were "almost too numerous" to list.  (Barrett Decl., ¶9, Ex. 28.)

12   Specifically, Ms. Barrett determined that Plaintiff lacked consent to enter the

13   suspect's motel room without a warrant and had no reason to search the motel

14   room.  (*Id.*)  Ms Barrett's determination was based upon her review of the facts

15   surrounding the Macias incident.

16   On November 25, 2003, the Department served Tackett with a Notice of

17   Intent to terminate his employment for violating orders from his superiors,

18   conducting an unlawful search and needlessly risking his own life and the life of a

19   fellow officer during the Macias incident. (Obeso Decl., ¶6, Ex. 30.)

**H.   Plaintiff Resigns From The Department.**

21   On December 19, 2003, approximately three weeks after he was served with

22   notices of intent in regards to the Bertussi and Macias matters, and without

23   responding to the pending charges, Plaintiff submitted his resignation to the

24   County. (DeVoy Decl., ¶6, Ex. 35.)  Plaintiff asserts that Defendants

25   "constructively terminated" him on December 15, 2003.  (Ex. 1, FAC, ¶46.)

26

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Memorandum Of Points And Authorities In Support Of
Motion For Summary Judgment  04CV2459 J (NAJ)

## III.   **ARGUMENT**

### A.   **Legal Standard On Summary Judgment.**

It is the moving party's burden to establish that there is "no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FRCP 56(c). The moving party may carry its burden by negating an essential element of the opposing party's claim, or by showing the opposing party does not have enough admissible evidence of an essential element of its claim to carry its ultimate burden at trial. (*Nissan Fire & Marine Ins. Co., Ltd. v. Fritz Cos., Inc.*, 210 F.3d 1099, 1102 (9th Cir. 2000).) Conclusory allegations unsupported by facts cannot defeat summary judgment. (*Arpin v. Santa Clara Valley Trans. Agency*, 261 F.3d 912, 922 (9th Cir.2001).)

There are special rules for summary judgment motions in the context of employment litigation. See *Hernandez v. Spacelabs Medical Inc.*, 343 F.3d 1107, 1112-1113 (9th Cir. 2003) (applying burden shifting scheme announced in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) to claims under Title VII of the Civil Rights Act of 1964); *Patel v. Midland Mem. Hosp. & Med. Ctr.*, 298 F.3d 333, 342 (5th Cir. 2002) (holding McDonnell Douglas burden shifting scheme applies to discrimination claims under 42 U.S.C. §1983); *Bergene v. Salt River Project Agricultural Improvement & Power Dist.*, 272 F.3d 1136, 1142 (9th Cir. 2001) (applies the burden shifting analysis to retaliation claims.)

An employee has the initial burden of establishing a prima facie case of discrimination or retaliation. See *Hernandez*, 343 F.3d at 1112. If the employee can establish a prima facie case, the burden shifts to the employer to proffer a legitimate non-discriminatory/non-retaliatory reason for the adverse employment action at issue. *Id*. Thereafter, the employee must proffer evidence to support a finding that the employer's reason is pretextual. Speculative or conclusory assertions of retaliatory or discriminatory intent cannot establish a prima facie case

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    or otherwise defeat summary judgment.  See *Karam v. City of Burbank*, 352 F.3d

2    1188, 1194 (9th Cir. 2003).

3    **B.    Plaintiff's Claims Are Procedurally Defective.**

4    **1.    Plaintiff's First, Second And Sixth Claims for Relief Are
       Time-Barred Under the California Tort Claims Act.**

5

6    Plaintiff's first claim for relief (violation of Labor Code § 1102.5), second

7    claim for relief (retaliation in violation of public policy) and sixth claim for relief

8    (intentional infliction of emotional distress) allege tortious conduct.  See *Shoe-*

9    *maker v. Myers*, 2 Cal.App.4th 1407, 1425-1426 (1992) (California Labor Code

10   §1102.5 claim is based in tort); *Palmer v. Regents of University of California*, 107

11   Cal.App.4th 899 (2003) (employment based public policy claim is tort); *McBride v.*

12   *Boughton*, 123 Cal.App.4th 379 (2004) (emotional distress is a tort).

13   The California Tort Claims Act, Government Code §900, et seq., requires,

14   "that any civil complaint for money or damages first be presented to and rejected by

15   the pertinent public entity." *Ard v. County of Contra Costa*, 93 Cal.App.4th 339,

16   343 (2001).  Under the Tort Claims Act, claims against a local government entity

17   for personal injuries ***must be presented to the relevant entity within six months***.

18   (Gov. Code §911.2.)  Very importantly, Plaintiff filed his tort claim on ***June 16,***

19   ***2004***.  (DeVoy Decl., ¶7, Ex. 36.)  Accordingly, any alleged tortuous conduct that

20   occurred ***before December 16, 2003*** is time barred.

21   Plaintiff alleges he was constructively terminated on ***December 15, 2003*** (Ex.

22   1, FAC, ¶46), i.e., outside the statutory period.  Thus, no tort claim can be based on

23   his constructive discharge.  Since Plaintiff submitted his resignation on December

24   19, 2003, the only tortuous conduct allegedly suffered by Plaintiff must have

25   occurred between December 16, 2003 and December 19, 2003 to avoid being

26   barred by the applicable statute of limitations.  However, Plaintiff does not and

27   cannot allege any tortuous conduct which occurred within this brief three day

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1  period inasmuch as he was not working.  (DeVoy Decl., ¶¶6-7, Ex. 36.)[4]

2  **2.   Plaintiff's Sixth Claim Is Also Barred Because Plaintiff's**
3  **Tort Claim Does Not Include Any Emotional Distress Claim.**

4  Where a plaintiff "relies upon more than one theory of recovery against the

5  [governmental agency], each cause of action must have been reflected in a timely

6  [tort] claim." *Fall River Joint Unified School Dist. v. Superior Court*, 206

7  Cal.App.3d 431, 434 (1988).  The "factual circumstances set forth in the written

8  claim must correspond with the facts alleged in the complaint . . .." *Fall River*, 206

9  Cal.App.3d at 434.

10  Plaintiff's sixth claim for relief for emotional distress is based entirely upon

11  the allegation that Defendants instructed other deputies not to provide backup to

12  Plaintiff and to "stay away from him." (Ex. 1, FAC, ¶¶36-39.)  Plaintiff's tort claim

13  does not assert any claim for emotional distress, nor does it include any allegations

14  that Defendants ordered other deputies to not back up Plaintiff in the field.  (DeVoy

15  Decl., ¶7, Ex. 36.)  Accordingly, Plaintiff's sixth claim for relief is barred as a

16  matter of law.  See *Fall River*, *supra* [legal theory not asserted in tort claim

17  properly dismissed].

18  **3.   Plaintiff's Fourth And Fifth Claims Are Also Time Barred.**

19  Plaintiff's fourth and fifth claims for relief allege race discrimination against

20  Defendants.  (Ex. 1, FAC, ¶¶72-86.)  Plaintiff's fourth claim for relief asserts a

21  violation of the California Fair Employment and Housing Act ("FEHA"). (Ex. 1,

22  FAC, ¶78.)  Under the FEHA, a complainant must file a claim with the California

23  Department of Fair Employment and Housing ("DFEH") within ***one year after the***

24  ***date of the alleged wrongful act***.  (Government Code §12960.)  Here, Plaintiff filed

25  his DFEH claim on or about ***September 13, 2004***.  (Devoy Decl., ¶8, Ex. 37.)

26  Accordingly, any action claimed by Plaintiff to have violated the FEHA that

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

---

27  [4]   Plaintiff's retaliation claims are also barred because Plaintiff did not exhaust his administrative remedies by
28  filing a claim with the California Labor Commissioner prior to filing this action. *Neveu v. City of Fresno*, 392
F.Supp.2d 1159 (E.D. Cal. 2005).

1   occurred before *September 13, 2003* is barred by §12960.

2       Plaintiff's fourth claim alleges that he was denied preferential assignments

3   because of his race.  (Ex. 1, FAC, ¶31.)  However, Plaintiff cannot show that he

4   either applied or was denied any assignment on or after September 15, 2003.

5   Accordingly, Plaintiff's fourth claim for relief is barred.

6       Plaintiff's fifth claim for relief is similarly defective.  It is entirely premised

7   upon the claim that Defendants engaged in race discrimination against Plaintiff in

8   violation of Title VII of the Civil Rights Act of 1964.  (Ex. 1, FAC, ¶¶80-86.)

9   Under Title VII, a complainant must file a charge with the Equal Employment

10  Opportunity Commission ("EEOC") within 300 days after the alleged unlawful act

11  occurred.  42 U.S.C. §2000e-5(e)(2).  Plaintiff filed his EEOC claim on September

12  20, 2004.  (DeVoy Decl., ¶9, Ex. 38.)  Accordingly, any action claimed by Plaintiff

13  to have violated Title VII which occurred before *November 25, 2003* is barred by

14  42 U.S.C. §2000e-5(e)(2).

15      Again, Plaintiff's fifth claim for relief is premised on the assertion that he did

16  not receive assignments due to his race.  (Ex. 1, FAC, ¶31.)  Plaintiff cannot

17  demonstrate that he applied for nor denied any assignment on or after November

18  25, 2003.  Accordingly, his fifth claim for relief is barred.

### C.    Plaintiff's Claims Are Substantively Defective.

#### 1.    Plaintiff Cannot State A Viable Claim For Retaliation.

#### a.    Plaintiff's Allegations.

Plaintiff asserts that the Department subjected him to investigations and
disciplinary action because he "refused to look the other way on the criminal
activity of a high profile campaign contributor or family members and elected
officials . . .."  (Ex. 1, FAC, ¶25.)  Plaintiff identifies three incidents (all of which
are described above) where he allegedly "refused to look the other way."  First,
Plaintiff asserts that he arrested Mr. Lackey, an alleged "high profile individual

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1    who was related to a retired sheriff deputy, who was friends with the current and

2    former sheriff." (Ex. 1, FAC, ¶13.)  Second, Plaintiff asserts that he "made the

3    largest marijuana bust in the inland valley" and subsequently learned that "the

4    individual involved with the marijuana was a high profile  campaign contributor, to

5    both the Sheriff and District Attorney, along with being personal friends of each."

6    (Ex. 1, FAC, ¶19.)  Finally, Plaintiff alleges that he arrested Mr. Bertussi, "the

7    brother-in-law of a member of the Board of Supervisors." (Ex. 1, FAC, ¶20.)

8    Plaintiff also contends that he "reported his concerns of interference with law

9    enforcement activities to his superiors at the County." (Ex. 1, FAC, ¶27.)

**b.    Plaintiff Fails To Establish Even A Prima Facie Case Of Retaliation Under California Labor Code §1102.5.**

12    Plaintiff's first claim for relief asserts a violation of California Labor Code

13    §1102.5.  Section 1102.5(b) provides that an employer may not retaliate against an

14    employee for "disclosing information to a government or law enforcement agency

15    that the employee reasonably believes discloses a violation of . . . a state or federal

16    statute . . . rule or regulation."  Section 1102.5(c) provides that an employer also

17    may not retaliate against an employee for "refusing to participate in an activity that

18    would result in a violation of state or federal statute . . . ."  To establish a prima facie

19    case under §1102.5, a plaintiff must show (1) he was engaged in a protected

20    activity, (2) his employer subjected him to an adverse employment action and (3)

21    there is a causal link between the two.  *Patten v. Grant Joint Union High School

22    Dist.*, 134 Cal.App.4th 1378, 1385 (2005).

23    Plaintiff's second claim for relief for retaliation in violation of public policy

24    is entirely premised upon the same grounds as Plaintiff's first claim for relief and

25    asserts that Defendants "violated the public policy of the State of California, as

26    expressed in the provisions of California Labor Code §1102.5 et. seq." (Ex. 1,

27    FAC, ¶58.)  Both claims are dependant upon Plaintiff demonstrating a prima facie

28    case under §1102.5. See *Love v. v. Motion Industries, Inc.*, 309 F.Supp.2d 1128,

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1135 (N.D. Cal. 2003) [employee could not show wrongful termination in violation of public policy under §1102.5(b) where he failed to establish prima facie case under §1102.5.] As set forth below, Plaintiff cannot meet this burden.

(1)   **Plaintiff did not engage in any "protected activity" under Labor Code §1102.5.**

Plaintiff has no evidence to establish that he ever disclosed a violation of law to Defendants, or that he refused to participate in any activity constituting a violation of law. In written discovery, Plaintiff was requested to state all facts to support his contention that he suffered retaliation for arresting high profile individuals. In response, Plaintiff did not identify any instance wherein he allegedly complained of unlawful conduct, or was asked to participate an unlawful conduct. (Meyerhoff Decl., ¶¶4-6, Exs. 3-5, see Special Rog. No. ("No.") 25.)

Plaintiff was also asked to state all facts to support his claim that he reported to Defendants any concerns of "interference with law enforcement duties" as alleged in the Complaint. (Ex. 1, FAC, ¶48; Meyerhoff Decl., ¶¶4-6, Exs. 3-5, see No. 6.) In response, Plaintiff stated that he "reported actions" by Sergeant Avila. However, at deposition, Plaintiff made clear these "actions" consist of Sergeant Avila's instruction to Plaintiff to not make traffic stops in incorporated areas, and to not conduct probation or parole searches. (Ex. 2, Tackett Depo. 52:19-53:5; 56:9-16; 133:14-17.) Plaintiff believed Sergeant Avila's instruction was retaliatory because it was given only to him; not because Plaintiff complained of unlawful activity. (Ex. 2, Tackett Depo., 77:13-21.)[5] Moreover, although Plaintiff asserted that Sergeant Avila's instructions were unlawful, he cannot recall if he reported his belief to anybody. (Ex. 2, Tackett Depo., 95:4-18; 115:7-18.)

Plaintiff cannot identify any specific law violated by Sergeant Avila's instructions and thus cannot state a claim for relief. (Ex. 2, Tackett Depo., 323:10-

---

[5]   Though Plaintiff also asserted that Sergeant Avila's counseling was motivated by the fact that Plaintiff stopped a friend of Sergeant Avila's, Plaintiff admitted that he has no evidence to support this speculative assertion. (Ex. 2, Tackett Depo., 91:18-92:5.)

324:20; 324:25-326:3; 329:2-19; 332:15-24.)  See, *Love*, 309 F.Supp.2d 1128, 1135 (N.D. Cal. 2004) [Plaintiff's §1102.5 claim subject to summary judgment because plaintiff could not name any statute, rule, or regulation allegedly violated.]

(2)   <b>Plaintiff Cannot Prove A Casual Nexus.</b>

To establish the requisite element of causation in a retaliation case, Plaintiff must "make some showing sufficient for a reasonable trier of fact to infer that the defendant was aware that the plaintiff had engaged in protected activity." *Raad v. Fairbanks N. Star Borough Sch. Dist.*, 323 F.3d 1185, 1197 (9th Cir.2003).  Here, Sheriff Carter was the final decision maker in regards to all final discipline Plaintiff received.  (Carter Decl., ¶¶4, 5, 7, 9, 11, Exs. 7, 13, 21, 27.)  However, Sheriff Carter was unaware that Plaintiff ever engaged in any activity protected by §1102.5.  (Carter Decl., ¶12.)  Accordingly, Plaintiff cannot establish a causal connection between the Department's disciplinary actions and any activity protected by Labor Code §1102.  See *Coughlan v. American Seafoods Co., LLC*, 413 F.3d 1090, 1096 (9th Cir. 2005) ["where the same actor is responsible for both the hiring and the firing of a plaintiff, and both actions occur within a short period of time, a strong inference arises that there was no discriminatory action."]

c.   <b>Plaintiff's Assertions Lie Outside Of Section 1102.5.</b>

Plaintiff's retaliation claims are based entirely upon the speculative theory that Plaintiff suffered adverse employment actions because he arrested individuals who were connected to the Department in some way.  This theory does not state a claim under §1102.5 as a matter of law.

In regards to the Lackey incident, Plaintiff admits he has no evidence that Sergeant King ordered Plaintiff to cite and release Mr. Lackey due to a personal relationship between Sergeant King and Mr. Lackey.  (Ex. 2, Tackett Depo., 286:24-287:2.)  Furthermore, Plaintiff never asserted at deposition that Defendants retaliated against him because he disclosed information of unlawful conduct.

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   Rather, Plaintiff's only basis for asserting retaliation in regards to the Lackey

2   incident is a tenuous connection between Mr. Lackey and the Sheriff.  (Ex. 2,

3   Tackett Depo., 182:4-25.)  Plaintiff also admitted that he has no facts to support his

4   claim that the Department influenced the District Attorney's Office to reject

5   charges against Mr. Lackey. (Ex. 2, Tackett Depo., 305:10-15.)

6        In regards to the Bertussi incident, Plaintiff never asserted that Defendants

7   retaliated against him as a result of engaging in conduct protected under Labor

8   Code §1102.5. (Ex. 2, Tackett Depo., 400:13-401:13; 434:10-19; 436:11-14.)  In

9   fact, Plaintiff admitted he was not retaliated against for divulging information of

10  unlawful conduct to a law enforcement agency.  (Ex. 2, Tackett Depo., 436:21-

11  437:24.)  Rather, Plaintiff believed that Defendants disciplined him because Mr.

12  Bertussi is related to a member of the County's Board of Supervisors; not because

13  Plaintiff engaged in activity protected by Labor Code §1102.5.  (Ex. 2, Tackett

14  Depo., 437:15-24; 440:12-24.)

15       In *Stiesberg v. State of California*, 80 F.3d 353 (9th Cir. 1996), the Ninth

16  Circuit considered an 1102.5 claim brought by a California Highway Patrol

17  ("CHP") Captain who asserted that he was transferred in retaliation for supervising

18  officers who issued several traffic citations to two daughters of the CHP's highest

19  ranking official.  The CHP Captain also asserted that the CHP violated a

20  fundamental public policy by preventing him from performing his duties as a law

21  enforcement officer. *Steisberg*, 80 F.3d at 358.  In rejecting the claim the Ninth

22  Circuit stated that §1102.5 "is designed to protect an employee from being

23  persecuted by his employer for reporting . . . some form of illegal conduct." *Id.*

24  The Ninth Circuit emphasized that the CHP Captain's claim was not encompassed

25  within §1102.5 because he reported no illegal conduct, but only the illegal conduct

26  of others (i.e. the two daughters.) *Id.*

27       The same result is required here.  Plaintiff has asserted no illegal conduct,

28  rather he believes that Defendants did not properly act upon the illegal conduct of

189379.13 IM040-015                          -18                 Memorandum Of Points And Authorities In Support Of
                                                                Motion For Summary Judgment  04CV2459 J (NAJ)

others.  As illustrated by *Stiesberg*, Plaintiff's first and second claims for relief are subject to partial summary judgment.

### 2. Defendants Had Established A Legitimate, Non-Retaliatory Basis For Disciplining Plaintiff.

Even if Plaintiff could establish a prima facie case of retaliation under Labor Code §1102.5, the burden shifts to Defendants to articulate a "legitimate, non-retaliatory reason for its decision." *Akers v. County of San Diego*, 95 Cal.App.4[th] 1441, 1453.  If Defendants can articulate such a reason, Plaintiff bears the ultimate burden of demonstrating that the reason is merely a pretext for a retaliatory motive. *Akers*, 95 Cal.App.4[th] at 1453.

As set forth in Section II above and as documented in the multiple investigations and disciplinary documents, Defendants had legitimate and non-discriminatory reasons for disciplining Plaintiff.  For these reasons summary judgment as to Plaintiff's first and second claims for relief is appropriate.

### D. <u>Plaintiff's Third Claim Fails To Raise A Triable Issue Of Fact.</u>

Plaintiff's third claim for relief asserts a violation of 42 U.S.C. §1983 on the grounds that Defendants deprived Plaintiff of his constitutional rights.  (Ex. 1, FAC, ¶69.)  While the Complaint itself does not specify what constitutional rights are at issue, Plaintiff has asserted in response to interrogatories that Defendants violated the First, Fourth, Sixth, Seventh, Eighth and Thirteenth amendments.  (Ex. 1, FAC, ¶¶68-71; Meyerhoff Decl., ¶¶4-6, Exs. 3-5, see No. 23.)  As set forth below, Plaintiff's claims are inadequate as a matter of law.

#### 1. First Amendment.

##### a. Plaintiff Cannot Establish Any Adverse Action.

Plaintiff claims Defendants violated his First Amendment rights by retaliating against him because he formed a "deputy forum" to vote on issues of concern.  Plaintiff further asserts the Department "chastised" him and told him not

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1  to hold meetings unless he petitioned the County for recognition. (Meyerhoff

2  Decl., ¶¶4-6, Exs. 3-5, see No. 23.) This assertion cannot support a 1983 claim.

3    To establish a claim of retaliation under the First Amendment and 42 U.S.C.

4  §1983, Plaintiff must show that he engaged in protected activity, that he suffered an

5  adverse employment action and that the speech was a "substantial and motivating"

6  factor for the adverse employment action. *Roe v. City of San Diego*, 356 F.3d 1108,

7  1112 (9th Cir. 2004.) The only retaliation Plaintiff allegedly suffered for exercising

8  his First Amendment rights was being "chastised" for forming a "deputy forum."

9  Being "chastised" is not an adverse employment action as required by federal law.

10 See *Nunez v. City of Los Angeles*, 147 F.3d 867, 875 (9th Cir. 1998) ["mere threats

11 and harsh words" insufficient to establish an adverse employment action.]

12     **b. Plaintiff Cannot Establish A Causal Connection.**

13   In the event Plaintiff improperly attempts to expand the basis for his First

14 Amendment claim by asserting that it is also based upon his alleged complaints of

15 preferential treatment towards individuals he arrested, his claim still fails. In

16 *Waters v. Churchill*, 511 U.S. 661, 677 (1994), the Supreme Court held that in

17 deciding whether a government employee's speech was on a matter of public

18 concern, the Court must defer to the employer's view of the underlying historical

19 facts so long as that view is facially reasonable and drawn in good faith. Here, the

20 facts demonstrate that any disciplinary action taken against Plaintiff was based

21 upon good faith and thorough investigations into Plaintiff's conduct; not upon

22 Plaintiff's speech. (See Section II above.)

23     **2. Fourth Amendment.**

24   Plaintiff asserts that his Fourth Amendment rights were violated because the

25 Department allegedly removed a memorandum from his personnel file which

26 purportedly stated that Plaintiff was not at fault for causing damage to his patrol

27 vehicle in 2000. (Meyerhoff Decl., ¶¶4-6, Exs. 3-5, see No. 23; Ex. 2, Tackett

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Depo., 587:15-589:7.)  However, Plaintiff admits he does not know if the

Sergeant's memorandum was placed in his personnel file in the first place.  (Tackett

Depo., 589:8-20.)  In *United States v. Miller*, 425 US. 435, 440 (1976), the

Supreme Court stated that "no interest legitimately protected by the Fourth

Amendment" is implicated by governmental investigative activities unless there is

an intrusion into a zone of privacy.  The document upon which Plaintiff bases his

Fourth Amendment claim was not prepared by Plaintiff and Plaintiff cannot

establish any legitimate right to privacy in the document.  Thus his Fourth

Amendment claim fails.

### 3.  Sixth Amendment.

Plaintiff contends Defendants violated his Sixth Amendment rights by not

allowing him a speedy administrative hearing.  (Meyerhoff Decl., ¶¶4-6, Exs. 3-5,

see No. 25.)  The Sixth Amendment applies to criminal proceedings only and has

no applicability here.  U.S.C.A. Const. Amend. 6.

### 4.  Seventh Amendment.

Plaintiff contends Defendants violated his Seventh Amendment rights by

reaching a settlement agreement in connection with a civil lawsuit filed by Mr.

Lackey against the County and Plaintiff wherein Mr. Lackey alleged that Plaintiff

violated his rights in connection with the Lackey incident.  (See Section __, above)

(Meyerhoff Decl., ¶¶4-6, Exs. 3-5, see No. 23.)  Plaintiff further contends that by

settling the lawsuit, the County deprived him of a right to trial.  (Ex. 2, Tackett

Depo., 596:20-597:8.)  Plaintiff's argument is nonsensical.  It must be presumed

that Plaintiff, as a co-defendant, was able to proceed with the action by not agreeing

to settle the matter.  Accordingly, Plaintiff was never denied a right to trial.

### 5.  Eighth Amendment.

Plaintiff alleges Defendants deprived him of his Eighth Amendment rights by

placing him on paid administrative leave during the investigations into his various

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   disciplinary actions. (Meyerhoff Decl., ¶¶4-6, Exs. 3-5, see No. 25; Ex. 2, Tackett

2   Depo., 606:9-607:25.) The Eighth Amendment is only applicable in criminal

3   proceedings. *Ingraham v. Wright*, 430 U.S. 651, 667-668 (1977).

### 6.   Thirteenth Amendment.

5   Plaintiff alleges Defendants deprived him of his Thirteenth Amendment

6   rights by placing him on administrative leave with pay. (Meyerhoff Decl., ¶¶4-6,

7   Exs. 3-5, see No. 23; Ex. 2, Tackett Depo., 609:2-9.) A claim of slavery or

8   involuntary servitude under the Thirteenth Amendment cannot be maintained unless

9   the plaintiff has no option to work elsewhere. *Pollock v. Williams*, 322 U.S. 4, 18

10   (1944). Such facts do not exist here. Having failed to establish any constitutional

11   deprivation, it is axiomatic that Plaintiff's third claim for relief is subject to partial

12   summary judgment.

### E.   Plaintiff's Fourth And Fifth Claims For Relief Fail To Raise Triable Issues Of Fact.

#### 1.   Plaintiff's Allegations.

16   Plaintiff's fourth and fifth claims for relief allege race discrimination

17   pursuant to the FEHA, Government Code §12900, *et seq*. and Title VII,

18   respectively. Plaintiff's discrimination claims are based upon the assertion that (1)

19   he and other Caucasians were not provided "preferential assignments" given to

20   Hispanics and (2) upon "information and belief" the County requested deputies to

21   "falsify reports" regarding Caucasian deputies. (Ex. 1, FAC, 31-32.)

#### 2.   Plaintiff Admits That Race Was Not A Factor In Any "Preferential Assignments" He Sought During His Employment.

24   To state a prima facie case of disparate treatment under FEHA and/or Title

25   VII, a plaintiff must show that (1) he belongs to a protected class, (2) he performed

26   according to the employer's legitimate expectations, (3) he suffered an adverse

27   employment action and (4) similarly situated employees were treated more

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   favorably. *Sischo-Nownejad v. Merced Community College Dist.*, 934 F.2d 1104,

2   1109 (9th Cir. 2001). Plaintiff cannot state a prima facie case of race discrimination.

3         Plaintiff testified at deposition that he was not denied any assignment on the

4   basis of his race. Specifically, Plaintiff testified to the following:

5         •    Plaintiff "asked about" a field training officer position, but could not

6   recall if he ever formally applied for the position. (Ex. 2, Tackett Depo., 615:17-

7   19.) Plaintiff admitted that his race was not a factor in not receiving the field

8   training officer position. (Ex. 2, Tackett Depo., 620:5-8.)

9         •    Plaintiff applied for the Department's SERT Team. (Ex. 2, Tackett

10  Depo., 620:9-16.) However, Plaintiff did not proceed with the application process

11  because two other deputies (non-management) told him not to. (Ex. 2, Tackett

12  Depo., 626:16-23.) Plaintiff admitted he had no evidence to support his speculation

13  that he was not selected for the SERT Team due to race. (Ex. 2, Tackett Depo.,

14  626:24-628:3.)

15        •    Plaintiff applied for an assignment with the Federal Drug Enforcement

16  Agency. (Ex. 2, Tackett Depo., 629:3-10.) Plaintiff was not selected for the

17  assignment, but admits that he does not know whether his race was a factor in the

18  denial. (Ex. 2, Tackett Depo., 635:2-5.)

19        •    Plaintiff applied for an assignment with the Department's Street

20  Interdiction Team, but admits his race was not a factor in him not receiving this

21  assignment. (Ex. 2, Tackett Depo., 637:2-14; 639:21-23.)

22        •    Plaintiff applied for an assignment with the Narcotics Task Force, but

23  admits that his race was not a factor in him not receiving the assignment. (Ex. 2,

24  Tackett Depo., 641:12-17; 644:1-3.)

25        •    Plaintiff applied for an assignment as a K-9 deputy. (Ex. 2, Tackett

26  Depo. 644:7-10.) Plaintiff asserted that, based upon a conversation he had with a

27  third party, he believed that the interview panel (consisting of one Department

28  employee and two non-County employees) discussed his disciplinary history and

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1   changed his ranking after the interview.  (Ex. 2, Tackett Depo., 646:12-21; 651:7-

2   652:2.)  However, Plaintiff admits that race was not a factor in not receiving this

3   assignment.  (Ex. 2, Tackett Depo., 658:10-13.)

4        •   Plaintiff could not identify any position that he did not receive as a

5   result of his race.  (Ex. 2, Tackett Depo., 659:5-8.)

6    **F.   Plaintiff's Sixth Claim For Relief Fails To Raise A Triable Issue
7         Of Fact.**

8        The elements of a cause of action for intentional infliction of emotional

9   distress are (1) "outrageous" conduct by the defendant, (2) the defendant acted with

10  intent or reckless disregard of the probability of causing emotional distress, (3)

11  severe emotional suffering, and (4) actual and proximate causation of the emotional

12  distress.  *Molko v. Holy Spirit Ass'n.*, 46 Cal.3d 1092, 1120 (1986).

13       Plaintiff claims "upon information and belief" that Defendants inflicted

14  emotional distress upon him by 1) advising other deputies to not provide backup to

15  Plaintiff, or to "stay away" Plaintiff (Ex. 1, FAC, ¶36), and 2) placing him on

16  administrative leave with pay.  As for Plaintiff's claim that other deputies did not

17  provide backup, Plaintiff asserts that a single deputy told him that he was told to

18  stay away from Plaintiff.  (Ex. 2, Tackett Depo., 461:22-463:7; Meyerhoff Decl.,

19  ¶¶4-6, Exs. 3-5, see No. 14.)  In addition, Plaintiff mentioned two situations where

20  he "believed" deputies were late in responding, but admitted he did not know the

21  reasons for the delay and did not know whether the Department instructed the

22  deputies not to respond timely.  (Ex. 2, Tackett Depo., 467:20-468:25; 469:2-

23  470:14.)  Notably, in response to written discovery, Plaintiff could not identify a

24  single instance when he believed that backup would not arrive.  (Meyerhoff Decl.,

25  ¶¶4-6, Exs. 3-5, see No. 16.)

26       In regards to Plaintiff's claim that placement on administrative leave caused

27  him emotional distress, such claim is barred by the doctrine of workers'

28  compensation exclusivity.  "Actions which are a normal part of the employment

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

1  relationship" cannot be characterized as "outrageous" and are barred by California's

2  workers' compensation exclusivity rule. *Cole v. Fair Oaks Fire Protection District*,

3  43 Cal.3d 148, 160 (1987). As stated in *Cole*: "when the misconduct attributed to

4  the employer is actions which are a normal part of the employment relationship . . .

5  an employee . . . may not avoid the exclusive remedy provisions of the Labor Code

6  by characterizing the employer's decisions as manifestly unfair, outrageous,

7  harassment, or intended to cause emotional disturbance resulting in disability."

8  Placement on administrative leave is a normal part of the employment relationship.

9         Even if Plaintiff could establish the necessary intent and causation elements,

10  he has not presented factual evidence to support a finding of severe distress. Severe

11  emotional distress is "emotional distress of such substantial quantity or enduring

12  quality that no reasonable man in a civilized society should be expected to endure

13  it." *Simo v. Union of Needletrades*, 322 F.3d 602, 622 (9th Cir.2003). Allegations

14  of severe distress fail when they lack any evidentiary support from medical

15  professionals. *Lappin v. Laidlaw Transit Inc.*, 179 F.Supp.2d 1111, 1126-27

16  (N.D.Cal.2001). Here, Plaintiff visited a doctor twice in regards to the alleged

17  distress he felt. (Ex. 2, Tackett Depo., 748:8-21.) Plaintiff never took any

18  prescribed medication for his alleged distress. (Ex. 2, Tackett Depo., 756:3-16.)

19  **IV.   CONCLUSION**

20         For the reasons set forth above, Defendants request that the Court grant their

21  motion for summary judgment, or partial summary judgment, in this matter.

22  Dated: May /8, 2006                    Liebert Cassidy Whitmore

23                                         By: _____

24                                             Mark H. Meyerhoff
                                               J. Scott Tiedemann
25                                             Attorneys for Defendants
                                               COUNTY OF IMPERIAL and
26                                             IMPERIAL COUNTY SHERIFF'S
                                               DEPARTMENT

27

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

**PROOF OF SERVICE**
**STATE OF CALIFORNIA, COUNTY OF LOS ANGELES**

I am employed in County of Los Angeles, State of California. I am over the age of 18 and not a party to the within action; my business address is: **6033 W. Century Blvd., Suite 500, Los Angeles, California 90045.**

On **May 18, 2006**, I served the foregoing document(s) described as **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT, OR, IN THE ALTERNATIVE, PARTIAL SUMMARY JUDGMENT,** on all interested parties in this action by placing a true copy thereof enclosed in sealed envelope(s) addressed as follows:

Joe B. Cordileone, Esq.
Cynthia L. Stratton, Esq.
Silvia V. Townsend, Esq.
JOE B. CORDILEONE &
ASSOCIATES
438 Camino del Rio South, Suite 213
San Diego, California 92108

**BY MAIL**         I am "readily familiar" with the firm's practice of collection and processing correspondence for mailing. Under that practice it would be deposited with the U.S. Postal Service on that same day with postage thereon fully prepaid at Los Angeles, California, in the ordinary course of business. I am aware that on motion of the party served, service is presumed invalid if postal cancellation date or postage meter date is more than one day after date of deposit for mailing in affidavit.

**X BY OVERNIGHT**   By overnight courier, I arranged for the above-referenced document(s) to be delivered to an authorized overnight courier service, Federal Express, for delivery to the addressee(s) above, in an envelope or package designated by the overnight courier service with delivery fees paid or provided for.

Executed on **May 18, 2006**, at Los Angeles, California.

I declare under penalty of perjury under the laws of the State of California that the above is true and correct.

_____          _Bernadette V. Wilson_
      Bernadette V. Wilson

190327.1 IM040-015

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045