















AXR    5/19/06    8:49

3:04-CV-02459   TACKETT V. IMPERIAL COUNTY OF

*50*

*NTCF.*

1
2  J. Scott Tiedemann, Bar No. 180456
   stiedemann@lcwlegal.com
3  Mark H. Meyerhoff, Bar No. 180414
   mmeyerhoff@lcwlegal.com
4  Laura J. Kalty, Bar No. 199520
   lkalty@lcwlegal.com
5  LIEBERT CASSIDY WHITMORE
   A Professional Law Corporation
6  6033 W. Century Boulevard, Suite 500
   Los Angeles, CA  90045
7  Telephone:  (310) 981-2000
   Facsimile:   (310) 337-0837

8  Attorneys for Defendants
   COUNTY OF IMPERIAL and IMPERIAL
9  COUNTY SHERIFF'S DEPARTMENT



10              UNITED STATES DISTRICT COURT

11           SOUTHERN DISTRICT OF CALIFORNIA

12

13 | JUSTIN TACKETT, an individual, | Case No.: 04cv2459 J (NAJ) |
   |                                |                            |
14 |                Plaintiff,      | Assigned for All Purposes To: |
   |                                | Judge Napoleon Jones, Courtroom 12 |
15 | v.                             | Complaint Filed:  December 9, 2004 |
   |                                |                            |
16 | COUNTY OF IMPERIAL, a          | **DEFENDANTS' APPENDIX OF** |
   | governmental entity, and IMPERIAL | **EVIDENTIARY SUPPORT IN** |
17 | COUNTY SHERIFF'S               | **SUPPORT OF MOTION FOR** |
   | DEPARTMENT, a governmental     | **SUMMARY JUDGMENT, OR IN THE** |
18 | entity doing business in the State of | **ALTERNATIVE PARTIAL SUMMARY** |
   | California; and, DOES 1 through 50, | **JUDGMENT** |
19 | inclusive,,                    |                            |
   |                                | **[VOLUME 2 OF 3, EXHIBITS 17-27]** |
   |                Defendants.     |                            |

20
21  Date:  June 26, 2006
    Time:  10:30 a.m.
22  Dept:  12

23  [Filed concurrently with Defendants' Notice
    of Motion and Motion for Summary
24  Judgment or Partial Summary Judgment;
    Memorandum of Points and Authorities;
25  [Proposed] Judgment; and [Proposed]
    Order]
26
27  [Exempt from filing fees pursuant to Gov.
    Code, § 6103.]

28

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

ORIGINAL



190285.1 IM040-015

Defendants' Appendix Of Evidentiary Support In
Support Of Motion For Summary Judgment
04CV2459 J (NAJ)

1    Defendants COUNTY OF IMPERIAL and IMPERIAL COUNTY

2  SHERIFF'S DEPARTMENT (collectively "Defendants") hereby lodge with this

3  Court the following Index of Evidentiary Support in support of their Motion for

4  Summary Judgment, or in the Alternative Partial Summary Judgment, against

5  Plaintiff JUSTIN TACKETT ("Plaintiff"):

6    Declaration of Mark H. Meyerhoff;

7    Declaration of Harold Carter;

8    Declaration of Sharon Housouer;

9    Declaration of Dan DeVoy;

10    Declaration of Jesse Obeso;

11    Declaration of Charles Jernigan;

12    Declaration of Myron King;

13    Declaration of Scott Sheppeard;

14    Declaration of Gilbert G. Otero;

15    Declaration of Manuel Avila;

16    Declaration of Ed McErlain;

17    Declaration of Jake Holguin;

18    Declaration of Michael Coleman;

19    Declaration of Beverly Barrett;

20    Declaration of Deborah D. Owen;

21    Exhibit 1:   First Amended Complaint for Damages, filed on

22             March 21, 2005;

23    Exhibit 2:   Relevant excerpts from the transcripts of Plaintiff's depositions,

24             Volumes I, II and III, taken on January 17, 2006, January 31,

25             2006, and April 17, 2006, respectively;

26    Exhibit 3:   Defendants' First Set of Special Interrogatories, served on

27             November 21, 2005;

28  ///

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendants' Appendix Of Evidentiary Support In
Support Of Motion For Summary Judgment
04CV2459 J (NAJ)

1    Exhibit 4:   Plaintiff's Responses to First Set of Special Interrogatories,
2                 served on January 5, 2006;
3    Exhibit 5:   Plaintiff's Supplemental Responses to First Set of Special
4                 Interrogatories, served on February 21, 2006;
5    Exhibit 6:   September 25, 2001 Notice of Proposed Disciplinary Action –
6                 two days suspension without pay;
7    Exhibit 7:   November 16, 2001, Notice of Final Disciplinary Action - two
8                 days suspension without pay;
9    Exhibit 8:   February 7, 2002, Imperial County Sheriff's Department
10               Significant Event Review Committee ("SERC") Report, C.R.
11               0111-0017;
12   Exhibit 9:   California Highway Patrol Traffic Collision Report;
13   Exhibit 10:  March 5, 2002, Internal Affairs Investigation No. 2002-009;
14   Exhibit 11:  June 21, 2002, Notice of Proposed Disciplinary Action – five
15               days suspension without pay;
16   Exhibit 12:  July 12, 2002, Transcript of Pre-disciplinary Skelly Conference;
17   Exhibit 13:  October 18, 2002, Notice of Final Disciplinary Action – five
18               days suspension without pay;
19   Exhibit 14:  December 29, 2001 Memorandum from Sgt. Myron King to
20               Chief Deputy Sharon Housouer;
21   Exhibit 15:  January 14, 2002, Case Handling Form (Lackey);
22   Exhibit 16:  April 26, 2002, Interoffice Memo from Chief Deputy Sharon
23               Housouer to Sgt. Delphino Matus;
24   Exhibit 17:  July 8, 2002, Internal Affairs Investigation No. 2002-018;
25   Exhibit 18:  October 3, 2002, Notice of Proposed Disciplinary Action - two
26               days suspension without pay;
27   Exhibit 19:  November 8, 2002, Transcript of pre-disciplinary conference for
28               IA Nos. 2002-007 and 2002-018;

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendants' Appendix Of Evidentiary Support In
Support Of Motion For Summary Judgment
04CV2459 J (NAJ)

| | |
|---|---|
| 1 | Exhibit 20: February 24, 2003, Second Notice of Proposed Disciplinary |
| 2 | Action – two days suspension without pay; |
| 3 | Exhibit 21: April 4, 2003, Final Notice of Disciplinary Action – two days |
| 4 | suspension without pay; |
| 5 | Exhibit 22: February 11, 2002, Interoffice Memo from Sgt. Manuel Avila to |
| 6 | Chief Deputy Sharon Housouer; |
| 7 | Exhibit 23: February 13, 2002, Interoffice Memo from Chief Deputy Sharon |
| 8 | Housouer to Sgt. Delfino Matus; |
| 9 | Exhibit 24: February 14, 2002, Internal Affairs Investigation No. 2002-007; |
| 10 | Exhibit 25: October 3, 2002, Notice of Proposed Disciplinary Action – |
| 11 | termination from employment effective October 11, 2002; |
| 12 | Exhibit 26: February 24, 2003, Second Notice of Proposed Disciplinary |
| 13 | Action – termination from employment; |
| 14 | Exhibit 27: April 4, 2003, Final Notice of Disciplinary Action – thirty days |
| 15 | suspension without pay; |
| 16 | Exhibit 28: July 29, 2003, Case Handling Form (Macias); |
| 17 | Exhibit 29: Administrative Investigation, IA #2003-0128; |
| 18 | Exhibit 30: November 25, 2003, Notice of Proposed Disciplinary Action – |
| 19 | termination (Macias); |
| 20 | Exhibit 31: June 16, 2003, Complaint Form filed by Reno Bertussi; |
| 21 | Exhibit 32: June 23, 2003, Case Handling Form (Bertussi); |
| 22 | Exhibit 33: Administrative Investigation, IA#2003-0122; |
| 23 | Exhibit 34: November 25, 2003, Notice of Proposed Disciplinary Action – |
| 24 | termination (Bertussi); |
| 25 | Exhibit 35: December 19, 2003, Deputy Tackett Letter of Resignation; |
| 26 | Exhibit 36: June 14, 2004, Tort Claims for Damages Against the County of |
| 27 | Imperial; |
| 28 | /// |

LIEBERT CASSIDY WHITMORE
A Professional Law Corporation
6033 W. Century Boulevard, Suite 500
Los Angeles, CA 90045

Defendants' Appendix Of Evidentiary Support In
Support Of Motion For Summary Judgment
04CV2459 J (NAJ)

1    Exhibit 37:  September 13, 2004, Complaint of Discrimination Under the

2                Provisions of the California Department of Fair Employment

3                and Housing Act;

4    Exhibit 38:  September 20, 2004, EEOC Charge of Discrimination.

5

6    Dated:  May 18, 2006                      LIEBERT CASSIDY WHITMORE

7

8                                     By: _____
                                         J. Scott Tiedemann
9                                        Mark H. Meyerhoff
                                         Laura J. Kalty
10                                       Attorneys for Defendants
                                         COUNTY OF IMPERIAL and
11                                       IMPERIAL COUNTY SHERIFF'S
                                         DEPARTMENT
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

### IA # 2002-018



INVESTIGATION CONDUCTED
BY
SGT. DELFINO O. MATUS

00875
Ex. 17

367

# TABLE OF CONTENTS

1.   Memo to Sgt. Delfino O. Matus from Chief Deputy
     Sharon Housouer dated April 26, 2002, RE: Deputy
     Justin Tackett.

2.   Memo to Chief Deputy Sharon Housouer from Sgt. Myron
     King dated December 29, 2001, RE: Deputy Justin
     Tackett.

3.   Memo to Communications Supervisor Norma Flores from
     Sgt. Delfino O. Matus dated May 2, 2002, RE: CR#
     0112-0996 Communication recordings.

4.   Brawley Police Department Traffic Collision Report #
     014194.

5.   Notice to Deputy Justin from Sgt. Delfino O. Matus
     dated July 8, 2002.

6.   Copy of CR# 0112-0996. Report prepared by Deputy
     Justin Tackett.

7.   Radio Log summary report for December 28, 2001.

8.   Imperial County District Attorney Case Handling Form
     on Randy Lee Lackey dated 1-14-02.

9.   CAD call Response Times, dated December 28, 2001.

10.  CAD Call Narrative Search Report dated December
     28, 2001.

11.  Department of Motor Vehicle printout on
     California license plate number 2KWN995.

12.  Transcribed radio and telephone transmissions as
     related to December 28, 2001.

13.  Transcribed interview of Sgt. Myron King dated May
     14, 2002.

14.  Transcribed interview of Deputy Andrew Lowenthal
     dated May 14, 2002.

00876

Ex. 17
368

15.   Transcribed interview of Deputy Justin Tackett dated
      July 12, 2002.

16.   Transcribed interview of Deputy Mark McNay dated
      July 22, 2002.

17.   Transcribed interview of Agent Steve Pope dated
      August 1, 2002.

18.   Transcribed interview of Deputy Gary Hamilton dated
      August 6, 2002.

/////

**Ex. 17**

**00877**

369

# COMPLAINT

On April 30, 2002, the Administrative Investigations Unit
received a memo dated April 26, 2002, from North County
Operations Chief Deputy Sharon Housouer. Attached with
Chief Deputy Housouer's memo was a memo from patrol Sgt.
Myron King. Chief Deputy Housouer was requesting an
internal affair investigation into the conduct of Deputy
Justin Tackett regarding an incident that occurred on
December 28, 2001.

Sgt. King's memo was addressed to Chief Deputy Housouer.
The memo was dated December 29, 2001. The following is a
summary of Sgt. King's memo.

Sgt. King states that on December 28, 2001, around midnight
Brawley Police Department broadcasted a lookout for vehicle
involved in a hit and run. The vehicle was described as a
lifted blue jeep with a ragtop, with fresh front-end
damage. The vehicle was last seen southbound on Highway 86
from Brawley.

A couple of hours later Brawley Police Department requested
that a deputy go by a residence located 4548 Elder Road,
Brawley, California, to see if the suspect vehicle was at
that location. Deputy Tackett responded to the location.
Deputy Tackett located a vehicle that matched the
description of the suspect vehicle. Deputy Tackett was told
to standby and that Brawley Police Department would send an
officer to the location.

Sgt. King states that a few minutes later he heard Deputy
Tackett requesting a cover unit, and he started responding
to the location. Sgt. King states later he heard Deputy
Tackett say he was code 4, and that he had one in custody
for resisting arrest.

Sgt. King stated that upon arriving at 4548 Elder Road, he
observed two Brawley Police units parked on Elder Road, and
did not see the sheriff's unit. He met with two Brawley
Police officers, and was informed that the Jeep was not the
suspect vehicle. The damage appeared to be old. The Jeep
didn't appear to have been moved recently.

Sgt. King states that he walked to the driveway and
observed the sheriff's unit on the driveway, parked next to

00878 **Ex. 17**
370

the residence, with it lights illuminating the residence, and made contact with Deputy Tackett.

Deputy Tackett told Sgt. King that he observed a Jeep in the backyard of the residence. Sgt. King said the Jeep was approximately 75-100 yards in the yard from Elder Road.

Sgt. King states that Deputy Tackett had said that he drove onto the driveway, and back to where the Jeep was located and around it, checked the damage, and called in the license plate number, and drove back out the driveway. Deputy Tackett positioned the unit in the driveway, and illuminated the residence with the unit lights.

Sgt. King stated that he asked Deputy Tackett why he didn't park on Elder Road, and that he said that he was afraid that someone might try to leave the residence.

Sgt. King stated Deputy Tackett had told him while he was waiting for the arrival of the Brawley Police Department; a male subject (later identified as Randy Lackey) came out of the residence to see what was going on. Deputy Tackett had told him that Brawley Police Department wanted to talk to him.

Mr. Lackey, who was dressed only in his trousers, stated that he was going inside his residence to get a jacket and shoes, because it was cold. Deputy Tackett did not allow him to go into the residence, because of an officer safety issue. Mr. Lackey was arrested for interfering.

Sgt. King stated that Deputy Tackett insisted on booking Mr. Lackey on the violation. Sgt. King ordered him to cite and release Mr. Lackey.

Sgt. King believed that there were problems with the arrest, and with Deputy Tackett entering the property to inspect the vehicle, and his reluctance to take advice from Sgt. King regarding the arrest, and its potential problems. /////

00879

Ex. 17

371

5

# POLICY VIOLATIONS

1.  RULES OF CONDUCT, SECTION 2.1.01 VIOLATION OF RULES
2.  RULES OF CONDUCT, SECTION 2.1.04 INCOMPETENCE
3.  RULES OF CONDUCT, SECTION 2.1.06 UNBECOMING CONDUCT
4.  RULES OF CONDUCT, SECTION 2.3.04 ARREST, SEARCH, AND
    SEIZURE

*THE ABOVE SECTIONS ARE FROM THE IMPERIAL COUNTY SHERIFF'S
DEPARTMENT MANUAL OF POLICIES AND PROCEDURES*
/////

00880

**Ex. 17**

372

6

# INVESTIGATIVE SUMMARY

On April 30, 2002, the Imperial County Sheriff's Department Administrative Investigations Unit received a memo from Chief Deputy Sharon Housouer requesting an internal investigation regarding the conduct of Deputy Justin Tackett of an incident that occurred on December 28, 2001. Deputy Tackett was assigned to assist Brawley Police Department in locating a vehicle involved in a hit and run.

Attached to Chief Deputy Housouer's memo was a memo from Patrol Sgt. Myron King describing the events of December 28, 2001. Sgt. King's memo was dated December 29, 2001.

AIU Sgt. Delfino O. Matus obtained a copy of Imperial County Sheriff's Department crime report number 0112-0996 that was prepared by Deputy Tackett. The following is a summary of Imperial County Sheriff's Department case number 0112-0996, dated December 28, 2001. Deputy Justin Tackett #871 was assigned to North County Patrol at the time of incident, prepared the report.

On December 28, 2001 at approximately 0150 hours, Deputy Tackett responded to 4548 Elder Road, Brawley, California, in response to a vehicle at that location that was possibly involved in a hit and run collision, in the city of Brawley.

Deputy Tackett responded at the request of the Brawley Police Department, who was investigating the hit and run, as related to Brawley Police case number 014194.

Upon arrival at the Elder Road address, Deputy Tackett observed a vehicle that matched the description of the hit and run vehicle. Deputy Tackett contacted the sheriff's communication center so they could notify Brawley Police of his finding.

Deputy Tackett positioned his patrol vehicle in front of the residence, with his red and blue lights on, and illuminated the front and rear doors with the patrol unit's spotlights. Deputy Tackett then exited the patrol unit and waited for the arrival of the Brawley Police Department.

While waiting for Brawley Police to arrive, Deputy Tackett observed Mr. Randy Lackey exit the front door, wearing only

7

**00881**   **Ex. 17**
373

blue jean trousers. As Mr. Lackey approached Deputy
Tackett, Deputy Tackett observed that Mr. Lackey had a red
mark on his back, possibly an injury from the collision.
Mr. Lackey was also the registered owner of the suspected
hit and run vehicle. Deputy Tackett stated he detained Mr.
Lackey for investigation. Deputy Tackett states that if Mr.
Lackey returned to the residence, it would be an officer
safety issue, and investigation obstruction.

Deputy Tackett stated that Mrs. Lackey stuck her head out
the front door, and inquired as to what was going on.
Deputy Tackett advised the Lackey's that there was an on-
going investigation that possibly involved someone in their
household, further advising the Lackey's that he didn't
have all the details of the investigation, however, the
Brawley Police Department was in route to their location to
speak to them.

Deputy Tackett stated that Mrs. Lackey told Mr. Lackey to
return inside the residence because it was cold outside.
Deputy Tackett asked Mrs. Lackey if she could retrieve some
warm clothing for Mr. Lackey, which she acknowledged by
saying okay.

Shortly after Mrs. Lackey closed the front door, Mr. Lackey
informed Deputy Tackett that he was returning inside the
residence. Deputy Tackett informed Mr. Lackey that he
needed him to stay outside for officer safety reasons, and
that the Brawley Police Department needed to contact him.
Mr. Lackey told Deputy Tackett that he didn't care that he
was going back inside the residence.

Deputy Tackett told Mr. Lackey if he walked away he was
going to be placed under arrest for 148 PC Delaying,
obstructing, resisting a peace officer. Mr. Lackey started
walking toward his residence. Deputy Tackett grabbed his
right elbow, and told him to stop, or he was going to be
placed under arrest. Deputy Tackett stated Mr. Lackey
pulled his elbow away continuing to walk. Mr. Lackey did
this a couple of times. Deputy Tackett stated he contacted
the sheriff's communication center, requesting a back-up
unit.

Mr. Lackey continued to walk away, at which point Deputy
Tackett stepped in front of him, and extended his right arm
and the palm of his hand outward, telling Mr. Lackey that
it was his last chance to stop or be arrested. Deputy

00882   **Ex. 17**
                374

Tackett stated Mr. Lackey pushed away his (Tackett) arm from him (Lackey), and continued to push Deputy Tackett left shoulder, in an attempt to get by Deputy Tackett and into the residence.

Deputy Tackett attempted to restrain Mr. Lackey, however, he resisted. Deputy Tackett stated that during that time, Mrs. Lackey came out the residence with a white sweater for Mr. Lackey, and saw the altercation.

Deputy Tackett told Mrs. Lackey to tell her husband to stop being combative and resisting, which she did, and that he complied, subsequently being placed under arrest, and placed in the patrol unit.

Patrol Sgt. Myron King responded to the location of the incident as did Deputy Andrew Lowenthal, and was briefed of what had transpired.

Deputy Tackett stated that Sgt. King advised him to cite and release Mr. Lackey, which Deputy Tackett complied with.

On January 14, 2002 the case was submitted to the Imperial County District Attorney's Office for review, charging Mr. Lackey with 148 PC. Upon being reviewed the case was rejected in the interest of justice and lack of evidence to prosecute.

Sgt. Matus obtained a copy Brawley Police Department Traffic Collision Report number 014194 that was prepared by Officer S. Pope #910.

Sgt. Matus obtained from the Imperial County Sheriff's Department Communications Supervisor Norma Flores audio copies of the radio and telephone communication of the incident on December 28, 2001, as related to crime report number 0112-0996.

Obtained from the Spillman computer was the radio log summary report for the time period of December 28, 2001 between the hours of 0000 and 0500. The following information is a summary for CALL ID 136784 and CR 0112-0996:

| 1. | 01:52:28 hours | 871 Tackett | assigned to a call. |
| 2. | 01:53:37 hours | 871 | U108 SM37681. |
| 3. | 01:53:43 hours | 871 | E/R to call. |

9

| | | | | |
|---|---|---|---|---|
| 4. | 01:57:53 hours | 871 | | Copied AVR. |
| 5. | 02:01:18 hours | 871 | | 28/2KWN995/Jeep. |
| 6. | 02:02:54 hours | 871 | | Arrived on scene. |
| 7. | 02:08:45 hours | 341 | Lowenthal | E/R to a call. |
| 8. | 02:10:37 hours | 871 | | C-4 10-15 for 148. |
| 9. | 02:14:49 hours | 871 | | 29/on N6582845. |
| 10. | 02:17:45 hours | 341 | | Going thru Niland. |
| 11. | 02:20:19 hours | 106 | Sgt. King | E/R to a call. |
| 12. | 02:24:03 hours | 871 | | St9 coming down rd. |
| 13 | 02:28:22 hours | 106 | | Arrived on scene. |
| 14. | 02:34:46 hours | 341 | | Arrived on scene. |
| 15. | 02:49:56 hours | 871 | | Req CR for 148. |
| 16. | 02:55:50 hours | 106 | | Completed call. |
| 17. | 02:55:50 hours | 341 | | Completed call. |
| 18. | 02:55:50 hours | 871 | | Completed call. |

On May 14, 2002, Sgt. Myron King was interviewed. The interview was tape-recorded.

On May 14, 2002, Deputy Andrew Lowenthal was interviewed. The interview was tape-recorded.

On May 21, 2002, Sgt. Matus attempted to interview Randy and Andrea Lackey regarding the events of December 28, 2001. They both refused the request to be interviewed. This refusal was at the request of their attorney.

On July 8, 2002, at approximately 1550 hours, Sgt. Matus served Deputy Tackett with a notice for interview regarding the complaint.

On July 12, 2002, Deputy Justin Tackett was interviewed. The interview was tape-recorded.

On July 22, 2002, Deputy Mark McNay was interviewed. The interview was tape-recorded.

On August 1, 2002, Agent Steve Pope of the Brawley Police Department was interviewed. The interview was tape-recorded.

On August 6, 2002, Deputy Gary Hamilton was interviewed. Deputy Hamilton is a former employee of the Brawley Police Department. The interview was tape-recorded.
//////

00884 **Ex. 17**
376

# WITNESS LIST

1.  Deputy Justin Tackett (ACCUSED)
    B/A: Imperial County Sheriff's Department/Court
    Services, telephone number 760-339-6311

2.  Sgt. Myron King
    B/A: Imperial County Sheriff's Department/South
    County Patrol, telephone number 760-339-6311

3.  Deputy Andrew Lowenthal
    B/A: Imperial County Sheriff's Department/North
    County Patrol, telephone number 760-344-2615

4.  Chief Deputy Sharon Housouer
    B/A: Imperial County Sheriff's Department/North
    County, telephone number 760-344-2615

5.  Deputy Mark McNay
    B/A: Imperial County Sheriff's Department/North
    County, telephone 760-344-2615

6.  Agent Steve Pope
    B/A: Brawley Police Department, telephone number
    760-351-7760

7.  Deputy Gary Hamilton
    B/A: Imperial County Sheriff's Department, telephone
    number 760-339-6312.
    /////

**00885**

11

**Ex. 17**
377

# WITNESS STATEMENTS

The following witness statements are summaries of tape-recorded statements obtained by Sgt. Delfino O. Matus. Refer to transcribed statements for complete details of the tape-recorded interviews.

On May 14, 2002, at approximately 0642 hours, Imperial County Sheriff's Patrol Sgt. Myron King was interviewed regarding the events of December 28, 2001. Sgt. King was the patrol supervisor for both North and South County.

Sgt. King stated that on December 28, 2001 at approximately midnight, Brawley Police Department put out a broadcast of a suspect jeep being involved in a misdemeanor hit and run that had occurred in their city.

Approximately two hours after the broadcast Brawley Police Department requested the assistance of the sheriff's department. They requested that a patrol unit respond to Elder Road (Randy Lackey residence), where a Jeep was located that matched the description of the suspect hit and run vehicle. Deputy Justin Tackett responded to the Elder Road location.

Sgt. King stated after Deputy Tackett arrived at the Elder Road location, he located a vehicle that was similar to the suspect vehicle. Upon locating the vehicle dispatch contacted Brawley Police Department to see what they wanted done with the vehicle. Brawley Police Department advised to stand by and that they had an officer in route to the location.

Sgt. King later overheard Deputy Tackett requesting assistance. Sgt. King stated he started responding to the Elder Road location. A short time he heard Deputy Tackett say that he had one in custody for resisting. Sgt. King stated that he continued to respond to Deputy Tackett's location.

Upon arriving at the Elder Road location he observed two Brawley Police Department units parked on Elder

12

00886 **Ex. 17**
378

Road, and didn't see the sheriff's patrol unit. Sgt. King met with two unidentified Brawley Police Officers. He asked the agent if it was the suspect vehicle and he said no. The agent said the damage was old and the vehicle appeared to have been parked for quite awhile, because of dirt piled over the rims.

Sgt. King states he observed the sheriff's patrol unit parked in the driveway, even with the residence. The patrol unit was approximately 20-30 yards from the roadway in the driveway. The unit's emergency lights were on as were other lights that illuminated the residence.

Sgt. King made contact with Ms. Shelly Rouhotas. Ms. Rouhotas is Randy Lackey's sister-in-law, who lives next door to him. Ms. Rouhotas told Sgt. King that something was going on and that he should check into it, because it wasn't right.

Sgt. King contacted Deputy Tackett. Deputy Tackett told Sgt. King he had seen the Jeep from the roadway, which was approximately 75 yards from the roadway on the Lackey property. Deputy Tackett drove onto the property and drove around the Jeep, obtained the license plate number, and then positioned himself in the driveway, in front of the residence to keep anyone from leaving.

Shortly after Deputy Tackett parked in the driveway, a subject (Randy Lackey) came out the residence, dressed only in pants, wanting to know what was going on. Deputy Tackett told Mr. Lackey that Brawley Police wanted to talk to one of the family members reference something that had happened.

After speaking with Deputy Tackett, Mr. Lackey who was only dressed in his pants wanted to go inside his residence and get dressed because it was cold. Sgt. King had stated that the temperature was in the high 30's or low 40's. Deputy Tackett told Mr. Lackey that he couldn't leave. Mr. Lackey attempted to leave, which resulted in Deputy Tackett attempting to hold him back. Mr. Lackey broke free, and was arrested for 148 PC.

00887   **Ex. 17**
379

Sgt. King stated when he arrived Mr. Lackey was in the backseat of the patrol unit, dressed only in his pants. The patrol unit was running, and the heating system was on.

After Deputy Tackett had told Sgt. King what had happened, Sgt. King felt that they were on shaky ground, because Deputy Tackett had been told to check to see if the Jeep was at the Elder Road location, and to wait for Brawley Police. Deputy Tackett took upon himself to go on the Lackey property and inspect the Jeep, without consent from the owner's of the property or a search warrant.

Sgt. King stated he told Deputy Tackett several times to cite and release Mr. Lackey, but Deputy Tackett had refused, until Sgt. King ordered Deputy Tackett to cite and release Mr. Lackey.

Sgt. King stated that Deputy Tackett had insinuated that the only reason Sgt. King wanted Mr. Lackey released was because who he was, referring to the Rouhotas relationship with Sgt. King.

Sgt. King stated Deputy Andrew Lowenthal was present during some of the conversation with Deputy Tackett, and that Deputy Lowenthal told Deputy Tackett to listen to the sergeant, because the sergeant was trying to help him.

Sgt. King states after they left the Elder Road location, he asked Deputy Tackett to meet him at the Brawley sub station, where they met. Sgt. King attempted to go over the scenario at the Elder Road location, but Deputy Tackett could not see what he did wrong. Deputy Tackett claimed that it was an officer safety issue.

Sgt. King stated he prepared a memo the following day and submitted the memo to Chief Deputy Sharon Housouer, regarding Deputy Tackett conduct.

On May 14, 2002, at approximately 1523 hours, Deputy Andrew Lowenthal was interviewed. The following is a summary of his tape-recorded interview.

00888   **Ex. 17**
380

Deputy Lowenthal stated he was working North County Patrol on December 28, 2001. He responded on a request for back up to the Elder Road location. The requesting back up was Deputy Justin Tackett. Deputy Tackett had been dispatched at the request of Brawley Police Department to the Elder Road location to check on a suspected hit and run vehicle, and to maintain the scene.

Deputy Lowenthal stated that upon arriving at the Elder Road location, he believes that Brawley Police Department was already on scene, and he subsequently met with Deputy Tackett.

Deputy Tackett informed Deputy Lowenthal of what had transpired at the location. Deputy Tackett stated that he was at Elder Road location investigating a suspected hit and run vehicle for Brawley Police Department, and that the subject (Randy Lackey) at that location became combative with him, and was taken into custody.

Deputy Lowenthal stated that Deputy Tackett had told him that Mr. Lackey wanted to go back inside his residence, and that Deputy Tackett wouldn't allow him because of an officer safety issue. Mr. Lackey persisted and was subsequently taken into custody.

Deputy Lowenthal stated that the Brawley Police Department ruled out the suspect vehicle, indicating that vehicle didn't appear to have been moved recently.

Deputy Lowenthal stated that Deputy Tackett had told him that he had driven to where the suspect vehicle was located on the property. Deputy Lowenthal described the property as being enclosed, with the exception of the driveway, stating that it did not have a gate.

Deputy Lowenthal stated that Sgt. King had arrived on scene, and had contacted Deputy Tackett. Deputy Lowenthal recalls that Sgt. King advised Deputy Tackett not to arrest Mr. Lackey, but Deputy Tackett was adamant in arresting him.

00889   **Ex. 17**

381

On July 12, 2002, at approximately 1340 hours, Deputy Justin Tackett was interviewed. Present was his attorney Brad Fields. The interview was tape-recorded. The following is a summary of the tape-recorded interview.

Deputy Tackett stated he responded to 4548 Elder Road at the request of Brawley Police Department to check on a vehicle described as a black or dark colored Jeep, removable rag top, with damage to the left front. The vehicle was reported to have been involved in a hit and run.

Upon arrival at the Elder Road location, with the aid of the unit spotlight he observed the possible suspect vehicle in a dirt lot southwest of the residence. The residence is partially surrounded by a fence. There is an opening in the driveway area. The vehicle was approximately 20-25 yards from Elder Road.

Deputy Tackett states he drove onto the driveway, and to where the vehicle was located, and obtained the license plate number to the vehicle. Deputy Tackett believes the vehicle came back registered to Randy Lackey. Deputy Tackett stated that he did not have consent to be on the property.

Deputy Tackett stated that the suspect vehicle appeared to have been recently parked there.

After checking the suspect vehicle, Deputy Tackett parked the patrol unit on the driveway, adjacent to the residence. Deputy Tackett illuminated portions of the residence.

Deputy Tackett stated the reason he parked next to the residence was because he has heard that the farmers when they hear strange noises during hours of darkness, they come out with their weapons and shoot into the darkness.

A couple of minutes after parking in the driveway, Mr. Lackey came out the residence, and he made contact with Deputy Tackett. Deputy Tackett stated that he explained why he was there, and that Brawley Police was in route to talk to him. Mr. Lackey told Deputy

16

00890 **Ex. 17**
382

Tackett the vehicle hadn't been running, and that it wasn't the vehicle involved in the hit and run.

Deputy Tackett states a few minutes later Mrs. Lackey came out the residence. Deputy Tackett stated he told Mrs. Lackey why he was there. After a few minutes she decided to go back into the residence because it was cold, telling Mr. Lackey that he should come inside also.

Deputy Tackett stated he told Mrs. Lackey if she could retrieve a sweater and shoes for Mr. Lackey, so they could continue to wait for Brawley Police Department, and that she said okay.

Approximately one minute after Mrs. Lackey went into the residence, Mr. Lackey said he was going inside. Deputy Tackett advised him that he was temporarily being detained for investigative purposes and officer safety issues. Deputy Tackett also stated that Mr. Lackey had a red mark on his back that was consistent with being involved in an accident.

Mr. Lackey persisted on wanting to go inside the residence. Deputy Tackett advised him of section 148 PC. Mr. Lackey proceeded to walk away, and was stopped several times until Deputy Tackett took him into custody. During that time Mrs. Lackey walked out the residence, and told Mr. Lackey to calm down. Deputy Tackett explained to Mrs. Lackey what had occurred.

Deputy Tackett stated that during the arrest he had requested a back up unit to respond to his location. Brawley Police, Deputy Andrew Lowenthal, Sgt. Myron King responded to his location.

Deputy Tackett stated after Sgt. King arrived on scene, he met with him and explained to Sgt. King what had occurred in regards to the arrest.

Deputy Tackett stated Sgt. King had asked him how he felt if Mr. Lackey was released. Deputy Tackett stated that he informed Sgt. King, that he was assaulted and they all go to jail for that violation. Deputy Tackett stated that he was ordered by Sgt. King to cite and release Mr. Lackey, which Deputy Tackett complied with.

00891 **Ex. 17**
383

Deputy Tackett stated that he was perturbed when he was ordered to release Mr. Lackey after being assaulted by him.

Deputy Tackett stated that he felt that Mr. Lackey wasn't ordered release for legal reason but for favoritism, stating that during the incident when Sgt. King was responding, he was on the radio and was heard by Mrs. Lackey. She told Deputy Tackett when Sgt. King arrives he would take care of it.

Deputy Tackett states when Sgt. King arrived on scene he met with Mrs. Lackey, and shortly thereafter Mr. Lackey was ordered released.

On July 22, 2002, at approximately 1634 hours, Deputy Mark McNay was interviewed. Deputy McNay was interviewed in regards to a statement that had been made by Deputy McNay to Deputy Tackett. Deputy Tackett had stated that the reason he had parked next to the residence was because Deputy McNay had told him previously those farmers when they hear strange noises during the hours of darkness, the farmers come out with their weapons and they shoot into the darkness.

Deputy McNay stated that he may have mentioned a couple of instances where he was in an area where shots had been fired, but is wasn't known if those shots were directed at him.

On August 1, 2002, at approximately 0932 hours, Agent Steve Pope of the Brawley Police Department was interviewed.

Agent Pope stated he had taken a report earlier in the evening of a hit and run where a suspected intoxicated driver had struck a parked vehicle. The suspect vehicle was a black Jeep. Later, he received information of a black Jeep out at the Elder Road location, where the owner, a high school student was reportedly notorious for driving intoxicated.

Agent Pope requested that the sheriff's department go to the Elder Road location and check if the black Jeep was at that location, and if it had damage. If the suspected hit and run vehicle was there he would

**Ex. 17**

00892    384

respond to the location, and contact the residents, and determine if that vehicle was the one involved in the hit and run.

When Deputy Tackett responded, he determined that there was a black Jeep in the back part of the property, and that the Jeep had damage to the driver's side. While in route to the location Deputy Tackett put out a request for assistance. Agent Pope stated that he responded Code 3.

Agent Pope stated he arrived on scene, possibly in the company of Officer Hamilton, who is now employed by the sheriff's department. Agent Pope stated he observed an individual, who he believed was the father of his suspect in the hit and run, in the back seat of the patrol unit that was parked in the driveway. The individual was wearing Levis type trouser, with no shirt or shoes.

Agent Pope stated that he met with Deputy Tackett, who informed him that he had located the damaged Jeep, and after doing so, the Brawley Police Department was contacted. Deputy Tackett informed Agent Pope, while he was at the Elder Road location, a man who had been arrested, came out of the residence, and that later the man wanted to go back into the residence to retrieve a shirt or jacket, but that Deputy Tackett did not allow him to go back in because of officer safety reasons. Deputy Tackett told Agent Pope that the man had put up a struggle when detained.

Agent Pope stated he checked the Jeep, and that the Jeep had drivers side damage, and that it appeared to be sitting there for quite some time, stating it had dust all over the seats, cobwebs under the Jeep and on the steering wheel.

Agent Pope stated a sheriff's sergeant and a deputy arrived on scene. The man was later cited and released.

Agent Pope stated he spoke with Deputy Tackett about a week later. Deputy Tackett told Agent Pope that he couldn't believe that the sergeant got as mad as he did.

19

00893   **Ex. 17**
                  385

Agent Pope stated that he told Deputy Tackett that he was being a little harsh on the man, he should have accompanied him into the residence to retrieve a jacket because it was cold. Deputy Tackett told Agent Pope that the man didn't want Deputy Tackett in the residence.

On August 6, 2002 at approximately 0721 hours, Deputy Gary Hamilton was interviewed.

Deputy Hamilton stated on December 28, 2001, while he was employed by the Brawley Police Department as a police officer, he responded to Elder Road on a assistance call from the sheriff's department. The deputy was at that location on a suspected hit and run vehicle that had been located.

Deputy Hamilton stated when he arrived at the Elder Road location he met with Deputy Tackett, stating that there were two or three civilians, possibly occupants of the residence at the Elder Road location.

Deputy Hamilton stated that the sheriff's unit was parked in the driveway of the residence, indicating that there was a white male in handcuffs in the back seat of the sheriff's unit. The white male was dressed in Levis trousers or shorts.

Deputy Tackett told Deputy Hamilton that he had located the suspect Jeep in the hit and run, and that the individual in the back seat had been uncooperative and had placed under arrest for 148.

Deputy Hamilton stated after he had arrived Deputy Lowenthal and Officer Trevino from Westmorland Police Department arrived at the location. Later, and as Deputy Hamilton was getting ready to leave a sergeant from the sheriff's department arrived on scene.

Deputy Hamilton stated that Agent Pope and himself inspected the Jeep, and that it appeared as though the Jeep had been sitting there for a while, stating that it was rusting, and looked like other rubbish had been placed on seats of the Jeep. They determined that it wasn't the same Jeep they were looking for on the hit and run.
//////

20

00894 **Ex. 17**

386

# FINDINGS

On December 28, 2001, at approximately 0150 hours, North County patrol Deputy Justin Tackett at the request of the Brawley Police Department responded to 4548 Elder Road, Brawley, California. Deputy Tackett was requested to check that location for a black or dark Jeep with damage to the right front end. The Jeep had been involved in a hit and run in Brawley, California area.

Deputy Tackett upon arriving at the Elder Road location observed a vehicle that matched the description of the suspect vehicle in the yard several yards west of the residence. The suspect vehicle had been estimated to be approximately 30 yards west of Elder Road.

Deputy Tackett without obtaining permission from the property owners or obtaining a warrant to search the property at 4548 Elder Road entered the fenced property. He entered through an opening in the driveway, and drove through the driveway opening to where the suspect vehicle was located. He drove near the vehicle and noticed that the vehicle had extensive damage to left front end. Deputy Tackett obtained the license plate number to the vehicle. The vehicle was registered to Randy and Andrea Lackey.

Deputy Tackett after obtaining the vehicle license plate number contacted the sheriff's communication center, and advised dispatch to inform Brawley Police Department of the suspect vehicle. Brawley Police Department requested that Deputy Tackett stand by.

Deputy Tackett then drove back the way he entered, and parked adjacent to the residence in the driveway and illuminated the residence, and waited for the arrival of the Brawley Police Department.

A few minutes later Mr. Randy Lackey came out of the residence, wearing only blue jeans, the weather was cold. Deputy Tackett informed Mr. Lackey that the vehicle was possibly involved in a hit and run, and that Brawley Police Department was in route to meet with him. Mr. Lackey stated that it wasn't the suspect vehicle, that the vehicle hadn't been moved in a while.

21

A few minutes later Ms. Andrea Lackey came out of the residence. Deputy Tackett informed as to why he was there. Ms. Lackey told Deputy Tackett they had been home. Ms. Lackey told Mr. Lackey that he should go inside the residence because it's cold. Deputy Tackett suggested that she get some clothing and shoes for Mr. Lackey.

Deputy Tackett and Mr. Lackey waited for the arrival of Brawley Police Department. A couple of minutes after Ms. Lackey went into the residence; Mr. Lackey decided to go into the residence because it was cold.

Deputy Tackett did not allow Mr. Lackey to go into the residence because he was now being detained for investigative purposes on the hit and run and issues of officer safety. When Mr. Lackey came out of the residence, he had a pants on, a characteristic of a person attempting to alter their appearance, also Deputy Tackett had observed a red mark on Mr. Lackey's back, which was believed to be consistent with an injury received during an accident. Mr. Lackey had no other injuries.

Mr. Lackey several times attempted to go into his residence but was not allowed by Deputy Tackett, who explained to him CPC section 148. Deputy Tackett arrested Mr. Lackey for CPC 148 after he attempted to go into the residence. Deputy Tackett prior to arresting Mr. Lackey had requested assistance from other sheriff's units.

When patrol Sgt. Myron King arrived on scene, he met with Deputy Tackett, who gave Sgt. King an account of what had occurred. Sgt. King ordered Deputy Tackett to cite and release Mr. Lackey because Deputy Tackett did not have permission or a search warrant to enter the Lackey property. Deputy Tackett felt that there was favoritism on Sgt. King's part because he knew the Lackey's personally, that's why he wanted Mr. Lackey released.

It is believed that Deputy Tackett had insufficient evidence to detain Mr. Lackey. The Brawley Police Department had not transmitted any suspect information that was associated with the hit and run vehicle. There was also no supporting information or evidence that associated Mr. Lackey as a suspect in the hit and run. It is believed Deputy Tackett based his detention only on conjecture.

00896 **Ex. 17**
388

Additionally, during Deputy Tackett's investigation of the suspected hit and run vehicle on the Lackey property, he should have detected that the Jeep on the Lackey property had not been moved for an extended period of time, and that the damage to the Jeep showed the effects of corrosion.

As a result, the investigation finds that Deputy Tackett violated the following Imperial County Sheriff's Department Policies and Procedures:

1.   **RULES OF CONDUCT, SECTION 2.1.01 VIOLATION OF RULES**
     *Employees shall commit any other acts or omit any other acts which constitute a violation of any of the rules, regulations, directives, orders or policies of this department, whether stated in this general order or elsewhere. Ignorance of the rules, regulations, directives, orders, or policies shall not be considered as a justification for any such violations. Employees shall be responsible for their own acts, and they shall not shift to others the burden of responsibility for executing or failing to execute a lawful or police duty. **SUSTAINED**

2.   **RULES OF CONDUCT, SECTION 2.1.04 INCOMPETENCE**
     *Employees shall maintain sufficient competency to properly perform their duties and assume the responsibilities of their positions. Employees shall perform their duties in a manner which will tend to establish and maintain the highest standards of efficiency in carrying out the functions and objectives of the department. In competency may be demonstrated by a lack of knowledge of the application of laws required to be enforced, an unwillingness or inability to perform assigned tasks. The failure to conform to work standards established for the employees rank, grade, or position, the failure to take appropriate action on the occasion of a crime, disorder, or other condition deserving police attention, absence without leave; or unauthorized absence from the assignment during a tour of duty. In addition to other indicia of incompetence, the following will be considered primal facie evidence of incompetence: repeated poor evaluations or a written record of repeated infractions of the rules, regulations, manuals or directives. **SUSTAINED**

**00897  Ex. 17**

**389**

3.   **RULES OF CONDUCT, SECTION 2.1.06 UNBECOMING CONDUCT**
*Employees shall conduct themselves at all times,
both on and off duty, in such a manner as to reflect
most favorably on this department. Conduct
unbecoming of an employee shall include that which
tends to bring this department into disrepute or
reflects discredit upon the employee as a member of
this department, or that which tends to impair the
operation and efficiency of this department.
**SUSTAINED**

4.   **RULES OF CONDUCT, SECTION 2.3.04 ARREST, SEARCE &
SEIZURE**
*Officers shall not make any arrest, search or
seizure which they know or ought to know is not in
accordance with law and established department
procedures or policies. **SUSTAINED**
//////

00898   **Ex. 17**

390

# ATTACHMENTS

1. Memo to Sgt. Delfino O. Matus from Chief Deputy Sharon Housouer dated April 26, 2002, RE: Deputy Justin Tackett.

2. Memo to Chief Deputy Sharon Housouer from Sgt. Myron King dated December 29, 2001, RE: Deputy Justin Tackett.

3. Memo to Communications Supervisor Norma Flores from Sgt. Delfino O. Matus dated May 2, 2002, RE: CR# 0112-0996 Communication recordings.

4. Brawley Police Department Traffic Collision Report number 014194.

5. Notice to Deputy Justin from Sgt. Delfino O. Matus dated July 8, 2002.

6. Copy of CR# 0112-0996. Report prepared by Deputy Justin Tackett.

7. Radio Log summary report for December 28, 2001.

8. Imperial County District Attorney Case Handling Form on Randy Lee Lackey dated 1-14-02.

9. CAD call Response Times, dated December 28, 2001.

10. CAD Call Narrative Search Report dated December 28, 2001.

11. Department of Motor Vehicle printout on California license plate number 2KWN995.
/////

00899   **Ex. 17**

391

# EVIDENCE LIST

1.   1-audio cassette tape with the interview of Sgt.
     Myron King dated May 14, 2002.

2.   1-audio cassette tape with the interview of Deputy
     Andrew Lowenthal dated May 14, 2002.

3.   1-audio cassette tape with the interview of Deputy
     Justin Tackett dated July 12, 2002.

4.   1-audio cassette tape with the interview of Deputy
     Mark McNay dated July 22, 2002.

5.   1-audio cassette tape with the radio/telephone
     transmissions dated December28, 2001.

6.   1-audio cassette tape with the interview of Agent
     Steve Pope dated August 1, 2002.

7.   1-audio cassette tape with the interview of Deputy
     Gary Hamilton dated August 6, 2002.

/////

00900 **Ex. 17**

392

*Imperial County Sheriff's Department*

## HAROLD D. CARTER
### Sheriff-Coroner-Marshall

## INTEROFFICE MEMO

RECE[...]
APR 3 0 [...]
BY:

DATE: April 26, 2002

TO: Sergeant Delfino Matus, AIU

FROM: Chief Deputy Sharon Housouer, North County Operations

SUBJECT: Deputy Sheriff Justin Tackett

Please initiate an Internal Affairs Investigation on Deputy Justin
Tackett reference attached report involving a case where he was
checking on a vehicle for the Brawley Police Department.

Attachments:

Memo from Sergeant Myron King
Cr# 0112-0996 as prepared by Deputy Sheriff Justin Tackett

Cc: Assistant Sheriff Jernigan
    Chief Deputy David Prince

RECEIVED
APR 3 0 2002
BY:

RE[...]D
APR [...] 2002
BY:

**Ex. 17**

00901          393

# Memorandum

**To:**   Chief Sharon Housouer

**From:**   Sgt. Myron King

**Date:**   12/29/01

**Re:**   Deputy Justin Tackett

On 122801 around midnight, Brawley PD broadcast a lookout for a vehicle involved in a 20002 VC. The vehicle was described as a blue jeep with a ragtop. The vehicle was lifted and had fresh front-end damage. It was last seen S/B on Hwy. 86 from Brawley. It was unknown if the driver was male or female.

About two hours later Brawley PD requested a deputy respond to an address on Elder Rd. to see if the jeep could be at that residence. Deputy Tackett responded to the residence. I heard him advise dispatch that a black jeep with no top but had front-end damage was at the scene. He requested what Brawley PD wanted him to do. He was told to standby and Brawley would send an officer to the scene.

A couple of minutes later I heard Deputy Tackett request a cover officer. I told dispatch that Deputy Tackett was requesting 10-18 and to advise Brawley PD. I started responding to the scene. Deputy Tackett advised it was code 4 and he had a 10-15 for 148 PC. I continued to the scene.

Upon arriving at the scene on Elder Rd., I saw two Brawley PD units parked on Elder. I did not see the sheriff unit. Two Brawley PD officers met me on Elder Rd. One of them was an agent. I did not get his name. He told me that the jeep was not the one involved in the accident. He said the damaged area was obviously from an old accident. The damaged area was covered in rust, and the rims had a layer of dirt on them indicating the vehicle had not been moved recently.

I walked to the driveway and saw the sheriff unit parked in the driveway directly opposite the house. Its headlights and right alley light were on illuminating the house. I contacted Deputy Tackett to find out what happened. He told me he could see the jeep parked on the back of the property from the roadway. I looked and saw the jeep. It was 75 to 100 yards from the road inside the fenced yard. Deputy Tackett said he drove in the driveway, passed the house back to the jeep. He drove around

**Ex. 17**

394

the jeep, looked at the damage, and called in the license number. He then drove back out the driveway. He made a three point turn in the driveway and positioned his unit illuminating the doorways while he waited for Brawley PD. When I asked him why he did not wait for them on Elder Rd., he replied he was afraid someone might try to leave the house. He told me while he was waiting a male dressed in pants, no shirt or shoes came outside the house to see what was happening. Deputy Tackett told him the Brawley PD was enroute to talk to him about something one of the family members might be involved in. He did not tell him what it was about. The male then told him he was going inside to get a jacket and shoes. Deputy Tackett told me he told the subject he could not and had to wait outside. The male insisted on going inside to get dressed and started to walk toward the house. Deputy Tackett told me he grabbed the subject by the arm. The subject jerked away and said he was going inside. Deputy Tackett told me he told the subject about four times he would arrest him for interfering if he insisted on going inside. When the subject kept insisting to go inside to get dressed, he arrested him.

I asked Deputy Tackett what his reasoning was for not letting the subject get dressed as the temperature was in the high 30's or low 40's and the subject was obviously cold. He replied it was an officer safety issue. Deputy Tackett said he told the wife she could go back in the house and get a jacket for him but he could not. I asked Deputy Tackett if while he was inspecting the jeep if he noticed the damaged area was covered in rust and that was dirt piled up on the rims. He said he had not noticed that. I told Deputy Tackett that the department and he were on shaky grounds and it was in his best interest we OR the subject and submit the report to the DA's office. He insisted on booking the subject. I explained the situation several times to him but he was insistent on booking the subject into jail. Deputy Tackett said that because of who the subject was, was why I did not want him booked. He could not understand that he had done anything wrong. At that point, I ordered him to OR the subject. He reluctantly complied. I had Deputy Lowenthal unhandcuff the subject, who was still dressed only in pants and he signed the OR release. We left the area and I had Deputy Tackett meet me at the Brawley Substation.

At the Brawley Substation, I again went over the incident with him. He again stressed that it was an officer safety issue was why he would not let the male subject go get dressed. I explained to him that if officer safety was his concern he was the worst violator in this incident. He was told a Brawley PD officer was in route to meet with him. He should have waited on the street. I reminded him that during his FTO training of what he was taught and waiting directly in front of the house was contrary to his training. I told him any prudent person would come outside the house when they saw a Sheriff's unit parked lighting up their house. Wanting to get dressed in the cold weather was normal. His own actions instigated the incident. All we were asked was to see if a jeep was there and wait for Brawley PD.

This was an avoidable incident. It should never have happened.

It is debatable if Deputy Tackett could legally drive to where the jeep was parked. It was in the back part of the fenced yard not open to normal traffic to the house.

Once the decision was made to inspect the vehicle, it should have been done properly. A careful inspection of the jeep would have showed the damage was old and the jeep had not been moved recently and could not be the suspect jeep.

Deputy Tackett should have waited on the road. Parking in front of the house exposed him to unnecessary risks.

The subject who came out of the house was not a suspect as far as Deputy Tackett knew. He should not have detained him, or stopped him from putting on proper clothing suiting the weather.

His reluctance to accept my advice even after it was explained to him it was for his and the departments benefit demonstrates he allows his emotions to control his thinking.

Deputy Tackett's actions unnecessarily exposed himself and the Sheriff's Department to a citizen complaint or civil suit.

This information is provided for your benefit, to handle as you deem fit.

3

00904   **Ex. 17**
396

202-018

# IMPERIAL COUNTY SHERIFF'S
# DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT


May 2, 2002

TO:        Ms. Norma Flores
           Communications Supervisor

FROM:      Sgt. Delfino O. Matus
           AIU

SUBJECT:   CR # 0112-0996 Communication recordings.

Request copies of any and all radio/telephone
communications as related to CR # 0112-0996. The incident
occurred on December 28, 2001 at approximately 0150 hours.

Any questions contact Sgt. Matus at 339-6319.
/////


00905        **Ex. 17**
                397

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
# ADMINISTRATIVE INVESTIGATIONS UNIT

DATE:      July 8, 2002

COMPLAINANT:   Imperial County Sheriff's Department

DATE OF INCIDENT:   December 28, 2001

LOCATION OF INCIDENT:   4548 Elder Road, Brawley, California

ALLEGATION:

1.   Rules of Conduct, Section 2.1.01
     VIOLATION OF RULES (ICSD P&P)

2.   Rules of Conduct, Section 2.1.04
     INCOMPETENCE (ICSD P&P)

3.   Rules of Conduct, Section 2.1.06
     UNBECOMING CONDUCT (ICSD P&P)

4.   Rules of Conduct, Section 2.3.04 ARREST,
     SEARCH & SEIZURE (ICSD P&P)

CASE NO.: IA # 2002-018

CR # 0112-0996

TO:  Deputy Justin Tackett,

This is to inform you that the Administrative
Investigations Unit (AIU) has received a complaint
regarding your conduct.  Sgt. Delfino O. Matus will handle
the investigation of this complaint.  Sgt. Matus will
contact you to arrange an interview.

As a sworn member of this department, you should be aware
of your rights contained in the California Government Code
Sections 3300-3311 (Peace Officer's Bill of Rights) or
contact any employee representative or attorney for advice.

The Imperial County Sheriff's Department Policy and
Procedure Manual Rules of Conduct also contain your
responsibilities during the investigation.  Your attention
is specifically directed to Sections  2.1.02
INSUBORDINATION, 2.5.07 INTERVENTION, and 2.5.09 TESTIMONY.

1550 Hrs  7-8-02  Surul

**Ex. 17**

If you have any questions, please contact Sgt. Matus at
(768) 339-6391.

SGT. DELFINO O. MATUS

BRAWLEY, CALIFORNIA
2497
PHONE: (760) 344-2111



FAX TRANSMISSION

COVER SHEET

Sgt Mato                    FAX # 339-0170

ENTION: Sheriff Department

M: Community Service Officer Chela Garcia

TE: 5/1/02          NUMBER OF PAGES: 5

MMENTS:

his FAX is being sent from the Brawley Police Department.  All information in this FAX is
insidered to be confidential and for use by the person named above.  If you receive this FAX
error, please notify the Brawley Police Department at (760) - 344-2111 and ask for directions
disposition of the FAX.

00908 **Ex. 17**
400

Page 2 (Rev. 8-97) OPI 042 — Page 2 of 3

| ...ISION (MO. DAY YEAR) | TIME (2400) | NCIC # | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| -28-2001 | 0023 | 1301 | 910 | 014194 |

| ...TY | OWNER'S NAME | OWNER'S ADDRESS | NOTIFIED: ☐ YES ☐ NO |
|---|---|---|---|
| | DESCRIPTION OF DAMAGE | | |

**...ATING POSITION**
1 - DRIVER
2 TO 6 - PASSENGERS
7 - STATION WAGON REAR
8 - REAR OCC. TRK. OR VAN
9 - POSITION UNKNOWN
0 - OTHER

**SAFETY EQUIPMENT**

OCCUPANTS
A - NONE IN VEHICLE
B - UNKNOWN
C - LAP BELT USED
D - LAP BELT NOT USED
E - SHOULDER HARNESS USED
F - SHOULDER HARNESS NOT USED
G - LAP/SHOULDER HARNESS USED
H - LAP/SHOULDER HARNESS NOT USED
J - PASSIVE RESTRAINT USED
K - PASSIVE RESTRAINT NOT USED

L - AIR BAG DEPLOYED
M - AIR BAG NOT DEPLOYED
N - OTHER
P - NOT REQUIRED

CHILD RESTRAINT
Q - IN VEHICLE USED
R - IN VEHICLE NOT USED
S - IN VEHICLE USE UNKNOWN
T - IN VEHICLE IMPROPER USE
U - NONE IN VEHICLE

M / C BICYCLE - HELMET
DRIVER
V - NO
W - YES
PASSENGER
X - NO
Y - YES

**EJECTED FROM VEHICLE**
0 - NOT EJECTED
1 - FULLY EJECTED
2 - PARTIALLY EJECTED
3 - UNKNOWN

ITEMS MARKED BELOW FOLLOWED BY AN ASTERISK (*) SHOULD BE EXPLAINED IN THE NARRATIVE.

**...ARY COLLISION FACTOR / ...BER (#) OF PARTY AT FAULT**
...CTION VIOLATED: 650 VC — CITED: ☐ YES ☒ NO
...ER IMPROPER DRIVING*:
...ER THAN DRIVER*
...KNOWN*
...L ASLEEP*
...HER (MARK 1 TO 2 ITEMS)
...AR
...UDY
...NING
...WING
...G / VISIBILITY — FT
...HER*:
...D
LIGHTING
...T
...AWN
...RK - STREET LIGHTS
...RK - NO STREET LIGHTS
...RK - STREET LIGHTS NOT ...NCTIONING*
ROADWAY SURFACE
...Y
...T
...OWY - ICY
...PPERY (MUDDY, OILY, ETC.)
...ADWAY CONDITION(S) (MARK 1 TO 2 ITEMS)
...LES, DEEP RUT*
...OSE MATERIAL ON ROADWAY*
...STRUCTION ON ROADWAY*
...NSTRUCTION - REPAIR ZONE
...DUCED ROADWAY WIDTH
...OODED*
...HER*
UNUSUAL CONDITIONS

**TRAFFIC CONTROL DEVICES**
A CONTROLS FUNCTIONING
B CONTROLS NOT FUNCTIONING*
C CONTROLS OBSCURED
X D NO CONTROLS PRESENT / FACTOR*

**TYPE OF COLLISION**
A HEAD - ON
X B SIDE SWIPE
C REAR END
D BROADSIDE
E HIT OBJECT
F OVERTURNED
G VEHICLE / PEDESTRIAN
H OTHER*:

**MOTOR VEHICLE INVOLVED WITH**
A NON - COLLISION
B PEDESTRIAN
C OTHER MOTOR VEHICLE
D MOTOR VEHICLE ON OTHER ROADWAY
X E PARKED MOTOR VEHICLE
F TRAIN
G BICYCLE
H ANIMAL:
I FIXED OBJECT
J OTHER OBJECT:

**PEDESTRIAN'S ACTIONS**
X A NO PEDESTRIANS INVOLVED
B CROSSING IN CROSSWALK AT INTERSECTION
C CROSSING IN CROSSWALK - NOT AT INTERSECTION
D CROSSING - NOT IN CROSSWALK
E IN ROAD - INCLUDES SHOULDER
F NOT IN ROAD
G APPROACHING / LEAVING SCHOOL BUS

**TYPE OF VEHICLE** (1 | 2 | 3)
A PASSENGER CAR / STATION WAGON
B PASSENGER CAR W / TRAILER — 1: X
C MOTORCYCLE / SCOOTER
D PICKUP OR PANEL TRUCK
E PICKUP / PANEL TRUCK W/ TRAILER — 1: X
F TRUCK OR TRUCK TRACTOR
G TRUCK / TRUCK TRACTOR W/ TRLR.
H SCHOOL BUS
I OTHER BUS
J EMERGENCY VEHICLE
K HIGHWAY CONST. EQUIPMENT
L BICYCLE
M OTHER VEHICLE (TRAILER) — 2: X
N PEDESTRIAN
O MOPED

**OTHER ASSOCIATED FACTOR(S) (MARK 1 TO 2 ITEMS)** (1 | 2 | 3)
A VC SECTION VIOLATION: — CITED ☐ YES ☐ NO
B VC SECTION VIOLATION: — CITED ☐ YES ☐ NO
C VC SECTION VIOLATION: — CITED ☐ YES ☐ NO
D
E VISION OBSCUREMENT:
F INATTENTION*:
G STOP & GO TRAFFIC
H ENTERING / LEAVING RAMP
I PREVIOUS COLLISION
J UNFAMILIAR WITH ROAD
K DEFECTIVE VEH. EQUIP.: CITED ☐ YES ☐ NO
L UNINVOLVED VEHICLE
M OTHER*:
N NONE APPARENT — 1: X, 2: X, 3: X
O RUNAWAY VEHICLE

**MOVEMENT PRECEDING COLLISION** (1 | 2 | 3)
A STOPPED
B PROCEEDING STRAIGHT — 1: X
C RAN OFF ROAD
D MAKING RIGHT TURN
E MAKING LEFT TURN
F MAKING U TURN
G BACKING
H SLOWING / STOPPING
I PASSING OTHER VEHICLE
J CHANGING LANES
K PARKING MANEUVER
L ENTERING TRAFFIC
M OTHER UNSAFE TURNING
N XING INTO OPPOSING LANE
O PARKED — 2: X, 3: X
P MERGING
Q TRAVELING WRONG WAY
R OTHER*:

**SOBRIETY - DRUG PHYSICAL (MARK 1 TO 2 ITEMS)** (1 | 2 | 3)
A HAD NOT BEEN DRINKING
B HBD - UNDER INFLUENCE
C HBD - NOT UNDER INFLUENCE*
D HBD - IMPAIRMENT UNKNOWN*
E UNDER DRUG INFLUENCE*
F IMPAIRMENT - PHYSICAL*
G IMPAIRMENT NOT KNOWN — 1: X
H NOT APPLICABLE — 2: X, 3: X
I SLEEPY / FATIGUED

**SPECIAL INFORMATION**
A HAZARDOUS MATERIAL
B CELL PHONE IN USE
C CELL PHONE NOT IN USE — 1: X, 2: X
D CELL PHONE USE UNKNOWN — 1: X

MISCELLANEOUS

00909 Ex. 17
401

55 Page 1 (Rev. 6-97) OPI 042

| CONDITIONS | NUMBER INJURED | HIT & RUN FELONY | CITY | | JUDICIAL DISTRICT | LOCAL REPORT NUMBER |
|---|---|---|---|---|---|---|
| CC CHP | | | BRAWLEY | | BRAWLEY | 014194 |
| | NUMBER KILLED | HIT & RUN MISDEMEANOR | COUNTY | REPORTING DISTRICT | BEAT | |
| | 0 | ☒ | IMPERIAL | | 01 | |

| ...TION OCCURRED ON | | MO. DAY YEAR | TIME (2400) | NCIC # | OFFICER I.D. |
|---|---|---|---|---|---|
| RIO VISTA | | 12 28 2001 | 0023 | 1301 | 910 |

MILEPOST INFORMATION

| | DAY OF WEEK | TOW AWAY | PHOTOGRAPHS BY: | NONE |
|---|---|---|---|---|
| FEET/MILES     OF | S M T W T (F) S | ☐ YES  ☒ NO | 722 | |

☐ AT INTERSECTION WITH

☒ OR: N - 7" FEET/MILES  5  OF  B

STATE HWY RE.  ☐ YES  ☒ NO

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| 20002 | VL | | | UNK | PSS JEEP / BLK | UNK | |

NAME (FIRST, MIDDLE, LAST)

OWNER'S NAME  ☐ SAME AS DRIVER

STREET ADDRESS

OWNER'S ADDRESS  ☐ SAME AS DRIVER

CITY/STATE/ZIP

DISPOSITION OF VEHICLE ON ORDERS OF:  ☐ OFFICER  ☐ DRIVER  ☐ OTHER

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE |
|---|---|---|---|---|---|---|

HOME PHONE      BUSINESS PHONE

PRIOR MECHANICAL DEFECTS:  ☐ NONE APPARENT  ☐ REFER TO NARRATIVE

INSURANCE CARRIER      POLICY NUMBER

VEHICLE IDENTIFICATION NUMBER:

CHP USE ONLY VEHICLE TYPE / DESCRIBE VEHICLE DAMAGE: ☐ UNK ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER      SHADE IN DAMAGED AREA

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT |
|---|---|---|
| S | RIO VISTA | 25 |

CA _____ DOT _____  CAL-T _____ TOP/PSC _____ MC/MX _____

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| | | | | 1967 | DODGE / / RED-WHT | 5D97538 | CA |

NAME (FIRST, MIDDLE, LAST)

OWNER'S NAME  ☐ SAME AS DRIVER
COLLINS, GARY JAMES

STREET ADDRESS

OWNER'S ADDRESS  ☐ SAME AS DRIVER
392 W. B ST.

CITY/STATE/ZIP

DISPOSITION OF VEHICLE ON ORDERS OF:  ☐ OFFICER  ☐ DRIVER  ☐ OTHER

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE |
|---|---|---|---|---|---|---|

HOME PHONE      BUSINESS PHONE

PRIOR MECHANICAL DEFECTS:  ☐ NONE APPARENT  ☐ REFER TO NARRATIVE

INSURANCE CARRIER      POLICY NUMBER

VEHICLE IDENTIFICATION NUMBER: 12B1672325

CHP USE ONLY VEHICLE TYPE / DESCRIBE VEHICLE DAMAGE: ☐ UNK ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER      SHADE IN DAMAGED AREA

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT |
|---|---|---|
| N | RIO VISTA | 25 |

CA _____ DOT _____  CAL-T _____ TOP/PSC _____ MC/MX _____

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| | | | | N/A | SPC. NE/TRAILER / RED | 1HM4414 | CA |

NAME (FIRST, MIDDLE, LAST)

OWNER'S NAME  ☐ SAME AS DRIVER
COLLINS GARY JAMES

STREET ADDRESS

OWNER'S ADDRESS  ☐ SAME AS DRIVER
392 W. B ST.

CITY/STATE/ZIP

DISPOSITION OF VEHICLE ON ORDERS OF:  ☐ OFFICER  ☐ DRIVER  ☐ OTHER

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE |
|---|---|---|---|---|---|---|

HOME PHONE      BUSINESS PHONE

PRIOR MECHANICAL DEFECTS:  ☐ NONE APPARENT  ☐ REFER TO NARRATIVE

VEHICLE IDENTIFICATION NUMBER: CAB3541?

CHP USE ONLY VEHICLE TYPE / DESCRIBE VEHICLE DAMAGE: ☐ UNK ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER      SHADE IN DAMAGED AREA

INSURANCE CARRIER      POLICY NUMBER

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT |
|---|---|---|
| N | RIO VISTA | 25 |

CA _____ DOT _____  CAL-T _____ TOP/PSC _____ MC/MX _____

Ex. 17

| ...RER'S NAME | DISPATCH NOTIFIED | REVIEWER'S NAME | |
|---|---|---|---|
| S. POPE | ☒ YES  ☐ NO  ☐ N/A | P. MONTAÑA #957 | 1-17-02 |

402

00910

| Date of collision | Time | NCIC # | Officer # | DR #/ INC # |
|---|---|---|---|---|
| 12-28-01 | 0023 | 1301 | 910 | 014194/ 11228005 |

**NOTIFICATION:** I received this collision call at 0023 hours. I arrived on scene at approx 0025 hours. All times, measurements, and speeds are approximate.

**STATEMENTS:** D-1 (unknown) fled the scene and the other vehicle involved was a parked vehicle. There were no statements taken in this collision.

**SUMMARY:** V-2 (Dodge) and T-1 (trailer) were legally parked North bound along the East curb of Rio Vista. V-1 (Unknown) was traveling South bound on Rio Vista. V-1 (unknown) struck the front left bumper and fender of V-2 (Dodge). Then struck the left fender of the trailer. There was moderate damage to both V-2 (Dodge) and T-1 (trailer).

**AREA OF IMPACT:** The Area of Impact (AOI) #1 (Dodge) was 8'-7" South of South prolongation of B and 8'-7" West of the East curb of Rio Vista. The AOI #2 was 36'-1" South of the South prolongation of B and 6'-10" West of the East curb of Rio Vista. The AOI was established by the point of rest of involved vehicles.

**CAUSE:** V-1 (unknown) caused this collision by being in violation of California Vehicle Code section 21650 VC, failure to drive on right side of roadway. This was established by the AOI and matching damage to the vehicles on scene. D-1 (unknown) is also in violation of California Vehicle Code section 20002 VC, failure to remain at the scene of a traffic collision.

**RECOMMINDATIONS:** None

Agent S. Pope, 910

DR #014194
INC #11228005
Date: 01-08-2002
RE: 20002 VC


On 01-08-2002 at approx 0730 hours I was informed that on 01-04-2001 Agent Garcia was given information on a possible suspect vehicle to the Hit-N-Run that occurred on 12-28-2001. The vehicle is registered to a Virjeane miller out of El Centro. Several attempts have been made to contact her with no results. ( see R/O information sheet)

There is also a telephone number at the top of the form which is to the R/O of the suspect vehicle.

Agent Garcia was also given pieces of plastic from the suspect vehicle which she placed into evidence on 01-04-2002. See evidence report.

00912   **Ex. 17**

404

INC #11228005
DR #014194
SUPPLEMENT


On 01-19-02 approximately 1003 hours I made contact with Virjeane Miller via telephone in regard to follow up on this case. (V)Gary Collins previously provided a license number of CA#4ANF085 as possibly being the vehicle which collided into his parked vehicle on 12-28-01. I identified myself to Miller and advised her of reason for phone call. I asked Miller if she still owned CA#4ANF085 and she said yes. I told her that license #4ANF085 was given to me as possibly being involved in a hit and run. I asked if her vehicle had been involved in an accident and if it had damage to the left front area. Miller said she did not know and would have to go outside to look. I thought this was odd. Miller asked if I wanted her to go outside and look. I said yes. When Miller came back to the phone she said the vehicle had little damage but she believed it was old damage. I asked her if she could come by the police department today so that I could see the vehicle. Miller said she would be by later.

On 01-19-02 approximately 1220 hours I met with Miller at the police department. I looked at CA#4ANF085 and saw that there was minor damage to the left front of the vehicle. I saw the damage caused to (V)Collins vehicle and this vehicle had minor damage compared to (V)Collins vehicle, a 1967 Dodge pickup. (V)Collins also turned over plastic parts from the suspect vehicle he found. Miller's vehicle was not missing any parts or did not have any parts broken. I asked Miller if she came to Brawley a lot because her vehicle has been seen in town several times. Miller said her boyfriend Frank Pizano lives in Brawley.


Virjeane Miller
2371 Heil Avenue
El Centro Ca
(760)352-0689


00913

**Ex. 17**

405

Incident Number: 0112-0996

ture: **Resisting**          Case Number: _____   _____   Image: ____ _
Addr: 4548 ELDER RD                                  _____ Area: DIST4 SUPERVISOR DI>
City: Brawley          St: CA  Zip: 92227       Contact: AGENT POE
 omplainant:      2284 -----------------------------------------------------
  t: Brawley Police Department    Fst:              Mid:                      |
 DOB:   /  /    SSN:   -  -     Adr: 351 Main Street                          |
Rac:   Sx:   Tel: (760)344-2111  Cty: Brawley        St: CA Zip: 92227        |
-------------------------------------------------------------------------------
Offense Codes: RIPO ____ ____ ____ ._____ _    Reported: RIPO  Observed:
Circumstances: ____ ____ ____ ____ ____
ondg Officers: Tackett, J      Lowenthal, A.    106          CAD Call ID:  _
onsbl Officer: Tackett, J      Agency: AISO                              136784
 Received By: Mistriel,M.L.              Last RadLog: 02:55:50 12/28/01    98
 How Received: T  Telephone              Clearance: RBR  Received by Records
When Reported: 01:50:21 12/28/01       Disposition: CAA  Disp Date: 12/28/01
curred between: 01:50:21 12/28/01       Judicial Sts:    _____
            and: 01:50:21 12/28/01       Misc Entry:
:  _____                  _____  _____ _
arrative: (See below)                                      .   ÷
pplement: _____          _____  _

= = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = = =


NVOLVEMENTS:
pe   Record #    Date      Description                   Relationship
IM      6428     /  /      KING, CLIFFORD                witness 1
M      47535     /  /      LACKEY, RANDY LEE             Suspect
       100673    /  /      TACKETT, JUSTIN              witness 2
         2284    /  /      Brawley Police Department,    *Complainant
CA     136784  12/28/01    01:50 12/28/01 Resisting      *Initiating Call

AW Incident Offenses Detail:
                  Offense Codes
g Code                                        Amount
 1 RIPO Obstruct Resist Public Officer         0.00


AW Incident Responders Detail
   Responding Officers
g Name              Unit
 1 Tackett, J        871
 2 Lowenthal, A.     341
 3 106               106


ain Radio Log Table:
ime/Date            Unit   Code  Zone  Agnc Description
2:55:50 12/28/01    871    98    DIST4 AISO incid#=0112-0996 Completed Call c
2:55:50 12/28/01    105    98    DIST4 AISO incid#=0112-0996 Completed Call c

```
49:56  12/28/01  871    O●●R  DIST4  AISO  incid#=0112-●●6 REQ CR FOR 148PC
34:46  12/28/01  341    S●    DIST4  AISO  incid#=0112-●●6 Arrived on Scene
28:22  12/28/01  106    97    DIST4  AISO  incid#=0112-0996 Arrived on Scene
24:03  12/28/01  871    ONAIR DIST4  AISO  incid#=0112-0996 STN9 COMING DOWN
20:19  12/28/01  106    ENRT  DIST4  AISO  incid#=0112-0996 Enroute to a cal
 7:45  12/28/01  341    4     1      AISO  GOING THREW NILAND NOW
 4:49  12/28/01  871    29    3A     AISO  N6582845
10:37  12/28/01  871    ONAIR DIST4  AISO  incid#=0112-0996 C/4 10-15 FOR 14
08:45  12/28/01  341    ENRT  DIST4  AISO  incid#=0112-0996 Enroute to a cal
02:54  12/28/01  871    97    DIST4  AISO  incid#=0112-0996 Arrived on Scene
01:18  12/28/01  871    28    DIST4  AISO  incid#=0112-0996 2KWN995 BLK JEEP
57:53  12/28/01  871    4     3A     AISO  COPIED AVR
53:43  12/28/01  871    ENRT  DIST4  AISO  incid#=0112-0996 Enroute to a cal
53:37  12/28/01  871    4     3A     AISO  U108 SM37681
52:28  12/28/01  871    ASSGN DIST4  AISO  incid#=0112-0996 Assigned to a ca
```

00915

**Ex. 17**

407

Crime Report:      0112-0996

Deputy:            Justin Tackett   # 871

Crime:             148 P.C. (Resisting/Delaying/Obstructing A Peace Officer)

Victim(s):         State of California

Suspect(s): 1) Randy Lee Lackey
               4548 Elder Road
               Brawley, Ca.  92227        344-7174
               D.O.B.: 06-16-58
               California Driver's License # N6582845

Witnesses:  1) Mrs. Lackey (Wife of SUSPECT RANDY LACKEY)
               4548 Elder Road
               Brawley, Ca.  92227

            2) Sergeant King  # 106
               328 Applestill Road
               El Centro, Ca.  92243
               760-339-6312

Vehicle:       1979 Jeep (Vehicle Possibly Involved In Hit-And-Run.)
               Black
               California Plate # 2KWN995
                 R/O:  Randy Lee Lackey
                       4548 Elder Road
                       Brawley, Ca.  92227

Narrative:
        On December 28, 2001 at approximately 0150 hours, I(DEPUTY
JUSTIN TACKETT) was dispatched to assist Brawley Police Department in
checking for a black or dark colored Jeep with a damaged left front
bumper that was involved in a hit and run.  Dispatch advised me that the
possible vehicle involved was at 4548 Elder Road, Brawley, Ca. and I was
told if a vehicle matching that description was at that location to
contact Brawley Police Department.

        Upon arriving at the address, I shined my spotlight down the
driveway of the residence at 4548 Elder Road.  I illuminated a Jeep that
had left front damage and was parked in the rear of the residence.  I
drove into the driveway and around the vehicle.  While driving around
the vehicle, I recorded the license plate and noticed it matched the
description given by Brawley Police Department. I advised dispatch to
contact Brawley Police Department in regards to the vehicle matching
the description given was found at the residence they provided.
question being located.

        I drove to the front of the residence with my red and blue
lights on and placed my right alley light in front of the front door in
order to illuminate anyone who stepped outside the residence.  I placed
my spot light on the rear side door in order to illuminate anyone who

While waiting for Brawley Police Department, I noticed a male
bject, later identified as RANDY LACKEY, exiting the front door with
st blue jeans on. RANDY LACKEY started to walk to my vehicle and I
ticed a red mark on the rear portion of his back, possibly from the
ident in question with Brawley Police Department. So I met him and
.d him his name. He stated RANDY LACKEY. This matched the same name
at came back as the registered owner of the vehicle. At this point in
me, I detained RANDY LACKEY for investigative purposes due to him
ing the legal owner of the vehicle thus he should have knowledge on
e vehicle in question and it's involvement in the case being
vestigated by Brawley Police Department, along with the red mark on his
ck possibly being an injury occurring during the hit-and-run, and due
the fact, it would be an officer safety issue and an investigation
struction if I let him return into his residence.

At this time, WITNESS#1 MRS. LACKEY stuck her head out of the
ont door and asked what was happening. I advised both WITNESS#1 MRS.
CKEY and RANDY LACKEY that there was an on-going investigation that
ssibly involved someone in their household. I asked them if everyone
their household were home and had no problems and they replied that
eryone was home and they had no problems. I further stated I didn't
ow the exact details of the incident, but Brawley Police Department
d an officer in route to speak to them about it. WITNESS#1 MRS.
CKEY told RANDY LACKEY that it was cold outside and that he should
turn inside. I asked WITNESS#1 MRS. LACKEY if she could retrieve the
rm clothing for RANDY LACKEY. WITNESS#1 MRS. LACKEY stated okay and
osed the door.

Approximately a minute after WITNESS#1 MRS. LACKEY closed the
r, RANDY LACKEY informed me that he was returning inside the
dence. I advised RANDY LACKEY that I needed him to stay outside for
ricer safety reasons and due to the fact that he was going to be
eded for investigation being conducted by Brawley Police Department.
NDY LACKEY stated he didn't care and he was going back inside his
sidence. I told RANDY LACKEY that if he started to walk towards the
or of his residence to go inside, he was going to be placed under
rest for 148 PC(Delaying/Obstructing/Resisting A Peace Officer).
NDY LACKEY turned and began to walk towards the front door. I grabbed
NDY LACKEY's right elbow and advised him to stay where he was at or he
s going to be placed under arrest. RANDY LACKEY forcefully pulled his
m across the front of his body which pull my hand off his elbow and he
ntinued to keep walking towards the door. I again held SUSPECT RANDY
CKEY's elbow and directed him to stay where he was at or he was going
be placed under arrest. SUSPECT RANDY LACKEY again forcefully pulled
s arm across the front of his body pulling my hand off his elbow as he
ntinued to walk. I advised dispatch at this time to have a cover unit
spond as assistance. SUSPECT RANDY LACKEY started to walk away
wards his residence when I stepped in front of SUSPECT RANDY LACKEY
d raised my right arm with my palm extended outward and told him I was
ving him this last chance to stop or he was going to be arrested.
SPECT RANDY LACKEY struck my arm with his right hand causing my arm to
me off SUSPECT RANDY LACKEY and he then began to push my left shoulder
 an attempt to get by me and into his residence.

id from me placing his ar ● behind his back. 1 ●●●●
ted the residence at this ● me with a white sweater f ● SUSPECT RANDY
KEY and saw the altercation. I advised WITNESS#1 MRS. LACKEY that
 needed to inform her husband to stop being combative and resisting
 to place his hand behind his back before the altercation escalated
 her.   WITNESS#1 MRS. LACKEY yelled at SUSPECT RANDY LACKEY asking
 what did he think he was doing and to do as I said and place his
ds behind his back.  SUSPECT RANDY LACKEY stop resisting, and I was
n able to handcuff him.  Arresting him for 148 PC.  I placed SUSPECT
NDY LACKEY in my patrol unit.  At his time, WITNESS#2 SERGEANT KING
 speaking on the air and WITNESS#1 MRS. LACKEY asked me if the person
 the radio was MYRON KING?  I advised her it was.  WITNESS#1 MRS.
CKEY then asked me if he was coming to our location.  I advised her
t he was.  WITNESS#1 MRS. LACKEY then replied, "Good because this
l all be taken care of."

        WITNESS#2 SERGEANT KING arrived to the location and I briefed
 n on the arrested subject.  WITNESS#2 SERGEANT KING advised me to cite
 d release SUSPECT RANDY LACKEY.  SUSPECT RANDY LACKEY was
ted(Citation # 020047) and released.

        Refer to District Attorney for prosecution.

stin Tackett   # 871
puty Sheriff
rth County Patrol
perial County Sheriff's Department

00918     **Ex. 17**

410

/21/02                    Imperial County Sheriff's Office                          48:
:03              Radio Log Summary Report, by Day and Time              Page:      1

| | Date | Unit | Zone | Call ID | Code | Description |
|---|---|---|---|---|---|---|
| :01:13 | 12/28/01 | 341 | 1 | | NOTE | NEG NO END SGT |
| :02:16 | 12/28/01 | 106 | COVR | | 28: | 29 4RWF13B |
| :05:54 | 12/28/01 | 341 | 1 | | 8 | |
| :07:25 | 12/28/01 | BLM | DIST4 | 136775 | 98 | incid#=0112-0993 Enroute to a call call=551 |
| :07:26 | 12/28/01 | BLM | DIST1 | 136780 | ENRT | incid#=0112-0993 Enroute to a call call=551 |
| :07:36 | 12/28/01 | BLM | DIST1 | 136780 | ENRT | incid#=0112-0993 IN THE AREA call=551 |
| :09:12 | 12/28/01 | 524 | 5 | | 28 | 29 3GUN161 |
| :09:41 | 12/28/01 | 577 | COVR | | 6 | HEBER DUNES S 3VLX640 S RANGER STN |
| :10:07 | 12/28/01 | 519 | DIST4 | 136775 | NOTE | incid#=0112-0990 CONTACT PMH ASCERTAIN IF THEY HAVE HAD ANY PERSON ADMITTED FROM GLAMIS 3 IN MID 40'S 1 IN MID 20'S call=501 |
| :10:10 | 12/28/01 | 2650 | DIST3 | 136781 | ENRT | incid#=44369 620 call=56e |
| :13:15 | 12/28/01 | 577 | COVR | | NOTE | MONTOYO JULIO CESAR 102479/GUZMAN RICHARD 010278/SANCHEZ JOSE GUADALUPE 122178 |
| :14:03 | 12/28/01 | 2640 | COVR | | 10 | 7A |
| :14:53 | 12/28/01 | 2650 | COVR | 136781 | 4 | PATCH 62- |
| :15:56 | 12/28/01 | 577 | COVR | | 8 | |
| :16:03 | 12/28/01 | 852 | 6 | | 4 | ONAIR |
| :17:12 | 12/28/01 | 2650 | DIST3 | 136781 | 98 | incid#=44369 620 call=56e |
| :17:15 | 12/28/01 | 2650 | COVR | | 10 | |
| :19:11 | 12/28/01 | BLM | DIST1 | 136780 | 98 | incid#=0112-0993 SUBJ BEEN CONTACTED 10-98 call=551 disp=INA clr=NR |
| :19:16 | 12/28/01 | BLM | WH | | 10 | 8 |
| :23:56 | 12/28/01 | 519 | DIST4 | 136775 | ONAIR | incid#=0112-0990 DE ANZAE SETTING UP AT WASH12/VEH AT JULIAN WASH call=501 |
| :24:07 | 12/28/01 | 519 | DIST4 | 136775 | 98 | incid#=0112-0990 Completed Call call=501 |
| :24:10 | 12/28/01 | 519 | PV | | 8 | |
| :24:3? | 12/28/01 | 501 | | | 10 | |
| :25:20 | 12/28/01 | 534 | SC | | 4 | PHONE |
| :25:45 | 12/28/01 | 568 | DIST4 | 136775 | ENRT | incid#=0112-0990 Enroute to a call call=501 |
| :31:28 | 12/28/01 | 1406 | WH | | NOTE | WH DR/1ST AVE 23152 |
| :38:13 | 12/28/01 | 141 | 1 | | 4 | COPIED AVR |
| :39:13 | 12/28/01 | 106 | 4 | | 4 | COPIED AVR |
| :39:13 | 12/28/01 | 519 | PV | | 4 | COPIED AVR |
| :39:13 | 12/28/01 | 524 | 5 | | 4 | COPIED AVR |
| :39:13 | 12/28/01 | 568 | WH | | 4 | COPIED AVR |
| :39:13 | 12/28/01 | 568 | COVR | 136775 | 4 | COPIED AVR |
| :3?:13 | 12/28/01 | 852 | 6 | | 4 | COPIED AVR |
| :39:13 | 12/28/01 | 877 | COVR | | 4 | COPIED AVR |
| :39:17 | 12/28/01 | 568 | WH | | 8 | |
| :39:45 | 12/28/01 | BLM | DIST4 | 136780 | ENRT | incid#=0112-0994 Enroute to a call call=1) |

00919

**Ex. 17**

411

| e | Date | Unit | Zone | Call ID | Code | Description |
|---|------|------|------|---------|------|-------------|
| 04:54 | 12/28/01 | UNITS | DIST4 | 136782 | 98 | incid#=0112-0994 Completed Call call=11 disp=INA clr=NR |
| 35:03 | 12/28/01 | UNITS | WH | | 10 | 10 |
| 42:04 | 12/28/01 | 106 | COVR | | 28 | 6P43633 |
| 42:37 | 12/28/01 | DEANZA | DIST4 | 136775 | 97 | incid#=0112-0990 WASH V12 PER 519 call=501 |
| 57:03 | 12/28/01 | 106 | COVR | | TS | JEEP 3WPU721 BBWCC |
| 59:32 | 12/28/01 | 106 | COVR | | 27 | E0666983 |
| 02:28 | 12/28/01 | 106 | DIST5 | 136783 | ARRVD | incid#=0112-0995 On-site call=21 |
| 02:54 | 12/28/01 | 534 | SC | | 8 | |
| 04:26 | 12/28/01 | 524 | 5 | | 4 | ONAIR |
| 05:20 | 12/28/01 | 2650 | COVR | | 10 | 7A |
| 06:17 | 12/28/01 | 877 | COVR | | 6 | W/106 |
| 13:54 | 12/28/01 | 877 | COVR | | 27 | S0498571 |
| 26:18 | 12/28/01 | 877 | COVR | | 8 | 11-48 FOR 1 TO STATION 10 |
| 28:35 | 12/28/01 | 106 | DIST5 | 136783 | 98 | incid#=0112-0995 Completed Call call=21 clr=R |
| 28:38 | 12/28/01 | 106 | COVR | | 8 | |
| 30:46 | 12/28/01 | 519 | PV | | 4 | ONAIR |
| 32:51 | 12/28/01 | 877 | COVR | | 8 | |
| 39:08 | 12/28/01 | 534 | SC | | 10 | 10 |
| 40:55 | 12/28/01 | 877 | COVR | | 29 | 4TCV895 |
| 41:35 | 12/28/01 | 877 | COVR | | TS | 111/ S OF EVAN HEWES |
| 7:18 | 12/28/01 | 568 | DIST4 | 136775 | 97 | incid#=0112-0990 Arrived on Scene call=501 |
| 42:23 | 12/28/01 | 439 | 4 | | 4 | 90 |
| 42:29 | 12/28/01 | 524 | 5 | | 10 | |
| 42:45 | 12/28/01 | 562 | WH | | 4 | ONAIR |
| 44:03 | 12/28/01 | 877 | COVR | | 29 | A6752871 |
| 46:10 | 12/28/01 | 877 | COVR | | 8 | |
| 46:30 | 12/28/01 | 341 | 1 | | 4 | ONAIR |
| 46:50 | 12/28/01 | 571 | 3A | | 6 | 300 11-10 |
| 48:08 | 12/28/01 | 439 | 4 | | 10 | EM41842 |
| 48:19 | 12/28/01 | 524 | 5 | | 10 | EM32150 |
| 50:53 | 12/28/01 | 877 | COVR | | 28 | 4FMN872 |
| 52:25 | 12/28/01 | 571 | DIST4 | 136784 | ASSGN | incid#=0112-0996 Assigned to a call call=31 |
| 53:37 | 12/28/01 | 571 | 3A | 136784 | 4 | U108 SM37681 |
| 53:43 | 12/28/01 | 571 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 55:23 | 12/28/01 | 2640 | DIST3 | 136785 | ASSGN | incid#=44370 Assigned to a call call=48 |
| 57:53 | 12/28/01 | 341 | 1 | | 4 | COPIED AVR |
| 57:53 | 12/28/01 | 519 | PV | | 4 | COPIED AVR |
| 57:53 | 12/28/01 | 562 | WH | | 4 | COPIED AVR |
| 57:53 | 12/28/01 | 650 | 5 | | 4 | COPIED AVR |
| 57:53 | 12/28/01 | 571 | 3A | 136784 | 4 | COPIED AVR |
| 57:53 | 12/28/01 | 877 | COVR | | 4 | COPIED AVR |
| 9:10 | 12/28/01 | 650 | 5 | | 8 | EAST GRAVEYARD |
| 04:05 | 12/28/01 | 2640 | DIST3 | 136785 | ENRT | incid#=44370 Enroute to a call call=48 |
| 01:5 | 12/28/01 | 571 | DIST4 | 136784 | 28 | incid#=0112-0996 BKWN995 BLK JEEP NO TOP W/EXTENSIVE DAMAGE call=31 |

**Ex. 17**

00920        412

21/02                      Imperial County Sheriff's Office                      489
03              Radio Log Summary Report, by Day and Time        Page:      2

|  | Date | Unit | Zone | Call ID | Code | Description |
|---|---|---|---|---|---|---|
| 1:44 | 12/28/01 | 2640 | DIST3 | 136785 | 97 | incid#=44370 Arrived on Scene call=4e |
| 02:54 | 12/28/01 | 571 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 03:29 | 12/28/01 | UNITS | DIST4 | 136786 | ASSGN | incid#=0112-0997 Assigned to a call call=51 |
| 03:36 | 12/28/01 | UNITS | DIST4 | 136786 | 98 | incid#=0112-0997 Completed Call call=51 disp=INA clr=NR |
| 03:38 | 12/28/01 | UNITS | WH | | 10 | |
| 08:45 | 12/28/01 | 341 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 10:37 | 12/28/01 | 571 | DIST4 | 136784 | ONAIR | incid#=0112-0996 C/4 10-15 FOR 148PC call=31 |
| 11:07 | 12/28/01 | 562 | WH | | T5 | AZ DSS280 WH DR E HWY 8 |
| 11:51 | 12/28/01 | 562 | WH | | 27 | 29 AZ/B14B02458 |
| 14:49 | 12/28/01 | 571 | 3A | 136784 | 29 | N65B2845 |
| 15:15 | 12/28/01 | 2640 | DIST3 | 136785 | ENRT | incid#=44370 620 call=4e |
| 15:20 | 12/28/01 | 552 | 6 | | 4 | ONAIR |
| 17:14 | 12/28/01 | 106 | COVR | | 4 | ONAIR |
| 17:45 | 12/28/01 | 341 | 2 | 136784 | 4 | GOING THREW NILAND NOW |
| 18:04 | 12/28/01 | 562 | | 136787 | ARRVD | incid#=0112-0998 On-site call=61 |
| 18:16 | 12/28/01 | 562 | | 136787 | ENRT | incid#=0112-0998 W/1 10-15 call=61 |
| 19:03 | 12/28/01 | 519 | DIST4 | 136775 | ENRT | incid#=0112-0990 Enroute to a call call=501 |
| 19:09 | 12/28/01 | DEANZA | DIST4 | 136775 | 97 | incid#=0112-0990 WASH 12 call=501 |
| 20:49 | 12/28/01 | 106 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 21:04 | 12/28/01 | 562 | | 136787 | 6 | incid#=0112-0998 900 W/1 10-15 call=61 |
| 21:06 | 12/28/01 | 2640 | DIST3 | 136785 | 98 | incid#=44370 620 call=4e |
| 21:08 | 12/28/01 | 2640 | COVR | | 10 | |
| 24:03 | 12/28/01 | 571 | DIST4 | 136784 | ONAIR | incid#=0112-0996 STN9 COMING DOWN RD call=31 |
| 28:29 | 12/28/01 | 106 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 33:48 | 12/28/01 | 2640 | DIST4 | 136788 | ASSGN | incid#= Assigned to a call call=7e |
| 34:02 | 12/28/01 | 2640 | DIST4 | 136788 | ENRT | incid#=44371 Enroute to a call call=7e |
| 34:46 | 12/28/01 | 341 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 36:52 | 12/28/01 | 2640 | DIST4 | 136788 | ENRT | incid#=44371 ACTUAL TIME call=7e |
| 07:?? | 12/28/01 | 2640 | COVR | | 10 | 74 |
| ?9:? | 12/28/01 | 571 | DIST4 | 136784 | ONAIR | incid#=0112-0996 REQ CR FOR 148PC call=31 |
| 4:01 | 12/28/01 | 857 | DIST3 | 136787 | ENRT | incid#=0112-0998 Enroute to a call call=61 |
| 49:12 | 12/28/01 | 106 | DIST4 | 136784 | 98 | incid#=0112-0996 Completed Call call=31 clr=R |
| 5?:?? | 12/28/01 | 341 | DIST4 | 136784 | 98 | incid#=0112-0996 Completed Call call=31 clr=R |

00921 **Ex. 17**

413

/21/02                    Imperial County Sheriff's Office                    48
: 03              Radio Log Summary Report, by Day and Time         Page:

| Time | Date | Unit | Zone | Call ID | Code | Description |
|------|------|------|------|---------|------|-------------|
| 5:50 | 12/28/01 | 571 | DIST4 | 136784 | 98 | incid#=0112-0996 Completed Cal call=31 clr=R |
| :56:05 | 12/28/01 | 106 | COVR | | 8 | |
| :56:05 | 12/28/01 | 341 | 1 | | 8 | |
| :56:05 | 12/28/01 | 571 | 3A | | 8 | |
| :57:48 | 12/28/01 | 562 | DIST1 | 136787 | ENRT | incid#=0112-0998 EAST Y call=6 |
| :59:24 | 12/28/01 | 377 | 4 | | 4 | ONAIR |
| :05:03 | 12/28/01 | 2660 | DIST4 | 136788 | 97 | incid#=44371 Arrived on Scene call=7e time=03:05:03 12/28/01 |
| :15:14 | 12/28/01 | 562 | DIST1 | 136787 | TS | incid#=0112-0998 EB IS E OF CALL #600 2633MR VG call=61 time=02:15:14 12/28/01 |
| 3:15:59 | 12/28/01 | 2660 | DIST4 | 136788 | ENRT | incid#=44371 630 call=7e time=03:15:59 12/28/01 |
| 3:21:36 | 12/28/01 | 552 | DIST1 | 136787 | 6 | incid#=0112-0998 EAST Y call=6 time=03:21:36 12/28/01 |
| 3:27:04 | 12/28/01 | 562 | DIST1 | 136787 | 98 | incid#=0112-0998 Completed Cal call=61 time=03:27:04 12/28/01 |
| 3:27:50 | 12/28/01 | 552 | DIST1 | 136787 | ENRT | incid#=0112-0998 10-19 W/1 call=61 time=03:27:50 12/28/01 |
| 3:53:13 | 12/28/01 | 552 | DIST1 | 136787 | 6 | incid#=0112-0998 INTAKE call=6 time=03:53:13 12/28/01 |
| 3:56:42 | 12/28/01 | 2660 | DIST4 | 136788 | 98 | incid#=44371 630 call=7e time=03:56:42 12/28/01 |
| :09:21 | 12/28/01 | 563 | DIST4 | 136773 | 98 | incid#=0112-0990 Completed Cal call=501 time=04:09:21 12/28/0 |
| 4:37:50 | 12/28/01 | 341 | 1 | | 8 | |
| 4:38:58 | 12/28/01 | 106 | COVR | | 6 | AT 300 0259 HRS |
| 4:38:59 | 12/28/01 | 571 | 3A | | 6 | AT 300 0259 HRS |

Report Includes:
ll dates between '00:00:00 12/28/01' and '05:00:00 12/28/01'
ll dispatchers
ll call numbers
ll agencies
ll zones
ll units
ll ten codes

*** End of Report rprlrlsu.rl ***

00922

Ex. 17
414

Agency case number: _N11-5__996_   Submitting agency: _1CSP_____
Date of incident: _12-__-01_   Date submitted: _1-__-02_
Judicial District: _Bennett__

Investigating Officer from submitting agency responsible for any follow-up information or investigation requested by the District Attorney's Office:
Officer's Name : _R__D___Jackett_   Telephone number: _760 - 339 - 6311_

List the name, date of birth and social security number for each and every individual against whom a criminal complaint is sought involving the same incident:

| | Last Name | First Name | Middle Name | D.O.B. | S.S.I. |
|---|---|---|---|---|---|
| 1 | Jackett | Randy | Lee | 1-16-58 | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

A.   Was the case submitted before?  Yes ☐  No ☒      If YES, attach a copy of the previous CH form.
B.   Was each named suspect interviewed by the investigating agency?  Yes ☐  No. ☐  If not, why not?

C.   Are there other investigations or complaints pending against any of the above-named suspects?  Please explain:

LIST THE CHARGES THAT YOUR AGENCY IS SEEKING TO HAVE THIS OFFICE FILE:
(If a charge is to be enhanced because of a prior conviction, list the date of the conviction, the court and the charge.)

148 PC

[THIS SPACE IS FOR USE BY THE DISTRICT ATTORNEY'S OFFICE]

☒ Reject                          ☐ Re-submit with information requested below.

☐ Approved FELONY                 ☐ Approved MISDEMEANOR

_____ Interests of Justice, not a current to
_____ prosecute.

**Ex. 17**

page _1_ of _____           _____   00923   415
                            (Assistant or Deputy) District Attorney

2002-018

| re | Date Reported | Call | Unit | Dispatch | Travel | At Scene | Total |
|---|---|---|---|---|---|---|---|
| R | 00:52:20 12/28/01 | 136782 | UNITS | 00:02:29 | **:**:** | **:**:** | 00:02:29 |
| R | 01:57:55 12/28/01 | 136786 | UNITS | **:**:** | **:**:** | **:**:** | 00:05:4 |
| ency Ass | 01:01:45 12/28/01 | 136793 | 106 | **:**:** | **:**:** | 00:26:07 | 00:26:50 |
| dical | 01:54:20 12/28/01 | 136785 | 2640 | 00:04:45 | 00:02:39 | 00:19:22 | 00:26:4 |
| dical | 02:32:40 12/28/01 | 136788 | 2660 | 00:01:52 | 00:30:31 | 00:51:39 | 01:24:0 |
| sisting | 01:50:21 12/28/01 | 136784 | 106 | 00:29:58 | 00:09:03 | 00:27:29 | 01:05:2 |
| sisting | 01:50:21 12/28/01 | 136784 | 741 | 00:19:24 | 00:26:01 | 00:21:04 | 01:05:2 |
| sisting | 01:50:21 12/28/01 | 136784 | 871 | 00:03:22 | 00:09:11 | 00:52:56 | 01:05:2 |
| RRANT SE | 02:17:59 12/28/01 | 136787 | 562 | 00:00:19 | --:--:-- | 01:09:00 | 01:09:0 |
| RRANT SE | 02:17:59 12/28/01 | 136787 | 852 | 00:36:03 | **:**:** | **:**:** | 02:44:2 |

```
erage Time, All Calls, All Units:          00:12:08 00:15:17 00:38:13 00:57:35
erage Time, Earliest Dispatch/Arrival:     00:07:52 00:13:44

tal Entries: 10

tes:  **:**:** = Not possible to calculate elapsed time.
      ++:++:++ = Elapsed time exceeds 99:99:99.
      --:--:-- = Elapsed time when calculated was less than zero.
      The total times are the difference between the reported time and the
      completion time.

port Includes:
   dates between '00:00:00 12/28/01' and '05:00:00 12/28/01'
   nature of incidents
1, cities
11 type of calls
11 priorities
11 units
11 agencies
11 zones
```

*** End of Report rpcdanal.rl ***

00924

**Ex. 17**

416

/21/02              Imperial County Sheriff's Office,                      485
:05         CAD Call Narrative Search Report, by Date, Law Info    Page:   1


    Reported    Incident Nature      Address                    Loc. Disp
--------------- --------------- ------------------------------- ---------------

:32:20 12/28/01 0112-0994 AVR            STATION 9, BRA            DIST INA
****************200002 CVC*********************
H. POSE DRK BLU JEEP W/RAG TOP LIFTED UNK 10-28


:01:45 12/28/01 0112-0995 Agency Assist   ANDERHOLT & EVANHEWES, HLT DIST CLD
:152 TOT
:28:30 12/28/01    - Mistriel,M.L.
R 106 10-98 TOT TO CHP


:50:21 12/28/01 0112-0996 Resisting        4548 ELDER RD, BRA        DIST CAA
F TO 200002 CVC BUS BLK OR DRK BLU JEEP
:02:43 12/28/01    - Mistriel,M.L.
R 871 BLK JEEP DOESN'T HAVE RAG TOP HOWEVER IT HAS EXTENSIVE DAMAGE


:37:55 12/28/01 0112-0997 AVR             1020 HATFIELD, BRA        DIST INA
***************ATL RUNNAWAY JUV***************
V: GONZALEZ JORGE ARTURO 020785 508 170 BLN GRN


P:17:58 12/28/01 0112-0998 WARRANT SERVICE WINTERHAVEN DR/E OF IB, WH DIST CAA
F 10-35 STEELE,LEWIS WILLIAM 081477 WAR/0133799 #1,500.00 CHARGE/12500A
------------------------------------------------------------------------------
    Total Incidents: 5
------------------------------------------------------------------------------
eport includes:
ll dates between '00:00.00 12/28/01' and '05:00:00 12/28/01'
ll natures
ll cities
ll agencies
ll keywords
------------------------------------------------------------------------------
            *** End of Report rpcccnsr.r2 ***




                                        00925

                                    **Ex. 17**

                                        417

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT**
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018  / CR # 0112-0996

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

**DISPATCH:**     Sheriff's Office,

**BRAWLEY PD:**   How are you doing this is Agent Poe from
                  Brawley Police Department.

**DISPATCH:**     Hello.

**BRAWLEY PD:**   Um if you guys aren't to terribly busy in
                  the North end, can you have a unit go by
                  4548 Alder and what were looking for is a
                  black or dark blue jeep that's going to have
                  uh, right front end damage, with a 20002
                  suspect.

**DISPATCH:**     And it's Elder?

**BRAWLEY PD:**   Elder, yeah.

*DISPATCH:*       *And were your calling from?*

**BRAWLEY PD:**   From Brawley.

**DISPATCH:**     Brawley?

**BRAWLEY PD:**   P.D.

**DISPATCH:**     Okay let me go ahead and run that by my
                  Sergeant and I'll call back.

**BRAWLEY PD:**   Okay.

**DISPATCH:**     What number would you like for me to call
                  you at?

**BRAWLEY PD:**   At 344-2111

**DISPATCH:**     Okay.

**BRAWLEY PD:**   Okay, bye, bye.

**00926**

**Ex. 17**

418

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## Administrative Investigations Unit
### 328 Applestill Road
### El Centro, CA 92243

### IA 2002-018  / CR # 0112-0996
Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

**DISPATCH:**    Thank you, bye, bye.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

*(PHONE RINGING)*

**TACKETT:**  Sheriff's Department, Deputy Tackett.

**DISPATCH:** Deputy Tackett.

**TACKETT:**  Yes.

**DISPATCH:** Station 9 is requesting a Deputy.

**TACKETT:**  Where at?

**DISPATCH:** 4548, it's not, they don't need back up, they
don't need cover or anything, they, they want to
you to check 4548 Alder for a black or dark blue
jeep in reference to that 20002.

**TACKETT:**  4548 Elder?

**DISPATCH:** Hmm.

**TACKETT:**  Correct?

**DISPATCH:** Yes.

**TACKETT:**  Okay.

**DISPATCH:** Okay, Thanks, bye, bye.

**TACKETT:**  Okay, bye, bye.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*
**(PHONE RINGING)**

**BRAWLEY PD:**   Brawley Police and Fire.

00927 **Ex. 17**
419

2

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## Administrative Investigations Unit
### 328 Applestill Road
### El Centro, CA 92243

## IA 2002-018   / CR # 0112-0996

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

| | |
|---|---|
| **DISPATCH:** | Hi, this is the Sheriff's Office. |
| **BRAWLEY PD:** | Uh, uh. |
| **DISPATCH:** | Is this Agent Poe? |
| **BRAWLEY PD:** | Yes. |
| **DISPATCH:** | Hello, I'd advised my Deputy and he and he is supposed to be going by there. |
| **BRAWLEY PD:** | Oh, okay. |
| **DISPATCH:** | Okay. |
| **BRAWLEY PD:** | Um if the vehicle is there just advise us and we'd probably come out and tow it. |
| **DISPATCH:** | Okay. |
| **BRAWLEY:** | Okay. |
| **DISPATCH:** | Thank you. |
| **BRAWLEY:** | Thank you. |
| **DISPATCH:** | Bye, bye. |
| **BRAWLEY PD:** | Bye, bye. |

**************************************

### (DIALING PHONE)

| | |
|---|---|
| **DISPATCH:** | Hello, advise them that if it's nec........... |

*************************************

### (DIALING A PHONE…)

| | |
|---|---|
| **TACKETT:** | Sheriff's Department Deputy Tackett. |

5

00928

Ex. 17
420

IMPERIAL COUNTY SHERIFF'S DEPARTMENT

Administrative Investigations Unit

328 Applestill Road

El Centro, CA 92243

IA 2002-018 / CR # 0112-0996

Radio and Telephone Call
# 571-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

DISPATCH:       Deputy Tackett.

TACKETT:        Yes.

DISPATCH:       Station 9 is requesting...

++++++++++++++++++++++++++++++++++++++

(DIALING A PHONE...)

DISPATCH:       Thank you, you called the other wro, other
                number uh?

:               The other one was busy.

DISPATCH:       Yeah but you learned.

:               Oh, yeah.

DISPATCH:       Somebody else would have go, gone over the
                air.

:

DISPATCH:       Thank you, you called the other wro, other
                number uh?

:               The other one was busy.

DISPATCH:       Yeah but you learned.

:               Oh, yeah.

DISPATCH:       Somebody else would have go, gone over the
                air.

************************************************

4

00929  **Ex. 17**
       421

IMPERIAL COUNTY SHERIFF'S DEPARTMENT
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243


IA 2002-018  / CR # 0112-0996
Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal


(DIALING A PHONE)

Extension, yeah. *(Phone ringing.)*

**BRAWLEY PD:**   Brawley Police

**DISPATCH:**   Hi, this is S.O.

**BRAWLEY PD.:**   Hi.

**DISPATCH:**   Hi, is Agent Poe there?

**BRAWLEY PD:**   Yeah, hold on.

**DISPATCH:**   Thank you.

**BRAWLEY PD:**   This is Poe,

**DISPATCH:**   Agent Poe this is Mandy of the S.O.

**BRAWLEY PD:**   Hmm.

**DISPATCH:**   My Deputy is out at the residence, I have
the license plate and he said that there is
no rag top on the jeep however it does have
extensive damage to the front left hand
side.

**BRAWLEY PD:**   Okay that sounds like our jeep.

**DISPATCH:**   And it is black.

**BRAWLEY PD:**   Okay, um I'll be in route.

**DISPATCH:**   Okay do you want him to stand by?

**BRAWLEY PD:**   Please.

**DISPATCH:**   Okay.

00930  **Ex. 17**

5

422

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT**
**Administrative Investigations Unit**
**328 Applestill Road**
**El Centro, CA 92243**

**IA 2002-018  / CR # 0112-0996**
Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

**BRAWLEY PD:**   Thank you.

**DISPATCH:**   Thanks.

**BRAWLEY PD:**   Bye, bye.

**TACKETT:**   El Centro 871

**DISPATCH:**   Go ahead.

**TACKETT:**   10-8, clear for starting.

**DISPATCH:**   Go ahead.

**TACKETT:**   (unintelligible) Adam, 37681, 10-8 in route.

**DISPATCH:**   10-4.  871, El Centro.

**871:**   El Centro.

**DISPATCH:**   871 El Centro, per Agent Poe station 9, if its there please advise him (unintelligible).

**871:**   El Centro, give me a description of the vehicle.  Damage to the front left and there a black car jeep ragtop.

**DISPATCH:**   Affirmative, black or dark blue, rag top lifted, left front-end damage.

**871:**   10-4.  El Centro to 871.

**DISPATCH:**   871 El Centro.

**871:**   Is there a plate?

**DISPATCH:**   871 El Centro, negative.

**00931  Ex. 17**

423

IMPERIAL COUNTY SHERIFF'S DEPARTMENT
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018   / CR # 0112-0996

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

871:            Advise if clear for a plate on a possible
                vehicle

DISPATCH:       871 El Centro, go ahead, with the plate,
                wait.

871:            California 2 King, William Nora, 9-9-5,
                advise station 9, black jeep, negative rag
                top uh it has uh extensive damage to front
                left end looks like a possible roll over.

DISPATCH:       10-4.  Comes back negative 29 11-16-2001, 71
                jeep Randy Lee Lackey or Andrea Lackey out
                of Brawley.

871:            El Centro to 871 can you 21, station 9
                advise them if they make contact with her

DISPATCH:       That is affirmative 871, in the process,
                stand by one.

871:            10-4

DISPATCH:       871, El Centro 2

871:            Go ahead El Centro.

DISPATCH:       871, El Centro, Agent Poe will be in route,
                he asked that you stand by.

871:            El Centro, I'll be 10-6 at 4548 Elder Road.

DISPATCH:       10-4

.........................................................

106:            106, 519 on channel 5,

519:            Serg, I found some um foot prints that are
                there heading West bound on the poe line and
                there motorcycle tracks out here that

**Ex. 17**

00932

424

7

IMPERIAL COUNTY SHERIFF'S DEPARTMENT
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018   / CR # 0112-0996

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

            weren't out here last night but I, I'm not
            sure if uh it looks like they were pushing a
            bike and then get back on it ride it for a
            while and then get off and push it and get
            back on and ride it for a while, I'm going
            to take it all the way down to uh the where
            it connects back with uh 78 and then head
            towards uh just the mine and that way see,
------------------

**TACKETT:**       Can you roll me a cover.

**TACKETT:**       El Centro roll me a cover.

**DISPATCH:**      341 El Centro did you copy?  We need a cover
                   this is gonna be 40, 4548 Elder, 4548 Elder.

**341:**           10-4 from (unintelligible) and 111 get
                   station 9 out there?

**DISPATCH:**      Their rolling on their way.

**341:**           10-4.

**106:**           Cover unit now.

**DISPATCH:**      106 you were covered.

**106:**           10-21 them tell them, he is requesting 10-18
                   now.

**DISPATCH:**      10-4.  All S.O. units code 33 on channel 5,
                   code 33 on channel 5.

**341:**           106 copy is now requesting 10-18.

**871:**           El Centro 871, 1-10-15 for 148

**DISPATCH:**      10-4, 1-10-15 for 148.

**341:**           Copy uh 871 to 341.

Ex. 17

00933

8

425

Case 3:04-cv-02459-J-PCL   Document 50   Filed 05/18/06   Page 67 of 702

IMPERIAL COUNTY SHERIFF'S DEPARTMENT
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018   / CR # 0112-0996

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

**871:**       Go ahead.

**106:**       Do you want me to roll south uh to assist
            you with the booking or you're going to take
            him south?

**871:**       Uh I want to see what station 9 whats first,
            I can just do a supp on that on the report
            for us, uh if you want to go just keep
            coming down otherwise I'll see you outside,
            as far as kids and everything.

**106:**       10-4 then I'll continue to be in route.

**DISPATCH:**  Clear code 33 on channel 5, clear code 33 on
            channel 5, 0208 hours.  5 19 El Centro.
.....................................................................

**871:**       El Centro 2 871.

**DISPATCH:**  877 El Centro.

**852:**       El Centro 2 871 is trying to get a hold of
            you.

**DISPATCH:**  That is affirmative however we had traffic
            on channel 3, 871 go ahead.

**871:**       El Centro clear for a 27-29 by DL

**DISPATCH:**  Negative stand by one.  871 to El Centro go
            ahead with your subject now.

**871:**       El Centro it's going to be on Nora, 6-5-8-2-
            8-4-5 control Lackey.

**DISPATCH:**  10-4.  871 to El Centro.

**871:**       Go ahead El Centro.

<div align="right">

**Ex. 17**

00934

426

</div>

9

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT**

**Administrative Investigations Unit**

**328 Applestill Road**

**El Centro, CA 92243**


**IA 2002-018   / CR # 0112-0996**

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal


**DISPATCH:**     Randy Lee Lackey is valid negative 29 for
                 all the way around.

**871:**          10-4,

**106:**          871, 106

**871:**          Go ahead 106.

**106:**          871 is a station 9 unit with you know?

**871:**          Negative.

**106:**          106, can you call station 9 and find out
                 what happened to the unit?

**DISPATCH:**     10-4 they were on the phone however I put
                 them on hold and then hanged up I'm
                 contacting them now.   341, El Centro your
                 ETA is still on hold.

**341:**          It's going through Niland now.

**DISPATCH:**     10-4.  106 El Centro.

**106:**          (click)

**DISPATCH:**     Information only, I think their unit is
                 lost.

**106:**          10-9 it.

**DISPATCH:**     I think their unit is lost they still have
                 me on hold.

**106:**          I'm on Dogwood and "G" so I'm heading that
                 way.

**DISPATCH:**     10-4.  106 the unit is still West bound on
                 Carter.

**Ex. 17**

00935          427

IMPERIAL COUNTY SHERIFF'S DEPARTMENT
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

## IA 2002-018  /  CR # 0112-0996

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

| | |
|---|---|
| **871:** | El Centro to 871, advise him if he's on Carter he went to far he just goes back to Cady and go west on Cady to the first street over. |
| **DISPATCH:** | 10-4. |
| **106:** | 341, 106. |
| **341:** | Go ahead. |
| **106:** | You can slow it down I don't think uh I think he's code 4 and I can probably beat you there. |
| **341:** | 10-4 just getting into the station 7 now. |
| **106:** | I'm just outside of Brawley now. |
| **341:** | 10-4 |
| **DISPATCH:** | 871 El Centro Station 9 are they out with you now? |
| **871:** | 871, El Centro, I think there coming down the road. |
| **DISPATCH:** | 10-4, did you copy 106? |
| **106:** | Affirmative I'll be there, less than 5. |
| **DISPATCH:** | 10-4 |
| : | |
| **DISPATCH:** | Go ahead, I 'd covered you. |
| **341:** | 341 is out there. |

# Ex. 17

00936

428

11

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## Administrative Investigations Unit
### 328 Applestill Road
### El Centro, CA 92243

### IA 2002-018   / CR # 0112-0996

Radio and Telephone Call
# 871-Tackett, # 106- Sgt. M. King, # 341-A. Lowenthal

**106:**       El Centro 106, 10-97

**DISPATCH:**   10-4, 10-97.

**341:**       106 341.  Is it North or South on Elder off
               Cady.

**106:**       (unintelligible) I believe North.

**341:**       10-4.  El Centro 2, 341 on 10-97

**DISPATCH:**   10-4

**871:**       El Centro 2 871.

**DISPATCH:**   Go ahead.

**871:**       Can I get a CR for 148?

**DISPATCH:**   10-4, 0996-0996

END.

Typed by:
Galdy Gutierrez
Office Assistant 111
REVIEWED BY SGT. DELFINO O. MATUS 7/12/02

**Ex. 17**

00937

429

12

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

SGT. MATUS:    Okay uh today's date is May 14, time is
               approximately 0642 hours, this is an
               interview with Sergeant Myron King.  Uh
               Sergeant King is assigned to uh South County
               Patrol, this is in regards to IA 2002-018,
               it's an incident that involves Deputy Justin
               Tackett that occurred on December 28th, uh
               2001.  Uh, Myron, uh back in December of
               last year, Brawley PD put out a broadcast
               regarding a vehicle that had been involved
               in a hit- and-run, uh the vehicle was
               described as a blue uh, blue jeep, with a
               rag top, uh I understand that uh Deputy
               Tackett went to a location and located a
               vehicle that more or less matched that
               description, can you explain to me what
               happened that particular night?

SGT. KING:     Uh, originally, the uh somewhere around
               midnight, Brawley put out AVR on the uh jeep
               that was involved in a uh TC, misdemeanor
               hit and run,

SGT. MATUS:    Hmm.

SGT. KING:     Uh, about two hours later, Brawley PD
               requested that we sent a Deputy out to a
               location on Elder Road, to see if a jeep
               matching description was at the residence.
               So uh Deputy Tackett, responded to the
               scene, I was Patrol Sergeant that night, I
               was currently working the South end but it's
               also responsible for the North end, uh I
               heard him uh call it out that there was a
               vehicle, uh matching the description, he
               called the description in and it was a
               little bit off from what they had put out,
               uh,

SGT. MATUS:    Do you recall what it was that they put out?

**Ex. 17**

00938          430

1

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

**SGT. KING:** He put it out that it was an uh, black jeep
and it didn't have a top, but and but it had
front and end damage, uh the one in the AVR
was a blue jeep with a rag top raise with a
fresh front and end damage. He said uh that
the jeep was at the residence, asked him
what he wanted to do? And the Dispatch
contacted the Brawley PD and I heard him
advise over the radio, stand by, they had a
Brawley PD officer in route to meet him at
the scene.

**SGT. MATUS:** Okay where did he locate the vehicle at?  Do
you recall?

**SGT. KING:** It was on Elder Road, I don't remember the
uh address there.

**SGT. MATUS:** Do you know who lived there?

**SGT. KING:** Uh, Randy, can't think of Randy's last name
right know.

**SGT. MATUS:** Okay, so what happened next?

**SGT. KING:** Well, I was still on Patrol, and next thing
I know I heard a, him calling for a 10-18,
Dispatch didn't copy it, cause it was kind a
garble, so I had to get on the radio and
advise Dispatch, that he was requesting 10-
18, and I was, and I started rolling that
direction.  Short time later he called in
and said he had one uh 10-15 in custody for
uh 148, and I continued up there and uh met
with him at the scene.

**SGT. MATUS:** Okay did he explain to you what had happened
or?

00939   **Ex. 17**
431

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

**SGT. KING:** Well when I first arrived on the scene, I parked on Elder Road, I parked behind 2 Brawley PD and uh they were parked on Elder Road and I looked up there and I didn't see the Sheriff's Unit, the 2 Brawley PD officers come walking out to meet me um one of them was a um, agent he had the marks on his sleeve, I didn't get his name and I asked him if this is the vehicle they are looking for and he say's no and he say's it's not the vehicle, he say's obviously not the damage is old and he say's there is dirt piled up all over the rims and it obviously hadn't been moved in quite a while

**SGT. MATUS:** Okay.

**SGT. KING:** I walked up a little bit farther so I got even with the drive way, and I looked inside the drive way of from Elder Road and I saw the unit, parked uh even with the house drove down the drive way and it was parked even with the house,

**SGT. MATUS:** On the property or off the property?

**SGT. KING:** Oh, on the property in the drive way to the residence, in which was off the road way, the house sits back maybe 20 to 30 yards off the road way, and the vehicle or the unit, was in even with the house, 20 to 30 yards off the road way, it was parked there, uh the reds and blues were on. The spot light was on, illuminating the house the, the hand held spot light on the driver's side, the right side alley light was on the head lights were on, illuminating the whole house. Um, the uh Shelly Rouhotas was out there, she contacted me, and uh,

**Ex. 17**

00940    432

5

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

SGT. MATUS:    Did she, did she live there or?

SGT. KING:     She lives right next door. Uh, Randy is her
               uh, brother-in-law, and she was out cause I
               guess they called Shelly and she's just
               right next door, she came over she contacted
               me, and said, something was going on and I
               should check into it because it wasn't
               right.

SGT. MATUS:    Right.

SGT. KING:     And uh, so that's when I walked up there and
               uh talked to uh Justin.  And he told me what
               had happened, basically told me that uh he
               had driven, he had seen the jeep from the
               road way, driven in past the house, all the
               way past the house, the jeep sits back maybe
               and an guess estimate 75 yards,

SGT. MATUS:    From the roadway?

SGT. KING:     From the roadway, back past the house, it's
               a big, it's a big lot probably a couple of
               acres, total there.

SGT. MATUS:    Is it surrounded by fence?

SGT. KING:     Surrounded by a fence, you got to come in
               threw the drive way, surrounded by trees,
               hedges, fence uh the jeep was parked at the
               very back of the property uh you had to
               drive past the house, past where normal
               access would be to the house all the way
               back to the property, I never walked back
               there, I could see the jeep back there and
               the headlights of the units, but I never
               walked back to take a look at it.  But
               anyway he told me that he'd driven around,
               the jeep and came back by it and called the

4

**Ex. 17**

00941            433

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

license in because he called the license in
that's how he got the license uh he said the
he came up and made a 3 point turn, in the
drive way and then position himself in front
of the house to keep anybody from leaving.

**SGT. MATUS:** Is that where he, is that where the unit was
found?

**SGT. KING:** Yeah, right where he parked his unit right
there, so then he said a guy came out of the
house the guy was dressed in uh pants, uh no
shirt, no shoes, and this was uh, probably
I'd estimate the temperature in the high 30,
low 40's the guy came out to see what was
going on, which is kind a normal, uh Tackett
uh said he didn't tell him what it was other
than Brawley PD wanted to talk to one of the
family members reference to something that
happened.

**SGT. MATUS:** Let me, let me ask you this if you know, how
did Tackett know to go to that house?

**SGT. KING:** Well the Brawley PD gave him the address to
check that residence.

**SGT. MATUS:** Oh, okay.

**SGT. KING:** So um, and what I heard from Brawley PD is
the reason they gave him that house was
because when the jeep was mentioned, I
talked to them later, somebody said, hey so
and so got a jeep similar to that
description.

**SGT. MATUS:** You talked to Brawley PD later?

**SGT. KING:** Yeah and they said, somebody got, not that
it was this jeep but he has a jeep similar

5

**Ex. 17**

00942          434

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

                    to that description, so they said go out
                    there and check it and obviously when I
                    talked to Brawley PD they said obviously it
                    been parked there for quite a while, there's
                    dirt piled up over the top of the rims.

SGT. MATUS:    Right.

SGT. KING:     Any way's so uh Justin told me, the guy came
                    out and uh that uh he didn't tell him
                    exactly what he was wanted for other than
                    Brawley PD was going to come out wanting to
                    talk to him, so the guy said he was going to
                    go back in, and wanted to get dressed cause
                    it was cold out there and Justin say's he
                    told him he couldn't and the guy kept on
                    insisting to go in and uh Justin ended up,
                    the guy turned around to go back to the
                    house, Justin ended up grabbing him and said
                    the guy jerked his arm away from going
                    inside the house and that's where Justin
                    arrested him for 148.

SGT. MATUS:    And this guy was Randy?

SGT. KING:     Randy, yeah.

SGT. MATUS:    Okay.

SGT. KING:     And when I got there he was in the back of
                    the seat of the unit and he was dressed in
                    just pants, no shirts, no shoes.

SGT. MATUS:    And was the unit running?

SGT. KING:     Yeah, the unit was running, they had the
                    heat on as a matter of fact, they had it on
                    too much, he was complaining they were
                    burning him up in the unit.

**Ex. 17**

00943      435

6

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

SGT. MATUS:     Okay.  When Tackett went out there
                initially, do you know if he went out there
                by himself or with somebody else?

SGT. KING:      As far as I know, he was by himself.

SGT. MATUS:     Okay.

SGT. KING:      He wasn't contacted, he wasn't ask to
                contact anybody, it was actually to check to
                see, if the vehicle was there.

SGT. MATUS:     So uh he goes through the residence, uh and
                he tells you that he drives around this
                jeep, looked and then positions himself
                where you found it.  Was there anybody else
                aside from uh Randy at the house?

SGT. KING:      Yeah but he said that his wife came out, and
                I don't know, the son was there, when I got
                out, I don't know if the son came out there
                but Justin's actions uh, told me the wife
                had came out also.

SGT. MATUS:     Randy's wife?

SGT. KING:      Randy's wife, came out.

SGT. MATUS:     Do you know her name?

SGT. KING:      Yeah, I can't think of it right know,

SGT. MATUS:     And the son, who is the son, is that a
                little kid or what?

SGT. KING:      No, he's like uh, probably close to 18,
                somewhere around there.

SGT. MATUS:     Randy's son?

**Ex. 17**
00944      436

7

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

**SGT. KING:** Randy's son, probably close to 18.

**SGT. MATUS:** So there was at least, least 3 people at the house that you know?

**SGT. KING:** Yeah.

**SGT. MATUS:** Okay. So uh when you got there you said you saw um, Randy in the back seat, at the patrol unit, that's Tackett's unit, right?

**SGT. KING:** Yes.

**SGT. MATUS:** Okay, uh, what happened next? What did Tackett tell you?

**SGT. KING:** Well when he explained everything and done, and he explained to me why he arrested the guy, I felt that point we are in real shaky grounds, for one thing, I didn't think he uh, for the jeep was and he said he'd driven around it, I didn't believe we had, he over stepped what he was asked to do, first, he was asked to see if the jeep was there and wait for Brawley PD, took it on himself to go back into the property, where he said he, and he told me he saw the jeep from the road way, that's how I knew to drive back there, he drove back there in which, in my opinion, probably didn't have legal access to do it because, it was so far back we probably need a search warrant or permission, um, and then right after drove around the vehicle, and if you drive around the vehicle, in my opinion, at least he's if your going to do it, do it right, look at the vehicle cause if you were to look at it, you would saw the front end damage, was all old and rusted, dirt was all piled over the rims and the obviously couldn't be the right vehicle.

**Ex. 17**

00945

437

8

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

SGT. MATUS:     Right...right...

SGT. KING:      So, I felt that were on real shaky grounds,
                so I told him you know that he had put the
                department and himself in a shaky position,
                it was in the best interest of us to "OR"
                the guy right on the spot, cite and release
                and let the DA decide, he was real adamant,
                he wasn't going to do that, I tried, I kept
                on explaining to him and I kept on telling
                him Justin, I'm trying to save your butt,
                right know if you let me take over this, I
                can, I can smooth this thing over, smooth it
                over and let it go and he said, "No, I,
                don't, I don't "OR" anybody that resists me,
                I don't "OR" anybody."  And I explained to
                him that were on real shaky ground, I tried
                to tell him what he did wrong, and he was
                insistent, on booking the guy, and,

SGT. MATUS:     Was he being insubordinate?

SGT. KING:      I wouldn't say insubordinate, but I'd say,
                awful stubborn, didn't want to listen to
                reason, I think he uh had a little bit of uh
                a guy contempt of cop because finally after
                about 4, 5 times of trying to go through
                this, I was being real reasonable with the
                guy without giving him direct order, kind a
                letting him make a decision on his own,
                finally I said, "No, we are going to OR the
                guy" and he said, 'Well, first, I'm going to
                take him back, to the Substation" and I
                asked him, "Why do you want to take him back
                to the Substation for?" "I want to interview
                him to see if he recognize that I was in
                uniform, and that was a unit with the lights
                on"  which was obvious, I mean, it's, it's
                just it's beyond the thing, that's when I
                gave him a direct order, "OR him, right now"

                                    9

00946            Ex. 17
                        438

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

cause at that point it had gone way to far
and he wasn't going to listen until he got a
direct order and that's when I gave it to
him, direct order, which he complied with
that, that, he didn't like it but he
complied with it. He kept on making
accusations, or insinuations, I would say,
that during this uh time, that uh,

SGT. MATUS:    This is Tackett?

SGT. KING:     Tackett, that the only reason we're doing
this, is because who they are because uh
Shelly Rouhotas, he knew Shelly Rouhotas
knew me and uh he made insinuations that the
reason we were doing this is because who the
people were and I also told him I said look
man, your on shaky grounds right here, with
who these people are your gonna get a
citizen's complaint, "I know the people, I
could of ironed it over right then and there
and all this would have been done with,
that's all it would of taken,"

SGT. MATUS:    Right.

SGT. KING:     Say hey, I'm sorry we made a mistake you
know, and all this, people are reasonable
people I know and that's how I would handled
it and the situation would have been over
with it.

SGT. MATUS:    Right.

SGT. KING:     His prolonging it and arguing ended up, what
brought this what it was.

SGT. MATUS:    When you were talking to him, telling him
about, OR this guy, was there anybody else
out there?

**Ex. 17**

10                    00947           439

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243


IA 2002-018
5/14/02

Interview with Sgt. Myron King


**SGT. KING:**     Yeah, uh as a matter of fact uh Deputy
                   Lowenthal was there, Deputy Lowenthal even
                   stepped in and uh told him to listen to the
                   Sergeant, he's trying, he's trying to help
                   you, so he was standing right there, and he
                   was listening to the conversation and
                   telling him, "Listen to him, he's trying to
                   help you"

**SGT. MATUS:**    What about uh Randy was he there, the
                   inmate?

**SGT. KING:**     Uh, he was in the car, besides I don't know
                   if he can hear or not.

**SGT. MATUS:**    Okay.  So it was only the 3 of you then,
                   that were in this conversation?

**SGT. KING:**     Uh, Shelly Rouhotas, her sister and the son
                   were standing a way's away, I don't know, of
                   they can hear us or not, but they possible
                   could of heard us, I don't know, uh if they
                   heard us or not what was going on but the
                   only officer's that I could think of, I
                   don't know if two Brawley PD officer's
                   walked up then or not but I think they may
                   have already left but I'm, I'm not sure but
                   I know definitely, Deputy Lowenthal was
                   there, listening to it.

**SGT. MATUS:**    So after he was OR, after Randy was OR, did
                   uh Tackett say anything to you?

**SGT. KING:**     I, we left the scene, I told him, meet me at
                   the Brawley Substation, at the Brawley
                   Substation I pulled him inside and I tried
                   to go over the scenario, again and he, he
                   couldn't see what he did wrong. He could not
                   understand that he had done anything wrong.

11

00948

**Ex. 17**
440

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

He could understand that it's over step what
I had asked him to do, that his actions, he
kept on saying, I asked him why he refused
to let the guy go back inside, I said you
know, it's 30's, it's high 30, low 40's out
here, why wouldn't you let this guy go back
inside, I mean no shoes on, no shirt on, the
guys obviously cold, and he said well,
"Officer safety", kept on expressing
"Officer's safety" and back at the
Substation, I say's well if your concern
about officer's safety, cause I was his uh
FTO Coordinator, when he went through, first
thing to do, is officer's safety is you
don't park your car in front of the house?

SGT. MATUS:     Right.

SGT. KING:      It will illuminate the house and put
yourself I danger, you are in your unit by
yourself, your parked out on the street, and
wait for your back up to come and the thing
about it is, it's a misdemeanor not accruing
in your presence, it's not even an
arrestable offense, for it, and he wasn't
asked to contact anyone he was just asked to
see, but he was addressing officer's safety
well then I expressed to him, and I say's
well if your concern about officer's safety,
that he was the worst violator of it about
where he parked and what he did, and that
his actions, instigated this whole incident
and I talked to him but, I didn't seem it
made a lot of impressions on him.

SGT. MATUS:     Did you report this incident to anyone?

SGT. KING:      Yeah, I reported it to uh I think uh, well
the next day I know I reported to Sharon
because I wrote it up uh the next night.

12

00949

Ex. 17
441

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

## IA 2002-018
## 5/14/02

Interview with Sgt. Myron King


SGT. MATUS:    That's Chief Housouer?

SGT. KING:     Yeah, Chief Housouer.

SGT. MATUS:    You prepared a memo on it?

SGT. KING:     Yes.

SGT. MATUS:    Okay, it's uh the one directed to Chief
               Housouer from you dated uh December 29th
               2001?

SGT. KING:     Correct.

SGT. MATUS:    Okay.  Have you talked to Tackett since,
               this incident?

SGT. KING:     Not about this incident, not about this
               incident, that was the last time I talked to
               him about this incident.

SGT. MATUS:    Did, did he ever approach you regarding the
               incident?

SGT. KING:     No.

SGT. MATUS:    Has anybody approached you regarding this
               particular incident?

SGT. KING:     Oh, yeah, a couple of people have, uh cause
               they had heard about it, heard what went on.
               Um, well Chief Housouer did, couple of other
               people, Deputies that we're working that
               night, wanted to know what went on cause
               they heard uh the call for the 10-18, and
               just normal wanting to know what went on
               type stuff.

**Ex. 17**

00950

442

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

**SGT. MATUS:** Okay.  You don't recall the names of the two Brawley cops?

**SGT. KING:** No, I don't.

**SGT. MATUS:** Okay.

**SGT. KING:** I know one of them was an agent, I think that's what they call him because he was uh like a 2 striper.

**SGT. MATUS:** Right.  Did you talk to uh Randy or any of his family members afterwards, after the incident?

**SGT. KING:** Yeah, I had talked to Randy, I ran into him in WAL-MART, I ask him how he was doing? And that' about, that's about it.

**SGT. MATUS:** Did you guy's discuss the incident or?

**SGT. KING:** A little, a little bit, I told him I was sorry it happened, that it shouldn't of happened, and uh asked him what he was going to do, and at that time, he told me he'd contacted a lawyer, and that's when I quit.

**SGT. MATUS:** Oh, Myron I don't think I have any further questions, is there anything else you'll like to add or maybe something I didn't ask you, you want to bring up or?

**SGT. KING:** No, I think, I think, what this involved in my opinion what it did, is uh it was kind of the old contempt cop, he didn't want to do what I said, now I'm gonna, you know, take action here,

**SGT. MATUS:** Was uh Tackett angry?

**Ex. 17**

00951          443

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King

SGT. KING:      He was upset, yeah you could see he was
                upset, I wouldn't call it angry, but he was
                upset, he was very insistent in booking this
                guy he made the statement, I don't "OR"
                anybody that resists me.

SGT. MATUS:     Right.

SGT. KING:      And that's why he didn't want to "OR" the
                guy.

SGT. MATUS:     At any time that you talked to Randy, did he
                uh ever indicate to you how Tackett acted?

SGT. KING:      No, I didn't really talked to him, that
                night cause he was in the car,

SGT. MATUS:     Right.

SGT. KING:      And the next time I ran into him was the
                second time I ran into him was at WAL-MART
                we didn't, didn't go into any kind of
                detail, so I just kind of apologize for me
                and for the department.

SGT. MATUS:     Right.

SGT. KING:      Trying to smooth things over cause I've
                known Randy for a long time and he's a real
                nice guy and I, I've never known his ultra,
                mellow guy's, that is extremely supportive
                of law enforcement, especially at the
                Sheriff's Office since uh Tony's been in it,
                he's been ultra supportive of it.

SGT. MATUS:     Tony Rouhotas?

SGT. KING:      Yeah.

SGT. MATUS:     How is he related to Tony Rouhotas?

**Ex. 17**

15                                    00952      444

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Sgt. Myron King


SGT. KING:       He's Tony Rouhotas uh well it's Tony's
                 wife's brother-in-law, so there brother -in-
                 law's I guess we can call it.

SGT. MATUS:      Okay.

SGT. KING:       So I've known him for probably 15 years, I
                 mean I've never hanged around him but I met
                 him while with meeting Tony-in laws and
                 stuff and running into him and all he's been
                 ultra nice, ultra polite, uh he's always
                 been ultra supportive with the Sheriff's
                 Office.

SGT. MATUS:      Do you have anything else to add Myron?

SGT. KING:       No that should do it.

SGT. MATUS:      Okay uh what I would like to do is not have
                 you uh discuss this with anyone, and uh if
                 you have any questions get a hold of me,
                 okay I'm going to end the interview time is
                 approximately 0702 hours, thank you Myron.

End of interview

                        Typed by:
                     Galdy Gutierrez
                 AIU Office Assistant 111
              Reviewed by Sgt. Delfino O. Matus 7/12/02

00953   **Ex. 17**

16

445

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

SGT. MATUS:    Okay uh today's date is May 14th the year is
2002, time's approximately 1523 hours, uh
this is in regards to IA 2002-018, uh the
case number, uh the Sheriff's Case Number on
this is 0112-0996, this interview is of a uh
Deputy assigned to the Imperial County, to
the North end uh Patrol, uh Deputy Andrew
Lowenthal, it's L-O-W-E-N-T-H-A-L, uh Deputy
Lowenthal is assigned to North County Patrol
uh, what is your patrol number, radio
number?

LOWENTHAL:    My number is 341, 341.

SGT. MATUS:    341? Okay this interview is being conducted
at the Imperial County Sheriff's Department
by Sergeant Delfino Matus.  This is in
regards to an incident that, back, that
occurred back on uh December 28th of 2001.
There was uh, an arrest that was uh made by
Deputy Justin Tackett, out on Elder Road,
that's 4548 Elder Road, Brawley, CA.
Lowenthal, you had an occasion to read uh
Deputy Tackett's report, case number 01112-
0996?

LOWENTHAL:    Yes, I did.

SGT. MATUS:    Okay.  We're you involved in this particular
incident?

LOWENTHAL:    I was involved, my, my participation came
after the fact um, while still on scene, um,
Mr. Lackey was already taken into custody,
was in the back seat of Deputy Tackett's
patrol car when I arrived on scene.

SGT. MATUS:    Okay, do you know why uh Tackett was there
at that location?

1

00954

**Ex. 17**

446

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Andrew Lowenthal

LOWENTHAL:     Um, from what I understand I did not recall hearing the radio traffic, from what I understand when I was told when I got there, um that he was investigating, assisting Brawley PD in investigating in a possible hit and run involving a jeep, and he was simply there to see if the vehicle was at that location.

SGT. MATUS:     Okay, why did you respond to that location?

LOWENTHAL:     I responded as a request for back up.

SGT. MATUS:     And who requested the back up?

LOWENTHAL:     Deputy Tackett.

SGT. MATUS:     Did he mention why he needed that or do you recall?

LOWENTHAL:     I truly don't recall hearing the radio traffic in my head right know but as I understand there was, there was a situation where he needed an additional officer and uh, I was, I, I, for back up, um, I don't remember, truly if he said that I had a combative subject or a non respondent, from that subject or if he just simply said you know I need a cover unit, respond unit.

SGT. MATUS:     Okay.  What shift we're you working that day?

LOWENTHAL:     Um, that would have been a graveyard shift, from midnight to 8 o'clock in the morning. Um, you know what?  There was a period in time, that we went from 8 hour shift to 12 hour shifts and then back to 8's and quite

2

Ex. 17
447

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

      frankly that may have been a period of time, when we we're working 7 p.m., 1900 to 0700, I don't recall I'd have to go back in the logs and look, we may of actually be on a 12 hour shift.

SGT. MATUS:    Okay, do you know what shift Tackett was working that day?

LOWENTHAL:    I believe that would have been the same.

SGT. MATUS:    Okay, so you both were working the same shift?

LOWENTHAL:    We were partners on the same shift.

SGT. MATUS:    And both of you were assigned to the North County?

LOWENTHAL:    Yes, we were.

SGT. MATUS:    Okay. Was there anybody else working with you guys?

LOWENTHAL:    No, um, I don't believe so, we just work 2 man shifts, 2 Deputy shifts and then uh a roving sergeant from the South County, we rarely have one up in the North end.

SGT. MATUS:    Okay, and who was the Sergeant on duty that night?

LOWENTHAL:    Uh that was Myron King, Sergeant Myron King.

SGT. MATUS:    Okay. So you get a call for, for back up, you respond, when you get there, was there any units there, besides, Tackett? If you recall?

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

LOWENTHAL:      You know what, I want to say that Brawley PD
                was also, I think everyone was basically
                getting there at the same time, truly, I
                remember that I was from far out and when I
                got there, I think Brawley PD was also just
                getting on scene, and I know that uh, I
                believe Sergeant King arrived after I did,
                I'd have to look at the logs to be sure.

SGT. MATUS:     Okay, uh Elder Road, where this occurred how
                close is that to Brawley?

LOWENTHAL:      It's not that far, um, probably 3, 3 miles
                outside, you simply go North on 86 to, to
                Kalin uh South on Kalin and then you turn on
                to Cady and go West and then right past the
                Poe sub, which we call it,

SGT. MATUS:     Right.

LOWENTHAL:      Is, is Edler Road and that's North and South
                running road way it's not that far it's
                literally no more than 5 minutes outside of
                Brawley.

SGT. MATUS:     Okay, so you get there, uh what did you do
                when you got there?

LOWENTHAL:      Uh, there was nothing really for me to do
                expect to find out what was going on, there
                was no, there was no combative activity,
                there was uh, I just simply went up and
                asked uh, Deputy Tackett what was going on?
                And he stated that the subject in the car
                had uh gotten combative on him, and that he
                was there investigating this uh, uh possible
                hit and run for Brawley PD, standing by for
                Brawley PD to get there, and,

00957   **Ex. 17**
449

4

Imperial ⬤ unty Sheriff's Depart ⬤ t
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243


IA 2002-018
5/14/02


**Interview with Andrew Lowenthal**

**SGT. MATUS:**   Okay, when you got there, you said there was
somebody in, in the car?

**LOWENTHAL:**   I believe the subject was in the back seat
of the patrol car.

**SGT. MATUS:**   And whose car was that?

**LOWENTHAL:**   Deputy Tackett's patrol unit.

**SGT. MATUS:**   Okay, do you recall how this individual was
dressed?

**LOWENTHAL:**   As I recall, I think he was just wearing no
shirt and jeans, now I know that there was
an issue about being cold, and that's why I
think he was in the patrol car, for the
heater,

**SGT. MATUS:**   Hmm.

**LOWENTHAL:**   Um, and I know that in the report it said
something about his wife bringing out
something for him to wear but I don't think
he had it on, I may be wrong,

**SGT. MATUS:**   Right.

**LOWENTHAL:**   I don't recall him having, had put it on.

**SGT. MATUS:**   Okay.

**LOWENTHAL:**   Again I may be wrong.

**SGT. MATUS:**   So, when you get to the scene uh who do you
contact?

**LOWENTHAL:**   I contacted Deputy Tackett, well and then,
and then, I mean, the, the, the, the

5

**Ex. 17**

00958

450

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Andrew Lowenthal

                suspect's wife came up to me right away and uh you know, identified herself and who she was and who, how she was related to one of her previous uh employee's here in the department and, and uh that sort of thing.

**SGT. MATUS:**    Did she tell you what had happened, that, that night?

**LOWENTHAL:**    She, well I got mostly from Deputy Tackett so what she told me and what Tackett told me would of been blurred together, basically Deputy Tackett told me that he came out to the house and that he asked him not to go back in so whatever she told me would of basically blurred in with what he told me so I really don't distinctive remember her telling me a separate story.

**SGT. MATUS:**    Okay, did Tackett tell you why um, he arrested this individual?

**LOWENTHAL:**    Deputy Tackett advised me that when he ask him not to go back into the house, due to an officer safety issue, allowing that a possible suspect of a crime to go back into the house where he was no longer be under a supervision by that officer, uh the subject said I'm going back into my house and then when Deputy Tackett tried to restrain him from going back into the house uh he persisted and Deputy Tackett placed him into custody for uh 148, obstruction, delay, resisting.

**SGT. MATUS:**    What happened after that after he placed him into custody, do you know?

**Ex. 17**

451

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

LOWENTHAL:        Sergeant King arrived, and uh he then
                  reported to Sergeant King, what had
                  happened, and uh why he made the arrest and
                  uh Brawley PD also conducted their
                  investigation, I believe with the uh, with
                  the permission of the of the uh Mrs. Shak,
                  that's all I can, I know that Brawley out
                  ruled that the vehicle was being involved in
                  the uh,

SGT. MATUS:       Ruled it out?

LOWENTAHAL:       Ruled it out, ruled it out because
                  apparently they did take a look at it and it
                  had not been moved, it had cobwebs, I guess,
                  uh from the ground and all around the tires
                  and that sort of things, the vehicle hadn't
                  been moved so they ruled out that the
                  vehicle, was not being involved in that hit
                  and run.

SGT. MATUS:       Did uh Deputy Tackett ever tell you that he
                  went back there to check?

LOWENTHAL:        Yes, he did, he told me that he drove around
                  back there and looked at the vehicle and
                  came back out to the front of the vehicle,
                  to the front of the house.

SGT. MATUS:       Did he ever mentioned how close he got to it
                  or?

LOWENTHAL:        Said he drove right up to it.

SGT. MATUS:       And he couldn't tell if it been moved or
                  not?

LOWENTHAL:        Uh that never came up.  The, the information
                  about the vehicle having cobwebs came up

7

00960

**Ex. 17**
452

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

|  |  |
|---|---|
| | later, but he, never came up by him, that it did not appear to have been in a while. |
| SGT. MATUS: | Okay. If this was before he took this uh, Lackey into custody? |
| LOWENTHAL: | That he checked the vehicle? |
| SGT. MATUS: | Yeah. |
| LOWENTHAL: | According to him, according to his story, he first, when he first came out of the premises he drove to the back, area of the back yard, where the vehicle was, saw it drove back out towards the house, towards the front of the house where the road is, and that's where he made contact with the suspect. |
| SGT. MATUS: | Did he ever receive any information from anyone to, to enter the property? |
| LOWENTHAL: | He never told me if he had or not. |
| SGT. MATUS: | Can you describe this property? |
| LOWENTHAL: | Um, uh I'm estimating an acre wise, it's probably maybe about an acre or more, um, from the front road of Elder Road to the back area, um it's probably several lots wide, and uh about a football field maybe, or less, maybe 70, 50 to 70 yards, I'm not good in guess estimating, I apologize for wanting, going back and forth, it's a considerable distance from Elder Road to the back area of the property, where the vehicle was parked. |
| SGT. MATUS: | Okay, is this property, is it opened or surrounded by a fence or do, do you recall? |

8

**Ex. 17**
00961    453

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Andrew Lowenthal

**LOWENTHAL:**     As a recall there's fence on the sides and
                   rear but there was no gate or anything that
                   prevented someone from driving from the
                   roadway into the property.

**SGT. MATUS:**    You could just drive in free without having
                   to open the gate or anything?

**LOWENTHAL:**     That's what it appeared to me at the time.

**SGT. MATUS:**    Okay.

**LOWENTHAL:**     It was dark and we were concentrating on
                   things that were happening right there and
                   um, I'm not going to make excuses but it,
                   but I was just not thinking what the
                   perimeter of property at the time.

**SGT. MATUS:**    Alright...right...were you present when uh
                   Sergeant King when he had a conversation
                   with uh Deputy Tackett?

**LOWENTHAL:**     I think there was a time wherein he took him
                   to the side and spoke to him privately, and
                   then there were other times when um, it, it
                   just it towards the end, of the contact
                   before Deputy Tackett took the suspect away
                   it got to the point where we were both
                   talking to Deputy Tackett at one point I
                   think Sergeant may have taken him to the
                   side, and spoken to him, and then towards
                   the end it was like both of us ___, you know
                   you don't have to necessarily arrest him,
                   you can, you know 849 b him from here, file
                   sort of thing,

**SGT. MATUS:**    What, what did Tackett had to say about it?

**Ex. 17**

00962

454

9

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Andrew Lowenthal

**LOWENTHAL:** He stated that the subject broke the law and he was going to take him to jail and that's how he felt about it, he felt that uh the subject had violated him, in his authority in it that the subject was doing it on purpose, that reason.

**SGT. MATUS:** Do you know if uh Lackey ever struck Tackett at all or was there like a 415 or anything or?

**LOWENTHAL:** Uh according to his report, and I can only go by his report, personally, I don't have,

**SGT. MATUS:** Well, let me ask you this?

**LOWENTHAL:** I don't recall.

**SGT. AMTUS:** Okay.

**LOWENTHAL:** I don't recall uh Deputy Tackett telling me that he was struck by um, Mr. Lackey um, I don't recall any bruising or marks that he you know pointed out to me,

**SGT. MATUS:** Right.

**LOWENTHAL:** Um on Deputy Tackett person that he related that he'd been injured, he did not appear out of breath or, or anything like that when we got on the scene,

**SGT. MATUS:** Right.

**LOWENTHAL:** You know everything was copasetic based on the purpose of when we got there, subject was in the back seat of a patrol car and that was that.

**Ex. 17**

00963

455

10

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

**SGT. MATUS:**   How was the uh, how was Lackey acting, was he uh combative, calm?

**LOWENTHAL:**   He was calm.  He was calm, um,

**SGT. MATUS:**   Did he say anything that you know that you heard or that you recall?

**LOWENTHAL:**   I, no, I, I, went up to the window and said how are you doing, are you okay and he said "Yeah I'm alright" you know I wanted to make sure the subject in the back seat of the car was alright, and he was.

**SGT. MATUS:**   Right.

**LOWENTHAL:**   And that was not because I was concern that Deputy Tackett had done anything wrong so it's just how I am, you know,

**SGT. MATUS:**   Right.

**LOWENTHAL:**   You know check the status of people in the back set of the patrol cars, all the time, anyway but um, I did check the status, he was fine, uh probably uncomfortable because he had the handcuffs on the back seat of the patrol car with us, next to, I believed he was being warm you know,

**SGT. MATUS:**   Was it cold?

**LOWENTHAL:**   It was, it was chilly out.

**SGT. MATUS:**   You don't happen to remember the uh temperature, would you?

**LOWENTHAL:**   I would not.

**Ex. 17**
456

00964

11

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Andrew Lowenthal

| | |
|---|---|
| **SGT. MATUS:** | What eventually happened with Lackey?  Was he booked or was he OKed?  or do you remember? |
| **LOWENTHAL:** | I think he was booked, as I recall, I, you know, I mean, |
| **SGT. MATUS:** | Well, if you don't remember, you don't remember. |
| **LOWENTHAL:** | I guess he was cited and released.  I, I, don't, uh you know what we cleared the scene, and uh quite frankly I don't recall if he drove off with him or not, I remember getting out of there, |
| **SGT. MATUS:** | Right. |
| **LOWENTHAL:** | I remember just uh going 10-08, this is uh you know this is a scene being handled by the Sergeant, uh after looking at the report, refreshing my memory to be honest with you he was cited and released, but I remember that Deputy Tackett was adamant about wanting to take him. |
| **SGT. MATUS:** | Okay.  Did you ever talked to uh Tackett afterwards regarding this particular incident? |
| **LOWENTHAL:** | I remember nah, I may have, you know what, I mean there was a lot of talk about this, scuttlebutt about everything that escalated in the parking lot, you know, um, but Justin Deputy Tackett is setting his ways and he believes that when he does something, when he does something it's the right way, and that's it so, |

00965

**Ex. 17**

457

12

**Imperial County Sheriff's Department**
**Administrative Investigations Unit**
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

SGT. MATUS:        Let me ask you this, do you think he acted
                   properly?  Could this matter could have been
                   handled differently?

LOWENTHAL:         *(laugh)* All matters could be handled
                   differently for the good or for the bad, I
                   mean you can take a good situation and make
                   it bad by handling it differently, you can
                   take a bad situation and make it better in
                   fixing it by handling a different way, I
                   think that while one officer might of
                   handled it in a different way, it might of
                   have the same or different outcome.  I know
                   I'm wavering on this but quite frankly to be
                   an arm chair quarterback I know how I could
                   have handled it differently,

SGT. MATUS:        Right.

LOWENTHAL:         But it doesn't mean I would of made that
                   person any happier, um, *(short laugh)* um,

SGT. MATUS:        Well just like you say um, you know, things
                   can be handled differently,

LOWENTHAL:         Sure.

SGT. MATUS:        And the outcomes, comes out

LOWENTHAL:         Um,

SGT. MATUS:        Is the matter of maybe speaking with Tackett
                   and telling him, you know what maybe you
                   could of done this and this could of
                   happened, and,

LOWENTHAL:         You know it's always better to win people
                   over to your side, and explain situations to
                   him, and have them be adversary or have them

00966    **Ex. 17**
         458

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Andrew Lowenthal

be you know at your side to assist you in
any investigations in suppose to adversarial
and you know, I mean you know, I don't know
one such incident where I had a 459, 496
suspect and I ended up getting him to invite
me in for coffee, while we talked about the
investigation, I mean, that's they don't
always work out that way,

SGT. MATUS:     Right.......................right...........

LOWENTHAL:      It doesn't, sometimes they just go, side
ways and the next thing you know you have to
arrest someone, you know, I mean his
consideration was his suspect had been
involved in the car crash uh car accident,
the hit and run, and uh he had the same for
instance were talking hypothetical being
under the influence of a drug or Narcotic
fear that something terrible is going to
happen to him I'd gotten back into the house
and gotten a weapon.

SGT. MATUS:     Right.

LOWENTHAL:      So you know it just depends what is the
officer's mind at the time, of the contact.

SGT. MATUS:     (unintelligible)

LOWENTHAL:      So, yeah it can, it can go anyway.

SGT. MATUS:     Okay.

LOWENTHAL:      You know um, did the officer have the right
to protect himself and maintain the scene
until a neighboring agency can get there and

14

00967   **Ex. 17**
459

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

Interview with Andrew Lowenthal

determine either that vehicle is involved in
a TC or not.

SGT. MATUS:    Was he told to maintain the scene?

LOWENTHAL:     He was asked to maintain the scene, that's
               for what I understand know, I don't recall
               the radio traffic specifically, um, it was
               my understanding that he was told, asked to
               go by and check to see if the vehicle was
               there and the contact um, Brawley if it was,
               I can't see not maintaining the scene, if I
               believe that a vehicle suspect, suspect
               vehicle is at a location, I personally feel
               that I will be remised than to leave the
               location to drive away and not maintain the
               visual on that vehicle until proper
               authority's got there to determine whether
               it was weather it was not use in a crime.  I
               mean simply because I mean if it was the
               vehicle at least I will be able to say
               between this time and this time I did
               maintain contact with the vehicle.

SGT. MATUS:    When you arrived there, was this location
               well lit?  Do you recall?

LOWENTHAL:     By patrol cars, it was and I don't recall
               the lights on the house, in the house how
               well that they lit everything, but I know
               that the light bar alley lights, head lights
               and stuff made the area lit up and then with
               the other cars going on scene, Brawley PD I
               think for the most part, parked um, on the
               East side of Elder Road,

SGT. MATUS:    Hmm.

**Ex. 17**

00968    460

15

**Imperial County Sheriff's Department**
**Administrative Investigations Unit**
328 Applestill Road
El Centro, CA 92243

IA 2002-01B
5/14/02

Interview with Andrew Lowenthal


LOWENTHAL:        Okay on the outside of the residence, I pulled on the inside by
                  Deputy Tackett's patrol car,

LOWENTHAL:        And I think Sergeant King his patrol car was
                  on the property by the side, his patrol car
                  was parked on the West side of the
                  residence,

SGT. MATUS:       Tackett's? Tackett?

LOWENTHAL:        Deputy Tackett's patrol car was parked in
                  the drive way on the west side of the
                  residence.

SGT MATUS:        Okay and it was lit up?

LOWENTHAL:        Hmm.

SGT. MATUS:       Okay you had mentioned that you think King
                  arrived after you?

LOWENTHAL:        I think he did, um I may be wrong, again I,
                  I, I'm not going to lie, I'm not gonna,

SGT. MATUS:       Yeah, and I don't want you to lie either.
                  (Laugh)

LOWENTHAL         Right, right, and I....... You know sometimes I
                  don't, if it doesn't matter to me at the
                  time, who arrived first on scene I just
                  don't record things like that and I don't
                  know, so I, I, remember that Deputy Tackett
                  was adamant about the 10-15 and that
                  Sergeant King was advising him against it,
                  and uh um, Deputy Tackett felt that he been
                  you know run over by, run down by this guy
                  and he was just not going to stand for that.

00969                                          **Ex. 17**

16                                              461

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

SGT. MATUS:    Why was Deputy, why was Sergeant King advising against the arrest?  If you know?

LOWENTHAL:     I don't know the reason to that.  Um, like I said on both sides you know you can take you know uh you can make a list of for and against reasons for making an arrest,

SGT. MATUS:    Right.

LOWENTHAL:     You know and I may, in my mind it wasn't that who he was related, who this guy was related too and this and that it's just that you know what, you were there, you made contact, it went a little bit sideways, but you know what I think a little talking and a little bit of understanding could have been used, I, I'm not big on arrest myself though, I'm just not a big you know, go out there and arrest everybody kind uh person, I, I, much rather give verbal warnings and do that sort of thing, that's me, I feel that we do better with the public when we inform and educate through you know just talking to people that's, that's me personally.

SGT. MATUS:    Right .................right.

LOWENTHAL:     So for these reasons I was, I was telling Deputy Tackett, you know what why don't you just go ahead and explain the reason why you're here which you know, I think he gave vague reasons why he was there at the beginning which would of made anybody, I mean I come out of my house at 1 o'clock in the morning in my jeans and I found out there's a cop I want to go back in and put some cloths on,

00970

**Ex. 17**
462

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
5/14/02

**Interview with Andrew Lowenthal**

**SGT. MATUS:**     Right.

**LOWENTHAL:**      And I was looking at the situation from the
perspective of Mr. Lackey, not from Deputy
Tackett, I understand his reasons for
officer's safety but I didn't see a reason
why the guy had to go to jail for.  You know
you are in his property in the middle of the
night, you know his vehicle hadn't been
moved, he felt sure about that, you know,
it's just one of those, it could of gone
either way, you know, I, I, know I'm,

**SGT. MATUS:**     Tackett felt sure that the vehicle hadn't
been moved or?

**LOWENTHAL:**      No, no, no, the suspect.

**SGT. MATUS:**     Oh, okay.

**LOWENTHAL:**      Mr. Lackey was, was sure the vehicle had not
been moved and therefore in his, in his mind
he felt that I can go back in my house if I
want to,

**SGT. MATUS:**     Right.

**LOWENTHAL:**      Your not going to prevent me and your not
going to stop me and it was his castle, and,
and therefore you know, he put up to
resistance when he did and then found
himself in handcuffs.

**SGT. MATUS:**     Do you know if uh he ever told Tackett that?

**LOWENTHAL:**      Tell him what exactly?

**SGT. MATUS:**     That he hadn't moved his vehicle in a while.

18

00971

**Ex. 17**

463

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243


IA 2002-018
5/14/02


Interview with Andrew Lowenthal


**LOWENTHAL:**      I don't know if he told him that or not, we
                   just made that discovery later on when we
                   went back to look at it, or actually, I
                   never actually physically went back to look
                   at it.

**SGT. MATUS:**     Uh, Lowenthal I don't think I have any
                   further questions, is there anything else
                   you'll like to add maybe something I didn't
                   ask you, you'd like to bring up or clear up?

**LOWENTHAL:**      No, nothing else that I can think off.

**SGT. MATUS:**     Okay.  I'm going to order you not to discuss
                   this with anyone uh if you have any
                   questions regarding this particular incident
                   or that involves this uh just contact me,
                   okay.

**LOWENTHAL:**      Okay.

**SGT. MATUS:**     Okay, we're going to end the interview, time
                   is approximately uh 1544 hours.

End of interview.

Typed by:
Galdy Gutierrez
AIU Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 7/11/02


**Ex. 17**

00972

464

1º

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **SGT. MATUS:** | Okay uh today's date is July 12, the year is 2002, time's approximately 1340 hours. Uh, this is an interview with uh Deputy Justin Tackett, whose being represented by his Attorney Brad Fields. Uh, this is in regards to IA number # 2002-018. Uh the interview is being conducted at the Imperial County Sheriff's Department by Imperial County Sheriff's Sergeant Delfino Matus. Uh, the allegations against Justin is uh regarding an incident that happened back in December, it was December 28, the year was 2001 at the location of 4548 Elder Road in Brawley, California, uh Elder is spelled E-L-D-E-R, uh the allegations are Violations of the Rules these are Policies and Procedures of the Imperial County Sheriff's Department uh that patic-particular, Section is 2.1.01, also uh Incompetence, Section is 2.1.04, uh Third Violation is Unbecoming Con-Conduct, Section 2.1.06, the Fourth Violation is Section 2.3.04, um, it deals with Arrest, Search and Seizure. Okay uh Justin this interview is being uh recorded and your admonished that you answers all questions asked of you completely and that all your answers are to be truthful, knowingly making false or misleading statements during this interview will be considered a separate offense that could result in discipline up to and including termination. Do you understand this admonishment? |
| **TACKETT:** | Yes. |
| **SGT. MATUS:** | Okay at this time, I'll advise you of your rights as per AB 301. You have the right to have your representative of your choice present during this interview, and uh you're being represented by Attorney Brad Fields. Is that correct? |
| **TACKETT:** | Yes. |
| **SGT. MATUS:** | Okay, okay you have the right to make your own tape recording of this interview. Okay you'll have access to the Department's tape recording of your interview if further proceedings are contemplated of prior to any further interrogation at any subsequent time. After the interview you |

1

00973

**Ex. 17**
465

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

are entitled to a transcribed copy of any notes or to any reports or complaints except those that are deemed confidential. You'll be questioned by no more than two interrogators at one time during this course of this interview; in this case, I'll be the sole interrogator. If this interrogation is occurring during your off duty time, you'll be compensated in accordance with regular Department procedures and you'd not be released from employment for any time missed. This interview session will be for a reasonable period of time based on all the circumstances and you'll be allowed to attend to you own personal physical necessities. Do you understand these rights?

TACKETT:          Yes.

SGT. MATUS:       While you have the right to remain silent with regard to any criminal investigation, you do not have the right to refuse to answer my administrative questions. This is a administrative investigation I am therefore now ordering you to discuss this matter with me. If you refuse to discuss this matter you silence can be deemed insubordination and result in an administrative discipline up to and including termination. Any statement you make under compulsion of a threat of such discipline cannot be used against you in a later criminal proceeding, uh Justin Tackett I, I will order you to answer any and all questions asked of you in a truthful and accurate manner. Failure to do so may be deemed insubordination and result in an administrative discipline up to and including termination of your employment with the Imperial County Sheriff's Department. Do you understand what I've just explained to you?

TACKETT:          Yes.

SGT. MATUS:       Do you have any questions concerning what I've just explained to you?

TACKETT:          No.

**Ex. 17**

2

00974

466

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

SGT. MATUS: Uh, Justin where you on duty on uh December 28, in the early morning hours at approximately 0150 hours.

TACKETT: Yes.

SGT. MATUS: Okay uh what was your assignment then?

TACKETT: Patrol.

SGT. MATUS: Patrol?

TACKETT: North County.

SGT. MATUS: Okay. You recall who your supervisor was?

TACKETT: Uh, I believe we didn't have a Sergeant at that time in North County, I believe he just went off shift and our Sergeant was actually Myron King. As far as Supervising for both ends, both ends, uh south and north.

SGT. MATUS: Okay did you respond to uh to a location at 4548 Elder Road in Brawley?

TACKETT: Yes.

SGT. MATUS: Can you tell me what was uh the reason for your responding to that location?

TACKETT: I was advised to go there.

SGT. MATUS: By whom?

TACKETT: By our Dispatch.

SGT. MATUS: Regarding?

TACKETT: Uh hit and run from Brawley PD.

SGT. MATUS: So you responded at the request of Brawley PD?

**Ex. 17**

00975      467

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay and what was your uh why did they want you to go? |
| **TACKETT:** | I went in there to that location to check on uh, possible suspect vehicle. |
| **SGT. MATUS:** | And did they provide you with an uh, description of the suspect vehicle? |
| **TACKETT:** | Yes. |
| **SGT. MATUS:** | Do you recall what it was? |
| **TACKETT:** | Black or dark colored jeep and uh damaged to the left front and what they said rag top it was like one of those removal rag top jeeps. |
| **SGT. MATUS:** | Hmm. So you eventually responded to that location? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay. Do you know who lives there? |
| **TACKETT:** | No, now I do, but no. |
| **SGT. MATUS:** | Did you know at that time? |
| **TACKETT:** | No. |
| **SGT. MATUS:** | Okay so when you got to that location uh what did you do? |
| **TACKETT:** | Uh I basically went down to the location and uh looked for the vehicle. |
| **SGT. MATUS:** | Okay and how did you do that? |
| **TACKETT:** | Just drove down the road and looked down the driveway. |

**Ex. 17**

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

**SGT. MATUS:** Okay, so you drove down Elder Road?

**TACKETT:** Correct.

**SGT. MATUS:** And from, from the uh Road, could you see the vehicle?

**TACKETT:** Correct, uh possible vehicle.

**SGT. MATUS:** You said it was a jeep, right?

**TACKETT:** Correct.

**SGT. MATUS:** Okay, where was the jeep at, when you uh drove down Elder Road?

**TACKETT:** It was I guess you would call it the back yard, it's just like an extension off the side of the house on the dirt kind a like a dirt lot behind the house.

**SGT. MATUS:** Okay would it be uh west of the house?

**TACKETT:** It would be south, southwest, southwest, correct, southwest of the house.

**SGT. MATUS:** Okay, can you described the uh the residence that you went to?

**TACKETT:** When you go to the, say you have a lot uh say a rectangular size lot, the house would be all the way to your, your right side and up to the front, front corner of that rectangle.

**FIELDS:** Do you want to use set, you now directions (unintelligible)?

**TACKETT:** Let's say you got, got a lot, okay, on that rectangular size lot, on the, let's say north east corner is where your, the residence is, on the north, staring from the north, no south east corner, south east corner down, I'd say about half way of that lot it opens up, that it's a drive way and it opens up from that drive way to the dirt lot in the back.

**Ex. 17**

00977

468

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

SGT. MATUS:      Okay.  Do you know Tony Rouhotas?

TACKETT:         Yes, I do.

SGT. MATUS:      Does he live on that, on that lot, somewhere or in that area?

TACKETT:         Uh, I believe he lives next door to the lot, I believe.

SGT. MATUS:      Okay, Elder Road runs, runs in what direction?

TACKETT:         It runs uh, north to south.

SGT. MATUS:      Okay and is this property located on the east side of Elder or on the east side of Elder?

TACKETT:         It's on the west side of Elder.

SGT. MATUS:      Okay so as your coming down, I believe it's Cady Road going back north, is that correct?  Let's say your coming, you're coming west on Cady, coming to Elder?

TACKETT:         Okay.

SGT. MATUS:      You would head back north?

TACKETT:         North, correct.

SGT. MATUS:      Okay as you go down uh Elder, I think you travel about half a mile or so?

TACKETT:         Correct.

SGT. MATUS:      Uh, I believe there's a trailer, on the west side on the Road, that's the first house, as your going north is that correct?  Or do you remember?

TACKETT:         Uh, I can't really recall, but there's a trailer, but I don't remember looking at that house, I was looking for addresses in the mailbox.

6

**Ex. 17**
469

00978

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

**SGT. MATUS:**     Okay so you located the address on the mailbox?

**TACKETT:**     I believe that's where I located the address on that house.

**SGT. MATUS:**     Okay.  So from the, from, so from Elder Road, you were able to see where this jeep was located at?

**TACKETT:**     Correct.

**SGT. MATUS:**     Okay how far away from Elder Road was this jeep?

**TACKETT:**     Probably 20 yards, 25 yards?  Approximate somewhere there, somewhere between there, uh right about the middle of that rectangle?

**SGT. MATUS:**     Hmm.

**TACKETT:**     Right where the driveway extends out to the dirt lot in the back, it's, it's let's say about, I'd say about another 10 yards from the end of that, where driveway actually goes into the lot.

**SGT. MATUS:**     Okay as you get out into the property there at uh 4548 Elder Road is this area fenced in, is there a fence there?

**TACKETT:**     For the driveway?  Or for the yard?  The driveway there's no fence.

**SGT. MATUS:**     Okay what about the yard, itself?

**TACKETT:**     The yard itself there's a partial fence but it's, it's that uh a chain link fence but it's like a partial (unintelligible) from the drive way off, off to the other side off, from the drive way north of the drive way to the end, to the end of the lot on the north side is a chain link fence, and I think it also has a break in it, in the middle, so you can walk through the middle too.

**SGT. MATUS:**     Okay so the driveway, driveway, itself doesn't have a fence or a gate?

7

**Ex. 17**

00979

470

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

TACKETT:            No, no not that I know.

SGT. MATUS:        So when you saw the vehicle, that possibly match the hit and
                   run vehicle, what did you do next?

TACKETT:            I shine on my light just to see what the color was, to see if it
                   was a dark color, light color, if there was any damage.

SGT. MATUS:        What kind of light did you use?

TACKETT:            I used my spotlight.

SGT. MATUS:        Your spotlight? The driver one or the uh?

TACKETT:            Correct.

SGT. MATUS:        Okay and what did you do after that?

TACKETT:            Well when I saw it was a dark color and I saw the damage to
                   the to the left front side, I went ahead and drove in the lot
                   went around it, ran the license plate and I told Dispatch to go
                   and advise Brawley PD that we had the possible suspect
                   vehicle and have Brawley respond, (unintelligible).

SGT. MATUS:        So after you located the vehicle there, that match the
                   description of it, you drove on to the yard?

TACKETT:            I was already on.

SGT. MATUS:        Okay so when you, so then when you were shining the light
                   on you were facing directly towards the uh-suspect vehicle?

TACKETT:            No, when I shot the light on I was still on Elder Road.

SGT. MATUS:        Okay, positioned in what, in what direction?

TACKETT:            I'd say perpendicular, to the road, to, the driveway comes
                   out, the driveway came out in T-bone side of my unit, and
                   then once I saw the vehicle on the spotlight it was the same

8

00980

**Ex. 17**
471

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

color and dark color and damage and that's when I backed up a little bit and drove the driveway to get the license plate off, off the vehicle.

**SGT. MATUS:** On that particular night where you working by yourself in the unit or on?

**TACKETT:** Yeah, yes.

**SGT. MATUS:** So you were a solo unit?

**TACKETT:** Correct.

**SGT. MATUS:** So you drove on to the, on to the yard, you uh got the license plate number, do you remember the license plate number?

**TACKETT:** No.

**SGT. MATUS:** Do you, do you what came back registered to?

**TACKETT:** Came back toooo, the, the father, I forgot what his name was now, Mr. Lackey.

**SGT. MATUS:** Randy Lackey? Is that familiar?

**TACKETT:** Uh, I believe it was Randy, Randall or something like, I don't know which one it was. Is that his first name?

**SGT. MATUS:** So was there any vehicles in the area? On that property?

**TACKETT:** Not that I really paid any attention to. I was just focusing, I was just there to look for a vehicle and that was it.

**SGT. MATUS:** Okay. Did it have a yard light on? Do you recall?

**TACKETT:** No, I don't believe so, I don't believe so.

**SGT. MATUS:** Do you recall if there was a moon out?

**Ex. 17**
472

9          00981

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | I believe there was a moon out but I'm not sure what it, whether how bright or how light it was but there was I think there was a moon out. |
| **SGT. MATUS:** | Okay but you did know to go to that location because you've been given that address? |
| **TACKETT:** | Correct from Dispatch, correct. |
| **SGT. MATUS:** | So once you got there you were able to see it, and shined it up? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | And there was something that matched that description? |
| **TACKETT:** | Correct...correct |
| **SGT. MATUS:** | Okay when you got into the yard, you drove back west, is that correct? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay, I believe you mentioned that there was like 20, 30 yards from the roadway? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay did you make like a U turn or did you stop and get out and inspect it or? |
| **TACKETT:** | No. I just, I didn't expect it I was just there out, that's not my job from the investigation of the vehicle, I just went around it ran the license plate and just kept driving around, didn't just base like you just said kind a like a U turn around the vehicle, U turn to the pivot point just the vehicle, and I came back out. |
| **SGT. MATUS:** | What was Brawley PD's request on the? |

**Ex. 17**
473

00982

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | To loc, see if there's a possible vehicle at that address, and to uh contact them, advise them of that if the vehicle was out there. |
| SGT. MATUS: | Contact who?  Brawley PD? |
| TACKETT: | Uh that's what I assumed, just, that's what I was, I believe that was what I was informed through our Dispatcher to call them, advised that they had we had found the vehicle. |
| SGT. MATUS: | Hmm.  Okay did they want you to contact the people there?  Did they say? |
| TACKETT: | No, they didn't say. |
| SGT. MATUS: | So, the reason you went out there is to locate the vehicle, see if there was there? |
| TACKETT: | Right. |
| SGT. MATUS: | And you located a vehicle that was similar or to the suspect vehicle, is that right? |
| TACKETT: | Correct. |
| SGT. MATUS: | Okay uh, did the vehicle, this jeep did it have both license plates?  Do you recall? |
| TACKETT: | I don't recall, I just, I know it was on the rear because, I got the rear license I'm not sure about the front, |
| SGT. MATUS: | What was the condition of this vehicle, when you saw it ? |
| TACKETT: | Down to the left side, black, uh, jeep, I'm not sure of anything else.  I really didn't take, I didn't stop and looked at it in detail, I just made sure it met the description and came out and realized what came back up. |

**Ex. 17**

00983  474

11

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

SGT. MATUS:    When you looked at this vehicle how long were you there, looking at it ?

TACKETT:    Just enough to read the license plate.

SGT. MATUS:    Which is about how long?

TACKETT:    30 seconds, a minute, somewhere around there, just enough to read it and drive it around it.

SGT. MATUS:    Did the vehicle appear to you at that time, that I had been just parked there recently?

TACKETT:    Yes, it had tracks actually that looked like it just lead to the back and I also showed uh Sergeant King those tracks.

SGT. MATUS:    Did you?

TACKETT:    Yeah.

SGT. MATUS:    Do you recall if this vehicle had any dirt from being parked in that particular area for any extended period of time?

TACKETT:    Not that I can recall, it's in the dirt lot, I mean, I wasn't really looking at it.

SGT. MATUS:    You know spider webs, you know, usually we can tell if a car hasn't been moved for a period of time?

TACKETT:    Right but I wasn't, I mean I wasn't shining light inside or outside or I was just, by that time I was just shining light on the license plate and come back around.

SGT. MATUS:    So do you during the time that you were out there, looking at the, at the vehicle, you know getting the plate and all that stuff, you said maybe about a minute?

TACKETT:    Yeah, around there.

00984
**Ex. 17**
475

12

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

SGT. MATUS:   You couldn't, you couldn't tell if it been moved recently?

TACKETT:   Uhhh, I didn't, to me I didn't look to see if it moved recently I just saw the tire tracks out lines out there and I saw that the jeep was out there that match the description, so all I did was go out there, advise Dispatch, tell them advise Dispatch that he vehicle was possibly here, that the possible vehicle is there and that uh, ran the plate, and it cleared copy.

SGT. MATUS:   While you were back there, did anybody from the residence come out?

TACKETT:   No.

SGT. MATUS:   When you went into the, into the property, did you have your lights on, your head light lights and all that on?

TACKETT:   Correct, my headlights.

SGT. MATUS:   And your uh where your spot light still on?

TACKETT:   Spot light was off.

SGT. MATUS:   How about your overheads?

TACKETT:   Overheads were off.

SGT. MATUS:   So you go in get the license plate number come back out?

TACKETT:   Correct.

SGT. MATUS:   Where did you uh, when you came out, where did you position yourself?

TACKETT:   I stopped out to the side of the residence I mean in the middle of uh, I'd say 3 quarters of the way, coming back east on the driveway.

SGT. MATUS:   Facing east?

13

00985      **Ex. 17**
476

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

TACKETT:            Facing east, okay.

SGT. MATUS:      And, and what did you do?

TACKETT:            I, from there, I went ahead and activated my alley light which
                          ran parallel across from the door and I used my spotlight
                          turned it around and aimed it to where it went, in well off of
                          the house but went to the side of the house, were the rear
                          door was in the corner wherein in the south, no the north, no
                          I was right, the south east side and the, southwest side and
                          the west wall where it intersects there's a door in the corner

SGT. MATUS:      Hmm.

TACKETT:            And I had the light right off the stream of my uh, spotlight,
                          right off to the side, and then I exit my vehicle.

SGT. MATUS:      Why did you parked there?

TACKETT:            Because Brawley PD was in route and the vehicle was there
                          and if, I'd already came in and the dogs were barking so I
                          figured somebody, if anything if I parked outside, especially
                          the area, and there usually farmers especially when there's
                          nobody else they usually if they don't see you and your in
                          the dark, they are going to shoot first before they know who
                          it is, so that's the reason why I went ahead put my red and
                          blues on and my spot lights.

SGT. MATUS:      The jeep that you saw, was that driveable?

TACKETT:            I don't know, I didn't inspect it.

SGT. MATUS:      Okay the damage that it had did it appeared to be fresh?

TACKETT:            It appeared to me, I just looked at it from the road and I, I
                          drove up around it and got the plate.

SGT. MATUS:      How close did you get to the jeep itself?

**Ex. 17**

14                    00986                    477

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | I'd say probably about approximately 4, 5 yards when I went around it, all the way around from the perimeter. |
| **SGT. MATUS:** | Okay you drive on to the uh, on to the uh yard, and you drove made a U completely around the jeep? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Then you said you positioned yourself by the house facing east? |
| **TACKETT:** | Correct off to the side, correct. |
| **SGT. MATUS:** | And you had your lights shining on the house and you turn on your overhead? |
| **TACKETT:** | Not on the house, |
| **SGT. MATUS:** | On, on the doors? |
| **TACKETT:** | On, on the doors off to the side, |
| **SGT. MATUS:** | Okay. |
| **TACKETT:** | It was on the doors it was running just off the stray of the house like if anybody came out, they be illuminated and that way I'd now that their out with any weapons and that, and I was off to the side so I can see out of, out of the, |
| **SGT. MATUS:** | Why didn't you drive back to the road, to Elder Road? |
| **FIELDS:** | I think he just answered that but. |
| **TACKETT:** | I, I just, what do you mean, *why didn't I?* |
| **SGT. MATUS:** | Instead of just parking where you park, why didn't you just go park on Elder Road?  Maybe down the street or? |

15

00987 **Ex. 17**
478

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

**TACKETT:** Cause if I would of done that, the dogs were barking, he's going to come out and like I said, Elder Road, rural area, especially out in the country, where there is nobody else around, especially with farm implementation, like it is around there the first thing they assume is that somebody is stealing their stuff especially, you, course you know there's a lot of theft's out there and that's the first thing they do, is come out with a weapon and they fire into the dark, they figured the dogs in that area, any noise, so,

**SGT. MATUS:** That's happened before, that you know of?

**TACKETT:** Huh,

**SGT. MATUS:** When farmers come out like that and start shooting?

**TACKETT:** I, I know there's been shots fired at other Deputies out in the country.

**SGT. MATUS:** Oh, yeah?  Anybody in particular, that we know?

**TACKETT:** Uh, I don't know, I, know Mark McNay has been shot a couple of times but I'm not sure where's at but he's informed me he has,

**SGT. MATUS:** Hmm.

**TACKETT:** But uh, I know it's been happening and I know because my relatives that live out in the country and they've tell me that, that's usually what's protocol out there cause it takes a while for us to respond because were so, were single units and we have a large area to cover.

**SGT. MATUS:** So once you, after you parked there, did somebody come out of the house, eventually?

**TACKETT:** Yes.

**SGT. MATUS:** How much later?  Do you have any idea?

**Ex. 17**
479

00988

16

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | From when I was parked out there?  Uh, I'd say within a couple minutes, couple minutes? |
| SGT. MATUS: | When you parked out there uh, was there a unit already coming, coming in to assist you or uh? |
| TACKETT: | Brawley was supposed to be in route.  Dispatch told them to respond. |
| SGT. MATUS: | Okay, so after parking there for a couple of minutes, somebody came out to the house? |
| TACKETT: | Correct. |
| SGT. MATUS: | And who was that? |
| TACKETT: | That eventually, I found out to be Mr. Lackey, the owner of the vehicle. |
| SGT. MATUS: | Okay. |
| FIELDS: | You didn't know that at the time, correct? |
| TACKETT: | No, no. |
| SGT. MATUS: | But later he found out. |
| TACKETT: | Correct. |
| SGT. MATUS: | So Mr. Lackey comes out, did he say anything? |
| TACKETT: | Uh first he's looking around, cause I was like I said I was off to the side of the unit and uh, that was the first time, I looked to see, see who he was, if he had any weapons or anything like that and where he was going and uh basically he started approaching my unit so, |
| SGT. MATUS: | Did he have any weapons? |

**Ex. 17**

00989        480

17

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

TACKETT:        No.

SGT. MATUS:     How was he uh, how was he dressed?

TACKETT:        He had blue jeans on,

SGT. MATUS:     Hmm, what else?

TACKETT:        That's it, blue jeans, that I know, that I can recall, just blue
                jeans.

SGT. MATUS:     Did anybody else come out with him?  That you saw any
                way?

TACKETT:        At that point, no.

SGT. MATUS:     So he comes out, wearing blue jeans, was it cold outside?

TACKETT:        Well, it's night, so it's, I mean it's not, snowing or nothing but
                it's cold, it's night time.

SGT. MATUS:     You don't remember the temperature, do you?

TACKETT:        No, I don't.

SGT. MATUS:     Okay.  So he comes out, you talk to him?

TACKETT:        Right, correct I talked to him.

SGT. MATUS:     But what did you tell him, do you know?

TACKETT:        Uh, I just told him that the reason I was there I asked him
                about the vehicle, and I was told that he said it was his and
                then I said I want to confirm the name and I told him Brawley
                was in route to ask further about it.

SGT. MATUS:     At that particular time did he appear to be uh, was he
                cooperating with you?

18

00990

Ex. 17

481

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | Oh, yeah. |
| SGT. MATUS: | Have you met him before at all? |
| TACKETT: | No. |
| SGT. MATUS: | Okay, you've never been to that residence in a call for service service or whatever reason? |
| TACKETT: | Not that I know of. |
| SGT. MATUS: | Okay, so he's there with you and you tell him, what, what's going on uh did you tell him that you went on to the property to uh check it out? |
| TACKETT: | Did I tell him, I went on the property? Well he knows, I'm on it. |
| SGT. MATUS: | But I mean to check out the jeep, that you drove back into the back? |
| TACKETT: | Uh, I don't believe, I don't know if I told him that I went back there and looked at the jeep, |
| SGT. MATUS: | Hmm. |
| TACKETT: | But I told him it matched the description of a, of a possible hit-and-run in, in Brawley but I assumed that he, prefer I, think he would assume I came out cause my car was facing the other way. |
| SGT. MATUS: | Hmm. So did he say anything regarding the vehicle, that it had been involved in a hit-and-run? |
| TACKETT: | Huh, he said it, he said it hadn't been involved in a hit and run, he said supposedly, what he told me was that it hadn't been run. |
| FIELDS: | Can we take just a quick break? |

**Ex. 17**
482
00991

19

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **SGT. MATUS:** | Sure. .Time is approximately uh 1405 hours. Okay uh times approximately 1413 hours, continuing with the interview of uh Justin Tackett.  Okay so you uh mentioned that he came outside wearing his blue jeans, is that correct? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay uh and you said that the temperature was, it was cool? |
| **TACKETT:** | It...it was cold, yeah, it was nighttime. |
| **SGT. MATUS:** | So, so after he came out uh, you guy's had a discussion about the vehicle possibly being involved in a hit-and-run? |
| **TACKETT:** | Correct, a brief discussion, correct. |
| **SGT. MATUS:** | Okay and what did he say? |
| **TACKETT:** | He just said that it wasn't, it wasn't that vehicle. |
| **SGT. MATUS:** | And, I think when I had asked you before, that he hadn't moved it in a while or? |
| **TACKETT:** | No, he said he hadn't, that it wasn't that vehicle, he had in the, I think it doesn't start or I think it doesn't run or something like that and I told him that it wasn't for me to determined, that was for Brawley PD, it was their investigation. |
| **SGT. MATUS:** | Okay, so after you, you guy's were out there talking did anybody else come out from the house? |
| **TACKETT:** | Eventually, correct. |
| **SGT. MATUS:** | How about, how, how much later? |
| **TACKETT:** | Huh maybe about 3, 4 minutes later. |

**Ex. 17**

20

00992   483

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

**SGT. MATUS:** And who came out?

**TACKETT:** Uh, a female, came out.

**SGT. MATUS:** Do you know who it was?

**TACKETT:** Eventually, I think it was Mrs. Lackey, the wife.

**SGT. MATUS:** The wife?  Okay.

**FIELDS:** When you say eventually, you eventually mean (unintelligible)

**TACKETT:** Right, right, eventually it was his wife or Mrs. Lackey, I'm not sure if they're actually married or not but,

**SGT. MATUS:** His partner, anyway.

**TACKETT:** Yeah, (laugh) his significant other, I guess you'd say.

**SGT. MATUS:** So did she say anything when she came out?

**TACKETT:** Yeah she said uh it was cold and that and he should come inside.

**SGT. MATUS:** And did he go inside?

**TACKETT:** No.

**SGT. MATUS:** Was there a reason why he didn't go inside?

**TACKETT:** Uh, I advised uh Mrs. Lackey that it was cold that he can go, she can retrieve a sweater and some shoes for him, so I can continue waiting for Brawley PD with him she said okay.

**SGT. MATUS:** So you had him detained?

**TACKETT:** At that point I guess you can say I had him detained, probably was still, I take it, he haven't, he wasn't walking

**Ex. 17**

21

00993    484

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

|  |  |
|---|---|
|  | away so, it was nothing as far as detention, he didn't feel, I didn't expressed and I didn't comply that he wanted to walk away so, |
| SGT. MATUS: | Okay so she was going to get some clothing for him? |
| TACKETT: | Correct. |
| SGT. MATUS: | So she went in? |
| TACKETT: | Correct. |
| SGT. MATUS: | Did she ask um, why you were there? |
| TACKETT: | She, *excuse me*? |
| SGT. MATUS: | Did she ask you why you were there? |
| TACKETT: | Correct she did, I told her the same thing. |
| SGT. MATUS: | And what did she say? |
| TACKETT: | She said they were home, they've been home. |
| SGT. MATUS: | Okay, did you ever ask her if had other kids or? |
| TACKETT: | Correct, I ask her if anybody in the house was okay cause possibly the kid had the vehicle or something, oh, I ask that to uh Mr. Lackey I believe, |
| SGT. MATUS: | Did they have kids old enough to drive let's say? |
| TACKETT: | Huh, |
| SGT. MATUS: | Did you say that? |
| TACKETT: | I believe he said yes. |
| SGT. MATUS: | Okay. Did they say how many people were in the house? |

00994    **Ex. 17**
485

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | Nnnnno but I believe they said "their kids" so um, I'm thinking more than one. |
| SGT. MATUS: | Hmm. So she went in to retrieve uh the items, as far as you know? |
| TACKETT: | Right, correct. |
| SGT. MATUS: | And he stayed? |
| TACKETT: | Correct. |
| SGT. MATUS: | And he stayed? |
| TACKETT: | Correct. |
| SGT. MATUS: | You guy's were still outside the car? |
| TACKETT: | Correct, we're not yeah, off to the side, on the sidewalk. |
| SGT. MATUS: | And what happened after that? |
| TACKETT: | We waited for Brawley PD. |
| SGT. MATUS: | Okay, did he ever uh want to go inside the house? |
| TACKETT: | Eventually, correct. |
| SGT. MATUS: | How much later after the lady went in? |
| TACKETT: | Uhhhh, about a minute or two. |
| SGT. MATUS: | Did he say *why* he wanted to go in? |
| TACKETT: | Said it was said it as cold that he was going inside, he was going to wait no longer. |
| SGT. MATUS: | Okay, so did he go in the house? |

**Ex. 17**

23                                00995                    486

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | No. |
| SGT. MATUS: | Was there a reason *why* he didn't go in the house? |
| TACKETT: | Yes, there was. |
| SGT. MATUS: | What was that? |
| TACKETT: | I advised him that he was that now he can be temporarily detained. |
| SGT. MATUS: | Detained for what? |
| TACKETT: | For not only for investigative purposes but also for the reason that I thought it was officer safety issue, of going inside wherein I couldn't be seen by the public and also other people inside. |
| SGT. MATUS: | Did you ever invite him to sit in the unit? |
| TACKETT: | I invited, I don't know if I invited him inside the unit. |
| FIELDS: | You don't know? |
| TACKETT: | You know I don't know, if I ever offered that, I might have, but I'm not sure, I might have, but I'm not sure, though. |
| SGT. MATUS: | So when you told him that he was being detained, what did he do? |
| TACKETT: | He said that he was going inside. |
| SGT. MATUS: | And what did you do? |
| TACKETT: | I advised him of the 148 Penal Code and as far as the delaying resisting, and, and impeding. |
| SGT. MATUS: | I believe you mentioned that you were detaining him for investigation? |

**Ex. 17**
487

24

00996

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | I felt that, I felt that they were going to need him as for investigating source or Brawley PD would and I believe he went inside he would lose that source as far as an investigated purpose or for the fact that I had reason to believe that he was possibly involved or wouldt know who was involved. |
| **SGT. MATUS:** | What gave you that, that probable cause to believe that he was involved? |
| **TACKETT:** | You mean the reasonable suspicion?  Oh, first when he came out, he was looking around, he had a red, red mark on his back and the red mark on his back, usually in a accident you get redness or injuries, |
| **SGT. MATUS:** | What part of his back, did he have this mark? |
| **TACKETT:** | It was uh upper left side of his back, upper left right around the lat area, I believe it was. |
| **SGT. MATUS:** | Okay. |
| **TACKETT:** | And he was wearing, pants, and no other clothing, a common characteristic of people that get involved in something and leave they usually change their clothing or change their appearance. |
| **SGT. MATUS:** | Did he appear to have any other injuries? |
| **TACKETT:** | Not that I, not that I could see at that time. |
| **SGT. MATUS:** | Any bruising or anything that you could see. |
| **TACKETT:** | Bruising wouldn't really occurred that fast, I wouldn't think. |
| **SGT. MATUS:** | Any cuts, lacerations? |
| **TACKETT:** | Just the redness on the back. |

**Ex. 17**

488

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| SGT. MATUS: | On the back? This redness um, I mean did it looked like a bruise or just like a red mark or? |
| TACKETT: | No, it looked like a red mark like uh I'd say, 5 to 6 inches long, and about inch in a half, 2 inches wide, |
| SGT. MATUS: | Okay. Do you have any idea what time this uh accident occurred or this uh hit-and-run occurred? |
| TACKETT: | No, I didn't ask Brawley PD, they just gave me that information. |
| SGT. MATUS: | So the only thing you know as to go out there to look for this particular vehicle but you didn't have no other information? |
| TACKETT: | Correct, I'm not sure if they, they might have but I'm not sure if they said it was a recent hit-and-run in Brawley. |
| FIELDS: | As you're just sitting here today and you don't have a clear recollection of that? |
| TACKETT: | No, I don't have, no, it might be on the tape but um, I'm not sure right know. |
| SGT. MATUS: | So as you uh, as he wanted to go into the house, what happened? |
| TACKETT: | I advised him of the 148 Penal Code, |
| SGT. MATUS: | Okay and what did he do? |
| TACKETT: | He said that he wasn't going to wait no longer, he was going inside. |
| SGT. MATUS: | And did he eventually attempt to go inside? |
| TACKETT: | He attempted again, yes. |
| SGT. MATUS: | And what happened? |

**Ex. 17**

00998    489

26

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | And I advised him again and grabbed his elbow and advised him, |
| SGT. MATUS: | Which elbow did you grabbed? |
| TACKETT: | I believed it was his right elbow. |
| SGT. MATUS: | And what he? |
| TACKETT: | He proceeded to pull back and break my hand (unintelligible). |
| SGT. MATUS: | Pull away? |
| TACKETT: | Right, pull and uh I should say cross his chest, |
| SGT. MATUS: | Was he angry? |
| TACKETT: | Nnn, he seemed perturbed but he wasn't angry. |
| SGT. MATUS: | Hmm.  Had his uh demeanor changed from the time that you first met him to that particular time? |
| TACKETT: | Slightly but not much. |
| SGT. MATUS: | Okay when you first met him did it appear he'd just waken up or uh? |
| TACKETT: | No, |
| SGT. MATUS: | It appears he'd been up? |
| TACKETT: | It appeared like he was up? |
| SGT. MATUS: | Okay, so uh as he attempted to leave, you attempted to stop him, by placing your hand on his right elbow, I believe? |
| TACKETT: | Behind the right elbow on the around the triceps, |

**Ex. 17**
490

27

00999

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

SGT. MATUS:      And what happened after that?  After he pulled away from
                 you?

TACKETT:         Uh, I he proceeded to try walk back inside again.
SGT. MATUS:      And what did you do then?

TACKETT:         I stepped in front of him, extended my hand and basically the
                 palm up like you do in a traffic trying to stop.

SGT. MATUS:      So you walked around in front of him?

TACKETT:         I maneuvered myself in front of him, correct.

SGT. MATUS:      Okay and what did he do?

TACKETT:         And at that time, he said he was going inside and I advised
                 him of 148 for the last time.

SGT. MATUS:      And what did he do?

TACKETT:         He proceeded to strike my hand that was up in front of him,
                 with his right hand, he struck it and then he proceeded to try
                 walk on through and uh basically through my left, right
                 shoulder as he went for the door,

SGT. MATUS:      Okay as I'm standing in front of you, let's say in your position
                 and your Lackey, did you have your hand on him, or just,
                 extended out?

TACKETT:         I had my, no, I had my extended and he walked into my
                 hand?

SGT. MATUS:      Which hand did you have extended?

TACKETT:         I had my, I think it was left hand, I'm not sure but I think it
                 was my left hand.

SGT. MATUS:      Okay so you're between him and the house, basically?

**Ex. 17**
491

01000

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | Him and the door. |
| SGT. MATUS: | Him and the door? Okay. But did you say you don't recall which hand you had on? |
| TACKETT: | I can't recall. |
| SGT. MATUS: | So if, did he strike at your hand or just pushed it away? |
| TACKETT: | No he struck. |
| SGT. MATUS: | He swing hard or just? |
| TACKETT: | Hard. |
| SGT. MATUS: | Okay and what happened, he struck you? |
| TACKETT: | Yes, he struck me. |
| SGT. MATUS: | And what happened to you, what, just your hand moved away? |
| TACKETT: | Yeah, my hand just went across my chest. |
| SGT. MATUS: | Okay and what did he do? |
| TACKETT: | Proceeded for the door. |
| SGT. MATUS: | How far from the door was he, while all this was happening? |
| TACKETT: | At that point my back to the door was probably about 2 yards, around there, from my back to |
| SGT. MATUS: | To yours? |
| TACKETT: | Yeah, from my back to the door like 2 more yards. |
| SGT. MATUS: | Did his wife ever come out? |
| TACKETT: | Uh, eventually yes. |

**Ex. 17**

01001    492

29

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| SGT. MATUS: | During that, during that particular time? |
| TACKETT: | No, |
| SGT. MATUS: | So after he struck your hand and pushed it away, what did you do? |
| TACKETT: | I while he was walking brushing by me, I slipped my right arm down and grabbed his, his right arm and place him on his back and retrieved my cuff and cuffed that hand. |
| SGT. MATUS: | Did he uh struggle with you? |
| TACKETT: | Correct. |
| SGT. MATUS: | And then what happened next? |
| TACKETT: | Uh, he kept restraining and pulling his arm, straightening it out trying to pull it in front of him and I kept advising him that he didn't need to make the situation any worst to calm down and uh and there's no, there's no need to get riled up and have a fight, I said. |
| SGT. MATUS: | And did he say anything? |
| TACKETT: | He said I'm going inside and he said that uh what else did he say, he said more but I can't recall actually , actually is now, I know he was cussing at me but, |
| SGT. MATUS: | Do you know if he'd been drinking? |
| TACKETT: | No. |
| SGT. MATUS: | You couldn't detect the odor of alcohol in his person? |
| FIELDS: | When you, when you said "No" you're saying you don't know? |
| TACKETT: | I didn't do any investigation or any kind of anything like that. |

**Ex. 17**

01002    493

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| SGT. MATUS: | How close did you get to him? |
| TACKETT: | Uh, say it was, well close pretty close when he ran through me, but other than that probably arms, arms width maybe a little bit more, arm in a half on all the time we were talking. |
| SGT. MATUS: | Did you detect and odor, you know if he'd been drinking? |
| TACKETT: | If he was drinking heavy, but I don't know I couldn't |
| SGT. MATUS: | So you don't remember if you detected an odor? |
| TACKETT: | No, |
| SGT. MATUS: | So you placed one cuff on him and you struggle a little bit, what happened next? |
| TACKETT: | Uh, we, we struggle for quite a while, we tossed around and, |
| SGT. MATUS: | How long? |
| TACKETT: | Say about 30 seconds, somewhere around there, 30 seconds. We ended up and said by the door where we started, we ended up actually of on the side, were still on the side walk to the house of the door but were now about I would say 6 or 7 yards from the door way. |
| SGT. MATUS: | So you danced away from the door? |
| TACKETT: | I was trying to get around behind, gets the other cuff on his hand. |
| SGT. MATUS: | So did you eventually end up cuffing him? |
| TACKETT: | Eventually, yes. |
| SGT. MATUS: | Okay and during that process had his wife, did she ever come out or? |

31

Ex. 17
494

01003

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | She'd come out just before the incident where I cuffed him. |
| SGT. MATUS: | Did she say anything? |
| TACKETT: | Yes. |
| SGT. MATUS: | What she said? |
| TACKETT: | She started screaming and cussing at her husband, stop acting like, she also used cussed words but I'm not sure what she called him but and uh just be calmed and, and uh put his hand behind his back. |
| SGT. MATUS: | Did she direct anything at you? |
| TACKETT: | She asked me what I was doing? |
| SGT. MATUS: | Did you respond to her? |
| TACKETT: | Yes, I did. |
| SGT. MATUS: | And what did you tell her? |
| TACKETT: | I advised her that I was placing her husband under arrest. |
| SGT. MATUS: | And what did she say? |
| TACKETT: | That's when she told her husband, |
| SGT. MATUS: | To settle down or? |
| TACKETT: | To settle down and put his hands on his back, if he refused he was making it worst, cuss words and stuff like that. |
| SGT. MATUS: | Hmm, did he say anything at all? |
| TACKETT: | To tell you the truth, I don't know, if he said anything at that time at all or not, I was too busy trying to get the handcuff on his hand. |

**Ex. 17**

01004   495

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| SGT. MATUS: | Right. So after you cuffed him, what did you do with him? |
| TACKETT: | I placed him on the back of the seat on my patrol car. |
| SGT. MATUS: | Did you talk to his wife after you did that? |
| TACKETT: | Correct. |
| SGT. MATUS: | And what did you tell her? |
| TACKETT: | I explained to her why her husband was being arrested. |
| SGT. MATUS: | Did she say anything? |
| TACKETT: | Uhhh, yeah, |
| SGT. MATUS: | What did she say? |
| TACKETT: | She said, basically asked me if he was going to jail. |
| SGT. MATUS: | And you told her? |
| TACKETT: | Yes. |
| SGT. MATUS: | Okay. During the time, that you were, that you began to struggle with this guy did you ever request a cover unit? |
| TACKETT: | Yes. |
| SGT. MATUS: | And how did you do that? |
| TACKETT: | By radio, on the first time, I informed them to stay where he was. |
| SGT. MATUS: | Okay did you go to your car radio or your hand held? |
| TACKETT: | HT. |

**Ex. 17**

01005    496

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA 2002-018**
**7/12/2002**

Interview with Deputy Justin Tackett

**SGT. MATUS:** HT?  Okay and uh, did Dispatch indicate there were units in route or do you even recall?

**TACKETT:** Uhhh, I believe he they said units were in route.

**SGT. MATUS:** So after you placed him on the car, you talked with her, what did uh, first police unit arrived?

**TACKETT:** I would say, approximately cause time went pretty fast, I would say 10 minutes, 5, 5 to 10 minutes, around there, I'm talking approximately but

**SGT. MATUS:** Hmm,

**TACKETT:** But approximately around there.

**SGT. MATUS:** And who was that, that arrived do you know?

**TACKETT:** Uhhhh, Officer Pope from Brawley PD and I believe it was another Brawley PD officer I'm not sure, and then eventually Sergeant King.

**SGT. MATUS:** Okay, did uh Lowenthal arrive eventually or did King arrive before Lowenthal?

**FIELDS:** If you recall?

**TACKETT:** Lowenthal arrived but I'm not sure if it was before or after or what exactly came upon, the scene,

**SGT. MATUS:** So when Brawley PD arrived did you explained to them what had happened?

**TACKETT:** As far as the incident?  Or?

**SGT. MATUS:** The incident yeah, both well, the whole, the whole incident you know going on to the property and finding the vehicle that matched the description then from later the 148?

**Ex. 17**

34                    01006    497

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | Correct. |
| SGT. MATUS: | Okay and who did you talked to, you said Pope? |
| TACKETT: | Pope. |
| SGT. MATUS: | Was there another officer? |
| TACKETT: | There was another one but I don't believe he, I believe there was another officer but I don't believe I talked to him. |
| SGT. MATUS: | Okay so eventually uh, did you request a Supervisor respond also or uh? |
| TACKETT: | He was already responding? |
| SGT. MATUS: | Okay uh, so you eventually talked to Sergeant King, Myron King? |
| TACKETT: | Correct. |
| SGT. MATUS: | And what did you tell him? |
| TACKETT: | The incident. |
| SGT. MATUS: | What had happened, basically what you've related already? |
| TACKETT: | Basically, right. |
| SGT. MATUS: | Okay and what did he tell you? |
| TACKETT: | He asked me, how I felt about just letting him go? |
| SGT. MATUS: | And what did you tell him? |
| TACKETT: | I advise him that that to me on a 148 and when he assault an officer, to me that was the worst he can do and all of those go to jail. |
| FIELDS: | You told him that was your opinion? |

Ex. 17

35                    01007        498

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| TACKETT: | Correct. |
| SGT. MATUS: | And, and what did he say to that? |
| TACKETT: | Um, he said he understood that and so basically letting him by gone be by gone would be out of the question. |
| SGT. MATUS: | I'm sorry I didn't understand that? |
| TACKETT: | By gone be by gone, |
| SGT. MATUS: | Uh, huh? |
| TACKETT: | Be out of the question, about letting him go, let bygones be bygones. |
| SGT. MATUS: | You said that? |
| TACKETT: | No. |
| SGT. MATUS: | He said that?  Did Sergeant King ever order you to uh release him on his OR? |
| TACKETT: | Correct. |
| SGT. MATUS: | Okay you didn't want to uh release him on, on a cite release? |
| TACKETT: | No. |
| SGT. MATUS: | Okay, did you argue with him regarding that decision? |
| FIELDS: | Argue as in? |
| SGT. MATUS: | Or that discussion? |
| TACKETT: | Discussion or after the order? |

01008

**Ex. 17**
499

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **SGT. MATUS:** | After he ordered you to uh OR him, did you guy's have a discussion? |
| **TACKETT:** | No, I went and wrote the citation after he ordered me |
| **SGT. MATUS:** | Okay. So after he was OR uh he was taken out of the unit and released? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay do you guy's want to take a break or? |
| **FIELDS:** | No, I'm okay. |
| **SGT. MATUS:** | Okay, did you uh, after Brawley PD did their investigation uh, was that the uh, suspect vehicle? |
| **TACKETT:** | Uh, I don't know, I, I my, my job was done, I had left Brawley PD, I believe uh I'm not sure if they did if they stayed there or not. |
| **SGT. MATUS:** | So you don't know if that was the vehicle that was involved in the hit-and-run? |
| **TACKETT:** | I don't believe that was the vehicle. |
| **FIELDS:** | But you don't know that? |
| **TACKETT:** | I don't know that? |
| **SGT. MATUS:** | Okay. |
| **TACKETT:** | I believe it eventually concluded that I believe but I don't know that. |
| **SGT. MATUS:** | So when you left Brawley PD was still there? |
| **TACKETT:** | They were still there but, I don't know if they followed behind me but, |

37

01009

**Ex. 17**
**500**

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

SGT. MATUS:      Hmm.

TACKETT:         I was kind a perturbed, I guess you can say.

SGT. MATUS:      About what?

TACKETT:         About what?  About that somebody just assaulted me and I
                 was order in order to let somebody go and to me I think for
                 other basis,

SGT. MATUS:      What other basis, I don't know?

TACKETT:         Well I was advised of, of that a basic wasn't for legal reasons
                 of uh to me it sound it like favoritism,

SGT. MATUS:      And why do you say that?

TACKETT:         Because during the incident when Sergeant King responding
                 and he was talking on the radio, Mrs. Lackey heard Mr. King
                 on the radio and asked if the was Sergeant King and I said
                 yes, and then she then replied back, well he'll take care of it
                 when he gets here,

SGT. MATUS:      So they knew Sergeant King?

TACKETT:         Correct.

SGT. MATUS:      Okay when Sergeant King got there did he talk to Mrs.
                 Lackey?

TACKETT:         Yes.

SGT. MATUS:      I mean was this before or after he ordered you to uh OR
                 him?

TACKETT:         After.

SGT. MATUS:      After?

**Ex. 17**

01010

501

38

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | He talked, he talked to her first, and then ordered me after. |
| **FIELDS:** | He talked to her before he ordered you? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Did he ever talk to uh Mr. Lackey? |
| **TACKETT:** | Uh, I believe so. |
| **SGT. MATUS:** | Before he was OR? |
| **TACKETT:** | I stood up, I stood back by his unit while he went and talked to him. |
| **SGT. MATUS:** | Was there any other reasons that maybe King wanted you to cut this guy loose?  (TURN THE TAPE) Okay uh time is approximately 1434 continuing with the interview of Justin Tackett. |
| **TACKETT:** | Do you want me to answer that? |
| **SGT. MATUS:** | Yeah, |
| **TACKETT:** | Okay there is a possibility and that's the reason I wasn't inclined to do anything further than that but he believe that under the assumption that I was out on private property legally. |
| **SGT. MATUS:** | That you entered the property without permission, basically, without a search warrant, is that correct? |
| **TACKETT:** | That I hadn't no right on private property, that's what he said. |
| **SGT. MATUS:** | Okay and I believe you indicated earlier that you didn't seek the permission from anyone you just saw it and went to check it out? |

**Ex. 17**

01011   502

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay was there any other reason? |
| **TACKETT:** | Oh the factor that I was told, |
| **FIELDS:** | Any other reasons for what? |
| **SGT. MATUS:** | Regarding uh he'd had mentioned that King obviously knew these people, uh and the other reason was for, for the OR. |
| **FIELDS:** | I'm not sure any of this is relevant, I mean he can answer but I don't know what is it relevant too? |
| **SGT. MATUS:** | Well he had mentioned there were some issues, |
| **FIELDS:** | Yeah, I know, I know he mentioned it but, |
| **SGT. MATUS:** | Well after, |
| **FIELDS:** | I mean what is it relevant too?  You're investigating him, Sergeant, Sergeant King and Sergeant King, the one that investigates Sergeant King well that fine, but, |
| **SGT. MATUS:** | Okay, was, was there any other issues? |
| **TACKETT:** | Yes. |
| **SGT. MATUS:** | And what was that? |
| **TACKETT:** | Can we take a break? |
| **SGT. MATUS:** | Sure, uh time is approximately uh 1436 hours.  Okay uh time is approximately 1437 hours continuing with the interview of Justin Tackett. |
| **TACKETT:** | Okay. |

**Ex. 17**

01012        503

40

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

| | |
|---|---|
| FIELDS: | I think you asked the question was whether there was any other reasons? |
| SGT. MATUS: | Any other issues, yes. |
| TACKETT: | Sergeant King expressed that there was uh high probability that there would be a complaint and probably a lawsuit that followed and to keep that in mind. |
| SGT. MATUS: | Anything else? |
| TACKETT: | That's what basically his ideas were, when expressed to me. |
| SGT. MATUS: | Do you know what ever happened uh, the final disposition of this case? |
| TACKETT: | Yeah, the report was rejected. |
| SGT. MATUS: | By the District Attorney? |
| TACKETT: | Correct. |
| SGT. MATUS: | Was just rejected not resubmitted?  I mean re-submitted? As far as you know? |
| TACKETT: | Uh I was told rejected. |
| SGT. MATUS: | You know in what grounds or what bases? |
| TACKETT: | I asked him, |
| FIELDS: | You know I'm just going object on relevance grounds, I don't know how it's relevant to anything, what he knows about why it was rejected or, or I mean what relevance can possible has to what misconduct perhaps from Deputy Tackett but if he wants to insist on answering and asking the questions I guess you can answer it. |

41

01013

**Ex. 17**
504

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
7/12/2002

Interview with Deputy Justin Tackett

**TACKETT:**     I asked if I could do all my complaints and they just said it go rejectedt.

**SGT. MATUS:**     Okay, you know, I don't think uh I have any further questions uh is there anything else you'd like to add or something I didn't ask you you'd like to clear up?

**FIELDS:**     You know you have no duty to volunteer any information but if you have anything else you want to say?

**TACKETT:**     That's, no.

**SGT. MATUS:**     Okay, okay we're going to end the interview time is approximately uh, 1439 hours.

**FIELDS:**     I appreciate your uh,

End of interview.

Typed by:
Galdy Gutierrez
Office Assistant III
REVIEWED BY SGT. DELFINO O. MATUS 7/18/02

01014        **Ex. 17**

42        505

**Imper●** **County Sheriff's Departmen●**

~~*Administrative Investigative Unit*~~

328 Applestill Road
El Centro, CA 92243

IA # 2002-018
7/22/02

Interview with Mark McNay

**SGT. MATUS:**    Okay uh today's date is uh July 22nd the year is 2002. Time
is approximately 1634 hours, this is uh interview with uh
Deputy Mark McNay uh this is in regards to IA number #
2002-018. Uh, this interview is being conducted at the
Imperial County Sheriff's Department by Imperial County
Sheriff's Sergeant Delfino Matus. Mark uh earlier I, I spoke
with you regarding uh some information that had been given
to me during an interview with Justin Tackett. This was an
interview, interview that was conducted back on July 12 of
this year and he had provided me with some information
where he had, apparently you had told him that you had
been shot at several times or could have been at least a
couple of times but what I want to do is uh, I'm going over
his interview now, page 15 and page 16 of his interview, I
had asked him a question, *"Instead of just parking where you
parked, why didn't you just go park on Elder Road maybe
down the street or?"* he's answer was, *"Cause if I would of
done that, the dogs were barking he's going to come out and
like I said Elder Road is a rural area, specially out on the
country where there is nobody else around, specially were
farm implementation, like it is around there, the first thing
they assume is that somebody is stealing their stuff,
especially, yeah of course, you know there are a lot of stuff,
a lot of thefts out there and that the first thing they do is
come out with a weapon and they fire into the dark they
figure the dogs in that area any noise so"* and I asked him,
*"That's happened before, that you know of?"* and he
responds *"Huh,"* *'When farmers come out like that and start
shooting?"* and he answers, *"I know there's been shot's fired
at other Deputies out in the Country"* and I asked him, and I
asked him, *"Oh yeah, anybody in particular that we know?"*
and he responds, *"I don't know, I know Mark McNay, I know
Mark McNay, has been shot at a couple of times, but I'm not
sure where at but he's informed me he has."* Earlier I spoke
with you, you mentioned that were gas up there at, what was
it, 8th and G? or 8th and K?

**McNAY:**    It's 8th and K in Brawley.

1

01015

**Ex. 17**
506

**Imperial County Sheriff's Department**

*Administrative Investigative Unit*

328 Applestill Road
El Centro, CA 92243

IA # 2002-018
7/22/02

Interview with Mark McNay

**SGT. MATUS:**   In Brawley uh you heard shots fire?

**McNAY:**   Huh that's correct.

**SGT. MATUS:**   Okay can you, can you explain that to me?

**McNAY:**   Uh I was uh I was refilling a unit, towards the end of the shift and um, a vehicle at a high rate of speed came flying over the railroad tracks um, from the east westbound, and as they were parallel to me in the street a uh gun shot rang out from the car with a uh uh several individuals in the car easily visible and uh I didn't know where the shot went to either in my direction or the opposite direction into a vacant field um, I think I maybe I surprised them, maybe they didn't know I was there because of the you know the blocked corner or whatever and uh that's that time and there was also a uh another incident where I was near gun fire that I recall uh just as you started this interview and click into my head that I was out on another call where there was gunshots being fired at my direction I don't know if they were being fired at me or not but it had nothing to do with uh being out in the middle of nowhere or.

**SGT. MATUS:**   Where you in the city on both occasions or?

**McNAY:**   The other one was uh near the Poe Sub uh which gun fires are always being shot and it just so happens I rolled on the scene when somebody or sounds like a semi-automatic weapon went off and the rounds were coming in my direction but it could have been a coincidence I wasn't black out or anything.

**SGT. MATUS:**   No but as far as you know nobody was shooting at you directly?

**McNAY:**   No, yeah and, and at the Poe Sub there's a lot of people there and they're always firing in the air and, and it could of just been a coincidence that I as just in the area, I was going to a shots fire call, actually so I arrived in the area and there

**Ex. 17**

01016   507

**Imperial County Sheriff's Department**
*Administrative Investigative Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-018
7/22/02

Interview with Mark McNay

was more gun fire and uh but uh no evidence to indicate that they were firing at me directly.

**SGT. MATUS:** So as far as you know, you've never been in a area let's say without being requested to respond at that particular area where people had shot, shot at you, that you know of, anyway?

**McNAY:** That's correct.

**SGT. MATUS:** What is your present assignment now?

**McNAY:** Present assignment is the team coordinator for the Off-Highway Vehicle Enforcement Safety Team.

**SGT. MATUS:** Okay. And at one point in time you were assigned to work North County Patrol?

**McNAY:** Yes.

**SGT. MATUS:** Did you ever worked with uh Deputy Tackett?

**McNAY:** Yes, I've worked with him, yes.

**SGT. MATUS:** Do you recall ever having a conversation with him regarding shot's being fired at you, that you, that you recall anyway?

**McNAY:** It's always possible that I could have uh relayed to him, both instances were I just relayed them to you at the gas station and also near the poe sub uh no other incidents that I ever communicated, I've never been shot at other wise and I don't even know these two incidents if I've ever been shot at, just having been around when the gun was going off.

**SGT. MATUS:** Okay uh I don't have any further questions uh I'd like to admonish you not to discuss this with anyone if you have any questions just get in contact with me.

**McNAY:** No problem.

**Ex. 17**
508

01017

5

# Imperial County Sheriff's Department
## Administrative Investigative Unit
328 Applestill Road
El Centro, CA 92243

IA # 2002-018
7/22/02

Interview with Mark McNay

**SGT. MATUS:**     Or if you happen to remember anything else, just contact
me.

**McNAY:**     Very good.

**SGT. MATUS:**     Okay we're going to end the interview time is approximately
1440 hours, correction 1640 hours.

End of interview.

Typed By:
Galdy Gutierrez
Office Assistant III
REVIEWED BY SGT. DELFINO O. MATUS 7/29/02

01018

**Ex. 17**
509

4

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

| | |
|---|---|
| **SGT. MATUS:** | Okay uh today's date is August 1st the year is 2002, time is approximately 0932 hours. This is uh an interview with uh Agents Steve Pope, that's P-O-P-E uh. Agent Pope is a uh an employee of Brawley Police Department uh this is in regards to uh IA number 2002-018 and this interview is being conducted at the Imperial County Sheriff's Department by Imperial County Sheriff's Sergeant Delfino Matus. Steve back on uh December 28th of 2001 you requested that we respond to a location on Elder Road, I believe the address of 4548 Elder Road, can you tell me what that was about? |
| **POPE:** | Early in that evening I took a uh hit-and-run that uh it appear that there was some sort of intoxicated driver struck a parked vehicle, later on the evening I had information that it was a black jeep and the, the person I got the information from said that one of his classmate was notorious for driving drunk and drove a black jeep and he lived out on Elder, I checked our Lead system and found the address and the gentleman's uh name and because it was in the County I requested that uh that a Deputy went out to check the area to see if there happened to be a black jeep in the, in the yard or the driveway that had some uh driver damage to it. |
| **SGT. MATUS:** | Okay do you remember the uh the individuals name that I lived out on Elder? |
| **POPE:** | No, I sure don't. |
| **SGT. MATUS:** | Okay does Lackey sound familiar? |
| **POPE:** | Possibly yes and it was uh and it was the son, the high school student that was supposedly the owner of the jeep. |
| **SGT. MATUS:** | Okay. So your request that uh one of our Deputies respond to that location to see if that vehicle was there? |
| **POPE:** | Correct. |
| **SGT. MATUS:** | Okay was there anything else in your request? Did you ask them to uh contact the people there at that address or? |

**Ex. 17**
**510**

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

| | |
|---|---|
| **POPE:** | Um no I just asked that uh they see if the jeep was there and so to notify us and I would respond to the area. |
| **SGT. MATUS:** | Okay and upon if you responded to the area what where you going to do? |
| **POPE:** | Well what I was going to do, I was going to do an interview and find out if truly that was my uh suspect from my hit-and-run. |
| **SGT. MATUS:** | Okay so when our Deputy responded uh, do you know who the Deputy was that responded to that location? |
| **POPE:** | Uh, I found out later on, yes. |
| **SGT. MATUS:** | And what was his name? |
| **POPE:** | That it was uh Tackett. |
| **SGT. MATUS:** | Okay. Do you know Tackett? |
| **POPE:** | Yes. |
| **SGT. MATUS:** | Okay. So he responded to the location? |
| **POPE:** | Yes. |
| **SGT. MATUS:** | Okay uh what happened? Do you know? |
| **POPE:** | Um he responded, he notified us and said yes, there was a black jeep parked in the back part of the property and it had driver side damage, so we told him that we would be in route um, on the way out there because of the maps that we have and the County road being the way they were um, I got a little lost out there and uh but in the mean time uh he put out a 10-18, I believe on the radio. |
| **SGT. MATUS:** | Did you, did you uh hear that or? |

**Ex. 17**
511

01020

2

## Imperial County Sheriff's Department
### *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

| | |
|---|---|
| **POPE:** | No I didn't, my uh Dispatch notified me that a 10-18 was, was put out um, I in turn responded Code 3 half point once I got oriented and arrived on scene. When I arrived on scene uh he had a gentlemen, I believe it was the father of the person that I was looking at um in handcuffs on the back of his unit. |
| **SGT. MATUS:** | Okay. Do you recall what that individual was wearing? |
| **POPE:** | I believed he had Levis, no shirt, and no shoes. |
| **SGT. MATUS:** | Okay. When you arrived on scene, uh were you accompanied by anyone? |
| **POPE:** | I had a trainee with me. |
| **SGT. MATUS:** | And what was the uh trainee's name? |
| **POPE:**<br>**SGT. MATUS:** | I believe it may have been Hamilton.<br>Hamilton? Is he still employed by you? |
| **POPE:** | No, I believe he's employed by you now. |
| **SGT. MATUS:** | Oh really? As a Deputy Sheriff or? |
| **POPE:** | Yes but I'm not positive, I was training 5 or 6 people at that time so. |
| **SGT. MATUS:** | So when you arrived on scene uh you saw this individual on the back seat of the Sheriff's patrol unit? |
| **POPE:** | Yes. |
| **SGT. MATUS:** | Okay what happened after that? |
| **POPE:** | Uh, Tackett told me that he arrived, he looked at the jeep and saw there was damaged and called us and uh this gentleman came out of the house and uh the gentleman wanted to go back into the house, I guess to go get a jacket or a shirt and uh Tackett didn't want him too because of |

**Ex. 17**

512

3

01021

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

> officer's safety reasons and the gentleman put up some sort
> of a struggle.

SGT. MATUS:     Okay, did you have any suspect information of, of the time of
                this particular hit-and-run other than the suspect vehicle?

POPE:           No.

SGT. MATUS:     This, this jeep that was on the uh property how far away was
                it from Elder Road?  Do you know?

POPE:           Uh, it was, it was probably a good 30 yards in the back of the
                property.

SGT. MATUS:     Okay from, from the roadway, 30 yards in?

POPE:           Yes.

SGT. MATUS:     And what else did uh Tackett tell you?

POPE:           Uh that was it at that point, I believe.

SGT. MATUS:     Okay.

POPE:           Um, I went back and checked the jeep and uh it had all
                damaged to it and had been sitting there for quite some time.

SGT. MATUS:     It appeared to be that way?

POPE:           Yeah, it had, it had dust all over the seats uh cobwebs
                underneath the jeep on the steering wheel.

SGT. MATUS:     Was it pretty obvious, lets say if I was driving around it, could
                you obviously tell if, if had?

POPE:           If you drove up to it, yeah, probably, if you didn't drive all the
                way in then uh probably not, just because it was dark.

SGT. MATUS:     The damage, do you recall what damage uh that your
                suspect vehicle may have had?

**Ex. 17**

01022                           513

4

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

| | |
|---|---|
| POPE: | Um my suspect vehicle would have had front uh driver side damage. |
| SGT. MATUS: | Okay so the left front end? |
| POPE: | Correct. |
| SGT. MATUS: | Okay do you recall what damage this particular vehicle had? |
| POPE: | It had left front damage to it. |
| SGT. MATUS: | Okay.  So after you spoke with uh with Tackett you said you, you went too checked out the jeep and it wasn't the jeep? |
| POPE: | Correct. |
| SGT. MATUS: | Okay and what did you do after that? |
| POPE: | Uh at that point in the mean time uh ICSO Sergeant arrived on the scene. |
| SGT. MATUS: | Do you know who the Sergeant was? |
| POPE: | No, I sure don't. |
| SGT. MATUS: | Okay. |
| POPE: | Um also another Deputy arrived, I believe it was Lowenthal. |
| SGT. MATUS: | Okay. |
| POPE: | Um and I basically stood back next to my unit, which was parked out on the roadway and uh just for security reason and uh allowed, ICSO officials to handle what ever case they had as far as with the guy in the back seat. |
| SGT. MATUS: | Where was uh Tackett's unit parked at? |
| POPE: | It was parked in the driveway. |

**Ex. 17**
514

01023

5

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

**SGT. MATUS:**   Right next to the residence or?

**POPE:**   Um yeah the front part of the car was probably next to the house but most of it was in the front part of the house.

**SGT. MATUS:**   Okay do you recall which way it was facing?

**POPE:**   Uh it was facing I believe south into the property as if he pulled into the driveway.

**SGT. MATUS:**   Okay so he was facing towards,

**POPE:**   Towards the jeep.

**SGT. MATUS:**   Towards the jeep?

**POPE:**   That was in the back, correct.

**SGT. MATUS:**   Do you know what happened to the person that was being detained?

**POPE:**   I believe he was cited and released.

**SGT. MATUS:**   Do you know why?

**POPE:**   I don't know, why.

**SGT. MATUS:**   Okay you didn't talk to the Sergeant or Tackett didn't tell you or anything?

**POPE:**   No, no the Sergeant looked like he was a little upset, so I just kind a stayed back.

**SGT. MATUS:**   Did he make any, what made you think that he was upset?

**POPE:**   Um he came out of the roadway and he sucked down a cigarette in about 2 puffs and said something about uh the god damn Deputy and mumbled something under his breath and so I just kind a and being that I didn't know him, I didn't approach him or find out any other information.

**Ex. 17**

01024

515

6

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

**SGT. MATUS:** Did you talk to Tackett, later on?

**POPE:** Um, later on I did probably about a week after the incident.

**SGT. MATUS:** And what did he tell you?

**POPE:** And uh he said that he couldn't believe that the Sergeant got as mad as he did um that the guy went 148 on him and I basically told him that uh you know I don't know what happened but it sounds like he was being a little harsh towards the guy and he was cold and you know if,

**SGT. MATUS:** That Tackett was being harsh towards the?

**POPE:** Correct.

**SGT. MATUS:** Towards the arrestee?

**POPE:** And uh I told him you know hey man if the guy wants to get a jacket and it was cold that night so why didn't you go into the house with him to get the jacket and uh Tackett said well he didn't want me in the house.

**SGT. MATUS:** Okay, you haven't talked to him since?

**POPE:** Um, have but not about the incident.

**SGT. MATUS:** Okay, is there anything else you'd like to add maybe something I didn't ask you or?

**POPE:** No that pretty much covers it.

**SGT. MATUS:** Okay. I am going to end this interview time is approximately 0940 hours. Thanks.

**POPE:** Hmm.

End of interview.

01025

**Ex. 17**
516

7

# Imperial County Sheriff's Department
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA 2002-018
8/01/02

Interview with Steve Pope

Typed by:
Galdy Gutierrez
Office Assistant III
REVIEWED BY SGT. DELFINO O. MATUS 8/8/02.

01026

**Ex. 17**
517

8

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA
92243

IA 2002-018
08/06/02

Interview with Deputy Gary Hamilton

SGT. MATUS:     Okay uh today's date is August 6, the year is 2002, time is approximately 0721 hours. Uh this is an interview with Gary Hamilton, Gary is a uh Deputy Sheriff with the Imperial County uh this in regards to IA number 2002-018 uh this interview is being conducted at the Imperial County Sheriff's Department by Imperial County Sheriff's Sergeant Delfino Matus. Uh Gary back in uh December in particular December 28, 2001, were you employed by Brawley PD?

HAMILTON:     Yes, sir.

SGT. MATUS:     And what was your assignment?

HAMILTON:     Just Patrol.

SGT. MATUS:     Patrol? How long have you been employed by Imperial County Sheriff's?

HAMILTON:     Uh, under a month now or excuse me just over a month.

SGT. MATUS:     Okay back in December did you have an occasion to respond to an address on Elder Road regarding a uh hit-and-run vehicle?

HAMILTON:     Yes, sir.

SGT. MATUS:     Okay can you tell me who you responded with?

HAMILTON:     Uh, myself and Agent Pope.

SGT. MATUS:     Pope? Okay Pope is employed by Brawley PD?

HAMILTON:     Yes, sir.

SGT. MATUS:     Okay uh did you guys respond separately or in the same unit?

HAMILTON:     Uh we were in separate units.

**Ex. 17**
518

01027

1

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA
92243

IA 2002-018
08/06/02

Interview with Deputy Gary Hamilton

| | |
|---|---|
| SGT. MATUS: | Okay. When you respond, what was the reason for you to respond to that location? |
| HAMILTON: | Um, our Dispatcher got a call from the Sheriff's Office saying there was a 10-18 not far from us I don't recall the road um and it was in regards to uh a uh hit-and-run that occurred earlier and they thought they found the jeep and they wanted us to go out there cause uh the Deputy needed help. |
| SGT. MATUS: | Do you recall what time this was when you responded? |
| HAMILTON: | It was late at night, um I don't remember what time it was. |
| SGT. MATUS: | So when you arrived at that location on Elder Road, who did you meet with? If you recall? |
| HAMILTON: | When we got there um I met up with Deputy Tackett. |
| SGT. MATUS: | Okay and was there anybody else there with him? |
| HAMILTON: | As far as Law Enforcement? |
| SGT. MATUS: | Yeah. |
| HAMILTON: | Not at that time, no. |
| SGT. MATUS: | Okay how about civilians? |
| HAMILTON: | There were, there were 2 or 3 civilians, if I remember right. |
| SGT. MATUS: | What did you see when you arrived there? |
| HAMILTON: | Um, I saw the Deputies uh units sitting in the driveway. |
| SGT. MATUS: | Tackett's unit? |
| HAMILTON: | Yes sir and uh there was someone in the back of his unit handcuffed, a male, a white male and uh there were a few |

01028        **Ex. 17**
                    519

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA
92243

IA 2002-018
08/06/02

Interview with Deputy Gary Hamilton

|  |  |
|---|---|
| | people standing around, I was guessing there family members. |
| SGT. MATUS: | Okay uh, |
| HAMILTON: | But he appeared to be fine. |
| SGT. MATUS: | Okay uh do you recall how he was dressed? |
| HAMILTON: | The gentleman in the back seat? |
| SGT. MATUS: | Yes. |
| HAMILTON: | He didn't have a shirt on, I remember that and I think he was wearing Levi's or Levi's shorts. |
| SGT. MATUS: | Do you recall how he was acting? |
| HAMILTON: | Um, at that time he was, he was in the back seat so I didn't, |
| SGT. MATUS: | He wasn't yelling and screaming or? |
| HAMILTON: | I don't remember if he was or not. |
| SGT. MATUS: | Okay so you met with Tackett there at that location? |
| HAMILTON: | Yes, sir. |
| SGT. MATUS: | And what did Tackett tell you? |
| HAMILTON: | He told me he thought he had found the jeep that was involved and uh he said uh the gentleman was not cooperative with him, if I remember right, something to that nature and uh he was being place under arrest for 148. |
| SGT. MATUS: | Okay. Where there any other Sheriff's Unit at that location when you arrived? |
| HAMILTON: | Um, not when I arrived, somebody did arrived after we did. |

**Ex. 17**
.520

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA
92243

IA 2002-018
08/06/02

Interview with Deputy Gary Hamilton

SGT. MATUS:    Do you know who it was?

HAMILTON:    I believe it was Lowenthal and there was a Westmoreland unit that arrived too.

SGT. MATUS:    From Westmoreland?

HAMILTON:    Yes, sir.

SGT. MATUS:    Do you know who that was?

HAMILTON:    Uh Treviño.

SGT. MATUS:    Treviño? Was there any Supervisor's from the Sheriff's Department there?

HAMILTON:    There was a Sergeant that arrived right before I left, um and I could not tell you who that was to be honest with you.

SGT. MATUS:    Okay. So when uh what else did Tackett tell you regarding uh this particular individual, regarding the arrest that he wasn't cooperative and?

HAMILTON:    That's all I remember about it. That he wasn't being uncooperative and that was the reason for him being in the back of the unit and it came out as a 10-18 so,

SGT. MATUS:    Did you talk to him any further? That you recall?

HAMILTON:    No, sir.

SGT. MATUS:    Okay. This jeep that was, at that location, did you inspect yourself?

HAMILTON:    I didn't get up close on it um we, Pope and I, Agent Pope and I walked down and took a look at it and we were I mean about 50 yards away we didn't get to close to it but we I mean from the looks of it the way you know it looked like it's been sitting there for a while, so since we were close enough

4

01030

**Ex. 17**
521

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA
92243

### IA 2002-018
08/06/02

Interview with Deputy Gary Hamilton

to realized that, we go oh, it's not it, we walked away cause we had the description of the vehicle.

SGT. MATUS:     Okay when you said that it looked like it been there for a while, can you describe uh what you saw?

HAMILTON:     I guess the vehicle that would have been in a uh, uh traffic accident that day or that day before you know that it wouldn't look like, the vehicle had, it looked like it had some rust on it and maybe had some stuff thrown on the seat you know kind a like there junk,

SGT. MATUS:     A junk pile?

HAMILTON:     Not, not a lot but it did had some stuff on the seat and just didn't look, look like a vehicle that's just been involved in a traffic accident.

SGT. MATUS:     So you, you mentioned that you saw this vehicle from approximately 50 yards away, more or less?

HAMILTON:  .     More or less, yeah and it was,

SGT. MATUS:     Okay uh,

HAMILTON:     And it was dark, so

SGT. MATUS:     And you and you were able to determine that this vehicle didn't appear to be the same vehicle that you were looking for?

HAMILTON:     Right once we got close enough to realize that and that's when we decided it wasn't it.

SGT. MATUS:     Okay.

HAMILTON:     He had to walk up to it though.

SGT. MATUS:     Did you walk up to it?

**Ex. 17**

522

5                          01031

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA
92243

IA 2002-018
08/06/02

Interview with Deputy Gary Hamilton

HAMILTON:      About, about 50 yards away, yeah.

SGT. MATUS:    Yeah was that place pretty well lid up or what?

HAMILTON:      No, sir not, not where the jeep was, the jeep was at the rear of the property.

SGT. MATUS:    Hmm.

HAMILTON:      As you drive into the driveway, it would be a distance away.

SGT. MATUS:    So let me get this clear from where you made your observation that this vehicle was not involved in the uh in the hit-and-run how far away was that?

HAMILTON:      About 50 yards.

SGT. MATUS:    About 50 yards?

HAMILTON:      That would be my guess, yes.

SGT. MATUS:    Okay so you used, what did you used, a flashlight or something?

HAMILTON:      My Mag light.

SGT. MATUS:    Your Mag light?

HAMILTON:      I used my Mag light.

SGT. MATUS:    Do you know if Pope ever got any closer than you?

HAMILTON:      We walked up together, I can't tell you exactly how far we were, that's just my guess but we walked up together.

SGT. MATUS:    Do you recall how far away was this jeep from the roadway? From Elder Road?

**Ex. 17**

01032      523

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA
92243

IA 2002-018
08/06/02

Interview with Deputy Gary Hamilton

-HAMILTON:      *Gosh*, it's going to be a rough guess?  Um off the top of my
                head, it be a rough guess, I mean from, from the roadway
                looking at it, with the headlights hitting it, I couldn't tell that it,
                it had rust on it.

SGT. MATUS:     Right.

HAMILTON:       So I mean it was just the way,

SGT. MATUS:     But when you got closer was when you determined

HAMILTON:       Yeah as soon as we got closer, *gosh,* how far?

SGT. MATUS:     Well if you don't know you don't know.

HAMILTON:       I don't, I don't want to say,

SGT. MATUS:     Okay were you present when uh the individual in the back
                seat was released?

HAMILTON:       Um, I don't remember if I was or not to be honest with you, I
                don't remember if I was there.

SGT. MATUS:     Gary I don't think I have any further questions is there
                anything else you'll like to add or maybe something I didn't
                ask you'd like to bring up?

HAMILTON:       No, sir.

SGT. MATUS:     Okay we're going to end the interview time is approximately
                0729 hours.

END OF INTERVIEW

Typed by:
Galdy Gutierrez
Office Assistant 111
REVIEWED BY SGT. DELFINO O. MATUS 8/8/02

**Ex. 17**

01033                                              524

7

328 Applestill Road, El Centro, CA  92243  (760)339-6301

## IMPERIAL COUNTY SHERIFF-CORONER

# Fax

| | | | |
|---|---|---|---|
| **To:** | Bob Aaronson, Attorney at Law | **From:** | Josie Heath, H.R. Specialist |
| **Fax:** | 650-565-8838 | **Pages:** | 3 |
| **Phone:** | 650-565-8800 | **Date:** | 7/29/02 |
| **Re:** | IA INVESTIGATION MATERIALS | **CC:** | |

☐ **Urgent**    ☐ **For Review**    ☐ **Please Comment**    ☐ **Please Reply**    ☐ **Please Recycle**

● **Comments:**

For your review and advice..............

The Sheriff would like an a response as soon as possible............

Thank you...............

01034

## Ex. 17

525

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## ADMINISTRATIVE INVESTIGATIONS UNIT

August 19, 2002

TO:       Deputy Justin Tackett

FROM:     Sgt. Delfino O. Matus

RE:  Copies of the following IA reports.

   1. IA # 2002-002
      Complainant: Lisa DiMaria (ICDA)
      Disposition: NOT SUSTAINED

   2. IA # 2002-009
      Complainant: Chief Deputy Sharon Housouer
      Disposition: NOT SUSTAINED

   3. IA # 2002-011
      Complainant: Zane Running
      Disposition: NOT SUSTAINED

   4. PC # 2001-001
      Complainant: Beverly Bates
      Disposition: RESOLVED

Per your memo dated July 12, 2002, that was received by AIU on July 26, 2002; AIU is releasing the above listed investigations that were completed.

Enclosed you will find copies of tape-recorded interviews as related to IA #2002-009. The copies consist of three (3) audiocassette tapes that include the interviews of Deputy Justin Tackett, George Acosta, and Norma Flores.

You will also find copies of tape-recorded interviews as related to IA # 2002-002. The copies consist of seven (7) audiocassette tapes that include the interviews of Deputy Rick Breland, Sgt. John Lemon, Deputy Rafael Peraza, Agent Jose Cuellar, interview of G. Gutierrez by Agent Cuellar, Lisa DiMaria, Deputy Justin Tackett, Deputy Nick Simpson, Sgt. Jake Holguin, and Communication recordings.

**Ex. 17**
526

01035

AIU does not have any audiocassette recordings for IA # 2002-011 and PC # 2001-001.

As to on-going investigations, IA #'s 2002-007, and 2002-018, those investigations are in the possession of the sheriff's administration. The investigations are not complete.

Any questions contact Sgt. Matus at 339-6319.

*I hereby acknowledge that I have received the above listed completed investigations.

DATE: 08/19/02

Deputy Justin Tackett

DATE: 5-19-02

Sgt. Delfino O. Matus

*Imperial County Sheriff's Department*
*Administrative Investigations Unit*
*328 Applestill Road*
*El Centro, CA 92243*


**INTEROFFICE MEMO**


**DATE:**     January 22, 2003

**TO:**     Sheriff Harold D. Carter

**FROM:**     AIU

**RE:**     IA # 2002-018, Supplemental Report
Deputy J. Tackett


Enclosed you'll find a copy of the above mentioned Supplemental Report
for your review.

Any questions please contact Sgt. Matus at # 319.


01037     **Ex. 17**
528

# Imperial County Sheriff's Office
## Inter-Office Memo

**To:**       Chief Deputy D. Prince

**From:**     Undersheriff C. Jernigan

**Subject:**  Internal Affairs Investigation follow up

**Date:**     December 11, 2002

**Cc;**       Sgt. Matus

Tuesday, December 10, 2002 Sheriff Carter telephone me from Washington D.C. He is requesting that Sgt. Matus answer the below listed questions dealing with the Internal Affairs Investigation of Deputy Justin Tackett reference I.A. 2002-108.

# 1)   Could Deputy Tackett have seen the vehicle (jeep) from the roadway?

# 2)   Could Deputy Tackett have seen if the vehicle (jeep) was involved in an accident?

When completed please give the information to Sheriff Carter.

Thank you,

Chuck Jernigan
Undersheriff

01038   **Ex. 17**
529





IMPERIAL COUNTY SHERIFF'S OFFICE
## HAROLD D. CARTER
SHERIFF-CORONER-MARSHAL

*October 3, 2002*

*Justin Tackett*
*Deputy Sheriff*
*547 S. Rio Vista*
*Brawley, CA  92227*

**RE:    NOTICE OF PROPOSED DISCIPLINARY ACTION**

*Dear Deputy Tackett:*

*You are hereby officially notified that I propose to suspend you for a period of two days without pay from your employment with the Imperial County Sheriff's Department as a Deputy Sheriff.  You have the right to have this decision reviewed through an informal conference with Sheriff Carter or his designee and an evidentiary hearing before the Employment Appeals Board.*

*Whether or not you request an evidentiary hearing before the Employment Appeals Board, your suspension shall be imposed if you do not appeal this decision within the requisite five (5) day appeal period and/or if the decision is affirmed through the informal conference with the Sheriff or his designee.  The specific acts, omissions, causes and reasons upon which this proposed disciplinary action is based are set forth herein and in the documents attached hereto and incorporated herein by reference as though fully set forth.*

*The causes for the proposed discipline are as follows:*

**COUNTY ORDINANCE:**

| | |
|---|---|
| 24452(a) | **Unprofessional Conduct;** |
| 24452(d) | **Incompetence;** |
| 24452(g) | **Violation of or Refusal to Obey Reasonable Regulations Prescribed by the Board of Supervisors or by the Department Head:** |

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT POLICY & PROCEDURES**

| | |
|---|---|
| 2.1.01 | **Violation of Rules** |
| 2.1.04 | **Incompetence** |
| 2.1.06 | **Unbecoming Conduct** |
| 2.3.04 | **Arrest, Search, and Seizure** |

**01039**  **Ex. 17**

530

*October 3, 2002*
*Page 2*

*The specific acts or omissions upon which the proposed discipline is based are set forth below:*

*At about 0150 hours on December 28, 2001, you were directed, through Brawley PD, to check a location in the unincorporated area of Brawley, California on 4548 Elder Road, for a black or dark Jeep with damage to the right front end. A Jeep matching that description had been involved in a hit and run less than an hour earlier.*

*Upon arriving in front of the subject location, a residence, you observed a vehicle, appearing to match the description, parked in the back yard, several yards to the side and in back of the residence.*

*You thereupon drove onto the property, past a fence and down into the yard where the Jeep was located. You observed that the vehicle had extensive damage to the left front end. You failed to observe that this vehicle had sand, dirt and cobwebs all over it, indicating it had not been moved in a substantial period of time. You obtained its plate number and ran it. The vehicle came back to Randy and Andrea Lackey, at the location's residence.*

*Through the Sheriff's communications, you advised Brawley PD that a vehicle matching their description was at your location. Brawley requested that you stand by for their arrival. You moved your patrol car back toward the yard in front of the house and illuminated the front and side of the residence with your headlights, floodlights and alley lights.*

*Shortly thereafter, Randy Lackey came out of the residence, in bare feet and bare chested, wearing only blue jeans. You informed Mr. Lackey that the vehicle matched the description of a Jeep involved in a hit and run a short time ago and that Brawley PD was en route to meet with him. Mr. Lackey told you that his vehicle hadn't been moved in a while.*

*A few minutes later, Ms. Lackey came out and was also told about what was going on. She stated to you that they had been home that night. Ms. Lackey told her husband that he should go inside their residence because it was so cold outside. It was approximately 40° Fahrenheit that night. You suggested that Ms. Lackey get some clothing and shoes for her husband.*

*A couple of minutes passed and Mr. Lackey decided to return to his residence due to the temperature. You advised him that he was not free to go inside because he was now being detained for investigative purposes and for officer safety reasons.*

*Due to the cold weather, Mr. Lackey continued to try to return inside. You repeated your order to him and further advised him of the risk of being arrested*

October 3, 2002
Page 3

for a violation of § 148 of the Penal Code, delaying, resisting or impeding a peace officer. When Mr. Lackey appeared to be intent on going back inside, you radioed for back-up and then attempted to place him under arrest. After a brief struggle, you were able to cuff him and place him in the back of your vehicle.

Sheriff's Sergeant Myron King arrived on scene and was briefed by you and of your intention to transport Mr. Lackey to jail and book him for Penal Code (PC) Section § 148 violation. Sgt. King urged you to release Mr. Lackey immediately. You refused. Sgt. King again tried to persuade you that you needed to release Mr. Lackey because your arrest was ill-advised. When you continued to refuse, Sgt. King gave you a direct order to immediately cite and release Mr. Lackey on-scene. You complied.

You possessed neither sufficient probable cause and exigent circumstances nor a search warrant to enter on the private property in question. Having ascertained that a vehicle matching the description was on the property, you should have waited at the curb, outside the property, for Brawley PD's arrival. Your actions violated the rights of the residents, exceeded the instructions you received and increased your risk as a public safety officer.

You entered the property and drove into the back yard to inspect the Jeep. It was evident to other officers from 50 yards away that the Jeep had not been moved in a long time and that it could not be the Jeep involved in the hit and run earlier that morning. Your failure to observe as much was incompetent.

You then moved back toward the front of the house and, while still on private property, proceeded to illuminate the entire house with your vehicle's various lights. Rather than wait at the curb in a 'low-profile' mode, your illumination of the house guaranteed that someone from inside the house would respond to you and would likely do so _before_ any officers had arrived to back you up. Again, given your suspicion that the hit and run driver was in the residence, your actions increased your risk that a confrontation would occur before backup arrived.

Your handling of Mr. Lackey when he wanted to go back inside was also troubling. Mr. Lackey wanted to return inside because it was so cold outside and he was obviously not dressed for the weather. While there was an officer safety issue (which never would have been reached had you waited on the street, adjacent to the property and did nothing to draw attention to yourself), your failure to offer any other alternative to Mr. Lackey was unreasonable. In essence, you only offered him the choice of getting increasingly cold or getting arrested.

You could have offered to accompany him inside to get some clothes or just walk him to his front door so he could summon his wife to get clothes for him. You could have allowed him to wait with you inside your patrol car. You could have

October 3, 2002
Page 4

gone to the front door yourself for some clothes.   You could have gotten the blanket out of your unit's trunk.

Your compelling Mr. Lackey to freeze or be arrested was unreasonable.   Your arrest of him was ill-advised and reflected poor judgment.  In light of all the other alternatives, your handling of Mr. Lackey was improper.

Therefore, these actions of yours constituted incompetence.  Your handling Mr. Lackey was unbecoming conduct.   Your entry onto private property with due cause or warrant and your arrest of Mr. Lackey violated Rules of Conduct § 2.3.04 because you should have recognized that your actions were beyond legal bounds.

In sum, your conduct violated the above referenced County Ordinance and Sheriff's Department policies and procedures.  Having closely reviewed the internal affairs file, I am also satisfied that the proper disciplinary consequence for you in this instance is a two (2) day suspension.

You have the right to respond to the matters raised in this notice both orally and in writing, prior to the end of the workday on October 8, 2002.   **You must request this informal conference with Sheriff Carter or his designee and schedule it with him within the five (5) workday period.**  Any response, which you timely provide will be considered by him before final action is taken.

If you do not agree with this discipline you may contact the Sheriff's Administrative office either in writing to 328 Applestill Road, El Centro, 92243 or by phone at (760) 339-6301 to schedule an appointment with Sheriff Carter or his designee.  If you do not respond in writing or by phone by Tuesday, October 8, 2002 by 1700 hours, the proposed discipline will be imposed and you will be notified of the dates of suspension.

Whether or not you respond to this letter or request an informal conference, if the discipline becomes final on October 8, 2002, as a regular full-time employee, you have the right to file an appeal of your suspension with the Imperial County Employment Appeals Board within ten (10) working days pursuant to Chapter 10.5 of Division 4 of Title 2 of the Codified Ordinances of Imperial County.

**THIS DOCUMENT WILL BE PLACED IN YOUR OFFICIAL PERSONNEL FILE ALONG WITH ALL ATTACHMENTS WITHIN 30 WORKING DAYS OF THE DATE OF YOUR RECEIPT OF THIS LETTER.  PRIOR TO THE EXPIRATION OF THE ABOVE PERIOD, YOU HAVE THE RIGHT TO SUBMIT A STATEMENT WHICH WILL BE ATTACHED TO THIS DOCUMENT AND PLACED IN YOUR PERSONNEL FILE.**

**Ex. 17**

01042           533

October 3, 2002
Page 5


Sincerely,

Harold D. Carter
Sheriff-Coroner-Marshal

By:    Sharon Housouer
       Chief Deputy

HDC:SH:ba

Enclosures:    Copy of County Ordinance 24452
               Copy of Department Policies and Procedures
               Copy of Internal Affairs File

I hereby acknowledge that I have received, read and am aware of the
contents of this Notice of Proposed Disciplinary Action.

Signature_____   Date _10/ 13/02_____

**Ex. 17**
534

452.  Cause for Disciplinary Action.

The causes justifying disciplinary action against a County employee include, but not be limited to, the following:

(a)  Immoral or unprofessional conduct;

(b)  Deliberate or repeated absence from duty without authorization;

(c)  Dishonesty;

(d)  Incompetence;

(e)  Evident unfitness for service;

(f)  Physical or mental condition unfitting him to discharge his duties;

(g)  Violation of or refusal to obey reasonable regulations prescribed by the Board of Supervisors or by the department head;

(h)  Conviction of a felony or a crime involving moral turpitude;

(i)  Neglect;

(j)  Insubordination;

(k)  Continued absence after exhaustion of sick leave, compensated overtime, vacation and leave of absence;

(l)  Improper political activity which constitutes a violation of Federal or State laws or ordinances of the County of Imperial; (Ord. No. 703; eff. Aug. 31, 1979, retroactive to June 29, 1979.)

(m)  Neglect or willful damage to public property or waste of public supplies or equipment;

(n)  Falsifying information on employment application, personnel records or County records;

(o)  Gambling on County premises;

(p)  Drinking or possessing any alcoholic beverage on County premises or on County time;

(q)  Reporting to work while under the influence of alcohol or drugs;

(r)  Sleeping on duty.

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

SUBJECT:
RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.

PAGE 2

**2.1.01   VIOLATION OF RULES**

EMPLOYEES SHALL NOT COMMIT ANY OTHER ACTS OR OMIT ANY OTHER ACTS WHICH CONSTITUTE A VIOLATION OF ANY OF THE RULES, REGULATIONS, DIRECTIVES, ORDERS OR POLICIES OF THIS DEPARTMENT, WHETHER STATED IN THIS GENERAL ORDER OR ELSEWHERE.   IGNORANCE OF THE RULES, REGULATIONS, DIRECTIVES, ORDERS, OR POLICIES SHALL NOT BE CONSIDERED AS A JUSTIFICATION FOR ANY SUCH VIOLATIONS.   EMPLOYEES SHALL BE RESPONSIBLE FOR THEIR OWN ACTS, AND THEY SHALL NOT SHIFT TO OTHERS THE BURDEN OF RESPONSIBILITY FOR EXECUTING OR FAILING TO EXECUTE A LAWFUL ORDER OR POLICE DUTY.

**2.1.02   INSUBORDINATION**

EMPLOYEES SHALL PROMPTLY OBEY ANY LAWFUL ORDERS OF A SUPERVISING EMPLOYEE.   THIS WILL INCLUDE ORDERS RELAYED FROM AN EMPLOYEE SUPERVISOR BY AN EMPLOYEE OF THE SAME OR LESSER RANK.

01045

**Ex. 17**

536

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.                PAGE 4

2.1.04      INCOMPETENCE

EMPLOYEES SHALL MAINTAIN SUFFICIENT COMPETENCY TO
PROPERLY PERFORM THEIR DUTIES AND ASSUME THE
RESPONSIBILITIES OF THEIR POSITIONS.   EMPLOYEES SHALL
PERFORM THEIR DUTIES IN A MANNER WHICH WILL TEND TO
ESTABLISH AND MAINTAIN THE HIGHEST STANDARDS OF
EFFICIENCY IN CARRYING OUT THE FUNCTIONS AND OBJECTIVES
OF THE DEPARTMENT. · INCOMPETENCY MAY BE DEMONSTRATED BY
A LACK OF KNOWLEDGE OF THE APPLICATION OF LAWS REQUIRED
TO BE ENFORCED, AN UNWILLINGNESS OR INABILITY TO PERFORM
ASSIGNED TASKS.  THE FAILURE TO CONFORM TO WORK STANDARDS
ESTABLISHED FOR THE EMPLOYEES RANK, GRADE, OR POSITION,
THE FAILURE TO TAKE APPROPRIATE ACTION ON THE OCCASION OF
A CRIME, DISORDER, OR OTHER CONDITION DESERVING POLICE
ATTENTION, ABSENCE WITHOUT LEAVE; OR UNAUTHORIZED ABSENCE
FROM THE ASSIGNMENT DURING A TOUR OF DUTY.   IN ADDITION
TO OTHER INDICIA OF INCOMPETENCE, THE FOLLOWING WILL BE
CONSIDERED PRIMA FACIE EVIDENCE OF INCOMPETENCE: REPEATED
POOR EVALUATIONS OR A WRITTEN RECORD OF REPEATED
INFRACTIONS OF THE RULES, REGULATIONS, MANUALS OR
DIRECTIVES.

**Ex. 17**

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
| | | RULES OF CONDUCT | 2.1 |

| SUBJECT: | |
|----------|-|
| RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT. | PAGE 5 |

2.1.05    CONFORMANCE TO LAWS

A. EMPLOYEES SHALL OBEY ALL LAWS OF THE UNITED STATES, OF THIS STATE, AND OF THE LOCAL JURISDICTION.

B. AN INDICTMENT OR INFORMATION FILED AGAINST AN EMPLOYEE, OR A CONVICTION OF THE VIOLATION OF ANY LAW SHALL BE CAUSE FOR DISCIPLINARY ACTION.

2.1.06    UNBECOMING CONDUCT

EMPLOYEES SHALL CONDUCT THEMSELVES AT ALL TIMES, BOTH ON AND OFF DUTY, IN SUCH A MANNER AS TO REFLECT MOST FAVORABLY ON THIS DEPARTMENT. CONDUCT UNBECOMING OF AN EMPLOYEE SHALL INCLUDE THAT WHICH TENDS TO BRING THIS DEPARTMENT INTO DISREPUTE OR REFLECTS DISCREDIT UPON THE EMPLOYEE AS A MEMBER OF THIS DEPARTMENT, OR THAT WHICH TENDS TO IMPAIR THE OPERATION AND EFFICIENCY OF THIS DEPARTMENT.

01047    Ex. 17

538

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.3 |

SUBJECT:
     RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.     PAGE 14

2.3.03     USE OF WEAPONS

       EMPLOYEES SHALL NOT USE OR HANDLE WEAPONS IN A CARELESS OR IMPRUDENT MANNER. EMPLOYEES SHALL USE WEAPONS IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENTAL PROCEDURES.

2.3.04     ARREST, SEARCH AND SEIZURE

       OFFICERS SHALL NOT MAKE ANY ARREST, SEARCH OR SEIZURE WHICH THEY KNOW OR OUGHT TO KNOW IS NOT IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENT PROCEDURES OR POLICIES.

2.3.05     USE OF FORCE

       OFFICERS SHALL NOT USE MORE FORCE IN ANY SITUATION THAN IS REASONABLY NECESSARY UNDER THE CIRCUMSTANCES. OFFICERS SHALL USE FORCE IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENTAL PROCEDURES.

2.3.06     TREATMENT OF PERSONS IN CUSTODY

       EMPLOYEES SHALL NOT MISTREAT PERSONS WHO ARE IN THEIR CUSTODY. EMPLOYEES SHALL HANDLE PERSONS IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENTAL PROCEDURES.

01048  **Ex. 17**

## BBITT & PINCKARD

A Professional Corporation

8388 Vickers Street
Diego, California 92111
(858) 467-1199
Fax (858) 467-1285
coplaw.org

Everett L. Bobbitt
Richard L. Pinckard
Bradley M. Fields

—

Annette Burstein
Legal Administrator

DSA Branch Office
13881 Danielson Street
Poway, California 92064

ADMINISTRATIVE INVESTIGATIONS UNIT
RECEIVED

October 7, 2002

OCT 21 2002

BY: _____
FROM: _Josie Hart_ ~~.~~
VIA FACSIMILE and US MAIL
(760) 339-0170

Harold D. Carter
Imperial County Sheriff's Office
P.O. Box 1040
El Centro, CA 92244-1040

Re: Deputy Sheriff Justin Tackett

Dear Sheriff Carter:

Our office represents Deputy Tackett for the purpose of appeal from the notice of proposed discipline served him recently. Deputy Tackett denies the allegations on which this action is based and requests an opportunity to respond to the allegations at the earliest opportunity. Brad Fields will serve as Deputy Tackett's representative in this matter.

Prior to any disciplinary proceeding our client is entitled to any relevant information related to the proposed discipline. Relevant information includes evidence that has any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action, or the truthfulness of a witness's testimony or of a declarant's hearsay statement. (See evidence code sections 210, 780, 1202). Penal Code section 135.5[1] has expanded the nature of information that must be provided to a public safety officer during any disciplinary proceeding. It is now unlawful to **conceal** any relevant evidence during the disciplinary process. **Concealment** would include knowingly not providing any relevant evidence. I recognize some information that may not be relevant to the appointing authority in order to make a decision on discipline of a public safety officer would be relevant to my client to disprove the allegations or mitigate the facts or level of discipline. Therefore, I have provided a list of information that we consider relevant to defending our client from the allegations alleged in the proposed notice of discipline. Relevant evidence also includes evidence, which may assist in mitigation of the level of discipline. Please keep in mind the information we are requesting is in addition to that information that must be provided pursuant to Skelly v State Personnel Board.

**01049**

---

[1] Penal Code 135.5 states "Any person who knowingly alters, tampers with, conceals, or destroys relevant evidence in any disciplinary proceeding against a public safety officer, for the purpose of harming that public safety officer, is guilty of a misdemeanor.

**Ex. 17**
540

In behalf of our client we request the following information:

1. A current copy of all policies and procedures alleged to have been violated by our client.
2. All written reports prepared as a result of the allegations against our client.
3. All investigator notes.
4. A copy of all radio transmissions related to this investigation.
5. All written or recorded statements of any potential witness.
6. All prior criminal history of any known potential witness related to this investigation.
7. All information that could lead to or tends to mitigate the conclusions as set forth in the proposed notice of discipline. Information includes any information known to members of your agency whether in a written form or merely within the knowledge of members of your staff.
8. All statements or utterances by our client, oral or written, however recorded or preserved, whether or not signed or acknowledged by our client.
9. The names and addresses of any witness who may have knowledge of the events that caused the discipline to be proposed.
10. An opportunity to examine all physical evidence obtained in the investigation against our client.
11. All laboratory, technician, and other reports concerning the testing and examination of any physical evidence.
12. All reports of experts made in conjunction with the case, involving the results of physical or mental examinations, scientific tests, experimental, or comparisons which relate to the allegations as set forth in the notice of proposed discipline.
13. All photographs, motion pictures, or videotapes taken during the investigation.
14. Any exculpatory or mitigating evidence in the possession of your agency.
15. Any information relevant to the credibility of any witness.
16. Any potential rebuttal evidence in the possession of your agency.
17. Any and all relevant evidence known or in the possession of your agency.
18. Any recommendations from supervisory or management staff that differ or contradict the current conclusions or recommendation of discipline.
19. Please treat this request as a continuing request until this matter has been settled or adjudicated.

Thank you for your anticipated cooperation.

Sincerely,

Annette Burstein

/IRAB

01050

**Ex. 17**
541



**Harold Carter**
**Sheriff-Coroner-Marshal**



**Imperial County Sheriff's**
**Department**
**Administrative Investigations**
**Unit**

P.O. Box 1040/328 Applestill Road
El Centro, CA 92244
OFFICE: (760) 339-6391
FAX: (760) 339-0170

# Fax

| | | | |
|---|---|---|---|
| **To:** Ms Brenda Coughlin | **From:** Sgt D.O. Matus | | |
| **Fax:** 858. 447. 1285 | **Date:** Oct 24, 2002 | | |
| **Phone:** | **Pages:** (Including Cover Page) 6 | | |
| **Re:** Justin Tackett | **CC:** | | |
| Request for A/P Sections | | | |

☐ **Urgent**   ☐ **For Review**   ☐ **Please Comment**   ☐ **Please Reply**   ☐ **Please Recycle**

•**Comments:**

01051    **Ex. 17**
542

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

October 24, 2002

TO:      Ms. Brenda Coughlin

FROM:    Sgt. Delfino O. Matus
         AIU

RE:      Deputy Justin Tackett
         IA # 2002-007
             2002-018

Per your request on October 24, 2002, I am faxing you
copies of the following sections of the Imperial County
Sheriff's Department Policies and Procedures manual:

1. Rules of Conduct, Section 2.1.02 INSUBORDINATION
2. Rules of Conduct, Section 2.1.04 INCOMPETENCE
3. Rules of Conduct, Section 2.1.06 UNBECOMING CONDUCT
4. Rules of Conduct, Section 2.5.09 TESTIMONY

If we can be of any further assistance either contact Galdy
or Sgt. Matus at 760-339-6391 or 339-6319.
////

01052

**Ex. 17**

543

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|---|---|---|---|
| | | RULES OF CONDUCT | 2.1 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.

PAGE 2



**2.1.01   VIOLATION OF RULES**

EMPLOYEES SHALL NOT COMMIT ANY OTHER ACTS OR OMIT ANY OTHER ACTS WHICH CONSTITUTE A VIOLATION OF ANY OF THE RULES, REGULATIONS, DIRECTIVES, ORDERS OR POLICIES OF THIS DEPARTMENT, WHETHER STATED IN THIS GENERAL ORDER OR ELSEWHERE.   IGNORANCE   OF   THE   RULES,   REGULATIONS, DIRECTIVES, ORDERS, OR POLICIES SHALL NOT BE CONSIDERED AS A JUSTIFICATION FOR ANY SUCH VIOLATIONS.   EMPLOYEES SHALL BE RESPONSIBLE FOR THEIR OWN ACTS, AND THEY SHALL NOT SHIFT TO OTHERS THE BURDEN OF RESPONSIBILITY FOR EXECUTING OR FAILING TO EXECUTE A LAWFUL ORDER OR POLICE DUTY.

**2.1.02   INSUBORDINATION**

EMPLOYEES SHALL PROMPTLY OBEY ANY LAWFUL ORDERS OF A SUPERVISING EMPLOYEE.   THIS WILL INCLUDE ORDERS RELAYED FROM AN EMPLOYEE SUPERVISOR BY AN EMPLOYEE OF THE SAME OR LESSER RANK.

01053   **Ex. 17**

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

| SUBJECT: | |
|----------|--|
| RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT. | PAGE 4 |

2.1.04   INCOMPETENCE

EMPLOYEES SHALL MAINTAIN SUFFICIENT COMPETENCY TO
PROPERLY PERFORM THEIR DUTIES AND ASSUME THE
RESPONSIBILITIES OF THEIR POSITIONS.  EMPLOYEES SHALL
PERFORM THEIR DUTIES IN A MANNER WHICH WILL TEND TO
ESTABLISH AND MAINTAIN THE HIGHEST STANDARDS OF
EFFICIENCY IN CARRYING OUT THE FUNCTIONS AND OBJECTIVES
OF THE DEPARTMENT.  INCOMPETENCY MAY BE DEMONSTRATED BY
A LACK OF KNOWLEDGE OF THE APPLICATION OF LAWS REQUIRED
TO BE ENFORCED, AN UNWILLINGNESS OR INABILITY TO PERFORM
ASSIGNED TASKS.  THE FAILURE TO CONFORM TO WORK STANDARDS
ESTABLISHED FOR THE EMPLOYEES RANK, GRADE, OR POSITION,
THE FAILURE TO TAKE APPROPRIATE ACTION ON THE OCCASION OF
A CRIME, DISORDER, OR OTHER CONDITION DESERVING POLICE
ATTENTION, ABSENCE WITHOUT LEAVE; OR UNAUTHORIZED ABSENCE
FROM THE ASSIGNMENT DURING A TOUR OF DUTY.  IN ADDITION
TO OTHER INDICIA OF INCOMPETENCE, THE FOLLOWING WILL BE
CONSIDERED PRIMA FACIE EVIDENCE OF INCOMPETENCE: REPEATED
POOR EVALUATIONS OR A WRITTEN RECORD OF REPEATED
INFRACTIONS OF THE RULES, REGULATIONS, MANUALS OR
DIRECTIVES.

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

SUBJECT:
RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.          PAGE 5

2.1.05   CONFORMANCE TO LAWS

A. EMPLOYEES SHALL OBEY ALL LAWS OF THE UNITED STATES, OF THIS STATE, AND OF THE LOCAL JURISDICTION.

B. AN INDICTMENT OR INFORMATION FILED AGAINST AN EMPLOYEE, OR A CONVICTION OF THE VIOLATION OF ANY LAW SHALL BE CAUSE FOR DISCIPLINARY ACTION.

2.1.06   UNBECOMING CONDUCT

EMPLOYEES SHALL CONDUCT THEMSELVES AT ALL TIMES, BOTH ON AND OFF DUTY, IN SUCH A MANNER AS TO REFLECT MOST FAVORABLY ON THIS DEPARTMENT. CONDUCT UNBECOMING OF AN EMPLOYEE SHALL INCLUDE THAT WHICH TENDS TO BRING THIS DEPARTMENT INTO DISREPUTE OR REFLECTS DISCREDIT UPON THE EMPLOYEE AS A MEMBER OF THIS DEPARTMENT, OR THAT WHICH TENDS TO IMPAIR THE OPERATION AND EFFICIENCY OF THIS DEPARTMENT.

01055

Ex. 17

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.5 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPARTMENT    PAGE 30

2.5.09    <u>TESTIMONY</u>

UPON THE ORDER OF THE SHERIFF OR THE SHERIFF'S DESIGNEE, EMPLOYEES SHALL TRUTHFULLY ANSWER ALL QUESTIONS SPECIFICALLY DIRECTED AND NARROWLY RELATED TO THE SCOPE OF EMPLOYMENT AND OPERATIONS OF THIS DEPARTMENT WHICH MAY BE ASKED OF THEM.

2.5.10    <u>FINANCIAL DISCLOSURE</u>

EMPLOYEES SHALL SUBMIT FINANCIAL DISCLOSURES AND RESPONSIBILITY STATEMENTS IN A PRESCRIBED MANNER IF REQUIRED BY THE SHERIFF IN CONNECTION WITH AN INVESTIGATION IN WHICH THIS INFORMATION IS MATERIAL TO THAT INVESTIGATION.

2.5.11    <u>TELEPHONE, NAMES, ADDRESSES</u>

EMPLOYEES SHALL HAVE TELEPHONE IN THEIR RESIDENCES, AND SHALL IMMEDIATELY REPORT ANY CHANGES OF TELEPHONE NUMBERS, NAMES, OR ADDRESSES TO THEIR SUPERVISOR EMPLOYEES AND TO SUCH PERSONS AS MAY BE REQUIRED BY THIS DEPARTMENT.

01056    **Ex. 17**

547

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

July 26, 2002

TO:      Sheriff Harold Carter

FROM:    Sgt. Delfino O. Matus
         AIU

RE:      Request for IA investigative materials.

Sheriff Carter, attached you will find a memo by Deputy
Justin Tackett requesting all IA materials on
investigations conducted on Deputy Tackett since his
employment with the Imperial County Sheriff's Department.

Please advise what direction you would like to take with
this issue.

Any questions please contact Sgt. Matus at extension 319.
/////

01057              **Ex. 17**
                   548

## Imperial County Sheriff's Department
### Interoffice Memo

To: Sergeant Delfino Marus   # 160

From: Deputy Justin Tackett  # 871

Regards:  All I.A. Investigative Materials

      I am requesting that all materials collected and gathered during all internal affairs investigations that were conducted on me, Deputy Justin Tackett, be turned over to me. This would include all raw notes, official documents, any and all audio tapes, and any other applicable materials that were collected in all my internal affairs investigations since my employment with the Imperial County Sheriff's Department.  This would also include those investigations that are currently on-going.  I appreciate your assistance and thank you for your time.

07/18/02

Deputy Justin Tackett   # 871

CC: Sergeant David Obeso
     Chief Daivd Prince

**01058**

ADMINISTRATIVE INVESTIGATIONS UNIT
RECEIVED

JUL 2 6 2002

BY: _____

FROM: Deputy Tackett

**Ex. 17**

549

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

## IA # 2002-018

### SUPPLEMENTAL REPORT BY AIU SGT. DELFINO O. MATUS:

On August 30, 2002, the Imperial County Sheriff's Department Administrative Investigations Unit received two claims that were filed by Randall Lee Lackey and Tony L. Rouhotas, Sr. The claim numbers were 02-03-L-100-2201-015 (Lackey) and 02-03-L-100-2201-016 (Rouhotas, Sr.).

Claims had previously filed with the Imperial County Clerk of the Board, and received by AIU on June 21, 2002. The previous claim numbers were 01-02-L-100-2201-069 (Lackey) and 01-02-L-100-2201-070 (Rouhotas, Sr.).

The claims were filed against the sheriff's department and Deputy Justin Tackett. The incident involved the arrest of Randall Lackey on December 28, 2001 at his residence located 4548 Elder Road, Brawley, Ca.

The claims received on August 30, 2002, provided declarations by Lackey and Rouhotas, Sr. regarding the events of December 28, 2001. The following is a summary of the declarations provided by Lackey and Rouhotas, Sr.

Lackey states that on December 28, 2001 at approximately 0200 hours, a light shining in his window awakened him. He looked out the window and saw a sheriff's unit in the driveway. He put on some pants and went outside to see what was going on, stating that he met with Deputy Tackett, who asked him for his drivers license, which Lackey provided.

Lackey stated that it was cold outside, and that his wife told him to come inside and put on a jacket and shoes. Lackey states that he started toward the front door, and that Deputy Tackett grabbed his arm, telling Lackey that he wasn't going anywhere. Lackey stated that Deputy Tackett

1    01059



handcuffed him and placed him in the backseat of the
sheriff's unit, where he was kept for about two hours.

Lackey stated when other law enforcement officers arrived;
Deputy Tackett was told that he had arrested the wrong
person. Deputy Tackett released Lackey after Lackey had
signed a citation to appear in court.

Lackey stated that he didn't know what was going and why he
was arrested. Lackey also stated that Deputy Tackett
entered and searched his residential property without
authorization or warrant. Lackey alleges that Deputy
Tackett assaulted and unlawfully arrested him.

Rouhotas, Sr. declares that Deputy Tackett without
authorization or warrant entered and searched his property
at 4548 Elder Road, Brawley, Ca, a violation of his 4th
Amendment Rights. Rouhotas, Sr. stated that Deputy Tackett
was at the wrong location.

Additionally, Sgt. Matus researched the weather conditions
for the time period of December 28, 2001. The following is
a history of the weather conditions in Imperial,
California, for the following days in December 2001:

1.   December 27, 2001. The maximum temperature was 66.2
     degrees Fahrenheit; the minimum temperature was 35.6
     degrees Fahrenheit.

2.   December 28, 2001. The maximum temperature was 62.6
     degrees Fahrenheit; the minimum temperature was 39.2
     degrees Fahrenheit.

3.   December 29, 2001. The maximum temperature was 59.0
     degrees Fahrenheit; the minimum temperature was 42.8
     degrees Fahrenheit.

The above listed temperatures were obtained from the
Internet website www.wunderground.com.
//////

01060

Ex. 17
551

2

# ATTACHMENTS

1. Claim of Randall Lee Lackey. Claim number 02-03-L-100-2201-015 and 01-02-L-100-2201-069. Filed with the Imperial County Clerk of the Board.

2. Claim of Tony L. Rouhotas, Sr. Claim number 02-03-L-100-2201-016 and 01-02-L-100-2201-070. Filed with the Imperial County Clerk of the Board.

3. Information from the Internet website www.wunderground. Regarding the temperature during December 27th, 28th, and 29th, 2001.
/////

**Ex. 17**

01061

552

# IMPERIAL COUNTY SHERIFF'S
# DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

September 3, 2002

TO:       County Counsel

FROM:     Sgt. Delfino O. Matus

RE:       Claim number 02-03-L-100-2201-015
          Claim of Randall Lee Lackey

On August 30, 2002, AIU received the above listed claim. The
claim had been previously investigated under claim number
01-02-L-100-2201-069 that was received on June 21, 2002,
and submitted to County Counsel on June 24, 2002.

Attached you will find a summary of the investigation as
related to Imperial County Sheriff's Department crime
report number 0112-0996.

Any questions please contact Sgt. Matus at telephone number
760-339-6319.
/////

01062   **Ex. 17**
553

## IMPERIAL COUNTY

**Date:**              August 30, 2002

**Department Head:** Harold Carter, Sheriff-Coroner

**Department:**      Sheriff-Coroner

**Re:   Claim of:**  Randall Lee Lackey

**Address**          4548 Elder Road
                     Brawley, Ca. 92227

**Claim No.**        02-03-L-100-2201-015

The above claim, copy of which is attached, was filed with this office on **August 30, 2002**. A copy of the claim has been provided to the Risk Management and County Counsel offices.

Please conduct an immediate investigation of the claim and mail a completed "Investigation Report" on the form attached to:

                     County Counsel
                     County Administration Center
                     940 West Main Street
                     El Centro, California 92243

Copies of your investigation report should be forwarded to the following: 1) **Carl Warren & Company,  Attn: Mark Bernstein, 5465 Morehouse Drive, Suite 150, San Diego, California, 92121** 2) **Risk Management** and 3) **Clerk of the Board**. You should also retain a copy for your files.

ALBERT ESPINOZA
CLERK OF THE BOARD
OF SUPERVISORS

BY:   Sylvia Bermudez
      Assistant Clerk of the Board

Enclosure

cc:   County Counsel
      Risk Management
      Claims Adjuster
      File

ADMINISTRATIVE INVESTIGATIONS UNIT
RECEIVED

AUG 3 0 2002

BY:
FROM:

**Ex. 17**
554

01063

**CONFIDENTIAL**

**INVESTIGATION MEMORANDUM**

**TO:**          COUNTY COUNSEL

**RE:    CLAIM OF:**  Randall Lee Lackey

**DATE OF CLAIM:**    August 29, 2002

**CLAIM NO.:**    02-03-L-100-2201-015

**INCIDENT DATE:**   December 28, 2001

**DEPARTMENT(S) INVOLVED:**    Sheriff-Coroner

### DEPARTMENT INVESTIGATION

1. Without opinion as to fault, below is stated this department's knowledge of the facts related to the above claim. This includes all employees involved, the identification of any independent witness, and the exact date, time and location of the occurrence. Attached are any pertinent documents that may relate to this incident.

_- SEE ATTACHED MEMO -_

2.    You should contact _Sgt J.O. Miles   339-6319_
for further information concerning the claim.

Sincerely,

(S) _Harold D. Carter_, Sheriff
DEPARTMENT HEAD

01064

cc:    File
      Risk Management

**Ex. 17**
555



CLAIM NO *02-03-L-100-2201-015*

14 DAYS *9-12-02*

45 DAYS *10-13-02*

## CLERK OF THE BOARD OF SUPERVISORS
### 940 WEST MAIN STREET, SUITE 209,
### EL CENTRO, CA 92243-2871

### *CLAIM AGAINST THE COUNTY OF IMPERIAL*

**CLAIMANT'S NAME:** Randall Lee Lackey

**CLAIMANT'S ADDRESS:** 4548 Elder Rd,Brawley,Ca 92227

**CLAIMANT'S TELEPHONE:** 760-344-7174

**ADDRESS TO WHICH NOTICES ARE TO BE SENT:** 4548 Elder Rd,Brawley,Ca.92227

**DATE OF ACCIDENT/LOSS/DAMAGE:** 12/28/2001

**LOCATION OF ACCIDENT/LOSS/DAMAGE:** 4548 Elder Rd,'Brawley,Ca. 92227

**HOW DID ACCIDENT OCCUR:**

**NAME OF DEPARTMENT/EMPLOYEE(S) CAUSING INJURY/LOSS/DAMAGE, IF KNOWN:**
Sheriff Department/Sheriff Deputy Justin Tackett ID#871

**ITEMIZATION OF CLAIM:** Ref: Attachement A (2) Pages

1. _____  $ _____
2. _____  $ _____
3. _____  $ _____
4. _____  $ _____

**TOTAL AMOUNT OF CLAIM: $** Superior/Federal Court Jurisdiction

**SIGNED BY (OR ON BEHALF OF) CLAIMANT:** *Randy L Lackey*  **DATE:** 08/29/2002

**RETURN COMPLETED FORM TO:**

*CLERK OF THE BOARD OF SUPERVISORS*
*COUNTY ADMINISTRATION CENTER*
*940 WEST MAIN STREET SUITE 209*
*EL CENTRO CA 92243-2871*

DO NOT WRITE IN THIS SPACE
FOR CLERK OF THE BOARD'S USE ONLY

**RECEIVED**

AUG 29 2002

Clerk of the Board
of Supervisors
County of Imperial, CA

01065

**Ex. 17**
556

F:\FORMS\CLAIM-LI

ATTACHMENT "A"

RANDALL LEE LACKEY
ANDREA L. LACKEY
4548 ELDER ROAD
BRAWLEY, CA 92227

COMPLAINT AGAINST COUNTY OF IMPERIAL


On December 28, 2001 at about 2:00 AM a light shining in my window awakened me. I looked out the window and saw an Imperial County sheriff car in my driveway. I put on a pair of pants and went outside to see what was going on.

Deputy Justin Tackett asked me for my driver's license, which I gave him.

It was cold outside, so my wife told me to come in and put on a jacket and shoes. I started towards the front door and deputy Justin Tackett grabbed my arm. He told me I wasn't going anywhere. He put handcuffs on me and put me in the back seat of the sheriff car where he kept me for about two hours.

Even though other law enforcement officers arrived and told Deputy Justin Tackett he arrested the wrong person, he did not release me until he told me I had to appear in court on the date and time specified on the citation. He told me to sign the citation, after which I was released and went into my house, still not knowing what was going on or why I was arrested.

Deputy Justin Tackett entered onto my residential property without authorization or warrant. Deputy Justin Tackett searched my residential

01066

Ex. 17

557

property without authorization or warrant. Deputy Justin Tackett assaulted

2   me, and unlawfully arrested me.

3       This claim is against the County of Imperial and those listed in the

4   claim for civil damages arising from violations of my Civil Rights

5   Imperial County Sheriff Department Citation number A020047.

6   Imperial County Sheriff's Report number CR 0112-0886, which I am unable to

7   include because the Sheriff's Department, after a number of request,

8   refuses to give me a copy even though it has been requested under

9   applicable law.

10  Witnesses:

11  Andrea L. Lackey, 4548 Elder Rd., Brawley, CA 92227, Phone: (760) 344-4644.

12  Shelly A. Rouhotas, Post Office Box 1593, 4593 Elder Road, Brawley, CA

13  92227, Phone: (760) 344-3684.

14  Tony L. Rouhotas, Sr., Post office Box 1593, 4593 Elder Road, Brawley, CA

15  92227, Phone: (760) 344-3684.

16

17

18

19

20

21

22

23

24

25

01067

**Ex. 17**

558

2

August 29, 2002

Randall Lee Lackey
4548 Elder Road
Brawley, CA 92227



AUG 2 9 2002

Clerk of the Board
of Supervisors
County of Imperial, CA

County of Imperial
Mr. Albert Espinoza
Clerk of the Board of Supervisors
940 Main Street, Suite 200
El Centro, CA 92243

Dear Mr. Espinoza,

Attached is a claim that was file against the County of Imperial. You notified me by letter that the claim failed to comply substantially with certain Sections of the Government Code. You specifically listed Sections 910, 910.2, 910.4, and 910.8 of the Government Code for the reason(s) of insufficiency

I believe you will find the enclosed claim meets the requirement for filing this claim against the Public Entity. If it is your opinion that it does not meet the requirement, provide me with the specific Section(s) and detailed explanation as to why it does not.

If the claim is returned without specific explanation as stated, I will view the claim as being rejected and proceed with appropriate civil action.

Sincerely,

Randall Lee Lackey

RLL/sar

Enclosures: (3)

01068

**Ex. 17**
559

CONFIDENTIAL

INVESTIGATION MEMORANDUM

TO:               COUNTY COUNSEL

RE:   CLAIM OF:   Randall Lee Lackey

DATE OF CLAIM:    June 19, 2002

CLAIM NO.:        01-02-L-100-2201-069

INCIDENT DATE:    December 28, 2001

DEPARTMENT(S) INVOLVED:  Sheriff-Coroner

DEPARTMENT INVESTIGATION

1.     Without opinion as to fault, below is stated this department's knowledge of the facts related to the above claim. This includes all employees involved, the identification of any independent witness, and the exact date, time and location of the occurrence. Attached are any pertinent documents that may relate to this incident.

— REFER TO ATTACHED MEMO —

2.     You should contact _Sgt Delfino O. Matus   760-339-6391_ for further information concerning the claim.

Sincerely,

(S) Harold J. Carter, SHERIFF

DEPARTMENT HEAD

cc:     File
        Risk Management

**01069**
ADMINISTRATIVE INVESTIGATIONS UNIT
RECEIVED

JUN 2 1 2002

BY: _____
FROM: _____

**Ex. 17**
560

## IMPERIAL COUNTY

Date:                June 19, 2002

Department Head:     Harold Carter

Department:          Sheriff-Coroner

Re:    Claim of:     Randall Lee Lackey

Address:             4548 Elder Rd., Brawley CA 92227

Claim No.            01-02-L-100-2201-069

The above claim, copy of which is attached, was filed with this office on June 20, 2002. A copy of the claim has been provided to the Risk Management and County Counsel offices.

Please conduct an immediate investigation of the claim and mail a completed "Investigation Report" on the form attached to:

> County Counsel
> County Administration Center
> 940 West Main Street
> El Centro, California 92243

Copies of your investigation report should be forwarded to **Carl Warren and Company, Attn: Mark Bernstein, 5465 Morehouse Drive, Suite 150, San Diego, California, 92121**; Risk Management; and the Clerk of the Board. You should also retain a copy for your files.

ALBERT ESPINOZA
CLERK OF THE BOARD
OF SUPERVISORS

BY:    Alberto Leon
       Office Assistant

Enclosure

cc:    County Counsel
       Risk Management
       Claims Adjuster
       File

01070

**Ex. 17**

561



CLAIM NO. 01-02-L-100-2201-065

14 DAYS ___7 - 3 - 02___

45 DAYS ___8 - 4 - 02___

## CLERK OF THE BOARD OF SUPERVISORS
### 940 WEST MAIN STREET, SUITE 209,
### EL CENTRO, CA 92243-2871

### *CLAIM AGAINST THE COUNTY OF IMPERIAL*

**CLAIMANT'S NAME:** Randall Lee Lackey

**CLAIMANT'S ADDRESS:** 4548 Elder Rd., Brawley, CA 92227

**CLAIMANT'S TELEPHONE:** (760) 344-7174

**ADDRESS TO WHICH NOTICES ARE TO BE SENT:** 4548 Elder Rd., Brawley, CA 92227

**DATE OF ACCIDENT/LOSS/DAMAGE:** December 28, 2001

**LOCATION OF ACCIDENT/LOSS/DAMAGE:** 4548 Elder Rd., Brawley, CA 92227

**HOW DID ACCIDENT OCCUR:** _____

**NAME OF DEPARTMENT/EMPLOYEE(S) CAUSING INJURY/LOSS/DAMAGE, IF KNOWN:**
Sheriff Dept. / Deputy Sheriff Justin Tackett ID #871

**ITEMIZATION OF CLAIM:**

1. Trespass                          $ _____
2. Unlawful Search                   $ _____
3. Assult / Battery                  $ _____
4. Unlawful Arrest                   $ _____

**TOTAL AMOUNT OF CLAIM:** $ Superior / Federal Court Jurisdiction

**SIGNED BY (OR ON BEHALF OF) CLAIMANT:** *Randall Lee Lackey*   DATE: 06/18/2001

**RETURN COMPLETED FORM TO:**

*CLERK OF THE BOARD OF SUPERVISORS*
*COUNTY ADMINISTRATION CENTER*
*940 WEST MAIN STREET  SUITE 209*
*EL CENTRO CA 92243-2871*

DO NOT WRITE IN THIS SPACE
FOR CLERK OF THE BOARD'S USE ONLY

01071

# Ex. 17
562

F:\FORMS\CLAIM-Li

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

June 24, 2002

TO:      Imperial County Counsel

FROM:    Sgt. Delfino O. Matus
         AIU

RE:      Claim number 01-02-L-100-2201-069
         Claim of Randall Lee Lackey

The following is a summary of Imperial County Sheriff's
Department case number 0112-0996, dated December 28, 2001.
Deputy Justin Tackett #871, was assigned to North County
Patrol at the time of incident, prepared the report.

On December 28, 2001 at approximately 0150 hours, Deputy
Tackett responded to 4548 Elder Road, Brawley, California,
in response to a vehicle at that location that was possibly
involved in a hit and run collision, in the city of
Brawley.

Deputy Tackett responded at the request of the Brawley
Police Department, who was investigating the hit and run,
as related to Brawley Police case number 014194.

Upon arrival at the Elder Road address, Deputy Tackett
observed a vehicle that matched the description of the hit
and run vehicle. Deputy Tackett contacted the sheriff's
communication center so they could notify Brawley Police of
his finding.

Deputy Tackett positioned his patrol vehicle in front of
the residence, with his red and blue lights on, and
illuminated the front and rear doors with the patrol unit's
spotlights. Deputy Tackett then exited the patrol unit and
waited for the arrival of the Brawley Police Department.

While waiting for Brawley Police to arrive, Deputy Tackett
observed Mr. Randy Lackey exit the front door, wearing only
blue jean trousers. As Mr. Lackey approached Deputy

**Ex. 17**

01072 563

Tackett, Deputy Tackett observed that Mr. Lackey had a red
mark on his back, possibly an injury from the collision.
Mr. Lackey was also the registered owner of the suspected
hit and run vehicle. Deputy Tackett stated he detained Mr.
Lackey for investigation. Deputy Tackett states that if Mr.
Lackey returned to the residence, it would be an officer
safety issue, and investigation obstruction.

Deputy Tackett stated that Mrs. Lackey stuck her head out
the front door, and inquired as to what was going on.
Deputy Tackett advised the Lackey's that there was an on-
going investigation that possibly involved someone in their
household, further advising the Lackey's that he didn't
have all the details of the investigation, however, the
Brawley Police Department was in route to their location to
speak to them.

Deputy Tackett stated that Mrs. Lackey told Mr. Lackey to
return inside the residence because it was cold outside.
Deputy Tackett asked Mrs. Lackey if she could retrieve some
warm clothing for Mr. Lackey, which she acknowledged by
saying okay.

Shortly after Mrs. Lackey closed the front door, Mr. Lackey
informed Deputy Tackett that he was returning inside the
residence. Deputy Tackett informed Mr. Lackey that he
needed him to stay outside for officer safety reasons, and
that the Brawley Police Department needed to contact him.
Mr. Lackey told Deputy Tackett that he didn't care that he
was going back inside the residence.

Deputy Tackett told Mr. Lackey if he walked away he was
going to be placed under arrest for 148 PC Delaying,
obstructing, resisting a peace officer. Mr. Lackey started
walking toward his residence. Deputy Tackett grabbed his
right elbow, and told him to stop, or he was going to be
placed under arrest. Deputy Tackett stated Mr. Lackey
pulled his elbow away continuing to walk. Mr. Lackey did
this a couple of times. Deputy Tackett stated he contacted
the sheriff's communication center, requesting a back-up
unit.

Mr. Lackey continued to walk away, at which point Deputy
Tackett stepped in front of him, and extended his right arm
and the palm of his hand outward, telling Mr. Lackey that
it was his last chance to stop or be arrested. Deputy
Tackett stated Mr. Lackey pushed away his (Tackett) arm

**Ex. 17**

01073/ 564

2

from him (Lackey), and continued to push Deputy Tackett
left shoulder, in an attempt to get by Deputy Tackett and
into the residence.

Deputy Tackett attempted to restrain Mr. Lackey, however,
he resisted. Deputy Tackett stated that during that time,
Mrs. Lackey came out the residence with a white sweater for
Mr. Lackey, and saw the altercation.

Deputy Tackett told Mrs. Lackey to tell her husband to stop
being combative and resisting, which she did, and that he
complied, subsequently being placed under arrest, and
placed in the patrol unit.

Patrol Sgt. Myron King responded to the location of
incident as did Deputy Andrew Lowenthal, and was briefed of
what had transpired.

Deputy Tackett stated that Sgt. King advised him to cite
and release Mr. Lackey, which Deputy Tackett complied with.

On January 14, 2002 the case was submitted to the Imperial
County District Attorney's Office for review, charging Mr.
Lackey with 148 PC. Upon being reviewed the case was
rejected in the interest of justice and lack of evidence to
prosecute.
/////

01074

Ex. 17
565

CASE HANDLING (CH) FORM

(THE FOLLOWING INFORMATION MUST BE SUPPLIED BY THE SUBMITTING AGENCY BEFORE CASE WILL BE REVIEWED.)

Agency case number: _NHA-A996_     Submitting agency: _ICSO - Brawley_
Date of incident: _12-28-01_     Date submitted: _1-14-02_
Judicial District: _Brawley_

Investigating Officer from submitting agency responsible for any follow-up information or investigation requested by the District Attorney's Office:
Officer's Name: _R D & Jarkota_     Telephone number: _760-339-6311_

List the name, date of birth and social security number for each and every individual against whom a criminal complaint is sought involving the same incident:

| | Last Name | First Name | Middle Name | D.O.B. | S.S.I. |
|---|---|---|---|---|---|
| 1 | _Jarkota_ | _Randy_ | _Lee_ | _1-16-58_ | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

A.  Was the case submitted before? Yes ☐ No ☒     If YES, attach a copy of the previous CH form.
B.  Was each named suspect interviewed by the investigating agency? Yes ☐ No. ☐ If not, why not?

_____

C.  Are there other investigations or complaints pending against any of the above-named suspects? Please explain:

_____

LIST THE CHARGES THAT YOUR AGENCY IS SEEKING TO HAVE THIS OFFICE FILE:
(If a charge is to be enhanced because of a prior conviction, list the date of the conviction, the court and the charge.)

_148 PC_

[THIS SPACE IS FOR USE BY THE DISTRICT ATTORNEY'S OFFICE]

☐ Reject                                    ☐ Re-submit with information requested below.

☐ Approved FELONY                    ☐ Approved MISDEMEANOR

_el ninests of Justice; lack of evidence to_
_prosecute._

_____
_____
_____
_____
_____
_____
_____

01075  **Ex. 17**
566

page _1_ of _____     _1-15-02_     _____
                                   (Assistant or Deputy District Attorney)

4/02                    Imperial County Sheriff's Office                        232
2                           Deputy Report                        Page:     1

dent Number:  0112-0996
 :  Resisting                          Case Numbers:

 r:  4548 ELDER RD                      Area:  DIST4  SUPERVISOR DISTRICT 4
ty:  Brawley          St: CA  Zip:  92227      Contact:  ACENT POE

lainant:      2294      Alert Codes:

t:  Brawley Police Department        Fst:                Mid:
B:  **/**/**  SSN:    -  -     Adr:  351 Main Street
c:    Sx:    Tel: (760)344-2111   Cty:  Brawley         St: CA  Zip: 92227

rted:  RIPO   Obstruct Resist Public Of
rved:
ence
odes:  RIPO   Obstruct Resist Public Of

umstances:

onding Officers:  Tackett, J         971
                  Lowenthal, A.      341
                  108                108
nbl Officer:  Tackett, J      Agency:  AISO
 Received By:  Mistrial,M.L.     Last RadLog: 02:55:50 12/29/01     99
dow Received:  T   Telephone               Clearance: RBR  Received by Records

 n Reported:  01:50:21 12/29/01      Disposition: CAA  Disp Date: 12/29/01

urrd between:  01:50:21 12/29/01      Judicial Sts:
         and:  01:50:21 12/29/01      Misc Entry:

us Operandi:
     Factor          Description                    Method

OLVEMENTS:
 s      Description                          Relationship
------   --------------------------------------------   --------------------------

01076

Ex. 17
567

1/02                    Imperial County Sheriff's Office                      232
2                            Deputy Report                     Page:      2

                              Narrative Section
------------------------------------------------------------------------

Report:      0112-0996

uty:         Justin Tackett    # 871

me:          148 P.C. (Resisting/Delaying/Obstructing A Peace Officer)

tim(s):      State of California

pect(s):  1) Randy Lee Lackey
             4548 Elder Road
             Brawley, Ca.  92227
             D.O.B.: 06-16-59
             California Driver's License # N6592945

nesses:   1) Mrs. Lackey (Wife of SUSPECT RANDY LACKEY)
             4548 Elder Road
             Brawley, Ca.  92227

          2) Sergeant King  # 106
             329 Applestill Road
             El Centro, Ca.  92243
             760-339-6312

hicle:       1979 Jeep (Vehicle Possibly Involved In Hit-And-Run.)
             Black
             California Plate # 2KWN995
             R/O:  Randy Lee Lackey
                   4548 Elder Road
                   Brawley, Ca.  92227

rrative:
        On December 29, 2001 at approximately 0150 hours, I(DEPUTY
TIN TACKETT) was dispatched to assist Brawley Police Department in
ching for a black or dark colored Jeep with a damaged left front
per that was involved in a hit and run.  Dispatch advised me that the
sible vehicle involved was at 4548 Elder Road, Brawley, Ca. and I was
d if a vehicle matching that description was at that location to
tact Brawley Police Department.

        Upon arriving at the address, I shined my spotlight down the
veway of the residence at 4548 Elder Road.  I illuminated a Jeep that
 left front damage and was parked in the rear of the residence.  I
ve into the driveway and around the vehicle.  While driving around
 vehicle, I recorded the license plate and noticed it matched the
cription given by Brawley Police Department. I advised dispatch to
tact Brawley Police Department in regards to the vehicle matching
 description given was found at the residence they provided.
stion being located.

                                                            01077

        I drove to the front of the residence with my red and blue
ts on and placed my right alley light in front of the front door i    **Ex. 17**
 to illuminate anyone who stepped outside the residence.  I placed
spot light on the rear side door in order to illuminate anyone who      568
pped outside the residence.  I then stepped out of my vehicle and
ped off to the side until Brawley Police Department arrived.

While waiting for Brawley Police Department, I noticed a male
:ct, later identified as RANDY LACKEY, exiting the front door with
blue jeans on. RANDY LACKEY started to walk to my vehicle and I
d a red mark on the rear portion of his back, possibly from the
.nt in question with Brawley Police Department. So I met him and
him his name. He stated RANDY LACKEY. This matched the same name
came back as the registered owner of the vehicle. At this point in
. I detained RANDY LACKEY for investigative purposes due to him
g the legal owner of the vehicle thus he should have knowledge on
vehicle in question and it's involvement in the case being
stigated by Brawley Police Department, along with the red mark on his
possibly being an injury occurring during the hit-and-run, and due
he fact, it would be an officer safety issue and an investigation
ruction if I let him return into his residence.

At this time, WITNESS#1 MRS. LACKEY stuck her head out of the
t door and asked what was happening. I advised both WITNESS#1 MRS.
EY and RANDY LACKEY that there was an on-going investigation which
:ibly involved someone in their household. I asked them if everyone
heir household were home and had no problems and they replied that
ryone was home and they had no problems. I further stated I didn't
: the exact details of the incident, but Brawley Police Department
an officer in route to speak to them about it. WITNESS#1 MRS.
KEY told RANDY LACKEY that it was cold outside and that he should
irn inside. I asked WITNESS#1 MRS. LACKEY if she could retrieve the
n clothing for RANDY LACKEY. WITNESS#1 MRS. LACKEY stated okay and
sed the door.

Approximately a minute after WITNESS#1 MRS. LACKEY closed the
RANDY LACKEY informed me that he was returning inside the
ence. I advised RANDY LACKEY that I needed him to stay outside for
icer safety reasons and due to the fact that he was going to be
ded for investigation being conducted by Brawley Police Department.
DY LACKEY stated he didn't care and he was going back inside his
idence. I told RANDY LACKEY that if he started to walk towards the
r of his residence to go inside, he was going to be placed under
est for 148 PC(Delaying/Obstructing/Resisting A Peace Officer).
DY LACKEY turned and began to walk towards the front door. I grabbed
DY LACKEY's right elbow and advised him to stay where he was at or he
going to be placed under arrest. RANDY LACKEY forcefully pulled his
across the front of his body which pull my hand off his elbow and he
tinued to keep walking towards the door. I again held SUSPECT RANDY
KEY's elbow and directed him to stay where he was at or he was going
be placed under arrest. SUSPECT RANDY LACKEY again forcefully pulled
arm across the front of his body pulling my hand off his elbow as he
tinued to walk. I advised dispatch at this time to have a cover unit
pond as assistance. SUSPECT RANDY LACKEY started to walk away
ards his residence when I stepped in front of SUSPECT RANDY LACKEY
raised my right arm with my palm extended outward and told him I was
ing him this last chance to stop or he was going to be arrested.
PECT RANDY LACKEY struck my arm with his right hand causing my arm to
e off SUSPECT RANDY LACKEY and he then began to push my left shoulder
an attempt to get by me and into his residence.

I then grabbed SUSPECT RANDY LACKEY's wrist and attempted to
his arm behind his back but he resisted and fought with me to
ld from me placing his arm behind his back. WITNESS#1 MRS. LACKEY
ted the residence at this time with a white sweater for SUSPECT RANDY
KEY and saw the altercation. I advised WITNESS#1 MRS. LACKEY that

01078

**Ex. 17**

569

needed to inform her husband to stop being combative and resisting
to place his hand behind his back before the altercation escalated
her.  WITNESS#1 MRS. LACKEY yelled at SUSPECT RANDY LACKEY asking
what did he think he was doing and to do as I said and place his
  behind his back.  SUSPECT RANDY LACKEY stop resisting, and I was
  able to handcuff him.  Arresting him for 148 PC.  I placed SUSPECT
. LACKEY in my patrol unit.  At his time, WITNESS#2 SERGEANT KING
  speaking on the air and WITNESS#1 MRS. LACKEY asked me if the person
he radio was MYRON KING?  I advised her it was.  WITNESS#1 MRS.
EY then asked me if he was coming to our location.  I advised her
. he was.  WITNESS#1 MRS. LACKEY then replied, "Good because this
  all be taken care of."

     WITNESS#2 SERGEANT KING arrived to the location and I briefed
  on the arrested subject.  WITNESS#2 SERGEANT KING advised me to cite
  release SUSPECT RANDY LACKEY.  SUSPECT RANDY LACKEY was
  ed(Citation # 020047) and released.

     Refer to District Attorney for prosecution.

  in Tackett   # 871
  uty Sheriff
  th County Patrol
  erial County Sheriff's Department


    /02                 Imperial County Sheriff's Office              232
  _ .                         Deputy Report                Page:      3

-------------------------------------------------
ponsible LEO:

-------------------------------------------------
roved by:

                    :
-----------------------------
c

01079

**Ex. 17**
570

21 02 02:36p        BRAWL●PD                  (760)●-1719          p.1

# CITY OF BRAWLEY

351 MAIN STREET
BRAWLEY, CALIFORNIA
92227-2497
PHONE: (760) 344-2111



## FAX TRANSMISSION

## COVER SHEET

Sgt Mato _____   FAX # 339-0170

TENTION: __Sheriff Department_____

t: __Community Service Officer Chela Garcia____

E: _____

ATE: 5/31/02 _____   NUMBER OF PAGES: __5_____

COMMENTS: _____

_____

_____

_____

**01080**

is FAX is being sent from the Brawley Police Department. All information in this FAX is
isidered to be confidential and for use by the person named above. If you receive this FAX
in error, please notify the Brawley Police Department at (760) - 344-2111 and ask for directions
on disposition of the FAX.

**Ex. 17**
571

`ay 21 02 02:36p     BRAWL● PD          (760 ●1-1719        P.2`

# FIC COLLISION CODING
Page 2 (Rev. 6-97) OPI 042                                                    Page 2 of 3

| LISION DEC. DAY  YEAR) | TIME (2400) | NCIC # | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| -28-2001 | .0023 | 1301 | 710 | 014174 |

| OWNER'S NAME | OWNER'S ADDRESS | NOTIFIED |
|---|---|---|
| | | ☐ YES  ☐ NO |

GE  DESCRIPTION OF DAMAGE

## SEATING POSITION

1 - DRIVER
2 TO 6 - PASSENGERS
7 - STATION WAGON REAR
8 - REAR OCC. TRK. OR VAN
9 - POSITION UNKNOWN
0 - OTHER

## SAFETY EQUIPMENT

OCCUPANTS
A - NONE IN VEHICLE
B - UNKNOWN
C - LAP BELT USED
D - LAP BELT NOT USED
E - SHOULDER HARNESS USED
F - SHOULDER HARNESS NOT USED
G - LAP/SHOULDER HARNESS USED
H - LAP/SHOULDER HARNESS NOT USED
J - PASSIVE RESTRAINT USED
K - PASSIVE RESTRAINT NOT USED

L - AIR BAG DEPLOYED
M - AIR BAG NOT DEPLOYED
N - OTHER
P - NOT REQUIRED

CHILD RESTRAINT
Q - IN VEHICLE USED
R - IN VEHICLE NOT USED
S - IN VEHICLE USE UNKNOWN
T - IN VEHICLE IMPROPER USE
U - NONE IN VEHICLE

M / C BICYCLE - HELMET
DRIVER
V - NO
W - YES

PASSENGER
X - NO
Y - YES

## EJECTED FROM VEHICLE

0 - NOT EJECTED
1 - FULLY EJECTED
2 - PARTIALLY EJECTED
3 - UNKNOWN

## ITEMS MARKED BELOW FOLLOWED BY AN ASTERISK (*) SHOULD BE EXPLAINED IN THE NARRATIVE.

| MARY COLLISION FACTOR MBER (*) OF PARTY AT FAULT | TRAFFIC CONTROL DEVICES | 1 | 2 | 3 | TYPE OF VEHICLE | 1 | 2 | 3 | MOVEMENT PRECEDING COLLISION |
|---|---|---|---|---|---|---|---|---|---|
| SECTION VIOLATED  CITED ☐ YES | A CONTROLS FUNCTIONING | | | | A PASSENGER CAR / STATION WAGON| | | | | A STOPPED |
| 1650 VC  ☒ NO | B CONTROLS NOT FUNCTIONING* | | | | B PASSENGER CAR W / TRAILER | ☒ | | | B PROCEEDING STRAIGHT |
| THER IMPROPER DRIVING* | C CONTROLS OBSCURED | | | | C MOTORCYCLE / SCOOTER | | | | C RAN OFF ROAD |
| | ☒ D NO CONTROLS PRESENT / FACTOR* | | | | D PICKUP OR PANEL TRUCK | | | | D MAKING RIGHT TURN |
| THER THAN DRIVER* | TYPE OF COLLISION | | ☒ | | E PICKUP / PANEL TRUCK W/ TRAILER | | | | E MAKING LEFT TURN |
| NKNOWN* | A HEAD - ON | | | | F TRUCK OR TRUCK TRACTOR | | | | F MAKING U TURN |
| ELL ASLEEP* | ☒ B SIDE SWIPE | | | | G TRUCK / TRUCK TRACTOR W/ TRLR. | | | | G BACKING |
| | C REAR END | | | | H SCHOOL BUS | | | | H SLOWING / STOPPING |
| ATHER (MARK 1 TO 2 ITEMS) | D BROADSIDE | | | | I OTHER BUS | | | | I PASSING OTHER VEHICLE |
| LEAR | E HIT OBJECT | | | | J EMERGENCY VEHICLE | | | | J CHANGING LANES |
| LOUDY | F OVERTURNED | | | | K HIGHWAY CONST. EQUIPMENT | | | | K PARKING MANEUVER |
| AINING | G VEHICLE / PEDESTRIAN | | | | L BICYCLE | | | | L ENTERING TRAFFIC |
| NOWING | H OTHER* | | | | ☒ M OTHER VEHICLE (TRAILER ) | | | | M OTHER UNSAFE TURNING |
| ISIBILITY  FT | | | | | N PEDESTRIAN | ☒ | ☒ | O | N XING INTO OPPOSING LANE |
| | MOTOR VEHICLE INVOLVED WITH | | | | O MOPED | | | | O PARKED |
| | A NON - COLLISION | | | | | | | | P MERGING |
| __ LIGHTING | B PEDESTRIAN | | | | | | | | Q TRAVELING WRONG WAY |
| AYLIGHT | C OTHER MOTOR VEHICLE | 1 | 2 | 3 | OTHER ASSOCIATED FACTOR(S) (MARK 1 TO 2 ITEMS) | | | | R OTHER *· |
| USK - DAWN | D MOTOR VEHICLE ON OTHER ROADWAY | | | | A  VC SECTION VIOLATION:  CITED  ☐ YES  ☐ NO | | | | |
| ARK - STREET LIGHTS | ☒ E PARKED MOTOR VEHICLE | | | | | | | | |
| ARK - NO STREET LIGHTS | F TRAIN | | | | B  VC SECTION VIOLATION:  CITED  ☐ YES  ☐ NO | | | | |
| ARK - STREET LIGHTS NOT FUNCTIONING* | G BICYCLE | | | | | | | | |
| | H ANIMAL: | | | | C  VC SECTION VIOLATION:  CITED  ☐ YES  ☐ NO | 1 | 2 | 3 | SOBRIETY - DRUG PHYSICAL (MARK 1 TO 2 ITEMS) |
| ROADWAY SURFACE | | | | | | | | | |
| DRY | I FIXED OBJECT | | | | D | | | | A HAD NOT BEEN DRINKING |
| WET | | | | | E VISION OBSCUREMENT: | | | | B HBD - UNDER INFLUENCE |
| SNOWY - ICY | J OTHER OBJECT: | | | | F INATTENTION* | | | | C HBD - NOT UNDER INFLUENCE* |
| SLIPPERY (MUDDY, OILY, ETC.) | | | | | G STOP & GO TRAFFIC | | | | D HBD - IMPAIRMENT UNKNOWN* |
| ROADWAY CONDITION(S) (MARK 1 TO 2 ITEMS) | PEDESTRIAN'S ACTIONS | | | | H ENTERING / LEAVING RAMP | | | | E UNDER DRUG INFLUENCE* |
| HOLES, DEEP RUT* | ☒ A NO PEDESTRIANS INVOLVED | | | | I PREVIOUS COLLISION | | | | F IMPAIRMENT - PHYSICAL* |
| LOOSE MATERIAL ON ROADWAY* | B CROSSING IN CROSSWALK AT INTERSECTION | | | | J UNFAMILIAR WITH ROAD | ☒ | | | G IMPAIRMENT NOT KNOWN |
| OBSTRUCTION ON ROADWAY* | | | | | K DEFECTIVE VEH. EQUIP ·  CITED | ☒ | ☒ | | H NOT APPLICABLE |
| CONSTRUCTION - REPAIR ZONE | C CROSSING IN CROSSWALK - NOT AT INTERSECTION | | | | ☐ YES  ☐ NO | | | | I SLEEPY / FATIGUED |
| REDUCED ROADWAY WIDTH | | | | | L UNINVOLVED VEHICLE | | | | SPECIAL INFORMATION |
| FLOODED* | D CROSSING - NOT IN CROSSWALK | | | | M OTHER* | | | | A HAZARDOUS MATERIAL |
| OTHER* | E IN ROAD - INCLUDES SHOULDER | | | | ☒ N NONE APPARENT | ☒ | ☒ | ☒ | B CELL PHONE IN USE |
| NO UNUSUAL CONDITIONS | F NOT IN ROAD | ☒ | ☒ | ☒ | N NONE APPARENT | ☒ | ☒ | ☒ | C CELL PHONE NOT IN USE |
| | G APPROACHING / LEAVING SCHOOL BUS | | | | O RUNAWAY VEHICLE | ☒ | | | D CELL PHONE USE UNKNOWN |

H

RIO VISTA



B ≤

INDICATE NORTH

MISCELLANEOUS

01081

**Ex. 17**

572

au '21 02 02:36p       BRAW   PD          (760  1-1719        p.3

OF CALIFORNIA
FFIC COLLISION REPORT
55 Page 1 (Rev. 8-67) OPI 042

| CONDITIONS | NUMBER INJURED | INT & FEL MISD FELONY | CITY BRAWLEY | | JUDICIAL DISTRICT BRAWLEY | LOCAL REPORT NUMBER 014194 |
|---|---|---|---|---|---|---|
| | NUMBER KILLED 0 | INT & RUN MISDEMEANOR ☒ | COUNTY IMPERIAL | REPORTING DISTRICT | BEAT 01 | |

| COLLISION OCCURRED ON RIO VISTA | MO. 12 | DAY 25 | YEAR 2001 | TIME (2400) 0023 | NCIC # 1301 | OFFICER I.D. 910 |
|---|---|---|---|---|---|---|

| MILEPOST INFORMATION FEET/MILES or | DAY OF WEEK S M T W T (F) S | TOW AWAY ☐ YES ☒ NO | PHOTOGRAPHS BY: 922 | NONE ☐ |
|---|---|---|---|---|
| ☐ AT INTERSECTION WITH ☒ OR K-7" FEET/MILES 5 OF 3 | | STATE HWY REL. ☐ YES ☒ NO | | |

| DRIVER'S LICENSE NUMBER 20002 VL | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR UNK | MAKE/MODEL/COLOR 85/ JEEP / BLK | LICENSE NUMBER UNK | STATE |
|---|---|---|---|---|---|---|---|

| NAME (FIRST, MIDDLE, LAST) | OWNER'S NAME ☐ SAME AS DRIVER |
|---|---|
| STREET ADDRESS | OWNER'S ADDRESS ☐ SAME AS DRIVER |
| CITY/STATE/ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☐ DRIVER ☐ OTHER |

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE | PRIOR MECHANICAL DEFECTS: ☐ NONE APPARENT ☐ REFER TO NARRATIVE |
|---|---|---|---|---|---|---|---|

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER: |
|---|---|---|
| INSURANCE CARRIER | POLICY NUMBER | CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE ☐ UNK. ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | SHADE IN DAMAGED AREA |

| DIR OF TRAVEL S | ON STREET OR HIGHWAY RIO VISTA | SPEED LIMIT 25 | CA DOT CAL-T TCP/PSC MC/MX |
|---|---|---|---|

| 'IVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR 1967 | MAKE/MODEL/COLOR DODGE / / RED-WHT | LICENSE NUMBER 5D97538 | STATE CA |
|---|---|---|---|---|---|---|---|

| AME (FIRST, MIDDLE, LAST) | OWNER'S NAME ☐ SAME AS DRIVER COLLINS , GARY JAMES |
|---|---|
| STREET ADDRESS | OWNER'S ADDRESS ☐ SAME AS DRIVER 392 W. B ST. |
| CITY/STATE/ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☐ DRIVER ☐ OTHER |

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE | PRIOR MECHANICAL DEFECTS: ☐ NONE APPARENT ☐ REFER TO NARRATIVE |
|---|---|---|---|---|---|---|---|

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER: 1281672325 |
|---|---|---|
| INSURANCE CARRIER | POLICY NUMBER | CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE ☐ UNK. ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | SHADE IN DAMAGED AREA |

| DIR OF TRAVEL N | ON STREET OR HIGHWAY RIO VISTA | SPEED LIMIT 25 | CA DOT CAL-T TCP/PSC MC/MX |
|---|---|---|---|

| CITY DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR N/A | MAKE/MODEL/COLOR SPC. UL/TRAILER / RED | LICENSE NUMBER 1HM4414 | STATE CA |
|---|---|---|---|---|---|---|---|

| NAME (FIRST, MIDDLE, LAST) | OWNER'S NAME ☐ SAME AS DRIVER COLLINS GARY JAMES |
|---|---|
| STREET ADDRESS | OWNER'S ADDRESS ☐ SAME AS DRIVER 392 W. B ST. 01082 |
| CITY/STATE/ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☐ DRIVER ☐ OTHER |

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE | PRIOR MECHANICAL DEFECTS: ☐ NONE APPARENT ☐ REFER TO NARRATIVE |
|---|---|---|---|---|---|---|---|

| AME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER: CAB75413 |
|---|---|---|
| INSURANCE CARRIER | POLICY NUMBER | CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE ☐ UNK. ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | SHADE IN DAMAGED AREA |

**Ex. 17**
573

| DIR OF TRAVEL N | ON STREET OR HIGHWAY RIO VISTA | SPEED LIMIT 25 | CA DOT CAL-T TCP/PSC MC/MX |
|---|---|---|---|

ϑ ·21 02 02:37P     BRAWL●●PD          (760●●1-1719        P.4

| Date of collision | Time | NCIC # | Officer # | DR #/ INC # |
|---|---|---|---|---|
| 12-28-01 | 0023 | 1301 | 910 | 014194/ 11228005 |

**NOTIFICATION:** I received this collision call at 0023 hours. I arrived on scene at approx 0025 hours. All times, measurements, and speeds are approximate.

**STATEMENTS:** D-1 (unknown) fled the scene and the other vehicle involved was a parked vehicle. There were no statements taken in this collision.

**SUMMARY:** V-2 (Dodge) and T-1 (trailer) were legally parked North bound along the East curb of Rio Vista. V-1 (Unknown) was traveling South bound on Rio Vista. V-1 (unknown) struck the front left bumper and fender of V-2 (Dodge). Then struck the left fender of the trailer. There was moderate damage to both V-2 (Dodge) and T-1 (trailer).

**AREA OF IMPACT:** The Area of Impact (AOI) #1 (Dodge) was 8'-7" South of South prolongation of B and 8'-7" West of the East curb of Rio Vista. The AOI #2 was 36'-1" South of the South prolongation of B and 6'-10" West of the East curb of Rio Vista. The AOI was established by the point of rest of involved vehicles.

**CAUSE:** V-1 (unknown) caused this collision by being in violation of California Vehicle Code section 21650 VC, failure to drive on right side of roadway. This was established by the AOI and matching damage to the vehicles on scene. D-1 (unknown) is also in violation of California Vehicle Code section 20002 VC, failure to remain at the scene of a traffic collision.

**RECOMMENDATIONS:** None

01083          **Ex. 17**

574

ay.21 02 02:37p    BRAW●  PD         (780●1-1719      p.5

DR #014194
INC #11228005
Date: 01-08-2002
RE: 20002 VC


On 01-08-2002 at approx 0730 hours I was informed that on 01-04-2001 Agent Garcia was given information on a possible suspect vehicle to the Hit-N-Run that occurred on 12-28-2001. The vehicle is registered to a Virjeane miller out of El Centro. Several attempts have been made to contact her with no results. ( see R/O information sheet)

There is also a telephone number at the top of the form which is to the R/O of the suspect vehicle.

Agent Garcia was also given pieces of plastic from the suspect vehicle which she placed into evidence on 01-04-2002. See evidence report.

01084

**Ex. 17**
575

INC #11228005
DR #014194
SUPPLEMENT

On 01-19-02 approximately 1003 hours I made contact with Virjeane Miller via telephone in regard to follow up on this case. (V)Gary Collins previously provided a license number of CA#4ANF085 as possibly being the vehicle which collided into his parked vehicle on 12-28-01. I identified myself to Miller and advised her of reason for phone call. I asked Miller if she still owned CA#4ANF085 and she said yes. I told her that license #4ANF085 was given to me as possibly being involved in a hit and run. I asked if her vehicle had been involved in an accident and if it had damage to the left front area. Miller said she did not know and would have to go outside to look. I thought this was odd. Miller asked if I wanted her to go outside and look. I said yes. When Miller came back to the phone she said the vehicle had little damage but she believed it was old damage. I asked her if she could come by the police department today so that I could see the vehicle. Miller said she would be by later.

On 01-19-02 approximately 1220 hours I met with Miller at the police department. I looked at CA#4ANF085 and saw that there was minor damage to the left front of the vehicle. I saw the damage caused to (V)Collins vehicle and this vehicle had minor damage compared to (V)Collins vehicle, a 1967 Dodge pickup. (V)Collins also turned over plastic parts from the suspect vehicle he found. Miller's vehicle was not missing any parts or did not have any parts broken. I asked Miller if she came to Brawley a lot because her vehicle has been seen in town several times. Miller said her boyfriend Frank Pizano lives in Brawley.

Virjeane Miller
2371 Heil Avenue
El Centro Ca
(760)352-0689

**Ex. 17**

01085

576

Imperial County Sheriff's Office
CAD Call Response Times by Nature                    Page 1

| re | Date Reported | Calls | Units | Dispatch | Travel | At Scene | Total |
|----|---------------|-------|-------|----------|--------|----------|-------|
| | 00:52:20 12/28/01 | 136762 | UNITS | 00:02:29 | ** ** ** | ** ** ** | 00:02:3 |
| | 01:57:55 12/28/01 | 136786 | UNITS | ** ** ** | ** ** ** | ** ** ** | 00:05:4 |
| ency Ass | 01:01:45 12/28/01 | 136783 | 106 | ** ** ** | ** ** ** | 00:26:07 | 00:26:5 |
| dical | 01:54:20 12/28/01 | 136785 | 2640 | 00:04:45 | 00:02:39 | 00:19:22 | 00:26:4 |
| dical | 02:32:40 12/28/01 | 136788 | 2660 | 00:01:52 | 00:30:31 | 00:51:29 | 01:24:0 |
| sisting | 01:50:21 12/28/01 | 136784 | 106 | 00:29:58 | 00:08:03 | 00:27:28 | 01:05:2 |
| sisting | 01:50:21 12/28/01 | 136784 | 341 | 00:18:24 | 00:26:01 | 00:21:04 | 01:05:2 |
| sisting | 01:50:21 12/28/01 | 136784 | 871 | 00:02:22 | 00:09:11 | 00:52:56 | 01:05:2 |
| RRANT SE | 02:17:53 12/28/01 | 136787 | 552 | 00:00:18 | --:--:-- | 01:09:00 | 01:09:0 |
| RRANT SE | 02:17:53 12/28/01 | 136787 | 852 | 00:36:03 | ** ** ** | ** ** ** | 02:44:2 |

erage Time, All Calls, All Units:                        00:12:08 00:15:17 00:38:13 00:57:3
erage Time, Earliest Dispatch/Arrival:                   00:07:52 00:13:44

tal Entries: 10

tes:  ** ** ** = Not possible to calculate elapsed time.
      ++ ++ ++ = Elapsed time exceeds 99:99:99.
      --:--:-- = Elapsed time when calculated was less than zero.
      The total times are the difference between the reported time and the
      completion time.

rt Includes:
. dates between `00:00:00 12/28/01` and `05:00:00 12/28/01`
li nature of incidents
li cities
ll type of calls
ll priorities
ll units
ll agencies
ll zones

          *** End of Report rpcdanel.r1 ***

01086

**Ex. 17**

577

/21/02                    Imperial County Sheriff's Office                    28
05                  CAD Call Narrative Search Report, by Date, Law Info   Page:

te Reported      Incident Nature          Address                    Loc  Disp

:32:20 12/28/01 0112-0994 AVR              STATION 9, BRA              DIST INA
****************200002 CVC****************************
H: POSS DRK BLU JEEP W/RAG TOP LIFTED UNK 10-28

:01:45 12/28/01 0112-0995 Agency Assist    ANDERHOLT,S EVANHEWES, HLT DIST CLD
152 TOT
:28:30 12/28/01 - - Mistriel,M.L.
R 106 10-28 TOT TO CHP

:50:21 12/28/01 0112-0996 Resisting        4548 ELDER RD, BRA          DIST CA
EF TO 200002 CVC SUS BLK OR DRK BLU JEEP
:02:43 12/28/01 - - Mistriel,M.L.
ER 871 BLK JEEP DOESN'T HAVE RAG TOP HOWEVER IT HAS EXTENSIVE DAMAGE

1:57:55 12/28/01 0112-0997 AVR             1020 HATFIELD, BRA          DIST INA
****************ATL RUNNAWAY JUV****************
   GONZALEZ JORGE ARTURO 020785 508 170 BLN GRN

:17:59 12/28/01 0112-0998 WARRANT SERVICE WINTERHAVEN DR/E OF IS, WH DIST CA
EF 10-36 STEELE,LEWIS WILLIAM 081477 WAR/0133799 $1,500.00 CHARGE/12500A
----------------------------------------------------
    Total Incidents: 5
----------------------------------------------------
eport includes:
ll dates between `00:00:00 12/28/01` and `05:00:00 12/28/01`
ll natures
ll cities
ll agencies
ll keywords
----------------------------------------------------
          *** End of Report rpcdcnsr.r2 ***

01087        **Ex. 17**
                      578

| Date | Unit | Zone | Call ID | Code | Description |
|---|---|---|---|---|---|
| 01:13 12/28/01 | 341 | 1 | | NOTE | NEG NO END SGT |
| 02:16 12/28/01 | 106 | COVR | | 28 | 29 4RWF138 |
| 05:59 12/28/01 | 341 | 1 | | 8 | |
| 07:25 12/28/01 | BLM | DIST4 | 136775 | 98 | incid#=0112-0993 Enroute to a call call=551 |
| 07:26 12/28/01 | BLM | DIST1 | 136780 | ENRT | incid#=0112-0993 Enroute to a call call=551 |
| 07:36 12/28/01 | BLM | DIST1 | 136780 | ENRT | incid#=0112-0993 IN THE AREA call=551 |
| 08:12 12/28/01 | 524 | 5 | | 28 | 29 3GUN161 |
| 09:41 12/28/01 | 877 | COVR | | 6 | HEBER DUNES S 3VLX640 S RANGER STN |
| 10:07 12/28/01 | 519 | DIST4 | 136775 | NOTE | incid#=0112-0990 CONTACT PMH ASCERTAIN IF THEY HAVE HAD ANY PERSON ADMITTED FROM GLAMIS 3 IN MID 40'S 1 IN MID 20'S call=501 |
| 10:10 12/28/01 | 2650 | DIST3 | 136781 | ENRT | incid#=44369 620 call=56e |
| 13:15 12/28/01 | 877 | COVR | | NOTE | MONTOYO JULIO CESAR 102479/GUZMAN RICHARD 010278/SANCHEZ JOSE GUADALUPE 122178 |
| 4:03 12/28/01 | 2640 | COVR | | 10 | 7A |
| 14:53 12/28/01 | 2650 | COVR | 136781 | 4 | PATCH 62- |
| 15:55 12/28/01 | 877 | COVR | | 8 | |
| 16:03 12/28/01 | 852 | 6 | | 4 | ONAIR |
| 17:12 12/28/01 | 2650 | DIST3 | 136781 | 98 | incid#=44369 620 call=56e |
| 17:15 12/28/01 | 2650 | COVR | | 10 | |
| 19:11 12/28/01 | BLM | DIST1 | 136780 | 98 | incid#=0112-0993 SUBJ BEEN CONTACTED 10-98 call=551 disp=INA clr=NR |
| 19:16 12/28/01 | BLM | WH | | 10 | 8 |
| 23:56 12/28/01 | 519 | DIST4 | 136775 | ONAIR | incid#=0112-0990 DE ANZAE SETTING UP AT WASH12/VEH AT JULIAN WASH call=501 |
| 24:07 12/28/01 | 519 | DIST4 | 136775 | 98 | incid#=0112-0990 Completed Cal call=501 |
| 24:10 12/28/01 | 519 | PV | | 8 | |
| 24:32 12/28/01 | 601 | | | 10 | |
| 25:20 12/28/01 | 534 | SC | | 4 | PHONE |
| 25:45 12/28/01 | 568 | DIST4 | 136775 | ENRT | incid#=0112-0990 Enroute to a call call=501 |
| 31:23 12/28/01 | 1406 | WH | | NOTE | WH DR/1ST AVE 23152 |
| 32:13 12/28/01 | 341 | 1 | | 4 | COPIED AVR |
| 32:13 12/28/01 | 439 | 4 | | 4 | COPIED AVR |
| 32:13 12/28/01 | 519 | PV | | 4 | COPIED AVR |
| 32:13 12/28/01 | 524 | 5 | | 4 | COPIED AVR |
| 32:13 12/28/01 | 562 | WH | | 4 | COPIED AVR |
| 32:13 12/28/01 | 568 | COVR | 136775 | 4 | COPIED AVR |
| 32:13 12/28/01 | 852 | 6 | | 4 | COPIED AVR |
| 32:13 12/28/01 | 877 | COVR | | 4 | COPIED AVR |
| 32:17 12/28/01 | 562 | WH | | 8 | |
| 34:45 12/28/01 | 568 | DIST4 | 136782 | ENRT | incid#=0112-0994 Enroute to a |

01088

**Ex. 17**

579

| Date | Unit | Zone | CallsID | Code | Description |
|---|---|---|---|---|---|
| 34:54 12/28/01 | UNITS | DIST4 | 136782 | 98 | incid#=0112-0994 Completed Call call=11 disp=INA clr=NR |
| 35:03 12/28/01 | UNITS | WH | | 10 | 10 |
| 42:04 12/28/01 | 106 | COVR | | 28 | 6P43633 |
| 42:32 12/28/01 | DEANIA | DIST4 | 136775 | 57 | incid#=0112-0990 WASH V12 PER 519 call=501 |
| 57:03 12/28/01 | 106 | COVR | | TS | JEEP 3WPU721 BBWCC |
| 59:32 12/28/01 | 106 | COVR | | 27 | E0666983 |
| 02:28 12/28/01 | 106 | DIST5 | 136783 | ARRVD | incid#=0112-0995 On-site call=21 |
| 02:54 12/28/01 | 534 | SC | | 8 | |
| 04:26 12/28/01 | 524 | 5 | | 4 | ONAIR |
| 05:20 12/28/01 | 2650 | COVR | | 10 | 7A |
| 06:17 12/28/01 | 877 | COVR | | 6 | W/106 |
| 13:54 12/28/01 | 877 | COVR | | 27 | S0498571 |
| 26:16 12/28/01 | 877 | COVR | | 8 | 11-48 FOR 1 TO STATION 10 |
| 28:35 12/28/01 | 106 | DIST5 | 136783 | 98 | incid#=0112-0995 Completed Call call=21 clr=R |
| 28:38 12/28/01 | 106 | COVR | | 8 | |
| 30:46 12/28/01 | 519 | PV | | 4 | ONAIR |
| 32:51 12/28/01 | 877 | COVR | | 8 | |
| 79:08 12/28/01 | 534 | SC | | 10 | 10 |
| 0:55 12/28/01 | 877 | COVR | | 28 | 4TCV895 |
| 41:35 12/28/01 | 877 | COVR | | TS | 111/ S OF EVAN HEWES |
| 42:18 12/28/01 | 568 | DIST4 | 136775 | 57 | incid#=0112-0990 Arrived on Scene call=501 |
| 42:23 12/28/01 | 439 | 4 | | 4 | SO |
| 42:29 12/28/01 | 524 | 5 | | 10 | |
| 42:45 12/28/01 | 562 | WH | | 4 | ONAIR |
| 44:03 12/28/01 | 877 | COVR | | 29 | A6752871 |
| 46:10 12/28/01 | 877 | COVR | | 8 | |
| 46:30 12/28/01 | 341 | 1 | | 4 | ONAIR |
| 46:50 12/28/01 | 571 | 3A | | 6 | 300 11-10 |
| 48:08 12/28/01 | 439 | 4 | | 10 | EM41842 |
| 48:19 12/28/01 | 524 | 5 | | 10 | EMG2150 |
| 50:59 12/28/01 | 877 | COVR | | 28 | 4FMN872 |
| 52:29 12/28/01 | 571 | DIST4 | 136784 | ASSGN | incid#=0112-0996 Assigned to a call call=31 |
| 53:37 12/28/01 | 571 | 3A | 136784 | 4 | U108 SM37581 |
| 53:43 12/28/01 | 571 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 55:23 12/28/01 | 2640 | DIST3 | 136785 | ASSGN | incid#=44370 Assigned to a call call=4e |
| 57:53 12/28/01 | 341 | 1 | | 4 | COPIED AVR |
| 57:53 12/28/01 | 519 | PV | | 4 | COPIED AVR |
| 57:53 12/28/01 | 562 | WH | | 4 | COPIED AVR |
| 57:53 12/28/01 | 562 | 5 | | 4 | COPIED AVR |
| 57:53 12/28/01 | 571 | 3A | 136784 | 4 | COPIED AVR |
| 57:53 12/28/01 | 877 | COVR | | 4 | COPIED AVR |
| 58:10 12/28/01 | 562 | 6 | | 8 | EAST GRAVEYARD |
| 59:05 12/28/01 | 2640 | DIST3 | 136785 | ENRT | incid#=44370 Enroute to a call call=4e |
| ~::15 12/28/01 | 571 | DIST4 | 136784 | 28 | incid#=0112-0996 2KWN995 BLK |

01089
**Ex. 17**
580

/21/02
03

Imperial County Sheriff's Office
Radio Log Summary Report by Day and Time          Page:

| Date | Unit | Zone | Call ID | Code | Description |
|------|------|------|---------|------|-------------|
| :01:44 12/28/01 | 2640 | DIST3 | 136785 | 97 | incid#=44370 Arrived on Scene call=4e |
| :02:54 12/28/01 | 871 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| :03:29 12/28/01 | UNITS | DIST4 | 136786 | ASSGN | incid#=0112-0997 Assigned to a call call=51 |
| :03:36 12/28/01 | UNITS | DIST4 | 136786 | 98 | incid#=0112-0997 Completed Ca call=51 disp=INA clr=NR |
| ::03:38 12/28/01 | UNITS | WH | | 10 | |
| :08:45 12/28/01 | 341 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| :10:37 12/28/01 | 871 | DIST4 | 136784 | ONAIR | incid#=0112-0996 C/4 10-15 FOR 148PC call=31 |
| :11:07 12/28/01 | 562 | WH | | TS | AZ DSS280 WH DR E HWY 8 |
| ::11:51 12/28/01 | 562 | WH | | 27 | 29 AZ/B14B02458 |
| :14:49 12/28/01 | 871 | 3A | 136784 | 29 | N6582845 |
| :15:15 12/28/01 | 2640 | DIST3 | 136785 | ENRT | incid#=44370 620 call=4e |
| 2:15:20 12/28/01 | 852 | 6 | | 4 | ONAIR |
| 2:17:14 12/28/01 | 106 | COVR | | 4 | ONAIR |
| 2:17:45 12/28/01 | 341 | 1 | 136784 | 4 | GOING THREW NILAND NOW |
| 2:18:04 12/28/01 | 562 | | 136787 | ARRVD | incid#=0112-0998 On-site call=61 |
| :19:16 12/28/01 | 562 | | 136787 | ENRT | incid#=0112-0998 W/1 10-15 call=61 |
| 2:18:33 12/28/01 | 819 | DIST4 | 136775 | ENRT | incid#=0112-0990 Enroute to a call call=501 |
| 2:19:39 12/28/01 | DEANZA | DIST4 | 136775 | 97 | incid#=0112-0990 WASH 12 call=501 |
| :20:19 12/28/01 | 106 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 2:21:04 12/28/01 | 562 | | 136787 | 6 | incid#=0112-0998 900 W/1 10-15 call=61 |
| 2:21:06 12/28/01 | 2640 | DIST3 | 136785 | 98 | incid#=44370 620 call=4e |
| 2:21:09 12/28/01 | 2640 | COVR | | 10 | |
| 2:24:03 12/28/01 | 871 | DIST4 | 136784 | ONAIR | incid#=0112-0996 STN9 COMING DOWN RD call=31 |
| 2:28:22 12/28/01 | 106 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 2:33:53 12/28/01 | 2660 | DIST4 | 136788 | ASSGN | incid#= Assigned to a call call=7e |
| 2:34:32 12/28/01 | 2660 | DIST4 | 136788 | ENRT | incid#=44371 Enroute to a call call=7e |
| 2:34:48 12/28/01 | 341 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 2:36:50 12/28/01 | 2660 | DIST4 | 136788 | ENRT | incid#=44371 ACTUAL TIME call=7e |
| :37:37 12/28/01 | 2640 | COVR | | 10 | 7A |
| :19:56 12/28/01 | 871 | DIST4 | 136784 | ONAIR | incid#=0112-0996 REQ CE FOR 148PC call=31 |
| 2:54:01 12/28/01 | 852 | DIST1 | 136787 | ENRT | incid#=0112-0998 Enroute to a call call=61 |
| ::55:50 12/28/01 | 106 | DIST4 | 136784 | 98 | incid#=0112-0996 Completed Cal call=31 clr=R |

01090 **Ex. 17**
581

/21/02                   Imperial County Sheriff's Office                        4
:03                  Radio Log Summary Report, by Day and Time          Page:

| Date | Unit | Zone | Call ID | Code | Description |
|---|---|---|---|---|---|
| :55:50 12/28/01 | 571 | DIST4 | 136784 | 98 | incid#=0112-0996 Completed Ca call=31 clr=R |
| :56:05 12/28/01 | 105 | COVR | | 8 | |
| :56:05 12/28/01 | 341 | 1 | | 8 | |
| :56:05 12/28/01 | 571 | 3A | | 8 | |
| :57:48 12/28/01 | 562 | DIST1 | 136787 | ENRT | incid#=0112-0998 EAST Y call= ONAIR |
| :59:24 12/28/01 | 877 | 4 | | 4 | ONAIR |
| :05:03 12/28/01 | 2560 | DIST4 | 136788 | 97 | incid#=44371 Arrived on Scene call=7e time=03:05:03 12/28/0 |
| :15:14 12/28/01 | 852 | DIST1 | 136787 | TS | incid#=0112-0998 EB IB E OF CALL #600 2633MR VG call=61 time=03:15:14 12/28/01 |
| 3:15:59 12/28/01 | 2560 | DIST4 | 136788 | ENRT | incid#=44371 630 call=7e time=03:15:59 12/28/01 |
| 3:21:36 12/28/01 | 852 | DIST1 | 136787 | 6 | incid#=0112-0998 EAST Y call= time=03:21:36 12/28/01 |
| 3:27:04 12/28/01 | 562 | DIST1 | 136787 | 98 | incid#=0112-0998 Completed Ca call=61 time=03:27:04 12/28/0 |
| 3:27:50 12/28/01 | 852 | DIST1 | 136787 | ENRT | incid#=0112-0998 10-19 W/1 call=61 time=03:27:50 12/28/0 |
| 3:53:13 12/28/01 | 852 | DIST1 | 136787 | 6 | incid#=0112-0998 INTAKE call= time=03:53:13 12/28/01 |
| :56:42 12/28/01 | 2560 | DIST4 | 136788 | 98 | incid#=44371 630 call=7e time=03:56:42 12/28/01 |
| 4:09:21 12/28/01 | 568 | DIST4 | 136773 | 98 | incid#=0112-0990 Completed Ca call=501 time=04:09:21 12/28/ |
| 4:57:20 12/28/01 | 341 | 1 | | 8 | |
| 4:58:58 12/28/01 | 105 | COVR | | 6 | AT 300 0259 HRS |
| 4:58:59 12/28/01 | 571 | 3A | | 6 | AT 300 0259 HRS |

eport Includes:
ll dates between '00:00:00 12/28/01' and '05:00:00 12/28/01'
ll dispatchers
ll call numbers
ll agencies
ll zones
ll units
ll ten codes

*** End of Report rprlrlsu.rl ***

01091   **Ex. 17**
582

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

September 3, 2002

TO:      County Counsel

FROM:    Sgt. Delfino O. Matus

RE:      Claim number 02-03-L-100-2201-016
         Claim of Tony I. Rouhotas Sr.

On August 30, 2002, AIU received the above listed claim.
The claim had been previously investigated under claim
number 01-02-L-100-2201-070 that was received on June 21,
2002, and submitted to County Counsel on June 24, 2002.

Attached you will find a summary of the investigation as
related to Imperial County Sheriff's Department crime
report number 0112-0996.

Any questions please contact Sgt. Matus at telephone number
760-339-6319.
/////

01092   **Ex. 17**

583

## IMPERIAL COUNTY

**Date:**                    August 30, 2002

**Department Head:** Harold Carter, Sheriff-Coroner

**Department:**        Sheriff-Coroner

**Re:    Claim of:**    Tony I. Rouhotas Sr.

**Address**                4593 Elder Road
                              Brawley, Ca. 92227

**Claim No.**              02-03-L-100-2201-016

The above claim, copy of which is attached, was filed with this office on **August 30, 2002**. A
copy of the claim has been provided to the Risk Management and County Counsel offices.

Please conduct an immediate investigation of the claim and mail a completed "Investigation
Report" on the form attached to:

> County Counsel
> County Administration Center
> 940 West Main Street
> El Centro, California 92243

Copies of your investigation report should be forwarded to the following: 1) **Carl Warren &
Company, Attn: Mark Bernstein, 5465 Morehouse Drive, Suite 150, San Diego,
California, 92121** 2) **Risk Management** and 3) **Clerk of the Board**. You should also
retain a copy for your files.

ALBERT ESPINOZA
CLERK OF THE BOARD
OF SUPERVISORS

BY:    Sylvia Bermudez
        Assistant Clerk of the Board

Enclosure

cc:    County Counsel
        Risk Management
        Claims Adjuster
        File

ADMINISTRATIVE INVESTIGATIONS UNIT
RECEIVED

AUG 3 0 2002

BY:
FROM:

01093   **Ex. 17**

584

**CONFIDENTIAL**

## INVESTIGATION MEMORANDUM

**TO:**              COUNTY COUNSEL

**RE:    CLAIM OF:**   Tony L. Rouhotas,m Sr.

**DATE OF CLAIM:**   August 29, 2002

**CLAIM NO.:**      02-03-L-100-2201-016

**INCIDENT DATE:**   December 28, 2001

**DEPARTMENT(S) INVOLVED:**    Sheriff-Coroner

### DEPARTMENT INVESTIGATION

1. Without opinion as to fault, below is stated this department's knowledge of the facts related to the above claim. This includes all employees involved, the identification of any independent witness, and the exact date, time and location of the occurrence. Attached are any pertinent documents that may relate to this incident.

    _- SEE ATTACHED Memo -_

2.     You should contact _Sgt J.O Martinez 334-6319_ for further information concerning the claim.

Sincerely,

DEPARTMENT HEAD

cc:    File
       Risk Management

01094

# Ex. 17

585



CLAIM NO 02-03-L-100-2201-016
14 DAYS 9-12-02
45 DAYS 10-13-02

## CLERK OF THE BOARD OF SUPERVISORS
940 WEST MAIN STREET, SUITE 209,
EL CENTRO, CA 92243-2871

### CLAIM AGAINST THE COUNTY OF IMPERIAL

CLAIMANT'S NAME: Tony L Rouhotas Sr.

CLAIMANT'S ADDRESS: 4593 Elder Rd.,Brawley,Ca.92227

CLAIMANT'S TELEPHONE: 760-344-3684/858-909-0885

ADDRESS TO WHICH NOTICES ARE TO BE SENT: P.O.Box 1593 Brawley Ca 92227


DATE OF ACCIDENT/LOSS/DAMAGE: 12/28/2001

LOCATION OF ACCIDENT/LOSS/DAMAGE: 4548 Elder Rd,Brawley,Ca. 92227

HOW DID ACCIDENT OCCUR: _____




NAME OF DEPARTMENT/EMPLOYEE(S) CAUSING INJURY/LOSS/DAMAGE, IF KNOWN:
Sheriff Department/Deputy Sheriff Justin Tackett I.D.#871

ITEMIZATION OF CLAIM:   Ref:Attachment A (2) pages
1. _____   $ _____
2. _____   $ _____
3. _____   $ _____
4. _____   $ _____

TOTAL AMOUNT OF CLAIM: $ Superior/Federal Court Jurisdiction

SIGNED BY (OR ON BEHALF OF) CLAIMANT: _____ DATE:08/29/2002

RETURN COMPLETED FORM TO:

*CLERK OF THE BOARD OF SUPERVISORS*
*COUNTY ADMINISTRATION CENTER*
*940 WEST MAIN STREET  SUITE 209*
*EL CENTRO  CA  92243-2871*

01095

DO NOT WRITE IN THIS SPACE
FOR CLERK OF THE BOARD'S USE ONLY

RECEIVED
AUG 2 9 2002
Clerk of the Board
of Supervisors
County of Imperial, CA.

**Ex. 17**

586

F:\FORMS\CLAIM-LI

## ATTACHMENT "A"

TONY L. ROUHOTAS, SR.
SHELLY A. ROUHOTAS
POST OFFICE BOX 1593
4593 ELDER ROAD
BRAWLEY, CA 92227

COMPLAINT AGAINST COUNTY OF IMPERIAL

On December 28, 2001 at about 2:00 AM Imperial County Sheriff's Deputy Justin Tackett, without authorization or warrant entered onto my property located at 4548 Elder Road in rural Brawley.

Deputy Justin Tackett, without authorization or warrant searched my property in violation of my Fourth Amendment Rights.

I am unable to provide you with a copy of Imperial County Sheriff's Report Number CR 0112-0996, because the Sheriff's Department refuses to give me a copy, even though it has been requested under applicable law.

The unlawful entry onto the property and unlawful search by Deputy Justin Tackett proved to be the wrong location.

This claim is against the County of Imperial and those listed in the claim for civil damages arising from violation of my Civil Rights as detailed under the Fourth Amendment.

Witnesses:

Shelly A. Rouhotas, Post Office Box 1593, 4593 Elder Road, Brawley, CA 92227, Phone: (760) 344-3684.

Randall L. Lackey, 4548 Elder Road, Brawley, CA 92227, (760) 344-4644.

Andrea L. Lackey, 4548 Elder Road, Brawley, CA 92227, Phone: (760) 344-

**Ex. 17**

01096    587

1

4644.

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Ex. 17**

588

2

# TONY L. ROUHOTAS, SR.

August 29, 2002

County of Imperial
Mr. Albert Espinoza
Clerk of the Board of Supervisors
940 Main Street, Suite 200
El Centro, CA 92243

Dear Mr. Espinoza,

    Attached is a claim that was file against the County of Imperial. You notified me by letter that the claim failed to comply substantially with certain Sections of the Government Code. You specifically listed Sections 910, 910.2, 910.4, and 910.8 of the Government Code for the reason(s) of insufficiency

    I believe you will find the enclosed claim meets the requirement for filing this claim against the Public Entity. If it is your opinion that it does not meet the requirement, provide me with the specific Section(s) and detailed explanation as to why it does not.

    If the claim is returned without specific explanation as stated, I will view the claim as being rejected and proceed with appropriate civil action.

Sincerely,

Tony L. Rouhotas, Sr.

TLR/sar

Enclosures: (3)

RECEIVED

AUG 29 2002

Clerk of the Board
of Supervisors
County of Imperial, CA

01097

**Ex. 17**

589

CONFIDENTIAL

INVESTIGATION MEMORANDUM

TO:                 COUNTY COUNSEL

RE:   CLAIM OF:     Tony L. Rouhotas

DATE OF CLAIM:      June 19, 2002

CLAIM NO.:          01-02-L-100-2201-070

INCIDENT DATE:      December 28, 2001

DEPARTMENT(S) INVOLVED:  Sheriff-Coroner

DEPARTMENT INVESTIGATION

1.     Without opinion as to fault, below is stated this department's knowledge of the facts related to the
above claim. This includes all employees involved, the identification of any independent witness, and the
exact date, time and location of the occurrence. Attached are any pertinent documents that may relate to
this incident.

_____

_____ *REFER  TO  ATTACHED  MEMO* _____

_____

_____

_____

_____

_____

_____

2.     You should contact   *Sgt Delfino O. MATA   760.339.6391*
for further information concerning the claim.

Sincerely,                                                    **01098**

(S) *Harold J. Carter, Sheriff*              ADMINISTRATIVE INVESTIGATIONS UNIT
                                                         RECEIVED

DEPARTMENT HEAD                                    JUN 21 2002

                                              BY: _____ **Ex. 17**
cc:    File                                   FROM: *Snbo F Godha*      **590**
       Risk Management

## IMPERIAL COUNTY

| | |
|---|---|
| Date: | June 19, 2002 |
| Department Head: | Harold Carter |
| Department: | Sheriff-Coroner |
| Re:      Claim of: | Tony L. Rouhotas |
| Address: | 4593 Elder Rd., Brawley CA 92227 |
| Claim No. | 01-02-L-100-2201-070 |

The above claim, copy of which is attached, was filed with this office on June 19, 2002. A copy of the claim has been provided to the Risk Management and County Counsel offices.

Please conduct an immediate investigation of the claim and mail a completed "Investigation Report" on the form attached to:

> County Counsel
> County Administration Center
> 940 West Main Street
> El Centro, California 92243

Copies of your investigation report should be forwarded to **Carl Warren and Company, Attn: Mark Bernstein, 5465 Morehouse Drive, Suite 150, San Diego, California, 92121**; Risk Management; and the Clerk of the Board. You should also retain a copy for your files.

ALBERT ESPINOZA
CLERK OF THE BOARD
OF SUPERVISORS


BY:    Alberto Leon
          Office Assistant

Enclosure

cc:    County Counsel
        Risk Management
        Claims Adjuster
        File

01099

**Ex. 17**
591



CLAIM NO 01-07-L-100-7201-071
14 DAYS 7-3-07
45 DAYS 8-4-02

## CLERK OF THE BOARD OF SUPERVISORS
940 WEST MAIN STREET, SUITE 209,
EL CENTRO, CA 92243-2871

### *CLAIM AGAINST THE COUNTY OF IMPERIAL*

**CLAIMANT'S NAME:** Tony L. Rouhotas, Sr.

**CLAIMANT'S ADDRESS:** 4593 Elder Rd., Brawley, CA 92227

**CLAIMANT'S TELEPHONE:** (760) 344-3684 / (858) 909-0885

**ADDRESS TO WHICH NOTICES ARE TO BE SENT:** P.O. Box 1593, Brawley, CA 92227

**DATE OF ACCIDENT/LOSS/DAMAGE:** 12/28/2001

**LOCATION OF ACCIDENT/LOSS/DAMAGE:** 4548 Elder Rd., Brawley, CA 92227

**HOW DID ACCIDENT OCCUR:** _____

**NAME OF DEPARTMENT/EMPLOYEE(S) CAUSING INJURY/LOSS/DAMAGE, IF KNOWN:**
Sheriff Department / Deputy Sheriff Justin Tackett I.D. # 871

**ITEMIZATION OF CLAIM:**

1. Trespass _____ $ _____
2. Unlawful Search _____ $ _____
3. _____ $ _____
4. _____ $ _____

**TOTAL AMOUNT OF CLAIM:** $ Superior / Federal Court Jurisdiction

**SIGNED BY (OR ON BEHALF OF) CLAIMANT:** *[signature]* **DATE:** 06/18/2002

**RETURN COMPLETED FORM TO:**

*CLERK OF THE BOARD OF SUPERVISORS*
*COUNTY ADMINISTRATION CENTER*
*940 WEST MAIN STREET SUITE 209*
*EL CENTRO CA 92243-2871*

DO NOT WRITE IN THIS SPACE
FOR CLERK OF THE BOARD'S USE ONLY

01100

**Ex. 17**
592

F:\FORMS\CLAIM-LI

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

June 24, 2002

TO:     Imperial County Counsel

FROM:   Sgt. Delfino O. Matus
        AIU

RE:     Claim number 01-02-L-100-2201-070
        Claim of Tony L. Rouhotas

The following is a summary of Imperial County Sheriff's
Department case number 0112-0996, dated December 28, 2001.
Deputy Justin Tackett #871, was assigned to North County
Patrol at the time of incident, prepared the report.

On December 28, 2001 at approximately 0150 hours, Deputy
Tackett responded to 4548 Elder Road, Brawley, California,
in response to a vehicle at that location that was possibly
involved in a hit and run collision, in the city of
Brawley.

Deputy Tackett responded at the request of the Brawley
Police Department, who was investigating the hit and run,
as related to Brawley Police case number 014194.

Upon arrival at the Elder Road address, Deputy Tackett
observed a vehicle that matched the description of the hit
and run vehicle. Deputy Tackett contacted the sheriff's
communication center so they could notify Brawley Police of
his finding.

Deputy Tackett positioned his patrol vehicle in front of
the residence, with his red and blue lights on, and
illuminated the front and rear doors with the patrol unit's
spotlights. Deputy Tackett then exited the patrol unit and
waited for the arrival of the Brawley Police Department.

While waiting for Brawley Police to arrive, Deputy Tackett
observed Mr. Randy Lackey exit the front door, wearing only
blue jean trousers. As Mr. Lackey approached Deputy

**Ex. 17**
593

01101

Tackett, Deputy Tackett observed that Mr. Lackey had a red mark on his back, possibly an injury from the collision. Mr. Lackey was also the registered owner of the suspected hit and run vehicle. Deputy Tackett stated he detained Mr. Lackey for investigation. Deputy Tackett states that if Mr. Lackey returned to the residence, it would be an officer safety issue, and investigation obstruction.

Deputy Tackett stated that Mrs. Lackey stuck her head out the front door, and inquired as to what was going on. Deputy Tackett advised the Lackey's that there was an on-going investigation that possibly involved someone in their household, further advising the Lackey's that he didn't have all the details of the investigation, however, the Brawley Police Department was in route to their location to speak to them.

Deputy Tackett stated that Mrs. Lackey told Mr. Lackey to return inside the residence because it was cold outside. Deputy Tackett asked Mrs. Lackey if she could retrieve some warm clothing for Mr. Lackey, which she acknowledged by saying okay.

Shortly after Mrs. Lackey closed the front door, Mr. Lackey informed Deputy Tackett that he was returning inside the residence. Deputy Tackett informed Mr. Lackey that he needed him to stay outside for officer safety reasons, and that the Brawley Police Department needed to contact him. Mr. Lackey told Deputy Tackett that he didn't care that he was going back inside the residence.

Deputy Tackett told Mr. Lackey if he walked away he was going to be placed under arrest for 148 PC Delaying, obstructing, resisting a peace officer. Mr. Lackey started walking toward his residence. Deputy Tackett grabbed his right elbow, and told him to stop, or he was going to be placed under arrest. Deputy Tackett stated Mr. Lackey pulled his elbow away continuing to walk. Mr. Lackey did this a couple of times. Deputy Tackett stated he contacted the sheriff's communication center, requesting a back-up unit.

Mr. Lackey continued to walk away, at which point Deputy Tackett stepped in front of him, and extended his right arm and the palm of his hand outward, telling Mr. Lackey that it was his last chance to stop or be arrested. Deputy Tackett stated Mr. Lackey pushed away his (Tackett) arm

**Ex. 17**

01102   594

from him (Lackey), and continued to push Deputy Tackett left shoulder, in an attempt to get by Deputy Tackett and into the residence.

Deputy Tackett attempted to restrain Mr. Lackey, however, he resisted. Deputy Tackett stated that during that time, Mrs. Lackey came out the residence with a white sweater for Mr. Lackey, and saw the altercation.

Deputy Tackett told Mrs. Lackey to tell her husband to stop being combative and resisting, which she did, and that he complied, subsequently being placed under arrest, and placed in the patrol unit.

Patrol Sgt. Myron King responded to the location of incident as did Deputy Andrew Lowenthal, and was briefed of what had transpired.

Deputy Tackett stated that Sgt. King advised him to cite and release Mr. Lackey, which Deputy Tackett complied with.

On January 14, 2002 the case was submitted to the Imperial County District Attorney's Office for review, charging Mr. Lackey with 148 PC. Upon being reviewed the case was rejected in the interest of justice and lack of evidence to prosecute.
/////

01103

**Ex. 17**

595

(THE FOLLOWING INFORMATION MUST BE SUPPLIED BY THE SUBMITTING AGENCY BEFORE CASE WILL BE REVIEWED.)

| | |
|---|---|
| Agency case number: _N12 1996_ | Submitting agency: _IC Mauipui_ |
| Date of incident: _12-27-01_ | Date submitted: _1-14-02_ |
| Judicial District: _Mauilui_ | |

Investigating Officer from submitting agency responsible for any follow-up information or investigation requested by the District Attorney's Office:

Officer's Name : _R P q Jackott_   Telephone number: _760 - 339 - 0311_

List the name, date of birth and social security number for each and every individual against whom a criminal complaint is sought involving the same incident:

| | Last Name | First Name | Middle Name | D.O.B. | S.S.I. |
|---|---|---|---|---|---|
| 1 | Jackut | Randy | Dee | 1-16-58 | |
| 2 | | | | | |
| 3 | | | | | |
| 4 | | | | | |
| 5 | | | | | |

A.  Was the case submitted before? Yes ☐ No ☒      If YES, attach a copy of the previous CH form.
B.  Was each named suspect interviewed by the investigating agency?  Yes ☐ No ☐  If not, why not?

C.  Are there other investigations or complaints pending against any of the above-named suspects? Please explain:

_____

LIST THE CHARGES THAT YOUR AGENCY IS SEEKING TO HAVE THIS OFFICE FILE:
(If a charge is to be enhanced because of a prior conviction, list the date of the conviction, the court and the charge.)

_148 PC_

[THIS SPACE IS FOR USE BY THE DISTRICT ATTORNEY'S OFFICE]

☑ Reject                         ☐ Re-submit with information requested below.

☐ Approved FELONY          ☐ Approved MISDEMEANOR

_Interest of Justice, lack of evidence to_
_prosecute._

**Ex. 17**
596

01104

page ___1___ of _____

02                    Imperial County Sheriff's Office
                           Deputy Report                          Page:      1

nt Number:  0112-0995
:  Resisting                        Case Numbers:

  4548 ELDER RD                         Area:  DIST4  SUPERVISOR DISTRICT 4
  Brawley          St: CA  Zip:  92227      Contact:  AGENT POE

.inant:      2294     Alert Codes:

  Brawley Police Department       Pst:                 Mid:
  **/**/**  SSN:    -  -    Adr:  351 Main Street
    Sx:   Tel: (760)344-2111  Cty:  Brawley .          St: CA Zip: 92227


ed:  RIPO   Obstruct Resist Public Of
ed:
ce
des:  RIPO   Obstruct Resist Public Of

mstances:

nding Officers:  Tackett, J     971
                 Lowenthal, A.   341
                 105             105
bl Officer:  Tackett, J     Agency:  AISO
eceived By:  Mistriel.M.L.    Last RadLog: 02:55:50 12/29/01    99
w Received:  T  Telephone          Clearance: RBR  Received by Records

  Reported:  01:50:21 12/29/01    Disposition: CAA  Disp Date: 12/29/01

.d between:  01:50:21 12/29/01    Judicial Sts:
       and:  01:50:21 12/29/01    Misc Entry:

 Operandi:
   Factor            Description                    Method

VEMENTS:
        Description                        Relationship
-----   ------------------------------------   --------------------------

01105          **Ex. 17**
                   597

02                    Imperial County Sheriff's Office                    ---
                             Deputy Report                        Page:      2

                             Narrative Section
-----------------------------------------------------------------------------
  Report:    0112-0996

:y:        Justin Tackett    # 971

:          148 P.C. (Resisting/Delaying/Obstructing A Peace Officer)

im(s):     State of California

..ct(s): 1) Randy Lee Lackey
            4549 Elder Road
            Brawley, Ca.  92227
            D.O.B.: 06-16-59
            California Driver's License # N5592945

..esses:  1) Mrs. Lackey (Wife of SUSPECT RANDY LACKEY)
            4549 Elder Road
            Brawley, Ca.  92227

          2) Sergeant King  # 106
            329 Applestill Road
            El Centro, Ca.  92243
            760-339-6312

..icle:     1979 Jeep (Vehicle Possibly Involved In Hit-And-Run.)
            Black
            California Plate # 2KWN995
              R/O:  Randy Lee Lackey
                    4549 Elder Road
                    Brawley, Ca.  92227

..rative:
        On December 29, 2001 at approximately 0150 hours, I(DEPUTY
..IN TACKETT) was dispatched to assist Brawley Police Department in
..hing for a black or dark colored Jeep with a damaged left front
.. that was involved in a hit and run.  Dispatch advised me that the
..ible vehicle involved was at 4549 Elder Road, Brawley, Ca. and I was
.. if a vehicle matching that description was at that location to
..act Brawley Police Department.

        Upon arriving at the address, I shined my spotlight down the
..eway of the residence at 4549 Elder Road.  I illuminated a Jeep that
.. left front damage and was parked in the rear of the residence.  I
..e into the driveway and around the vehicle.  While driving around
.. vehicle, I recorded the license plate and noticed it matched the
..ription given by Brawley Police Department. I advised dispatch to
..act Brawley Police Department in regards to the vehicle matching
.. description given was found at the residence they provided.
..tion being located.

        I drove to the front of the residence with my red and blue
.. s on and placed my right alley light in front of the front door in
.. to illuminate anyone who stepped outside the residence.  I placed
..pot light on the rear side door in order to illuminate anyone who
..pped outside the residence.  I then stepped out of my vehicle and
..ed off to the side until Brawley Police Department arrived.

01106
Ex. 17
598

. While waiting for Brawley Police Department, I noticed a male
, later identified as RANDY LACKEY, exiting the front door with
blue jeans on. RANDY LACKEY started to walk to my vehicle and I
ed a red mark on the rear portion of his back, possibly from the
t in question with Brawley Police Department. So I met him and
im his name. He stated RANDY LACKEY. This matched the same name
came back as the registered owner of the vehicle. At this point in
I detained RANDY LACKEY for investigative purposes due to him
the legal owner of the vehicle thus he should have knowledge on
vehicle in question and it's involvement in the case being
tigated by Brawley Police Department, along with the red mark on his
possibly being an injury occurring during the hit-and-run, and due
e fact, it would be an officer safety issue and an investigation
ruction if I let him return into his residence.

At this time, WITNESS#1 MRS. LACKEY stuck her head out of the
door and asked what was happening. I advised both WITNESS#1 MRS.
EY and RANDY LACKEY that there was an on-going investigation that
ibly involved someone in their household. I asked them if everyone
heir household were home and had no problems and they replied that
yone was home and they had no problems. I further stated I didn't
the exact details of the incident, but Brawley Police Department
an officer in route to speak to them about it. WITNESS#1 MRS.
EY told RANDY LACKEY that it was cold outside and that he should
rn inside. I asked WITNESS#1 MRS. LACKEY if she could retrieve the
clothing for RANDY LACKEY. WITNESS#1 MRS. LACKEY stated okay and
ced the door.

Approximately a minute after WITNESS#1 MRS. LACKEY closed the
RANDY LACKEY informed me that he was returning inside the
nce. I advised RANDY LACKEY that I needed him to stay outside for
wer safety reasons and due to the fact that he was going to be
ded for investigation being conducted by Brawley Police Department.
DY LACKEY stated he didn't care and he was going back inside his
idence. I told RANDY LACKEY that if he started to walk towards the
r of his residence to go inside, he was going to be placed under
est for 148 PC(Delaying/Obstructing/Resisting A Peace Officer).
DY LACKEY turned and began to walk towards the front door. I grabbed
DY LACKEY's right elbow and advised him to stay where he was at or he
going to be placed under arrest. RANDY LACKEY forcefully pulled his
across the front of his body which pull my hand off his elbow and he
tinued to keep walking towards the door. I again hold SUSPECT RANDY
KEY's elbow and directed him to stay where he was at or he was going
be placed under arrest. SUSPECT RANDY LACKEY again forcefully pulled
arm across the front of his body pulling my hand off his elbow as he
tinued to walk. I advised dispatch at this time to have a cover unit
pond as assistance. SUSPECT RANDY LACKEY started to walk away
erds his residence when I stepped in front of SUSPECT RANDY LACKEY
raised my right arm with my palm extended outward and told him I was
ing him this last chance to stop or he was going to be arrested.
PECT RANDY LACKEY struck my arm with his right hand causing my arm to
e off SUSPECT RANDY LACKEY and he then began to push my left shoulder
an attempt to get by me and into his residence.

I then grabbed SUSPECT RANDY LACKEY's wrist and attempted to
his arm behind his back but he resisted and fought with me to
d from me placing his arm behind his back. WITNESS#1 MRS. LACKEY
ted the residence at this time with a white sweater for SUSPECT RANDY
KEY and saw the altercation. I advised WITNESS#1 MRS. LACKEY that

01107

**Ex. 17**

599

 added to inform her husband to stop being combative and requesting
place his hand behind his back before the altercation escalated
r.   WITNESS#1 MRS. LACKEY yelled at SUSPECT RANDY LACKEY asking
at did he think he was doing and to do as I said and place his
behind his back.  SUSPECT RANDY LACKEY stop resisting, and I was
e to handcuff him.  Arresting him for 148 PC.  I placed SUSPECT
CKEY in my patrol unit.  At his time, WITNESS#2 SERGEANT KING
saking on the air and WITNESS#1 MRS. LACKEY asked me if the person
radio was MYRON KING?  I advised her it was.  WITNESS#1 MRS.
 then asked me if he was coming to our location.  I advised her
e was.  WITNESS#1 MRS. LACKEY then replied, "Good because this
ll be taken care of."

     WITNESS#2 SERGEANT KING arrived to the location and I briefed
 the arrested subject.  WITNESS#2 SERGEANT KING advised me to cite
lease SUSPECT RANDY LACKEY.  SUSPECT RANDY LACKEY was
(Citation # 020047) and released.

     Refer to District Attorney for prosecution.

n Tackett   # 971
y Sheriff
 County Patrol
ial County Sheriff's Department


12                    Imperial County Sheriff's Office                 333
                           Deputy Report                    Page:      3

----------------------------------------
onsible LEO:


----------------------------------------
oved by:


-----------------------

01108
**Ex. 17**

600

# CITY OF BRAWLEY

35 ___ STREET
BRAWL___ CALIFORNIA
92227-2497
PHONE: (760) 344-2111



## FAX TRANSMISSION

## COVER SHEET

Sgt Matu                    FAX # 339-0170

ATTENTION: _Sheriff DepartmentA_

FROM: _Community Service Officer Chela Garcia_

_____

DATE: 5/21/02 _____ NUMBER OF PAGES: 5 _____

COMMENTS: _____

_____

_____

_____

01109

This FAX is being sent from the Brawley Police Department. All information in this FAX is considered to be confidential and for use by the person named above. If you receive this FAX in error, please notify the Brawley Police Department at (760) - 344-2111 and ask for directions on disposition of the FAX.

**Ex. 17**

601

# : COLLISION CODING

:e 2 (Rev. 8-97) OPI 042

| (MO. DAY YEAR) | TIME (2400) | NCIC # | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 8-2001 | .0023 | 1301 | 710 | 014194 |

| OWNER'S NAME | OWNER'S ADDRESS | NOTIFIED |
|---|---|---|
| | | ☐ YES ☐ NO |

DESCRIPTION OF DAMAGE

## NG POSITION

**OCCUPANTS**
A - NONE IN VEHICLE
B - UNKNOWN
C - LAP BELT USED
D - LAP BELT NOT USED
E - SHOULDER HARNESS USED
F - SHOULDER HARNESS NOT USED
G - LAP/SHOULDER HARNESS USED
H - LAP/SHOULDER HARNESS NOT USED
J - PASSIVE RESTRAINT USED
K - PASSIVE RESTRAINT NOT USED

## SAFETY EQUIPMENT

A - AIR BAG DEPLOYED
M - AIR BAG NOT DEPLOYED
N - OTHER
P - NOT REQUIRED

**CHILD RESTRAINT**
Q - IN VEHICLE USED
R - IN VEHICLE NOT USED
S - IN VEHICLE USE IMPROPER
T - IN VEHICLE IMPROPER USE
U - NONE IN VEHICLE

**M / C BICYCLE- HELMET**

DRIVER
V - NO
W - YES

PASSENGER
X - NO
Y - YES

## EJECTED FROM VEHICLE

0 - NOT EJECTED
1 - FULLY EJECTED
2 - PARTIALLY EJECTED
3 - UNKNOWN

- DRIVER
TO 8 - PASSENGERS
- STATION WAGON REAR
- REAR OCC. TRK OR VAN
- POSITION UNKNOWN
- OTHER

**ITEMS MARKED BELOW FOLLOWED BY AN ASTERISK (*) SHOULD BE EXPLAINED IN THE NARRATIVE.**

| COLLISION FACTOR R (#) OF PARTY AT FAULT | TRAFFIC CONTROL DEVICES | 1 | 2 | 3 | TYPE OF VEHICLE | 1 | 2 | 3 | MOVEMENT PRECEDING COLLISION |
|---|---|---|---|---|---|---|---|---|---|
| INVOLVED  ☐ YES  ☒ NO | IA CONTROLS FUNCTIONING | | | | IA PASSENGER CAR / STATION WAGON | | | | IA STOPPED |
| 50 VC | IB CONTROLS NOT FUNCTIONING* | | | | IB PASSENGER CAR W / TRAILER | X | | | IB PROCEEDING STRAIGHT |
| IMPROPER DRIVING* | IC CONTROLS OBSCURED | | | | IC MOTORCYCLE / SCOOTER | | | | IC RAN OFF-ROAD |
| | X ID NO CONTROLS PRESENT / FACTOR* | | | | ID PICKUP OR PANEL TRUCK | | | | ID MAKING RIGHT TURN |
| THAN DRIVER* | TYPE OF COLLISION | | X | | IE PICKUP / PANEL TRUCK W/ TRAILER | | | | IE MAKING LEFT TURN |
| OWN* | IA HEAD - ON | | | | IF TRUCK OR TRUCK TRACTOR | | | | IF MAKING U TURN |
| ASLEEP* | X IB SIDE SWIPE | | | | IG TRUCK / TRUCK TRACTOR 'W' TRLR | | | | IG BACKING |
| | IC REAR END | | | | IH SCHOOL BUS | | | | IH SLOWING / STOPPING |
| R (MARK 1 TO 2 ITEMS) | ID BROADSIDE | | | | II OTHER BUS | | | | II PASSING OTHER VEHICLE |
| R | IE HIT OBJECT | | | | IJ EMERGENCY VEHICLE | | | | IJ CHANGING LANES |
| DY | IF OVERTURNED | | | | IK HIGHWAY CONST. EQUIPMENT | | | | IK PARKING MANEUVER |
| NG | IG VEHICLE / PEDESTRIAN | | | | IL BICYCLE | | | | IL ENTERING TRAFFIC |
| VING | IH OTHER* | | | | X IM OTHER VEHICLE (TRAILER) | | | | IM OTHER UNSAFE TURNING |
| VISIBILITY        FT | | | | | IN PEDESTRIAN | | | | IN XING INTO OPPOSING LANE |
| | MOTOR VEHICLE INVOLVED WITH | | | | IO MOPED | X | X | | IO PARKED |
| | IA NON - COLLISION | | | | | | | | IP MERGING |
| IGHTING | IB PEDESTRIAN | | | | | | | | IQ TRAVELING WRONG WAY |
| LIGHT | IC OTHER MOTOR VEHICLE | 1 | 2 | 3 | OTHER ASSOCIATED FACTOR(S) (MARK 1 TO 2 ITEMS) | | | | IR OTHER * |
| K - DAWN | ID MOTOR VEHICLE ON OTHER ROADWAY | | | | | | | | |
| K - STREET LIGHTS | X IE PARKED MOTOR VEHICLE | | | | A  VC SECTION VIOLATION:   CITED  ☐ YES ☐ NO | | | | |
| K - NO STREET LIGHTS | IF TRAIN | | | | B  VC SECTION VIOLATION:   CITED  ☐ YES ☐ NO | | | | |
| K - STREET LIGHTS NOT CTIONING* | IG BICYCLE | | | | C  VC SECTION VIOLATION:   CITED  ☐ YES ☐ NO | 1 | 2 | 3 | SOBRIETY - DRUG PHYSICAL (MARK 1 TO 2 ITEMS) |
| OADWAY SURFACE | IH ANIMAL | | | | | | | | IA HAD NOT BEEN DRINKING |
| | II FIXED OBJECT | | | | ID | | | | IB HBD - UNDER INFLUENCE * |
| | | | | | IE VISION OBSCUREMENT: | | | | IC HBD - NOT UNDER INFLUENCE * |
| WY - ICY | IJ OTHER OBJECT: | | | | IF INATTENTION * | | | | ID HBD - IMPAIRMENT UNKNOWN * |
| PPERY (MUDDY OILY, ETC.) | | | | | IG STOP & GO TRAFFIC | | | | IE UNDER DRUG INFLUENCE * |
| OADWAY CONDITION(S) (MARK 1 TO 2 ITEMS) | PEDESTRIAN'S ACTIONS | | | | IH ENTERING / LEAVING RAMP | | | | IF IMPAIRMENT - PHYSICAL * |
| LES, DEEP RUT* | X IA NO PEDESTRIANS INVOLVED | | | | II PREVIOUS COLLISION | | | | IG IMPAIRMENT NOT KNOWN * |
| SE MATERIAL ON ROADWAY* | IB CROSSING IN CROSSWALK AT INTERSECTION | | | | IJ UNFAMILIAR WITH ROAD | X | | | IH NOT APPLICABLE |
| STRUCTION ON ROADWAY* | | | | | IK DEFECTIVE VEH. EQUIP. CITED | X | X | | II SLEEPY / FATIGUED |
| NSTRUCTION - REPAIR ZONE | IC CROSSING IN CROSSWALK - NOT AT INTERSECTION | | | | ☐ YES ☐ NO | | | | SPECIAL INFORMATION |
| UCED ROADWAY WIDTH | ID CROSSING - NOT IN CROSSWALK | | | | IL UNINVOLVED VEHICLE | | | | IA HAZARDOUS MATERIAL |
| ODED* | IE IN ROAD - INCLUDES SHOULDER | | | | IM OTHER*: | | | | IB CELL PHONE IN USE |
| HER* | IF NOT IN ROAD | X | X | X | IN NONE APPARENT | X | X | IC CELL PHONE NOT IN USE |
| UNUSUAL CONDITIONS | IG APPROACHING / LEAVING SCHOOL BUS | | | | IO RUNAWAY VEHICLE | X | | ID CELL PHONE USE unknown |

RIO VISTA

B ST

① INDICATE NORTH

MISCELLANEOUS

01110

**Ex. 17**

602

CALIFORNIA
TRAFFIC COLLISION REPORT
Page 1 (Rev. 8-97) OPI 042

| | NUMBER INJURED | HIT & RUN FELONY | CITY | | JUDICIAL DISTRICT | LOCAL REPORT NUMBER |
|---|---|---|---|---|---|---|
| CD CHP | 0 | | BRAWLEY | | BRAWLEY | 014194 |
| | NUMBER KILLED | HIT & RUN MISDEMEANOR | COUNTY | REPORTING DISTRICT | BEAT | |
| | 0 | ☒ | IMPERIAL | | 01 | |

| COLLISION OCCURRED ON | | MO. | DAY | YEAR | TIME (2400) | NCIC # | OFFICER I.D. |
|---|---|---|---|---|---|---|---|
| RIO VISTA | | 12 | 25 | 2001 | 0013 | 1301 | 910 |

| MILEPOST INFORMATION | | DAY OF WEEK | TOW AWAY | PHOTOGRAPHS BY: | NONE |
|---|---|---|---|---|---|
| FEET/MILES | OF | S M T W T (F) S | ☐ YES ☒ NO | 922 | |
| AT INTERSECTION WITH | | | STATE HWY REL. | | |
| OR: H-7 FEET/MILES 5 OF B | | | ☐ YES ☒ NO | | |

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| 20002 VL | | | | UNK | BIG JEEP / BLK | UNK | |

NAME (FIRST, MIDDLE, LAST)

OWNER'S NAME ☐ SAME AS DRIVER

STREET ADDRESS

OWNER'S ADDRESS ☐ SAME AS DRIVER

CITY/STATE/ZIP

DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☐ DRIVER ☐ OTHER

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE |
|---|---|---|---|---|---|---|

PRIOR MECHANICAL DEFECTS: ☐ NONE APPARENT ☐ REFER TO NARRATIVE

| HOME PHONE | BUSINESS PHONE |
|---|---|

VEHICLE IDENTIFICATION NUMBER:

| INSURANCE CARRIER | POLICY NUMBER |
|---|---|

CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE ☐ UNK ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | SHADE IN DAMAGED AREA

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT |
|---|---|---|
| S | RIO VISTA | 25 |

CA _____ OCT _____
CAL-T _____ TOPP/SC _____ MC/MX _____

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| | | | | 1967 | DODGE / / RED-WHT | 5D97528 | CA |

NAME (FIRST, MIDDLE, LAST)

OWNER'S NAME ☐ SAME AS DRIVER
COLLINS GARY JAMES

STREET ADDRESS

OWNER'S ADDRESS ☐ SAME AS DRIVER
392 W. B ST.

CITY/STATE/ZIP

DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☐ DRIVER ☐ OTHER

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE |
|---|---|---|---|---|---|---|

PRIOR MECHANICAL DEFECTS: ☐ NONE APPARENT ☐ REFER TO NARRATIVE

| HOME PHONE | BUSINESS PHONE |
|---|---|

VEHICLE IDENTIFICATION NUMBER: 12B1672325

| INSURANCE CARRIER | POLICY NUMBER |
|---|---|

CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE ☐ UNK ☐ NONE ☐ MINOR ☐ MOD. ☐ MAJOR ☐ ROLL-OVER | SHADE IN DAMAGED AREA

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT |
|---|---|---|
| N | RIO VISTA | 25 |

CA _____ OCT _____
CAL-T _____ TOPP/SC _____ MC/MX _____

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR | MAKE/MODEL/COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| | | | | N/A | SPC. VEH/TRAILER / RED | 1HM4414 | CA |

NAME (FIRST, MIDDLE, LAST)

OWNER'S NAME ☐ SAME AS DRIVER
COLLINS GARY JAMES

STREET ADDRESS

OWNER'S ADDRESS ☐ SAME AS DRIVER
392 W. B ST.     01111

CITY/STATE/ZIP

DISPOSITION OF VEHICLE ON ORDERS OF: ☐ OFFICER ☐ DRIVER ☐ OTHER

| | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE Mo. Day Year | RACE |
|---|---|---|---|---|---|---|

PRIOR MECHANICAL DEFECTS: ☐ NONE APPARENT ☐ REFER TO NARRATIVE

| HOME PHONE | BUSINESS PHONE |
|---|---|

VEHICLE IDENTIFICATION NUMBER: CA25VIP     Ex. 17
603

CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE ☐ UNK ☐ NONE ☐ MINOR ☐ MOD ☐ MAJOR ☐ ROLL-OVER | SHADE IN DAMAGED AREA

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT |
|---|---|---|

CA _____ OCT _____
CAL-T _____ TOP/SC _____ MC/MX _____

| Date of collision | Time | NCIC # | Officer # | DR #/ INC # |
|---|---|---|---|---|
| 12-28-01 | 0023 | 1301 | 910 | 014194/ 11228005 |

**NOTIFICATION:** I received this collision call at 0023 hours. I arrived on scene at approx 0025 hours. All times, measurements, and speeds are approximate.

**STATEMENTS:** D-1 (unknown) fled the scene and the other vehicle involved was a parked vehicle. There were no statements taken in this collision.

**SUMMARY:** V-2 (Dodge) and T-1 (trailer) were legally parked North bound along the East curb of Rio Vista. V-1 (Unknown) was traveling South bound on Rio Vista. V-1 (unknown) struck the front left bumper and fender of V-2 (Dodge). Then struck the left fender of the trailer. There was moderate damage to both V-2 (Dodge) and T-1 (trailer).

**AREA OF IMPACT:** The Area of Impact (AOI) #1 (Dodge) was 8'-7" South of South prolongation of B and 8'-7" West of the East curb of Rio Vista. The AOI #2 was 36'-1" South of the South prolongation of B and 6'-10" West of the East curb of Rio Vista. The AOI was established by the point of rest of involved vehicles.

**CAUSE:** V-1 (unknown) caused this collision by being in violation of California Vehicle Code section 21650 VC, failure to drive on right side of roadway. This was established by the AOI and matching damage to the vehicles on scene. D-1 (unknown) is also in violation of California Vehicle Code section 20002 VC, failure to remain at the scene of a traffic collision.

**RECOMMENDATIONS:** None

01112

**Ex. 17**

604

DR #014194
INC #11228005
Date: 01-08-2002
RE: 20002 VC


On 01-08-2002 at approx 0730 hours I was informed that on 01-04-2001 Agent Garcia was given information on a possible suspect vehicle to the Hit-N-Run that occurred on 12-28-2001. The vehicle is registered to a Virjeane miller out of El Centro. Several attempts have been made to contact her with no results. ( see R/O information sheet)

There is also a telephone number at the top of the form which is to the R/O of the suspect vehicle.

Agent Garcia was also given pieces of plastic from the suspect vehicle which she placed into evidence on 01-04-2002. See evidence report.

01113

**Ex. 17**

605

INC #11228005
DR #014194
SUPPLEMENT

On 01-19-02 approximately 1003 hours I made contact with Virjeane Miller via telephone in regard to follow up on this case. (V)Gary Collins previously provided a license number of CA#4ANF085 as possibly being the vehicle which collided into his parked vehicle on 12-28-01. I identified myself to Miller and advised her of reason for phone call. I asked Miller if she still owned CA#4ANF085 and she said yes. I told her that license #4ANF085 was given to me as possibly being involved in a hit and run. I asked if her vehicle had been involved in an accident and if it had damage to the left front area. Miller said she did not know and would have to go outside to look. I thought this was odd. Miller asked if I wanted her to go outside and look. I said yes. When Miller came back to the phone she said the vehicle had little damage but she believed it was old damage. I asked her if she could come by the police department today so that I could see the vehicle. Miller said she would be by later.

On 01-19-02 approximately 1220 hours I met with Miller at the police department. I looked at CA#4ANF085 and saw that there was minor damage to the left front of the vehicle. I saw the damage caused to (V)Collins vehicle and this vehicle had minor damage compared to (V)Collins vehicle, a 1967 Dodge pickup. (V)Collins also turned over plastic parts from the suspect vehicle he found. Miller's vehicle was not missing any parts or did not have any parts broken. I asked Miller if she came to Brawley a lot because her vehicle has been seen in town several times. Miller said her boyfriend Frank Pizano lives in Brawley.

Virjeane Miller
2371 Heil Avenue
El Centro Ca
(760)352-0689

01114

**Ex. 17**

606

Imperial County Sheriff's Office                     Page:    1
CAD Call Response Times by Nature

| Date Reported | | Call | Unit | Dispatch | Travel | AtScene | Total |
|---|---|---|---|---|---|---|---|
| | 00:22:20 12/29/01 | 136782 | UNITS | 00:02:29 | ** ** ** | ** ** ** | 00:02:3 |
| | 01:57:55 12/29/01 | 136786 | UNITS | ** ** ** | ** ** ** | ** ** ** | 00:05:4 |
| cy Ass | 01:01:45 12/29/01 | 136783 | 106 | ** ** ** | ** ** ** | 00:25:07 | 00:24:5 |
| cal | 01:54:20 12/29/01 | 136785 | 2640 | 00:04:45 | 00:02:37 | 00:19:22 | 00:26:4 |
| ical | 02:32:40 12/29/01 | 136788 | 2660 | 00:01:52 | 00:30:31 | 00:51:39 | 01:24:0 |
| isting | 01:50:21 12/29/01 | 136784 | 106 | 00:29:58 | 00:02:03 | 00:27:28 | 01:05:2 |
| isting | 01:50:21 12/29/01 | 136784 | 341 | 00:18:24 | 00:26:01 | 00:21:04 | 01:05:2 |
| isting | 01:50:21 12/29/01 | 136784 | 671 | 00:03:22 | 00:09:11 | 00:52:56 | 01:05:2 |
| RANT SE | 02:17:58 12/29/01 | 136787 | 562 | 00:00:18 | --:--:-- | 01:09:00 | 01:09:0 |
| RANT SE | 02:17:58 12/29/01 | 136787 | 852 | 00:36:03 | ** ** ** | ** ** ** | 02:44:2 |

rage Time, All Calls, All Units:                    00:12:08 00:15:17 00:39:13 00:57:3
rage Time, Earliest Dispatch/Arrival:               00:07:52 00:13:44

al Entries: 10

ces:    ** ** ** = Not possible to calculate elapsed time.
        ++:++:++ = Elapsed time exceeds 99:99:99.
        --:--:-- = Elapsed time when calculated was less than zero.
        The total times are the difference between the reported time and the
        completion time.

     t Includes:
     Dates between `00:00:00 12/29/01` and `05:00:00 12/29/01`
     1 nature of incidents
     1 cities
     1 type of calls
     1 priorities
     1 units
     1 agencies
     1 zones

                *** End of Report rpcdanal.r1 ***

                                                          01115

                                                    **Ex. 17**
                                                         607

Imperial County Sheriff's Office
CAD Call Narrative Search Report, by Date, Law Info   Page:

Reported   Incident Nature          Address                    Loc Dis

32:20 12/28/01 0112-0994 AVR            STATION 9, BRA              DIST IN
*****************200002 CVC************************

: POSS DRK BLU JEEP W/RAG TOP LIFTED UNK 10-28

01:45 12/28/01 0112-0995 Agency Assist   ANDERHOLT S EVANHEWES, HLT DIST CL
152 TOT
28:30 12/28/01  - Mistriel,M.L.
R 106 10-98 TOT TO CHP

:50:21 12/28/01 0112-0996 Resisting     4548 ELDER RD, BRA          DIST CA
F TO 200002 CVC SUS BLK DR DRK BLU JEEP
:02:43 12/28/01  - Mistriel,M.L.
R 871 BLK JEEP DOESN'T HAVE RAG TOP HOWEVER IT HAS EXTENSIVE DAMAGE

:57:55 12/28/01 0112-0997 AVR           1020 HATFIELD, BRA          DIST IN
***************ATL RUNNAWAY JUV***************
    GONZALEZ JORGE ARTURO 020785 508 170 BLN GRN

:17:59 12/28/01 0112-0998 WARRANT SERVICE WINTERHAVEN DR/E OF IS, WH DIST CA
EF 10-28 STEELE,LEWIS WILLIAM 081477 WAR/0133799 $1,500.00 CHARGE/12500A

    Total Incidents: 5

eport includes:
ll dates between `00:00:00 12/28/01` and `05:00:00 12/28/01`
ll natures
ll cities
ll agencies
ll keywords

          *** End of Report rpcdcnsr.r2 ***

01116
**Ex. 17**
608

Imperial County Sheriffs Office
Radio Log Summary Report by Day and Time                Page:

| Date | Unit | Zone | Call ID | Code | Description |
|------|------|------|---------|------|-------------|
| 1:13 12/28/01 | 341 | 1 | | NOTE | NEG NO END SGT |
| 2:16 12/28/01 | 106 | COVR | | 28 | 29 4RWF139 |
| 5:59 12/28/01 | 341 | 1 | | 8 | |
| 7:25 12/28/01 | BLM | DIST4 | 136775 | 98 | incid#=0112-0993 Enroute to a call call=551 |
| 7:26 12/28/01 | BLM | DIST1 | 136780 | ENRT | incid#=0112-0993 Enroute to a call call=551 |
| 7:36 12/28/01 | BLM | DIST1 | 136780 | ENRT | incid#=0112-0993 IN THE AREA call=551 |
| 08:12 12/28/01 | 524 | 5 | | 28 | 29 3GUN161 |
| 09:41 12/28/01 | 877 | COVR | | 6 | HEBER DUNES S 3VLX640 S RANGER STN |
| 10:07 12/28/01 | 519 | DIST4 | 136775 | NOTE | incid#=0112-0990 CONTACT PMH ASCERTAIN IF THEY HAVE HAD ANY PERSON ADMITTED FROM GLAMIS 3 IN MID 40'S 1 IN MID 20'S call=501 |
| 10:10 12/28/01 | 2650 | DIST3 | 136781 | ENRT | incid#=44369 620 call=56e |
| 13:15 12/28/01 | 877 | COVR | | NOTE | MONTOYO JULIO CESAR 102479/GUZMAN RICHARD 010278/SANCHEZ JOSE GUADALUPE 122178 |
| :03 12/28/01 | 2640 | COVR | | 10 | 7A |
| 4:53 12/28/01 | 2650 | COVR | 136781 | 4 | PATCH 62- |
| 15:53 12/28/01 | 877 | COVR | | 8 | |
| 16:03 12/28/01 | 852 | 6 | | 4 | ONAIR |
| 17:12 12/28/01 | 2650 | DIST3 | 136781 | 98 | incid#=44369 620 call=56e |
| 17:15 12/28/01 | 2650 | COVR | | 10 | |
| 19:11 12/28/01 | BLM | DIST1 | 136780 | 98 | incid#=0112-0993 SUBJ BEEN CONTACTED 10-98 call=551 disp=INA clr=NR |
| 19:16 12/28/01 | BLM | WH | | 10 | 8 |
| 23:56 12/28/01 | 519 | DIST4 | 136775 | ONAIR | incid#=0112-0990 DE ANZAE SETTING UP AT WASH12/VEH AT JULIAN WASH call=501 |
| 24:07 12/28/01 | 519 | DIST4 | 136775 | 98 | incid#=0112-0990 Completed Call call=501 |
| 24:10 12/28/01 | 519 | PV | | 8 | |
| 24:39 12/28/01 | 601 | | | 10 | |
| 25:20 12/28/01 | 534 | SC | | 4 | PHONE |
| 25:45 12/28/01 | 568 | DIST4 | 136775 | ENRT | incid#=0112-0990 Enroute to a call call=501 |
| 00:31:23 12/28/01 | 1406 | WH | | NOTE | WH DR/1ST AVE 23152 |
| 00:32:13 12/28/01 | 341 | 1 | | 4 | COPIED AVR |
| 00:32:13 12/28/01 | 439 | 4 | | 4 | COPIED AVR |
| 32:13 12/28/01 | 519 | PV | | 4 | COPIED AVR |
| 32:13 12/28/01 | 524 | 5 | | 4 | COPIED AVR |
| 00:32:13 12/28/01 | 1452 | WH | | 4 | COPIED AVR |
| 00:32:13 12/28/01 | 568 | COVR | 136775 | 4 | COPIED AVR |
| 00:32:13 12/28/01 | 852 | 6 | | 4 | COPIED AVR |
| 00:32:13 12/28/01 | 877 | COVR | | 4 | |
| 00:32:17 12/28/01 | 568 | WH | | 8 | |
| 12/28/01 | | DIST4 | 136782 | ENRT | incid#=0112-0994 Enroute to a |

01117

**Ex. 17**

609

21/02                    Imperial County Sheriff's Office
03                    Radio Log Summary Report  by Day and Time          Page:

| Date | Unit | Zone | Call ID | Code | Description |
|------|------|------|---------|------|-------------|
| 34:54 12/28/01 | UNITS | DIST4 | 136782 | 98 | incid#=0112-0994 Completed Ca call=TI disp=INA clr=NR |
| 35:03 12/28/01 | UNITS | WH | | 10 | 10 |
| 42:04 12/28/01 | 106 | COVR | | 28 | 6P43633 |
| 42:30 12/28/01 | DEANZA | DIST4 | 136775 | 57 | incid#=0112-0990 WASH V12 PER 519 call=501 |
| 57:03 12/28/01 | 106 | COVR | | TS | JEEP 3WPU721 BBWCC |
| 59:32 12/28/01 | 106 | COVR | | 27 | E0666983 |
| 09:28 12/28/01 | 106 | DIST5 | 136783 | ARRVD | incid#=0112-0995 On-site call=21 |
| 02:54 12/28/01 | 534 | SC | | 8 | |
| 04:26 12/28/01 | 524 | 5 | | 4 | ONAIR |
| 05:20 12/28/01 | 2650 | COVR | | 10 | 7A |
| 06:17 12/28/01 | 877 | COVR | | 6 | W/106 |
| 19:54 12/28/01 | 877 | COVR | | 27 | S0498571 |
| 26:16 12/28/01 | 877 | COVR | | 8 | 11-48 FOR 1 TO STATION 10 |
| 28:35 12/28/01 | 106 | DIST5 | 136783 | 98 | incid#=0112-0995 Completed Ca call=21 clr=R |
| 28:38 12/28/01 | 106 | COVR | | 8 | |
| 30:46 12/28/01 | 519 | PV | | 4 | ONAIR |
| 32:51 12/28/01 | 877 | COVR | | 8 | |
| 39:08 12/28/01 | 534 | SC | | 10 | 10 |
| 0:50 12/28/01 | 877 | COVR | | 28 | 4TCV895 |
| 1:35 12/28/01 | 877 | COVR | | TS | 111/ S OF EVAN HEWES |
| 42:18 12/28/01 | 568 | DIST4 | 136775 | 57 | incid#=0112-0990 Arrived on Scene call=501 |
| 42:23 12/28/01 | 439 | 4 | | 4 | SO |
| 42:28 12/28/01 | 524 | 5 | | 10 | |
| 42:45 12/28/01 | 562 | WH | | 4 | ONAIR |
| 44:03 12/28/01 | 877 | COVR | | 29 | A6752871 |
| 46:10 12/28/01 | 877 | COVR | | 8 | |
| 46:30 12/28/01 | 341 | 1 | | 4 | ONAIR |
| 46:50 12/28/01 | 871 | 3A | | 6 | 300 11-10 |
| 48:08 12/28/01 | 439 | 4 | | 10 | EM41842 |
| 48:19 12/28/01 | 524 | 5 | | 10 | EM32150 |
| 50:53 12/28/01 | 877 | COVR | | 28 | 4FMNS72 |
| 52:28 12/28/01 | 871 | DIST4 | 136784 | ASSGN | incid#=0112-0996 Assigned to a call call=31 |
| 53:37 12/28/01 | 871 | 3A | 136784 | 4 | U108 SM37681 |
| 53:43 12/28/01 | 871 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 55:23 12/28/01 | 2640 | DIST3 | 136785 | ASSGN | incid#=44370 Assigned to a call call=46 |
| 57:53 12/28/01 | 341 | 1 | | 4 | COPIED AVR |
| 57:53 12/28/01 | 519 | PV | | 4 | COPIED AVR |
| 57:53 12/28/01 | 562 | WH | | 4 | COPIED AVR |
| 57:53 12/28/01 | 655 | 5 | | 4 | COPIED AVR |
| 57:53 12/28/01 | 871 | 3A | 136784 | 4 | COPIED AVR |
| 57:53 12/28/01 | 877 | COVR | | 4 | COPIED AVR |
| 58:10 12/28/01 | 655 | 5 | | 9 | EAST GRAVEYARD |
| 59:05 12/28/01 | 2640 | DIST3 | 136785 | ENRT | incid#=44370 Enroute to a call call=46 |
| | | | 136784 | | incid#=0112-0996 2KWN??? BLK |

01118  **Ex. 17**
610

| Time | Date | Unit | Zone | Call ID | Code | Description |
|---|---|---|---|---|---|---|
| 01:44 | 12/28/01 | 2640 | DIST3 | 136785 | 97 | incid#=44370 Arrived on Scene call=4e |
| 02:54 | 12/28/01 | 571 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 03:29 | 12/28/01 | UNITS | DIST4 | 136786 | ASSGN | incid#=0112-0997 Assigned to a call call=51 |
| 03:36 | 12/28/01 | UNITS | DIST4 | 136786 | 98 | incid#=0112-0997 Completed Ca call=51 disp=INA clr=NR |
| 03:38 | 12/28/01 | UNITS | WH | | 10 | |
| 08:45 | 12/28/01 | 341 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 10:37 | 12/28/01 | 571 | DIST4 | 136784 | ONAIR | incid#=0112-0996 C/4 10-15 FOR 148PC call=31 |
| 11:07 | 12/28/01 | 562 | WH | | TS | AZ DSS290 WH DR E HWY 8 |
| 11:51 | 12/28/01 | 562 | WH | | 27 | 29 AZ/B14802458 |
| 14:49 | 12/28/01 | 571 | 3A | 136784 | 29 | N6582845 |
| 15:15 | 12/28/01 | 2640 | DIST3 | 136785 | ENRT | incid#=44370 620 call=4e |
| 15:20 | 12/28/01 | 852 | 6 | | 4 | ONAIR |
| 17:14 | 12/28/01 | 106 | COVR | | 4 | ONAIR |
| 17:45 | 12/28/01 | 341 | 1 | 136784 | 4 | GOING THREW NILAND NOW |
| 18:04 | 12/28/01 | 562 | | 136787 | ARRVD | incid#=0112-0998 On-site call=61 |
| 7:16 | 12/28/01 | 562 | | 136787 | ENRT | incid#=0112-0998 W/1 10-15 call=61 |
| 18:33 | 12/28/01 | 519 | DIST4 | 136775 | ENRT | incid#=0112-0990 Enroute to a call call=501 |
| 19:39 | 12/28/01 | DEANZA | DIST4 | 136775 | 97 | incid#=0112-0990 WASH 12 call=501 |
| 20:19 | 12/28/01 | 106 | DIST4 | 136784 | ENRT | incid#=0112-0996 Enroute to a call call=31 |
| 21:04 | 12/28/01 | 562 | | 136787 | 6 | incid#=0112-0998 900 W/1 10-15 call=61 |
| 21:06 | 12/28/01 | 2640 | DIST3 | 136785 | 98 | incid#=44370 620 call=4e |
| 21:09 | 12/28/01 | 2640 | COVR | | 10 | |
| 24:03 | 12/28/01 | 571 | DIST4 | 136784 | ONAIR | incid#=0112-0996 STN9 COMING DOWN RD call=31 |
| 28:22 | 12/28/01 | 106 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 33:58 | 12/28/01 | 2660 | DIST4 | 136788 | ASSGN | incid#= Assigned to a call call=7e |
| 34:32 | 12/28/01 | 2660 | DIST4 | 136788 | ENRT | incid#=44371 Enroute to a call call=7e |
| 34:46 | 12/28/01 | 341 | DIST4 | 136784 | 97 | incid#=0112-0996 Arrived on Scene call=31 |
| 36:50 | 12/28/01 | 2660 | DIST4 | 136788 | ENRT | incid#=44371 ACTUAL TIME call=7e |
| 7:37 | 12/28/01 | 2640 | COVR | | 10 | 7A |
| 9:56 | 12/28/01 | 571 | DIST4 | 136784 | ONAIR | incid#=0112-0996 550 CR FOR 148PC call=31 |
| 54:01 | 12/28/01 | 562 | DIST1 | 136787 | ENRT | incid#=0112-0998 Enroute to a call call=61 |
| 55:10 | 12/28/01 | 106 | DIST4 | 136784 | 98 | incid#=0112-0996 Completed Ca call=31 clr=R |

01119

Ex. 17

611

21/02
03

Imperial County Sheriff's Office
Radio Log Summary Report, by Day and Time                    Page: 4

| Date | Unit | Zone | Call ID | Code | Description |
|---|---|---|---|---|---|
| 55:50 12/28/01 | 571 | DIST4 | 136784 | 98 | incid#=0112-0996 Completed Ca call=31 CIT=R |
| 56:05 12/28/01 | 105 | COVR | | 8 | |
| 56:05 12/28/01 | 341 | 1 | | 8 | |
| 56:05 12/28/01 | 571 | 3A | | 8 | |
| 57:48 12/28/01 | 552 | DIST1 | 136787 | ENRT | incid#=0112-0998 EAST Y call= |
| 59:24 12/28/01 | 577 | 4 | | 4 | ONAIR |
| 05:03 12/28/01 | 2560 | DIST4 | 136788 | 97 | incid#=44371 Arrived on Scene call=7e time=03:05:03 12/28/0 |
| 15:14 12/28/01 | 552 | DIST1 | 136787 | TS | incid#=0112-0998 EB IS E OF CALL #600 2633MR VG call=61 time=03:15:14 12/28/01 |
| 15:59 12/28/01 | 2560 | DIST4 | 136788 | ENRT | incid#=44371 630 call=7e time=03:15:59 12/28/01 |
| 21:36 12/28/01 | 552 | DIST1 | 136787 | 6 | incid#=0112-0998 EAST Y call= time=03:21:36 12/28/01 |
| 27:04 12/28/01 | 552 | DIST1 | 136787 | 98 | incid#=0112-0998 Completed Ca call=61 time=03:27:04 12/28/0 |
| 27:50 12/28/01 | 552 | DIST1 | 136787 | ENRT | incid#=0112-0998 10-19 W/1 call=61 time=03:27:50 12/28/0 |
| 53:13 12/28/01 | 552 | DIST1 | 136787 | 6 | incid#=0112-0998 INTAKE call= time=03:52:13 12/28/01 |
| 5:42 12/28/01 | 2560 | DIST4 | 136788 | 98 | incid#=44371 630 call=7e time=03:56:42 12/28/01 |
| 09:21 12/28/01 | 553 | DIST4 | 136773 | 98 | incid#=0112-0990 Completed Ca call=501 time=04:09:21 12/28/ |
| 37:30 12/28/01 | 341 | 1 | | 8 | |
| 39:38 12/28/01 | 105 | COVR | | 6 | AT 300 0259 HRS |
| 38:59 12/28/01 | 571 | 3A | | 6 | AT 300 0259 HRS |

Report Includes:
1 dates between `00:00:00 12/28/01` and `05:00:00 12/28/01`
1 dispatchers
1 call numbers
1 agencies
1 zones
1 units
1 ten codes

*** End of Report rprlrlsu.r1 ***

01120

Ex. 17

612



Find the Weather for any City, State or ZIP Code, or Country

| | |
|---|---|
| Units: | Metric | English | |
| Language: | English |
| Timezone: | Set My Timezone |

[Fast Forecast]

Try **FREE** membership.

# History for Imperial, California

December 27 2001 Go
Previous Day          Next Day

| | |
|---|---|
| Mean Temperature | 50.9° F / 10.5° C |
| Max Temperature | 66.2° F / 19.0° C |
| Min Temperature | 35.6° F / 2.0° C |
| Heating Degree Days | 15 |
| Growing Degree Days | 0 (Base 50° F / 9° C ) |
| Dew Point | 26.5° F / -3.1° C |
| Precipitation | - |
| Snow Depth | - |
| Standard Pressure | 30.0 in / 1015.7 hPa |
| Sea Level Pressure | - / - |
| Visibility | 9.5 miles / 15.3 kilometers |
| Wind Speed | 3.0 mph / 4.8 km/h |
| Max Wind Speed | 8.1 mph / 13.0 km/h |
| Gust Speed | N/A |
| Events | |

Data Not Available

No Ads.
Weather
Email.
Five Bucks
per Year.
Click Here.
Become a
member!
New!
Payments by
PayPal

Members Login
 Print This Page

**Features**
- Favorites
- Wunder Photos
- NEXRAD Radar Stations
- NEXRAD Regional Composites
- Personal Weather Stations
- US Visible Satellite
- US Severe Weather
- Astronomy
- Ski Reports
- Marine Forecasts
- Tropical Storms
- Google Search

international
United States

01121          **Ex. 17**

613

Canada
Mexico
Central America
South America
Northern Asia
Southern Asia
Europe
Australia
Africa
Islands
Antarctica

**information**

Need Help?
Link to Us
About Us
Custom
Weather
Newspaper
Weather
Advertising

Quotes123

- Mortage/Loan Center
- Commodity Trading

X10

- Tiny Wireless Camera
- X10 Surveillance Cam
- NEW! Tiny X10 Camera
- Wireless Camera: $80



Games

- Checkers
- Chess
- Crossword

| Astronomy | |
|---|---|
| Length of Day | 10:04 |
| Sunrise | 6:41 AM PST |
| Sunset | 4:45 PM PST |
| Moon Rise | (12/26) 1:58 PM PST |
| Moon Set | (12/26) 2:49 AM PST |
| Moon Phase | |

   

more...

Dec 26   Dec 30   Jan 6   Jan 13   Jan 21
Full     Last Quarter   New   First Quarter

## Please Visit Our Sponsors:

 

Copyright © 2002 The Weather Underground, Inc.

Contact Us | Help and Support | Advertise Here

Ex. 17

01122   614

- More...

**Googie**
**Search**

Search the Net!

[                    ]

[ Search ]

Powered by Google

**Desktop**
**Gizmo!**



Add a Scrolling
Gizmo to your
Windows
Desktop

c²
Sep 6 2002 00:40:15

01123    **Ex. 17**
615



Find the Weather for any City, State or ZIP Code, or Country

| Units: | Metric | English |
| Language: | English |
| Timezone: | Set My Timezone |

Fast Forecast

No Ads.
Weather
Email.
Five Bucks
per Year.
Click Here.
Become a
member!
New!
Payments by
PayPal

Try **FREE** membership.

# History for Imperial, California

December ⊡ 28 ⊡ 2001 ⊡ GO

Previous Day          Next Day

| | |
|---|---|
| Mean Temperature | 50.9° F / 10.5° C |
| Max Temperature | 62.6° F / 17.0° C |
| Min Temperature | 39.2° F / 4.0° C |
| Heating Degree Days | 15 |
| Growing Degree Days | 0 (Base 50° F / 9° C ) |
| Dew Point | 33.0° F / 0.5° C |
| Precipitation | - |
| Snow Depth | - |
| Standard Pressure | 30.0 in / 1015.6 hPa |
| Sea Level Pressure | - / - |
| Visibility | 8.0 miles / 12.8 kilometers |
| Wind Speed | 2.7 mph / 4.3 km/h |
| Max Wind Speed | 6.9 mph / 11.1 km/h |
| Gust Speed | N/A |
| Events | |

Members Login

 Print This Page

**Features**

- Favorites
- Wunder Photos
- NEXRAD Radar Stations
- NEXRAD Regional Composites
- Personal Weather Stations
- US Visible Satellite
- US Severe Weather
- Astronomy
- Ski Reports
- Marine Forecasts
- Tropical Storms
- Google Search

**international**
United States

Data Not Available

01124   **Ex. 17**
616

Canada
Mexico
Central America
South America
Northern Asia
Southern Asia
Europe
Australia
Africa
Islands
Antarctica

**Information**

Need Help?
Link to Us
About Us
Custom
Weather
Newspaper
Weather
Advertising

Quotes123

- Mortage/Loan
Center
- Commodity
Trading

X10

- Tiny
Wireless
Camera
- X10
Surveillance
Cam
- NEW! Tiny
X10 Camera
- Wireless
Camera: $80



Games

- Checkers
- Chess
- Crossword

| Astronomy | |
|---|---:|
| Length of Day | 10:04 |
| Sunrise | 6:42 AM PST |
| Sunset | 4:46 PM PST |
| Moon Rise | (12/27) 2:36 PM PST |
| Moon Set | (12/27) 3:50 AM PST |
| Moon Phase | |

| Dec 27 | Dec 30 | Jan 6 | Jan 13 | Jan 21 | more... |
|---|---|---|---|---|---|
| Full | Last Quarter | New | First Quarter | | |

Please Visit Our Sponsors:



Copyright © 2002 The Weather Underground, Inc.

Contact Us | Help and Support | Advertise Here

01125          **Ex. 17**

617

- More...

**Google Search**

Search the Net!



Search

Powered by Google

**Desktop Gizmo!**



Add a Scrolling
Gizmo to your
Windows
Desktop

aB
Sep 6 2002 00:40:15

01126   **Ex. 17**
618



Find the Weather for any City, State or ZIP Code, or Country

| | |
|---|---|
| Units: | Metric | English | |
| Language: | English |
| Timezone: | Set My Timezone |

[Fast Forecast]



Flirting, romance & fun.

matchmaker.com

No Ads.
Weather
Email.
Five Bucks
per Year.
Click Here.
Become a
member!
New!
Payments by
PayPal

Members Login
 Print This
Page

**Features**

- Favorites
- Wunder Photos
- NEXRAD Radar Stations
- NEXRAD Regional Composites
- Personal Weather Stations
- US Visible Satellite
- US Severe Weather
- Astronomy
- Ski Reports
- Marine Forecasts
- Tropical Storms
- Google Search

International
United States

# History for Imperial, California

| December | 29 | 2001 | GO |

Previous Day          Next Day

| Mean Temperature | 50.9° F / 10.5° C |
|---|---|
| Max Temperature | 59.0° F / 15.0° C |
| Min Temperature | 42.8° F / 6.0° C |
| Heating Degree Days | 15 |
| Growing Degree Days | 0 (Base 50° F / 9° C ) |
| Dew Point | 36.7° F / 2.6° C |
| Precipitation | - |
| Snow Depth | - |
| Standard Pressure | 30.0 in / 1016.2 hPa |
| Sea Level Pressure | - / - |
| Visibility | 5.3 miles / 8.5 kilometers |
| Wind Speed | 2.7 mph / 4.4 km/h |
| Max Wind Speed | 8.1 mph / 13.0 km/h |
| Gust Speed | N/A |
| Events | Rain |

Data Not Available

01127          **Ex. 17**

619

Canada
Mexico
Central America
South America
Northern Asia
Southern Asia
Europe
Australia
Africa
Islands
Antarctica

**information**

Need Help?
Link to Us
About Us
Custom Weather
Newspaper
Weather Advertising

Quotes123

- Mortage/Loan Center
- Commodity Trading

X10

- Tiny Wireless Camera
- X10 Surveillance Cam
- NEW! Tiny X10 Camera
- Wireless Camera: $80




Games

- Checkers
- Chess
- Crossword

| Astronomy | |
|---|---|
| Length of Day | 10:05 |
| Sunrise | 6:42 AM PST |
| Sunset | 4:47 PM PST |
| Moon Rise | (12/28) 3:21 PM PST |
| Moon Set | (12/28) 4:54 AM PST |

Moon Phase

| Dec 28 | Dec 30 | Jan 6 | Jan 13 | Jan 21 | more... |
|---|---|---|---|---|---|
| Full | Last Quarter | New | First Quarter | | |

Please Visit Our Sponsors:



Copyright © 2002 The Weather Underground, Inc.

Contact Us | Help and Support | Advertise Here

01128

**Ex. 17**
620

["

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT
## IA # 2002-018

SUPPLEMENTAL REPORT BY SGT. DELFINO O. MATUS:

On September 12, 2002, AIU Sgt. Delfino O. Matus obtained from the California Highway Patrol, traffic collision report number 010646. The report had information regarding a traffic accident that involved the Lackey black colored CJ5 Jeep, California license plate number 2KWN995.

The following is a summary of CHP report number 010646. The report states that on June 16, 2001 at approximately 0200 hours, Randall Dwight Lackey (driver) was accompanied by a passenger, was involved in a rollover at Huff Road, north of Wheeler Road. The Jeep had sustained total rollover damage. Both driver and passenger sustained injuries.

Refer to CHP report for details of the traffic collision.
/////



01130

**Ex. 17**

622

# ATTACHMENTS

1. Copy of CHP report number 010646.

2. California Department of Motor Vehicles printout on
   California drivers license number B9866119/Randall
   Dwight Lackey.

/////

01131

Ex. 17

2

623

| SPECIAL CONDITIONS | NUMBER INJURED | 2 | HIT & RUN FELONY | | JUDICIAL DISTRICT | | LOCAL REPORT NUMBER |
|---|---|---|---|---|---|---|---|
| | | | | UNINCORPORATED | BRAWLEY | | 01 06 46 |
| | NUMBER KILLED | 0 | HIT & RUN MISDEMEANOR | COUNTY | REPORTING DISTRICT | BEAT | |
| | | | | IMPERIAL | | 10 | |

**LOCATION**

| COLLISION OCCURRED ON: | | MO DAY YEAR | TIME (2400) | NCIC # | OFFICER I.D. |
|---|---|---|---|---|---|
| JFF RD | | 06/16/2001 | 0200 | 9625 | 16197 |

| MILEPOST INFORMATION | DAY OF WEEK | TOW AWAY | PHOTOGRAPHS BY: | NONE |
|---|---|---|---|---|
| | SATURDAY | [X] YES [ ] NO | | [X] |

| AT INTERSECTION WITH: | STATE HWY REL |
|---|---|
| [X] OR: 2.0 MILE(S) NORTH OF WHEELER RD | [ ] YES [X] NO |

**PARTY 1 / DRIVER / PEDESTRIAN / PARKED VEHICLE / BICYCLIST / OTHER**

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY EQUIP. | VEH. YEAR | MAKE / MODEL / COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| B9866119 | CA | C | C | 79 | JEEP CJ 5 BLK | 2KWN995 | CA |

| NAME (FIRST, MIDDLE, LAST) | OWNER'S NAME | | |
|---|---|---|---|
| RANDALL DWIGHT LACKEY | [X] SAME AS DRIVER | | |

| STREET ADDRESS | OWNER'S ADDRESS | | |
|---|---|---|---|
| 4548 ELDER RD | [X] SAME AS DRIVER | | |

| CITY / STATE / ZIP | | | DISPOSITION OF VEHICLE ON ORDERS OF: | [X] OFFICER | [ ] DRIVER | [ ] OTHER |
|---|---|---|---|---|---|---|
| BRAWLEY | CA | 92227 | STAN'S TOWING - (760)352-4336 | | | |

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE (Mo Day Year) | RACE | PRIOR MECH. DEFECTS | [X] NONE APP. | REFER TO NARRATIVE |
|---|---|---|---|---|---|---|---|---|---|
| M | BLN | BRN | 6-01 | 145 | 06/10/1983 | W | | | |

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| (760)344-7174 | NONE | |

| INSURANCE CARRIER | POLICY NUMBER | CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE | SHADE IN DAMAGED AREA |
|---|---|---|---|---|
| LIBERTY MUTUAL | A02268950284011 | 07 | [ ] UNK [ ] NONE [ ] MINOR [ ] MOD [ ] MAJOR [X] ROLL-OVER | |

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT | CA | DOT |
|---|---|---|---|---|
| N | HUFF RD | 55 | CAL-T | TCP/PSC   MC/MX |

**PARTY 2**

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY | VEH. YEAR | MAKE / MODEL / COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| NAME (FIRST, MIDDLE, LAST) | OWNER'S NAME | SAME AS DRIVER |
|---|---|---|
| | | |

| STREET ADDRESS | OWNER'S ADDRESS | SAME AS DRIVER |
|---|---|---|
| | | |

| CITY / STATE / ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: | [ ] OFFICER | [ ] DRIVER | [ ] OTHER |
|---|---|---|---|---|
| | | | | |

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE (Mo Day Year) | RACE | PRIOR MECHANICAL DEFECTS | [ ] NONE APP | REFER TO NARRATIVE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| | | |

| INSURANCE CARRIER | POLICY NUMBER | CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE | SHADE IN DAMAGED AREA |
|---|---|---|---|---|
| | | | [ ] UNK [ ] NONE [ ] MINOR [ ] MOD [ ] MAJOR [ ] ROLL-OVER | |

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT | CA | DOT |
|---|---|---|---|---|
| | | | CAL-T | TCP/PSC   MC/MX |

**PARTY 3**

| DRIVER'S LICENSE NUMBER | STATE | CLASS | SAFETY | VEH. YEAR | MAKE / MODEL / COLOR | LICENSE NUMBER | STATE |
|---|---|---|---|---|---|---|---|
| | | | | | | | |

| NAME (FIRST, MIDDLE, LAST) | OWNER'S NAME | SAME AS DRIVER |
|---|---|---|
| | | |

| STREET ADDRESS | OWNER'S ADDRESS | SAME AS DRIVER |
|---|---|---|
| RECEIVED | | |
| SEP 1 2 2002 | | |
| BY: | | |

| CITY / STATE / ZIP | DISPOSITION OF VEHICLE ON ORDERS OF: | [ ] OFFICER | [ ] DRIVER | [ ] OTHER |
|---|---|---|---|---|
| | | | | |

| SEX | HAIR | EYES | HEIGHT | WEIGHT | BIRTHDATE (Mo Day Year) | RACE | PRIOR MECHANICAL DEFECTS | [ ] NONE APP | REFER TO NARRATIVE |
|---|---|---|---|---|---|---|---|---|---|
| | | | | | | | | | |

| HOME PHONE | BUSINESS PHONE | VEHICLE IDENTIFICATION NUMBER |
|---|---|---|
| | | 01132 |

| INSURANCE CARRIER | POLICY NUMBER | CHP USE ONLY VEHICLE TYPE | DESCRIBE VEHICLE DAMAGE | SHADE IN DAMAGED AREA |
|---|---|---|---|---|
| | | | [ ] UNK [ ] NONE [ ] MINOR [ ] MOD [ ] MAJOR [ ] ROLL-OVER | |

| DIR OF TRAVEL | ON STREET OR HIGHWAY | SPEED LIMIT | CA | DOT |
|---|---|---|---|---|
| | | | CAL-T | TCP/PSC   MC/MX |

Distribution checklist: HDQ, FARS, CALTRANS, COURT, JUV., CO. RD., CORONER, MILITARY, P.D., CHP

| PREPARER'S NAME | DISPATCH NOTIFIED | REVIEWER'S NAME | DATE REVIEWED |
|---|---|---|---|
| F. RATCLIFF 16197 | [X] YES [ ] NO [ ] N/A | | |

Ex. 17

624

| COLLISION (MO. DAY YEAR) | TIME (2400) | | | |
|---|---|---|---|---|
| 2001 | 0200 | 96[redacted] | 16197 [redacted] | 01 06 46 |

| | | | |
|---|---|---|---|
| ERTY IAGE | OWNER | OWNER ADDRESS | NOTIFIED ☐ YES ☐ NO |
| | DESCRIPTION OF DAMAGE | | |

## POSITION

3
6

1 - DRIVER
2 TO 6 - PASSENGERS
7 - STA. WGN REAR
8 - RR. OCC TRK. OR VAN
9 - POSITION UNKNOWN
0 - OTHER

## SAFETY EQUIPMENT

**OCCUPANTS**
A - NONE IN VEHICLE
B - UNKNOWN
C - LAP BELT USED
D - LAP BELT NOT USED
E - SHOULDER HARNESS USED
F - SHOULDER HARNESS NOT USED
G - LAP/SHOULDER HARNESS USED
H - LAP/SHOULDER HARNESS NOT USED
J - PASSIVE RESTRAINT USED
K - PASSIVE RESTRAINT NOT USED

L - AIR BAG DEPLOYED
M - AIR BAG NOT DEPLOYED
N - OTHER
P - NOT REQUIRED

**CHILD RESTRAINT**
~~Q - IN VEHICLE USED~~
R - IN VEHICLE NOT USED
S - IN VEHICLE USE UNKNOWN
T - IN VEHICLE IMPROPER USE
U - NONE IN VEHICLE

**M/C BICYCLE - HELMET**
DRIVER
V - NO
W - YES

PASSENGER
X - NO
Y - YES

## EJECTED FROM VEHICLE

0 - NOT EJECTED
1 - FULLY EJECTED
2 - PARTIALLY EJECTED
3 - UNKNOWN

*ITEMS MARKED BELOW FOLLOWED BY AN ASTERISK (*) SHOULD BE EXPLAINED IN THE NARRATIVE.*

**PRIMARY COLLISION FACTOR — NUMBER (#) OF PARTY AT FAULT**

VC SECTION VIOLATED: 22107 — CITED: ☐ YES X NO
OTHER IMPROPER DRIVING*
OTHER THAN DRIVER*
UNKNOWN*
FELL ASLEEP*

**WEATHER (MARK 1 TO 2 ITEMS)**
CLEAR
CLOUDY
RAINING
SNOWING
FOG / VISIBILITY ___ FT.
OTHER:*
WIND

**LIGHTING**
DAYLIGHT
DUSK - DAWN
DARK - STREET LIGHTS
DARK - NO STREET LIGHTS
E DARK - STREET LIGHTS NOT FUNCTIONING*

**ROADWAY SURFACE**
A DRY
B WET
C SNOWY - ICY
D SLIPPERY (MUDDY, OILY, ETC.)

**ROADWAY CONDITION(S) (MARK 1 TO 2 ITEMS)**
A HOLES, DEEP RUT*
B LOOSE MATERIAL ON ROADWAY*
C OBSTRUCTION ON ROADWAY*
D CONSTRUCTION - REPAIR ZONE
E REDUCED ROADWAY WIDTH
F FLOODED*
G OTHER*:
H NO UNUSUAL CONDITIONS

**TRAFFIC CONTROL DEVICES**
A CONTROLS FUNCTIONING
B CONTROLS NOT FUNCTIONING*
C CONTROLS OBSCURED
X D NO CONTROLS PRESENT / FACTOR*

**TYPE OF COLLISION**
A HEAD - ON
B SIDE SWIPE
C REAR END
D BROADSIDE
E HIT OBJECT
X F OVERTURNED
G VEHICLE / PEDESTRIAN
H OTHER*:

**MOTOR VEHICLE INVOLVED WITH**
X A NON - COLLISION
B PEDESTRIAN
C OTHER MOTOR VEHICLE
D MOTOR VEHICLE ON OTHER ROADWAY
E PARKED MOTOR VEHICLE
F TRAIN
G BICYCLE
H ANIMAL:
I FIXED OBJECT:
J OTHER OBJECT:

**PEDESTRIAN'S ACTIONS**
X A NO PEDESTRIANS INVOLVED
B CROSSING IN CROSSWALK AT INTERSECTION
C CROSSING IN CROSSWALK - NOT AT INTERSECTION
D CROSSING - NOT IN CROSSWALK
E IN ROAD - INCLUDES SHOULDER
F NOT IN ROAD
G APPROACHING / LEAVING SCHOOL BUS

**TYPE OF VEHICLE** (1 2 3)
A PASSENGER CAR / STATION WAGON
B PASSENGER CAR W / TRAILER
C MOTORCYCLE / SCOOTER — X (1)
D PICKUP OR PANEL TRUCK
E PICKUP / PANEL TRUCK W/ TRAILER
F TRUCK OR TRUCK TRACTOR
G TRUCK / TRUCK TRACTOR W/ TRLR.
H SCHOOL BUS
I OTHER BUS
J EMERGENCY VEHICLE
K HIGHWAY CONST. EQUIPMENT
L BICYCLE
M OTHER VEHICLE
N PEDESTRIAN
O MOPED

**OTHER ASSOCIATED FACTORS (MARK 1 TO 2 ITEMS)** (1 2 3)
A VC SECTION VIOLATED — CITED ☐ YES ☐ NO
B VC SECTION VIOLATED — CITED ☐ YES ☐ NO
C VC SECTION VIOLATED — CITED ☐ YES ☐ NO
D
E VISION OBSCUREMENT:
F INATTENTION*: — X (1)
G STOP & GO TRAFFIC
H ENTERING / LEAVING RAMP
I PREVIOUS COLLISION
J UNFAMILIAR WITH ROAD
K DEFECTIVE VEH. EQUIP.: CITED ☐ YES ☐ NO
L UNINVOLVED VEHICLE
M OTHER*:
N NONE APPARENT — X
O RUNAWAY VEHICLE

**MOVEMENT PRECEDING COLLISION** (1 2 3)
A STOPPED
B PROCEEDING STRAIGHT
C RAN OFF ROAD
D MAKING RIGHT TURN
E MAKING LEFT TURN
F MAKING U TURN
G BACKING
H SLOWING / STOPPING
I PASSING OTHER VEHICLE
J CHANGING LANES
K PARKING MANEUVER
L ENTERING TRAFFIC
M OTHER UNSAFE TURNING
N XING INTO OPPOSING LANE
O PARKED
P MERGING
Q TRAVELING WRONG WAY
R OTHER*:

**SOBRIETY - DRUG PHYSICAL (MARK 1 TO 2 ITEMS)** (1 2 3)
A HAD NOT BEEN DRINKING
B HBD - UNDER INFLUENCE
C HBD - NOT UNDER INFLUENCE* — X (1)
D HBD - IMPAIRMENT UNKNOWN*
E UNDER DRUG INFLUENCE*
F IMPAIRMENT - PHYSICAL*
G IMPAIRMENT NOT KNOWN
H NOT APPLICABLE
I SLEEPY / FATIGUED

**SPECIAL INFORMATION**
A HAZARDOUS MATERIAL
CELL PHONE IN USE
CELL PHONE NOT IN USE
X CELL PHONE NONE INVOLVED

SKETCH — FOR SKETCH DIAGRAM, SEE PAGE 4

INDICATE NORTH

MISCELLANEOUS

01133

Ex. 17
625

| TE OF COLLISION (MO. DAY | TIME (2400) | NCIC# | | NUMBER | 01 06 46 |
|---|---|---|---|---|---|
| /16/2001 | 0200 | 25 | | 16197 | |

| TNESS LY | PASSENGER ONLY | AGE | SEX | EXTENT OF INJURY ('X' ONE) | | | | INJURED WAS ('X' ONE) | | | | | PARTY NUMBER | SEAT POS. | SAFETY EQUIP. | EJECTED |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| | | | | FATAL INJURY | SEVERE INJURY | OTHER VISIBLE INJURY | COMPLAINT OF PAIN | DRIVER | PASS. | PED | BICYCLIST | OTHER | | | | |
| | ☐ | 18 | M | ☐ | ☐ | X | ☐ | X | ☐ | ☐ | ☐ | ☐ | 1 | 1 | C | 0 |

ME / D.O.B. / ADDRESS
ANDALL DWIGHT LACKEY  (06/10/1983)  4548 ELDER RD, BRAWLEY, CA 92227
TELEPHONE (760)344-7174

JURED ONLY) TRANSPORTED BY: OLD CROSS AMBULANCE
TAKEN TO: PIONEER'S MEM HOSP, BRAWLEY CA

SCRIBE INJURIES:  MINOR CUTS & BRUISES

☐ VICTIM OF VIOLENT CRIME NOTIFIED

| # | | 16 | M | ☐ | ☐ | X | ☐ | ☐ | X | ☐ | ☐ | ☐ | 1 | 3 | C | 0 |

ME / D.O.B. / ADDRESS
IARK SONICO  (12/31/1984)  110 W. C. ST #A, BRAWLEY, CA 92227
TELEPHONE (760)351-1331

JURED ONLY) TRANSPORTED BY: iOLD CROSS AMBULANCE
TAKEN TO: PIONEER'S MEM HOSP, BRAWLEY CA

ESCRIBE INJURIES:  LACERATION TO R/ HAND AND R/ KNEE

☐ VICTIM OF VIOLENT CRIME NOTIFIED

01134

| PREPARER'S NAME | I.D. NUMBER | MO. DAY YEAR | REVIEWER'S NAME | MO. DAY YEAR |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/16/2001 | | |

Ex. 17
626

# SKETCH DIAGRAM
CHP 555 Page 4(Rev. 8-97) OPI 042

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER | NUMBER |
|---|---|---|---|---|
| 06/16/2001 | 0200 | 9625 | 16197 | 01 06 46 |

ALL MEASUREMENTS ARE APPROXIMATE AND NOT TO SCALE UNLESS STATED (SCALE=        )



HUFF RD.

DIRT SHOULDER

V-1

V-1

OPEN DESERT

DIRT EMBANKMENT

ASPHALT ROAD

DOUBLE YELLOW LINES

OPEN DESERT

WHEELER RD ⟶

27'

12' S/B

12' N/B

01135

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/16/2001 | | |

**Ex. 17**
627



06/16/01      0200      9625            16/97        01  06  46

ALL MEASUREMENTS ARE APPROXIMATE AND NOT TO SCALE UNLESS STATED (SCALE =     1,00   )





**Ex. 17**

| DATE OF INCIDENT | TIME | NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 06/16/01 | 0200 | 9625 | 16197 | 01 06 46 |

## PHYSICAL EVIDENCE LEGEND:

### STATION LINE:

A STATION LINE WAS ESTABLISHED ALONG THE EAST PAVED ROAD EDGE OF HUFF RD AND PROCEEDS IN A SOUTHERLY AND NORTHERLY DIRECTION. STATION 0+00 WAS ESTABLISHED 2.2 MILES NORTH OF THE NORTH EDGE OF WHEELER RD. MEASUREMENTS WERE TAKEN AT APPROXIMATE RIGHT ANGLES TO THE STATION LINE.

### VEHICLE POINT OF REST:

V-1'S L/F WHEEL 22 FT. W. STATION 1+37.
V-1'S L/R WHEEL 24 FT. W. STATION 1+45.

### PHYSICAL EVIDENCE DESCRIPTION:

### ITEM:

A. DIRT TIRE FRICTION MARK.
B. TIRE FRICTION MARK.
C. GOUGE MARK ON ASPHALT.
D. GOUGE MARK ON ASPHALT.
E. GOUGE MARK IN THE SAND.
F. GOUGE MARK IN THE SAND.
G. GOUGE MARK IN THE SAND.

01138

| PREPARER'S NAME | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/19/01 | | |

**Ex. 17**
630

| DATE OF INCIDENT | TIME | NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 06/16/01 | 0200 | 625 | 16197 | 01 06 46 |

## PHYSICAL EVIDENCE LOCATION:

### ITEM:

    A.  BEGIN DIRT TIRE MARK ON STATION 1-34.
         END DIRT TIRE MARK ON STATION 0-45.
    B.  BEGIN TIRE FRICTION MARK ON STATION 0-45.
         END TIRE FRICTION MARK 8 FT. W. STATION 0-22.
    C.  CENTER OF GOUGE MARK 12 FT. W. STATION 0+00.
    D.  CENTER OF GOUGE MARK 19 FT. W. STATION 0+48.
    E.  CENTER OF GOUGE MARK 27 FT. W. STATION 0+75.
    F.  CENTER OF GOUGE MARK 27 FT. W. STATION 0+91.
    G.  CENTER OF GOUGE MARK 29 FT. W. STATION 1+15.

01139

| PREPARER'S NAME | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/19/01 | | |

**Ex. 17**
631

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 06/16/2001 | 0200 | 9625 | 16197 | 01 06 46 |

**FACTS:**

2

3 **NOTIFICATION:**

4 I RECEIVED A CALL FROM DISPATCH OF A COLLISION WITH AN AMBULANCE

5 RESPONDING AT APPROXIMATELY 0210 HRS. I RESPONDED FROM 8TH ST AND ADAMS

6 AVE IN THE CITY OF EL CENTRO, CA AND ARRIVED ON SCENE AT APPROXIMATELY 0300

7 HRS.

8 ALL TIMES, SPEEDS, AND MEASUREMENTS ARE APPROXIMATE. MEASUREMENTS

9 WERE OBTAINED BY ROLLMETER AND PATROL UNIT'S ODOMETER (1277).

10

11 **SCENE:**

12 THIS COLLISION OCCURRED IN THE NORTHBOUND LANE OF HUFF RD, NORTH OF

13 WHEELER RD, IN IMPERIAL COUNTY. HUFF RD IS A DESIGNATED NORTH-SOUTH,

14 COUNTY MAINTAINED HIGHWAY. HUFF RD AT THIS LOCATION IS A TWO LANE, TWO

WAY, ASPHALT CONCRETE PAVED ROAD WITH A LEFT HANDED SWEEPING CURVE.

16 HUFF RD IS RELATIVELY FLAT WITH NO VISUAL OBSCUREMENTS NOTED OR CLAIMED.

17 THERE ARE 12 FOOT WIDE TRAFFIC LANES FOR NORTH AND SOUTHBOUND TRAFFIC.

18 THE WEST AND EAST ROADWAY EDGES ARE BORDERED BY IMPROVED DIRT

19 SHOULDERS. THE NORTHBOUND AND SOUTHBOUND LANES ARE SEPARATED BY

20 PAINTED SOLID DOUBLE YELLOW LINES. THE SPEED LIMIT AT THIS LOCATION IS 55

21 MPH. THIS COLLISION OCCURRED DURING HOURS OF DARKNESS. THE SURROUNDING

22 AREA IS PRIMARILY OPEN DESERT.

23

24

25

26

27

28

*01140*

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/16/2001 | | |

**Ex. 17**
632

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER | NUMBER |
|---|---|---|---|---|
| 06/16/2001 | 0200 | 9625 | 16197 | 01 06 46 |

\RTIES:

2 VEHICLE-1(JEEP) WAS FOUND ON ITS WHEELS, AT ITS POINT OF REST, ON THE WEST

3 DIRT SHOULDER OF HUFF RD, UPON MY ARRIVAL. V-1 SUSTAINED TOTAL ROLLOVER

4 DAMAGE. INSPECTION OF THE SAFETY RESTRAINT SYSTEMS INDICATED NO DEFECTS.

5 NO MECHANICAL DEFECTS OR PRIOR DAMAGE WERE NOTED OR CLAIMED.

6

7 DRIVER-1 (LACKEY) WAS LOCATED AT THE SCENE, IN THE REAR OF THE GOLD CROSS

8 AMBULANCE, BEING TREATED BY GOLD CROSS AMBULANCE PARAMEDICS UPON MY

9 ARRIVAL. D-1 WAS IDENTIFIED BY HIS CALIFORNIA DRIVER LICENSE AS RANDALL

0 DWIGHT LACKEY. D-1 WAS ESTABLISHED AS THE DRIVER OF V-1 BY HIS STATEMENT,

1 PASSENGER'S STATEMENT AND HIS INJURIES.

12

13 **PHYSICAL EVIDENCE:**

14 REFER TO FACTUAL DIAGRAM AND PHYSICAL EVIDENCE LEGEND ON PAGES 5, 6, 7 AND

3.

16

17 **STATEMENTS:**

18 DRIVER-1 (LACKEY) WAS CONTACTED AT THE SCENE AND RELATED THE FOLLOWING

19 INFORMATION.   D-1 AND HIS PASSENGER (SONICO) WERE TRAVELING FROM THE

20 SUPERSTITION DESERT AREA TO BRAWLEY, CA, AT APPROXIMATELY 45-50 MPH. D-1

21 STATED HE RAN OFF THE ROAD. HE TRIED TO STEER THE JEEP BACK ONTO THE ROAD

22 AND OVERCORRECTED. THE NEXT THING HE REMEMBERED THEY WERE ROLLING

23 OVER. THERE WERE NO OTHER VEHICLES AROUND. D-1 STATED HE HAD BEEN

24 DRINKING BUDWEISER EARLIER IN THE EVENING FROM 2330 HRS TO 0100 HRS. D-1

25 STATED HE JUST HAD A LIFT KIT PUT ON THE JEEP AND WAS NOT FAMILIAR WITH THE

26 FEEL OF THE SUSPENSION.

27

28

01141

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/16/2001 | | |

**Ex. 17**

633

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER ID | NUMBER |
|---|---|---|---|---|
| 06/16/2001 | 0200 | 9625 | 16197 | 01 06 46 |

2 **STATEMENTS (CONT.):**

3 PASSENGER -1 (SONICO) WAS CONTACTED AT PIONEER MEMORIAL HOSPITAL (PMH) AT

4 APPROXIMATELY 0630 HOURS, IN BED #1 AND STATED THEY WERE DRIVING DOWN THE

5 ROAD. THEN HE RAN OFF THE ROAD AND WE ROLLED OVER. PASS-1 STATED THERE

6 WASN'T ANYTHING UNUSUAL HAPPENING. PASS-1 STATED HE ALSO HAD BEEN

7 DRINKING.

8

9 **OPINIONS AND CONCLUSIONS:**

10

11 **SUMMARY:**

12 DRIVER-1 (LACKEY) WAS DRIVING VEHICLE-1 (JEEP) NORTHBOUND ON HUFF RD, NORTH

13 OF WHEELER RD, AT APPROXIMATELY 45-50 MPH. D-1 ALLOWED V-1 DRIFT TO THE

14 RIGHT AND RUN OFF THE EAST ROAD EDGE. D-1 JERKED THE STEERING WHEEL OF V-1

   TO THE LEFT AND SWERVED BACK ONTO HUFF RD. AS V-1 ENTERED ONTO HUFF RD, V-

16 1 BEGAN TO ROLL OVER SEVERAL TIMES, IMPACTING WITH THE ASPHALT ROAD. V-1

17 CONTINUED TO ROLL OVER ACROSS HUFF RD AND CAME TO REST ON THE WEST

18 SHOULDER OF SOUTHBOUND HUFF RD. AFTER THE COLLISION, V-1 CAME TO REST

19 FACING IN A SOUTHERLY DIRECTION.

20

21 **INTOXICATION NARRATIVE:**

22 UPON ARRIVAL AT THE COLLISION SCENE, SGT. BERGER # 12790 STATED THE DRIVER

23 HAD BEEN DRINKING AND HAD AN ODOR OF AN ALCOHOLIC BEVERAGE UPON HIS

24 BREATH. I CONTACTED D-1 (LACKEY) IN THE REAR OF THE GOLD CROSS AMBULANCE.

25 UPON CONTACTING D-1, I COULD DETECT A FAINT ODOR OF AN ALCOHOLIC BEVERAGE

26 UPON HIS BREATH. D-1 ADMITTED TO DRINKING SOME BEER EARLIER IN THE EVENING.

27 DUE TO D-1'S INJURIES, I WAS UNABLE TO PERFORM FIELD SOBRIETY TESTS (FST'S).

28

01142

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/16/2001 | | |

**Ex. 17**

634

| DATE OF INCIDENT | TIME | NCIC NUMBER | OFFICER I.D. | NUMBER |
|---|---|---|---|---|
| 06/16/2001 | 0200 | 9625 | 16197 | 01 06 46 |

**"NTOXICATION NARRATIVE (CONT.):**

2  I HAD D-1 BLOW INTO THE PRELIMINARY ALCOHOL SCREENING DEVICE (PAS).

3  RESULTS OF THE PAS DEVICE WERE .035% .040%. I DETERMINED THAT D-1 WAS NOT

4  UNDER THE INFLUENCE OF AN ALCOHOLIC BEVERAGE.

5

6  **AREA OF IMPACT:**

7  THE AREA OF IMPACT WHERE V-1 COLLIDED WITH ASPHALT ROAD WAS FOUND TO BE

8  APPROXIMATELY 12 FEET WEST OF THE EAST ROAD EDGE OF HUFF RD AND 2.2 MILES

9  NORTH OF THE NORTH EDGE OF WHEELER RD.

10  THE AREA OF IMPACT WAS DETERMINED BY THE PHYSICAL EVIDENCE, STATEMENTS,

11  AND THE POINT OF REST OF V-1.

12

13  **CAUSE:**

14  D-1 CAUSED THIS COLLISION BY V-1 IN VIOLATION OF CALIFORNIA VEHICLE CODE

SECTION 22107: UNSAFE TURNING MOVEMENT. D-1 SHOULD HAVE STAYED IN CONTROL

16  OF HIS VEHICLE AND NOT ALLOWED HIS VEHICLE TO DRIFT OFF THE ROAD.

17  THE CAUSE WAS BASED ON THE PHYSICAL EVIDENCE, STATEMENTS, AND POINT OF

18  REST OF V-1.

19

20  **RECOMMENDATIONS:**

21  NO RECOMMENDATIONS.

01143

| PREPARED BY | I.D. NUMBER | DATE | REVIEWER'S NAME | DATE |
|---|---|---|---|---|
| T. RATCLIFF | 16197 | 06/16/2001 | | |

**Ex. 17**

635

```
------------------------------------
          MESSAGE RECALL          ***
          Sequence # 008303       ***
------------------------------------
nsaction Time: Mon Aug 26 09:47:04 2002
------------------------------------
====================================================================================
T0008303.ID
E:08-26-02*TIME:09:47*

; RECORD FOR LAW ENFORCEMENT USE ONLY

'NO:B9866119*B/D:06-10-1983*NAME:LACKEY RANDALL DWIGHT*
;/ADDR: AS OF 08-17-01:4548 ELDER RD BRAWLEY 92227*

ENTIFYING INFORMATION:

%:MALE*HAIR:BLOND*EYES:GRN*HT:6-01*WT:145*

 CARD MLD:08-29-01*EXPIRES:06-10-07*BATES:POL*

C/ISS:09-20-99*EXPIRES:06-10-02*CLASS:C NON-COMMERCIAL*
DORSEMENTS:NONE*
IGINAL DL ISSUE DATE:09-20-99*

.TEST APP:

   PE:ID CARD*ISS/DATE: 08-17-01*OFFICE: BRA*

ICENSE STATUS:
 SUSPENDED OR REVOKED

EPARTMENTAL ACTIONS:

ROOF REQ:V/07-16-02*TERM:07-16-05*

RV LIC SUSPENDED  *EFF:07-16-01*ORDER MAILED:06-16-01*AUTH:13388  ,
33532 ,13380  *
EASON:EXCESSIVE BLOOD ALCOHOL PAS*SERVICE:J/06-16-01*
RITTEN NOTICE SERVED BY OFFICER*

ONVICTIONS:
ONE

AILURES TO APPEAR:
ONE

CCIDENTS:

ATE        LOCATION           VEH LIC  REPORT NO    FR CASE NO

 16-01  IMPERIAL       092601 2KWN995 96250016197  01 04 61049
                        PARTY FOUND MOST AT FAULT

ND
```

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## ADMINISTRATIVE INVESTIGATIONS UNIT
## IA # 2002-018

## SUPPLEMENTAL REPORT BY IMPERIAL COUNTY SHERIFF'S SGT. DELFINO O. MATUS

DETAILS:

On December 11, 2002, AIU Sgt. Delfino O. Matus received a memo from Under Sheriff Chuck Jernigan. Per the memo, Sheriff Harold D. Carter was requesting additional information regarding the Jeep that was alleged to be involved in the vehicle hit and run. Refer to memo for details.

On December 12, 2002, at approximately 1544 hours Sgt. Myron King was interviewed. The interview was tape-recorded. Refer to the transcription of the tape-recorded interview for details of the interview.

The following is a summary of the tape-recorded interview.

Sgt. King stated that the jeep was approximately 80 to 100 yards from Elder Road on the Lackey property, and was not visible, due to darkness. However, with some form of light it was visible. Sgt. King does not recall if he could see the damage from Elder Road, however, as he got closer he observed the front damage, with the headlights of his patrol unit. The damage appeared to be old because of rust on the damaged areas. Also, the Jeep appeared to have been parked there for an extended period of time, because of the dirt built up around the tires.
/////

COPY

Ex. 17

1

01145        637

## ATTACHMENT:

1. Memo to Chief Deputy D. Prince from Under Sheriff C. Jernigan dated December 11, 2002, re: Internal Affairs Investigations follow up.
   /////

## EVIDENCE:

1. 1-audio cassette with the tape-recorded interview of Sgt. Myron King dated December 12, 2002.
   /////

01146   **Ex. 17**
638

# Imperial County Sheriff's Office
## Inter-Office Memo

**To:**       Chief Deputy D. Prince

**From:**     Undersheriff C. Jernigan

**Subject:**  Internal Affairs Investigation follow up

**Date:**     December 11, 2002

**Cc;**       Sgt. Matus

Tuesday, December 10, 2002 Sheriff Carter telephone me from Washington D.C. He is requesting that Sgt. Matus answer the below listed questions dealing with the Internal Affairs Investigation of Deputy Justin Tackett reference I.A. 2002-108.

# 1)   Could Deputy Tackett have seen the vehicle (jeep) from the roadway?

# 2)   Could Deputy Tackett have seen if the vehicle (jeep) was involved in an accident?

When completed please give the information to Sheriff Carter.

Thank you,

Chuck Jernigan
Undersheriff

01147

**Ex. 17**

639

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
### 328 Applestill Road
### El Centro, CA 92243

## IA # 2002-018

Interview with Sgt. Myron King

| | |
|---|---|
| **SGT. MATUS:** | Okay uh today's date is December 12, the year is 2002. Time is approximately 1544 hours. This is an interview with Sergeant Myron King uh this is in regards to IA number # 2002-018. Okay uh this interview is being conducted at the Imperial County Sheriff's Department by Imperial County Sheriff's Sergeant Delfino Matus. Myron uh Sheriff Carter has requested that uh some information regarding the vehicle, the jeep, the suspect vehicle that was involved in the possible hit-and-run, when the hit-and-run to see if it was uh the jeep that was parked in the back yard of the uh Lackey residence. When you responded to the uh Lackey residence on Elder Road, could you see the jeep from the roadway, when you got there? |
| **KING:** | When I first got there, no because it wasn't pointed out me yet, it was at soon as it was pointed out, it was obvious, it was visible from the roadway. |
| **SGT. MATUS:** | Okay when you first saw the jeep, where were you parked at? |
| **KING:** | I was parked out on the street and I walked in beside the house, where the Deputy had the subject detained. |
| **SGT. MATUS:** | Okay, so, so by the street, you're, you're referring to Elder Road? |
| **KING:** | Elder Road. |
| **SGT. MATUS:** | Okay, and when you saw the vehicle or the jeep, where was it parked at? |
| **KING:** | It was uh be straight back down the driveway, uh from Elder Road it would be a straight line view all the way to the very back of the property. |
| **SGT. MATUS:** | Through the driveway? |
| **KING:** | Through the driveway. |

**Ex. 17**

1

01148      640

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Sgt. Myron King

**SGT. MATUS:** Okay was there a, was there a unit or another vehicle in the driveway?

**KING:** Yeah, there was a unit, uh parked beside the house.

**SGT. MATUS:** Okay.

**KING:** It be between Elder Road and the jeep.

**SGT. MATUS:** Okay, so, so when you first saw the vehicle, where were you at, behind the, by the marked patrol car or?

**KING:** When it was pointed out to me, yes I was by the marked patrol car.

**SGT. MATUS:** Okay, the area where uh the Lackey residence, was it was it pretty well lit up, was there a lot of lighting?

**KING:** Uh lighting from the residence? No. Lighting from the patrol car, the head lights where on, the alley lights where on, spot lights where on so the area was pretty well lit up by the patrol car.

**SGT. MATUS:** Okay, could, could you see the damage? To the uh jeep?

**KING:** I don't recall, um, I do, I don't remember specifically seeing the damage from that point.

**SGT. MATUS:** Okay do you know if anybody else may have told you, you know what uh, we saw the damage to the jeep from any location?

**KING:** When I got there, where two Brawley PD officers on scene.

**SGT. MATUS:** Right.

01149    **Ex. 17**
641

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

interview with Sgt. Myron King

**KING:** And they said they had already checked out the jeep, and they said obviously it wasn't the one involved in the accident.

**SGT. MATUS:** And what do you mean by that? Obviously it wasn't the one involved?

**KING:** Well, they told me that uh the damage was old and there was dirt all over the tires and rims parked, obviously parked for quite a while.

**SGT. MATUS:** Okay did you check it out yourself?

**KING:** Yes.

**SGT. MATUS:** Okay how, how close did you get close to it?

**KING:** Oh, I drove around it, I, I later drove around the vehicle and came back out and I guess 10 foot, you know, 10 foot from it, I never got out of my car but I just drove around it made a circle around it.

**SGT. MATUS:** So you drove through the driveway?

**KING:** Yeah, afterwards.

**SGT. MATUS:** After, after?

**KING:** Yeah,

**SGT. MATUS:** After uh, Mr. Lackey had been released?

**KING:** Yeah.

**SGT. MATUS:** You drove through the driveway, you drove around the jeep?

**KING:** Hmm.

3

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Sgt. Myron King

**SGT. MATUS:** How far was the jeep from the house, do you recall more or less?

**KING:**

Uh, I would guess pretty close to 50 yards, it's a pretty big lot, it's like uh an acre, maybe an acre in a half, house, lot area and it was all the way to the back of the property, so a good I would say 50 yards from, guess estimate.

**SGT. MATUS:** Okay and about how far was it from, from Elder Road?

**KING:** I'd say between 80 and 100 yards.

**SGT. MATUS:** Okay. Do you recall ever checking it out from Elder Road?

**KING:** I remember once I got back to Elder Road, uh I mean walked back, walked back there cause my car was parked out there, the jeep would and the headlights or spot light, the jeep, jeep would have been visible but under no lighting, extra lightning it was in the dark so you couldn't see it but if you lit it up with a spot light it would have been visible.

**SGT. MATUS:** Okay do you know if you could see the damage?

**KING:** I don't. I don't recall seeing the damage. I, I just don't recall if I could see it from there or not.

**SGT. MATUS:** From the roadway?

**KING:** From the roadway.

**SGT. MATUS:** But as you got closer to it, you could see the damage?

**KING:** Yes.

**SGT. MATUS:** And to observe the damage, did you use the light uh spot light, flashlight or?

**Ex. 17**

# IMPERIAL C●NTY SHERIFF'S DEPAR●IENT

*Administrative Investigations Unit*

328 Applestill Road

El Centro, CA 92243

## IA # 2002-018

Interview with Sgt. Myron King

**KING:** I think I just used the headlights of the car and when I drove up to it, it was, it was fairly obvious, I drove at it kind a round it back out.

**SGT. MATUS:** And how would you describe the damage to the?

**KING:** Well it had front, it had front end damage and there was uh pieces of paint from uh duh damage that where popped off but uh the body under the paint was popped off was all rusted which appeared the damage had been done for a while, it wasn't recent cause if it was recent it should have been shiny and then,

**SGT. MATUS:** When popped off, what do you mean?

**KING:** Well when you have, when you have a crash sometimes it just, the paint falls off.

**SGT. MATUS:** It starts to peel?

**KING:** Yes it starts to peel and all the bare medal under the paint was rusty.

**SGT. MATUS:** Okay. Was it dusty or dirty?

**KING:** Oh yeah it was dirty and then it was, it was in a dirt lot and it's kind a loose dirt and the wind blows and what it is, is one of those where it was obviously sitting for a while cause the dirt had blown up around the tire rims and it banked up and it even gotten as high as the rim it self, I don't remember if the tires where inflated or deflated but I remember seeing the dirt up on the rims.

**SGT. MATUS:** Do you know if you could see that from the roadway the dirt built up around the rims?

**KING:** Uh, not from that distance, I don't think that would be visible at all.

5

01152

**Ex. 17**

644

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Sgt. Myron King

**SGT. MATUS:**   Okay, do you uh do you think once somebody like you got close to it, you could obviously tell this thing hadn't been moved for a while?

**KING:**   Yeah I could, I could obviously tell it hadn't been moved for a while and that's the same thing Brawley PD, I guess they told me they checked it out the jeep I don't know if they drove back there or walked back there but they told me it was obviously it wasn't the jeep and they pointed out the same points so I just said the rusty body and the dirt piled up around the rims.

**SGT. MATUS:**   Okay did you see any tire tracks around the jeep?

**KING:**   Yeah there was one set of tire tracks around there but I don't know who's they were but they were very recent.

**SGT. MATUS:**   Do you know if they where made by the jeep?

**KING:**   Uh, no, the jeep hadn't been moved for quiet a while.

**SGT. MATUS:**   Okay.   Myron I don't think I have any further questions uh, do you have any thing else to add maybe something I didn't ask you, you need to clear up?

**KING:**   No I think that's it.

**SGT. MATUS:**   Okay we're going to end the interview time is approximately 1551 hours, thank you.

End of interview.

Typed by:
Galdy Gutierrez
Office Assistant III
Reviewed by Sgt. Delfino O. Matus 12/13/02

**Ex. 17**

'6                                   01153        645

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## ADMINISTRATIVE INVESTIGATIONS UNIT
## IA # 2002-018

### SUPPLEMENTAL REPORT BY IMPERIAL COUNTY SHERIFF'S SGT. DELFINO O. MATUS

On December 27, 2002 the Imperial County Sheriff's Department Administrative Investigations Unit received via inter-office mail, two Imperial County Sheriff's Department complaint forms. Both complaints were against Deputy Justin Tackett. The incident was reported to have occurred on December 28, 2001 at 4548 Elder Road, Brawley, California.

With the complaints were an Attachment "A" from Randall Lee Lackey. A signed three page statement from Shelly A. Rouhotas, and a signed four page statement from Andrea L. Lackey. Refer to the attachment and statements for details.

The first complaint form was from Tony L. Rouhotas, Sr., the complaint alleged that Deputy Tackett entered and searched the 4548 Elder Road address without permission or a warrant. Chief Deputy Sharon Housouer received the complaint on December 26, 2002 at approximately 1105 hours. Refer to attached complaint.

The second complaint form was from Randall Lee Lackey. Chief Deputy Housouer received the complaint on December 26, 2002 at approximately 1105 hours. Refer to attached complaint.

On December 27, and December 30, 2002, at the request of Sheriff Harold D. Carter, copies of the complaints and statements were faxed to Attorney Robert Aaronson for his review.

On Thursday, January 9, 2003, Sgt. Matus interviewed Tony and Shelly Rouhotas at their residence. The interviews were done at the request of Attorney Aaronson. Both interviews were tape-recorded. Refer to transcription for details.

After the interview on January 9, 2003, Mr. Rouhotas provided Sgt. Matus with copies of the following documents:

**Ex. 17**
646

COPY

01154

1

1. 1- U. S. Postal Service Certified Mail Receipt #
   7002203000468370181, addressed to the Imperial County
   Sheriff's Office, ATTN: Sheriff Carter dated 11-7-02,
   received by Linda Soldi.
2. Imperial County Sheriff's Department Complaint Form
   dated 11/4/02. Accused are Chief Deputy David Prince,
   and Rosie McGraw.
3. Letter to the Imperial County Sheriff's Department,
   ATTN: Records Division dated June 19, 2002, re: CR #
   0112-0996.
4. Imperial County Sheriff's Department Application for
   Crime/Incident Report dated June 19, 2002, re: CR #
   0112-0996.
5. Letter to the Imperial County Sheriff's Department,
   ATTN: Records Division Supervisor dated July 14, 2002,
   re: CR # 0112-0996.
6. Imperial County Sheriff's Department Application for
   Crime/Incident Report dated July 15, 2002, re: CR #
   0112-0996.

In addition, Mr. Rouhotas stated that he would provide
Sgt. Matus with photographs of the Jeep and Mr. Lackey
that were taken on December 28, 2001. After viewing Mr.
Lackey's photo, no apparent injuries were noted on his
back..

On January 16, 2003, Sgt. Matus received e-mail from Mrs.
Shelly Rouhotas, stating that the information (photos and
statements) requested by Sgt. Matus would be provided in a
couple of days.

On January 21, 2003, at approximately 1410 hours, Sgt.
Matus obtained from Mr. Rouhotas a computer diskette that
contained the following information:

1. Four photographs.
   a. Photo of the backside of Mr. Lackey.
   b. Photo of Lackey residence from Elder Road toward
      the Westside of the property.
   c. Photo of Jeep from the driver's side.
   d. Frontal view photo of Jeep.
2. Dissemination of information page from Tony L Rouhotas.
3. Statement of Andrea Louise Lackey.
4. Statement of Randall Lee Lackey.
5. Statement of Shelly Ann Rouhotas.
/////

**Ex. 17**

2                    **01155**           647

# ATTACHMENTS

1. Fax cover page from the Administrative Investigations Unit to Attorney Robert Aaronson.

2. Imperial County Sheriff's Department Complaint Form submitted by Randall Lee Lackey and received by Chief Deputy Sharon Housouer on December 26, 2002 at 1105 hours.

3. Imperial County Sheriff's Department Complaint Form submitted by Tony L Rouhotas, Sr., and received by Chief Deputy Sharon Housouer on December 26, 2002 at 1105 hours.

4. Four- (4) page statement by Andrea L. Lackey, dated December 25, 2002.

5. Two (2) -page complaints by Randall Lee Lackey against Deputy Justin Tackett. Attachment "A".

6. Three- (3) page statement by Shelly A. Rouhotas, dated December 25, 2002.

7. 1- U. S. Postal Service Certified Mail Receipt # 70022030000468370181, addressed to the Imperial County Sheriff's Office, ATTN: Sheriff Carter dated 11-7-02, received by Linda Soldi.

8. Imperial County Sheriff's Department Complaint Form dated 11/4/02. Accused are Chief Deputy David Prince, and Rosie McGraw.

9. Letter to the Imperial County Sheriff's Department, ATTN: Records Division dated June 19, 2002, re: CR # 0112-0996.

10. Imperial County Sheriff's Department Application for Crime/Incident Report dated June 19, 2002, re: CR # 0112-0996.

11. Letter to the Imperial County Sheriff's Department, ATTN: Records Division Supervisor dated July 14, 2002, re: CR # 0112-0996.

01156   **Ex. 17**
648

12.  Imperial County Sheriff's Department Application for
     Crime/Incident Report dated July 15, 2002, re: CR #
     0112-0996.

13.  Four photographs.
     a. Photo of the backside of Mr. Lackey.
     b. Photo of Lackey residence from Elder Road toward
        the Westside of the property.
     c. Photo of Jeep from the driver's side.
     d. Frontal view photo of Jeep.

14.  Dissemination of information statement from Tony L
     Rouhotas.

15.  Statement of Andrea Louise Lackey.

16.  Statement of Randall Lee Lackey.

17.  Statement of Shelly Ann Rouhotas.

18.  Transcribed statement of Tony Rouhotas dated January
     9, 2003.

19.  Transcribed statement of Shelly Rouhotas dated
     January 9, 2003.
/////

01157   **Ex. 17**

649

**Harold Carter**
**Sheriff-Coroner-Marshal**



**Imperial County Sheriff's Department**
**Administrative Investigations Unit**

P.O. Box 1040/328 Applestill Road
El Centro, CA 92244
OFFICE: (760) 339-6391
FAX: (760) 339-0170

# Fax

| | | | |
|---|---|---|---|
| **To:** Robert H. Aaronson | **From:** Sgt. D. Matus | | |
| **Fax:** 650-565-8838 | **Date:** ~~12/27/02~~ 12/30/02 | | |
| **Phone:** 650-565-8800 | **Pages:** (Including Cover Page) 12 | | |
| **Re:** Depty J. Tackett | **CC:** | | |

☐ Urgent  ☑ For Review  ☑ Please Comment  ☑ Please Reply  ☐ Please Recycle

•Comments:

01158  **Ex. 17**

650



IMPERIAL COUNTY SHERIFF'S DEPARTMENT
*HAROLD D. CARTER*
SHERIFF-CORONER-MARSHAL

## COMPLAINT FORM

**Employee, Policy or Procedure, Accused of:** Unlawful entry, Unlawful Search, Assault, Battery, and

Unlawful Arrest (Civil Rights Violation)

**Description of employee:** Sheriff's Deputy Justin Tackett, ID #871

**Date and time of incident:** December 28, 2001 at about 1:30 AM

**Details of complaint: (Include nature of complaint, names and addresses of witnesses, and doctor, hospital or attorney contacted regarding this complaint. It is very important that as many factual details as possible be included, so that your complaint may be thoroughly investigated. Use an additional sheet of paper, if necessary.)** Refer to supplemental sheet attached.

Witnesses: 1) Shelly Rouhotas - 4593 Brawley, CA 92227 (760) 344-3684
2) Randal Lackey and 3) Andrea Lackey 4548 Elder Rd., Brawley, CA 92227 (760) 344-7174
4) Officers from Brawley Police Dept.
5) Deputies from the Imperial County Sheriff's Dept.

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICY CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS . YOU HAVE THE RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MIGHT FIND AFTER THE INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATED TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE (148.6 California Penal Code).**

ADMINISTRATIVE INVESTIGATIONS UNIT
RECEIVED

**I HAVE READ AND UNDERSTOOD THE ABOVE STATEMENT.**

DEC 27 2002

RANDALL LEE LACKEY                **Complainant**      BY _____

**Signature:** Randall Lee Lackey  **Address:** 4548 Elder Rd Brawley, CA 92227   FROM: Inter Office Mail
**Name: (Print):** Randall Lee Lackey      **Phone:** (760) 344-7174
**Where & When you can be contacted:** (760) 344-7174
If I am not in when the investigator phones\ leave a message and a phone number so I may return the call.
**Employee receiving complaint:** Chief Deputy Hornsveld
**Date & time received complaint:** 12/26/02  11:05

01159②

P.O. BOX 1040, EL CENTRO, CA 92244-1040  PHONE: (760) 339-6311
AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER

**Ex. 17**
651



IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### *HAROLD D. CARTER*
SHERIFF-CORONER-MARSHAL

## COMPLAINT FORM

**Employee, Policy or Procedure, Accused of:** _Unlawful entry, Unlawful search (Civil Rights Violation)_

**Description of employee:** _Sheriff's Deputy Justin Tackett, ID #871_

**Date and time of incident:** _December 28, 2001 at about 1:30 AM_

**Details of complaint: (Include nature of complaint, names and addresses of witnesses, and doctor, hospital or attorney contacted regarding this complaint. It is very important that as many factual details as possible be included, so that your complaint may be thoroughly investigated. Use an additional sheet of paper, if necessary.)** _On 12/28/2002 at about 1:30 AM Deputy Justin Tackett entered onto my property located at_
_4548 Elder Rd. in rural Brawley. Deputy Justin Tackett, had neither permission or warrant to be on my property._
_Deputy Justin Tackett searched my property without permission or warrant in violation of my Fourth Admendment_
_Rights._
_Witnesses: 1) Shelly Rouhotas - 4593 Brawley, CA 92227 (760) 344-3684_
_2) Randal Lackey and 3) Andrea Lackey 4548 Elder Rd., Brawley, CA 92227 (760) 344-7174_
_4) Officers from Brawley Police Dept. 5) Deputies from the the Imperial County Sheriff's Dept._

**YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICY CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS . YOU HAVE THE RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MIGHT FIND AFTER THE INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATED TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.**

**IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE (148.6 California Penal Code).**

ADMINISTRATIVE UNIT
RECEIVED

**I HAVE READ AND UNDERSTOOD THE ABOVE STATEMENT.**

DEC 27 2002

_TONY L. ROUHOTAS, SR._          **Complainant**    BY: _Nadine Galaz_
                                                     FROM: _Info office numbe_

**Signature:** _Tony Rouhotas_   **Address:** _PO Box 1593 / 4593 Elder Rd, Brawley, CA 92227_
**Name: (Print):** _Tony L. Rouhotas Sr._   **Phone:** _(760) 344-3684_
**Where & When you can be contacted:** _(760) 344-3684_
_If I am not in when the investigator phones\ leave a message and a phone number so I may return the call._
**Employee receiving complaint:** _Chief Deputy Housour_
**Date & time received complaint:** _12/26/02  11:05_

01160

P.O. BOX 1040, EL CENTRO, CA 92244-1040  PHONE: (760) 339-6311
AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER

# Ex. 17
652

1

2    STATEMENT OF ANDREA L. LACKEY

3

4

5

6        On 12/28/2001 at about 2:00 AM I was in my home at 4548 Elder Road,

7    Brawley, CA. My Husband, Randall (Randy) Lee Lackey, sons Randall Dwight

8    Lackey 18 years of age and Russell Waylon Lackey 13 years of age, as well as

     myself were all asleep.

9        The loud barking of my dogs woke me up. A bright light was shining

10   through my living room window. My husband Randy was also awakened. He got out

11   of bed, walked to the living room and looked out the living room window. He

12   told me there is a Sheriff's car in the driveway next to the house. He came

13   into the bedroom and put his pants on. He then went out the front door.

         I got up and walked to the door. I leaned out asked what was going on.

14   I did not go outside because I was in my pajamas. While looking out the door

15   I saw Randy handing a card that, I believe was his driver's license, to the

16   deputy sheriff. I asked the deputy what is going on? He didn't respond. It

17   was very cold and I told Randy, who was only wearing a pair of pants, to come

18   in the house and put on his jacket. I heard the deputy tell Randy that he

19   isn't going anywhere. The deputy told me to get the jacket. I then told Randy

20   that I would get his jacket. After getting a T-shirt and jacket I stepped out

21   the front door to give them to him. I saw the deputy handcuffing Randy. The

22   deputy was holding Randy's left hand and telling him to put his (other) hand

23   behind him. I heard Randy asking the deputy, what is going on, that all he

24   wanted to do is get his jacket I told Randy to just let him (the deputy) cuff

25   him and do whatever he says, that we'll get it worked out. The deputy looked

     at me and told me to step back or that I would be arrested. I stepped back

**01161**   

EMPLOYEE, POLICY OR PROCEDURE ACCUSED OF: - 1

# Ex. 17
653

1   about five steps. The deputy handcuffed Randy and put him in the back seat of

2   the sheriff's patrol car. I told Randy that I was going to call Tony (Tony

3   Rouhotas, Sr. who is my brother-in-law). I went in the house and called Tony

4   and told him what was going on. Tony said he'd try and find out what was

5   going on.

6   I went back out side. The deputy told me that Randy is being arrested

7   for resisting. He told me that when Randy went to get his jacket, he told

8   him not to and when a peace officer tells you what to do you have do it or

9   you get arrested. He told me that Randy was being persistent in wanting to

10  get his jacket after I said I would get it. I asked the deputy a number of

11  times what is going on. He kept telling me he doesn't know that we have to

12  wait for Brawley PD. I told him, come on you don't come out to someone's

    house and not know what you're walking into.

13  While waiting for the Brawley PD I heard Myron's (Sheriff's Sgt. Myron

14  King) voice come over the sheriff's radio. I've known Myron, a friend of our

    family for years. I asked the deputy if Myron is coming out. He told me yes

.5  that he is on his way. I told him that I was going in the house to get

16  dressed (Because I was still in my pajamas.)

17  After getting dressed I went back outside. I said to the deputy,

18  Brawley PD isn't here yet? The deputy asked me how long had we been asleep. I

19  told him we had been home since about 10:00 PM. He asked where we had been. I

20  told him we had been at my sister's (Debbie Shehan) house. While the deputy

21  was asking me questions, I heard a thumping noise coming from the direction

22  of the sheriff's car. The deputy and I looked towards the car. I felt Randy

    was trying to get our attention. We walked to the car and the deputy opened

23  the door. Randy asked the deputy to turn the heater down or at least leave

24  the door open because it was so hot (from the car's heater) that he felt as

25  though he was suffocating. The deputy told Randy that if he tears the car up

1  he would be charged with destruction of police property. Randy told him that

2  he wasn't tearing up his car that he just wanted to get his attention so he

3  could turn the heater off and leave the door open because it is so hot he

4  felt he was suffocating. The deputy shut the door and told me that it wasn't

5  hot in the car because he had just been sitting in it himself.

6  The deputy asked me how Randy got the long scratch down his back. I

7  asked the deputy what scratch? He doesn't have a scratch on his back. He

8  asked me if we had kids and their age. I told him we have two boys, 18 and

9  13. He asked if they are home. I told him they are. He asked me if the kids

10  told me what was going on. I told him no, the kids don't know what is going

11  on. Neither Randall nor Russell knows. He said no, your kids. I told him that

12  Randall is my son, and that it is my husband Randy that you have in the car.

I again told him that Randy is my husband and Randall is my son.

13  Three Brawley PD cars arrived. As two of the PD officers were walking

14  past the sheriff's car that Randy was sitting in, my sister, Shelly Rouhotas

15  asked them what is going on. One of them told her a black jeep was involved

16  in an accident, and one of your son's friends said that the jeep in the

17  accident looked like Randall Lackey's jeep. I told the PD officer that our

18  jeep was wrecked on June 16th. He told me that he still has to look at the

19  jeep. He and another PD officer walked to the back of our property to look at

20  the jeep. I walked towards the PD officers as they were returning from

21  looking at the jeep; they had been at the jeep for just a couple of minutes.

22  I said well, at which time one of the PD officers said that isn't the jeep. I

23  looked towards the sheriff's car where Randy was sitting and my sister Shelly

24  standing next to it. I walked to the car and told Shelly what happened. I saw

25  Sgt. King and another deputy arrive. I was waiting to see what was going to

happen next, because the PD officers and other sheriff deputies were talking

amongst themselves.

One of the deputy sheriffs walked up to where we were standing, and

**01163**

**Ex. 17**

EMPLOYEE, POLICY OR PROCEDURE ACCUSED OF: - 3        6        655

1  said to Shelly, I know you. Shelly asked him if he could turn the heater off

2  that she had asked a number of officers to turn it off and was told they

3  couldn't do it. He said sure and opened the door and turned off the heater.

4  He then opened the rear door where Randy was sitting.

5       Sgt. King came up to where Randy was sitting and told Randy what was

6  going to happen is that he was going to be cited and released, and that he

7  would have a court date. The other deputy (I was later told is Deputy

8  Lowenthal) asked me to get a jacket and shoes for Randy. I went in the house

9  and got Randy a jacket and shoes. I gave Randy the shoes and jacket. The

handcuffs had been taken off his wrists.

10  The deputy that arrested Randy walked up to him with his ticket book

11  and told him to sign here; this is your court date. Randy signed the ticket,

12  got his copy and we walked in the house. (I was later told the name of the

13  deputy that arrested Randy is Deputy J. Tackett.)

                                        Dated this 25th day of December, 2002

                                        Andrea L. Lackey
                                        4548 ELDER ROAD
                                        BRAWLEY, CA 92227

ADMINISTRATIVE INVESTIGATIONS UNIT
RECEIVED

DEC 27 2002

BY: _____
FROM: Inter Office Mail

01164

Ex. 17

⑦

656

1

## ATTACHMENT "A"

2  RANDALL LEE LACKEY

3  4548 ELDER ROAD

4  BRAWLEY, CA 92227

5

6  COMPLAINT AGAINST DEPUTY SHERIFF JUSTIN TACKETT', ID #871

7

8      On December 28, 2001 at about 2:00 AM a light shining in my window

9  awakened me. I looked out the window and saw an Imperial County sheriff car

10 in my driveway. I put on a pair of pants and went outside to see what was

11 going on.

12     Deputy Justin Tackett asked me for my driver's license, which I gave

13 him.

14     It was cold outside, so my wife told me to come in and put on a

15 jacket and shoes. I started towards the front door and deputy Justin

16 Tackett grabbed my arm. He told me I wasn't going anywhere. He put

17 handcuffs on me and put me in the back seat of the sheriff car where he

18 kept me for about two hours.

19     Even though other law enforcement officers arrived and told Deputy

20 Justin Tackett he arrested the wrong person, he did not release me until he

21 told me I had to appear in court on the date and time specified on a

22 citation he gave me.

23     Deputy Justin Tackett did not tell me why he was at my residence or

24 why I was arrested.

25     Deputy Justin Tackett entered onto my residential property without

01165

⑧  **Ex. 17**

657

1

1  authorization or warrant. Deputy Justin Tackett searched my residential

2  property without authorization or warrant. Deputy Justin Tackett assaulted

3  me, and unlawfully arrested me, violations of my Civil Rights.

4        Imperial County Sheriff's Report number CR 0112-0886, which I am

5  unable to include because the Sheriff's Department, after a number of

6  request, refuses to give me a copy even though it has been requested under

7  applicable law.

8     Witnesses:

9     1) Andrea Lackey, 4548 Elder Rd., Brawley, CA 92227 (760) 344-7174

10    2) Shelly Rouhotas, PO Box 1593 / 4593 Elder Rd., Brawley, CA 92227.

11        (760) 344-3684

12    3) Tony L. Rouhotas, Sr., PO Box 1593 / 4593 Elder Rd., Brawley, CA

13        92227 (760) 344-3684

14    4) Officers of the Brawley Police Dept.

15    5) Deputies of the Imperial County Sheriff's Dept.

16

17

18

19

20

21                        ADMINISTRATIVE INVESTIGATIONS UNIT
                                    RECEIVED

22

23                              DEC 27 2002

24                        BY: _____
                          FROM: Intu'U office maid

25

                                        01166

                                          (9) 

                                                    **Ex. 17**
                        2                              658

1 | STATEMENT OF SHELLY A. ROUHOTAS

2

3 |    On 12/28/2002 at about 1:30 AM I was asleep in my home located at 4593

4 | elder Road, Brawley, CA, as was my husband, Tony L. Rouhotas, Sr. The

5 | telephone ringing awakened us. Tony answered the phone and after a brief

6 | conversation he hung up the telephone. He told me Randy, who is my brother-

7 | in-law, is being arrested. I asked what he meant? He told me Andy, who is my

8 | sister; called and said the sheriffs were at their house arresting Randy. I

9 | know that Randy is not one to get into trouble.

10 |    Tony became upset because he was not able to go over to see what

11 | assistance he may be able to provide. Randy and Andy's home is just about 175

12 | feet from our home. (Tony was with the sheriff's department for about twenty-

13 | eight years. He was recently forced into retired do to a life threatening in-

14 | service related injury.) He expressed helplessness. He is very ill and

15 | requires twenty-four hour care. He is not ambulatory and had just been

16 | released from the hospital after a three-month stay.

17 |    Tony told me to go over and see what's going on. I took my cell phone

18 | so we could contact each other. Tony told me to take a flashlight and shine

19 | it ahead of me so that I wouldn't startle the deputies as I approached them

20 | in the dim light.

21 |    I walked into the driveway of Randy's residence where I saw a sheriff's

22 | unit parked in the driveway. I walked up to the sheriff's unit where the

23 | deputy and my sister were standing by. I shined my flashlight in the back

24 | seat of the unit where Randy was sitting, his hands behind his back. He was

25 | visibly shaken and showed anxiety. His voiced muffled he asked to have the

**Ex. 17**

01167
(10)

659

EMPLOYEE, POLICY OR PROCEDURE ACCUSED OF: - 1

1  heater turned off, that it was hot. I turned to the deputy and said, you're

2  Tackett aren't you? He said he is. Tackett did not react to Randy's plea to

3  turn the heater off.

4      Two Brawley PD officers walked towards us from the unlit back lot of

5  the property. I asked what was going on, as we've yet to be told. I was asked

6  by one of the PD officers who I am. I told him, Shelly Rouhotas. He then told

7  me that there had been an accident in town involving a black jeep. I told him

8  that the jeep in the back lot was wrecked several months ago and has been

9  there ever since. While looking at Tackett and me he said it's obvious it's

10 not the jeep, that jeep has been there a while, it's all rusted, and these

11 are the wrong people. I shined the flashlight on Randy in the back seat of

12 the unit and said, then why has he been arrested? He shrugged his shoulders

13 as he looked at Tackett. I looked at Tackett who was expressionless.

14     I asked the PD officer if he could turn off the heater because Randy is

15 burning up in there. He politely said he could not that it isn't his unit. I

16 walked around the unit to where my sister was standing. She told me Randy is

17 really burning up in there. I told her I know I'm trying to get someone to

18 turn the heater off.

19     I saw Sgt. Myron King arrive at the entrance to the driveway. He

20 started talking with the Brawley PD officers. I walked up to them and asked

21 Sgt. King what are we going to do. He told me that he is trying to find out

22 and politely asked me to go back by the house. I went back to the unit,

23 shined my light on Randy and saw he was having a panic attack.

24     Another deputy arrived, who I recognized as Deputy Lowenthal. As deputy

25 Lowenthal approached me he said, I know you. I asked him if he would turn the

01168
Ex.17

660

1  heater off in the unit that my brother-in-law is burning up. Deputy Lowenthal

2  turned the heater off and opened the back door so Randy could cool down.

3  Randy with a look of relief thanked him. After a while Deputy Lowenthal asked

4  Randy if he is doing better. He then asked Andy to get Randy a jacket and a

5  pair of slippers, which she did.

6      Sgt. King came to where Randy was sitting in the unit. He told Randy

7  that Tackett was going to issue him a citation after which he would be

8  released. He then went back to where Tackett was standing.

9      Tackett walked up to where Randy was sitting. I heard him tell Randy,

10  you are to appear in court on this date at this time, sign here. Randy signed

11  the citation, was given a copy and we went into the house.

12

13                        Dated this 25th day of December, 2002

14

15                        SHELLY A. ROUHOTAS
                          POST OFFICE BOX 1593
16                        4593 ELDER ROAD
                          BRAWLEY, CA 92227
17

18

19

20      ADMINISTRATIVE INVESTIGATIONS UNIT
                RECEIVED
21

22          DEC 27 2002

23      BY: _____
        FROM: _____
24

25

                                            (12)

                                            **Ex. 17**
                                            01169 661

| SENDER: COMPLETE THIS SECTION | COMPLETE THIS SECTION ON DELIVERY |
|---|---|

- Complete items 1, 2, and 3. Also complete item 4 if Restricted Delivery is desired.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

A. Signature ☐ Agent ☐ Addressee

B. Received by ( Printed Name ) | C. Date of Delivery

1. Article Addressed to:

Imperial Co Sheriff Office
Attn: Sheriff Center
PO Box 1040
El Centro, Ca. 92244-1040

D. Is delivery address different from item 1? ☐ Yes
If YES, enter delivery address below: ☐ No

3. Service Type
☐ Certified Mail   ☐ Express Mail
☐ Registered   ☐ Return Receipt for Merchandise
☐ Insured Mail   ☐ C.O.D.

4. Restricted Delivery? (Extra Fee) ☐ Yes

7002 2030 0004 6837 0181

PS Form 3811, August 2001    Domestic Return Receipt    102595-02-M-1540

---

**U.S. Postal Service**
**CERTIFIED MAIL RECEIPT**
(Domestic Mail Only; No Insurance Coverage Provided)

For delivery information visit our website at www.usps.com

OFFICIAL USE

| Postage | $ |
| Certified Fee | |
| Return Receipt Fee (Endorsement Required) | |
| Restricted Delivery Fee (Endorsement Required) | |
| Total Postage & Fees | $ |

Sent To Imperial Co Sheriff Office
Street, Apt No.; or PO Box No. Attn Sheriff Center
City, State, ZIP+4

PS Form 3800, June 2002    See Reverse for Instructions

RECEIVED
JAN 0 9 2003
BY

**Ex. 17**
01170   662

*HAROLD D. CARTER*

*SHERIFF-CORONER-MARSHAL*

## COMPLAINT FORM



RECEIVED

JAN 0 9 2003

BY: _____

Employee, Policy or Procedure, Accused of:   Refusal to provide copy of a report as required under the California

Public Records Act.

Description of employee:   David Prince, Chief Deputy and Rosie McGraw, Records Supervisor

Date and time of incident:   Ongoing

Details of complaint: (Include nature of complaint, names and addresses of witnesses, and doctor, hospital or attorney contacted regarding this complaint. It is very important that as many factual details as possible be included, so that your complaint may be thoroughly investigated. Use an additional sheet of paper, if necessary.)

I have made a number of request for a copy of CR 0112-0996, which I have been refused a copy of

See copies of requests enclosed.

YOU HAVE THE RIGHT TO MAKE A COMPLAINT AGAINST A POLICE OFFICER FOR ANY IMPROPER POLICY CONDUCT. CALIFORNIA LAW REQUIRES THIS AGENCY TO HAVE A PROCEDURE TO INVESTIGATE CITIZENS' COMPLAINTS . YOU HAVE THE RIGHT TO A WRITTEN DESCRIPTION OF THIS PROCEDURE. THIS AGENCY MIGHT FIND AFTER THE INVESTIGATION THAT THERE IS NOT ENOUGH EVIDENCE TO WARRANT ACTION ON YOUR COMPLAINT; EVEN IF THAT IS THE CASE, YOU HAVE THE RIGHT TO MAKE THE COMPLAINT AND HAVE IT INVESTIGATED IF YOU BELIEVE AN OFFICER BEHAVED IMPROPERLY. CITIZEN COMPLAINTS AND ANY REPORTS OR FINDINGS RELATED TO COMPLAINTS MUST BE RETAINED BY THIS AGENCY FOR AT LEAST FIVE YEARS.

IT IS AGAINST THE LAW TO MAKE A COMPLAINT THAT YOU KNOW TO BE FALSE. IF YOU MAKE A COMPLAINT AGAINST AN OFFICER KNOWING THAT IT IS FALSE, YOU CAN BE PROSECUTED ON A MISDEMEANOR CHARGE (148.6 California Penal Code)

I HAVE READ AND UNDERSTOOD THE ABOVE STATEMENT.

Tony L. Rouhotas, Sr.                                      Complainant

Signature: _____   Address:   PO Box 1593, Brawley, CA 92227

Name: (Print):   Tony L. Rouhotas, Sr                  Phone: (760) 344-3684

Where & When you can be contacted:   (760) 344-3684 During regular business hours. Leave message if I am not in.

Employee receiving complaint: _____

Date & time received complaint: _____

(Complaint to Harold D. Carter, Sheriff-Coroner-Marshal, via US mail on 11/04/2002)

P.O. BOX 1040, EL CENTRO, CA 92244-1040  PHONE (760) 339-6311
AN EQUAL OPPORTUNITY/AFFIRMATIVE ACTION EMPLOYER

## Ex. 17

01171    663

BRAWLEY, CA 92227

TELEPHONE: (760) 344-3684          FAX: (760) 344-4644          e-mail: tlrouhotas@AOL.com

Imperial County Sheriff Dept.                                        June 19, 2002
328 Applestill Road
Post Office Box 1040
El Centro, CA 92244-1040
Attn. Records Division

RE: CR # 0112-0996

Sheriff's Records Division,

Enclosed is my Application for Crime/Incident Report, CR #0112-0996, which I am
requesting a copy of under The Freedom of Information Act.

Contact me by calling (760) 344-3684 or (858) 909-0885 when the copy is ready so that I
may arrange to have the copy picked up and pay the appropriate copy fee.

Sincerely,

Tony L. Rouhotas, Sr.


Enclosure (1)


TLR/sar
cc: Harold D. Carter, Sheriff-Coroner


RECEIVED
JAN 0 9 2003
BY:


01172

**Ex. 17**

664

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## HAROLD D. CARTER
### SHERIFF-CORONER-MARSHAL

## APPLICATION FOR CRIME/INCIDENT REPORT

CR# ___0112-0996___

| | | |
|---|---|---|
| Tony L. Roubotas, Sr.   P.O. Box 1593   Brawley, CA 92227 | | |
| Applicant: | Address: | City/State/Zip |
| | 12/28/2001 | 012/28/2001 |
| Phone Home: (760)   344-3684 | Date of Incident: | Date Reported |
| Work (858)   909-0885 | | |
| 4548 Elder Rd., Brawley, CA 92227 | | |
| Location of Incident: | Type of Incident: | Reporting Party: |

### PARTY OF INTEREST:

****INSURANCE COMPANIES ONLY***

____Person involved (specify)

____Other party of interest (specify)

_X_ Property Owner   Name of Insurance Agent

____Authorized individual*

____Attorney* / name: _____   Name of insured

*Signed authorization required of individual represented   Policy or Claim Number

Insurance Company name

### CERTIFICATION:

I declare, under the penalty of Perjury that ____ I am, ____ I Represent, ____ I am an Attorney, representing the party of interest identified in the report recorded hereon.

Signature of Applicant: _____   Date: 06/19/2002

Requesting a copy of report CR 0112-0996 under The Freedom of Information Ac

-1-

01173

RECEIVED
JAN 0 9 2003
BY:

**Ex. 17**
665

Imperial County Sheriff's Dept.
Post Office Box 1040
El Centro, California 92227
Attn: Record's Division Supervisor

July 14, 2002

Sheriff's Record Division,

Enclosed is my formal request for a copy of report CR 0112-0996, which I am requesting a copy of under the California Public Records Act.

Please contact me by calling (760) 344-3684, so I can make arrangement to have the copy picked up and pay the appropriate copy fee.

Sincerely,

Tony L. Rouhotas, Sr.

TLR/sar

cc: Harold D. Carter, Sheriff-Coroner



RECEIVED

JAN 0 9 2003

BY:

01174

TONY L. ROUHOTAS. SR. - POST OFFICE BOX 1595 - BRAWLEY. CALIFORNIA 92227
PHONE: (760) 344-3684 OR (858) 909-8825 - FAX: (760) 344-4644 - E-MAIL: TLROUHOTAS@AOL.COM

**Ex. 17**

666

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *HAROLD D. CARTER*
### SHERIFF-CORONER-MARSHAL

## APPLICATION FOR CRIME/INCIDENT REPORT

CR# __0112-0996__

| | | |
|---|---|---|
| Tony L. Rouhotas,Sr. | P.O. Box 1593 | Brawley, Ca. 92227 |
| Applicant: | Address: | City/State/Zip |

| | | |
|---|---|---|
| | 12/28/2001 | 12/28/2001 |
| Phone Home: (760)344-3684 | Date of Incident: | Date Reported |
| Work (858)909-0885 | | |
| 4548 Elder Rd, Brawley, Ca. 92227 | | |
| Location of Incident: | Type of Incident: | Reporting Party: |

## PARTY OF INTEREST:

\*\*\*\**INSURANCE COMPANIES ONLY*\*\*\*

_____ Person involved (specify)
_____ Other party of interest (specify)        Name of Insurance Agent
_x_ Property Owner
_____ Authorized individual*
_____ Attorney* / name: _____        Name of Insured

*Signed authorization required of individual represented        Policy or Claim Number

Insurance Company name

## CERTIFICATION:

I declare, under the penalty of Perjury that ___ I am, ___ I Represent, ___ I am an Attorney, representing the party of interest identified in the report recorded hereon.
Signature of Applicant: _____        Date 7/15/2001

Requesting copy of report CR 0112-0996 under The California Public Records Act.

-1-

RECEIVED
JAN 0 9 2003
BY: ___

01175
**Ex. 17**
667

From:   TLROUHOTAS@aol.com
To:     DELTAN@BRAWLEYONLINE.COM
Date:   Thu, January 16, 2003 11:23 pm
Subject: INFORMATION

Dear Delfino:

Tony has not fared well this week from his treatments. He feels that he'll be
up to getting the information you requested within the next couple of days.

Sincerely,
Shelly

01176

**Ex. 17**

668



01177

**Ex. 17**

1/21/2003

669



01178

**Ex. 17**

1/21/2003

670



01179

**Ex. 17**

1/21/2003



01180

**Ex. 17**

1/21/2003

672

*IMPORTANT / CONFIDENTIAL:* The information contained on this disk is intended only for Sgt. Delfino Matus of the Imperial County Sheriff's Department as part of his investigation into the matter concerning ICSO CR# 0112-0996. This disk contains information from Tony L. Rouhotas, Sr., which may be privileged, confidential and exempt from disclosure under applicable law. If the reader of this disk is not the intended recipient, you are hereby notified that any dissemination or copy of this communication is strictly prohibited.



01181

**Ex. 17**

673

## STATEMENT OF ANDREA LOUISE LACKEY

On 12/28/2001 at about 2:00 AM I was in my home at 4548 Elder Road, Brawley, CA. My Husband, Randall (Randy) Lee Lackey, sons Randall Dwight Lackey 18 years of age and Russell Waylon Lackey 13 years of age, as well as myself were all asleep.

The loud barking of my dogs woke me up. I saw bright lights shining through my living room window. My husband Randy was also awakened. He got out of bed, walked to the living room and looked out the living room window. He told me there is a Sheriff's car in the driveway next to the house. He came into the bedroom and put his pants on. He then went out the front door.

I got up and stuck my head out the front door and asked what was going on. I did not go outside because I was in my pajamas. While looking out the door I saw Randy handing a card to the deputy sheriff that I believed was his driver's license. I asked the deputy what is going on? He didn't respond. It was very cold and I told Randy, who was only wearing a pair of pants, to come in the house and put his jacket on. I heard the deputy tell Randy to the effect, you're not going anywhere. The deputy told me to bring the jacket out. I then told Randy that I would get his jacket. After getting a T-shirt and jacket I stepped out the front door to give them to him. I saw the deputy handcuffing Randy. The deputy was holding Randy's left hand and telling him to put his (other) hand behind him. I heard Randy asking the deputy, what is going on, that all he wanted to do is get his jacket.

I told Randy to just let him (the deputy) cuff him and do whatever he says, that we'll get it worked out. The deputy looked at me and told me to step back or that I would be arrested. I stepped back about five steps. The deputy handcuffed Randy and put him in the back seat of the sheriff's patrol car. I told Randy that I was going to call Tony (Tony Rouhotas, Sr. who is my brother-in-law). I went in the house and called Tony and told him what was going on. Tony said he'd try and find out.

I went back out side. The deputy told me that Randy is being arrested for resisting. He told me to the affect that when Randy went to get his jacket, he told him not to and when a peace officer tells you what to do you have do it or you get arrested. He told me that Randy was being persistent in wanting to get his jacket after I said I would get it. I asked the deputy a number of times what is going on. He kept telling me he doesn't know that we have to wait for Brawley PD. I told him, come on you don't come out to someone's house and not know what you're walking into.



01182

**Ex. 17**

674

While waiting for the Brawley PD I heard Myron's (Sheriff's Sgt. Myron King) voice come over the sheriff's radio. I've known Myron, a friend of our family for years. I asked the deputy if Myron is coming out. He told me yes that he is on his way. I told him that I was going in the house to get dressed (Because I was still in my pajamas.)

After getting dressed I went back outside. I said to the deputy, Brawley PD isn't here yet. The deputy asked me how long had we been asleep. I told him we had been home since about 10:00 PM. He asked where we had been. I told him we had been at my sister's (Debbie Shehan) house. While the deputy was asking me questions, I heard a thumping noise coming from the direction of the sheriff's car. The deputy and I looked towards the car. I felt Randy was trying to get our attention. We walked to the car and the deputy opened the door. Randy asked the deputy to turn the heater down or at least leave the door open because it was so hot (from the car's heater) that he felt as though he was suffocating. The deputy told Randy to the affect that if he tears the car up he would be charged with destruction of police property. Randy told him that he wasn't tearing up his car that he just wanted to get his attention so he could turn the heater off and leave the door open because it is so hot he felt he was suffocating. The deputy shut the door and told me that it wasn't hot in the car because he had just been sitting in it himself.

The deputy asked me how Randy got the long scratch down his back. I asked the deputy what scratch, that he doesn't have a scratch on his back. He asked me if we had kids and their age. I told him we have two boys, 18 and 13. He asked if they are home. I told him they are. He asked me if the kids told me what was going on. I told him no, the kids don't know what is going on (When I had gone in the house, Randall my son had asked me what was happening.) that Randall doesn't know what is happening either. He said no, your kids. I told him that Randall is my son, and that it is my husband Randy that you have in the car. I told him that Randy is my husband and Randall is my son.

Three Brawley PD cars arrived. As two of the PD officers were walking past the sheriff's car that Randy was sitting in, I asked them what is going on. One of them told me to the affect that a black jeep was involved in an accident, and one of your son's friends said that the jeep in the accident looked like Randall Lackey's jeep. I told the PD officer that the jeep was wrecked on June 16th. He told me that he still has to look at the jeep. He and another PD officer walked to the back of our property to look at the jeep. I walked towards the PD officers as they were returning from looking at the jeep, they had had been at the jeep for just a couple of minutes. I said well, at which time one of the PD officers told me that isn't the jeep.

I looked towards the sheriff's car where Randy was sitting and saw my sister (Shelly Rouhotas) standing next to the sheriff's car. I walked to the car and was telling Shelly what had happened. I then saw Sgt. King and another deputy

RECEIVED

JAN 2 7 2003

01183  **Ex. 17**

675

arrive. I was waiting to see what was going to happen next, because the PD officers and other sheriff deputies were talking amongst themselves.

One of the deputy sheriffs walked up to where we were standing, and said to Shelly, I know you. Shelly asked him if he could turn the heater off that she had asked a number of officers to turn it off and was told they couldn't do it. He said sure and opened the door and turned off the heater. He then opened the rear door where Randy was sitting. Shelly told Randy, and me don't say anything.

Sgt. King came up to where Randy was sitting and told Randy what was going to happen. He told him that he was going to be cited and released, and that he would have a court date. The other deputy (I was later told is Deputy Lowenthal) asked me to get a jacket and shoes for Randy. I went in the house and got Randy a jacket and shoes. I went back to the where Randy was sitting in the car, the handcuffs were off his wrists and I gave him the jacket and shoes.

The deputy that arrested Randy walked up to him with his ticket book and told him to sign here, this is your court date. Randy signed the ticket, got his copy and we walked in the house. (I was later told the name of the deputy that arrested Randy is Deputy J. Tackett.)



RECEIVED
JAN 2 1 2003
BY

01184

**Ex. 17**

676

## STATEMENT OF RANDALL LEE LACKEY

December 28, 2001

RE:
Imperial County Sheriff's: Incident / Crime Report No. 0112-0996
Imperial County Sheriff's: Citation No. A020047
Date of incident: 12/28/2001 – Time of incident: Approximately 2:30 AM

On 12/28/2001 at about 2:00 AM I was in my home at 4548 Elder Road, Brawley, CA. My wife Andrea (Andy) Louise Lackey, sons Randall Dwight Lackey 18 years of age and Russell Waylon Lackey 13 years of age, as well as myself were all asleep.

The loud barking of my dogs woke me up. I saw bright lights shining through my living room window. My wife Andy was also awakened. I got out of bed, walked to the living room and looked out the living room window. I told Andy that there is a Sheriff's car in the driveway. I went back into the bedroom and put on a pair of pants and went out the front door to see what was going on.

I walked towards the sheriff's patrol car. I met the deputy as he approached the front of my house. I asked what's going on? He asked if I had my driver's license on me. I said, yes sir I do and handed it to him. I again asked what was going on. He told me he has to wait for Brawley PD. My wife Andy opened the door, looking out she asked what is going on? At the same time, the deputy and I told Andy we have to wait for Brawley PD.

Andy told me to come in and get my jacket (I was only wearing a pair of pants). I told the deputy I am going to get my jacket. I turned and walked towards the house. The deputy said you're not going anywhere. I told him, I'm just going to get my jacket. Andy said she'd get my jacket. Andy went in the house and I walked toward the house to get my jacket when she brought it out. The deputy stepped in front of me and told me to stay here. I said I'm going to get my jacket and started to walk around him. The deputy grabbed my left arm. I asked what is going on, I just want to get my jacket. I stepped towards my porch, the deputy reached for my other hand. I asked several times, what is going on? He wouldn't answer.

Andy stepped outside with my jacket. She asked the deputy what is going on. I kept telling him I wanted my jacket, and asking what is going on. Andy told me to just calm down and let him put the handcuffs on. As he was handcuffing me I kept asking what is going on. He then told me to walk towards car. The deputy was holding my arm and we walked towards the patrol car. He opened the right

RECEIVED

JAN ? ? 200?

rear door and told me to sit down. After I got in the car he closed the door. He talked briefly to my wife and then walked to the road in front of the house.

Andy walked back out and the deputy walked back towards the car. It was very hot in the car, the heater was blowing loudly. With my knee I made a thumping noise against the door to get his attention so I could ask him to turn down the heat. Andy looked towards me, as did the deputy. He walked to the car and opened the door. He told me to the affect that if I tear up the car I'd be charged with destruction of county property. I told him that I'm not tearing up his car, I was just trying to get his attention so he could turn the heater down, that it is hot inside here. The deputy just closed the door. He turned to Andy and started talking to her.

After some time Brawley PD arrived. Two of the officers walked towards my jeep that is parked in the back of my property. Another PD officer and deputies arrived. My sister-in-law (Shelly Rouhotas) walked up to where I was sitting in the car. She shined a flashlight in the car. I told her it was hot in the car, I'm having trouble breathing. She was saying something but I could not hear her.

The deputy that arrested me opened the driver's door and told me that they are looking for a jeep that was in an accident. I told him that the jeep that is parked back there has been wrecked for a year. He then told me I am under arrest and will be going to jail and immediately shut the door. He and Sgt. King talked for some time.

I heard Shelly tell a deputy (Whom I now know to be Deputy Lowenthal) if he could open the door or turn the heater off. He opened the front door and turned the heater off. I asked him if he could open this door (the one I was sitting next to) and get some air in here. He closed the front door and opened the door where I was sitting. I thanked him for opening the door, telling him that it is hot in here.

Sgt. King leaned in the car and asked me what happened. I told him that the deputy wouldn't let me get my jacket. He told me that the deputy was going to give me a ticket and release me. Deputy Lowenthal asked me to step out of the car so he could get the handcuffs off, and I heard him ask Andy to go get my jacket and slippers, which she did. My legs were shaking badly. Deputy Lowenthal told me I could sit in the car if I wanted to. I sat back in the car with the door open.

The deputy that arrested me walked up to where I was sitting. He said I need to sign the ticket. I got out of the car. He told me to the effect that I need to sign the ticket and this is the court date. After signing the ticket I was given a copy. I then walked into the house with Andy and Shelly.



RECEIVED

JAN 2 1 2003

BY

01186

**Ex. 17**

678

## STATEMENT OF SHELLY ANN ROUHOTAS

December 28, 2001

RE:
Imperial County Sheriff's: Incident / Crime Report No. 0112-0996
Imperial County Sheriff's: Citation No. A020047
Date of Incident: 12/28/2001 – Time of Incident: Approximately 2:30 AM

On 12/28/2001 at about 2:15 AM I was asleep in my home at 4593 Elder Road, Brawley, CA., as was my husband Tony Lee Rouhotas, Sr.

The telephone rang and woke me up. The phone ringing also awakened Tony. He answered the phone and after a brief conversation he hung up the phone. He told me that Randy, who is my brother-in-law, is being arrested. I asked what he meant. He told me that Andy, who is my sister, just called and said the sheriffs are at their house and they are arresting Randy and won't tell her or Randy what is going on. Randy is not one to get into trouble.

Tony was very upset because he could not go over to Randy and Andy's to see what was going on and to provide them whatever assistance he could. (Tony spent about twenty-nine years with the sheriff department. He was recently forced into retirement because of a job-related injury.) He expressed a sense of helplessness. Tony is very ill and requires 24-hour care. He also recently lost the ability to walk and was recently released from the hospital after nearly a three-month stay. I had mixed emotions about leaving Tony because of his condition. He was extremely frustrated and expressed mixed emotions when I told him I would go over and see what was going on. I told him I would be okay and that I will take my C-Phone in case he needed to call me, and that I would call him as soon as I found out what was happening.

He told me to take a flashlight and turn it on and to shine it in a forward direction, so that when I walked towards the deputies they would see the light and not be startled by someone approaching in the dark.

I left my house and walked to Andy and Randy's house, which is just about a hundred and fifty feet north of ours. I had the flashlight turned on and shining in a forward direction. I walked into the driveway to Randy's house and saw a sheriff's unit parked in the driveway next to the front of the house, with its alley light shining towards the house. I walked up to the sheriff's unit where a sheriff's deputy and a Brawley PD officer were standing. I shined the flashlight in the right rear passenger window and saw Randy sitting in the car, his hands behind him. He was visibly disturbed and I sensed a degree of anxiety by his expression. His voice muffled, I saw him tell me it's hot in here, tell them to turn the heater off. I



RECEIVED
JAN 9 3 2003

**Ex. 17**
01187     679

looked to the deputy and asked, are you Tackett? He said yes. He did not give a reaction to what Randy was saying.

I looked towards the back of the property and saw two Brawley PD officers walking towards us from where Randy's wrecked jeep is parked. When they got close to us, I asked what is going on? With Deputy Tackett standing about three feet from me, one the officers asked, who are you? I said Shelly Rouhotas. He told me there had been an accident in town that involved a black jeep, and it was reported that the jeep looked like Randall Lackey's. I told the officer that the jeep has been wrecked since June. Glancing at Tackett and me, he said it's obvious that jeep has been there for a while, it's all rusted. While looking at Tackett he said it's not the jeep we're looking for and we have the wrong people. I said then why, shining my flashlight towards the sheriff's unit, is he being detained? He shrugged his shoulders and said he doesn't know anything about that. I looked at Deputy Tackett and he just looked at me expressionless.

I asked the officer standing next to Deputy Tackett if he would turn the heater off, that he (Randy) is saying it is hot in there. The officer said he could not because it isn't his car. I then realized he is a Brawley Police Officer. I went to the passenger side of the car where my sister Andy was standing. She told me Randy is really complaining that it's hot in there. I told her I know I'm trying to get someone to turn it off.

I saw Sgt. King entering the driveway. I told my sister that I was going to talk to him to see what was going on and for her to just stay there. I walked out to the roadway where three Brawley PD units and Sgt. Kings unit was parked. I approached Sgt. King who was conversing with Tackett and a Brawley PD officer. I stood within a couple of feet of them and asked Sgt. King, what are we going to do? He said to the affect that's what we're discussing now. The PD officer politely asked me to leave. I told them that Randy is really complaining about it being hot in the unit and we need to get something done about it. I then went back to the unit where Randy was sitting.

When I went back to the unit, Andy was still standing by the rear door, next to where Randy was sitting. I shined my light in the window and saw Randy's face, which reflected he was having a panic attack. He was loudly saying, it's hot in here, I can't breath. I told him I know I'm trying to get someone over here to turn the heater off.

Another sheriff's unit arrived as Sgt. King and Deputy Tackett were standing at the driver's door of the unit Randy was sitting in. The deputy who just arrived (Whom I know to be Deputy Lowenthal) walked into the driveway and towards us. He looked at me and said, I know you. I said yes you do, and asked if he could please turn the heater off because Randy is really complaining about the heat. He said sure. He opened the front passenger door and turned the heater off. He then said I'll even open the door a little bit. He opened the door enough to

RECEIVED

JAN 5 2 200?

allow Randy to cool down, but not to get too cold. Randy with a look of relief said thanks, it's so hot I was having trouble breathing. Deputy Lowenthal asked Randy if he is doing better with the heater off and the door open. Sgt. King walked over and asked Randy what happened as he leaned into the unit. Sgt. King then walked back to where Deputy Tackett was standing next to the driver's door of the unit. After some time Sgt. King came back to where Randy was sitting in the unit and told him that Deputy Tackett was going to cite and release him. Sgt. King then went back to where Deputy Tackett was still standing.

While Deputy Lowenthal was helping Randy out of the unit, he asked Andy to get Randy a jacket and slippers, which she did. The handcuffs were taken off Randy and he put his shoes and jacket on. Deputy Tackett walked to where Randy was standing next to the unit. He handed Randy's driver's license back to him and told him to sign the ticket. Randy signed the ticket, I told him and Andy, don't say anything, let's just go in the house. We went in the house and the deputies left.



**Ex. 17**

681

# EVIDENCE LIST

1. 1-audio cassette tape of the interview of Tony L. Rouhotas dated January 9, 2003.

2. 1-audio cassette tape of the interview of Shelly Rouhotas dated January 9, 2003.

3. 1-computer diskette containing the following information:
   a. Four photographs.
   b. Dissemination of information statement from Tony L. Rouhotas.
   c. Statement of Andrea Louise Lackey.
   d. Statement of Randall Lee Lackey.
   e. Statement of Shelly Ann Rouhotas.

/////

01190

**Ex. 17**

682

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

### IA # 2002-018

Interview with Tony Rouhotas                01/09/03

| | |
|---|---|
| **SGT. MATUS:** | Okay uh today's date is uh January ninth the year is 2003. Time is approximately uh 1535 hours. This is an interview with uh Tony Rouhotas, Sr. The interview is being conducted at his residence, located uh 4593 Elder Road in Brawley.  Um Mr. Rouhotas home telephone number is 344-3684, area code 760.  Okay uh this is in regards to IA number 2002-018, uh regarding an incident that occurred back in December uh the 28th, 2001, at approximately 0130 hours in the morning.  Uh this is an event where an individual identified as Randall Lackey was arrested and later released by Officer uh Justin Tackett, uh Deputy Tackett was investigating at that time a uh a suspected hit-and-run vehicle. This was done at the uh request of the uh, the investigation was done at the request of Brawley Police Department. Okay Tony um, how are you related to Randall Lackey? |
| **ROUHOTAS:** | Um, the father, Randall Lackey is my brother- in- law, the other Randall Lackey is my nephew. |
| **SGT. MATUS:** | Okay and what address do they live at? |
| **ROUHOTAS:** | They live at 4548 Elder Road. |
| **SGT. MATUS:** | Okay. |
| **ROUHOTAS:** | Rural Brawley. |
| **SGT. MATUS:** | Okay and who does he live there with? |
| **ROUHOTAS:** | Uh Randall Lackey, the father, Andrea Lackey, my sister-in-law, uh Randall Lackey, Jr. and their youngest, uh the youngest son, uh Russell Lackey. |
| **SGT. MATUS:** | Okay at the time of this particular incident on the 28th of December of 2001, where all of those individuals you just named, living there at that residence? |
| **ROUHOTAS:** | Yes, they were. |

01191

1

**Ex. 17**

683

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018

Interview with Tony Rouhotas                 01/09/03

**SGT. MATUS:**   Okay.  Who is the owner of that particular property? Where the Lackey's live?

**ROUHOTAS:**   I own the property.

**SGT. MATUS:**   You own the property?

**ROUHOTAS:**   Yes.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   My wife and I.

**SGT. MATUS:**   Okay and, and do the Lackey's rent from you or do you uh provide residence to them free of a charge or?

**ROUHOTAS:**   They, they rent from us.

**SGT. MATUS:**   Okay and how long have they been living there?

**ROUHOTAS:**   I'm guessing, somewhere between 8 to 10 years.

**SGT. MATUS:**   Okay.  In the early morning of that particular incident, where you here when that occurred?

**ROUHOTAS:**   I was at my residence at 4593 Elder.

**SGT. MATUS:**   Okay here, where we're at now?

**ROUHOTAS:**   Yes.

**SGT. MATUS:**   Okay.  Can you tell me how you learned about this? About the incident?

**ROUHOTAS:**   My sister-in-law, Andrea had called us and I answered the phone, I just been released from the hospital a few days before and uh and she said that the Sheriff's are in the driveway and they arrested Randy.

**SGT. MATUS:**   Okay.

01192                 **Ex. 17**

2                                        684

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

**ROUHOTAS:**   And I said, "For what?" and she says, "I don't know, they wont tell me" and I said, "What do you mean they won't tell you? And she said, "I've asked them, what's going on?" and they said "We don't know" so I told her, I says, "Well let me see what I can found out?" and I had lost the ability to walk, so I told my wife, I says, "You need to go over there and see what's going on?" cause they arrested Randy and she said, "What for?" and I says, "They wont tell her" so I said, "Take the cell phone so we keep in touch" and I said, "Take my flashlight" and I said, "Turn it on so when you walk over there you don't surprise anybody." You know walking up in the dark, so she got up and she went over there, and she called me back on the cell phone and she said, "Tackett arrested Randy but he wont tell us why he arrested him for?" he said, "He didn't know"

**SGT. MATUS:**   Okay when your wife walked over there, was there any other officer present besides Tackett at the time?

**ROUHOTAS:**   I don't believe so.

**SGT. MATUS:**   Okay so he was there alone with uh?

**ROUHOTAS:**   With Randy.

**SGT. MATUS:**   With, with Randy?

**ROUHOTAS:**   Right.

**SGT. MATUS:**   Okay. None of the other backup units had arrived or uh?

**ROUHOTAS:**   No to my knowledge no.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   Randy is, the father, Randall, that was arrested is known as Randy, his son is known as Randall.

01193

**Ex. 17**

685

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

| | |
|---|---|
| **SGT. MATUS:** | Okay. So your wife proceeded to that location, did she go through Elder Road or do you know how she went? |
| **ROUHOTAS:** | No, it's the only way to go over there as she walked over as she went through the walk way gate here and she walked over to the property. |
| **SGT. MATUS:** | How far is the property from here? |
| **ROUHOTAS:** | Uh, 150 feet maybe. |
| **SGT. MATUS:** | Okay so it's approximately 150 north of your residence? |
| **ROUHOTAS:** | Right. |
| **SGT. MATUS:** | Okay after you spoke with your wife, after she got there, when she called you back uh did you have any other conversation with her? During that particular time, regarding the incident? |
| **ROUHOTAS:** | Yes I did, uh in fact after all the law enforcement left, uh that morning I had each one of them come over and I typed up their statement individually, separately. As to what happened over there so it wouldn't be, |
| **SGT. MATUS:** | So you're talking? |
| **ROUHOTAS:** | So it would be something fresh. |
| **SGT. MATUS:** | So you're talking about uh Randy, Andrea? |
| **ROUHOTAS:** | And Shelly. |
| **SGT. MATUS:** | And Shelly? Anybody else? |
| **ROUHOTAS:** | Right. No. |

01194

4

# Ex. 17
686

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

**SGT. MATUS:**  Okay do you know if there was uh any videos or pictures taken of the incident that night?  Do you know if any exist?

**ROUHOTAS:**  I took pictures of the location of the jeep and evidence that, that jeep had not been moved for a long time. Uh tire tracks that went around it, where someone that night drove around it, uh footprints where the officer's walked around it and uh there was a statement made by Tackett to my sister-in-law, and this is what she told me,

**SGT. MATUS:**  Right.

**ROUHOTAS:**  But you want to know about pictures so I'll explain the reasons for the pictures. Is he said, "How did he get that scratch on his back, then" and she said, "There is no scratch on his back, it was a mark from the sheet, he had been sleeping", so I photographed his arms and his chest and his back area to show that there where no marks as Tackett indicated.

**SGT. MATUS:**  Okay do you have those photographs?

**ROUHOTAS:**  Yeah.

**SGT. MATUS:**  Let me ask you this, are you willing to provide the Sheriff's Department with a copy of those photographs?

**ROUHOTAS:**  I don't have a problem with it.

**SGT. MATUS:**  Okay.

**ROUHOTAS:**  I mean it, it shows that, that thing hadn't been moved that it been there for some time.

**SGT. MATUS:**  And also the photographs of the, of the injury?

**ROUHOTAS:**  There is no injury.

01195

5

**Ex. 17**

687

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

**SGT. MATUS:**      Okay on uh?

**ROUHOTAS:**      The allege injury by Tackett but there was no injury, it was simply, he'd been sleeping and his you know and you get little crease marks on your skin from sleeping and that was all there was.

**SGT. MATUS:**      Okay.

**ROUHOTAS:**      And those photographs where taken in the morning hours of the incident.

**SGT. MATUS:**      Okay.

**ROUHOTAS:**      The day light hours.

**SGT. MATUS:**      Okay of the 28th?

**ROUHOTAS:**      Of the 28th.

**SGT. MATUS:**      Hmm. You took those photographs yourself?

**ROUHOTAS:**      I took the photographs of Randy and Andrea, uh my sister-in-law took the photographs of the jeep, the location because I was unable to go over there.

**SGT. MATUS:**      Okay. Do you know if she took photographs of the jeep from the roadway?

**ROUHOTAS:**      Yes.

**SGT. MATUS:**      Okay and like you mentioned, the tire tracks and the foot tracks around it?

**ROUHOTAS:**      Right and the condition of the jeep, I told her basically what photographs, what angles to take, and she went over there.

**SGT. MATUS:**      You instructed her what to do?

01196

6

**Ex. 17**

688

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                           01/09/03

**ROUHOTAS:**     Right.

**SGT. MATUS:**     Okay, so when you spoke with your uh with Randy and your sister-in-law, did they uh did Randy tell you what happened?

**ROUHOTAS:**     Yeah. What, what happened and I'll tell you what they gave me that went on paper is Randy was awaken by a bright light shining through his living room window and he got up and he went over and he looked out the window and saw the Sheriff's unit there with the light shining in the window, well we've had a couple of pursuits, out here from Border Patrol where there's been accident's.

**SGT. MATUS:**     Right.

**ROUHOTAS:**     And Randy's has been very instrumental in helping them because he knows the area and where in San Diego a lot for medical, so we are not here and he comes over ad opens up to make sure nobody's hiding in the area or what not and it's Border Patrol. Randy is slow, he can't read or write, he's hard working honest individual not been in trouble uh maybe a couple of minor traffic violations,

**SGT. MATUS:**     Right.

**ROUHOTAS:**     And the good ol' boy he is, he went into the bedroom and he told Andrea, he says, "The Sheriff's in the driveway I'll go see what, what they need" and he puts his pants on and he went outside, to help them, you know what can I do, Tackett approaches him and asked him "Do you have any ID?" and he says, "Yeah" he says, "Are you Randall Lackey?" and he says, "Yeah" and he reaches into his pocket and he gives him the drivers license, uh Andy is in her pajamas and she's leaning out the door and she says, "Randy get in here and put some shoes on and a jacket, it's cold out there" So he turns in to get a jacket and Tackett

7

01197

**Ex. 17**
689

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

grabbed him by the arm and said, "You are not going anywhere" and he goes, "What, what did I do?" he says, "You're not going anywhere" and he told Andy, he says, "Go get him a jacket and some shoes".

**SGT. MATUS:**   Tackett did?

**ROUHOTAS:**   Tackett did.

**SGT. MATUS:**   Hmm.

**ROUHOTAS:**   So Andy goes back into the house, Randy all of a sudden, Tackett puts a handcuff on him and Randy raises his arm up and turns and he goes, you know to keep he's arm away from him and he goes "What are you doing?" and he says, "Put your hand down and quit resisting" well about that time, Andy comes back out and she's sees this commotion and she said, "Randy just let him do whatever he's going to do" so he puts his hand down, Tackett cuffs him and takes him over to the Patrol car in the back seat, so Andy goes and asked Tackett, she goes, "What's going on?" and he goes, "I don't know?" she goes, "What do you mean you don't know?" he says, "We have to wait for Brawley PD" she goes, "You don't come to someone's house at 1:30, or what ever time it was, about one thirty in the morning and not knowing what you're coming out there for and why, why did you arrest my husband?" "Well when you resist or impede an officer in his investigation, you get arrested" and she goes, "For what?" and he goes, "We have to wait for the Brawley PD" so shortly after that's when Shelly got there and Shelly when she walked up there of course she recognized him and she goes, "You're Tackett aren't you?" and he goes, "Yes I am" and she had asked what was going on and no one knows, well the other units are getting there and um Randy is in the back seat of that car, he's scared to death, he doesn't even know what he did, you know he didn't do anything.

**Ex. 17**

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018
Interview with Tony Rouhotas                01/09/03

**SGT. MATUS:** Right.

**ROUHOTAS:** He's been arrested and he's thumping his leg against the door to get their attention and they, Tackett come over and he opens the door and he goes, "If you destroy County property, I'm going to charge you with it" and he goes, 'Sir I'm not trying to destroy your property, it's hot, can you turn the heater down, I'm burning up" Tackett says, "I was just in there it's not hot" and slams the door. Well my wife and Andy are trying to get someone to turn the heater down, he's sweating in there, he's already got a lot of anxiety, he's scared to death, he don't know what's happened and um Brawley PD, two officer's come walking up from the back property and my wife asks, "Will someone please tells us what is going on?" and one of the officer's says, "Who are you?" and she goes, "I'M Shelly Rouhotas" and he goes, "Oh" and he says to the effect that they had an accident in town that was a hit-and-run, and uh Shelly said that jeep has been back there since June, that thing has been wrecked and he goes that's obvious, he says it's all rusted up and it's been back for some time and he looked towards Tackett and he says that's not the jeep and these are the wrong people.

**SGT. MATUS:** Do you know what Tackett said? Or?

**ROUHOTAS:** To my knowledge he didn't respond, about that time, uh, Myron King got there and they were in a hot discussion with loud voices, from what I am told.

**SGT. MATUS:** Him and Tackett?

**ROUHOTAS:** Hmm, yes.

**SGT. MATUS:** And who told you this?

**ROUHOTAS:** My wife, Shelly, cause she heard them. Shelly went out there to ask Myron to get some help, to get the

9

**Ex. 17**

01199

691

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018

Interview with Tony Rouhotas                01/09/03

heater turned down for Randy and at that time, she
was asked to please you know step back because they
were taking care of there business there, so Shelly did
and then Lowenthal, he came up and he comes
walking up to the patrol car and he looks at Shelly and
he goes, "Oh I know you" and she goes, "Yes you do
can you please help us, my brother-in-law is burning
up back there" the, the heater is full blast, "Oh no
problem" he got in there and he turned the heater
down and at one point he opened the, the back door so
he can get some fresh air and calm down a little bit
cool down and had my sister-in-law go get a uh jacket
and some shoes for him and ended up taking the
handcuffs off of him and letting him just sit there on
the seat with the door opened up, calm down and he
gets composure.

**SGT. MATUS:**       Right.

**ROUHOTAS:**        Which everybody was thankful.

**SGT. MATUS:**       So your brother-in-law was subsequently released? Or
cited?

**ROUHOTAS:**        Tackett, for what I understand, Tackett came over
with a citation after the heated discussion with Myron
and he says, "This is your court date, sign here" and
he did exactly that, he signed his name and he got a
copy and my wife and my sister-in-law and Randy
went into the house.

**SGT. MATUS:**       Okay.

**ROUHOTAS:**        He was never told he was arrested, it was never
explained to him what happened, to this day he has
trouble comprehending what happened.

**SGT. MATUS:**       Okay, do you know if anyone, anyone of the Lackey's
or including yourself or your wife, gave the Sheriff's
Department to enter the property?

**Ex. 17**

01200      692

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                01/09/03

| | |
|---|---|
| **ROUHOTAS:** | No one gave anybody permission to enter. |
| **SGT. MATUS:** | Okay. At no time that particular night? |
| **ROUHOTAS:** | At no time, that particular night. |
| **SGT. MATUS:** | Okay. |
| **ROUHOTAS:** | And to my knowledge at no time at any other particular time, unless it was like a specific officer that came out and we said oh yeah come out over here or something like that but, |
| **SGT. MATUS:** | Unless somebody was visiting or something? |
| **ROUHOTAS:** | Right. |
| **SGT. MATUS:** | Do you know Off, Officer Tackett? |
| **ROUHOTAS:** | I know of him. |
| **SGT. MATUS:** | But you don't know him personally? |
| **ROUHOTAS:** | No, my wife knows him personally. |
| **SGT. MATUS:** | Okay. |
| **ROUHOTAS:** | And my sons because their about that age. |
| **SGT. MATUS:** | Okay. |
| **ROUHOTAS:** | I mean, I'm, I obviously know that Tackett family. |
| **SGT. MATUS:** | Right. |
| **ROUHOTAS:** | And I know the kids from being kids but no real personal knowledge of them. |
| **SGT. MATUS:** | You don't know him on a professional level, let's say? |

**Ex. 17**

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas        01/09/03

**ROUHOTAS:**     No.

**SGT. MATUS:**     Okay. Do you know if Tackett was alone at that time, or was he with another Deputy or?

**ROUHOTAS:**     No he was, but he was uh, sole patrol.

**SGT. MATUS:**     Okay.

**ROUHOTAS:**     When he pulled in the driveway, he pulled in aways to where the house is and you can see from the picture and as you can see visibly from the roadway the distance from that entry at the driveway to that, that first window that's on the south to the east, was the window that was lit up which is the living room window.

**SGT. MATUS:**     Okay. How far was the jeep, how far was the jeep from the roadway? On that particular night?

**ROUHOTAS:**     It's probably about 200 feet.

**SGT. MATUS:**     Okay.

**ROUHOTAS:**     It was in the very back of the lot and these, these lots are 400 feet deep and because there's an easement on the road on the canal and the drain is an easement so maybe even uh, uh more than 200 feet. Cause it as in the very back.

**SGT. MATUS:**     So let's say I'm, in an evening like that, like that night, if I was to park let's say facing north on Elder Road looking down the driveway, which is located south of the residence?

**ROUHOTAS:**     Right.

**SGT. MATUS:**     Okay, would I be able to see that jeep?

**Ex. 17**

12

01202     694

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                      01/09/03

**ROUHOTAS:**    No.

**SGT. MATUS:**    Well without no lighting?

**ROUHOTAS:**    No.

**SGT. MATUS:**    Okay.   Was there any lighting provided by the residence on some, either on, like a yard light, or a uh?

**ROUHOTAS:**    The only lighting is in the front.

**SGT. MATUS:**    Okay but there's no nothing by the front you mean on the eastside?

**ROUHOTAS:**    The front of the house, east of the residence.

**SGT. MATUS:**    Okay and the jeep would have been on the west side of the residence on the lot?

**ROUHOTAS:**    Right.

**SGT. MATUS:**    Okay and there's no lighting back there?

**ROUHOTAS:**    No.

**SGT. MATUS:**    Okay so if I wanted to see the jeep, I would have to light it up with either a spotlight or a uh alley light or whatever?

**ROUHOTAS:**    If, if you were to light it up with a spotlight or alley light all you would get is a glow of the license plate and the, the headlights.

**SGT. MATUS:**    Okay.  And uh I believe you had mentioned earlier, the jeep had been parked there for a while?

**ROUHOTAS:**    Since June is when it was wrecked.

**SGT. MATUS:**    Okay June of 2001?

**Ex. 17**

13                                    01203    695

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018
Interview with Tony Rouhotas                01/09/03

**ROUHOTAS:**  Yes.

**SGT. MATUS:**  Okay, okay and when was this jeep wrecked at?

**ROUHOTAS:**  It was, it was out by Superstition uh Huff or Wheeler Road out there, they, uh was rolled on a curve out there, the Highway Patrol did the report.

**SGT. MATUS:**  Okay so it been parked there since that particular time?

**ROUHOTAS:**  Right.

**SGT. MATUS:**  Since the time of the accident?

**ROUHOTAS:**  Right.

**SGT. MATUS:**  Okay and I believe you had mention that in the photographs or it's pretty obvious that the jeep is pretty well rusted over?

**ROUHOTAS:**  Right.

**SGT. MATUS:**  Okay.

**ROUHOTAS:**  I can show you and then give you a copy later, if you want?

**SGT. MATUS:**  Sure.

**ROUHOTAS:**  As soon as Shelly comes back you know, I'll have her get that.

**SGT. MATUS:**  Do you know, do you know if uh the Lackey's or yourself, right about the time of the incident, ever filed any sort of uh a Complaint against the Sheriff's Department on this particular incident?

**ROUHOTAS:**  No not a written report until recently.

**Ex. 17**
696

14

01204

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                01/09/03

**SGT. MATUS:**   And about recently you mean the ones you provided uh Chief Deputy Housouer on, on the 26th of December?

**ROUHOTAS:**   Yes that's correct.

**SGT. MATUS:**   Of this past year?

**ROUHOTAS:**   At one point we we're told that Tackett had been terminated, so we weren't going to pursue it because I mean what are you going to do I mean nothing is going to be done, he's terminated and then I understood just recently that he was still working, that he had been assigned as Bailiff, but that's just hearsay,

**SGT. MATUS:**   Hmm.

**ROUHOTAS:**   So at that time, we went ahead and filed the report. I mean what was done that night was completely wrong, I mean you're going to find that in your investigation but they what happened to those people should not have happened, just should not have happened and I'll tell you what it would have been hell done a lot different if someone, if you know A, I'm really sorry uh there was a screw up here but he was bound and determined that Randy was going to go to jail and I think that the only reason he did not is probably and it's just my suspicious based on past knowledge is Myron ordered the cite and release to prevent him from being booked.

**SGT. MATUS:**   Right.

**ROUHOTAS:**   And uh you know it's just unfortunate that uh with the way it did.

**SGT. MATUS:**   Sometime during the early part of last year uh April, May, you filed a Claim with the County regarding this particular one?

**Ex. 17**

15                      01205                  697

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

**ROUHOTAS:**   Yes we did.

**SGT. MATUS:**   Okay and?

**ROUHOTAS:**   And that's, that's still pending.

**SGT. MATUS:**   Okay. Where you ever given access to the uh report of
that incident that particular night?

**ROUHOTAS:**   No we've never been given access to that report, um,
we have made a numerous uh formal request for it,
we've called the Sheriff's Office they faxed us a form, it
was filled out it was filed the, the Department.

**SGT. MATUS:**   What kind of form was it, do you recall?

**ROUHOTAS:**   It, its this Sheriff's Office standard request for
incident,

**SGT. MATUS:**   Report?

**ROUHOTAS:**   Or Crime Report and uh Randy had filled it out and we
got a phone call back from Denise and she said that
uh "You're not entitled to the report" and I said, "For
what reason" and she said, "Well you're just not" and I
said, "Just not is not a good answer, I'd like to know
specifically why?" so then she turned it over to Rosie
and Rosie said that "Your brother-in-law Randy is a
suspect and he's not entitled to it" and I said, "He is
not a suspect", I said, "The DA dropped that case like a
hot potato", I said, "They did a file on that", I said,
"What were trying to do, he has it said on his record as
being arrested for uh resisting an officer and we want
it clear he needs to be cleared of it"   "Well he can't get
a copy of the report" and I said, "Then I'll file one" and
she said, "You cant get it". and I said, "What do you
mean I can't get it" I said, "I'm the property owner" she
said, "Well you can't get it" so I went ahead and we file
again copies of the report for the report under the

16

**Ex. 17**
698

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018

Interview with Tony Rouhotas                 01/09/03

Freedom Information Act, they want to play their
games we're going to try and cover all the little holes so
we filed it under the Freedom of Information Act and
Rosie calls and leaves a message on the recorder that,
you cannot, uh, *"They will not, will not release a copy
of the report under the Freedom of Information Act
because this is on a federal offense and the Freedom of
Information Act refers to a federal offense"* so then we
file, I filed for a copy of the report under the, uh
California Public Records Act, which is very clear in
there what you're entitled to, all they have to do is
delete the pertinent information that I shouldn't have,
so I get a call from Rosie saying that "You can't get a
copy of the report" and I said "Why" and she says
cause of confidentiality, I said, "Confidentiality what
are you talking about? She goes, 'Well you know Mr.
Lackey?" you're related to him or something and I said
"That's has nothing to do with it" I'm a member of the
public and I've filed for a copy of that report and she
says well we checked with other Agencies and their
Policy is" I said, "You know Rosie, it doesn't matter
what other Agencies Policies are, it's what the Law
says" and she goes "Well Chief Prince said that we
can't give you one" and I said "Well you know I really
don't give a damn what Chief Prince says cause that's
not what the laws says and I says you know as well as
I do, that I'm entitled to a copy of that report and what
you're doing is you are violating my rights preventing
me from getting a copy of that report and I said you
know it and I said this is nothing personal against you
because it's obvious you're being told to do something
other than what you should" and she said "Well Tony
let me look into it and I'll get back to you" and that's
the last I heard.

**SGT. MATUS:**   When was that, do you recall?  More or less?

**ROUHOTAS:**   Probably about, 2,3 months ago.

**Ex. 17**
**699**

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

**SGT. MATUS:** Okay after you didn't hear from her, did, did you do anything else?

**ROUHOTAS:** After I didn't hear and know when I filed under the Freedom Information Act when I filed under the California Public Records Act, I also sent a certified, these where sent certified mail uh certifies copies or certified uh copies were sent certified mail to, to Sheriff Carter and so here recently I think it was on 11/04 or 11/05 of 2001,

**SGT. MATUS:** Or 2002?

**ROUHOTAS:** I'm sorry 2002, I filed a formal complaint with Sheriff Carter on an employer complaints against Chief Deputy Prince and Rosie McGraw for failure to provide me a copy of that report and it was received by the Sheriff's Office signed by an employee of the Sheriff's Office on the 7th of November of 2002 and to this date I've heard nothing.

**SGT. MATUS:** Okay and was it similar to this complaint form?

**ROUHOTAS:** Yes it is.

**SGT. MATUS:** Okay, this,

**ROUHOTAS:** The, the standard complaint form and on the bottom rather than being received by someone with a signature I put that it was sent to Sheriff Harold D. Carter, Sheriff Coroner, via U.S. Mail, certified mail.

**SGT. MATUS:** Okay.

**ROUHOTAS:** And that's why, Andy and Randy and Shelly and even myself are saying, *"What's going on here"* you know something was done wrong, we tried to correct it, they, they don't want to talk to you, they don't want to give you the information that you're entitled to, is it like or are they trying to cover something up or what's going

18

01208

**. Ex. 17**
700

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

on here, yes so there civil litigation that can come out of it, but that wasn't going to happen but know it's going to because what it's done it's wrong.

**SGT. MATUS:**   Hmm.

**ROUHOTAS:**   So up to this date we have not been given a copy of that report after a numerous request, even the Sheriff receiving uh at least three certified notification of it.

**SGT. MATUS:**   Are, are you being represented by an Attorney now?

**ROUHOTAS:**   No. We have an Attorney pending that will represent us.

**SGT. MATUS:**   Right.

**ROUHOTAS:**   We have been given advise by, by this same Attorney.

**SGT. MATUS:**   Okay what I have here is, is a statement from your wife Shelly?

**ROUHOTAS:**   Right.

**SGT. MATUS:**   A uh a complaint here against Deputy Tackett, uh which is known as Attachment "A" from Randall Lackey.

**ROUHOTAS:**   Right.

**SGT. MATUS:**   And also a uh statement from Andrea Lackey?

**ROUHOTAS:**   Right.

**SGT. MATUS:**   Okay did they prepare them or did you prepare these, based on you interviewing them and?

**ROUHOTAS:**   That, that was prepared on what they told me, in other words, it was typed up at the time they told me.

**Ex. 17**

701

19

01209

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-018

Interview with Tony Rouhotas                    01/09/03

**SGT. MATUS:**   Okay and this one?

**ROUHOTAS:**   As, as they told me.

**SGT. MATUS:**   Okay what I'm looking at is uh, in Andrea's it stated the 25th of December, 2002?

**ROUHOTAS:**   Hmm.

**SGT. MATUS:**   Okay?

**ROUHOTAS:**   Those, those are a modified version of the original because this was a complaint against Tackett,

**SGT. MATUS:**   Hmm.

**ROUHOTAS:**   They had, there's the statement's given that early morning hours to that contained additional information as too uh the in, incident in its entirely.

**SGT. MATUS:**   Okay in those statements did you provide uh, the statements that you took immediately after the incident?

**ROUHOTAS:**   Right.

**SGT. MATUS:**   You filed those with your claim?

**ROUHOTAS:**   No.

**SGT. MATUS:**   Oh you didn't?

**ROUHOTAS:**   I can make those available to you.

**SGT. MATUS:**   Okay cause I'd like to get copies of them.

**ROUHOTAS:**   These, these are just where on the complaint with Tackett, these are things that pertain to basically what happened with him.

**Ex. 17**

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas                  01/09/03

**SGT. MATUS:**   To the incident?

**ROUHOTAS:**   Yeah the other one will get into uh some of the things I've told you hear on, on tape is that some of the other things that transpired that where really not directed related to the,

**SGT. MATUS:**   Right.

**ROUHOTAS:**   And then I'm still demanding the copy of the report.

**SGT. MATUS:**   You're still waiting for that?

**ROUHOTAS:**   Yup.

**SGT. MATUS:**   Okay, Tony I don't think I have any other questions is there anything else you'd like to clear up, maybe something I didn't ask you or something comes to mind?

**ROUHOTAS:**   No.

**SGT. MATUS:**   Okay and looking at your uh complaint form that you filed uh you're accusing Tackett of uh Unlawful entry, Unlawful search and by that do yo mean of the property?

**ROUHOTAS:**   That's correct.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   The... well there is one more thing is when he asked my brother in law Randy are you Randall Lackey and he took him into custody, arrested him, the Randall Lackey that was refer to when they said that the jeep was driven by, the jeep looked like Randall Lackey was driving is my nephew.

**SGT. MATUS:**   Like you mentioned earlier, Jr, Randall Lackey Jr. is known as Randall?

**Ex. 17**

01211      703

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

Interview with Tony Rouhotas          01/09/03

**ROUHOTAS:**  Right.

**SGT. MATUS:**  And Senior is known as Randy?

**ROUHOTAS:**  That's right, so he took the wrong person if there was an incident the took the wrong person anyway, but none of them where involved all four where asleep at home and the jeep had been wrecked over six months ago.

**SGT. MATUS:**  Okay, anything else, Tony?

**ROUHOTAS:**  No, I think that's it.

**SGT. MATUS:**  Okay and you mentioned you had photographs of uh of Randy?

**ROUHOTAS:**  Right.

**SGT. MATUS:**  And you had photographs of uh the jeep and?

**ROUHOTAS:**  Right,

**SGT. MATUS:**  Tires and foot tracks.

**ROUHOTAS:**  What I'll do I if you want to call Shelly I can have her come in and get that and I'll show that to you.

**SGT. MATUS:**  Sure let me uh let me end the interview time is approximately uh 1607 hours, thank you Tony.

End of Interview.

Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 1/14/03

**Ex. 17**

22

01212        704

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:**   Okay uh today's date is January the ninth the year is 2003. Time is approximately uh 1617 hours. Uh this is an interview with Mrs. Shelly Rouhotas, uh the interview is being conducted at her residence uh 4593?

**ROUHOTAS:**   Hmm.

**SGT. MATUS:**   Elder Road, Brawley.   Uh this is in regards to IA number # 2002-018.  Uh an incident that occurred on uh December 28, 2001 in the early morning, morning hours at the Lackey residence just north of the uh Rouhotas residence.  Uh Mrs. Rouhotas can you tell me uh what occurred on that particular evening or early, early morning?

**ROUHOTAS:**   Morning.  Um, I got a phone call, it was my, well I'm, I'm, Tony's on the phone with her, I'm not speaking to her personally uh he's talking with someone on the phone and he's talking about someone being arrested and anyway I'm just listening to one side of the conversation, he gets off the phone and he and I asked him, who's, who calling? cause you know, one thirty in the morning it startles you, you know to get woke up like that and uh he said the Sheriff's Department, Andy calls, she said the Sheriff's Department is there and they're arresting Randy and I said Randy?  Why Randy?  Why Ran, you know, why?  And he said they wouldn't tell her.  What do you mean they won't tell her?  So anyway um details, I guess we need to do details,

**SGT. MATUS:**   Let, let me ask you this?  Are you related to the Lackey's?

**ROUHOTAS:**   My um marry, um my, ah Andrea Lackey is my sister.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   My half sister.

**Ex. 17**

01213

705

1

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:** Okay, okay and Randall Lackey is your?

**ROUHOTAS:** Brother-in-law.

**SGT. MATUS:** Brother-in-law?

**ROUHOTAS:** Hmm.

**SGT. MATUS:** Okay. So eventually you proceeded to their residence?

**ROUHOTAS:** What happens is, is, he, Tony told me what was going on and I said well I need to go over there because Andy was very upset, um you know and it's my sister and I want to help her and, and if she doesn't, you know, she doesn't know what to do, I know a little bit of law enforcement just from being married to a cop, so I went over there to see what I can do, to help figure out what was going on, at first my first thought is maybe they are looking for Randall, my nephew, cause he's an 18 year old, maybe he did something?

**SGT. MATUS:** Right.

**ROUHOTAS:** You know, that was just the first thought and they, they took Randy instead you know, I'm just thinking these things, in my head while I'm walking over there. So anyway I, Tony told me to take a flashlight over there you know so you wouldn't startle anybody, shine it around so they see someone coming cause it was pitch dark,

**SGT. MATUS:** Right.

**ROUHOTAS:** It was really dark that night, so anyway I walked up um I entered the driveway and there was a unit sitting a little ways up into the driveway, next to the house, my sister standing next to the, the unit, and I see Tackett and another officer there, there was PD units parked on the road, Brawley PD.

**Ex. 17**

01214

706

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:**   Okay so when you got there, there was other units?

**ROUHOTAS:**   There was, two PD units parked on the roadway.

**SGT. MATUS:**   Okay, the Sheriff's unit?

**ROUHOTAS:**   It was in the driveway, in, in the residence.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   The PD where on the roadway.

**SGT. MATUS:**   On Elder road?

**ROUHOTAS:**   Elder Road, they were not in the driveway.

**SGT. MATUS:**   Which, which direction was the SO unit facing?   Do you recall?

**ROUHOTAS:**   Uh westbound.

**SGT. MATUS:**   It was facing west?

**ROUHOTAS:**   West, yeah he pulled into the driveway and stopped, he was west, facing westbound.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   Um, in other words he was his car, the front of his car was facing the back of the lot.

**SGT. MATUS:**   Towards the jeep?

**ROUHOTAS:**   Well I think the jeep was off a little ways, it's real deep and it was dark back there, yeah but he was facing that way.

**SGT. MATUS:**   Okay was uh the Sheriff's unit have its lights on?

**ROUHOTAS:**   Headlights?  No, just parking lights.

**Ex. 17**

3

01215         **707**

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:** Okay what about the uh emergency lights the red light?

**ROUHOTAS:** No, no he didn't have any of that on, no he was just parked in the driveway.

**SGT. MATUS:** Do you recall if the Sheriff's unit at any point prior to maybe prior to your arrival had any lights on the residence?

**ROUHOTAS:** Oh I have no idea?

**SGT. MATUS:** Okay.

**ROUHOTAS:** You mean like spotlights and that?

**SGT. MATUS:** Yeah.

**ROUHOTAS:** No I had no idea, I wasn't there at that point.

**SGT. MATUS:** But you indicated that other units where already there?

**ROUHOTAS:** Other units where on the roadway.

**SGT. MATUS:** Okay.

**ROUHOTAS:** Yeah they weren't inside the residence they were on the roadway.

**SGT. MATUS:** That evening was it or that early morning was it pretty cold outside?

**ROUHOTAS:** It was very cold outside.

**SGT. MATUS:** You don't happen to recall the temperature do you?

**ROUHOTAS:** No, no December you know 1:30 in the morning, it's cold.

4

01216  **Ex. 17**
708

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 interview with Shelly Rouhotas

**SGT. MATUS:** So when you arrived there, who did you make contact with?

**ROUHOTAS:** I walked right up, I looked over and saw my sister standing there and she,

**SGT. MATUS:** Where, where was she standing?

**ROUHOTAS:** She was standing on the passenger side of the unit,

**SGT. MATUS:** The Sheriff's unit?

**ROUHOTAS:** Right next to their patio deck cause there's a little patio area and he was right in line with that area right you know the, the house is right here and she was standing over here looking in at Randy cause he was sitting on that side of the car,

**SGT. MATUS:** Okay so she was standing between the unit and the house?

**ROUHOTAS:** And the house.

**SGT. MATUS:** Okay.

**ROUHOTAS:** Yeah I mean he was right up next to the house, I mean you could step out of the car and be on their patio.

**SGT. MATUS:** Do you recall what side of the unit he was on?

**ROUHOTAS:** He was on the passenger side.

**SGT. MATUS:** In the back?

**ROUHOTAS:** In the back, handcuffed anyway I walk up and I had my flashlight and she goes can you find out what's going on, they wont tell me anything, she's crying, she's upset and I look back at Randy and he had a look, like terrified look and I'm like shit, what's going on, to myself, what the hell is going on here,

**Ex. 17**

5                    01217            709

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 interview with Shelly Rouhotas

**SGT. MATUS:**   Hmm.

**ROUHOTAS:**   And I walk up, Tackett is standing, I know Tackett, okay, I know,

**SGT. MATUS:**   How do you know him?

**ROUHOTAS:**   I know he's mom and dad real well, they rented from me, years and years ago, when the kids were little and just growing up his kids are you know my age of my children. In fact, he's the same age as Jason and his older brother is the same age of my son, Tony, so they where in the school, we knew each other just from being in schools, sports and all of that stuff, um, anyway um, I go you're Tackett right? Cause I wanted to make sure I was talking to who I thought I was talking too and he say's yes, and I shine my flash light in the car and saw Randy siting there and he was very, very upset, sweating like a pig and I'm like what's going on and Randy's going, "Tell him to turn the heater off" and I could read, you know I could hear him muffling it plus reading his lips and he goes "It's really hot in here, I'm going to die here" you know he's panicking really bad, he's having an anxiety attack and I said, "Can someone turn the, the heater off in there" they just look at me, they ignore me, said nothing to me, at the same moment this is happening, Brawl, two Brawley T, PD officer's are walking from the back of the lot up to the unit, where we were standing.

**SGT. MATUS:**   Okay when you asked uh, for the Officer's to turn off the heater in the vehicle,

**ROUHOTAS:**   Hmm,

**SGT. MATUS:**   Who was there, Tackett and who else?

**ROUHOTAS:**   Tackett was standing there but he kind a got distracted, I think from the officer's walking up to the

01218   **Ex. 17**
710

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 interview with Shelly Rouhotas

|  |  |
|---|---|
| | car and there was a Brawley PD officer standing right there. |
| **SGT. MATUS:** | Oh okay. |
| **ROUHOTAS:** | And I said, "Can you turn the heat off in this unit, this guy is burning up in here" he goes, "It's not my car" |
| **SGT. MATUS:** | The Brawley PD guy? |
| **ROUHOTAS:** | Yeah he goes, "It's not my car" and I'm like, "Someone needs to help this guy in here, he's burning up" and I'm mean I'm being loud about it, okay cause I could see there is a problem, and um, anyway I get ignored, Brawley PD walks up and um he chit-chatted a little, not a whole lot with Tackett, he said a couple of things and I said, "What's going on here?" |
| **SGT. MATUS:** | What did the Brawley PD walk up from? |
| **ROUHOTAS:** | From the back of the lot, they were back there looking at the jeep. |
| **SGT. MATUS:** | By the jeep? |
| **ROUHOTAS:** | Yeah they had already been there, looking at the jeep when I got there. |
| **SGT. MATUS:** | So how many Brawley PD units where there? |
| **ROUHOTAS:** | There was, units? |
| **SGT. MATUS:** | Or Officer's? |
| **ROUHOTAS:** | Officer's?  Three. |
| **SGT. MATUS:** | A total of three? |
| **ROUHOTAS:** | Three that I saw. |

7

01219

**Ex. 17**

711

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:**   And how many Sheriff's Unit?  Or Officer's?

**ROUHOTAS:**   One, Tackett.

**SGT. MATUS:**   One?

**ROUHOTAS:**   Yeah he was a solo, he was a solo officer.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   Anyway um, they come walking up, to where, cause where all standing in a group at this time and I said "Will someone tell me what's going on here" and he said "Well who are you" and I said, " My name is Shelly Rouhotas" and he said, "Oh" a lot of the guys know me cause I rent to them and I think, I think I may have rented to this one officer, I don't, I couldn't even tell you he's name right know.  And he said, "Well what happen is there was a hit-and-run in town and the witnesses described the jeep as looking like the one Randall Lackey drives" I said, "That jeep got wrecked months ago, it's been sitting there it hasn't moved cause it's total out, it's rolled and twisted" he said, 'That's obvious, it's been there quite a while" and I said, 'Yes" and uh I said so, "Can you tell me, why he is being arrested?" and I flash the light, my flashlight in the back to put it on Randy, he said, "I don't know about that?", he said" I had nothing to do with that?" So I look at Tackett and I go, "What's going on here?" you know and, and uh nothing was said, and he looked at Tackett, this officer that I'm talking from Brawley PD, looked at Tackett and he said, "We got the wrong vehicle and you've got the wrong people"

**SGT. MATUS:**   Did Tackett say anything?

**ROUHOTAS:**   No.  Absolutely nothing.  And I said, "So what is going to happen here, I need some answers and this guy is hot, you need to turn this heater off," I keep getting

**Ex. 17**
712

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

ignored, no one wants to open the door, Brawley PD wouldn't do it, he was like he wanted to do it,

**SGT. MATUS:**  Right?

**ROUHOTAS:**  But it's not his car, he can't be doing anything like that, well he could have, if he really wanted too. So anyway, Randy's in the back, "What's going on, what's going on?" and Andy's standing over there so anyway that's when Myron pulled up and I said, "Thank god"

**SGT. MATUS:**  Myron, Myron King?

**ROUHOTAS:**  Myron King.  I said, "Thank god, we'll get some answers here" Um Myron comes up and into the driveway and I see him and um I walked over to my sister and I said, "Look Myron is here, where going to get this straighten out, find out what is going on," she's upset, my nephew is outside by then too, he's watching everything, um, Myron comes up and he takes Tackett and they go out into the roadway and I walk up there and said and I said, "Myron, what, what's going on here?" and he say's, "I don't know that's why I'm here" he says, "Let me talk to Tackett" and I said, "We need to get the heat off in this unit or he were going to have a problem, this guy is hot? And uh he said, "Oh, oh okay, okay" and they start talking, he says and he asked me to leave, which he should, I, you know, I don't have a problem with that, he should have asked me to leave I shouldn't be there because he needs to discuss the problem, there discussing the problem, Brawley PD is there, the next thing I know Brawley PD is leaving, Myron and Tackett are there by themselves talking and Myron is getting pretty loud, um,

**SGT. MATUS:**  How far away was Myron and Tackett from you?

**ROUHOTAS:**  Oh at that point cause I had gotten back over and I was talking to my sister, at this point. You know calm

9

01221

**Ex. 17**

713

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

her down, let her know we were going to get it taken care off you know don't worry, um I and she of course heard the conversation with Brawley PD, so know she knows what's going on, we just don't know what's going to happen to Randy at this point, I said, "It was a mistake, you know Tackett probably came in here he screwed up and got the wrong people and you know everything is fine, don't worry about it" but at the mean time Randy is in the car, burning up, he's going, "You guys need to get me out of here" well there was no way I was going to open that door to that unit cause Tackett would have arrested me and I knew that, I knew that just by his, the way he was acting right then, when he's ignoring me and not doing anything,

**SGT. MATUS:**     Was he, when you where there with him, was he ever upset or did he ever uh?

**ROUHOTAS:**     Tackett?

**SGT. MATUS:**     Hmm.

**ROUHOTAS:**     No, he was quiet, never said a word other than "yes" when I asked him, "Are you Tackett?" that's the only thing he ever said to me, he kept, he was talking to Brawley PD, the whole time but that was the only words he only said to me, when it was obvious he wasn't going to help us out with Randy getting out of this car and getting him cooled down, I knew there was no way I was going to uh be able to reason with him to even get it done and there was no way I was going to open the car in that unless, unless Randy passed out, you know stopped breathing?

**SGT. MATUS:**     Right.

**ROUHOTAS:**     I wasn't going to open that car cause I knew I would be arrested if I did. I, I could see what was going on, I could see what was happening at that point um,

**Ex. 17**

10                                    01222           714

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

|  |  |
|---|---|
| | that's, and Myron and Tackett are out in the road getting at it and I've never heard Myron yell. |
| **SGT. MATUS:** | Was Myron upset? |
| **ROUHOTAS:** | Myron was pissed off badly. |
| **SGT. MATUS:** | Could you hear what they were saying? |
| **ROUHOTAS:** | Off and on. I could pick up words like, "You had no right to even drive in this driveway, you had the wrong people, what's wrong with you, what are you thinking?" I could hear what Myron was saying, uh not in detail, be, there is no way I can ever testify in detail what Myron's exact words where but I knew he was pissed and he was telling his officer, "You screwed up" |
| **SGT. MATUS:** | How long have you known Myron? |
| **ROUHOTAS:** | Oh my god, 28, 30 years. |
| **SGT. MATUS:** | Okay and ho long have you known Tackett? |
| **ROUHOTAS:** | Since he was a little kid. |
| **SGT. MATUS:** | So you've known him? |
| **ROUHOTAS:** | Personally I mean, I don't, we didn't socialize, I just knew him as growing up in the same community, you know small community, you know, like everybody, everybody knows everybody, um you know other than that but, |
| **SGT. MATUS:** | So Myron you've known, you've known personally? |
| **ROUHOTAS:** | Oh my god, yeah. |
| **SGT. MATUS:** | And professionally? |

**Ex. 17**

01223                                                                715

11

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 interview with Shelly Rouhotas

**ROUHOTAS:** Yeah, hmm.

**SGT. MATUS:** Okay and how far did you say they where?

**ROUHOTAS:** At that time, they where out on the road and they where talking Myron was being pretty loud then they came over to the unit, you have to understand the unit is running, I'm on one side of the unit, Myron and Tackett are on the other side of the unit and I could hear pretty much everything that was being said but, all I can say, all I could hear is Myron saying, "You screwed up, you need to release this guy, you need to tell him you're sorry, you know you got the wrong guy" and I couldn't hear Tackett cause he's got a real low voice, I could never hear any of what he's response to Myron was but Myron just kept repeating himself to Tackett, "You screwed up, you need to release this guy and you came on his property you shouldn't have been here, you were" in fact I heard Myron say, " You where only suppose to come by and stand by? " but anyway Lowenthal comes up in the mean time, well Myron and Tackett came up, they are standing by the car, these are just, just, just a few seconds in between, Lowenthal comes up and they and I said, " Oh ", I don't remember if I said, "Hi" to him or whatever, he comes walking up and I said, " Lowenthal? " and he said, "Yeah he goes, I know you?" and I said, 'You sure do" and I said, "Can you do me a favor and open this door to this unit so this man can get some cool air?" and he, he goes, "Sure" he goes right over and he opens it up and you know Randy's sweating, he's hot, he's breathing real hard, um, you know I asked him, "Are you okay?" and he said, "Yeah" and he goes, "Man I'm burning up? And he's going, "What's going on?" and I said, "I'm going to tell you something Randy what I want you to do is just sit there and I want you to be quiet and I don't want you to say anything to anybody, I said even Myron, do not say anything to Myron." That's what I told him,

01224 **Ex. 17**
716

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

### *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 interview with Shelly Rouhotas

**SGT. MATUS:**   Right.

**ROUHOTAS:**   And he goes, "What's going on?" and I said, "I will talk to you about it later but I want you to sit in the car and I don't want you to talk to anybody" and I looked at my sister and I said, "I don't want you to talk anybody" and I looked at my nephew and I said, "I don't want you to talk to anybody, nothing".   So anyway all I heard was Myron say is, "Alright well you're going to do, going to do a um, a um you're going to cite him and release him?" "That is what you're going to do?" so anyway Tackett starts writing out this citation, he brings it, in the mean time, Lowenthal has gotten Randy out of the unit, has got him sitting in the unit and my sister had gotten in and got a pair of shoes for him and he put that on and um got him, brought him a jacket out, he didn't even put the jacket on for quite a while cause it was so hot but Myron and Tackett converse for quite a while, I mean I'm talking 30 minutes or more that he was convincing Tackett you need to do what I'm telling you to do?

**SGT. MATUS:**   Okay like you mentioned earlier, you where unable to hear what Tackett was saying?

**ROUHOTAS:**   Out on the roadway, I couldn't hear Tackett at anytime.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   I could hear Myron yelling.

**SGT. MATUS:**   Do you know from his body language, could you tell if Tackett was arguing or upset with, with uh Myron?

**ROUHOTAS:**   He was talking but I couldn't hear what he was saying to Myron, I really couldn't cause the car was running, I could hear Myron cause Myron was pissed and he was being very verbal with him, Tackett was just you know, he was talking but I couldn't tell you what he said,

01225   **Ex. 17**
717

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

couldn't tell you anything of what he said.  So anyway he, he um, we got Randy out he's siting in the car and I told them don't talk to anybody other than Lowenthal, chit-chatting but not about anything that's going on, um Tackett came over, got Randy, had Randy step out of the unit, he was uncuffed and everything by now, um said you need to sign here and Randy signed it and that was it.

**SGT. MATUS:**    All the units left?

**ROUHOTAS:**    Yeah, I told Randy let's go inside.  I didn't even say bye to Myron.

**SGT. MATUS:**    And did uh Randy tell you what had occurred or?

**ROUHOTAS:**    Well we go inside, yeah we go inside and he told me what had happened because I don't even talk to Randy about what, I only talk to my sister about this situation,

**SGT. MATUS:**    Right.

**ROUHOTAS:**    About what had happened to me prior to me getting there, I hadn't talked to Randy until afterwards we went inside, he was very upset.

**SGT. MATUS:**    Did he know what had happened at that time?

**ROUHOTAS:**    When?

**SGT. MATUS:**    That point in time, after he was released, why he was arrested?

**ROUHOTAS:**    No, not until we went inside and I told him.

**SGT. MATUS:**    So he didn't explain to you that I was arrested because of, of this or?

**ROUHOTAS:**    Who Randy?

01226

14

**Ex. 17**
718

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:** Yeah?

**ROUHOTAS:** He had no where, he didn't know what the hell was going on.

**SGT. MATUS:** Oh, oh.

**ROUHOTAS:** I mean he's, he's sound asleep in his bed the next thing he's being handcuffed.

**SGT. MATUS:** Okay.

**ROUHOTAS:** No nothing, he, he had no idea, until we went inside and I told him what ha happened on the hit-and-run and all this, other than that, he didn't know,

**SGT. MATUS:** So it was never really explained to him by the uh by Tackett or any of the?

**ROUHOTAS:** Oh no.

**SGT. MATUS:** Or any of the uh?

**ROUHOTAS:** No.

**SGT. MATUS:** Any of the units that were there?

**ROUHOTAS:** Nope. Myron came over and leaned on the car and he said "Look Randy this is what's going to happen, I'm, he's going to cite and release you, you are not being taken to jail" and that's all Myron told him.

**SGT. MATUS:** Okay.

**ROUHOTAS:** Told him that?

**SGT. MATUS:** Did he tell you why he went outside?

**ROUHOTAS:** Randy?

**Ex. 17**

719

01227

15

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:**   Hmm.

**ROUHOTAS:**   Because he had this light shinning in his house.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   He woke up, the dogs raised hell, he has two little mutts and they raise hell when anyone drives in.

**SGT. MATUS:**   Okay are those dogs inside the house or outside?

**ROUHOTAS:**   No they are outside, they're outside dogs,

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   Um, but what woke him up he said was light's shining flashing in his windows and he thought it was um, the Sheriff's Office always of course, they patrol out here but we've had a couple of collisions on the highway with the illegals,

**SGT. MATUS:**   Hmm.

**ROUHOTAS:**   And they scatter and run and when they do they run, right here to these homes cause their right off, you know the highway is right here and they see lights and so they come of course right here and um that's happened twice now that Randy's had to get up in the middle of the night and have Border Patrol you know search and he comes over here and opens up for them and let's them look in here and that's happened twice this last year that he had to do that, so you know he's thinking in his head, Oh something is going on outside, I need to go out and check and see what's going on.

**SGT. MATUS:**   Right. So did he ever tell you when he went outside that Tackett ever explain to him, you know I'm here investigating or whatever or did anybody ever?

**Ex. 17**

01228    720

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**ROUHOTAS:** I wasn't there at that time, I could just tell you what I've been told.

**SGT. MATUS:** Okay did Randy ever tell you if anyone came to the house before he saw the lights, let's say?

**ROUHOTAS:** No.

**SGT. MATUS:** Or knock on the door?

**ROUHOTAS:** No, he was asleep, he went outside,

**SGT. MATUS:** Okay so,

**ROUHOTAS:** He went up an opened the door.

**SGT. MATUS:** He got up because he saw the lights?

**ROUHOTAS:** Lights.

**SGT. MATUS:** No body came to the door and knocked you know?

**ROUHOTAS:** No, hmmm,

**SGT. MATUS:** Okay and these dogs uh are they running loose, in the yard?

**ROUHOTAS:** Yeah, yeah.

**SGT. MATUS:** Okay.

**ROUHOTAS:** There just little, little dogs.

**SGT. MATUS:** Okay.

**ROUHOTAS:** Mixed breed, mutts.

**SGT. MATUS:** Do you know if uh, if Randy sustained any, any injuries as a result of the arrest?

17

01229

**Ex. 17**
721

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**ROUHOTAS:**   Mental, mental.

**SGT. MATUS:**   How about physical injuries?

**ROUHOTAS:**   Stressful, physical? No. In fact we took pictures, that was, well, well, that was one of the things that Tackett claimed to my sister is, " Well what is that big scratch on his back?" And she said, "What are you talking about?" Oh well we took pictures of Randy' back so to show that he had no marks on him and no he had no marks from, from anything physical that happened that night, no.

**SGT. MATUS:**   Okay.

**ROUHOTAS:**   Other than the mental stress he was put through. (laughed)

**SGT. MATUS:**   Do you know in what point in time did Tackett told your sister about this, these red marks on his back?

**ROUHOTAS:**   It was after he put him the unit. That she said, what they got into, Randy put an arm up and wouldn't let him get the other arm, cause you know Randy is a tall guy and Tackett is small, he is a small guy and Randy is like "What are you doing?" you know he didn't want to give him, give his arm up and um that's when my sister came out and said, "Randy just do what he asks you to do, well get it worked out" so Randy put his arm down and Tackett put him in the car and that's when she was questioning Tackett and he said, "Well where did he get that scratch on his back?" and she said, "I don't know what you're talking about, there's no scratch on his back." So the only thing I can think of is he may have had a sheet mark cause he had just gotten woke up from out of the bed, you know and how you have, you can have a red mark from a sheet but he didn't have it, when I saw him,

**Ex. 17**

18

01230   722

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 Interview with Shelly Rouhotas

**SGT. MATUS:**  Right, when you saw him in the unit, how was he dressed?

**ROUHOTAS:**  He had jeans and that's it, jeans.

**SGT. MATUS:**  And no shirt?

**ROUHOTAS:**  No shirt, no shoes, no,

**SGT. MATUS:**  Okay. And you said later photographs of Randy where taken?

**ROUHOTAS:**  Yeah.

**SGT. MATUS:**  Where they taken by you or by somebody else?

**ROUHOTAS:**  The, the pictures of Randy where taken by you. By Tony.

**SGT. MATUS:**  Did you, did you take any other photographs?

**ROUHOTAS:**  I didn't take any pictures.

**SGT. MATUS:**  Okay, it was Andrea, who took the photographs?

**ROUHOTAS:**  My, my sister took them up the lot, at the house.

**SGT. MATUS:**  Okay, Uh Shelly I don't think I have any other further questions, uh is there anything else maybe you'd like to add, maybe something I didn't ask you something you need to uh clear up?

**ROUHOTAS:**  I don't think so.

**SGT. MATUS:**  Okay, okay I'm going to end the interview of for the record present during this interview was uh Mr. Tony Rouhotas, uh and the interview was conducted by Imperial County Sheriff's Sergeant Delfino Matus, I'm going to end the interview time is approximately uh 1640 hours, thank you Shelly.

**Ex. 17**

19

01231        723

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-018

01/09/03 interview with Shelly Rouhotas

**ROUHOTAS:**        Hmm.

End of Interview.

Typed by:
Galdy Gutierrez
Office Assistant III
Reviewed by Sgt. Delfino O. Matus 1/14/03

01232        **Ex. 17**
                        724

20




IMPERIAL COUNTY SHERIFF'S OFFICE
## HAROLD D. CARTER
SHERIFF-CORONER-MARSHAL

October 3, 2002

*Justin Tackett*
*Deputy Sheriff*
*547 S. Rio Vista*
*Brawley, CA 92227*

**RE:   NOTICE OF PROPOSED DISCIPLINARY ACTION**

*Dear Deputy Tackett:*

*You are hereby officially notified that I propose to suspend you for a period of two days without pay from your employment with the Imperial County Sheriff's Department as a Deputy Sheriff.  You have the right to have this decision reviewed through an informal conference with Sheriff Carter or his designee and an evidentiary hearing before the Employment Appeals Board.*

*Whether or not you request an evidentiary hearing before the Employment Appeals Board, your suspension shall be imposed if you do not appeal this decision within the requisite five (5) day appeal period and/or if the decision is affirmed through the informal conference with the Sheriff or his designee.  The specific acts, omissions, causes and reasons upon which this proposed disciplinary action is based are set forth herein and in the documents attached hereto and incorporated herein by reference as though fully set forth.*

*The causes for the proposed discipline are as follows:*

## COUNTY ORDINANCE:

| | |
|---|---|
| **24452(a)** | **Unprofessional Conduct;** |
| **24452(d)** | **Incompetence;** |
| **24452(g)** | **Violation of or Refusal to Obey Reasonable Regulations Prescribed by the Board of Supervisors or by the Department Head:** |

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT POLICY & PROCEDURES

| | |
|---|---|
| **2.1.01** | **Violation of Rules** |
| **2.1.04** | **Incompetence** |
| **2.1.06** | **Unbecoming Conduct** |
| **2.3.04** | **Arrest, Search, and Seizure** |

00389

**Ex. 18**
725

October 3, 2002 .
Page 2

The specific acts or omissions upon which the proposed discipline is based are
set forth below:

At about 0150 hours on December 28, 2001, you were directed, through Brawley
PD, to check a location in the unincorporated area of Brawley, California on 4548
Elder Road, for a black or dark Jeep with damage to the right front end. A Jeep
matching that description had been involved in a hit and run less than an hour
earlier.

Upon arriving in front of the subject location, a residence, you observed a vehicle,
appearing to match the description, parked in the back yard, several yards to the
side and in back of the residence.

You thereupon drove onto the property, past a fence and down into the yard
where the Jeep was located. You observed that the vehicle had extensive
damage to the left front end. You failed to observe that this vehicle had sand, dirt
and cobwebs all over it, indicating it had not been moved in a substantial period
of time. You obtained its plate number and ran it. The vehicle came back to
Randy and Andrea Lackey, at the location's residence.

Through the Sheriff's communications, you. advised Brawley PD that a vehicle
matching their description was at your location. Brawley requested that you
stand by for their arrival. You moved your patrol car back toward the yard in
front of the house and illuminated the front and side of the residence with your
headlights, floodlights and alley lights.

Shortly thereafter, Randy Lackey came out of the residence, in bare feet and bare
chested, wearing only blue jeans. You informed Mr. Lackey that the vehicle
matched the description of a Jeep involved in a hit and run a short time ago and
that Brawley PD was en route to meet with him. Mr. Lackey told you that his
vehicle hadn't been moved in a while.

A few minutes later, Ms. Lackey came out and was also told about what was
going on. She stated to you that they had been home that night. Ms. Lackey told
her husband that he should go inside their residence because it was so cold
outside. It was approximately 40° Fahrenheit that night. You suggested that Ms.
Lackey get some clothing and shoes for her husband.

A couple of minutes passed and Mr. Lackey decided to return to his residence due
to the temperature. You advised him that he was not free to go inside because he
was now being detained for investigative purposes and for officer safety reasons.

Due to the cold weather, Mr. Lackey continued to try to return inside. You
repeated your order to him and further advised him of the risk of being arrested

00390   **Ex. 18**

726

October 3, 2002
Page 3

for a violation of § 148 of the Penal Code, delaying, resisting or impeding a peace officer. When Mr. Lackey appeared to be intent on going back inside, you radioed for back-up and then attempted to place him under arrest. After a brief struggle, you were able to cuff him and place him in the back of your vehicle.

Sheriff's Sergeant Myron King arrived on scene and was briefed by you and of your intention to transport Mr. Lackey to jail and book him for Penal Code (PC) Section § 148 violation. Sgt. King urged you to release Mr. Lackey immediately. You refused. Sgt. King again tried to persuade you that you needed to release Mr. Lackey because your arrest was ill-advised. When you continued to refuse, Sgt. King gave you a direct order to immediately cite and release Mr. Lackey on-scene. You complied.

You possessed neither sufficient probable cause and exigent circumstances nor a search warrant to enter on the private property in question. Having ascertained that a vehicle matching the description was on the property, you should have waited at the curb, outside the property, for Brawley PD's arrival. Your actions violated the rights of the residents, exceeded the instructions you received and increased your risk as a public safety officer.

You entered the property and drove into the back yard to inspect the Jeep. It was evident to other officers from 50 yards away that the Jeep had not been moved in a long time and that it could not be the Jeep involved in the hit and run earlier that morning. Your failure to observe as much was incompetent.

You then moved back toward the front of the house and, while still on private property, proceeded to illuminate the entire house with your vehicle's various lights. Rather than wait at the curb in a 'low-profile' mode, your illumination of the house guaranteed that someone from inside the house would respond to you and would likely do so _before_ any officers had arrived to back you up. Again, given your suspicion that the hit and run driver was in the residence, your actions increased your risk that a confrontation would occur before backup arrived.

Your handling of Mr. Lackey when he wanted to go back inside was also troubling. Mr. Lackey wanted to return inside because it was so cold outside and he was obviously not dressed for the weather. While there was an officer safety issue (which never would have been reached had you waited on the street, adjacent to the property and did nothing to draw attention to yourself), your failure to offer any other alternative to Mr. Lackey was unreasonable. In essence, you only offered him the choice of getting increasingly cold or getting arrested.

You could have offered to accompany him inside to get some clothes or just walk him to his front door so he could summon his wife to get clothes for him. You could have allowed him to wait with you inside your patrol car. You could have

October 3, 2002
Page 4

gone to the front door yourself for some clothes. You could have gotten the blanket out of your unit's trunk.

Your compelling Mr. Lackey to freeze or be arrested was unreasonable. Your arrest of him was ill-advised and reflected poor judgment. In light of all the other alternatives, your handling of Mr. Lackey was improper.

Therefore, these actions of yours constituted incompetence. Your handling Mr. Lackey was unbecoming conduct. Your entry onto private property with due cause or warrant and your arrest of Mr. Lackey violated Rules of Conduct § 2.3.04 because you should have recognized that your actions were beyond legal bounds.

In sum, your conduct violated the above referenced County Ordinance and Sheriff's Department policies and procedures. Having closely reviewed the internal affairs file, I am also satisfied that the proper disciplinary consequence for you in this instance is a two (2) day suspension.

You have the right to respond to the matters raised in this notice both orally and in writing, prior to the end of the workday on October 8, 2002. **You must request this informal conference with Sheriff Carter or his designee and schedule it with him within the five (5) workday period.** Any response, which you timely provide will be considered by him before final action is taken.

If you do not agree with this discipline you may contact the Sheriff's Administrative office either in writing to 328 Applestill Road, El Centro, 92243 or by phone at (760) 339-6301 to schedule an appointment with Sheriff Carter or his designee. If you do not respond in writing or by phone by Tuesday, October 8, 2002 by 1700 hours, the proposed discipline will be imposed and you will be notified of the dates of suspension.

Whether or not you respond to this letter or request an informal conference, if the discipline becomes final on October 8, 2002, as a regular full-time employee, you have the right to file an appeal of your suspension with the Imperial County Employment Appeals Board within ten (10) working days pursuant to Chapter 10.5 of Division 4 of Title 2 of the Codified Ordinances of Imperial County.

**THIS DOCUMENT WILL BE PLACED IN YOUR OFFICIAL PERSONNEL FILE ALONG WITH ALL ATTACHMENTS WITHIN 30 WORKING DAYS OF THE DATE OF YOUR RECEIPT OF THIS LETTER. PRIOR TO THE EXPIRATION OF THE ABOVE PERIOD, YOU HAVE THE RIGHT TO SUBMIT A STATEMENT WHICH WILL BE ATTACHED TO THIS DOCUMENT AND PLACED IN YOUR PERSONNEL FILE.**

00392    **Ex. 18**

728

October 3, 2002
Page 5

Sincerely,

Harold D. Carter
Sheriff-Coroner-Marshal

By:     Sharon Housouer
        Chief Deputy

HDC:SH:ba

Enclosures:     Copy of County Ordinance 24452
                Copy of Department Policies and Procedures
                Copy of Internal Affairs File

**I hereby acknowledge that I have received, read and am aware of the
contents of this Notice of Proposed Disciplinary Action.**

**Signature_____     Date _10/13/02_____**

§ 24452.                    Disciplinary Procedures

§ 24452.   Cause for Disciplinary Action.

The causes justifying disciplinary action against a County employe
shall include, but not be limited to, the following:

(a)  Immoral or unprofessional conduct;

(b)  Deliberate or repeated absence from duty without
     authorization;

(c)  Dishonesty;

(d)  Incompetence;

(e)  Evident unfitness for service;

(f)  Physical or mental condition unfitting him to discharge
     his duties;

(g)  Violation of or refusal to obey reasonable regulations
     prescribed by the Board of Supervisors or by the department
     head;

(h)  Conviction of a felony or a crime involving moral turpitude;

(i)  Neglect;

(j)  Insubordination;

(k)  Continued absence after exhaustion of sick leave, compensate
     overtime, vacation and leave of absence;

(l)  Improper political activity which constitutes a violation
     of Federal or State laws or ordinances of the County of
     Imperial;(Ord. No. 703; eff. Aug. 31, 1979, retroactive to June
     29, 1979.)

(m)  Neglect or willful damage to public property or waste of
     public supplies or equipment;

(n)  Falsifying information on employment application, personnel
     records or County records;

(o)  Gambling on County premises;

(p)  Drinking or possessing any alcoholic beverage on County
     premises or on County time;

(q)  Reporting to work while under the influence of alcohol or drugs;

(r)  Sleeping on duty.

00394   **Ex. 18**
730

1       L COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

| SUBJECT: | |
|----------|--|
| RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT. | PAGE 2 |

2.1.01   UNDERLINE[VIOLATION OF RULES]

EMPLOYEES SHALL NOT COMMIT ANY OTHER ACTS OR OMIT ANY OTHER ACTS WHICH CONSTITUTE A VIOLATION OF ANY OF THE RULES, REGULATIONS, DIRECTIVES, ORDERS OR POLICIES OF THIS DEPARTMENT, WHETHER STATED IN THIS GENERAL ORDER OR ELSEWHERE.  IGNORANCE OF THE RULES, REGULATIONS, DIRECTIVES, ORDERS, OR POLICIES SHALL NOT BE CONSIDERED AS A JUSTIFICATION FOR ANY SUCH VIOLATIONS.  EMPLOYEES SHALL BE RESPONSIBLE FOR THEIR OWN ACTS, AND THEY SHALL NOT SHIFT TO OTHERS THE BURDEN OF RESPONSIBILITY FOR EXECUTING OR FAILING TO EXECUTE A LAWFUL ORDER OR POLICE DUTY.

2.1.02   INSUBORDINATION

EMPLOYEES SHALL PROMPTLY OBEY ANY LAWFUL ORDERS OF A SUPERVISING EMPLOYEE.  THIS WILL INCLUDE ORDERS RELAYED FROM AN EMPLOYEE SUPERVISOR BY AN EMPLOYEE OF THE SAME OR LESSER RANK.

00395    Ex. 18

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
| | | RULES OF CONDUCT | 2.1 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.

PAGE 4

2.1.04    INCOMPETENCE

EMPLOYEES SHALL MAINTAIN SUFFICIENT COMPETENCY TO PROPERLY PERFORM THEIR DUTIES AND ASSUME THE RESPONSIBILITIES OF THEIR POSITIONS. EMPLOYEES SHALL PERFORM THEIR DUTIES IN A MANNER WHICH WILL TEND TO ESTABLISH AND MAINTAIN THE HIGHEST STANDARDS OF EFFICIENCY IN CARRYING OUT THE FUNCTIONS AND OBJECTIVES OF THE DEPARTMENT. INCOMPETENCY MAY BE DEMONSTRATED BY A LACK OF KNOWLEDGE OF THE APPLICATION OF LAWS REQUIRED TO BE ENFORCED, AN UNWILLINGNESS OR INABILITY TO PERFORM ASSIGNED TASKS. THE FAILURE TO CONFORM TO WORK STANDARDS ESTABLISHED FOR THE EMPLOYEES RANK, GRADE, OR POSITION, THE FAILURE TO TAKE APPROPRIATE ACTION ON THE OCCASION OF A CRIME, DISORDER, OR OTHER CONDITION DESERVING POLICE ATTENTION, ABSENCE WITHOUT LEAVE; OR UNAUTHORIZED ABSENCE FROM THE ASSIGNMENT DURING A TOUR OF DUTY. IN ADDITION TO OTHER INDICIA OF INCOMPETENCE, THE FOLLOWING WILL BE CONSIDERED PRIMA FACIE EVIDENCE OF INCOMPETENCE: REPEATED POOR EVALUATIONS OR A WRITTEN RECORD OF REPEATED INFRACTIONS OF THE RULES, REGULATIONS, MANUALS OR DIRECTIVES.

**Ex. 18**

00396                    732

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
| | | RULES OF CONDUCT | 2.1 |

| SUBJECT: | |
|----------|--|
| RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT. | PAGE 5 |

2.1.05    CONFORMANCE TO LAWS

A. EMPLOYEES SHALL OBEY ALL LAWS OF THE UNITED STATES, OF THIS STATE, AND OF THE LOCAL JURISDICTION.

B. AN INDICTMENT OR INFORMATION FILED AGAINST AN EMPLOYEE, OR A CONVICTION OF THE VIOLATION OF ANY LAW SHALL BE CAUSE FOR DISCIPLINARY ACTION.

2.1.06    UNBECOMING CONDUCT

EMPLOYEES SHALL CONDUCT THEMSELVES AT ALL TIMES, BOTH ON AND OFF DUTY, IN SUCH A MANNER AS TO REFLECT MOST FAVORABLY ON THIS DEPARTMENT.  CONDUCT UNBECOMING OF AN EMPLOYEE SHALL INCLUDE THAT WHICH TENDS TO BRING THIS DEPARTMENT INTO DISREPUTE OR REFLECTS DISCREDIT UPON THE EMPLOYEE AS A MEMBER OF THIS DEPARTMENT, OR THAT WHICH TENDS TO IMPAIR THE OPERATION AND EFFICIENCY OF THIS DEPARTMENT.

00397 **Ex. 18**

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
| | | RULES OF CONDUCT | 2.3 |

SUBJECT:
RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.                    PAGE 14

2.3.03   UNDERLINE{USE OF WEAPONS}

EMPLOYEES SHALL NOT USE OR HANDLE WEAPONS IN A CARELESS OR IMPRUDENT MANNER.   EMPLOYEES SHALL USE WEAPONS IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENTAL PROCEDURES.

2.3.04   ARREST, SEARCH AND SEIZURE

OFFICERS SHALL NOT MAKE ANY ARREST, SEARCH OR SEIZURE WHICH THEY KNOW OR OUGHT TO KNOW IS NOT IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENT PROCEDURES OR POLICIES.

2.3.05   USE OF FORCE

OFFICERS SHALL NOT USE MORE FORCE IN ANY SITUATION THAN IS REASONABLY NECESSARY UNDER THE CIRCUMSTANCES. OFFICERS SHALL USE FORCE IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENTAL PROCEDURES.

2.3.06   TREATMENT OF PERSONS IN CUSTODY

EMPLOYEES SHALL NOT MISTREAT PERSONS WHO ARE IN THEIR CUSTODY.   EMPLOYEES SHALL HANDLE PERSONS IN ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENTAL PROCEDURES.

00398   **Ex. 18**

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | For the record it's approximately uh 1:30 on uh November the uh 8th 2002. Uh present in the room is myself, uh Sheriff Harold Carter, uh Deputy Tackett, and his legal representative Fields. Uh this is a meeting for uh Deputy Tackett's response to me uh for any mitigating circumstances that he may have to mitigate a recommendation for termination that was delivered to him on October the 11th of 2002, uh citing unprofessional conduct, dishonesty, uh refuse to obey reasonable regulations as prepared by the Board by the Department head insubordination uh conduct unbecoming and uh testimony by, so are we ready to proceed here's your chance to uh explain to me any mitigating circumstances that you may have that cause me to overturn this recommendation for termination. |
| **FIELDS:** | Thank you Sheriff um I think we've been through these before but just for the benefit of the record and for, for Justin um, we'll both be sort of presenting our, our side uh here, |
| **SHERIFF CARTER:** | That's fine. |
| **FIELDS:** | And um going back and forth and if at any point you have any questions of either of us or choose to wait till the end um, whatever, it's, it's certainly your, your call on that, whatever you desire, um, I think from the outset it, it's important to set the stage for um, this Deputy relative to the uh sort the, the avalanche of discipline that has been uh falling on him of late as you I think you're aware there are two other suspensions that are, are already been uh approved and are now awaiting hearing for, before the EAB um there is uh another suspension that I think probably talk about today um terms of uh another allegation |

1

## Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

misconduct against, against Deputy Tackett, but I think it's important to set the stage that all of this has occurred while under the supervision of Sergeant Avila and under the, uh, under Chief Deputy Housouer, um his uh supervision prior to, this, this, this, supervision arrangement, and the supervision since he's been transferred uh up until he was put up on Administrative leave. Um has a very different view of him has a view of him as a good hard working honest Deputy and for some reason there is a disconnect with uh with these individuals and I don't want to stress it too much other than to set the stage for um the fact that there just apparent, disagreements and apparent problems uh with respect to that which I, I think have, have, you know have cause um a lot of this and really are, are at the crux of it. With respect to the termination it is based on essentially one incident, and I'm confident that once we explain our side of that incident to you, you will see that essentially um Deputy Tackett really didn't do anything wrong, he was doing as he was told by Sergeant Avila and didn't disobey his direct order with respect to the direction that Sergeant Avila did give him, with respect to doing the searches and, and initiating the search um and um essentially you know with respect to it you know he just really didn't do anything wrong um again there have been disagreements with him and, and going into, to this um to this incident um had you been given direction by Sergeant Avila not to do uh certain types of uh work?

TACKETT:        Yes.

FIELDS:         And what was that direction?

TACKETT:        Um, one of the directions on that type of work was searches, uh initiating parole and probation

2

00694

**Ex. 19**
736

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
| | searches um, and he also later gave me a direction of no longer sitting uh people in the back seat, where there's, |
| **FIELDS:** | Okay wait, in, in terms of this? |
| **TACKETT:** | Right, |
| **FIELDS:** | No parole or probationary search? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Now to the best of your knowledge, how many other people has Sergeant Avila uh supervise while he was supervising you?  In terms of you know he was (unintelligible)? |
| **TACKETT:** | The arrest in the county, right. |
| **FIELDS:** | Okay and how many, how many Deputies would that specifically be, I mean roughly? |
| **TACKETT:** | On a shift or? For? |
| **FIELDS:** | Just how many people was he the direct Supervisor for?  If you know? |
| **TACKETT:** | I wouldn't say exact, approximately I would say about of and on 10 different Deputies. |
| **FIELDS:** | Okay. |
| **TACKETT:** | Somewhere around there. |
| **FIELDS:** | And to the best of your knowledge have other Deputies have been given that instructions? |
| **TACKETT:** | No. |
| **FIELDS:** | So it was just you, as far as you know? |

**Ex. 19**

3

00695          737

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:** Correct.

**FIELDS:** Okay so you're not suppose to initiate any searches or uh any probationary searches or, or any anything like that is that correct?

**TACKETT:** Correct any type of search.

**FIELDS:** And you said any type of search, okay, um now, as far as you know with that mean if you were dispatched as back up or something like that to uh a call that you shouldn't respond to it?

**TACKETT:** No as far as, as what that was, what I was told was as far as initiating any parole or probation searches, I would not initiate any myself.

**FIELDS:** Okay so now on this day, the, the day in question with respect to this particular um incident, um just looking here at the package um you, you notified them that you intended to um conduct some type of, of operation, correct?

**TACKETT:** Correct.

**FIELDS:** What did you talked to him about? And when I say him I mean Sergeant Avila.

**TACKETT:** It was uh, Summary Probation. It was as far as a person moving from the County area which we call it the Poe sub he recently moved into the city of Calipat, and that's what it was referring to.

**FIELDS:** Okay now when you say Summary Probation, just so for the record, so we're all clear, what does that mean in terms of the type of follow-up and that type of thing?

**Ex. 19**

00696  738

4

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Summary Probation it comes with uh terms and guidelines which is uh one of the ones was that this person was a Narcotic Registrant, which when he moves in different City or County, he is suppose to go to that City or County and register as a Narcotic Registrant and the other would be a uh the search terms which, would you would have to his place, person, property to uh a search. Um the next one would also be as far as if there was an assumption that if I thought that I need to uh accumulate urine sample, something like that I would be given that opportunity if I wanted that as far as a peace officer, now the cour..., the court gives all these guidelines usually on a Summary Probation, so it's on certain guidelines, |
| **FIELDS:** | So it's basically just to boil it down it gives you as an officer certain rights to do certain things that you wouldn't miss be able to, let's say, |
| **TACKETT:** | Correct. |
| **FIELDS:** | Be as a condition of a probation you would waive some of your rights. |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay, um so with respect to this, um now you had direction not to do these types of searches is that correct? |
| **TACKETT:** | Not Summary Probation. |
| **FIELDS:** | Okay what exactly had you been given direction on ahead of time, in terms of the prior direction that you were given by Sergeant Avila? |

00697   **Ex. 19**

5

739

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Sergeant Avila instructed me not to do any Parole or Probation Searches for the fact that they have Parole or Probation Officers. |
| **FIELDS:** | Okay, and that's, that is actually in here on page 2, now what your saying with the Summary Probation is that there is no parole or probationary officer assigned to that person, correct? |
| **TACKETT:** | Correct, actually the court is the one that violate them, I mean the court gives them the peace officer that opportunity to give as far as the fourth waiver just to make sure that there following the guidelines. |
| **FIELDS:** | So I suppose under one set of circumstances one could say that the direction of Sergeant Avila had given you not to conduct certain types of searches when it is not applied here? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay but even inspite of that, you still did go to him and request permission?  Correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay so even though there was a certain way of looking at it but because there was nobody to conduct these types of follow ups, and he had given you that specific direction, but you still went and asked him, correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay now before asking him had you done any background or any kind of work-up so that when you went to him, you could talk intelligibly about it? |

**Ex. 19**

00698

740

6

# Imperial County Sheriff's Department
## Administrative Investigations Unit

328 Appiestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Yes, as most of, most on any case or any kind of activity that you're going to have as far as law enforcement or even as in regular work you're going to accumulate information or find out all or you want to find everything out and present it to that person, you're going to present to, to show, to show that, what you have prepared already and basically what happened is that I got some information from a CI about this person and I check, I already knew about this person already from prior incidents where uh, Investig, Investigator Vela, and Deputy De Leon had arrested this person, and that's how I knew that he was on Summary Probation. |
| **FIELDS:** | Okay so, you knew that Vela and De Leon had had history with this, with this individual, with this subject? |
| **TACKETT:** | Correct. |
| **FIELDS:** | The suspect, okay and so you did some follow up, did you talk to those, to those particular individuals on the department? |
| **TACKETT:** | Yeah. |
| **FIELDS:** | Before talking to Avila? |
| **TACKETT:** | Yes. |
| **FIELDS:** | And what did you talk to them about? |
| **TACKETT:** | About the case, about the information I uh obtained uh whether they wanted to participate if we were allowed to take any kind of action on it? |

00699   **Ex. 19**

7

741

# Imperial County Sheriff's Department
## *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-015
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Okay and did was it your intention just to see basically whether they would be able and interested in doing that? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay um at some point did you then go to Sergeant Avila, with the information you had to talk to him about, about whether or not he would authorize you to do that? |
| **TACKETT:** | Yes. |
| **FIELDS:** | And what did he say? |
| **TACKETT:** | He said, no, that at first he said no because they had Probation Officers and I had informed him that Summary Probation, they don't have Probation Officer's and so he goes, okay well still no, but then I asked him if I can take it to Calipat, so they would be aware this person is moving into their City and he said yes. |
| **FIELDS:** | Okay so just for clarification the person had previously resided in the County then moved to Calipat? |
| **TACKETT:** | Yes. |
| **FIELDS:** | Like recently? |
| **TACKETT:** | Yes. |
| **FIELDS:** | Okay um so at some point did you then go and um to, to Calipat PD? |
| **TACKETT:** | Yes. |
| **FIELDS:** | And when you got to Calipat PD, who was there? |

8

00700      **Ex. 19**

742

## Imperial County Sheriff's Department
### *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | There was, at first it was just Chief Gomez, |
| **FIELDS:** | Okay and was your conversation that you had with the Chief, I mean the conversation that you had was it, you said at first Chief Gomez but your conversation was it between you and the Chief? |
| **TACKETT:** | Well there's first it started me and the Chief and then Officer Granado came in, |
| **FIELDS:** | Okay. |
| **TACKETT:** | And then later on uh Deputy De Leon would come in. |
| **FIELDS:** | Okay but I mean your conversation I guess, I'm trying to explain, your conversation you started talking to the Chief? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay and what essentially did you tell him? |
| **TACKETT:** | Basically came in and asked him if he had known this person and he uh from what I recall said no um I told him this person moved to the County and if he had registered in, in his City he said no um I'd given it to him I said well I'm handling this over to you uh this person is in here, here's the instructions the guidelines this is the information I got as far as my, my Confidential Informant um and from there we just started discussing back and forth different types of terms, who the person was and such as that. |
| **FIELDS:** | Okay did, did the conversation or did part of the conversation ever entail why either you wouldn't or couldn't do this? |

9                    00701

# Imperial County Sheriff's Departme

### *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Yes, it did. |
| **FIELDS:** | And what did that, par...part of the conversation entail? |
| **TACKETT:** | The conversation basically entailed he asked me most law enforcement when you get usually information they usually want you, you know you catch it, you clean it, kind of thing, um so he kind a basically ask me you know why don't you guys act on it, and I just basically advised him that I was instructed that I couldn't as far as in the City, in the City activity or any activity such as like that like Sergeant Avila advised me that I drop this off that I was not allow to do a search over here on this and especially since it's in the City and the only way that I could be able to do an activity per Sergeant Avila, Avila in the City is if they required assistance and that was it. |
| **FIELDS:** | Okay so basically you couldn't initiate but you could be back up?  I mean, |
| **TACKETT:** | Right basically what Sergeant Avila told me. |
| **FIELDS:** | That is what he told you.   So you were just relaying what the instructions you'd been given by your Sergeant? |
| **TACKETT:** | Right. |
| **FIELDS:** | In the process of doing that did you bad mouth Sergeant Avila, did you in any way say you know or I use bad mouth him, I mean did you I think we all use this as a general term, did you bad mouth him in any way? |
| **TACKETT:** | No. |

10                                          **00702**

**Ex. 19**

744

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**FIELDS:** Did you badmouth the Department for not letting you do, you know Police work or anything like that?

**TACKETT:** No.

**FIELDS:** Okay now um you leave, at some point I imagine you, you're done you drop off the information and leave is that correct?

**TACKETT:** Correct.

**FIELDS:** Okay now, clear to say that at that point you just go back to your regular patrol duties for some period of time?

**TACKETT:** Went back to patrol duties for a couple of minutes and but then ended up, me and Deputy De Leon uh for lunch I believe it was, Carls' Jr., I think it was.

**FIELDS:** Okay, okay so lunch um at some point do you get called back to Calipat to assist?

**TACKETT:** After I responded, yes, I did after I responded to uh a 10851 in progress in Brawley.

**FIELDS:** Okay so 10-8-51, if

**TACKETT:** Which is stolen vehicle,

**FIELDS:** Is Brawley?

**TACKETT:** Right.

**FIELDS:** And then at some point you do get call back to this, correct?

**TACKETT:** Correct.

00703
**Ex. 19**
745

11

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Now, did you in any way ask the Chief to be involved you know asked anyone, the Chief, or anyone else to be involved in this, in this um action in, in Calipat? |
| **TACKETT:** | No. |
| **FIELDS:** | Um, where you aware at all that they had asked for you by name? |
| **TACKETT:** | No. |
| **FIELDS:** | Or if they had asked for you by name? And, and if so where you aware that they had asked for you by name? |
| **TACKETT:** | No, all I did was give the information and told them if they needed any assistance that we were here and just as far as that Chief Gomez said thank you and took the information and I left. |
| **FIELDS:** | So were you at some point you were at some point called back to this, to assist? |
| **TACKETT:** | Correct. |
| **FIELDS:** | But it wasn't anything you had initiated in any way? |
| **TACKETT:** | No. |
| **FIELDS:** | Um now that's basically what happened?   I mean that's, that's, that's you know pretty much from beginning to end.   You know that's what happened he um gets information uh puts it together, asked other Officers if they're interested, other Deputies if they're interested in assisting if he doesn't Sergeant says don't do it, but it's okay to drop it off, goes and drops it off and gets called back and assists.   Now a lot |

00704 **Ex. 19**
746

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

        things are misunderstood and twist and turns through out this but that's it from beginning to end I mean that's a reader's digest version but that's essentially what happened, I mean there's, there's not any grand elaborate scheme, I mean one, if, in order to believe that Deputy Tackett is lying about all this you'd have to believe that there be some elaborate scheme that involved the Chief of Police being literally stupid enough to buy into this, um which there's no evidence that he is, I mean he's certainly not a stupid man and certainly can understand if he was being deceived by a Deputy from the Sheriff's Department with you know no where near the (unintelligible) experience that he has. Um the bottom line is that you know he was you know with respect to allegations of insubordination he was ordered not to conduct a search, um and he or to, or to initiate a search, and Tackett did not initiate this search he was, he was you know dispatched there to assist and which is all he did. Um he was given permission to, to get, to give the information to Calipatria and that's all he did he gave it to the Chief and explained why he couldn't do it, now did the Chief ask, did the Chief ask you or did you, did you volunteer why you weren't doing it or did the Chief ask you?

**TACKETT:**    No like I said, the Chief asked me, he asked me, I basically kind a like in an expression I said if, if uh why if we had this information, why we don't act on it? And that's when I relayed it back, why we didn't.

**FIELDS:**    Okay now um did you actually do the search even when you, did the call, what, what did you do when you were call back to assist?

**TACKETT:**    Basically when we call, well it wasn't just me, it was me and another Deputy, Deputy De Leon.

00705 **Ex. 19**

747

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

Um when we both showed up and the Officers waiting there asked if we can stand by with him as he went to approach the person and uh the subject and when he approached him we went ahead stayed in our cars actually I think Deputy De Leon got out I stayed in my car, as he talked to the person, um after I guess talking to the person the Officer said you wanted to go inside and if we would go in side and assist him and we said okay and so me and Deputy De Leon went inside with him um Officer went in one place and he asked me and De Leon to uh basically watch for the kids and watch the room while he went to uh a different room, I forgot to which room he went to first and then he advise me if I could go into one room and watch that room and just look around the room and he had uh De Leon look in on the other room and make sure there was nothing in that room and uh it was a pretty big house, and then,

FIELDS:          But basically you were just taking direction from, from, from the Calipat Office?

TACKETT:         Right, right, right,

FIELDS:          Who was actually doing the search.

TACKETT:         Right, whatever he asked us to assist him on we just went ahead and assisted him on.

FIELDS:          Um did you have, I mean, you gave the information to Calipat, now they could have easily have just ignored it and not done anything, I mean you didn't, you didn't just to be clear, you had no part in initiating it from the perspective was that all you did was handed over to Calipat, it was up to them to do with it what they wanted to?

14

00706
**Ex. 19**
748

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay um and just to also be clear did you ever ask uh Chief Gomez, Granados, anybody else to ask for you?  Or to you know request you by name or anything like that? |
| **TACKETT:** | No. |
| **FIELDS:** | Now there's a couple of interesting things um Sheriff that I think they're worth pointing out, in um, Avila's statement, I know you don't have a packet in front of you but just for clarification for the, for the record, Avila's statement um he talks about well first of all he says that he thinks and it's kind a ironic, but he thinks that he says or he thinks that he does state that Deputy Tackett is a good um, is a good Officer and I'm trying to find that real quick.   Um Deputy Tackett is a good Officer, good Officer in a sense he goes out there and does work he goes out there and does cases he's a go get her, and that's essentially what we have, we have somebody that is, is pro-active and in spite of the fact that he has a Sergeant that clearly is trying to you know make him less pro-active, um he's s till not being insubordinate I mean he's asking for permission, to do something Sergeant says no, do it this way so he does it that way, and, and that's the bottom line um but he does say he's a good Officer and the other thing he acknowledges which I think is perhaps the most ironic is that he acknowledges that he heard and this is this is Sergeant Avila he acknowledges that he heard um that Deputy Tackett was being dispatched to this, to this call and it's on page 7 of this statements um he, he acknowledges that he heard, heard it and it's almost like he's entrapping it, he's, he's I mean if he's gong to find fault which apparently he does, with what |

15

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | Deputy Tackett did, why didn't he step in and say don't go to the call, I mean has he, on other occasions when he's heard you know he's monitoring the radio obviously your monitoring the radio has he, in other occasion has he heard you or others dispatch to certain calls that he's then you know pulled you away from? |
| **TACKETT:** | Called us off? |
| **FIELDS:** | Called you off? |
| **TACKETT:** | Correct. |
| **FIELDS:** | And did he do that here? |
| **TACKETT:** | No. |
| **FIELDS:** | Again that's on page 7, so I think that's, |
| **SHERIFF CARTER:** | I think it wasn't clear on page 7 that this was the call you were going to? That you were going to do a uh probation search? |
| **TACKETT:** | Correct and I believe he even says that, |
| **FIELDS:** | When he tells me that he is going to follow up and in reality he's doing a probation search, that was in here, |
| **TACKETT:** | I think you kind a have to flip over one page. |
| **FIELDS:** | I thought it was here. |
| **TACKETT:** | Maybe in the front of it. |
| **FIELDS:** | I thought it was in the entry, yeah it's here, I'm sorry that was the untruthfulness I didn't realize (unintelligible) um I'm sorry it's on page 4 Sheriff, I'm sorry, about that time, I heard over the radio transmission on the 31st, I heard over |

16                                                       00708 **Ex. 19**
                                                              750

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

the radio transmission that Calipat, that Calipat wanted assistance and then he mentioned Tackett by name to go help him on a parole search, excuse me I think it was a probationary search, so after maybe about an hour I went to Calipat and I talked to the Chief of Police and asked him and I told him that Tackett was in their city and said that was going to do a probation search and he tells me yeah he was here and I guess he was here talking to you when he was saying yes, yes Sergeant ect, but he goes on to say I mean basically he then falls up with the Chief to ask you know why Tackett etcetera. Well Tackett never asked to be for name I mean they just chose to ask, which certainly makes sense, I mean it's you know if Tackett can't initiate but you know but they want his assistance and certainly makes sense they would ask for him.

**SHERIFF CARTER:** And, and where in Vela's statement does it say that uh Justin approached to requested to ask permission to go to Calipat?

**FIELDS:** It's not, it's not a relevant statement,

**TACKETT:** Avila not Vela.

**FIELDS:** Sergeant Avila, Avila's statement, its on page 4.

**SHERIFF CARTER:** That's where I am.

**FIELDS:** Oh I'm sorry, page, where he asked for permission or that?

**SHERIFF CARTER:** Where he asked for permission to go to Calipat?

**FIELDS:** Um, I, I guess I'm confuse Sheriff, permission, uh?

17

**Ex. 19**
751

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:** Uh well wait a minute,

**FIELDS:** Okay.

**SHERIFF CARTER:** Justin wanted to go do the search, he said no you can't do the search so Justin said can I take the information to Calipat? Where is that in, in a statement?

**FIELDS:** Oh I don't let me see um,

**TACKETT:** It's gott'a be when I first talked to him.

**FIELDS:** Yeah, let me see.

**SHERIFF CARTER:** Is it, the uh in the first part of the statement?

**FIELDS:** It is, that, that wasn't what I was trying to point out to you but let me see,

**SHERIFF CARTER:** I can probably find that.

**FIELDS:** Okay. Uh it was probably maybe right here.

**TACKETT:** It's probably right in there somewhere. See he keeps mixing up the Davila case.

**FIELDS:** Yeah.

**TACKETT:** And that Davila the parolee, with what I'm telling her. Well basically right where is when, when he actually calls me, cause he knew I was there, and he called me and this is where the yes, Sergeant, yes, thing is, so that's when he called me while I was at the Department saying okay now you need to go.

**FIELDS:** Well I think they also might be able to find it in um ...uh Chief Gomez acknowledges he talked to

18

00710 **Ex. 19**
752

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

Sergeant Matus but he didn't say about that, I think,

**TACKETT:** Sergeant Avila.

**FIELDS:** Sergeant Avila, I'm sorry. Um I think it's in let me see in the findings,

**TACKETT:** Or it might have be in mine, but the questioned was not posed to him about it, I think.

**FIELDS:** No it's not in a statement, I'm looking for a statement it's not that, that particular direction is not in the statement, I'm looking at the portion where um the, the portion I say on page 4 was the reference to um him to Sergeant Avila, uh stated that he heard the radio transmission and didn't do anything about it um I suppose if he hadn't given Justin the ability to at least he called for um you know if he was dispatched for those that even worst because he certainly knew there was an issue but it's interesting he talks he references in that statement on page 4 and I think it carries over to page 5, that he then went over to talk to Chief Gomez, and that Chief Gomez according to his characterization of the conversation Chief Gomez says um that you know that Justin wanted to do the search or something like that but that's certainly isn't what um what the Chief's statement is, if you look at the Chief's statement it's, it's exactly as Justin has, has characterized it that basically um he was told that you know couldn't um you know um, do the search but um and that's, that's basically it, um, he just came in and offered it, that's Chief's statement. Um, that he wanted to do a probationary search, mentioned he wanted a probationary search he said he couldn't do it, he was instructed by his Supervisor I mean this is all, paraphrasing the,

19

**Ex. 19**

00711     753

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

the statement of the, of the Chief um, so I, I, don't know I mean there certainly seems to be some conflict there between what the Chief is saying and what, and what Sergeant uh, uh what Sergeant Avila is saying. Um, and again why didn't he stop him, if he knew that there was, why didn't he stop him, if he though it was an issue, um, it, when he heard it on the air, which obviously he'd admits to doing. Know, with respect of Unbecoming Conduct, uh, it doesn't appear that anything that Justin said to, I mean to the Chief would of certain be unbecoming uh, he's explaining why he's there, what's he's doing there, what information he has and why he cant do it himself. And again if you read the Chief's statement there's nothing in there to indicate in any way that Justin bad mouth either his Supervisor or the Sheriff's Department would show certainly potentially give rise to an allegation legitimate allegation of unbecoming conduct. Um and that you know he stressed Justin's stressed and again it's in the Chief's statement, that um, his Supervisor didn't want him, doing work and you know in other Cities that he was there to uh you know primary function what's to serve the communities that, that he's designed to serve um, and that um, you know the Chief added that he thinks you know even after all this and after the conversation that there's a good working relationship etcetera certainly nothing Justin did in any way sour any kind of relationship that your agency has with his agency um, now it's interesting because there's some seems to be some difference in what was over heard by Granados and De Leon when they came in to the conversation that Justin was having with the Chief and that's what I was trying to stress that the conversation was between him and Justin, I mean between Justin and the Chief, and the

00712 **Ex. 19**

754

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| | others initially just came in I mean you were having a conversation with the Chief, correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | And they appeared, appeared to overhear something that was very different from what the Chief heard, well you know it's not unusual that if you come in to a conversation and overhear something that's not between you know you're not really a part of, you can easily misinterpret what's being said and you know I, I certainly would invite you to contact the Chief if, if you feel it appropriate and ask you know and re-ask him yourself you know uh man to man did, did Justin say anything to disparage either the Department or, or you know and in fact you know it's my understanding that he appreciated the information, I mean it's certainly he, he was something was unaware of is that correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | He wasn't aware of this individuals and obviously they chose, to act on it, so obviously it was information that in fact they in fact wanted I mean maybe they didn't want from the outside because they didn't know it existed but certainly it was information they didn't appreciate so to blame Justin for bringing it to their attention um seems, seems inappropriate, um and, and again it, they only way to characterize this if you were to believe that this assumption, I mean it seems unfathomable to believe that this would be some grand scheme to um conduct what would otherwise be a minor probation search I mean it's not a this isn't a big um it isn't a in the grand of schemes of things it isn't a huge deal obviously it was important to the City of Calipat and what they chose to act on it but it seems |

21

**Ex. 19**

00713

755

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

hard to believe that they would have um you know that, that Justin would contrive this whole thing just to um just to be able to do the search, um and with respect to the, the untruthfulness allegations um the well I, I think we've touch on a lot of it the, the allegation of um you know doing the search whether or not I mean it, it appears clear from the package and clear from you know from what was going on that Sergeant Avila's direction was complied with. And that Justin never lied to him about what, what you know what he was doing in, in the morning when you were gathering as you were gathering the information and um, um talking to him did you tell him anything that was untrue with respect to what you were trying to do or why you were trying to do it?

TACKETT:        No.

FIELDS:        Now again De Leon seems to be confuse when, when overhearing the conversation between Justin and the Chief and that, that apparently gives rise to some of the allegation, when you, when you're looking at the allegations um and you look into the facts here and the sheet that you have um, you know as you kind a go through it, Sergeant Avila asked him just looking trying to figure out where the untruthfulness, Sergeant Avila asked me what you were working on, you (unintelligible) to be assisting Vela in conducting a follow up investigation a couple of cases in Westmoreland, Calipat, how, how, how did that misunderstanding come about?

TACKETT:        Well it's kind a like I said I talked to the Deputies before and I told Vela and uh um Deputy De Leon that it was there case prior and basically that the fact that this is what we had

00714

**Ex. 19**

756

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

and if they wanted to assist me? And if we went back to the house and if we were able to do it and then Vela said he couldn't cause he's busy in cases and Deputy De Leon said he could and uh so I told him basically once it was approved by Sergeant Avila that we would do it and if not then we wouldn't do it. So I think that's the reason they got mixed up, is when I was telling Sergeant Avila, when I said about, I don't know maybe if he you know after thinking about it all back after I was trying to recall it here to assist and was saying I assisted or what but even if he says he says I tell him it's been adjudicated, so I could I be assisting somebody if the case is adjudicated already, and so that's basically that's I don't know if he got his I mean his words mixed up or what but I mean as far as our conversation I told him exactly what when I said from the get go, is what I went ahead and talked to the Deputies first I went over the stuff as far as the case I went over if it was there case, asked them if they wanted to go along since it was their case that he was on summary probation for and they,

**FIELDS:**    And just to be clear the reason you got involved it was your CI that gave the information?

**TACKETT:**    Correct, my CI, my CI gave me the information um my CI that particular CI has been given a lot of information to a couple of big busts up in the North County area, so and he had told me he'd given it in the morning he had said that the stuff should be there in the morning if we acted on in the morning which is why I was trying to get everybody as far as people that were around a the time and talking to them, like when Deputy De Leon and Vela because Avila was not in the office in the morning so I went ahead and talked

**Ex. 19**
.23                 **00715**
                              757

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|          |          |
|----------|----------|
| | to them while they were there trying to get it all together. |
| **FIELDS:** | Now it appears that there's some dis, I don't know some confusion about weather or not you were trying to do it child endangerment type follow up or a probation search, you, I mean, |
| **TACKETT:** | Well it is a child endangerment case and that's where he was and actually uh that's where the case was involved in was when he went on Summary Probation was the kid was they had some young kids, I think it was like a 6 month old, 2 year old and a 5 year old and, and uh the case prior they had narcotics and pipes and everything, laid out within the room where the kids where and, and that's what they were arrested prior well in this occasion my CI had told me not only did they had the same materials there as far as the paraphernalia but they had a load of dope that came from South County area up there that they were taking to Indio and so if we acted on that we would find that and so I went ahead and that's what I relayed and the child endangerment they get lice, within the paraphernalia is there again, the whole reason there on Summary Probation was because the kids there again the child welfare is for the same, |
| **FIELDS:** | So, so the conversations you had with Vela and De Leon and with um with Avila were touching on both subjects is that fair to say? |
| **TACKETT:** | Correct, it was touching, basically all the conversation touched was all the terms and guidelines was him to register narcotics him to search uh I was contact you know and the child welfare so I mean that's what basically we all |

**Ex. 19**

24

00716

758

Imperia● ●unty Sheriff's Departme●
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | touch on, on all our conversation in this whole, in everything, |
| **FIELDS:** | There's like allegations where he told me it was a probationary search and he told me it was a child endangerment well he's talking about the whole thing, it's the same issue, and it all doves tail together, is not, is not a manner of manipulating everything to tell somebody one thing and tell somebody something else um, everybody I mean you know the mistakes here are when people hear only what there thinking they hear instead of you know what Justin is talking to this person and tells them this and then tells this person this but the bottom line is that you know he request permission to do one thing the Sergeant gives him instructions to do something else and he does that, and that's really what this case is about um, you know, it, it I, I don't know I mean it's just there's really not too much else to say um did you talk in the morning to De Leon or not? |
| **TACKETT:** | Yes. |
| **FIELDS:** | Okay. |
| **TACKETT:** | As we were loading our units. |
| **FIELDS:** | And did you talk to him about this particular, what you were trying to do or did you not talk to him till after um Sergeant Avila told you, you couldn't do it? |
| **TACKETT:** | No, I talked to him in the morning before all this and actually Vela. |
| **FIELDS:** | And, and I could said I just can't stress enough that in order to believe that Deputy Tackett was lying about this he would have at the out set |

25                  00717

**Ex. 19**
759

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | had to have imagine that he could get another agency, he could dupe another agency into doing a search that they didn't want to do, |
| **SHERIFF CARTER:** | Well, I have a few questions in here, |
| **FIELDS:** | Sure. |
| **SHERIFF CARTER:** | Why didn't you just picked up the phone and called Calipat? |
| **TACKETT:** | I was already near it, um Calipat. |
| **SHERIFF CARTER:** | But that wasn't your beat that day or anywhere your patrol area that day, what, what were you doing there? |
| **TACKETT:** | Basically um as far as like with the beats, did you know Sheriff it's right down Calipat it's really the border line Albright and I had the Summary Probation paper work with me, and that's why the reason I told Avila if it was okay for me to drop it off, as a matter of fact I already had the paperwork and that way that Calipat wouldn't have to go if they needed it, they wouldn't have to go all the way to court to pull that out that I could just drop that paper work for them and that they would have that on hand and so that's the reason I went and dropped that off. |
| **SHERIFF CARTER:** | Didn't uh didn't Calipat act on this because you told them that you had confidential information that there were narcotics involved? |
| **TACKETT:** | Well I don't know what the reason that they acted on it but I gave them the information as far as my CI. |

00718

25

**Ex. 19**

760

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:** So they didn't just act on them because these people were on Summary pro..., Summary Probation, they acted on because you told them you had information from the CI that they were holding drugs?

**TACKETT:** I don't know, I don't know why the reason they decided to finally act on it that could have been uh probably, probably the reason but,

**SHERIFF CARTER:** I mean, what, what if that was the reason that or not that was the information that you gave them?

**TACKETT:** Right, the Summary Probation,

**SHERIFF CARTER:** Summary Probation we, we all understand, is the most least restricted kind probation.

**TACKETT:** Right.

**SHERIFF CARTER:** That a person could be on and uh so, so they had the information from you that these people that you believe these people were involved in drugs?

**TACKETT:** Correct.

**SHERIFF CARTER:** Um, and, and it's my understanding that uh that on several occasions uh Sergeant Avila and Chief Housouer had talked to you about confining and, and directing your activities into the County areas and not in the Cities,

**TACKETT:** They had spoke to me, correct on Brawley.

**SHERIFF CARTER:** And you understood what they were saying, to work,

**TACKETT:** To work the,

**Ex. 19**

27                                    00719        761

# Imperial County Sheriff's Departme
### *Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:**    To work the,

**TACKETT:**    Oh they were telling me that uh that while I was being occupied in the City that's something could happen to the County so that I needed to pertain myself to just that area in the County.

**SHERIFF CARTER:**    Now and, and it's your contention, I mean you're telling me this today that uh that you, you absolutely had authorization from Sergeant Avila to take this information to Calipat?

**TACKETT:**    Yes.

**SHERIFF CARTER:**    And that's uh if he says that's not true that he's lying to (unintelligible)?

**TACKETT:**    Correct as and even like he says in the if you even, even the Chief Gomez and I think it was his too where he says Chief Gomez tells him he calls me at the Department cause he knows I was there and that's the reason for the Sergeant, yes, Sergeant yes, which he asked me, well you're still there? Yes, Sergeant, Okay, you know you've been there long enough, can you get out on Patrol, Yes, Sergeant and that's the reason, that's the reason why that's all he heard because I was just affirming what the Sergeant was asking, so, he even actually called me there.

**FIELDS:**    Uh clarify that, I'm sorry I'm not, I'm not, I'm not understanding that (unintelligible) that you're trying to make?

**TACKETT:**    As, as you look in,

**SHERIFF CARTER:**    When Sergeant Vela call him at that Department.

00720

**Ex. 19**

762

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Yeah Avila called me at the department. |
| **SHERIFF CARTER:** | Avila called me at the department, |
| **TACKETT:** | Cause he knew I was over there, cause I was going over there. |
| **FIELDS:** | Oh. |
| **TACKETT:** | And he just wanted me okay know it's time to leave, you should have handed off by then, go ahead and leave, so that's the reason for that, Sergeant Yes, Sergeant Yes, for that little narrative that you get, that's what it was for. |
| **SHERIFF CARTER:** | Did, did you ever tell um Sergeant Avila that you were assisting Gabe Vela in conducting follow up with investigations on, on a case out of Westmoreland and in Calipat? |
| **TACKETT:** | No like I said I don't know if he got that mixed up with what I was saying with as far as having him assist, assist me on the case that was adjudicated, and they, they were all Summary Probation for, I don't know but what I had told him was basically that this was the case, I'd asked them to assist me on, the case even asked me, has the case been adjudicated I said yes, that's the reason it's on Summary Probation, once that the case had Vela and De Leon handle. |
| **FIELDS:** | Well and, and just to clarify that Sheriff, if, if, Justin had said it's a case that there working on or whatever, how would they ever had gotten around to the end conclusion that um Justin wants to do the Summary Probation search and the Sergeant says no, if that had been the conversation, if the conversation had been Justin assisting Vela, on an active case or something then how would they ever gotten from |

29                                                    00721    **Ex. 19**
763

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | point A to point B, obviously that wasn't the conversation. |
| **SHERIFF CARTER:** | Well Deputy Vela's in his statement as I recall, says that that Justin was not asked to assist him in any way in fact he was told I'll handle this myself on, I'm not sure, (unintelligible) in this case. |
| **FIELDS:** | I'm sorry Vela's says what about what, I'm sorry? |
| **SHERIFF CARTER:** | Gabe Vela, when Justin talked to him about the child endangerment case in Westmoreland, if I recall the statement correctly he told Justin that he didn't need his help. |
| **TACKETT:** | I believe Sheriff, I think what it was I think I know what part you're talking about and that was what Vela said that he does had so many cases that he doesn't need anybody's help that he can handle themselves, that's the reason why, it wasn't I wasn't assisting them, that's, that's the whole, where were going here cause if I was assisting him there wouldn't be this case and he can have it, |
| **SHERIFF CARTER:** | And you're saying is that Sergeant Avila said when he says that you told him that you, he said what are you doing today and you said I'm assisting Gabe Vela with probation, with some search in case in Westmoreland and um, and, and this, this Summary Probation searches that that is incorrect? |
| **TACKETT:** | Correct, I never told that to Sergeant Avila. I told him that based on the fact again I asked them for assistance as far as Vela and De Leon and that the case was Vela's and De Leon, and |

30

**Ex. 19**

764

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

that they was been adjudicated and that's where the reason they were in Summary Probation.

**FIELDS:**  Like I said, sir, like I said Sheriff, they're being no way to get from point A to point B unless the conversation that Justin and Avila had entail a discussion of doing a Probationary Search because um, I mean I'm doing a, I'm doing a Summary Probation search because that's what eventually comes down to they have whatever conversation and eventually Sergeant Avila says you know you can't, I'm not gonna allow you to Do the Summary Probation search well if the conversation again was about Justin assisting Vela in, in some matter that wasn't uh, uh probationary search, then how would they ever how would he'd ever warned them or, or given then the direction not to do the Probationary or not to be the primary on the Probationary search, there'd be no way to get there, there's no way to get from point A to point B they cant assume that the conversation was Justin saying I'm going to assist Vela on some case and then, and then Avila, telling Avila that and then Avila saying well I'm ordering you not to do a Summary Probation search, that would be a total disconnect.

**SHERIFF CARTER:**  Now from reading this, (unintelligible) this case, um, what, its, its, says that in the morning in question, on the day of question Justin said I got this information on from this guy, in Westmoreland you have a case on him and maybe it's child endangerment and this guy needs to be checked out, and Vela said I'll take care of it, and I don't need any help on it.

**TACKETT:**  See and I think that part on that Sheriff too,

31          00723

Ex. 19
765

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

. IA # **2002-007**/# **2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | And then, and then when the Summary Probation case came up in Calipat, Sergeant Avila said, Don't do any Summary Probation Searches unless you have some specific permission to do it and that's, that's what I've got out of reading this case. |
| **FIELDS:** | Okay but, |
| **SHERIFF CARTER:** | Now if that's incorrect, let me, |
| **FIELDS:** | Well I think there is, I'm looking here at the, at the portion of this testimony um with respect with Vela's testimony, I mean again, why would Justin go to Vela and talk to him about and active case when his intent all along is just to try and do a Summary Probation search it just doesn't make any, I mean it just doesn't make sense, why would I go to you and, and talk to top you about an active case that doesn't exist, I mean if he misunderstood Justin um, I suppose that's a possibility I mean he's saying here um, Tackett had asked this is from Vela, Tackett had asked me to do a Parole search, a Probation search and I said no, to clear it through Avila, so I asked Avila if that, I mean that's in here, that's in that's in page 3 of Vela's statement. So Vela, Vela asked Justin asked Vela, if, if he can you know if . he wanted to help, with this probationary search. |
| **SHERIFF CARTER:** | One of the uh, I, I think, you know, one of the allegations is that when the Sergeant said, 'What are you doing" Justin said, "I'm going to assist Vela with this case in Westmoreland. |
| **FIELDS:** | Okay. |

**00724 Ex. 19**

766

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | And then I'm going to do this probation, this probationary search in Calipat and he went to Vela and said, it was, |
| **TACKETT:** | Do you want to pop that one too, Sheriff? |
| **SHERIFF CARTER:** | Yeah I think we better do so. |
| **Side B** | |
| **TACKETT:** | Okay. If I can, can I add something real quick I thinks it kind a what everybody, I mean, |
| **FIELDS:** | Go ahead. |
| **TACKETT:** | The Westmoreland thing, okay um Westmoreland thing I don't really think it was mentioned to Avila, uh as Westmoreland he but they are all thinking of is Davila mentioned parole, that day I never spoke about Davila or parole, it was on a recent on an earlier one that the one I actually went to Westmoreland that day with another, another case and I gave it to Chief Beltran and Officer and uh he said he was going to give that information to uh to Officer Mistriel which I even talked to Mistriel that day and cause Mistrial was doing search warrants and he said he was just going to have Mistriel work on it and that's that okay was given to that, that's the only reason I can see why Westmoreland is still be coming up for that day and nothing that as far as I mean if I wanted to do like Avila says I would have done the same thing with Westmoreland but I had dropped it off and they said they were going to work on it so I said okay and left. |
| **FIELDS:** | What incentive and why would, why would Justin lie about the first part the conversation with, with Vela I mean what, what incentive |

00725   **Ex. 19**

767

# Imperial County Sheriff's Departme

## *Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| | would there be to do that, I can understand one saying well maybe there is an incentive to um you know with respect to the Probationary search or whatever cause he wants to do the search but he tells the Sergeant about that I mean, |
| **SHERIFF CARTER:** | What, what I have Deputy Vela and Sergeant Avila? |
| **FIELDS:** | But they are not saying the same thing Sheriff? Where are they saying, where are they saying a coherent you know statement that, that then? |
| **SHERIFF CARTER:** | Vela's saying yes, Justin talked to me about this case in Westmoreland and I told him I'll handle it. Okay. |
| **FIELDS:** | But it's a different case, right? |
| **TACKETT:** | Yeah the case in Westmoreland was never his that was never, the only case that was Vela's was the one in Calipat. |
| **SHERIFF CARTER:** | And what, and what? |
| **TACKETT:** | Or was. |
| **SHERIFF CARTER:** | And what uh Avila's saying is I ask Justin "What he was doing?" and he said "I'm working with Vela on this case", he went to Vela and said "Is Justin working with you in this case" and Vela said "Hell no I told him I, I didn't need his help, I don't want his help." |
| **FIELDS:** | But? Okay. |
| **SHERIFF CARTER:** | And check with the Sergeant if he wants to do any Probationary searches, so I'm saying is that the way things happened or was it different? |

00726

# Ex. 19

768

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007 / # 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Well I guess, I'm, even I don't know I, I'm even confuse because I, I don't know what incentive if Avila, if, if, if it occurred this way and he had the conversation with Vela and, and he says you know "Do you need help with this" and Vela's says "No" and then he tells, and then with then go tell the Sergeant "I'm helping Vela on that?" Why, I mean why in gods green earth would somebody do that it doesn't make any sense in order for somebody to lie there has to be a reason. |
| **SHERIFF CARTER:** | Unless, unless this conversation with the Sergeant occurred before they talked about? |
| **TACKETT:** | No it didn't. |
| **FIELDS:** | But it what I think with Deputy? |
| **SHERIFF CARTER:** | I'm just trying to get to the jist of this. |
| **FIELDS:** | I understand and I, and, and it's um, a little bit difficult I think to understand uh because there's I think the problem is that people are confused and they miss they hear what they want to hear and they, and they and they don't hear some things um and I'm trying to look here in page on page 2 and page 3 of all the statements so that we can see exactly what he said and um Vela's says that Justin asked if he wanted to do a parole search on a person name David Davila out of Westmoreland, did that occurred on that day? |
| **TACKETT:** | No that was, that was the one he, he even says at the beginning I didn't say that I, asked him when he first warned me about doing Parole and Probation searches that's where that first came up and that was that deal was on Davila. |

35

00727 **Ex. 19**
769

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | I'm looking here um, Tackett came in here and asked if I wanted to do some Probationary searches with him and I said, "No, I was to busy and asked me if a person name Tina Phillips and Vernon Schultz were on Probation" and I said "Yes they are on Summary Probation" is that the case where talking about? |
| **SHERIFF CARTER:** | Yes. |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay, I keep a file on all the people, and bla, bla, bla, was that around the same time?  That was on the same day, that was on the morning, gave him my file, told him just to make copies and to give it back to me, and he asked me if, if I wanted to do a parole search on a person name David Davila out of Westmoreland and I said "No" Davila is a small fish he doesn't have anything etcetera, etcetera, etcetera.  Was that part of that day's conversation? |
| **TACKETT:** | No, the Davila wasn't cause he like I said there was a part of what when were talking about Westmoreland but it wasn't on David Davila or doing any kind of Parole Search or nothing like that. |
| **SHERIFF CARTER:** | So you're saying Vela was confused? |
| **TACKETT:** | Correct. |
| **SHERIFF CARTER:** | So when did this conversation took place? |
| **TACKETT:** | Not when the place I mean he I think he's getting confuse with David Davila and the other guy I was talking to him about from |

**00728**

36

**Ex. 19**

770

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | Westmoreland that I went to drop the papers of to the Chief and that was that. |
| **FIELDS:** | And that's, that's the Phillip's that's Shultz's incident? |
| **TACKETT:** | No that's another person another incident that I just gave the information to uh Westmoreland on. |
| **FIELDS:** | Another one? |
| **TACKETT:** | Yeah that was just, just another Summary Probation information I just gave to them. |
| **FIELDS:** | I, I, I guess I'm failing to see what the, what the connection I mean if he, the allegation of untruthfulness is related to the statement that he made to Vela, these would be the statement he made to Avila, that doesn't have anything to do with this incident. |
| **SHERIFF CARTER:** | Well I think it goes to show the state of mind of the individual, also think that, I'm trying to get to the facts as to whether or not uh these statements were actually made to the Sergeant and if the Sergeant went to Vela and said are you helping, is Justin helping you and he said "No, he's not" uh and, and I guess the bottom line is, the allegation here is that you intentionally went to Calipat and arrange for this search so that you can participate on? |
| **TACKETT:** | Correct that's the allegation. |
| **SHERIFF CARTER:** | That's the allegation. |
| **TACKETT:** | Correct. |

00729

**Ex. 19**

771

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | And that what you're telling me is that no time did you discuss with Deputy De Leon or the Calipatria Officer about arranging for you and or De Leon to back him up when he did this search? |
| **TACKETT:** | No, all I said, like I said Sheriff, all I |
| **SHERIFF CARTER:** | When you, when you left Calipatria there was no understanding that a search was going to be made? |
| **TACKETT:** | Correct the only understanding when we left was that well that I told them is if there was any assistance needed from the department, the only way we can respond per Sergeant Avila for me and for the Deputies is if they call for assistance. |
| **SHERIFF CARTER:** | And there was no intent on your part to arrange for them to call for assistance? |
| **TACKETT:** | No. |
| **SHERIFF CARTER:** | Now did you ever make a statement to the Calipatria Chief of Police, that, that your Supervisor's wouldn't let you do your job? |
| **TACKETT:** | No, I said that the Supervisor wouldn't allow me to do anything within the City, like I said and that they were uh said I was a little to proactive because I needed to slow down within the areas, that was said. |
| **SHERIFF CARTER:** | Okay. |
| **FIELDS:** | I mean, you know again, I guess Sheriff, when it comes down to it, is that there are some I would say misunderstandings about what was said and to whom it was said, because people are hearing parts of conversations and not you know and, |

38

00730    **Ex. 19**

772

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

and what frequently happens, and it's not unusual, is that people will over hear part of conversation and try to put two and two together in their minds and end up with five instead of four um they think something happened but they don't know it, and that's apparently what's happened here because we have a situation where we have um an individual that is being you know subject to termination , I mean that's the most severe, you know that, that obviously that you can do administratively, and it's over a lot of misunderstandings and if there's not any where that, that is I mean you, know there's this confusion about what Vela and Avila say you know or he says to Vela when he says to Avila but certainly it's not untruthfulness if most that's confusion because again when it comes down to untruthfulness we, we need to have there has to be some reason to do it and there just wouldn't be a reason for him to tell Sergeant Avila, he's assisting Vela on something when Vela say's you know he's not doing it, I mean it wasn't the conversation, the conversation was you know Vela's worked on this and, and you know I'd asked him, and, and you know I want to do a search now, it was something that Vela had done before, its some how on all that Sergeant Avila misunderstands that it's an active case instead of a case of you know Probationary case but again that can't even be it because they eventually get around so you cant do a probationary search, that, that certainly doesn't make any sense and when you wind up the rest of it from beginning to end there is no Insubordination there is no Conduct Unbecoming there is no Untruthfulness it's just a Deputy is trying to do he's job within some seemingly severe um restrictions by his Sergeant that no one else has no one else is restrictive in this way um no one else is, is being you know

00731

**Ex. 19**
773

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007 / # 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

being treated this way and again, I, I implore
you to not only ask you know I mean the Chief
and others to related to this incident, but to ask
about this Deputy's conduct with others that,
that, other's that he's has worked with on your
Department, both before and after um who have
a very different version of, of this and I know
that you're aware of some of the allegations
relating to, to, to Sergeant Avila and, you know
some of the things that he did in terms of you
know as a Probationary sergeant, he's coming in
and, and everything but the reality is that there
are you know significant supervision issues
related to things going on in the north County,
early (unintelligible) of this time, I don't know
whether they still exist but with the
Probationary Sergeant and with the Chief
Deputy that was out for extended periods of
time, and just you know a total lack of and, and,
in, in an area of the County but it was
apparently not anywhere near as you know
terms of service not given maybe the same level
of service or at least in terms of Deputy's
positioning Deputies in having the ability to have
more supervision it just doesn't exist in, in that
part of the County and that kind of takes us into
the other allegations of the Suspension but I
want to make sure you know we touch on all
your concerns related to the termination before
we move on to that.

**SHERIFF CARTER:** I don't have any other questions.

**FIELDS:** With respect with the suspension um again
there is a significant issue related to the um
related to um Supervision? And you know this
is a Deputy that doesn't have a lot of experience
in the field and you know there you know that
night of, of the day that this occurred um
Sergeant King admitted I think he in the

40

Ex. 19

00732     774

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road

El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

package he, he was covering two areas of responsibility and apparently where no um you know um no there was no cover units anywhere you know within you know miles and miles, miles of, of, of Justin and so it isn't as so if he had the benefit of having a lot of man power, in order to effectuate what he was trying to do and you know this isn't this one is certainly isn't the case of him being proactive and it's kind a interesting to just oppose this with the termination where you know the implication is he being too proactive so where going to criticizes him for being to proactive and here part of the criticizing is for not being proactive enough he's, he's dispatch by Brawley PD to go to the scene and is criticize for not doing more of an investigation for not going up close and trying to figure out whether this, this vehicle had been moved or could have been close, etcetera he was asked to go to the scene see if there's a vehicle like that and, and then call in, which is exactly what he did, it's a remote area I mean this is I mean it's dark at night, correct?

**TACKETT:**     Correct.

**FIELDS:**      Um and um you know where you asked to do anything but just go to the scene and see if there's a vehicle there that matches the description?

**TACKETT:**     Right and to stand by after, after I get the information on what the vehicle looks like.

**FIELDS:**      Is that what you did?

**TACKETT:**     Correct.

**FIELDS:**      Where you asked to do any follow up investigation?

**Ex. 19**

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | No. |
| **FIELDS:** | Did you on your own initiate any follow up investigation that you were not asked to do? |
| **TACKETT:** | No. |
| **FIELDS:** | Um, did you have did you understand the Brawley PD, excuse me, that was going to be in route based upon your call in with the information you had? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay now this is how it starts now from there everything that happens is based on a couple of things, it's based on um you know the circumstances again time and area of the County with respect to being dark, of being fairly remote area of the County and there being you know no real adequate cover for him under, under other circumstances or other circumstances or based on his and I'm saying lack of um experience but he's experiences are different than let's say your experiences you know Sheriff with, with all your years of experience in law enforcement and he's going to see in and react to things in the field differently than you might uh and differently with somebody that has maybe less experience or that has 10 years of experience I mean there's just differences and again there you know there wasn't any you know supervisor near by that you can request you know any kind of assistance from at least you know given any circumstances he thought he was waiting for Brawley PD to turn over to Brawley PD and that was going to be it, right? |
| **TACKETT:** | Correct. |

**Ex. 19**

00734          776

42

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Okay now, so you didn't go out of your way to do more than you were asked to do with respect to seeing the rust or the cobwebs or anything? |
| **TACKETT:** | Well I didn't see those. |
| **FIELDS:** | Yeah, how, how far was the vehicle from you know like the area that you were the driveway area where was the vehicle in relation to um to that, was it right in front of you? |
| **TACKETT:** | It was um well my vehicle was on the roadway which runs I guess you can say perpendicular it runs off this side which on my driver's side I can see from my side down the driveway, their driveway which would be the other driveway which is probably the other driveway I think it's like 10 or 15 yards or something like that. I'm not exactly sure, how, how long it is but you could see at the end of the driveway sitting at the end of the driveway. |
| **FIELDS:** | Well the driveway I mean its, it's like a side of the house, correct? |
| **TACKETT:** | Correct, I mean the driveway is off to the side of the I mean, |
| **FIELDS:** | If the lot, if the lot is, if the lot is rectangular, |
| **TACKETT:** | Rectangular shape. |
| **FIELDS:** | Right, rectangular shape, it's like this and the for the Sheriff's perspective the let's say the front of the house is where the Sheriff is sitting, and where, we would be in the back of the house where, it's a lot of lot I should say, |
| **TACKETT:** | If it's rectangle like this the house is here the front door and the side door are here in the |

43

00735

**Ex. 19**

777

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | other side on the other side, the driveway goes right along the property line on the side and this is where the jeep would be right here as if, |
| **FIELDS:** | Well make, let's make this tablet, just for clarification let's make this table the property, |
| **TACKETT:** | Okay, |
| **FIELDS:** | Um and the main street is, |
| **TACKETT:** | Perpendicular direct behind it, perpendicular to, here is, here is the house, |
| **FIELDS:** | Let's say, let's say it runs that way okay or what shape is the lot, is the shape? |
| **TACKETT:** | Rectangular. |
| **FIELDS:** | Okay but rectangular is it narrow to the sides like this, like? |
| **TACKETT:** | It's narrow like the table like it is right now, the Sheriff on the other side of us, it's narrow like that. |
| **FIELDS:** | Okay, |
| **TACKETT:** | The, the width, the, the length of it, |
| **FIELDS:** | It's much deeper? |
| **TACKETT:** | Right. |
| **FIELDS:** | Okay. |
| **TACKETT:** | It's on the roadway, to the other end of the, |
| **FIELDS:** | Well say, well say that's the roadway, where's the house? |

**Ex. 19**

44          00736          778

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road

El Centro, CA 92243

## IA # 2002-007 / # 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | The house would be on the Sheriff's side. |
| **FIELDS:** | Okay and where's? |
| **TACKETT:** | On the upper portion. |
| **FIELDS:** | And where's the uh so the house occupies like one quadrant and the, the rest of it is vacant uh front to the side and around the back? |
| **TACKETT:** | Right from what I can, I don't know what's on the back of the lot but all I, but as far as the driveway and this area right here around the house and where the jeep was, was dirt, I think there was like a, like a shed structure like for cover kind of thing, right to the opposite side of the jeep. |
| **FIELDS:** | Now where is now so, so the jeep is a way back you know basically beside the house correct? |
| **TACKETT:** | It's like behind the house and off, off set. |
| **FIELDS:** | Okay so it's some distance from the street, then in other words, it's not right there. |
| **TACKETT:** | No it's not right at the street, no. |
| **FIELDS:** | Okay. Um and again it is dark, correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay now essentially the, the criticism, does, doesn't it appear to be any problems with what Justin did, or it doesn't appear to be any criticism what Justin did, I don't think there should be a problem but any criticism at least until um you know he gets up there and he sees and calls in and etcetera, but apparently the, the two problems or the two (unintelligible), general |

45            00737            **Ex. 19**

779

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | areas of problems are one, um whether he intentionally intends to draw out the people to have some kind of confrontation and two his attitude you know which Sergeant or his attitude sort of after the confrontation and just for clarification you did throw some light onto the property I mean that is true, correct? |
| **TACKETT:** | Correct, yes. |
| **FIELDS:** | Okay, now did you light up the house, what did you do exactly and why? |
| **TACKETT:** | Okay um say you're, this is the lot, right, there's the house, okay you're right there, in the middle, okay I put my light on from the car out to the side, and I put my light on the vehicle, wasn't Brawley I told them to stand by, I didn't want to loose sight of my vehicle especially if it had been in a hit and run, so I left the lights on the vehicle, on this side of the house, right on the front, not on the house on the front, on the front, I put on my alley light because the stream goes straight, but on the alley light where it goes right across the front door, and then on this side since the other door was back by the jeep, I put it straight off, not on the house, but straight of off, so anybody came out of the doors, along with my reds and blues on, my steadies they would know that not only was there a peace officer but I'd be able to see if there were any guns because just prior to that me and Sergeant Altamirano we went into somebody into the County property with no lights other than the flash lights, and the guy came out with a double barrel shot gun pointing at us, and we almost shot and killed him, as a matter of fact he was and he even said if you would have like your lights on or something like that, that no one came out |

46                          00738            **Ex. 19**
                                                  780

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

especially that late in the evening that I wouldn't of came out with the shot gun, and,

**FIELDS:** This is like two in the morning, right or something like that?

**TACKETT:** Right.

**FIELDS:** Okay so your mind set was you needed to throw some light into the areas where you can see an individual coming out of the house and,

**TACKETT:** And they would know who I am.

**FIELDS:** And even though red and blues going?

**TACKETT:** Right.

**FIELDS:** Okay um did you light on to the house?

**TACKETT:** No.

**FIELDS:** Okay um, when okay so you're rationale out for putting the lights the way you did, was that, I mean was it officer safety thing for you?

**TACKETT:** Correct.

**FIELDS:** Okay and that was just basically while Brawley was in route?

**TACKETT:** Right, which should be like 5 minutes of that, cause it's right off,

**FIELDS:** Sure.

**TACKETT:** It's not even five miles from the City limits of Brawley.

00739    **Ex. 19**
781

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Now when you heard um now when the individual came out did you hear any I mean did you hear anything any commotion any thing about what may have brought him out? |
| **TACKETT:** | No. |
| **FIELDS:** | Okay |
| **TACKETT:** | He just came out and asked me what was going on and uh as I approached him, like I said I saw the scratch on his back, so I asked him, I asked him what his name was and he said (unintelligible) and I said okay this is what I'm doing here and I then identified myself and told him Brawley was in route, and uh we just went from there, that's when I went ahead and asked for his ID cause uh he gave me the name and what the R/O of Jeep was so it already puts him as the person owned this so I know who Brawley probably wants to talk to, if that's uh their particular jeep, |
| **FIELDS:** | Was there anything unusual about the individual wen he came out in terms of his physical appearance? |
| **TACKETT:** | All I can say is that he ha pants on but he had that red mark on his back, it's like a scratch and that was that, |
| **FIELDS:** | So did you I mean you had something suspicious about this person? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Um based upon his physical appearance and based upon the vehicle that had you know? |
| **TACKETT:** | That was described to me, right. |

48

00740

**Ex. 19**

782

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Had been described to you. Did you immediately taken you know detained him? In terms of you know physically detained him? |
| **TACKETT:** | No I just chit-chatted with him and told him that we just wait for Brawley to let him know as far as the jeep, it's there investigation, that I had no knowledge other than it was a hit and run and the vehicle that they described was potentially the vehicle in the back that was sitting off the driveway and he said "Okay". |
| **FIELDS:** | Now certainly Sheriff would have had enough of that time to detained him if he wanted to you know legally he could have detained him at that time but he chose not to, I mean here's a guy that isn't trying to create a con, uh, uh provoke anything, he tells you know I had to throw light because based up my previous experience and this other call we try not to there's you know people have dogs I mean did you hear dogs or anything? |
| **TACKETT:** | Yeah, the dogs, the dogs is what I, what I believe is the reason why he eventually came out of the house because if anyone out in the Country, I have relative's out there and that's the reason they have dogs to alert when somebody is outside and when you have dogs most time, when they start barking, you're gonna come outside and see what is it and I believe that's, |
| **FIELDS:** | And, and you come out with a shotgun? |
| **TACKETT:** | Yeah, exactly. |
| **FIELDS:** | And so you wanted to be able to see who is coming out if anybody and make sure that you're, you're lights, you know, you're |
| **TACKETT:** | Identify myself and whoever was there. |

49

00741

Ex. 19
783

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Okay, so he doesn't take him into custody, he doesn't, doesn't do the very most that he could do, he's trying to talk to him, reason with him until Brawley gets there. Now is, how is that going, how is your conversation going with him, now in terms of going okay not going well? |
| **TACKETT:** | Actually it was going well, we're just chit-chatting, he was telling me about the jeep and how his son was the one that uh had, had wrecked it and that I told him you know what I don't know as far as that but I said and we just chit-chatted about him being out here and living out in the Country and, and basically when I was chit-chattering him, just basically until Brawly got there, I mean, I wasn't expecting Brawley to be that long, but they said they initially got lost and took kind a, a while. |
| **FIELDS:** | Okay now, did it eventually, did it eventually get agitating in waiting or is there eventually some problem and if so how does that happened? |
| **TACKETT:** | Uh the agitation or I guess you can say the problem, arouse after the wife had came out, she peeked her head out and told the husband was what going on and I told her what was going on and uh and I told her the same thing what, what I told the husband and just asked her if she was alright to like I did with the husband and I asked her if the kids were all okay, just in case they were in that vehicle you didn't know and uh she said yeah and she just told the husband why don't you just come inside cause it's cold outside, and that's when I said well I said ma'am you mind going inside and getting a sweater for your husband and shoes? And she said, no I don't mind so she went back in and he stayed out with me and she closed the door and went back inside and I kept talking to him, oh then a |

50

00742

**Ex. 19**

784

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

minute later even that and he just decides to he
says "You know I'm going inside" he didn't say
he was cold he just said "I'm going inside I'm
tired of waiting" So I was like okay and I said,
"You know what Sir, I need for you to stay out
here, Brawley is already coming in route there're
going to want to talk to you, you're the owner of
the vehicle, you know what you're just going to
be real quick they should be here any minute
know, and I told him basically was 148, about
obstruct, resisting, delaying an officer of his
duties and, and he said, "Well I'm tired of
waiting, I'm not going to wait anymore and I
don't care what you're going to do" and so he
started walking again, so I rounded him up
pretty good, and I grabbed his elbow and I said
"Sir", cause he's just walking away from me, I
said "Sir you need go ahead and stay right here"
and then again he decided to pull his elbow
away and so I walked in front of him, put my
hand out set out my arms "Sir, you got to stop
here if you don't stop here I'm going to have to
arrest you for 148?" and he's all like, "I don't
care" and he slaps my arm out of the way,
pushes right through me, and goes towards the
door so when he just pushed through me, I just
reached out and grabbed his hand and it came
across my cuff, put him on the end and even
then he was still, then he started wrestling with
me, trying to, trying to kick my leg, and so I just
kept going in circles trying to get his arm, cause
I didn't want to hurt him, I still, I still, know it's
a Brawley investigation and now I'm going to
(unintelligible)to much proactivity, this was the
last thing for them, to get mad of me to stir-up
something else, as it was going to North County
and so I was being you know going around
trying to get his hand and um still, I still
couldn't get his hand so his wife comes out with
this sweater of course in her hand and uh starts

51

**Ex. 19**

785

**Imperi County Sheriff's Departm**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

telling him "What, what are you doing you stupid?", you know starts calling him names and just telling him "Just cooperate put your hand on the back" and finally that's when he put his hand on his back and I cuffed him and put him on the back of the unit. And that's where the problem all basic started, was all focused on right there. Which his probably like 8 minutes from when I got there to when that happened was 8 minutes, it wasn't like it was hour, two hours, or three hours.

FIELDS:    So basically you had warned him repeatedly before you took any you know action?

TACKETT:    Right and I mean and, and like I said I did I mean I warned him, I think more than enough times, I was being friendly as I could and then when he finally got as close as he did to the door I had to take him to custody especially after he hit me and, and if it was all for me I mean that's, to me that's the farthest thing you can go is when you assault a peace officer and so that's when I from there took him to custody.

FIELDS:    Okay now um even then did you have I mean did you use any, I mean any OC any kind of you know?

TACKETT:    No like I said I didn't want to hurt the guy, and you know I was like I told you like oh this stuff is going on in North County and I knew they're already be a problem as far as that but I knew I had to take him into custody so I wasn't going to go and beat him down or, or slam him on the ground, or anything like that, I just wanted to get him the handcuffs on get him in custody and put him back in the unit.

**Ex. 19**

52                    00744                    786

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**FIELDS:**        Okay now Sergeant King eventually arrived is that correct?

**TACKETT:**       Correct.

**FIELDS:**        Now was there anything interesting about you know tell, telling them that the Sergeant was going to be there or anything like that?

**TACKETT:**       Right the, the wife, Mrs. Lackey, uh she was waiting as I told her what, what the husband was going, was going to jail for assault, and uh she got mad and so she said "Is your Supervisor coming?" and I said "Yes" and uh at that time Myron, Myron King the Sergeant uh came over the radio and was just advising oh are you still code 4, and so I said 10-4, or I think it was something like that, or heard, his voice came up, or over the radio, and she said, "Is that Myron King?" and I said, "Yes it is" and she said basically when he gets here it'll all be handled and I didn't have to worry about it, basically to that, to that nature and,

**FIELDS:**        So she recognized his voice?

**TACKETT:**       Right over the radio, right.

**FIELDS:**        Okay now are you aware of any kind of relationship between Sergeant King and these individuals?

**TACKETT:**       No, none at that time, no.

**FIELDS:**        Okay did you find out later any kind of something other than?

**TACKETT:**       Oh well from I don't know as far as like it's kind a like hear-say I mean what people telling but supposedly they go hunting together, real good I

00745

**Ex. 19**
787

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

> mean they say that they are related to the Rouhotas's and the Rouhotas neighbor came up that day and when he got there and uh and a big old hoopla came out about how they go hunting and stuff like that together and how they know I guess at birthday parties or something like that the Rouhotas sending private invitation out to you for certain people and that kind of thing.

**FIELDS:** But she recognize, obviously recognize Sergeant King's voice?

**TACKETT:** Correct.

**FIELDS:** Okay now apparently this didn't get issue um or are you aware of the circumstances of that I mean of why or who, who rejected it?

**TACKETT:** I knew who rejected it and uh it was do you want, Deborah Owen, the District Attorney, she rejected it, she handles special, special prosecution on child cases for last I heard and then during that time I guess she was um,

**FIELDS:** Who would normally receive this?

**TACKETT:** Uh Deputy uh Dist, uh Chris Collins is who we usually takes over the North County when I would go, when I was working actually investigations for a little while and when we worked North County more easily we would take those reports down and that's who we usually take them too.

**FIELDS:** Now and I'm not sure why it got rejected or not is not really of an issue but it seems to go to a different person but um Sergeant King when he got there um did he urge you to essentially to let him go and to drop it?

54

**Ex. 19**
788

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | He just basically by gones be by gones kind a thing. |
| **FIELDS:** | And what was the nature of your conversation with him in other words he eventually got to the point on ordering you to you know let him go and you complied with his order, correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | So you, you weren't insubordinate? |
| **TACKETT:** | No. |
| **FIELDS:** | Right, um did you at least have some level of you know discussion with him reference what the disposition to this matter was going to be? |
| **TACKETT:** | Yes quite a bit. (Ha) |
| **FIELDS:** | And, what was the nature of the conversation? |
| **TACKETT:** | Uh the nature of the conversation basic came down to that these people knew the Sheriff, the ex-Sheriff and the people of the community and that if it wasn't dropped that there would be a civil law suit there would be a complaint uh and an Internal Affair and such as that nature kind of conversation and just to let it drop so nothing would be, be brought up about it. |
| **FIELDS:** | And did you think it was odd that he would be talking about it complaint like that, right out in the field in front of these individuals? |
| **TACKETT:** | Yes, cause like I said the, the thing that was really odd too was the fact that he came to me and uh and uh the, the tone of voice, I mean. |

**Ex. 19**

55                    00747

789

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | But the bottom line here is you, you wanted to arrest somebody for what you perceived as a crime? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Technically speaking, it was a crime? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Correct and eventually it got to the point where you were order not to pursue it and you complied with the order? |
| **TACKETT:** | Correct. |
| **FIELDS:** | So you know Sheriff I'm not sure, I what the criticism really here is I mean obviously there's an individual that um you know has filed a claim and he's trying to get some money out of the County and um, you know, there, there is nothing at least on the surface of the Deputy did wrong, I mean did he provoke them to come out of the house, well why, when you're trying to provoke somebody to come out of the house, I don't think you shine a light, it's 2 in the morning there's no guarantee that would provoke anybody to do anything, you, you know you knock on the door and I mean if you 're going to try to provoke somebody come out, you knock on the door. "Anyone in there", you know I'm trying to like figure out what's going on here, bla, bla, bla, didn't do that so I mean to say he provoked him to come out, I mean that's it's conclusionary is what we have in the other things where it just doesn't make sense. You wouldn't provoke someone just by shining a light because most houses and I'm sure this one too, he said he was awoken in his claim form, he said he was awoken by the light, most people if |

56

00748

**Ex. 19**
790

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

you shine a light in front of, if a cop shines a light on front of my house I sure of heck wouldn't wake up, I mean there's, most master bedrooms are protected from the front of the house, for not for just that reason, but most are, usually in the back of the house, I mean it would seem very unusual to shine a light on the house even if he was shining it in the house, to provoke somebody to come out so that, that allegation is just ridiculous. I mean and the other part of it, is you know the confrontation itself, he'd described it to you, he's doing everything he can not to provoke the individual, he you know, he's trying to tell him you know I, I, figuring you know for Officer safety and other reason he cant let him go back in the house and he's trying to encourage him verbally every way shape or form to comply with his command and it's only when it's the guy is basically pushing him off just completely that he, that he actually you know handcuffs him and then with respect to the, the conversation the actions with the Sergeant, um there having a conversation, the Sergeant is saying you know I think it's inappropriate, it seems inappropriate to me if you talk to him about it out in the field, let them go, there going to complain against you, um, uh but he chose to do that, and um, you know the Deputy disagrees you know Serge, he, he assaulted me and I, I think you know it's the wrong thing to do, it's legitimate disagreement I suppose and eventually comes down to I mean it comes down to let's say it's not something like oh the Serge order he order me to do it, I'll do it but you know I'm, I, I, I not other wise comfortable to do it or something like that, I mean,

TACKETT:   Or he, he, he kept asking me what I was going to do, what I was going to do? And, and kind a

57

00749   **Ex. 19**
791

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

**IA # 2002-007 / # 2002-018**

11/08/02

Skelly Hearing with Deputy Justin Tackett

referring like if he wanted that to happened and so I asked him, well, if you want me to do this, I mean if you order me to do this, I'll do it, I said but if you're asking me what I will do as far as my opinion in what, in what, I believe is, is a just here, is I'll take him to custody and he said, he said, okay, well is that the case, well I'm going to order you to uh sign and release him for 148, which I did.

**FIELDS:**

I mean one can, and I think it comes down to the whole thing I mean one can one Monday morning quarterback the, I mean the reality is, is Deputies in the field make you know, thousands of decisions, and, and every day they make you know hundred of decisions about, should I stop this person, not to stop this person, should I do this, that, the other, and there are times where people you know have to do different things because there level of experience, their level of training and things like that but um, you know with respect with this allegation um you know within the letter of everything Deputy Tackett didn't do anything wrong and if it's a matter of you know he's not as experience or not as well trained is as we hope then you know make it a training issue. You know I mean it, it but what, what, what, what did he actually do wrong, nothing, and it really, it really comes down to the fact that there's individuals that are trying to um looking him extrao, other than extraordinary microscope, and, and a microscope that, that other's haven't had to deal with it and frankly that no one could, could live up to, you could write up a package on every arrest or every contacted that a, that a Deputy makes but the reality is that somebody under somebody else's opinion and, and heinsight you're going to be able to make it look like or try to make it look

58

00750

**Ex. 19**
792

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # **2002-007**/# **2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

like or try to make it look like they did
something wrong but that's not police work, I
mean you, you, you, you spend the time training
investing into these individuals so that you, you
hope that they make the best decision's that
they can but you can't question every little thing
that they do and this is a perfect example of
this, I, I, I don't know the justification for why
um it was handle this way why you know why
the IA was done while the claim is still going
forward apparently with the County or, or what,
what ever is certainly doesn't make any sense
but um he certainly did not use excessive force
he certainly was not insubordinate, he didn't do
anything wrong and um to criticizes him for that
is inappropriate and you know we'd ask that
with respect to both of these that you exonerate
them, I mean here's a Deputy that hopefully has
a long career in front of him and if you were to
sustained    specially  with    the    termination
sustained it I mean you'd never gonna be able to
work in Law Enforcement again and I mean the
reality is that there are some problems between
him and, and Sergeant Avila that apparently you
know haven't existed anywhere else then you
know, then uh I mean maybe he shouldn't work
for Sergeant Avila like, like he wasn't now, I
mean things are going fine in court's right?

**TACKETT:**          Right.

**FIELDS:**          And before he worked for the Sergeant things
were going fine too, right?

**TACKETT:**          Right.

**FIELDS:**          And I don't know if there's a disconnect or some
you know other things going on here that are
just bigger than Justin and he's sort of just
know looked at from a different perspective but I

59

**Ex. 19**

00751          793

# Imperial County Sheriff's Department
## Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

think when you start hearing about Sergeant's giving order to one individual that they don't give to the rest of their, their squad, you know, rift-raft you know but I hope it does it maybe he is being a bit differently and yeah maybe he is a little proactive but I mean for gosh sake if that's the worst thing that you can say about somebody then you know then certainly I would think you wouldn't want to terminate that individual.

**SHERIFF CARTER:** Well discussing this with his Chief, the Sergeant uh if he'd been proactive catching uh hay thieves or tractor thieves or whatever, um that was that would have been one thing but doing Brawley PD's job or Calipat PD's job, that's not what were paying him for, investigate a message that were trying to get across is that we have all these issues in the County, I mean this is how they explained it to me.

**FIELDS:** Sure.

**SHERIFF CARTER:** We have all these issues in the County we don't need our Deputies picking up stuff from the cities,

**FIELDS:** Well, well,

**SHERIFF CARTER:** Unless they happen to run into it.

**FIELDS:** Sure and all, all I can, I can say is that with respect with both of these I mean and I know that there's some difference of opinion as to whether or not this Deputy manipulated the Chief Police of Calipatria to do a search or something and then convince somebody even if there's no evidence other than to call him back I mean there is no evidence in any of that as far as I know, um that it, that it didn't happen in

60

00752

## Ex. 19
794

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # **2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

that way but I think what's, what's necessary to remember with respect to the termination that was he was he was called by, by a Sheriff's Dispatch to assist in Calipatria with the Brawley incident he is called by Sheriff's Dispatch to assist in Brawley if the rule is going to be don't have him do anything outside of the County then somebody needs to tell Dispatch not to assigned this Deputy to anything outside of the County's jurisdiction because it isn't like either of these incident's I mean yeah he did some of the preliminary work because of his confidential informant that was in you know telling him about this incident with Calipat, but once he was told you know don't do it, and you know can you take it over there, yeah that's fine I mean there's other than driving it over to Calipat he's not doing anything else, and I mean and that's the thing is that it's not that he's actively just patrolling Calipat or Brawley I mean it wasn't like he was patrolling Brawley and happened to see this he was dispatch to go to, to check it and so um I mean that's correct?

**TACKETT:**     Well correct, can I, I just want to add something to that, um is, set up, is because I'm so active that it looks like I'm doing a lot in Brawley and Calipat but if you look at my time periods that I'm working, and you look at my stat's none of most of the crimes that happen occurred during my time period because I'm actively patrolling, I don't sit anywhere I don't sit at a gas station I don't do nothing, I'm actively patrolling uh most stuff I hit in the cities I hit I just running into or I might you know initiate something in, in that time but most of the stuff, you'd look a lot on our bigger thefts and our, our crimes um those I was solving and that's the reason they had even put me in investigations in North County, uh the hay thieve that we caught up there, I had gotten

61                    00753           **Ex. 19**
                                              **795**

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

all that information on that guy I actually heard
it on the scanner one day I was at home, when
Deputy De Leon pulled the guy over and actually
came up on him, and him and another Officer,
the Deputy uh what's his name? From Calexico,
he's from Calexico another Officer that just
recently became a Deputy and he, I was on my
Nextel telling him the guy was a crook and
telling him to check up on stuff and tell him to
call which farmer I mean because that I already
knew all these stuff, it's just that's to the naked
eye when you see all these big things in the
cities there saying well you're doing to much
work in there when it's not really I'm doing to
much work, I'm covering the whole area, the
whole County and, and I just run through these
things when I go to the cities, and that's when
they finally said well since you run into them
that we're going to ban you from the city which
was for the reason on that memo that you no
longer go to the cities, and if you respond, if you
see a crime being committed you advise the
department and keep driving, I mean that's what
it finally came down too, it wasn't that I wasn't
covering my area I mean there was no crimes in
my area to be commit, nobody called to say I
wasn't doing my job over there I was, busy while
I was talking to everybody in the County, you'll
ask all the farmers out there I was stopping at
hay stacks talking to farmers I was stopping to
farmers and talking about abandoned houses, I
was doing all of that stuff so I wasn't like I was
focusing in just Brawley and Calipat.

SHERIFF CARTER:   Well you know I think that I don't think that's
there any quarrel, people don't have any quarrel,
with uh your abilities, I have heard that and on
this entire process you know all these Internal
Affairs things that had come I haven't heard
anybody quarrel with your ability, I think there,

62                    00754

**Ex. 19**
796

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007 /# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | there concern, that I've heard is that they don't necessary think that you listen to them when they talk to you in this last, Lackey, |
| **TACKETT:** | The Lackey? |
| **SHERIFF CARTER:** | The Lackey you were raised in the North end? |
| **TACKETT:** | Correct. |
| **SHERIFF CARTER:** | You don't know this guy? |
| **TACKETT:** | No. |
| **SHERIFF CARTER:** | Never met him before? |
| **TACKETT:** | No, I know the Rouhotas, which I later found out which I know they lived next door but I never knew Lackey, I never knew who he was. |
| **SHERIFF CARTER:** | And uh when you had you're conversation with him about this Jeep did he tell you that the Jeep had been parked for months. |
| **TACKETT:** | He told me to park there and to told me to roll over and I uh advised him the same thing which I told the, the female that this was Brawley's investigation that if had nothing to do with me that all I'm here is to do to see if this particular jeep that they describe is here and there were going to be in a few minutes so for me to go out there and do my investigation on that I had nothing to do because then that would bring me into the case and having go to court. |
| **FIELDS:** | See that's the, the catch 22, this Deputy is in is that he criticizes in one case, |
| **SHERIFF CARTER:** | But he interjected himself into this case, he was talking to this man? |

**Ex. 19**

63                    **00755**        797

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # **2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:**          Correct.

**SHERIFF CARTER:**   Talking to him?

**TACKETT:**          Correct.

**SHERIFF CARTER:**   About this case and he says that jeep hasn't been moved in months and, and your testimony is that you can't, you couldn't tell that?

**TACKETT:**          No, I couldn't tell that unless I mean if I went over there and looked at it and would of seen for rust and cobwebs I could of but like I like I said I wasn't there to do any of that that was to me I was trying to stay away from that cause they were already been found upon like I said and you see.

**SHERIFF CARTER:**   But if, if your job was just to see if the jeep was there and await for Brawley PD, why didn't you just parked down the road with lights out (unintelligible)?

**TACKETT:**          Cause I was already on, I was already on the property, the dogs were already barking the jeep was there they told me to stand by so I'm they already took off on the jeep and I didn't know if it was still running I didn't want to lose sight and have them go back in the lot there is a back of the lot if it hadn't been stop so I figured I'd go and standby with the jeep wouldn't lose track of the jeep as far as the evidence, as far as it was, and that the dogs were barking cause the guy didn't come out they live in the North County You said, I know people come out no matter what when dogs bark, I mean they want to see who is out there on their property because you got thieves out there you got tractors, that they steal the hay or,

**Ex. 19**

64                              00756            798

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | All that makes sense, we all understand that, if my dogs were barking if I had one I'd go outside too and (unintelligible). |
| **FIELDS:** | I mean you know and I think really when it comes down to is and I know I already said this I don't want to sound like a broken record but um you know it's easy for especially more experience people sometimes criticizes of us as a more experience person but you have to keep in mind this is a Deputy that doesn't have a tremendous amount patrol experience but even then I think he certainly gives you a good faith explanation for everything he did that doesn't violate any policies and if you know if some jerk decides to file a claim against the County well, that's certainly not a standard by which anyone uses to discipline people or you know everyone you discipline and you know he fact is that you know he, he just didn't do anything wrong whether other ways he could have done it sure, I mean no doubt I mean, there, there, there always in your line of work there's a million ways to skin the cat and when it comes down to is, is the way that he skin it that it violate a policy or is it illegal. And the fact is no, and if it's not then you know unless it's just some bladen or horrible conduct unbecoming that just made maybe slipped through the cracks but everyone would know, is, is wrong which is certainly isn't the case here, then, then there's no discipline you know it's very simple um and uh there's just uh some forces out there that really don't like this individual and that's unfortunate because like I said I think this one is a good example that he's just not been given the same benefit of the doubt that, that everyone else has with respect to, to what they do and what they say and how they act and you know every Deputy was subject to, to the microscope this Deputy is under um I |

65

00757

**Ex. 19**
799

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

cant tell you our, our Office would need about 50 more Attorney's because we'd be out here everyday with you and it's just not fair that this individual is subject to what, what he is being subject too, he's on Administrative leave, I mean some people say hey that's, that's a vacation well it, it sure is taken a lot of, this is a young Deputy is not like he can just walk out the door and after 30 years and have his retirement and etcetera I mean he's got the rest of his career in front of him and if you don't, you know drastically alter what's in front of you right now um, you know something that doesn't et over turned at some later stage, I mean he's going to lose his job, he's going to uh, he's never going to be able work in Law Enforcement again, and you know given the, the doubt that I hope we created in your mind as to you know whether or not some of these things happened the ways that they really were said to have happened and whether or not there's really any untruthfulness, whether or not there's really any him insubordination weather or not there's really any serious policy violation and either of these cases I would certainly hope that you, you take a fresh look at it and um and conclude that there are no certainly no serious policy violation in either case and reinstate them put him back to work put him to, you know he was doing well in Courts put him back you know to work there for a while, let him, let him get his feet under them and then and, and start back fresh again I mean you know we, we're not happy with the fact that you know it's, it's very difficult for him, this is a very difficult time for anyone and you can probably explain that better than everybody but you know he loves nothing more than to go back to work tomorrow or Monday or what ever um and we certainly hope you do that, I don't know if there's anything else you want to say?

**Ex. 19**

55

00758                    800

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:**   This basic is the same deal that you just said I mean I could understand a lot of people that told me I kind a enjoy it's a paid vacation but to me it's not I mean I put a lot things off in my education, I could have gone to a lot of places but this is the job I love and people say that's the reason why I'm too active is that I'm I love my job too much, is why I sometimes don't get that, that I just need to slow down and relax and enjoy, enjoy the career and to me like I said I you know there is ways that you can handle differently and like what we discussed I mean there are ways you can have things differently go back and look at it but, but as far as that time and what I did I don't think I did anything wrong, I still don't believe that there was anything wrong I, think there was still other ways I could handle it but I don't think I did anything wrong and I like I said I just like to come back and go to work like I as doing and I for my point of view in for I mean for what I saw and couple other people would see is that I was doing really good, I mean other than certain incidents like were basically going on in North County I mean that's here nor there but I mean everybody can see that I was doing a pretty, pretty good job.

**FIELDS:**   And you know what I think about everything Avila had to say in his statement like he said he is basically a good Deputy it just had some issues with him and you know I, I think we all agree there's some issues between um between Justin and, and, and the Sergeant and, and it's unfortunate but um you know again we certainly hope that uh and if you have any questions on either of the cases that we haven't answered certainly we'd be happy to do that.

**Ex. 19**
801

00759

67

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:**     Okay no, I don't have, I don't have any other questions, I don't have any further questions anything further from you?

**FIELDS:**     I don't think so.


Typed by:
Galdy Gutierrez
Office Assistant III

00760

**Ex. 19**
802





IMPERIAL COUNTY SHERIFF'S OFFICE
# HAROLD D. CARTER
SHERIFF-CORONER-MARSHAL

*February 24, 2003*

*Justin Tackett*
*Deputy Sheriff*
*547 S. Rio Vista*
*Brawley, CA 92227*

RE:   *SECOND NOTICE OF PROPOSED DISCIPLINARY ACTION*

*Dear Deputy Tackett:*

*You are hereby officially notified that I propose to suspend you for a period of two (2) days without pay from your employment with the Imperial County Sheriff's Department as a Deputy Sheriff. You have the right to have this decision reviewed through an informal conference with Sheriff Carter or his designee and an evidentiary hearing before the Employment Appeals Board.*

*Whether or not you request an evidentiary hearing before the Employment Appeals Board, your suspension shall be imposed if you do not appeal this decision within the requisite five (5) day appeal period and/or if the decision is affirmed through the informal conference with the Sheriff or his designee. The specific acts, omissions, causes and reasons upon which this proposed disciplinary action is based are set forth herein and in the documents attached hereto and incorporated herein by reference as though fully set forth.*

*The causes for the proposed discipline are as follows:*

COUNTY ORDINANCE:

24452(a)    *Unprofessional Conduct;*
24452(d)    *Incompetence;*
24452(g)    *Violation of or Refusal to Obey Reasonable Regulations Prescribed by the Board of Supervisors or by the Department Head;*

IMPERIAL COUNTY SHERIFF'S DEPARTMENT POLICY & PROCEDURES

2.1.1      *Violation of Rules*
2.1.4      *Incompetence*
2.1.6      *Unbecoming Conduct*
2.3.04     *Arrest, Search, and Seizure*

00018

**Ex. 20**
803

*February 24, 2003*
*Page 2*

*The specific acts or omissions upon which the proposed discipline is based are set forth below:*

*At about 0150 hours on December 28, 2001, you were directed, through Brawley PD, to check a location in the unincorporated area of Brawley, California on 4548 Elder Road, for a black or dark Jeep with damage to the right front end. A Jeep matching that description had been involved in a hit and run less than an hour earlier.*

*Upon arriving in front of the subject location, a residence, you observed a vehicle, appearing to match the description, parked in the back yard, several yards to the side and in back of the residence.*

*You thereupon drove onto the property, past a fence and down into the yard where the Jeep was located. You observed that the vehicle had extensive damage to the left front end. You failed to observe that this vehicle had sand, dirt and cobwebs all over it, indicating it had not been moved in a substantial period of time. You obtained its plate number and ran it. The vehicle came back to Randy and Andrea Lackey, at the location's residence.*

*Through the Sheriff's communications, you advised Brawley PD that a vehicle matching their description was at your location. Brawley requested that you stand by for their arrival. You moved your patrol car back toward the yard in front of the house and illuminated the front and side of the residence with your headlights, spotlight and alley lights.*

*Shortly thereafter, Randy Lackey came out of the residence, in bare feet and bare chested, wearing only blue jeans. You informed Mr. Lackey that the vehicle matched the description of a Jeep involved in a hit and run a short time ago and that Brawley PD was en route to meet with him. Mr. Lackey told you that his vehicle hadn't been moved in a while.*

*A few minutes later, Ms. Lackey came out and was also told about what was going on. She stated to you that they had been home that night. Ms. Lackey told her husband that he should go inside their residence because it was cold outside. It was approximately 40° Fahrenheit that night. You suggested that Ms. Lackey get some clothing and shoes for her husband.*

*A couple of minutes passed and Mr. Lackey decided to return to his residence due to the temperature. You advised him that he was not free to go inside because he was now being detained for investigative purposes and for officer safety reasons.*

*Due to the cold weather, Mr. Lackey continued to try to return inside. You repeated your order to him and further advised him of the risk of being arrested*

**Ex. 20**

February 24, 2003
Page 3

for a violation of § 148 of the Penal Code, delaying, resisting or impeding a peace officer. When Mr. Lackey appeared to be intent on going back inside, you radioed for back-up and then attempted to place him under arrest. After a brief struggle, you were able to cuff him and place him in the back of your vehicle.

Sheriff's Sergeant Myron King arrived on scene and was briefed by you and of your intention to transport Mr. Lackey to jail and book him for Penal Code (PC) Section § 148 violation. Sgt. King urged you to release Mr. Lackey immediately. You refused. Sgt. King again tried to persuade you that you needed to release Mr. Lackey because your arrest was ill-advised. When you continued to refuse, Sgt. King gave you a direct order to immediately cite and release Mr. Lackey on-scene. You complied.

You possessed neither sufficient probable cause and exigent circumstances nor a search warrant to enter on the private property in question. Having ascertained that a vehicle matching the description was on the property, you should have waited at the curb, outside the property, for Brawley PD's arrival. Your actions violated the rights of the residents, exceeded the instructions you received and increased your risk as a public safety officer.

You entered the property and drove into the back yard to inspect the Jeep. It was evident to other officers from 50 yards away that the Jeep had not been moved in a long time and that it could not be the Jeep involved in the hit and run earlier that morning. Your failure to observe as much was incompetent.

You then moved back toward the front of the house and, while still on private property, proceeded to illuminate the entire house with your vehicle's various lights. Rather than wait at the curb in a 'low-profile' mode, your illumination of the house guaranteed that someone from inside the house would respond to you and would likely do so before any officers had arrived to back you up. Again, given your suspicion that the hit and run driver was in the residence, your actions increased your risk that a confrontation would occur before backup arrived.

Your handling of Mr. Lackey when he wanted to go back inside was also troubling. Mr. Lackey wanted to return inside because it was cold outside and he was obviously not dressed for the weather. While there was an officer safety issue (which never would have been reached had you waited on the street, adjacent to the property and did nothing to draw attention to yourself), your failure to offer any other alternative to Mr. Lackey was unreasonable. In essence, you only offered him the choice of getting increasingly cold or getting arrested.

You could have offered to accompany him inside to get some clothes or just walk him to his front door so he could summon his wife to get clothes for him. You could have allowed him to wait with you inside your patrol car. You could have

**Ex. 20**
805

February 24, 2003
Page 4

gone to the front door yourself for some clothes.  You could have gotten the blanket out of your unit's trunk.

Your compelling Mr. Lackey to freeze or be arrested was unreasonable.  Your arrest of him was ill-advised and reflected poor judgment.  In light of all the other alternatives, your handling of Mr. Lackey was improper.

Therefore, these actions of yours constituted incompetence.  Your handling Mr. Lackey was unbecoming conduct.  Your entry onto private property with due cause or warrant and your arrest of Mr. Lackey violated Rules of Conduct § 2.3.04 because you should have recognized that your actions were beyond legal bounds.

In sum, your conduct violated the above referenced County Ordinance and Sheriff's Department policies and procedures.

I have reviewed the transcript of your first Skelly conference in this matter and the additional investigation conducted afterwards.  Nothing therein has caused me to substantially alter my view of this matter.

At no time have you taken any responsibility for inappropriate actions or admitted any error in your course of conduct.  During your interviews and at your first Skelly conference with the Sheriff, you had more than ample opportunity to demonstrate insight and remorse.  We all make mistakes.  Mature adults acknowledge errors and accept responsibility.  You have done neither.

In weighing the appropriate disciplinary consequence for your actions herein, my first consideration must be a level of punishment that will guarantee such misconduct will not reoccur.  Having closely reviewed the internal affairs file, I am also satisfied that the proper disciplinary consequence for you in this instance is a two (2) day suspension.

You have the right to respond to the matters raised in this notice both orally and in writing, prior to the end of the workday on March 3, 2003.  **You must request this informal conference with Sheriff Carter or his designee and schedule it with him within the five (5) workday period.**  Any response, which you timely provide will be considered by him before final action is taken.

If you do not agree with this discipline you may contact the Sheriff's Administrative office either in writing to 328 Applestill Road, El Centro, 92243 or by phone at (760) 339-6301 to schedule an appointment with Sheriff Carter or his designee.  If you do not respond in writing or by phone by Monday, March 3, 2003 by 1700 hours, the proposed discipline will be imposed and you will be notified of the dates of suspension.

**Ex. 20**

00021   806

February 24, 2003
Page 5

Whether or not you respond to this letter or request an informal conference, if the discipline becomes final on March 3, 2003, as a regular full-time employee, you have the right to file an appeal of your suspension with the Imperial County Employment Appeals Board within ten (10) working days pursuant to Chapter 10.5 of Division 4 of Title 2 of the Codified Ordinances of Imperial County.

**THIS DOCUMENT WILL BE PLACED IN YOUR OFFICIAL PERSONNEL FILE ALONG WITH ALL ATTACHMENTS WITHIN 30 WORKING DAYS OF THE DATE OF YOUR RECEIPT OF THIS LETTER. PRIOR TO THE EXPIRATION OF THE ABOVE PERIOD, YOU HAVE THE RIGHT TO SUBMIT A STATEMENT WHICH WILL BE ATTACHED TO THIS DOCUMENT AND PLACED IN YOUR PERSONNEL FILE.**

Sincerely,

Harold D. Carter
Sheriff-Coroner-Marshal

By:    Sharon Housouer
       Chief Deputy

HDC:SH:ba

Enclosures:     Copy of County Ordinance 24452
                Copy of Department Policies and Procedures
                Copy of Internal Affairs File

**I hereby acknowledge that I have received, read and am aware of the contents of this Notice of Proposed Disciplinary Action.**

**Signature** _____     **Date** _03/24/03_____

**Ex. 20**

00022     807




IMPERIAL COUNTY SHERIFF'S OFFICE
*HAROLD D. CARTER*
SHERIFF-CORONER-MARSHAL

*April 4, 2003*

*Justin Tackett*
*Deputy Sheriff*
*547 S. Rio Vista*
*Brawley, CA 92227*

**RE:   FINAL NOTICE OF DISCIPLINARY ACTION**

*Dear Deputy Tackett:*

*You are hereby officially notified that I am suspending you for a period of two (2) days without pay from your employment with the Imperial County Sheriff's Department as a Deputy Sheriff.   You have the right to have this decision reviewed through an evidentiary hearing before the Employment Appeals Board.*

*Whether or not you request an evidentiary hearing before the Employment Appeals Board, your suspension shall be imposed.   For this matter, your suspension shall be for the following dates: April 8 and 9, 2003.*

*The specific acts, omissions, causes and reasons upon which this disciplinary action is based are set forth herein and in the documents attached hereto and incorporated herein by reference as though fully set forth.*

*The causes for the discipline are as follows:*

**COUNTY ORDINANCE:**

| | |
|---|---|
| 24452(a) | **Unprofessional Conduct;** |
| 24452(d) | **Incompetence;** |
| 24452(g) | **Violation of or Refusal to Obey Reasonable Regulations Prescribed by the Board of Supervisors or by the Department Head:** |

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT POLICY & PROCEDURES**

| | |
|---|---|
| 2.1.1 | *Violation of Rules* |
| 2.1.4 | *Incompetence* |
| 2.1.6 | *Unbecoming Conduct* |
| 2.3.04 | *Arrest, Search, and Seizure* |

00296

**Ex. 21**

808

P.O. Box 102   E. Centro, Ca. 92244-1040 / Phone (760) 334-6311  Fax (760) 334-6348  www.icso.org
An Equal Opportunity Employer

April 4, 2003
Page 2

The specific acts or omissions upon which this discipline is based are set forth
below:

At about 0150 hours on December 28, 2001, you were directed, through Brawley
PD, to check a location in the unincorporated area of Brawley, California on 4548
Elder Road, for a black or dark Jeep with damage to the right front end.  A Jeep
matching that description had been involved in a hit and run less than an hour
earlier.

Upon arriving in front of the subject location, a residence, you observed a vehicle,
appearing to match the description, parked in the back yard, several yards to the
side and in back of the residence.

You thereupon drove onto the property, past a fence and down into the yard
where the Jeep was located.   You observed that the vehicle had extensive
damage to the left front end.  You failed to observe that this vehicle had sand, dirt
and cobwebs all over it, indicating it had not been moved in a substantial period
of time.   You obtained its plate number and ran it.   The vehicle came back to
Randy and Andrea Lackey, at the location's residence.

Through the Sheriff's communications, you advised Brawley PD that a vehicle
matching their description was at your location.   Brawley requested that you
stand by for their arrival.  You moved your patrol car back toward the yard in
front of the house and illuminated the front and side of the residence with your
headlights, spotlight and alley lights.

Shortly thereafter, Randy Lackey came out of the residence, in bare feet and bare
chested, wearing only blue jeans.   You informed Mr. Lackey that the vehicle
matched the description of a Jeep involved in a hit and run a short time ago and
that Brawley PD was en route to meet with him.  Mr. Lackey told you that his
vehicle hadn't been moved in a while.

A few minutes later, Ms. Lackey came out and was also told about what was
going on.  She stated to you that they had been home that night.  Ms. Lackey told
her husband that he should go inside their residence because it was cold outside.
It was approximately 40° Fahrenheit that night.   You suggested that Ms. Lackey
get some clothing and shoes for her husband.

A couple of minutes passed and Mr. Lackey decided to return to his residence due
to the temperature.  You advised him that he was not free to go inside because he
was now being detained for investigative purposes and for officer safety reasons.

**Ex. 21**

809

April 4, 2003
Page 3

Due to the cold weather, Mr. Lackey continued to try to return inside. You repeated your order to him and further advised him of the risk of being arrested for a violation of § 148 of the Penal Code, delaying, resisting or impeding a peace officer. When Mr. Lackey appeared to be intent on going back inside, you radioed for back-up and then attempted to place him under arrest. After a brief struggle, you were able to cuff him and place him in the back of your vehicle.

Sheriff's Sergeant Myron King arrived on scene and was briefed by you and of your intention to transport Mr. Lackey to jail and book him for Penal Code (PC) Section § 148 violation. Sgt. King urged you to release Mr. Lackey immediately. You refused. Sgt. King again tried to persuade you that you needed to release Mr. Lackey because your arrest was ill-advised. When you continued to refuse, Sgt. King gave you a direct order to immediately cite and release Mr. Lackey on-scene. You complied.

You possessed neither sufficient probable cause and exigent circumstances nor a search warrant to enter on the private property in question. Having ascertained that a vehicle matching the description was on the property, you should have waited at the curb, outside the property, for Brawley PD's arrival. Your actions violated the rights of the residents, exceeded the instructions you received and increased your risk as a public safety officer.

You entered the property and drove into the back yard to inspect the Jeep. It was evident to other officers from 50 yards away that the Jeep had not been moved in a long time and that it could not be the Jeep involved in the hit and run earlier that morning. Your failure to observe as much was incompetent.

You then moved back toward the front of the house and, while still on private property, proceeded to illuminate the entire house with your vehicle's various lights. Rather than wait at the curb in a 'low-profile' mode, your illumination of the house guaranteed that someone from inside the house would respond to you and would likely do so <u>before</u> any officers had arrived to back you up. Again, given your suspicion that the hit and run driver was in the residence, your actions increased your risk that a confrontation would occur before backup arrived.

Your handling of Mr. Lackey when he wanted to go back inside was also troubling. Mr. Lackey wanted to return inside because it was cold outside and he was obviously not dressed for the weather. While there was an officer safety issue (which never would have been reached had you waited on the street, adjacent to the property and did nothing to draw attention to yourself), your failure to offer any other alternative to Mr. Lackey was unreasonable. In essence, you only offered him the choice of getting increasingly cold or getting arrested.

00298

**Ex. 21**
810

*April 4, 2003*
*Page 4*

*You could have offered to accompany him inside to get some clothes or just walk him to his front door so he could summon his wife to get clothes for him. You could have allowed him to wait with you inside your patrol car. You could have gone to the front door yourself for some clothes. You could have gotten the blanket out of your unit's trunk.*

*Your compelling Mr. Lackey to freeze or be arrested was unreasonable. Your arrest of him was ill-advised and reflected poor judgment. In light of all the other alternatives, your handling of Mr. Lackey was improper.*

*Therefore, these actions of yours constituted incompetence. Your handling Mr. Lackey was unbecoming conduct. Your entry onto private property with due cause or warrant and your arrest of Mr. Lackey violated Rules of Conduct § 2.3.04 because you should have recognized that your actions were beyond legal bounds.*

*In sum, your conduct violated the above referenced County Ordinance and Sheriff's Department policies and procedures.*

*I have reviewed the transcript of your first Skelly conference in this matter and the additional investigation conducted afterwards. Nothing therein has caused me to substantially alter my view of this matter.*

*At no time have you taken any responsibility for inappropriate actions or admitted any error in your course of conduct. During your interviews and at your first Skelly conference with the me, you had more than ample opportunity to demonstrate insight and remorse. We all make mistakes. Mature adults acknowledge errors and accept responsibility. You have done neither.*

*Finally, despite your representative's April 2, 2003 Skelly response to the Second Notice of Proposed Disciplinary Action, I conclude that the one year statute of limitations in Government Code Sec. 3304 (d) does not preclude your discipline in this instance. Based upon your and your representative's statements during your first Skelly conference, wherein you made new factual assertions not contained in your interview statement, we conducted additional investigation to determine the validity of some of these assertions. Therefore, subparagraphs (e) and (g) of Sec. 3304 apply in this instance. Additionally, because a claim was filed against the County and you by Mr. Lackey, Sec. 3304 (d)(6) also applies. (Indeed, your representative expressed the wish that this matter not proceed for that reason during your first Skelly conference.)*

*Based upon the above, I find that you violated the above referenced laws, ordinances, policies and procedures by your actions. In weighing the appropriate disciplinary consequence for your actions herein, my first consideration must be a level of punishment that will guarantee such misconduct will not reoccur. Having closely reviewed the internal affairs file, I am also satisfied that the proper*

**Ex. 21**
811

*April 4, 2003*
*Page 5*

*disciplinary consequence for you in this instance is a two (2) day suspension. You will be subsequently notified of dates of your suspension.*

*You have the right to respond to the matters raised in this notice in writing.*

*As a regular full-time employee, you also have the right to file an appeal of your suspension with the Imperial County Employment Appeals Board within ten (10) working days pursuant to Chapter 10.5 of Division 4 of Title 2 of the Codified Ordinances of Imperial County.*

*All relevant documents have either already been provided or are attached for your review.*

**THIS DOCUMENT WILL BE PLACED IN YOUR OFFICIAL PERSONNEL FILE ALONG WITH ALL ATTACHMENTS WITHIN 30 WORKING DAYS OF THE DATE OF YOUR RECEIPT OF THIS LETTER. PRIOR TO THE EXPIRATION OF THE ABOVE PERIOD, YOU HAVE THE RIGHT TO SUBMIT A STATEMENT WHICH WILL BE ATTACHED TO THIS DOCUMENT AND PLACED IN YOUR PERSONNEL FILE.**

*Sincerely,*

*Harold D. Carter*
*Sheriff-Coroner-Marshal*

*By:     Harold D. Carter*
*Sheriff-Coroner-Marshal*

HDC:SH:ba

Enclosures:     Copy of County Ordinance 24452.
                Copy of Department Policies and Procedures

**I hereby acknowledge that I have received, read and am aware of the contents of this Final Notice of Disciplinary Action.**

**Signature** _____   **Date** 04/05/03 _____

00300

**Ex. 21**

812

§ 24452.                    *Disciplinary Procedures*

§ 24452.      Cause for Disciplinary Action.

The causes justifying disciplinary action against a County employee shall include, but not limited to, the following:

(a)   Immoral or unprofessional conduct;

(b)   Deliberate or repeated absence form duty without authorization;

(c)   Dishonesty;

(d)   Incompetence;

(e)   Evident unfitness for service;

(f)   Physical or mental condition unfitting him to discharge his duties;

(g)   Violation of or refusal to obey reasonable regulations prescribed by the Board of Supervisors or by the department head;

(h)   Conviction of a felony or a crime involving moral turpitude;

(i)   Neglect;

(j)   Insubordination;

(k)   Continued absence after exhaustion of sick leave, compensation overtime, vacation and leave of absence;

(l)   Improper political activity which constitutes a violation of Federal or State laws or ordinances of the County of Imperial; (Ord. No. 703; eff. Aug. 31, 1979, retroactive to June 29, 1979.)

(m)  Neglect or willful damage to public property or waste of public supplies or equipment;

(n)   Falsifying information on employment application, personnel records or County records;

(o)   Gambling on County premises;

(p)   Drinking or possessing any alcohol beverage on County premises or on County time;

(q)   Reporting to work while under the influence of alcohol or drugs;

(r)   Sleeping on duty.

**Ex. 21**

813.

MANUAL     POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.          PAGE   2

2.1.01     <u>VIOLATION OF RULES</u>

EMPLOYEES SHALL NOT COMMIT ANY OTHER ACTS OR OMIT ANY
OTHER ACTS WHICH CONSTITUTE A VIOLATION OF ANY OF THE
RULES, REGULATIONS, DIRECTIVES, ORDERS OR POLICIES OF
THIS DEPARTMENT, WHETHER STATED IN THIS GENERAL ORDER OR
ELSEWHERE.    IGNORANCE OF THE RULES, REGULATIONS,
DIRECTIVES, ORDERS, OR POLICIES SHALL NOT BE CONSIDERED
AS A JUSTIFICATION FOR ANY SUCH VIOLATIONS.    EMPLOYEES
SHALL BE RESPONSIBLE FOR THEIR OWN ACTS, AND THEY SHALL
NOT SHIFT TO OTHERS THE BURDEN OF RESPONSIBILITY FOR
EXECUTING OR FAILING TO EXECUTE A LAWFUL ORDER OR POLICE
DUTY.

2.1.02     <u>INSUBORDINATION</u>

EMPLOYEES SHALL PROMPTLY OBEY ANY LAWFUL ORDERS OF A
SUPERVISING EMPLOYEE.    THIS WILL INCLUDE ORDERS RELAYED
FROM AN EMPLOYEE SUPERVISOR BY AN EMPLOYEE OF THE SAME OR
LESSER RANK.

00302

**Ex. 21**

814

THE IMPERIAL SHERIFF

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.          PAGE  4

2.1.04     INCOMPETENCE

EMPLOYEES SHALL MAINTAIN SUFFICIENT COMPETENCY TO
PROPERLY PERFORM THEIR DUTIES AND ASSUME THE
RESPONSIBILITIES OF THEIR POSITIONS. EMPLOYEES SHALL
PERFORM THEIR DUTIES IN A MANNER WHICH WILL TEND TO
ESTABLISH AND MAINTAIN THE HIGHEST STANDARDS OF
EFFICIENCY IN CARRYING OUT THE FUNCTIONS AND OBJECTIVES
OF THE DEPARTMENT. INCOMPETENCY MAY BE DEMONSTRATED BY
A LACK OF KNOWLEDGE OF THE APPLICATION OF LAWS REQUIRED
TO BE ENFORCED, AN UNWILLINGNESS OR INABILITY TO PERFORM
ASSIGNED TASKS. THE FAILURE TO CONFORM TO WORK STANDARDS
ESTABLISHED FOR THE EMPLOYEES RANK, GRADE, OR POSITION,
THE FAILURE TO TAKE APPROPRIATE ACTION ON THE OCCASION OF
A CRIME, DISORDER, OR OTHER CONDITION DESERVING POLICE
ATTENTION, ABSENCE WITHOUT LEAVE; OR UNAUTHORIZED ABSENCE
FROM THE ASSIGNMENT DURING A TOUR OF DUTY. IN ADDITION
TO OTHER INDICIA OF INCOMPETENCE, THE FOLLOWING WILL BE
CONSIDERED PRIMA FACIE EVIDENCE OF INCOMPETENCE: REPEATED
POOR EVALUATIONS OR A WRITTEN RECORD OF REPEATED
INFRACTIONS OF THE RULES, REGULATIONS, MANUALS OR
DIRECTIVES.

Ex. 21
815

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
| | | RULES OF CONDUCT | 2.1 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.          PAGE 5

2.1.05    CONFORMANCE TO LAWS

A. EMPLOYEES SHALL OBEY ALL LAWS OF THE UNITED STATES, OF THIS STATE, AND OF THE LOCAL JURISDICTION.

B. AN INDICTMENT OR INFORMATION FILED AGAINST AN EMPLOYEE, OR A CONVICTION OF THE VIOLATION OF ANY LAW SHALL BE CAUSE FOR DISCIPLINARY ACTION.

2.1.06    UNBECOMING CONDUCT

EMPLOYEES SHALL CONDUCT THEMSELVES AT ALL TIMES, BOTH ON AND OFF DUTY, IN SUCH A MANNER AS TO REFLECT MOST FAVORABLY ON THIS DEPARTMENT.  CONDUCT UNBECOMING OF AN EMPLOYEE SHALL INCLUDE THAT WHICH TENDS TO BRING THIS DEPARTMENT INTO DISREPUTE OR REFLECTS DISCREDIT UPON THE EMPLOYEE AS A MEMBER OF THIS DEPARTMENT, OR THAT WHICH TENDS TO IMPAIR THE OPERATION AND EFFICIENCY OF THIS DEPARTMENT.

00304

**Ex. 21**

816

IMPERIAL COUNTY SHERIFF'S DEPT.

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.3 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.        PAGE 14

2.3.03    USE OF WEAPONS

EMPLOYEES SHALL NOT USE OR HANDLE WEAPONS IN A CARELESS
OR IMPRUDENT MANNER.  EMPLOYEES SHALL USE WEAPONS IN
ACCORDANCE WITH LAW AND ESTABLISHED DEPARTMENTAL
PROCEDURES.

2.3.04    ARREST, SEARCH AND SEIZURE

OFFICERS SHALL NOT MAKE ANY ARREST, SEARCH OR SEIZURE
WHICH THEY KNOW OR OUGHT TO KNOW IS NOT IN ACCORDANCE
WITH LAW AND ESTABLISHED DEPARTMENT PROCEDURES OR
POLICIES.

2.3.05    USE OF FORCE

OFFICERS SHALL NOT USE MORE FORCE IN ANY SITUATION THAN
IS REASONABLY NECESSARY UNDER THE CIRCUMSTANCES.
OFFICERS SHALL USE FORCE IN ACCORDANCE WITH LAW AND
ESTABLISHED DEPARTMENTAL PROCEDURES.

2.3.06    TREATMENT OF PERSONS IN CUSTODY

EMPLOYEES SHALL NOT MISTREAT PERSONS WHO ARE IN THEIR
CUSTODY.  EMPLOYEES SHALL HANDLE PERSONS IN ACCORDANCE
WITH LAW AND ESTABLISHED DEPARTMENTAL PROCEDURES.

00305        **Ex. 21**
                  817

# Imperial County Sheriff's Department
## HAROLD D. CARTER
### Sheriff-Coroner-Marshal

## INTEROFFICE MEMO

**DATE:**       February 11, 2002

**TO:**        Chief Deputy Housouer

**FROM:**       Sergeant Manuel Avila

**SUBJECT:**    Deputy Sheriff Justin Tackett

Chief Housouer,

I am writing this memo to request an internal investigation of an incident that occurred on January 31, 2002. Deputy Tackett was untruthful to me.

During the latter part of 2001, I had a conversation with Deputy Tackett in regards to probation and parole searches. At that time, I told Deputy Tackett that his primary function is Patrol and he is to respond to calls for service. I further advised him that he was not a Probation Officer or a Parole Agent, and that I did not want him doing probation or parole searches. I told him if he had information on Probationers or Parolees to contact their Probation Officer or Parole Agent.

During the beginning of January 2002, Deputy Tackett came to me and told me that he was going to Westmorland to do a parole search of Antonio Davila. I again told him what his main duties were and that he was not going to search parolees. Deputy Tackett told me that he had permission from Parole Agent Ambrose to search Davila. I again told him he was not a parole agent and was not going to search Davila.

On January 31, 2002 at approx. 1100 hours, I received a telephone call at the Brawley Sheriff's Department from Deputy Tackett. Deputy Tackett told me

00763 **Ex. 22**
818

that he was going to assist Investigator Vela on a couple of follow-ups that Vela was unable to do. I asked Deputy Tackett which cases and he told me a child neglect in Westmorland and an H & S in the City of Calipatria.

I hung up the phone and contacted Investigator Vela in the Investigation Office. Vela told me that Deputy Tackett came to him this morning and wanted copies of Tina Phillips and Vernoy Hercel Schultz probation conditions. Deputy Tackett wanted to do a probation search of the two suspects. Investigator Vela told Tackett that he needed to clear it with his Sergeant before doing the searches.

I contacted Deputy Tackett and told him to call me at the Brawley Sheriff's Station. Deputy Tackett called me and I asked him if he was doing a follow-up investigation or was he conducting probation searches. Deputy Tackett told me he was doing a follow-up investigation.

I asked him if the cases he was following up were adjudicated. Deputy Tackett told me that he was following up on the cases to make sure they were complying with the conditions of probation. I ordered Tackett not to make any probation searches.

At approx. 1230 hours Calipatria Police Officer Granados called the Sheriff's Department and requested Deputy Tackett respond to assist in a probation search. Deputy Tackett responded and assisted.

At approx. 1330 hours, I contacted Calipatria Police Chief Reggie Gomez. Chief Gomez told me that Deputy Tackett came into his department and wanted to do a probation search of a subject's home by the name of Schultz.

I have not had a talk with Deputy Tackett concerning this matter. I feel that this violation is a major violation and an internal affairs is necessary.

00764    **Ex. 22**
819

*Imperial County Sheriff's Department*
## *HAROLD D. CARTER*
### *Sheriff-Coroner-Marshall*

## INTEROFFICE MEMO



RECEIVED
FEB 1 3 2002
BY

DATE:    February 13, 2002

TO:      Sergeant Delfino Matus, Administrative Investigations Unit

FROM:   Chief Deputy Sharon Housouer, North County Operations

SUBJECT: Internal Affairs Investigation


I have received a memo from Sergeant Manuel Avila requesting that
an internal affair be conducted on Deputy Justin Tackett. Sergeant
Avila alleges that Deputy Tackett has been untruthful to him.

I am requesting an Administrative Investigation be conducted
regarding these allegations.

If you have any questions, please feel free to contact me at 344-2615.

00765   **Ex. 23**

820

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT

## ADMINISTRATIVE INVESTIGATIONS UNIT

## IA # 2002-007



COPY

Investigation conducted by
Sgt. Delfino O. Matus
Sheriff's Administrative Unit

**Ex. 24**
821

00761

# TABLE OF CONTENTS

1. Memo from Sgt. Manuel Avila to Chief Deputy Housouer dated February 11, 2002.

2. Memo from Chief Deputy Sharon Housouer to Sgt. Delfino O. Matus dated February 13, 2002.

3. Notice to Deputy Justin Tackett, dated February 14, 2002.

4. Copy of Order Granting Summary Probation, case number CM-02751-B on Tina Marie Phillips, dated August 1, 2001.

5. Copy of Order Granting Summary Probation, case number 2620-B on Vernoy Hercel Schultz, dated September 17, 2001.

6. Sgt. Delfino O. Matus investigative report, reference IA number 2002-007.

7. Transcribed interview of Deputy Gabe Vela.

8. Transcribed interview of Sgt. Manuel Avila.

9. Transcribed interview of Deputy Manuel DeLeon.

10. Transcribed interview of Chief Reggie Gomez.

11. Transcribed interview of Officer Eric Granado.

12. Transcribed interview of Deputy Justin Tackett.

13. Transcription of telephone conversation between Officer Granado and the sheriff's communication center.

**Ex. 24**

**00762**   822

# Imperial County Sheriff's Department
## HAROLD D. CARTER
### Sheriff-Coroner-Marshal

## INTEROFFICE MEMO

**DATE:**        February 11, 2002

**TO:**          Chief Deputy Housouer

**FROM:**        Sergeant Manuel Avila

**SUBJECT:**     **Deputy Sheriff Justin Tackett**

Chief Housouer,

I am writing this memo to request an internal investigation of an incident that occurred on January 31, 2002.  Deputy Tackett was untruthful to me.

During the latter part of 2001, I had a conversation with Deputy Tackett in regards to probation and parole searches. At that time, I told Deputy Tackett that his primary function is Patrol and he is to respond to calls for service. I further advised him that he was not a Probation Officer or a Parole Agent, and that I did not want him doing probation or parole searches. I told him if he had information on Probationers or Parolees to contact their Probation Officer or Parole Agent.

During the beginning of January 2002, Deputy Tackett came to me and told me that he was going to Westmoriand to do a parole search of Antonio Davila. I again told him what his main duties were and that he was not going to search parolees. Deputy Tackett told me that he had permission from Parole Agent Ambrose to search Davila. I again told him he was not a parole agent and was not going to search Davila.

On January 31, 2002 at approx. 1100 hours, I received a telephone call at the Brawley Sheriff's Department from Deputy Tackett. Deputy Tackett told me

00763     **Ex. 24**
823

that he was going to assist Investigator Vela on a couple of follow-ups that Vela was unable to do. I asked Deputy Tackett which cases and he told me a child neglect in Westmorland and an H & S in the City of Calipatria.

I hung up the phone and contacted Investigator Vela in the Investigation Office. Vela told me that Deputy Tackett came to him this morning and wanted copies of Tina Phillips and Vernoy Hercel Schultz probation conditions. Deputy Tackett wanted to do a probation search of the two suspects. Investigator Vela told Tackett that he needed to clear it with his Sergeant before doing the searches.

I contacted Deputy Tackett and told him to call me at the Brawley Sheriff's Station. Deputy Tackett called me and I asked him if he was doing a follow-up investigation or was he conducting probation searches. Deputy Tackett told me he was doing a follow-up investigation.

I asked him if the cases he was following up were adjudicated. Deputy Tackett told me that he was following up on the cases to make sure they were complying with the conditions of probation. I ordered Tackett not to make any probation searches.

At approx. 1230 hours Calipatria Police Officer Granados called the Sheriff's Department and requested Deputy Tackett respond to assist in a probation search. Deputy Tackett responded and assisted.

At approx. 1330 hours, I contacted Calipatria Police Chief Reggie Gomez. Chief Gomez told me that Deputy Tackett came into his department and wanted to do a probation search of a subject's home by the name of Schultz.

I have not had a talk with Deputy Tackett concerning this matter. I feel that this violation is a major violation and an internal affairs is necessary.

**Ex. 24**
824

*Imperial County Sheriff's Department*
## HAROLD D. CARTER
*Sheriff-Coroner-Marshall*



RECEIVED
FEB 1 3 2002
BY

## INTEROFFICE MEMO

DATE:     February 13, 2002

TO:       Sergeant Delfino Matus, Administrative Investigations Unit

FROM:   Chief Deputy Sharon Housouer, North County Operations

SUBJECT: Internal Affairs Investigation


I have received a memo from Sergeant Manuel Avila requesting that
an internal affair be conducted on Deputy Justin Tackett. Sergeant
Avila alleges that Deputy Tackett has been untruthful to him.

I am requesting an Administrative Investigation be conducted
regarding these allegations.

If you have any questions, please feel free to contact me at 344-2615.


00765        **Ex. 24**
             825

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

DATE        February 14, 2002

COMPLAINANT:   Imperial County Sheriff's Department

DATE OF INCIDENT:   January 31, 2002

LOCATION OF INCIDENT:     Brawley, Ca.

ALLEGATION:    1.    2.1.01 Violation of Rules
               2.    2.1.02 Insubordination
               3.    2.1.06 Unbecoming Conduct
               4.    2.5.09 Testimony
               *Above Sections are from the Imperial County
               Sheriff's Department Manual of Policies and
               Procedures, Rules of Conduct.

CASE #:   IA 2002-007

TO:  Deputy Justin Tackett

This is to inform you that Administrative Investigations
Unit (AIU) has received a complaint regarding your conduct.
Sgt. Delfino O. Matus will handle the investigation of this
complaint. Sgt. Matus will contact you to arrange an
interview.

As a sworn member of this department, you should be aware
of your rights contained in the California Government Code
Sections 3300-3311 (Peace Officer's Bill of Rights) or
contact any employee representative or attorney for advice.

The Imperial County Sheriff's Department Policy and
Procedure Manual Rules of Conduct also contain your
responsibilities during the investigation. Your attention
is specifically directed to Sections 2.1.02
INSUBORDINATION, 2.5.07 INTERVENTION, AND 2.5.09 TESTIMONY.

If you have any questions, please contact Sgt. Matus at
760-339-6319.//////

Sgt. Delfino O. Matus

00766

**Ex. 24**
826

People vs. _____ Case No. _____ CM-02 15FK _____ Agency _____ Date _____

# ORDER GRANTING SUMMARY PROBATION

11257(b)
11364

, above named defendant having been convicted of a misdemeanor(s), in violation of section(s) _____ of the _____ H5 _____ code. DEFENDANT IS SENTENCED TO _____ COUNTY JAIL, EXECUTION OF SENTENCE SUSPENDED; IMPOSITION OF SENTENCE SUSPENDED; And the defendant is placed on Summary Probation for the period of _____ 3 DAYS. _____, on the following terms and conditions:

**ALL CASES:** Defendant shall obey all FEDERAL, STATE, COUNTY, AND CITY LAWS.

**DUI and Suspended/Revoked Licenses:**

____ Defendant shall not drive a motor vehicle without a valid driver's license in possession.
____ Defendant shall not drive a motor vehicle unless covered by insurance for public liability.
____ Defendant shall not drive a motor vehicle with any detectable amount of alcohol in his/her system.
____ Defendant shall enroll in the Alcohol Safety Class or SB 38 program within ten days.
____ Proof of completion by _____. Completion review date _____.
____ Driver's license restricted for _____ as follows: Drive to and from employment, during course of employment, and to and from treatment program.
____ Shall submit to blood or breath test upon request of Peace Officer to determine alcohol content in system while driving.
____ Shall submit to field sobriety test if operating a motor vehicle, upon request of Peace Officer.

**Drug Related Cases:**

X Defendant shall not take any form of controlled drugs or narcotics unless prescribed by a person licensed to prescribe them by the State of California.
X Defendant must submit his/her person, vehicle, and place of residence to a search for and or seizure of narcotics, drugs or other contraband at any time of day or night, with or without a search warrant.
____ Defendant shall register as a narcotic offender pursuant to 11590 H&S.
____ Shall submit to blood, breath or urine test upon request of Peace Officer, to determine whether or not he/she has drugs or narcotics in his/her system.
____ Defendant shall not be in possession of any restricted drugs and or paraphernalia.
____ Defendant shall not associate with any known drug users or sellers.

**todv :**

____ Defendant shall be imprisoned in the County Jail or CALTRANS for _____ with credits of _____. Commencing on _____. Completion date: _____.
____ Defendant shall serve _____ months in a residential treatment program at _____.
____ Defendant shall not receive any custody credits for any time spent in the residential treatment program should he/she leave the program or be terminated from the program before the program has been completed.
____ Defendant report to Probation Dept. by _____, shall perform _____ hours of community work service, at least 8 hours per week as directed by Probation Dept., with completion by _____.

**fine:**

X Defendant shall pay a fine including penalty assessments in the amount of $ _____ plus State restitution in the amount of $ _____, plus administrative fee in the amount of $ 2 _____, plus attorney fees in the amount of $ _____, for a total including all fees, fines and assessments of $ _____ payable in monthly payments of $ 50 _____, due by the _____ day of the month, commencing _____ and each month thereafter until paid in full. Payment review date _____. 10-01-09
____ With proof of a valid driver's license, the fine will be reduced to $ _____, proof to be submitted by _____.

**Pay fines to:**

| X Superior Court | ____ Superior Court | ____ Superior Court |
|---|---|---|
| 383 Main Street | 415 4th Street | 939 Main Street |
| Brawley, CA 92227 | Calexico, CA 92231 | El Centro, CA 92243 |

**Miscellaneous:**

____ Defendant shall stay away from bars, liquor stores or places where the primary purpose of the business is the selling of alcoholic beverages.
____ Defendant shall totally abstain from the use of alcoholic beverages.
____ Defendant shall not own, or have possession, custody, or control of a firearm.
____ Defendant shall not annoy threaten, harass or molest _____.

**Other:** _____

| Signed | _____ | SS# | _____ | Judge | _____ |
|---|---|---|---|---|---|
| Address | _____ | DOB | _____ | | |
| | _____ | DR Lic # | _____ | Clerk | _____ |

00767    **Ex. 24**
827

Interpreter _____

Distribution:    Court    ·    Defendant    ·    Defense Attorney    ·    Accounting    ·    Probation

# ORDER GRANTING SUMMARY PROBATION

(AJ /05)

above named defendant having been convicted of a misdemeanor(s), in violation of section(s) 11550 of _____ code. DEFENDANT IS SENTENCED TO _____ COUNTY JAIL, EXECUTION OF SENTENCE SUSPENDED; IMPOSITION OF SENTENCE SUSPENDED; And the defendant is placed on Summary Probation for the period of 2 hr , on the following terms and conditions:

ALL CASES:  Defendant shall obey all FEDERAL, STATE, COUNTY, AND CITY LAWS.

DUI and Suspended/Revoked Licenses:
____ Defendant shall not drive a motor vehicle without a valid driver's license in possession.
____ Defendant shall not drive a motor vehicle unless covered by insurance for public liability.
____ Defendant shall not drive a motor vehicle with any detectable amount of alcohol in his/her system.
____ Defendant shall enroll in the Alcohol Safety Class or SB 38 program within ten days.
____ Proof of completion by _____. Completion review date _____.
____ Driver's license restricted for _____ as follows: Drive to and from employment, during course of employment, and to and from treatment program.
____ Shall submit to blood or breath test upon request of Peace Officer to determine alcohol content in system while driving.
____ Shall submit to field sobriety test if operating a motor vehicle, upon request of Peace Officer.

Drug Related Cases:
_✓_ Defendant shall not take any form of controlled drugs or narcotics unless prescribed by a person licensed to prescribe them by the State of California.
_✓_ Defendant must submit his/her person, vehicle, and place of residence to a search for and or seizure of narcotics, drugs or other contraband at any time of day or night, with or without a search warrant.
_✓_ Defendant shall register as a narcotic offender pursuant to 11590 H&S.
_✓_ Shall submit to blood, breath or urine test upon request of Peace Officer, to determine whether or not he/she has drugs or narcotics in his/her system.
_✓_ Defendant shall not be in possession of any restricted drugs and or paraphernalia.
_✓_ Defendant shall not associate with any known drug users or sellers.

adv :
____ Defendant shall be imprisoned in the County Jail or CALTRANS for _____ with credits of _____. Commencing on _____. Completion date:_____.
____ Defendant shall serve _____ months in a residential treatment program at _____
____ Defendant shall not receive any custody credits for any time spent in the residential treatment program should he/she leave the program or be terminated from the program before the program has been completed.
____ Defendant report to Probation Dept. by _____. shall perform _____ hours of community work service, at least 8 hours per week as directed by Probation Dept., with completion by _____.

Fine:
_✓_ Defendant shall pay a fine including penalty assessments in the amount of $ _____ plus State restitution in the amount of $ 100 00 plus administrative fee in the amount of $ _____. plus attorney fees in the amount of $ _____, for a total including all fees, fines and assessments of $ _____ payable in monthly payments of $ _____ due by the _____ day of the month, commencing _____ and each month thereafter until paid in full.  Payment review date 1-10-02
____ With proof of a valid driver's license, the fine will be reduced to $ _____, proof to be submitted by _____.

Pay fines to:  _✓_ Superior Court      ___ Superior Court       ___ Superior Court
                   383 Main Street          415 4th Street              939 Main Street
                   Brawley, CA 92227        Calexico, CA 92231          El Centro, CA 92243

Miscellaneous:
____ Defendant shall stay away from bars, liquor stores or places where the primary purpose of the  business is the selling of alcoholic beverages.
____ Defendant shall totally abstain from the use of alcoholic beverages.
____ Defendant shall not own, or have possession, custody, or control of a firearm.
____ Defendant shall not annoy threaten, harass or molest _____

00768

Other: _____

| Signed | | SS# | 55-97-0005 | Judge | |
| Address | | DOB | | | |
| | | DR Lic # | | Clerk | |
| | | | | Interpreter | |

Ex. 24
828

Distribution:     Court     Defendant     Defense Attorney     Accounting

# COMPLAINT

On February 13, 2002, the Imperial County Sheriff's
Department Administrative Investigations Unit received a
memo, dated February 13, 2002 from Imperial County
Sheriff's Department North County Operations Chief Deputy
Sharon Housouer requesting an investigation regarding the
conduct of Deputy Justin Tackett.. Attached to Chief Deputy
Housouer's memo was a memo from Sgt. Manuel Avila to Chief
Deputy Housouer. Sgt. Avila's memo was dated February 11,
2002.

Sgt. Avila memo alleged that Deputy Tackett had been
untruthful when confronted by Sgt. Avila regarding
probation searches that he had been ordered not to conduct
in the city of Calipatria. Sgt. Avila's memo indicated that
the event took place on January 31, 2002. Attached to Sgt.
Avila's memo were two (2) copies of Order Granting Summary
Probation that were in the names of Tina Marie Phillips and
Vernoy Hercel Schultz. The correct date for the alleged
incident was January 30, 2002. (REFER TO SGT. AVILA'S MEMO
FOR DETAILS)
/////

00769

**Ex. 24**

829

# POLICY VIOLATIONS

1.   2.1.01     VIOLATION OF RULES
2.   2.1.02     INSUBORDINATION
3.   2.1.06     UNBECOMING CONDUCT
4.   2.5.09     TESTIMONY

*Above sections are from the Imperial County Sheriff's
Department Manual of Policies and Procedures, Rules of
Conduct.

00770

**Ex. 24**

830

4

# INVESTIGATIVE SUMMARY

On February 13, 2002 the Imperial County Sheriff's
Department Administrative Investigations Unit (AIU)
received a memo from Chief Deputy Sharon Housouer
requesting an investigation regarding the conduct of North
County Patrol Deputy Justin Tackett. AIU Sgt. Delfino O.
Matus initiated an administrative investigation into Deputy
Tackett's alleged misconduct.

Sgt. Manuel Avila prepared a memo to Chief Deputy Housouer
on February 11, 2002, requesting an internal investigation
into the conduct of Deputy Tackett. The alleged misconduct
dealt with doing searches on parolees or probationers,
after being told not to do them. Deputy Tackett was
reported to be untruthful when contacted about the
searches. Deputy Tackett told Sgt. Avila that he was doing
follow-up investigations. The memo stated that the alleged
incident occurred on January 31, 2002. It was later
determined and confirmed by Deputy Tackett that the alleged
incident occurred on January 30, 2002.

During the course of the investigation Sgt. Matus
interviewed officers from the Calipatria Police Department
and the Imperial County Sheriff's Department. REFER TO THE
SUMMARIES AND TRANSCRIPTION OF THEIR INTERVIEWS FOR
DETAILS.
/////

00771     **Ex. 24**

831

# WITNESS STATEMENTS

The following summaries are from a series of witness
interviews conducted by Sgt. Matus. The interviews were
tape-recorded, and transcribed.

On February 19, 2002, Deputy Gabe Vela was interviewed.
Deputy Vela is assigned to North County Investigations.

Deputy Vela stated on or about January 31, 2002, Deputy
Tackett asked him if he wanted to assist in conducting some
probation searches. Deputy Vela stated that he told him no
because he was busy conducting another investigation.
Deputy Tackett then asked Deputy Vela if two individuals
identified as Vernoy Schultz and Tina Phillips were on
probation, and Deputy Vela told Deputy Tackett that they
were on summary probation.

Deputy Vela stated he gave Deputy Tackett the files on
Schultz and Phillips and to make copies of them, and after
making copies he returned the files to Deputy Vela.

Deputy Vela stated Deputy Tackett then asked him if he
wanted to do a parole search on David Davila from the city
of Westmorland. Deputy Vela stated he told him no, and told
him to have Westmorland Police Department take care of
their own problems. Deputy Vela also told Deputy Tackett to
clear this with his sergeant, before he did anything.

Later, Deputy Vela overheard Sgt. Manuel Avila on
telephone, with whom Deputy Vela believes was Deputy
Tackett, indicating that he overheard a one-sided
conversation. Deputy Vela stated he asked Sgt. Avila if
that was Deputy Tackett he had been talking to, and Sgt.
Avila stated it was. Deputy Tackett had told Sgt. Avila
that he was conducting a follow-up investigation on a child
endangerment case out of the Westmorland area. Deputy Vela
stated he told Sgt. Avila that he didn't have a follow-up
on that type of case in Westmorland, and if he did, he
would follow it up himself.

Deputy Vela stated later that same day at approximately
1230 hours, he overheard the sheriff's communication center
contacting Deputy Tackett. The sheriff's communication
center informed Deputy Tackett that Calipatria Police
Department was requesting his assistance in conducting a

6

probation search. Deputy Vela stated that Deputy Tackett
responded by saying that his ETA was twenty minutes.
Additionally, Deputy Vela stated that the city of
Calipatria was not in Deputy Tackett's assigned area, on
that particular day.

Deputy Vela stated he later contacted Deputy Manuel DeLeon
by telephone, and that Deputy DeLeon informed him that they
had done a probation search at the Schultz/Phillips
residence in Calipatria.

Deputy Vela stated that Sgt. Avila had previously told
Deputy Tackett that he (Avila) didn't want Deputy Tackett
conducting probation searches.

Deputy Vela stated he has attempted to mentor Deputy
Tackett in his report writing skills, because some of his
reports lacked the elements or the proper information to
attain successful prosecutions.

In addition, Deputy Vela was concerned with Deputy
Tackett's veracity. He felt that Deputy Tackett was perhaps
being less than truthful, at which point Deputy Vela stated
that on particular case, in which he believed the defendant
was a Robert Isaacs, that they had discussed it after going
over the report and it lacked some information. However,
later Deputy Vela reviewed the same case report, and the
information that was not there earlier, was now included.
Deputy Vela stated he spoke with Deputy Tackett about that
the information, and that Deputy Tackett told him that he
had spoke with the suspect and had obtained the
information.

Deputy Vela believes that some of Deputy Tackett's problems
are from a result of a lack of direct or immediate
supervision. Stating that Deputy Tackett lacks the patrol
experience, indicating that he has approximately one year
of patrol experience, and at times he is making
questionable decisions, when in fact a supervisor should
step in and assist in making some of those decisions.

On February 19, 2002, at approximately 1031 hours, Sgt.
Manuel Avila was interviewed. Sgt. Avila is assigned to
North County Operations.

Sgt. Avila addressed a memo to Chief Deputy Sharon Housouer
requesting an investigation regarding an incident that

7

00773

**Ex. 24**

833

occurred on January 31, 2002, that involved Deputy
Tackett's veracity.

Sgt. Avila reported that on January 31, 2002, at
approximately 1100 hours, he received a telephone call from
Deputy Tackett. Deputy Tackett informed Sgt. Avila that he
was going to assist Deputy Vela on a couple of cases,
because Deputy Vela was engaged in doing other
investigations. Sgt. Avila asked Deputy Tackett to identify
the cases, which he did, identifying them as a child
neglect case from Westmorland, and a drug case from
Calipatria.

After speaking with Deputy Tackett, Sgt. Avila met with
Deputy Vela and asked him what cases Deputy Tackett was
following up, and that Deputy Vela informed him that he
didn't request any assistance in doing follow up
investigations. Deputy Vela stated that earlier in the
morning Deputy Tackett approached him, requesting a copy of
the probation conditions on two individuals identified as
Tina Phillips and Vernon Schultz, that Deputy Tackett
wanted to search.

Sgt. Avila stated he then contacted Deputy Tackett and
asked him to identify the type of follow-up he was doing,
if he was doing follow-ups or probation searches. Deputy
Tackett told Sgt. Avila that he wasn't doing probation
searches; he was doing follow-ups on child neglect and a
drug case. Sgt. Avila stated that he asked Deputy Tackett
if the cases had been adjudicated, and Deputy Tackett
stated that they were. Deputy Tackett informed Sgt. Avila
that he was following up in making sure that the subjects
were complying with the conditions of their probation.

Sgt. Avila stated that he had previously told Deputy
Tackett, during the latter part of 2001, not to be doing
parole or probation searches, that his task was to patrol
and answer calls for service. However, if he received
information regarding a probationer or parolee, he was to
notify the appropriate agency.

Sgt. Avila stated that during the early part of January
2002, Deputy Tackett came to him, and told Sgt. Avila that
he was going to do a parole search on an individual
identified as Antonio Davila. Sgt. Avila told Deputy
Tackett that he wasn't going to do the parole search, and
that Deputy Tackett informed Sgt. Avila, that he had the

**Ex. 24**

**00774**   834

parole agent's permission to search Davila. Deputy Tackett
wanted to make sure that Davila was complying with the
conditions of his parole.

Sgt. Avila reminded Deputy Tackett of the last conversation
they had, where Deputy Tackett was told by Sgt. Avila that
he not be doing parole or probation searches. Once more
reiterating the issue.

Sgt. Avila stated on January 31, 2002, he overheard a
sheriff's radio transmission. The Calipatria Police
Department was requesting Deputy Tackett to assist on a
probation search. Sgt. Avila stated about an hour later he
proceeded to the Calipatria Police Department, and met with
Chief Reggie Gomez.

Sgt. Avila stated that Chief Gomez had told him that Deputy
Tackett had been there earlier, and that Deputy Tackett was
there to do a probation search in their city. Chief Gomez
also told him while Deputy Tackett was at the police
department, he heard a one sided conversation that Deputy
Tackett was having on the telephone with a sergeant, not
knowing the contents of the conversation.
Chief Gomez told Sgt. Avila that Deputy Tackett wanted the
police department's assistance in doing a probation search,
indicating that Chief Gomez didn't recall the name of
person(s) that was going to be searched.

Sgt. Avila advised that he informed Chief Deputy Housouer
about the incident, and that he was going to pursue the
issue of untruthfulness further by requesting an
investigation.

On February 27, 2002 at approximately 1506 hours, Deputy
Manuel DeLeon was interviewed. Deputy DeLeon is assigned to
North County Patrol.

Deputy DeLeon stated that on or about January 31, 2002,
between the hours of 0745 and 0830 hours, Deputy Tackett
had requested his assistance in doing a probation search on
two individuals identified as David Schultz and Tina Marie
Phillips, indicating that Deputy Tackett had their summary
probation forms. Deputy DeLeon stated that Deputy Tackett
had information that the pair was dealing in narcotics.
They scheduled to meet at the Calipatria Police Department
at approximately 1030-1100 hours.

00775     **Ex. 24**
          835

Deputy DeLeon stated when he arrived at the Calipatria
Police Department he met with Deputy Tackett, who was
upset, informing Deputy DeLeon that the department didn't
want him to be proactive, because the department didn't
want him to do the probation search.

Deputy DeLeon stated that on that particular day he was
assigned to beat one and two, and that Deputy Tackett was
assigned to beat A and B.

Deputy DeLeon stated he did not know initially if Deputy
Tackett had permission to do the probation search from a
North County supervisor, however, later it was apparent
that he didn't have permission, because he was upset,
stating that the department didn't want him to be
proactive, disallowing him in conducting probation
searches. Deputy DeLeon believes that Deputy Tackett gave
copies of the probation summaries to Chief Gomez.

Deputy DeLeon stated while they were at the police
department at approximately 1030 hours, he overheard a
partial conversation Deputy Tackett was having with Chief
Gomez. Deputy Tackett had informed Chief Gomez that the
department didn't want him to be proactive.

Deputy DeLeon stated that they left the police department
at approximately 1100 hours, and went to lunch in Brawley,
California. While having lunch shortly after 1200 hours,
Deputy Tackett was contacted by the sheriff's communication
center. The communication center advised him that the
Calipatria Police Department was requesting a cover unit
for a probation search, and to respond to the police
department.

Deputy Tackett told Deputy DeLeon that he was going to
Calipatria to do the search, and if Deputy DeLeon was going
to assist. Deputy DeLeon stated he told Deputy Tackett that
he had to take care of other business first, before he
responded.

Deputy DeLeon stated he eventually responded to Calipatria,
and met with Calipatria Police Officer Granado and Deputy
Tackett. The location for the probation search was the
Schultz and Phillips residence. A probation search was
conducted.

00776   **Ex. 24**

836

On February 28, 2002 at approximately 1006 hours,
Calipatria Police Chief Reggie Gomez was interviewed.

Chief Gomez stated that he was not sure of the date, but
that Deputy Tackett came into the Calipatria Police
Department at approximately 1000 hours, with a sheet of
paper of some individuals that were on probation who lived
in the city of Calipatria. Chief Gomez stated that he
recalled the last name of one of the individuals (Schultz),
but not the other individual.

Chief Gomez stated that Deputy Tackett asked him if he was
familiar with the individuals on the sheet, and that Chief
Gomez told him he was not familiar with them, indicating
that Deputy Tackett told him that the individuals were on
probation, and living in the city.

Chief Gomez stated that Deputy Tackett had mentioned that
he wanted to do a probation search, but he couldn't do it,
indicating that he (Tackett) had been instructed not to do
it by his supervisor, Sgt. Avila. They wanted him to patrol
the area patrolled by the sheriff's department, and to be
free for sheriff's department calls for service, and to
respond to the cities when requested. Chief Gomez stated
that Deputy Tackett stressed that his supervisor didn't
want him initiating calls in the cities.

Chief Gomez believes that a probation search was conducted,
but he was off duty when it was conducted.

Chief Gomez stated he later spoke with Sgt. Avila regarding
Deputy Tackett and the probation search issue.

On February 28, 2002 at approximately 1522 hours, Officer
Eric Granado was interviewed by telephone. Officer Granado
was previously employed by the Calipatria Police
Department, and is now employed by the Imperial Police
Department.

Officer Granado states he recalls that close to January 31,
2002 at approximately 1030-1100 hours, Deputy Tackett came
to the Calipatria Police Department and informed him that
he had information that Schultz and the lady, who were
presently on probation, and were known to have weapons and
drugs, and that they currently had weapons in their
possession, and if Officer Granado was interested in doing

11                          00777      **Ex. 24**
                                          837

a probation search, and that it was likely that weapons and drugs could be recovered.

Officer Granado stated that Deputy Tackett gave him a copy of the probation forms that showed their probation status.

Officer Granado later in the day he requested assistance from the sheriff's department on the probation search, because he was a solo officer, and needed back-up. Officer Granado stated that Deputies DeLeon and Tackett responded.

Officer Granado stated that Deputy Tackett had told him earlier, that they didn't want the deputies doing work in the cities, that they wanted them to be out in the county doing their work.

On March 1, 2002 at approximately 1047 hours, Deputy Justin Tackett was interviewed. Present was his attorney Brad Fields from the attorney office of Bobbitt and Pinckard. Deputy Tackett is assigned to North County Patrol.

Deputy Tackett stated he has been employed by the sheriff's department for approximately two years and eight months. And has been a deputy sheriff for approximately one year and ten months.

Deputy Tackett stated in January he had a conversation with Sgt. Manuel Avila regarding parole/probation searches, stating that Sgt. Avila didn't want him doing parole searches, because he was not a parole officer. Sgt. Avila further advised him if there was a problem with the parolee the parole officer would have to take care of it.

On January 30th, in the morning hours, Deputy Tackett spoke with Deputy Vela and DeLeon, and told them that he wanted to verify that two individuals identified as Schultz and Phillips were on summary probation and also, if they were in compliance with the conditions of their probation.

Deputy Tackett stated that approximately twenty minutes prior to going to the Calipatria Police Department, he spoke with Sgt. Avila by telephone. Sgt. Avila reiterated that he didn't want Deputy Tackett checking probationers and ascertaining that they were in compliance with the conditions of their probation.

**Ex. 24**

00778

838

Deputy Tackett stated on the 30th of January he went to the
Calipatria Police Department sometime before the lunch
hour, where he met with Chief Gomez and Officer Granado.
Deputy DeLeon arrived later. Deputy Tackett had gone to the
police department to provide the police department with the
probation information on Schultz and Phillips.

On January 30th, in the afternoon hours, Calipatria Police
Department called for assistance, Deputies Tackett and
DeLeon responded. Deputy Tackett stated that they assisted
Officer Granado in doing a search of the Schultz/Phillips
residence, and to make sure that they were in compliance
with their probation conditions.

Deputy Tackett stated that he or Deputy DeLeon did not
notify Sgt. Avila of the traffic in Calipatria, indicating
that Sgt. Avila knew that they were assisting Calipatria
Police Department. Deputy Tackett stated that Sgt. Avila
did not ask what was going on, and if he wanted to know he
would have responded or would have asked what was going on.

Deputy Tackett stated he later met with Sgt. Avila,
indicating that it was either the same day of the search in
Calipatria or the following morning, and Sgt. Avila
informed him that he was going to address the
probation/parole issue. Deputy Tackett stated that Sgt.
Avila was not clear if he was going to address the memo to
all North County personnel, or just to him.

Sgt. Matus reviewed the telephone conversation between
Calipatria Police and the sheriff's department
communication center that occurred on January 30th. Officer
Granado from Calipatria Police requested the assistance of
Deputy Tackett in doing a probation search. Deputy Tackett
who was at lunch indicated that his estimated time of
arrival was approximately fifteen to twenty minutes.
/////

# Ex. 24

## 00779

### 839

13

# WITNESS LIST

1.    Deputy Justin Tackett #871 (ACCUSED)
      B/A: Brawley Sub-station, telephone number 760-344-
      2615

2.    Sgt. Manuel Avila
      B/A: Brawley Sub-station, telephone number 760-344-
      2615

3.    Deputy Gabe Vela
      B/A: Brawley Sub-station, telephone number 760-344-
      2615

4.    Deputy Manuel DeLeon
      B/A: Brawley Sub-station, telephone number 760-344-
      2615

5.    Chief Reggie Gomez
      B/A: Calipatria Police Department, telephone number
      760-348-2211

6.    Officer Eric Granado
      B/A: Imperial Police Department, telephone number
      760-355-4327

7.    Sgt. Delfino O. Matus
      B/A: AIU, telephone number 760-339-6319


**Ex. 24**

00780

840

14

# FINDINGS

Based on the information gathered from witnesses from the
Imperial County Sheriff's Department, Calipatria Police
Department, and audio recordings from the sheriff's
communication center, the investigation has revealed that
North County Patrol Deputy Justin Tackett willfully
disobeyed a direct order from Sgt. Manuel Avila, and
provided false or.misleading information to Sgt. Delfino O.
Matus during the course of Deputy Tackett's interview.

Sgt. Avila had ordered Deputy Tackett during the latter
part of 2001, and January 2002, not to be conducting
probation or parole searches, stating that Deputy Tackett's
responsibilities were that of a patrol officer, which
involved handling calls for service. Any information
received by Deputy Tackett regarding a probationer or
parolee, he was to notify the responsible agency.

As to the events on January 30, 2002, Deputy Tackett had
received information from an anonymous source, that two
individuals identified by the last name of Schultz and
Phillips were involved in some illicit activity, and upon
checking their probation status with Deputy Gabe Vela,
Deputy Tackett found that both individuals were on summary
probation.

Deputy Tackett, who had not obtained authorization from a
sheriff's supervisor to do a probation search in the city
of Calipatria, started recruiting deputies and members of
the Calipatria Police Department to assist him. He
requested Deputy Vela's assistance in conducting a
probation search of the Schultz/Phillips residence.
However, Deputy Vela was unable to assist him because of
other commitments. Deputy Tackett during the early part of
shift had already obtained Deputy Deleon's commitment to
assist in the probation search in Calipatria.

During the course of the morning at approximately 1100
hours, Deputy Tackett spoke with Sgt. Avila. Deputy Tackett
told Sgt. Avila that he was assisting Deputy Vela with
follow-up investigation on a couple cases out of the
Westmorland and Calipatria area. Sgt. Avila contacted
Deputy Vela and ascertained what cases Deputy Tackett was
following-up. Deputy Vela informed Sgt. Avila that he had
not requested assistance in any case, that Deputy Tackett

**Ex. 24**

841

wanted to do a probation search on two individuals
identified as Schultz and Phillips.

Sgt. Avila contacted Deputy Tackett again, and asked him
what type of follow-ups investigations he was doing. Deputy
Tackett informed him that he following-up on child neglect
and a drug case. Sgt. Avila then ascertained if the cases
had been adjudicated. Deputy Tackett informed Sgt. Avila
that they were, but he wanted to make sure that they were
compliance with their probation conditions. Sgt. Avila
again ordered Deputy Tackett not to do any probation
searches.

Deputy Tackett who had gone to the Calipatria Police
Department, seeking their assistance in doing a probation
search, expressed his displeasure to Calipatria Chief of
Police Reggie Gomez that the sheriff's department was not
allowing him to be proactive, and left copies of the Order
Granting Summary Probation and left.

In the afternoon of January 30th, 2002, Officer Eric Granado
of the Calipatria Police Department called the sheriff's
department, and asked for Deputy Tackett, requesting
assistance in conducting a probation search at the
Schultz/Phillips residence. Both Deputy Tackett and DeLeon
responded to assist Calipatria Police.

Deputy Tackett or Deputy DeLeon did not notify Sgt. Avila
of the event in Calipatria. Deputy Tackett had stated that
Sgt. Avila knew what was going on, and if he didn't, he
should have responded or should have asked what was going
on.

Deputy Tackett had stated both Deputy DeLeon and himself
had responded because they were in the general area, even
though the city of Calipatria was not in his assigned beat
area.

Deputy Tackett stated during his interview with Sgt. Matus
that he gone to the Calipatria Police Department to drop
off the probation information on the two individuals
(Schultz/Phillips) and wanted to make sure that they were
in compliance with their probation orders, and not to
conduct a probation search, which is contrary to what
Deputy DeLeon and Deputy Vela had stated. They both stated
that Deputy Tackett wanted to do a probation search of the
individuals in Calipatria area.

00782   **Ex. 24**
842

In conclusion, Sgt. Matus finds that Deputy Tackett violated the following Imperial County Sheriff's Department policies and procedures:

1.   **Rules of Conduct, Section 2.1.01 VIOLATION OF RULES**
     *Employees shall not commit any other acts or omit any other acts which constitute a violation of any of the rules, regulations, directives, orders or policies of this department, whether stated in this general order or elsewhere. Ignorance of the rules, regulations, directives, orders, or policies shall not be considered as a justification for any such violations. Employees shall be responsible for their own acts, and they shall not shift to others the burden of responsibility for executing or failing to execute a lawful order or police duty. **SUSTAINED**

2.   **Rules of Conduct, Section 2.1.02 INSUBORDINATION**
     *Employees shall promptly obey any lawful orders of supervising employee. This will include orders relayed from an employee supervisor by an employee of the same or lesser rank. **SUSTAINED**

3.   **Rules of Conduct, Section 2.1.06 UNBECOMING CONDUCT**
     *Employees shall conduct themselves at all times, both on and off duty, in such a manner as to reflect most favorably on this department. Conduct unbecoming of an employee shall include that which tends to bring this department into disrepute or reflects discredit upon the employee as a member of this department, or that which tends to impair the operation and efficiency of this department. **SUSTAINED**

4.   **Two (2) counts violation of Rules of Conduct, Section 2.5.09 TESTIMONY**
     *Upon the order of the sheriff or the sheriff's designee, employees shall truthfully answer all questions specifically directed and narrowly related to the scope of employment and operations of this department which may be asked of them. **SUSTAINED**

00783 **Ex. 24**

843

# ATTACHMENTS

1.    Memo from Sgt. Manuel Avila to Chief Deputy
      Sharon Housouer dated February 11, 2002.

2.    Memo from Chief Deputy Sharon Housouer to
      Sgt. Delfino O. Matus dated February 13,
      2002.

3.    Notice to Deputy Justin Tackett from Sgt.
      Delfino O. Matus dated February 14, 2002.

4.    Copy of Order Granting Summary Probation on
      Tina Marie Phillips dated August 1, 2001.

5.    Copy of Order Granting Summary Probation on
      Vernoy Hercel Schultz dated September 17,
      2001.

00784  **Ex.24**

**844**

# EVIDENCE LIST

1.  1-audio cassette tape recording with the interview
    of Deputy Gabe Vela.

2.  1-audio cassette tape recording with the interview
    of Sgt. Manuel Avila.

3.  1-audio cassette tape recording with the interview
    of Deputy Manuel DeLeon.

4.  1-audio cassette tape recording with the interview
    of Chief Reggie Gomez.

5.  1-audio cassette tape recording with the interview
    of Officer Eric Granado.

6.  1-audio cassette tape recording with the interview
    of Deputy Justin Tackett.

7.  1-copy of audio cassette tape recording of the
    sheriff's department communication center
    telephone/radio recordings as related to the event.

**Ex. 24**

**00785**

845

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

## IA 2002-007
## 2-19-02

**SGT. MATUS:** Okay uh, today's date is February the 19th the year is 2002, this is in regards to uh, IA 2002-007, uh, person being interview is Investigator Gabe Vela, he's with the Imperial County Sheriff's Department, assigned to North County, uh, the interview is being conducted at the Imperial County Sheriff's Department in El Centro by Imperial County Sheriff's Sergeant Delfino Matus. Okay, Gabe I received a memo from uh, Chief Housouer regarding an Internal Investigation that was requested on Justin Tackett, uh, involving some uh, basically it involved a complaint from Sergeant Manuel Avila, that uh, Tackett was uh, mentioned to him that if you had requested assistance in a, on a particular cases that occurred back in uh, January of this year, I'm looking at the report, and it indicates that Tackett told Sergeant Avila that you needed assistance on a couple of follow ups, that you were unable to do and that Tackett said that these cases involved a child neglect in Westmoreland and uh, another case in the city of Calipat, are you familiar with that?

**VELA:** I don't, I, (*clearing his throat*) never I don't have any child neglect cases and I never told him that I need help at all with any Narcotic Investigations in Calipat.

**SGT. MATUS:** Okay, do you know of anything similar to that, those particular incidents that may have uh, caused him to say that to uh, Sergeant uh, Avila?

**VELA:** Yeah, I do know that, there was on the previous night was a patrol stop by Ray De La Rosa, were he apprehended a driver and front seat passenger for Narcotic violation case, apparently, their was a traffic stop, there was a, there were four occupants the male driver, uh, front seat passenger, rear seat a 12 year old girl, and on the rear seat mother, and in morning briefing uh, they were conveying to me and J.B Higgins that that they arrested the two adult males because the 12 year old girl had said that the adult passenger at had given her the 28 bindies of

**Ex. 24**

00786    846

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

### IA 2002-007
### 2-19-02

Methaphetamine to hold and we had told them to go ahead and charge the mother with child endangerment.

**SGT. MATUS:** You remember the name of the defendant?

**VELA:** No, I don't.

**SGT. MATUS:** It was a case that Ray De La Rosa had initiated?

**VELA:** Right, right, and, and, and, and, Manuel de Leon, um I can get the information for you

**SGT. MATUS:** Okay.

**VELA:** That wouldn't be a problem, but nevertheless that, that, that happened on the day that this took place.

**SGT. MATUS:** On the 31st of January?

**VELA:** On the 31st.

**SGT. MATUS:** Somewhere around that day?

**VELA:** Yeah, that night or that grave yard shift, because in that same morning um, uh, Tackett came to me and he asked me uh, if I wanted to do some probation searches with him, and I said no, I was to busy, uh, he had asked me if uh, if a person named Tina Phillips and, and Vernoy Shultz were on probation I said yes, they are on Summary probation, I keep a file of all the people on summary probation and this is a case that, that originated from our Sheriff's Department.

**SGT. MATUS:** Was that around the same time?

**VELA:** That was on that same day, that was in the morning, uh, uh I gave him my file told him to look for the names, I was busy doing another investigation, told him to just make copies and to give it back to me uh, he did and he had asked me if I wanted to do a parole search on a person

00787 **Ex.24**
847

**IMPERIAL COUNTY SHERIFF'S OFFICE**
**328 Applestill Road**
**El Centro, CA 92231**

### IA 2002-007
### 2-19-02

name David Davila, out of Westmoreland, I said no, David Davila is a small fish he doesn't have anything of, any importance all he does is, is use and, and runs from cops I said let's let Westmoreland PD take care of their own problem uh, and then he told me he had to cleared it through Ambrose uh, David Davila's, parole officer, parole agent Dennis Ambrose to do the parole search and I told him you know what you better clear it through your Sergeant, first before you do anything, uh, I didn't want him going by himself, I know I was not going to go, I , I, I, didn't want him going by himself to David Davila's house, so you know the guy does fight he does like to run sometimes, and, and that was it the end of the conversation uh, later on that morning I heard, uh, Manuel Avila on the phone with Tackett, and I heard just from one sided conversation from Avila and I knew that that uh, Tackett had asked me to uh, do a parole search, a probation search and I said no to clear it through, through Avila, so I asked Avila if that was Tackett and Avila told me yes, yes that was Tackett and that Tackett had told Avila that he was going to do a child endangerment follow up in Westmoreland cause I was to busy.  uh, that was the only thing I remember Avila telling me is that he was going to do a child endangerment follow up, and  I said I don't have a child endangerment follow up in Westmorland and if I did I wouldn't have a Patrol follow up on it, I don't know what he is talking about, but I told Avila, Sergeant Avila that uh.

**SGT. MATUS:**     But you had an idea what case he was talking about?

**VELA:**     Well the only case I can think about was this traffic stop that he would want to follow up on to see if there was dope, and that he may want to use the child engagement investigation as a pre-text, to get into the home...

**SGT. MATUS:**     Right.

**00788**

**Ex. 24**

848

**VELA:** To look for dope. That's what I'm thinking in my head, that's what he wants to do, and that's the only thing I can imagine him doing in Westmoreland.

**SGT. MATUS:** Right.

**VELA:** Uh, was that, uh, so I told Avila that, so, so then Avila called him back up, and I don't know what conversation he had with Tackett cause I was not paying attention or I was not there, uh, then on the same date, uh about 12:30 I was going back to the office from lunch, when I heard our communication center, dispatch calling 871, uh,

**SGT. MATUS:** Who is 871?

**VELA:** 871, is Justin Tackett, Deputy Tackett, and Deputy Tackett that day was assigned to beat A and B, which is the Brawley area, that covers from Keystone Road to Albright Road which is just South of the city of Calipat, and the City of Calipat is in is in beat 2 that's our another Deputy responsibility to handled that area uh, so I heard dispatch calling Deputy Tackett that, that the Calipat Police Department was requesting his assistance in...

**SGT. MATUS:** His particular assistance?

**VELA:** His, his, his, as for, well calling him directly for his assistance in conducting a probation search, it came across something like this, is, 871 El Centro 2, El Centro 2 go ahead, 871 station 7 is requesting your assistance in conducting a probation search, 10-4 my ETA is 20 minutes

**SGT. MATUS:** Okay.

**VELA:** And that's what I heard, I knew that didn't sound right because, because he is A and B and if station 7 was just requesting the Sheriff's office assistance they would of directed the beat one and two which would have been Deputy De Leon to assist Calipatria.

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

## IA 2002-007
## 2-19-02

**SGT. MATUS:**　Let me ask you this do you know if Deputy De Leon was tied up on that particular day or?

**VELA:**　No, in fact, in fact, actually I believe Deputy De Leon was there, cause I, I called him on the cell phone and he told me, you know, just to confirm what they had done and he had told me that they had gone to the Phillips and Shultz residence to do a probation search, a summary probation search.

**SGT. MATUS:**　Okay these are the same people that, he had requested earlier? To look at the summary probation sheets.

**VELA:**　Right, Right, he, he had asked me for the summary probation and, and had made copies of them, uh, of the same people, so after that I met with Sergeant Avila, told Sergeant Avila hey, this is what he is doing, you know on his own, after being instructed by you not to do it, and, and this, this isn't proper we, we don't need this type of behavior here. So that's about it.

**SGT. MATUS:**　How long, do you know how long his been assigned to I'm talking about Tackett, to North County Operations?

**VELA:**　About a year in a half, uh, I know the whole of 2000, he was here, he came up the later part of 99, I believe.

**SGT. MATUS:**　During the time, uh, that he's been out there, have you attempted to uh, talk to him mentor him in any form?

**VELA:**　Yes, I have, uh, uh I, I tried working with him on, on several deals there's this one, this one was his report writing skills, uh, making sure that he covers uh, what we consider the elements of the crime, for successful prosecution uh, he's lacked in that area, I've discussed that with him, um, during these discussion I would ask follow-up questions to his arrests if he'd had ask certain questions that it's is my experience I know that the district office would need, and he

5

00790

Ex. 24
850

# IMPERI● COUNTY SHERIFF'S OF●CE
## 328 Applestill Road
## El Centro, CA 92231

### IA 2002-007
### 2-19-02

would either say yes he did or no he didn't but never the less, on a later date I would review some of his report and all of those questions that I asked him, would be in his report. And I've always wondered if, if he actually asked those questions, or if, if, if he was just adding that into his report without it being factual just to get a prosecution, after I told him, but by the time I would review those reports it was down in the system already so I would just kind a keep an eye on him.

**SGT. MATUS:** Okay. When you would review the reports, let's say initially, when before you talked to him, and later review them, there would be a change in that particular report or he would add a supplement based on that?

**VELA:** No there would be a change in the main narrative not a supplement. One case I do remember, I remember it was the first name Isaac, Robert Isaac's out of the Poe Sub area, Poe Road, uh, it was a good arrests, uh, but we discussed it in length, of what he needed to do for a prosecution, and, and uh, I remember, I cant' remember exactly, but I did remember telling him to do, that he should of done it a certain way, uh, and it was included in his report, and, and I discussed it with him and I said it was no way you could of known that, at that time because you never interviewed him but yet you listing it in you main narrative as is if, its' a factual statement. How can you do that?

**SGT. MATUS:** And what did he say?

**VELA:** Uh, he said, no, I talked to him, he was insisting he had discussed it with, with the suspect, uh, Isaac and uh, that's when I was kinda of really started to look at this guy like, you know you got to be careful and I told him, at that time I said, you don't want to lie in your report because first of all it's a criminal offense, you know perjury, second of all you will get a bad reputation with the District Attorney's Office and you'll never, you'll loose you creditability and that's the only thing you have, your creditability, and once you loose

**Ex. 24**

00791   851

**IMPERIAL COUNTY SHERIFF'S OFFICE**
**328 Applestill Road**
**El Centro, CA 92231**

**IA 2002-007**
**2-19-02**

your creditability, they, they, they wouldn't want to review or have any of your reports and once the defense team gets a hold of that, your shot, they will question every report that you do and and, and you would loose a lot of cases because of that so you don't want to uh, plagiarize your reports you know.

**SGT. MATUS:** And you know, I don't know if your familiar or not, when ever you submit a report some of the Sergeants partition!, which means that usually you give me your report that you fill out, let's say the night before I look at it I review it and approve it, then I partition it to where you can't go back in and make changes in that particular report, uh, you know if that is being done up in North County?

**VELA:** No, it's not. It's not.

**SGT. MATUS:** So, if I submit a report to you, then and you are the Sergeant you'll review it you know approve it and it's, it's, it's you sign it off, or do the Sergeant sign off reports up there?

**VELA:** Yeah, is the Sergeant's, the Sergeant's, may sign off the reports usually uh, or we do it in Investigations but the way we operate is that the report comes in to either the Sergeant or the Investigations, we review the reports and then we make the necessary corrections on that report and have them.

**SGT. MATUS:** With the Deputy?

**VELA:** Well, will make it on the report and, and (inaudible) for the Deputy to correct that, modify in the Spillman System, uh, but once, once it's filed with the District Attorney's office or we send the copies to records that's what we will probably consider partition as you have explained it because after that once that copy is printed and we file it away then you can't go back and modify because then there would be two different copies but until it is filed with the DA's office yeah,

7

**Ex. 24**
00792   852

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

### IA 2002-007
### 2-19-02

we will modify the reports, uh, what I'm discussing with Tackett is, so much modifying the reports which, which is wrong it's modifying the reports with and I don't have any proof on this because I really haven't...

**SGT. MATUS:** Right.

**VELA:** Tried to ding him on it or pay attention, uh, I've only known this because this, this conversations and, and, I'm not his immediate Supervisor to, to follow his, his report writing skills but this, you know my stand point is just to get a successful prosecution and to learn experience I would have to have discussion with somebody's patrol deputies so how they can improve the report or, or similar cases in the future where the DA might have, I've notice that his in some of his reports that after I had a discussion with him and then later on I see the report after it has been filed in the DA's office I've, I've read the report and I notice that some of those items that that I discussed with him have been included.

**SGT. MATUS:** Right.

**VELA:** As a supplement, but have been included and sometimes these people have been in custody so I know that he couldn't have gone back and asked those questions again.

**SGT. MATUS:** Right, so uh, as I understand it then when you had a discussion after you reviewed his initial report you said you know what you lacked XY and Z, but then again when the case is filed that same case is being filed and you look at that report again XY and Z is now included, now included, Okay

**VELA:** And, and, and, and I kinda paid attention to that but it wasn't something very, how can I put it, I don't want to use the word not serious because this are serious cases, but it wasn't something of a, of a, of a, serious nature were it was a full statement or a full confession, it was small little details, you know like, like your the probable cause details that that

**Ex. 24**

**00793**  853

# IMPERI● COUNTY SHERIFF'S O●CE
## 328 Applestill Road
## El Centro, CA 92231

### IA 2002-007
### 2-19-02

that were in consistent now they are consistent, and I discussed that with him because I wasn't sure if, if he was actually lying on his reports but I wanted to make sure I had the discussion with him one that was educational uh, benefit for him, two, warning, hey now you are in notice here cause if I catch you again, I'm gonna, gonna report this.

**SGT. MATUS:** Do you remember when uh, this occurred or is it an occurring factor all the time?

**VELA:** With him, he's been coming to me directly with majority until recently he's been coming to me directly with a lot of his cases and reports for review because he wants to learn, so I've, I've, I've, I've spoken with him, at length on a lot of reports and this doesn't happen on all the reports, but, but at the beginning of the year or, or, or, or middle of last year when I was mentoring him, was when I started looking at his reports to make sure that, that he wasn't trying to lie or wasn't trying to cover up his lack of follow up questions, just to make a case go through, uh, I've discussed it with him, sometimes you win sometimes you lose, it's a learning process...

**SGT. MATUS:** Right.

**VELA:** If, if you loose because you fail to ask a certain question then the next time you are going to remember to ask that question. We all learn sometimes that way unless we have someone reviewing the reports but, but, uh, that's the way it's been with him, uh, I lost my of train of thought here, I was thinking of something but I forgot what you asked me?

**SGT. MATUS:** Well, you had mentioned earlier that uh, when you talked to him about not having XY and Z, and later there was XY and Z included in those reports, uh, do you know how many cases?

**VELA:** No I don't know.

**Ex. 24**

00794

854

9

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

### IA 2002-007
### 2-19-02

**SGT. MATUS:**  You know was it just that one particular report that actually stuck to you, you know I looked at the initial report then later I see the case go to the DA's office and it has XY and Z, included now. Do you know any other cases that he may have done that?

**VELA:**  I, I, I would of, I would of, I never kept count of them I did have the discussion with, with, with Higgins about it, uh, just to let him know because Higgins reviews the reports and I mean I may not always be reviewing his reports, it's, it's you know the patrol Sergeant and it comes to Investigations either Higgins or myself and, and whoever is in the office whoever (unintelligible), I mean I don't always reads his reports and I'm not trying to look at his reports particularly all the time we all have our own uh, work load to take care of and who ever is available to review them uh, so, I mean this was over a period of time, being 6, 8, 9 months I've seen some of his reports, I'm not to say they come every day or I just remember that few ones that I've discussion with I would know that XY and Z is being included in the report but when I say that, some of the reports I've follow up on and the only reason why I follow up on the reports is because they have to deal with suspects that are in our area and I keep track of all our suspects in our area, that might commit other crimes and those reports I would flag for my personal self to make sure that when it goes to the court system, we don't lose it...

**SGT. MATUS:**  Right.

**VELA:**  And then I'm always there in the court with the DA's office telling them that this is what we the Sheriff's office need, and a lot has to do with I want the 4th amendment waiver, and let them walk I don't care, I want the 4th amendment waiver but in the future they are going to commit another crime and I need that 4th amendment waiver either formal or summary, so that's most of the cases I, I, I, I, pay attention to and those are some of the cases that he would be working on uh, at the time last year he was, striving really

10

**Ex. 24**

IMPERIAL COUNTY SHERIFF'S OFFICE
328 Applestill Road
El Centro, CA 92231

## IA 2002-007
## 2-19-02

hard to make some narcotics arrests and he just couldn't I
mean he was stopping vehicles left and right and he couldn't
find any type of narcotics, or nothing like that and at the
same time we had other deputies popping people every
other day for, for some narcotics arrests and he was
competing with these, with these people and uh, he just
didn't seem to figure it out at the time, and, and, and I
grabbed him and I helped him a little bit about not so much
hitting and miss, you got to keep track of all the people that
deal with this business and you know you just have to know
who they are all the time and once you see them in the
street and you see them with a violation, a traffic violation
you stopped them you know they are going to have dope
and that's how the other Deputies do it.  You figure that out
and you started getting some, some good arrests uh, uh, he
also got a CI that came to him, that I met with him, and,
and the CI uh, uh, was instrumental in a lot of dope arrests
and and we used them in some information he had some
very good information, and and he got a marijuana field in
the asparagus patch, that or marijuana patch in a asparagus
field that was something like 120 plants of some, some large
amounts of dope uh, uh, some meth houses, uh, meth labs I
mean this guy has been pretty good you know Tackett is
pretty sharp but I think in his in his uh, in his strive to be
number one or his or his uh, determination to be the best,
he, he loses sight of, of what our real job function is and I
think he may either stretch his probable cause or, or color in
the gray area to make a sit a little bit better, and, and, and
I've been trying to at least explain to him, and not so much
watch his or scrutinizing his reports but don't, don't lie on
your reports, don't lose your credibility because that is all
you have once you loose your credibility, your shot.

**SGT. MATUS:**   What you told me know, have you ever brought this to the
attention of let's say who ever the Sergeant was or for that
matter the Chief?

**VELA:**   It's, I, I don't know, if I, I may have mentioned it to the
Chief but it's not something I, I've kept to myself, I mean, I

11

**Ex. 24**
856

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

### IA 2002-007
### 2-19-02

know Johnny knows about it and I mean it's not something like I've personally kept to myself.

**SGT. MATUS:** Right.

**VELA:** I mean I'll tell anybody and I say you better watch this kid because uh, he might be lying on his reports, uh, I can't tell you exactly with you I've had that discussion because we've gone threw a lot o Sergeants up there in the past years and there's a lot of different Supervisor's that were supervising him and I know I did discuss it with several, of them but I just can't remember there names, I'm not keeping a file on Tackett so I'm not jotting down all the notes cause I'm not his Supervisor...

**SGT. MATUS:** Right.

**VELA:** For me to keep track of him, uh, uh, so I would pass information on the, yeah.

**SGT. MATUS:** Would you describe him as a, uh I'm talking about Tackett, as an honest person, from what you know of him?

**VELA:** You know that's uh, no, I wouldn't, I can't say I think he is a honest person, I, I, really can't no. I think he lose sight of his honesty on his strive for perfection. I, I, really...

**SGT. MATUS:** He's trying to hard to be number one?

**VELA:** He's trying to hard to be number one and he'll, he'll...

**SGT. MATUS:** Cut every corner that he can,

**VELA:** Well, he, his principles of honesty gets lost in that that perfection, and I mean he just can't see it.

**SGT. MATUS:** His values diminish?

# Ex. 24

857

00797

**IMPERI●COUNTY SHERIFF'S O●●CE**
**328 Applestill Road**
**El Centro, CA 92231**

## IA 2002-007
## 2-19-02

**VELA:** His values diminish when it comes to be number one, he, he cant stop to say I'm wrong, you know I've fucked up or you know I, I forgot that asked that question, instead of admitting he forgot to do something or follow up on a ·questions, he'll go and that's what I'm worried about he'll go try to uh, fill in those blanks to again when I brought up that question I mean I saw it and I was you know you asked him a question I mean I told Johnny, I told who ever else to keep an eye on that.

**SGT. MATUS:** Right.

**VELA:** You know cause if he was doing that, no, we, we've got to cut it off, there but I was not personally trying to uh...

**SGT. MATUS:** Are these the copies of the uh, probation searches, that you gave him or he made copies of them.

**VELA:** Yeah, I, I I'm looking at these summary probation's, uh, I · did know I had two of them, I'm looking at the case numbers because it originated from the same case, yeah, um, yeah, I only had two copies, and I did gave him two, so these might be the same ones.

**SGT. MATUS:** You know I don't think I have anymore uh, questions, uh, is there anything you would like to add, maybe something I didn't ask you or maybe something that you want to say that?

**VELA:** Well in Tackett's defense he is a sharp kid, he is intelligent, he is smart, he has the ability to uh, really, really be a good functioning Deputy, uh, uh, again maybe a good ethics class would be great for him, uh, because he needs to know the difference between principles, values, uh, but I also believe and I have this discussion with I know that Johnny and perhaps, Manuel Avila if not Chief Housouer, of that a lot of the problems we've had with Tackett is because the lack of supervision, uh, I mean I can't really blame him on everything because a lot of it has to do with, they know that

13

**Ex. 24**

858

IMPERIAL COUNTY SHERIFF'S OFFICE
328 Applestill Road
El Centro, CA 92231

IA 2002-007
2-19-02

he makes questionable calls why isn't there a patrol
Sergeant on scene all the time with him, you know why let
this loose cannon be alone in making judgment calls that we
know he is not capable of, and there's been a couple of
times Sarge that, you know I have his Nextel phone here
and Deputy Tackett along with other Deputies have an
Nextel phone and Tackett will call me directly, from the field
when he has a question and some of these that he had to
call me, lacked probable cause...

SGT. MATUS:        Right.

VELA:              I mean if he had to call me and for me to tell him no, don't
                   do it this way do it another way, his judgment isn't there
                   because he has only been a patrol deputy for a full year, I
                   mean he doesn't know everything and, and we have a lot of
                   young patrol deputies but we don't have immediate
                   supervision, and, and, and I mean, they have allowed that
                   he's been out there in a meth lab, and he called out NTF and
                   not a single patrol sergeant that was on duty for the whole
                   North and South County operations ever responded I mean
                   there has been a couple labs that he has gone to where a
                   Sergeant might go but not directly be involved in the
                   decision making factors...

SGT. MATUS:        Right and let him make all the decisions

VELA:              And let him make all the decisions and then we are bouncing
                   back saying hey it is a gray area and a probable cause but,
                   but where was that gray area, I mean, you know, I mean
                   with direct supervision and this, this kid, I'm going to call
                   him a kid, he is only 23 years old, needs direct supervision.

SGT. MATUS:        He doesn't have the experience that, he's making...

VELA:              He doesn't have the experience, yeah, yeah he is not mature
                   and we realize that he is not mature and we need to have
                   every single call he goes out to needs to be monitor by a
                   patrol Sergeant or Supervisor to go out there and say what

14

**Ex. 24**

**IMPERIAL COUNTY SHERIFF'S OFFICE**
**328 Applestill Road**
**El Centro, CA 92231**

## IA 2002-007
## 2-19-02

do you got?  and watch him, you know I mean, I'm discussing his some of his patrol reports, and I say well I'm not his Supervisor, I'm not...

**SGT. MATUS:**     Your just trying to help him out,

**VELA:**     I'm trying to help him out but I'm passing on to Supervisor but we've had so many Sergeants in the past year I mean we, we've had Cole, we've had Gutierrez, we've had Tabarez, we've had uh, uh, I'm trying to think, Demorst, Sergeant Demorst, uh, we've got out there Avila been up there new, I mean they are been new and they all try to Supervise but them they are shifted and bounced around, and, and he is lost in the shuffle.  I mean he is lost in the shuffle, and whether he is on graveyard or swing shift or he is just lost in the shuffle and, and because we are cut short handed know, on, on Sergeants and we are operating with one Sergeant from the South County, he is up North making calls on his own for the Sheriff's office and we realize that he can't do it but he's allowed to continue and then we're sitting there trying to punish him, for the calls the bad calls that he is making, so I mean in his defense no he is not totally, totally at fault.

**SGT. MATUS:**     Right

**VELA:**     He is really not, I mean uh, I, I, with direct Supervision, this kid is, has potential of being a very good deputy in the future. I would definitely wouldn't want him to lose his job or over a lie or something like that, and that is why I was mentoring him, to prevent that to kind of, but I couldn't always be there,

**SGT. MATUS:**     Let me, let me uh, flip this tape over, time is approximately 1009 hours.  Okay, uh, continuing with the interview with Gabe Vela time is approximately 1009 hours.

**Ex. 24**

00800   860

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

### IA 2002-007
### 2-19-02

**VELA:** Well any ways, that's in his defense I just want to make that clear, I believe that our Department has a lot to do with his behavior, and you know we can't,

**SGT. MATUS:** And as you see it it's a big lack of Supervision?

**VELA:** It's a big lack of Supervision, I mean if, if we realize that he needs Supervision then either we need to transfer him where there is a (unintelligible) Sergeant or make sure he is on shift where there is a patrol Sergeant there, uh, I do know that sometimes the immediate supervisor will be aware of the problem but will be busy in other details, and not be available actually, actually as a Patrol Sergeant,

**SGT. MATUS:** (unintelligible)

**VELA:** Exactly, and they might be doing other functions for the Sheriff's office and not be there watching him or being present when he is at every call, they are not on patrol they are in house, being in the office, doing other operations on paper, and not really being out there as a immediate Supervisor but yet the Supervisor on paper.

**SGT. MATUS:** Right, *(clearing his throat)* You had mentioned earlier when you first came in, that uh, other officers had talked to him, the Deputies, the Sergeants, uh, in an attempt to either mentor him or telling him you know what there are certain issues that maybe need to be cleared you now or try just to give him information for as, really as a additional experience uh, I believe you mentioned uh, Sergeant Nava, Joe Nava, talked to him, and what was that all about, was there a problem for Joe Nava come in to talk to him or?

**VELA:** Well, I, I know we got it, some of the N, NTF agents, and, and I can two off hands uh, one is Deputy Peraza who is assigned to NTF, that came from ha North operations to, and the other one is named Paco, I don't know Paco's real name, however...

**Ex. 24**

00801    861

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92231

## IA 2002-007
## 2-19-02

**SGT. MATUS:**      Paco Cuellar.

**VELA:**      Yeah, he is from Calexico, PD, uh, I know they've expressed to me and and, and, Capichi a couple of times they expressed to me that Tackett, you know, they would ask me what is his problem? And they would ask me that and in some of these calls that we would call him out, you know what's his problem, but it never really was explained what his problem is because it was just an understandable between everybody that we all know the problem is, is attitude.

**SGT. MATUS:**      Right.

**VELA:**      Or he is to aggressive, not being heavy handed towards the subject, but to aggressive in nature as far as he doesn't slow down or, or, or want to listen to any other officers input, that he is right, and everybody else is wrong, that would be the problem that would lead at least in my opinion would be thinking about but I didn't know that, that, that I even spoke with Deputy Peraza and say why didn't you talk to him, from your level talk to him, and says I have but he wouldn't listen, uh, Deputy De Leon, uh, uh, has even tried to reason or speak to Tackett as of as of as of, on the same level you know Patrol Deputy Level but you know they come back to me and say he just doesn't listen I've tried and he just doesn't pay attention to anybody, I, I, I, don't, I mean he doesn't pay attention, or want to listen to his peers and only reasons he listens to me is because I'm some what as a Supervisor in Investigations, so he has to listen to me, but even then he takes it with, with a, a, I mean at least to me he doesn't take the information seriously.

**SGT. MATUS:**      Right.

**VELA:**      Uh, he takes it as if I know more than you do, uh, and, and, and, he has been going to NTF directly, uh, with some narcotic suspicions or, or some turnovers that he might have from arrests that he had made, but then again I up in the

Ex. 24

00802    862

# IMPERI● COUNTY'S SHERIFF'S O●CE
## 328 Applestill Road
## El Centro, CA 92231

## IA 2002-007
## 2-19-02

North County, I, kind of keep track of all our narcotic, children I call them, and I keep track of them, uh, and I keep track of the court cases only because, there in custody they are not committing thefts, uh, not only worry about everybody up in North and keystone Road and I just, just check with the computer systems on a weekly basis or every two weeks when I have time, um, to see who has been arrested, and, and who's in custody and who's out I just kind a keep track and, and, Tackett has been going directly in some of these arrests to NTF and I guess, he's bothered NTF so in one particular day, uh, either Sergeant Avila or Housouer some how, came to my attention because they know, I been mentoring Tackett, that Joe Nava was upset at Tackett, because he was making to many phone calls or something in that nature to NTF and was bugging them to much, and I said well I will cut him off, you know what, he don't need to be doing that, he needs to come through our system here, will make the phone calls the right agency, uh, so, I said well then have Joe Nava talk to him, he is a Sergeant you know, he is Sheriff' Sergeant have him talk to him maybe he can reason with this kid, or shed some information so, I called up Sergeant Nava, Nava said, hey you got a problem with Deputy Tackett, uh, he is making to many phone calls, or, or just stepping on your toes...

**SGT. MATUS:** Right

**VELA:** From his level, I said have a discussion with him cause I've had tried shedding some light on how things work out and he wants to do it his way all the time, talk to him from you're aspect, Sergeant Nava said okay, sure send him over, I said okay, I will send him over right know, and I told Deputy Tackett, go report to him, so, that was what that was about.

**SGT. MATUS:** Anything else, Gabe?

**VELA:** No that's it.

**Ex. 24**

00803    863

**IMPERIAL COUNTY SHERIFF'S OFFICE**
**328 Applestill Road**
**El Centro, CA 92231**

## IA 2002-007
## 2-19-02

**SGT. MATUS:**  Okay. Have you had any complaints from any of the other Deputies about him?

**VELA:**  No.

**SGT. MATUS:**  Regarding his veracity, his truthfulness or what ever?

**VELA:**  No, I, I, I, I haven't, I my position now, I'm kind a alienated from regular patrol, um, so I don't get to many.

**SGT. MATUS:**  How about like from the DA's office?

**VELA:**  Uh, no, no, no, no, not, not from DA's office, we've had a lot of and we keep track a lot of uh, the reports that have been rejected, case of lack of sufficient evidence, from, from his reports, uh, we've had that happened, but there from different DA's attorney that uh, that review his reports.

**SGT. MATUS:**  Okay, I don't have any further questions, uh, I'm going to end the interview time is approximately 1016 hours, thank you Gabe.


Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 3/15/02

**Ex. 24**

00804      864

19

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

## IA # 2002-007
## 2-19-02

**SGT. MATUS:** Okay, uh, today's date is February the 19th, the year is 2002, time is approximately 1031 hours, this is an interview with Sergeant Manuel Avila, Manuel is assigned to North County Operations uh, this is in regards to IA number 2002-007, the interview is being conducted at the Imperial County Sheriff's Department, by Sergeant Delfino Matus. Manuel on uh, February the 11th, you addressed a memo to Chief Housouer regarding uh, uh Deputy Justin Tackett, uh, Tackett is assigned to North County Operations, is that correct.

**SGT. M. AVILA:** Yes.

**SGT. MATUS:** What is his function?

**SGT. M. AVILA:** He is a patrol deputy.

**SGT. MATUS:** Okay.

**SGT. M. AVILA:** And is presently assigned to day, day patrol.

**SGT. MATUS:** Okay, and the first paragraph of your uh, your memo indicates you are requesting a internal investigation regarding an incident that occurred on January 31, of this year, it relates on uh, Deputy Tackett was untruthful to you, can you tell me what that is about or?

**SGT. M. AVILA:** Yes, um, on January 31st of this year at approximately 11 uh hundred hours, I was in the uh, Sergeant's office and I received a call from uh, Deputy Tackett. Deputy Tackett uh, told me that he was uh, assisting or he was going to assist Investigator Vela on a couple of his cases uh, out of I guess Vela was tied up and was unable to do some follow-ups, I asked uh, Tackett, what uh, what cases they were and what they pertain to and he told me that they were two cases uh, one out of Westmoreland that was uh, child neglect, and a H&S uh, case out of uh, Calipatria, in which he was uh, the officer that that uh is the one that started the case.

1

**00805**

**Ex. 24**
865

**IMPERIA●COUNTY SHERIFF'S ●FICE**
**328 APPLESTILL ROAD**
**EL CENTRO, CA 92243**

**IA # 2002-007**
**2-19-02**

**SGT. MATUS:**    Tackett was the officer?

**SGT. M. AVILA:**    He's the one, that um, I guess, uh, made the arrest and, and wanted to do some follow up on it.  So, and I tell me that is okay cause it's common that, for us, uh, for us, I mean uh, patrol division to assist the investigators in, in doing some follow up that, that they are unable to do.  After I hanged up the phone, I walked uh, next door, which is a Investigation Division and Investigator Vela was there.  And I asked him uh, what uh, what cases he had that, that Patrol Deputy Tackett was following up and he told me that, that he, he, he was not uh, he did not request uh, Tackett to follow up any of his cases and I told him about uh, the two cases that he told me the neglect out of uh, Westmorland and the H&S out of Calipat and he told me no, that uh, this morning that uh Investigator, uh excuse me, Patrol Deputy Tackett approached him and wanted a copy of two uh, probation conditions on two suspects that uh, that he wanted to go search their house and he gave me the names of uh, Tina Phillips and Vernon Hercel Schultz, the ones that he wanted to go wanted to go search, with that information, I contacted uh, Tackett and I asked him to give me a call so when he calls me back I asked him what kind of follow ups he was doing, was he doing a follow up or probation searches, and he said no, he was not doing probation searches but what he was doing is, he was, following up on a child neglect in the, and the H&S case that he had and then he said and I asked him, if you are doing follow up cases haven't this case been adjudicated, I said well they have and this is his response, well they have but he was following up to make sure they were complying with the probation conditions.

**SGT. MATUS:**    Right.

**SGT. M. AVILA:**    And then I told him, well, isn't that what I told you not to be doing not to be, uh, doing probation or parole searches and not only (unintelligible) was his response was but then I told

2

00806   **Ex. 24**
866

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA # 2002-007
### 2-19-02

him no, you will not be doing any probation or parole searches and then he said okay.

**SGT. MATUS:** Okay, and these are parole or probation searches that are done, to uh, following up on cases that we have or just doing probation parole searches just to do them. Do you know?

**SGT. M. AVILA:** He, he has done other probation searches and parole searches and if I can go back to when I, I told him not to be doing it the first time, this is back at the later time 2001, when, when I noticed that the, not noticed but I, he came to me and he said that the uh, that he wanted to do some parole searches and I told him no, your function is a patrol officer, your function is to receive the calls handle the calls and if there is anything pertaining to that any information that you gather or any intelligence then you would you give it to either the probation department, probation officer, or the parole agent who ever pertains, who ever has uh, those uh, either probationer or parolees. Uh, and then he tells me that that he has permission from the parole agent or the probation officer to search these people. But then I told him no, that is not your function. I had to repeat myself several times telling him what his function was.

**SGT. MATUS:** Alright.

**SGT. M. AVILA:** He was a patrol officer, he was not a probation officer, he was not a parole agent. And, and that was the end of that conversation. Towards the beginning of this uh, this year in January, he comes to me and he tells me that he was going to do a parole search of uh, a parolee named uh, Antonio Davila. Then I told him again, no, you are not going to do that parole search, then he tells me, I have uh, his parole agent's permission to go search him, like I told you before on the last conversation that we had, you will not be doing parole searches or probation searches.

00807 **Ex. 24**
867

# *IMPERIA●COUNTY SHERIFF'S O●FICE*
# *328 APPLESTILL ROAD*
# *EL CENTRO, CA 92243*

## *IA # 2002-007*
## *2-19-02*

**SGT. MATUS:** Okay, do you know if he wanted to do this parole search in response to a case that the Sheriff's Department had, had initiated or maybe Davila was a suspect or he just wanted to go search this guy just to search him?

**SGT. M. AVILA:** He didn't, he wanted to go just to search him, I asked him do you have a case pending against him that you have information that you want to go in he said no, I just want to make sure he is complying with his proba…, parole conditions that's when I told him no, you are not going to do that.

**SGT. MATUS:** Right.

**SGT. M. AVILA:** And that was the end of that conversation. He didn't do it until this uh, January 31st when I again he calls me and he tells me that he is going to follow up cases that he had, but in reality was probation search.

**SGT. MATUS:** Right. Cases like you had mentioned earlier that have been adjudicated already but he wanted just to do a probation search.

**SGT. M. AVILA:** Correct and what I did when I talked to uh, Investigator Vela, he gave me copies of the two people that he was going to go search.

**SGT. MATUS:** Okay, was there a uh, a call from Calipat P.D where they requested some assistance in doing a probation search or a parole search?

**SGT. M. AVILA:** About that same day on the 31st, I uh, over heard in the radio transmission that Calipat wanted assistance uh, and then he mentioned Tackett by name to go help him on a parole search, excuse me, I think it was a probation search, so after maybe about an hour I went to Calipat and I talked to the Chief of police, and I asked him, and I told him that that um, Tackett was in their city and was going to do a

4

<div align="right">

**Ex. 24**

00808 868

</div>

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA # 2002-007
### 2-19-02

probation search and he tells me yeah, he was here, and I guess he was talking to you when he was saying yes, Sergeant ,yes, Sergeant, but I didn't know what the contents of the conversation was and then I told him but basically what it was that he was going in there in a probation search and he the one that he, he himself told me yes, he came in here wanted assistance in going to do a probation search he didn't recall the name uh, of who it was but uh, he said that Tackett did go in there to do a probation search.

**SGT. MATUS:**      Okay, did you talked to Hackett, uh, to Tackett after that or?

**SGT. M. AVILA:**    No, I just left it alone, I felt that, the uh, since his untruthfulness that the uh, so-it needed to be addressed.

**SGT. MATUS:**      Did you ever report this to your Chief, Housouer?

**SGT. M. AVILA:**    I don't believe whether I, I, I, yeah, I think I did. I think I did tell her verbally but I told her I was going to be writing it up. And I was requesting that it be addressed.

**SGT. MATUS:**      Does he have a problem taking orders?

**SGT. M. AVILA:**    He has a problem, he doesn't have a problem taking any orders he has a problem of stretching the line, the limit line, like uh, when I talked to him, uh, I've talked to him when he does certain, certain things where he stretches the line to justify what he does, uh, I have giving him an example, I have talked to him about stretching the line and in one incident that I told him, where he stretched the line, was an incident where we had where he had, uh, a female that they stopped I believe for, for drunk driving, and I don't recall whether they got her for 11550 also but at that stop, they arrested her and she wanted to give the keys to her boyfriend, which was probably half a mile a way from the stop, he goes, they both go back to the house, and they knocked on the door and their was no answer, and then he

00809    **Ex. 24**
869

# IMPERIA● COUNTY SHERIFF'S ●FFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA # 2002-007
### 2-19-02

tells me that he goes into the house because he feels that the subject might be inside and he might need, need medical attention, uh, because he might be overdosing because of the stop that they had, they go inside the house and they locate some I don't recall whether they had the drugs but they had paraphernalia, so they come out of the house and he tells the woman he is not there, okay, well he might be in his mother's house, which is about another half mile a way, and they go to that house and that subject is there, and those are the type of things that I mean that he stretches to justifies what he does, and in another occasion, there was a vehicle that was parked in the side of the road on the east side of Brawley, not in the East side but towards Green and the Highline. I don't recall the exact location but it's around that general area, there was a vehicle that, that was on the side of the road, and he felt that it was an illegal, uh, not illegal but it was used to transport illegal aliens, and they usually abandon the vehicles, so he had, had it stored, and he had the tow company break into the trunk, to get an inventory of what is inside, I confronted him with that and he tells me that he had it broke in because he felt that somebody might be inside, and these are the type of things that he justifies.

**SGT. MATUS:**     Right.

**SGT. M. AVILA:**     But Deputy Tackett is a, is a good officer, good officer in a sense that he goes out and he does work, he goes out and he does cases, he's a go-getter, but uh, I don't know what word I'm looking for that, that I can uh, use but he is a good officer, it's just this kind of things that are not acceptable.

**SGT. MATUS:**     Do you think maybe uh, he's trying to hard to be the best officer or trying to hard to uh, to do the best job and he is using any consequence to get what he is doing or maybe he is just lack the experience and?

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA # 2002-007
### 2-19-02

**SGT. M. AVILA:** I think it is both, he is trying to hard is trying to be that I make the most arrest, I make the most cases, and uh, that's, that's what he does.

**SGT. MATUS:** He goes to the extreme. Has anybody tried um, I don't know, mentoring or trying to correct him, saying you know what, you can't do these kind of things, you know?

**SGT. M. AVILA:** Several of us, I've, I've tried it, uh, Investigations, has tried it, uh, the Chief has tried it, uh, we even, we even had uh, because he likes Narcotics, we even had Sergeant Nava from the Narcotics Task Force talk to him and it doesn't seem to do any good.

**SGT. MATUS:** Have you or maybe anyone in North County, have they received any complaints regarding his action, lets say from the DA's office, from things that he does, that you know of?

**SGT. M. AVILA:** I think I have but I don't, I don't recall that information, there is something that they called about, but I don't know what it is, at the moment I don't recall.

**SGT. MATUS:** So on the issue on the 31st of January, you, you felt that he was untruthful to you.

**SGT. M. AVILA:** Definitely.

**SGT. MATUS:** And, and you base his untruthfulness on you talking to uh, Vela?

**SGT. M. AVILA:** Vela and him, when he tells me that he is going to go do uh, follow up but in reality he is actually doing probation search, his justification is that he is following up on the case to make sure that he is complying on his probation.

**SGT. MATUS:** Have any other Deputies complaint to you or to the Chief or maybe another Sergeant about him, about his veracity, his truthfulness?

7

00811    **Ex. 24**
871

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

# IA # 2002-007
# 2-19-02

**SGT. M. AVILA:** I've had uh, conversation with uh, Investigator Vela, where, where he has confronted, uh, Tackett about certain, certain, things in, in, in the case that should of being done, when he reads the report, and then Vela tells me that later on when he reads the report again those same items or certain things that he, he says should have been in the report are placed in the report.

**SGT. MATUS:** So he went back to either, if it lack, if it lacked a XYZ on the initial report later when it was observed again by let's say Vela, XYZ was already included, in that report.

**SGT. M. AVILA:** Right.

**SGT. MATUS:** Let me ask you this, uh, I think there is a process they call "partitioning reports"

**SGT. M. AVILA:** Correct

**SGT. MATUS:** Do you guys, partition reports up there?

**SGT. M. AVILA:** No.

**SGT. MATUS:** So that, after, lets say you review or who ever the Sergeant is reviews them and signs it off, person or him or any Deputy can go back and make a change, modification on the uh, lets say the initial report.

**SGT. M. AVILA:** Yes.

**SGT. MATUS:** Not submitting a supplement.

**SGT. M. AVILA:** Yes, yes that is correct.

**SGT. MATUS:** Oh, Manuel, is there anything else that you would like to add or uh, maybe something that I didn't ask you that you want to bring up or?

8

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA # 2002-007
### 2-19-02

**SGT. M. AVILA:**    No.

**SGT. MATUS:**    How long has he been working uh, patrol up in North County?

**SGT. M. AVILA:**    Hmmm, I've been there since May and he's been there before that, I don't know, for how long.

**SGT. MATUS:**    You are talking about May of

**SGT. M. AVILA:**    May of 2001.

**SGT. MATUS:**    2001

**SGT. M. AVILA:**    Yes

**SGT. MATUS:**    Manuel, I don't have any, any question, uh, I'm going to end the interview time is approximately, 1049 hours.

Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 3/14/02

**Ex. 24**

00813

9

873

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

### IA 2002-007
### 2-27-02

**SGT. MATUS:** Okay, uh today's date is February 27 the year is 2002, time is approximately 1506 hours this is an interview with Deputy Manuel De Leon, D-E-L-E-O-N, um, Manuel is assigned to the North County patrol, this is in regards to IA number 2002-007. Uh, this interview is being conducted at the Imperial County Sheriff's Department by Imperial County Sheriff's Sergeant Delfino Matus. Uh, Manuel, did you have occasion to go with uh, Deputy Justin Tackett to the Calipat Police Department? Uh, on or about uh, January 31st of this year?

**DE LEON:** Yes.

**SGT. MATUS:** Okay, can you tell me what that was about?

**DE LEON:** Well that was, we had said that an hour about 1030, 11 early in the morning, when we came on shift, uh, he requested uh, my assistance he said he was going to do a probation search, and asked me to go with him, uh, when I got there he was upset, uh, saying the Department didn't want him to be proactive, and he wanted to do a probation search and they said he couldn't.

**SGT. MATUS:** Okay, on that particular day uh, what time did you come on shift, do you remember?

**DE LEON:** Uh, we come in at 8.

**SGT. MATUS:** At 8 o'clock in the morning?

**DE LEON:** Yeah.

**SGT. MATUS:** And your shift runs from 8 to uh?

**DE LEON:** To 4.

**SGT. MATUS:** To 4? And both of you work that same shift?

**DE LEON:** Yes.

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

### IA 2002-007
### 2-27-02

**SGT. MATUS:**   Okay, so you indicated that you came on duty at about 8 o'clock in the morning,

**DE LEON:**   Yes.

**SGT. MATUS:**   And, when did he tell you he wanted to do a probation search?

**DE LEON:**   Uh, I can't recall the exactly what time, it was between 7:45 and 8:30.

**SGT. MATUS:**   So prior to the shift starting?

**DE LEON:**   Prior, may prior-prior during the first half, first half-hour of it.

**SGT. MATUS:**   Okay.

**DE LEON:**   Before I left for, for my beat.

**SGT. MATUS:**   Okay.  Do you recall what beat you were assigned to that particular day?

**DE LEON:**   I was assigned 1 and 2.

**SGT. MATUS:**   And what about him?

**DE LEON:**   A and B

**SGT. MATUS:**   A and B.  Okay was there anyone specific that he wanted to search?

**DE LEON:**   The, the residents on Calipat, I can't recall the address.

**SGT. MATUS:**   Okay.  Was there anybody uh, do you know who the individuals were?

**DE LEON:**   Uh, Shultz, believe David, and Tina Marie Phillips.

# Ex. 24

2

00815   875

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

## IA 2002-007
## 2-27-02

**SGT. MATUS:**   Did he say why he wanted to search these people or?

**DE LEON:**   Uh, he had heard that they may have been some dope, they've been dealing with dope.

**SGT. MATUS:**   Hmm.

**DE LEON:**   And they were on probation for it.

**SGT. MATUS:**   Okay. Did he have any kind of, do you know how he knew they were in probation?

**DE LEON:**   No, no I don't. I recall seeing the summary probation forms he had in his hand.

**SGT. MATUS:**   He had them in his hand?

**DE LEON:**   Yes.

**SGT. MATUS:**   Okay. For both individuals?

**DE LEON:**   Yes.

**SGT. MATUS:**   Okay. So you come on duty at 8 o'clock, you guys had this little discussion, somewhere around before or during the first half-hour of your, your shift, uh, what happened after that after you guys discussed that? Did you guys go somewhere in particular, or?

**DE LEON:**   After that I went 10-8, uh I started my patrol.

**SGT. MATUS:**   Okay.

**DE LEON:**   And we had set a pre- time about 1030, 11 meeting in Calipat, and going to do the probation search.

**SGT. MATUS:**   Do you know if he had cleared this probation search with any Supervisor?

**Ex. 24**

3

00816   876

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

## IA 2002-007
## 2-27-02

**DE LEON:** Prior to that, no.

**SGT. MATUS:** Okay. Do you know if he cleared it at any time?

**DE LEON:** Afterwards, when I saw him in Calipat, and he was upset, and uh.

**SGT. MATUS:** What time was this?

**DE LEON:** It was about 1030 in the morning.

**SGT. MATUS:** About 1030? So what was he upset about?

**DE LEON:** Uh, that the Department didn't let him be Pro-active and he wouldn't let him do a probation search and how were suppose to stop crime, before it develops.

**SGT. MATUS:** Hmmm, do you know if he was under any instructions not to do any probation searches or were you under any sort of instructions not to do any probation searches by any of the Supervisors?

**DE LEON:** I wasn't told not to do any probation searches.

**SGT. MATUS:** Do you know if he was?

**DE LEON:** He, the way it was directed, I, I got the feeling he was.

**SGT. MATUS:** Did he have been instructed not to do so?

**DE LEON:** That he was instructed not to do so.

**SGT. MATUS:** Had there been a problem before? Do you know?

**DE LEON:** With him doing probation searches, other than we were told that outside duties, were outside and outlying areas the city had their city, their patrol officers.

**Ex. 24**

00817

877

# IMPERI●COUNTY SHERIFF'S O●CE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

## IA 2002-007
## 2-27-02

**SGT. MATUS:**     Right.

**DE LEON:**     To handle those cases.

**SGT. MATUS:**     So basically you were told to stay out of the city limits?

**DE LEON:**     Yes.

**SGT. MATUS:**     Okay.  In this case, probation searches in Calipat, were they in the city of Calipat or outside the city of Calipat?

**DE LEON:**     It was inside the city of Calipat.

**SGT. MATUS:**     Okay.  So uh, you indicated that he was upset, did he say anything else other than the Department didn't want him to be pro-active?

**DE LEON:**     That, that, that um, they didn't let him do the probation search.

**SGT. MATUS:**     Hmmm, so uh, so they didn't want he do the probation search, then what was he doing in Calipat?

**DE LEON:**     Uh, I don't know, uh, when I went into I saw the car parked at the Calipat station.

**SGT. MATUS:**     The unit?

**DE LEON:**     The unit uh, I pulled up went threw the front door and him and Chief Gomez were coming, walking out of the office.

**SGT. MATUS:**     Had he been requested to go to Calipat PD?

**DE LEON:**     No.

**SGT. MATUS:**     Okay.  So what happened after 1030, what did you guys do?

**DE LEON:**     Uh, 1030, we stayed there, for about half an hour, um, he kept talking to Chief Gomez, um, I couldn't pick up on

**Ex. 24**

00818     878

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

## IA 2002-007
### 2-27-02

something, I picked up on something about the probation the same thing he had reiterated they didn't let him do, then be pro-active, and I was, but I was talking to Eric Granado uh, going threw his back ground for Imperial PD.

**SGT. MATUS:** So what you over heard was that he was having a discussion with the Chief and you over heard that they didn't want him to be pro-active?

**DE LEON:** Yes.

**SGT. MATUS:** He was telling that to the Chief of Police?

**DE LEON:** Yes.

**SGT. MATUS:** And that's Reggie Gomez?

**DE LEON:** Yes.

**SGT. MATUS:** Okay. So after you guys were there for a while, what happened?

**DE LEON:** After that

**SGT. MATUS:** You guys left or?

**DE LEON:** After that uh, he kept talking to him I saw him print some copies over the printer, and they had two sheets of uh, what I, it appeared to be the summary probation sheets.

**SGT. MATUS:** Okay, I have copies of the uh, some sheets here the summary probation sheets, they appeared to be those or uh, something similar to that?

**DE LEON:** It appear to be these, uh, like I said, I didn't see them I saw them from across the room and I get close enough to read the names.

# Ex. 24

00819

879

6

# IMPERIAL COUNTY SHERIFF'S OFFICE
# 328 APPLESTILL ROAD
# El CENTRO, CA 92243

## IA 2002-007
## 2-27-02

**SGT. MATUS:**    Okay the names that you mentioned earlier in he morning where they, this individual here?

**DE LEON:**    Yes, he, they said Shultz and Phillips.

**SGT. MATUS:**    Okay, so at any, did, did, did you leave after, a while after being at Calipat PD?

**DE LEON:**    Yeah, after that I told him I was hungry, and we went to go eat.

**SGT. MATUS:**    So you both went to eat?

**DE LEON:**    We both went to eat, and

**SGT. MATUS:**    What time did you guys leave the PD?

**DE LEON:**    About 11, 1115 wasn't really paying attention.

**SGT. MATUS:**    So where did you guys go to eat at?

**DE LEON:**    Uh, Carl's Jr.

**SGT. MATUS:**    Brawley?

**DE LEON:**    In Brawley.

**SGT. MATUS:**    Okay, what happened after you guys had lunch?

**DE LEON:**    Uh, were there having our lunch and the call comes in over the air that station 7 was requesting a cover unit, uh, when they came over the air it was directed towards 871.

**SGT. MATUS:**    They called him?

**DE LEON:**    Yes.

**SGT. MATUS:**    Okay and Calipat PD was requesting a unit, cover unit?

**Ex. 24**

7

00820    880

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

### IA 2002-007
### 2-27-02

**DE LEON:**   As far as I knew at that time, yeah.

**SGT. MATUS:**   Do you know what it was about, at that point?

**DE LEON:**   They said they were requesting unit for probation search.

**SGT. MATUS:**   Hmmm.

**DE LEON:**   And I-I assumed it was over this, also, either that or a coincidence.

**SGT. MATUS:**   Okay, do you know, do you recall what time uh, that call came down?

**DE LEON:**   The time from Dispatch, um, after 12

**SGT. MATUS:**   More or less, okay, were you guys together, together when this call came down?

**DE LEON:**   Yes.

**SGT. MATUS:**   What, did he say anything?

**DE LEON:**   Uh, yeah, he said he was going to go do the search and asked me if I was coming.

**SGT. MATUS:**   Okay, and do you know if it was the same people he wanted to search earlier?

**DE LEON:**   I believe so, but they didn't mention who the subjects were over the air or where the address was at only if I remember that day station 7 wanted to meet him at the station.

**SGT. MATUS:**   Okay, so did you both respond to Calipat?

**DE LEON:**   He left and I told him I had to talk to somebody first, in Brawley.

**SGT. MATUS:**   On a different case?

8

**00821**

**Ex. 24**
881

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

### IA 2002-007
### 2-27-02

**DE LEON:** Yes.

**SGT. MATUS:** Okay. So eventually you made it up to Calipat?

**DE LEON:** Yes.

**SGT. MATUS:** Did you meet him at the station or somewhere else?

**DE LEON:** No, I saw station 7 unit by the park, uh, we both started talking and said it was the same case, Shultz.

**SGT. MATUS:** Shultz, Shultz and Phillips?

**DE LEON:** Yes.

**SGT. MATUS:** Okay and what happened after you guys met there near the park?

**DE LEON:** Uh, I met station 7 there and Tac- uh, Tackett was talking to somebody on Park, I believe, he was 10-6 with somebody.

**SGT. MATUS:** Another unit or uh, private person?

**DE LEON:** Uh, private person.

**SGT. MATUS:** So did you guys ever do a search?

**DE LEON:** Yes, after that um, Tackett arrived uh, station 7 said, Granado said he was going to go into the house, see if they were there and then he would flag us in, yeah, that's what happened.

**SGT. MATUS:** Okay and did you ever talked to Tackett to see if he had cleared it with anybody?

**DE LEON:** Directly, no, it was just all of the sudden.

**SGT. MATUS:** You assumed that he had cleared it with the Supervisor or?

**Ex. 24**
-882

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

### IA 2002-007
### 2-27-02

**DE LEON:**  No, I assumed station 7 went on their own requesting cover.

**SGT. MATUS:**  And he was just there for back up?

**DE LEON:**  And he was just there for back up.

**SGT. MATUS:**  Do you know if uh, any of the Supervisors, I believe the Supervisor was uh, Manuel Avila?

**DE LEON:**  Yeah, Sergeant Avila.

**SGT. MATUS:**  Did he talked to him that day regarding this or afterwards?

**DE LEON:**  Well, it appeared he did, cause that's why he was so upset when I met him at...

**SGT. MATUS:**  At 1030?

**DE LEON:**  At Calipat, at 1030.

**SGT. MATUS:**  Okay, did he say anything uh, aside that the Department didn't want him to be pro-active?  Did he say anything in particular, Sergeant Avila?

**DE LEON:**  That's, no real vague that he, they didn't want him doing anything.

**SGT. MATUS:**  He didn't say why?

**DE LEON:**  No.

**SGT. MATUS:**  Okay. So you guys did a search, you cleared there, where did you guys go?

**DE LEON:**  After we cleared, uh, I believe I just left.

**SGT. MATUS:**  Okay, do you know where he went?

**Ex. 24**

10

00823   883

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

## IA 2002-007
## 2-27-02

**DE LEON:**       No, I don't.

**SGT. MATUS:**    Do you know if uh, Sergeant Avila ever talked to him again regarding this, after the search?

**DE LEON:**       I believe he did, but nothing, nothing he ever told me about.

**SGT. MATUS:**    Who Tackett or Avila?

**DE LEON:**       Tackett.

**SGT. MATUS:**    Let me pause for a minute.

**DE LEON:**       Sure.

**SGT. MATUS:**    Time is approximately 1517 hours.

**SGT. MATUS:**    Okay uh, time is approximately, 1518 hours continuing with the interview of Deputy De Leon.  Since that day have you talked to him about any of this situation regarding him not being pro-active?

**DE LEON:**       Uh,

**SGT. MATUS:**    The department not letting him be pro-active?

**DE LEON:**       I've told him to back off, to take it easy, other people had also, and he just gets himself in trouble where he can't get out.

**SGT. MATUS:**    Do you know if he has had problems with other Supervisors, or do you know if there's some sort of personal problems between him and uh, Sergeant Avila?

**DE LEON:**       As far as I can see between Sergeant Avila to Tackett, uh, no, as far as I can see from Tackett to Avila, Sergeant Avila, Tackett feels he is being discriminated against, and being picked on and singled out.

# Ex. 24

**00824**        **884**

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

### IA 2002-007
### 2-27-02

| | |
|---|---|
| **SGT. MATUS:** | Based on what, did he say? |
| **DE LEON:** | Uh that he's told what not to do more often than nobody else is. |
| **SGT. MATUS:** | And he doesn't know why? |
| **DE LEON:** | He knows why but he's (unintelligible). |
| **SGT. MATUS:** | Has he told you why? |
| **DE LEON:** | Why, he feels he's been singled out? |
| **SGT. MATUS:** | Hmmm |
| **DE LEON:** | Just that he gets picked at everything and that's probably to relation to relations with the family here. |
| **SGT. MATUS:** | Manuel, I don't think I have any questions any further questions, is there anything you would like to add or something I didn't ask you and you want to bring out? |
| **DE LEON:** | Uh, no, said earlier, he's a good guy he's just a little too hard worker, doesn't need this, this and that (unintelligible) what not to do instead of going around it. |
| **SGT. MATUS:** | Instead of going the proper way of doing... |
| **DE LEON:** | The proper way of doing it... |
| **SGT. MATUS:** | He's going around it, trying to be secretive or instead of (unintelligible). |
| **DE LEON:** | Not secretive, he's just needs to he's just doing a little more with, city job, the city police, police officer instead more of a Deputy Sheriff. |
| **SGT. MATUS:** | Manuel, I don't think I have any other further questions, uh, I would like to order you not to discuss this with anyone if |

**Ex.24**

12

00825        885

# IMPERIAL COUNTY SHERIFF'S OFFICE
# 328 APPLESTILL ROAD
# El CENTRO, CA 92243

## IA 2002-007
## 2-27-02

you have any questions get a hold of me, okay, do you have anything else?

**DE LEON:**      No.

**SGT. MATUS:**      No.  I'm going to end the interview; time is approximately 1510 hours.

Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 3/14/02

**Ex. 24**

00826      886

12

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## El CENTRO, CA 92243

## IA 2002-007
## 2-27-02

Ex. 24

00827          887

14

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:**   Okay, uh today's date is February the 28th the year is 2002, time is approximately 1006 hours, this is in uh, reference to uh, IA number 2002-007, this is an interview with uh, Chief of Police, uh, Reggie Gomez, from Calipatria Police Department, uh, interview is being conducted at the Calipat PD. Uh, Chief, uh, I'm conducting an IA on Justin Tackett regarding uh, insubordination uh, he is being accused of being alleged of being insubordinate, uh back in January the 31st of this yea, uh, he came by, from what I understand by the PD wanting to do a couple of probation searches on two individuals identified as last names of Shultz and Phillips? Are you familiar with that?

**CHIEF GOMEZ:**   I'm not sure the date but I remember uh, Deputy Tackett coming into the station with uh, a sheet with some people that were in probation living in the city, I remember Shultz but I don't remember the last, the other last name.

**SGT. MATUS:**   Okay, do you recall what time he came in that particular day?

**CHIEF GOMEZ:**   I'm not sure but I want to say 10:00 am, maybe, I'm not certain.

**SGT. MATUS:**   Okay and uh, when he came in the PD, did he come here to this PD here?

**CHIEF GOMEZ:**   Yes he did.

**SGT. MATUS:**   Okay, when you talked to him, did he have a request or a uh, what did he want, can you, can you?

**CHIEF GOMEZ:**   Uh, he came in with a sheet and asked me if I knew these people, and I told him, no, I didn't, and these people were living in the city and were on probation and I was not aware of that. So he uh, gave me that information um, like an infor sharing thing.

**Ex. 24**

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:** Right. Is this something that maybe the PD had requested from him or uh, he just came in uh, just offering this information?

**CHIEF GOMEZ:** No, he just came in and offered it.

**SGT. MATUS:** Okay, did he want to do a probation search?

**CHIEF GOMEZ:** Well, it's kind like an uh, it sounded like he did but he, he mentioned doing a probation search but he said he couldn't do it.

**SGT. MATUS:** Did he say why he couldn't do it?

**CHIEF GOMEZ:** He, he was instructed not too.

**SGT. MATUS:** Did he say from whom?

**CHIEF GOMEZ:** By his Supervisor.

**SGT. MATUS:** By his Supervisor? Okay. You know I don't know if you know or not uh, did the PD, before I ask you that was there a probation search done to those individuals?

**CHIEF GOMEZ:** There was a probation search done, but it was uh, done after I went home for the day.

**SGT. MATUS:** Okay, do you know who may have been involved from your PD?

**CHIEF GOMEZ:** I, I'd have to look it up uh, I'm not certain.

**SGT. MATUS:** Okay, when he came in here about 10:00o'clock in the morning, do you know if the probation search was done then?

**CHIEF GOMEZ:** No.

# Ex. 24

00829          889

2

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:**   Okay, you said you got off and you went home, what time did you get off that particular day?

**CHIEF GOMEZ:**   Normally at 5:00 PM.

**SGT. MATUS:**   At 5:00 PM? Okay so during that time span, you don't know if you did a probation search or not?

**CHIEF GOMEZ:**   No, no probation searches while I was on.

**SGT. MATUS:**   Okay, did he mention anything else about uh, why he couldn't do his probation search?

**CHIEF GOMEZ:**   Uh, basically his Supervisor wanted him uh, to patrol S.O. area, uh, be free for, for S.O. calls, and uh, best of my recollection maybe, uh respond to the cities, when requested.

**SGT. MATUS:**   Okay, so on that particular day you don't uh, if anybody from here requested him to uh, assist on a probation searches?

**CHIEF GOMEZ:**   I'm not sure, wait, wait a minute, when he came in it was just he and I in the station.

**SGT. MATUS:**   Was there anybody else with him when he came?

**CHIEF GOMEZ:**   No, no he came in alone, later on another Deputy did come in.

**SGT. MATUS:**   Do you know who that Deputy was?

**CHIEF GOMEZ:**   Uh, De Leon.

**SGT. MATUS:**   De Leon?

**CHIEF GOMEZ:**   And it was after that Officer Granado walked in because it was two Deputies and then officer Granado walked into the station.

**Ex. 24**

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:** Okay, he no longer works for you, right?

**CHIEF GOMEZ:** No, he is working for the City of Imperial.

**SGT. MATUS:** Do you know if he had a discussion with him.

**CHIEF GOMEZ:** I think it turned into a casual conversation after that.

**SGT. MATUS:** Do you know how long he was here?

**CHIEF GOMEZ:** Not really.

**SGT. MATUS:** 20 minutes, 30 minutes or an hour, probably? He just gave you the information basically after that.

**CHIEF GOMEZ:** It wasn't more than an hour, wasn't an hour maybe 20, 30 minutes, not certain.

**SGT. MATUS:** Okay, did he mention anything else about not being able to do any probation search, aside from having to be free for calls or in the County or any other type of services, with the Sheriff's?

**CHIEF GOMEZ:** No, well he really stressed that his Supervisor told him not to be initiating uh, work in the cities.

**SGT. MATUS:** Did he identify his Supervisor?

**CHIEF GOMEZ:** Avila?

**SGT. MATUS:** Avila, did you ever talk to Avila?

**CHIEF GOMEZ:** Yes, I did.

**SGT. MATUS:** Was it regarding this particular issue?
**CHIEF GOMEZ:** This issue, yeah, I think he touched on a couple more but not in real detail.

**Ex. 24**

00831      891

4

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:**   Okay, Chief I don't think I have any other further questions, is there anything you would like to add or maybe something I didn't ask you that you would like to bring up?

**CHIEF GOMEZ:**   Well, well not really just that uh, I like the working relationship that you know North County Deputies have with my Department, I didn't have that information until Tackett came in so, I was appreciated of that.

**SGT. MATUS:**   Right.

**CHIEF GOMEZ:**   That is about it.

**SGT. MATUS:**   Okay.  I'm going to end the interview time is approximately 1012 hours.

/////

Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 3/14/02

**Ex.24**

00832          892

5

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:** Okay uh, today's date is February 28th the year is 2002, time is approximately 1522 hours. This is in regard to IA number 2002-007, this is an interview with Officer Eric Granado is it G-R-A-N-D-O?

**GRANADO:** G-R-A-N-A-D-O.

**SGT. MATUS:** Okay, um, officer Granado is presently employed by the Imperial Police Department formerly with the Calipat Police. Uh, this, this interview is being conducted over the telephone, uh, by Imperial County Sheriff's Sergeant Delfino Matus. Uh, Eric, uh I'm conducting an Internal Affair Investigations that involves, uh, Deputy Tackett, uh, back on, uh, January 31st, uh, were you employed by, 31st of this year, were you employed by either Imperial or Calipat?

**GRANADO:** The 31st of January?

**SGT. MATUS:** Right.

**GRANADO:** Um, Calipat.

**SGT. MATUS:** By Calipat, okay, did you have occasion uh, talked uh, officer Tackett regarding a couple of uh, probation searches uh, one on a individual by the last name of Shultz and the other one I believe was a female by the name of Tina Phillips?

**GRANADO:** Uh, yes I did.

**SGT. MATUS:** Okay, was that about during that time or do you remember the time at all?

**GRANADO:** Um, I don't remember exactly but I remember about somewhere in there.

**SGT. MATUS:** Okay can you tell me what happened or how you came in contact with him, or?

**GRANADOS:** With the uh, defendants? I mean with

**Ex. 24**

893

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

## IA 2002-007
## 2-28-02

**SGT. MATUS:**    With officer Tackett.

**GRANADOS:**    Okay, um officer took, I mean Deputy Tackett just came to the police Department and told me that he had information on the street of two people, Shultz and the other lady, that they, that they were good and known to have weapons and currently had weapons.

**SGT. MATUS:**    Right.

**GRANADOS:**    In there possessions and that both of them were on probation and, and if they had weapons and drugs,

**SGT. MATUS:**    Right.

**GRANADOS:**    Then they would be violation and that they currently live in the city of Calipat.

**SGT. MATUS:**    Right.

**GRANADOS:**    And that if I was interested in um, conducting a probation search, then it's very likely that I can get some contraband or illegal weapons,

**SGT. MATUS:**    Right.

**GRANADOS:**    So he said that um, he couldn't do it and he gave me the, uh, copies of the probation um, forms that you know showed the uh, peoples names and the um...

**SGT. MATUS:**    Was it the um, search and seizure and all that?

**GRANADOS:**    Yeah, that form the search and seizure.

**SGT. MATUS:**    Okay,

**GRANADOS:**    To show their, their probation status.

**Ex. 24**

00834    894

2

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:** Right.

**GRANADOS:** And um, that was it, I was busy that day, and later on that afternoon or sometime after the end of the day, I went and I served it well not served it but went into the probation knock and talk.

**SGT. MATUS:** Okay did, did he assist you?

**GRANADOS:** Um, later on he did because I requested it...

**SGT. MATUS:** Okay,

**GRANADOS:** I requested the Deputies because I didn't um, I didn't know the people.

**SGT. MATUS:** Oh, you didn't have back up?

**GRANADOS:** Pardon me?

**SGT. MATUS:** You didn't have back up or you didn't, you didn't,

**GRANADOS:** No, I didn't have back up I was a solo officer.

**SGT. MATUS:** Okay, so what did you do call our office or uh?

**GRANADOS:** Um, no, Dispatch.

**SGT. MATUS:** You called Dispatch?

**GRANADOS:** Yeah, I had to think about that.

**SGT. MATUS:** And uh, what did you do request an officer or Tackett or?

**GRANADOS:** Yeah, if I remember correctly I just, I just called, um, uh, I'm closing my windows because we got windstorm coming up,

**SGT. MATUS:** Oh, really.

**Ex. 24**

895

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

## IA 2002-007
## 2-28-02

**GRANADOS:**   Yeah, and like big dust storm is coming into my house.  Any ways, uh, no I called my Dispatcher, and through my unit radio and said I was going to be conducting a probation search, and see if they had an SO unit in the area,

**SGT. MATUS:**   Right.

**GRANADOS:**   And if so if they can assist me just for a uh, stand by.

**SGT. MATUS:**   Right.

**GRANADOS:**   Just to uh, stand by as a uh, back up.

**SGT. MATUS:**   Right.  So uh, what officer responded or officer's?

**GRANADOS:**   Deputies um, De Leon?

**SGT. MATUS:**   De Leon?

**GRANADOS:**   Manuel?

**SGT. MATUS:**   Uh, Manuel.

**GRANADOS:**   Yeah, uh, Manuel and then uh, maybe 15, after that 10, 15 after that uh, Hackett, I mean Tackett.

**SGT. MATUS:**   Tackett?  Okay, when you talked to him earlier um, what, what time of day was it, when you talked to him the first time regarding uh, the probation searches?  Do you remember the time?

**GRANADOS:**   I would say between 1030 closer to uh, 1130.

**SGT. MATUS:**   And, did he indicate to you uh, that he couldn't do them or was anything said like that?

**GRANADOS:**   From him?

**Ex. 24**
896

00836

4

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:**     Right.

**GRANADOS:**     No.

**SGT. MATUS:**     Okay, so he just gave you the information, basically?

**GRANADOS:**     Right.

**SGT. MATUS:**     Uh, to let just, making you aware that, that uh, these individuals were on probation and, and he had information that they possibly had weapons and drugs?

**GRANADOS:**     Right.

**SGT. MATUS:**     Okay, so later what time do, do you, do, what time did you do the search?

**GRANADOS:**     I would guess it was probably somewhere around 1:30 to 2:00 or after 2:00, maybe.

**SGT. MATUS:**     Okay.  Okay, that's when you did the search, do you remember what time, how much earlier you had requested the Deputies?

**GRANADOS:**     Oh, I went towards, I went over to the residence just to see if anybody was home, first?

**SGT. MATUS:**     Right.

**GRANADOS:**     Cause I was not going to call for back up,

**SGT. MATUS:** Right.

**GRANADOS:** Waist of time if um, if you know,

**SGT. MATUS:**     Nobody was there.

**GRANADOS:**     Nobody was there,

**Ex. 24**

897

00837

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**SGT. MATUS:** Right.

**GRANADOS:** So I called them up and um, I mean so, you know 10-97, to the residence and, and then uh, made my call.

**SGT. MATUS:** Okay.

**GRANADOS:** To dispatch, to my Dispatcher, Brawley PD, and to request uh, SO, if they were available and have somebody.

**SGT. MATUS:** Okay, let me ask you this, did he ever mention to you that uh, that he couldn't do those searches? That he was not allowed to do searches?

**GRANADOS:** No, he didn't say that, he did tell me cause uh, you know how we cops are, I'm like uh, dude if you have the paper work, you know about it, go serve it, he goes, well they don't want us doing, he says we are not suppose to be doing, uh this type of work inside the city cause it is your city.

**SGT. MATUS:** Right.

**GRANADOS:** They want us to be out in the County, you know in Niland doing out there, that's were they want us.

**SGT. MATUS:** Right.

**GRANADOS:** He goes, so, that's why.

**SGT. MATUS:** Oh, okay, so that is why he went to you then.

**GRANADOS:** Uh,

**SGT. MATUS:** So that is why he went to you, your agency?

**GRANADOS:** Right.

**SGT. MATUS:** Okay.

**Ex. 24**
898

**00838**

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

## IA 2002-007
## 2-28-02

**GRANADOS:** And I uh, cause you know how we are, we're like, dude, you catch it, you clean it.

**SGT. MATUS:** Yeah.

**GRANADOS:** (*Laughing*)

**SGT. MATUS:** Right.

**GRANADOS:** He's like they want us out there in the County, so I'm like alright, and then I was, I had just finished some (unintelligible) on my car and I said lets go see what we got. And then he had told me that he had heard, if I ever done it, but he said that he heard word in the street that they currently had dope and, and weapons, so...

**SGT.MATUS:** Oh, okay.

**GRANADOS:** Chances are you are going to get something out of it.

**SGT. MATUS:** Okay.

**GRANADOS:** And then we did get a little, a little bit of weed.

**SGT. MATUS:** Oh, did you?

**GRANADOS:** Yeah,

**SGT. MATUS:** Okay, were they detained or was anybody detained or just a cite?

**GRANADOS:** What was your question? Change or what?

**SGT. MATUS:** Or just a citation?  Or was there a violation of probation involved?

**GRANADOS:** Uh, we only got a little bit of Marijuana,

**Ex. 24**

00839  899

7

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

| | |
|---|---|
| SGT. MATUS: | Uh, ha |
| GRANADOS: | So we took as ah, just took custody of it. |
| SGT. MATUS: | Okay. |
| GRANADOS: | No citation issued. |
| SGT. MATUS: | Okay, |
| GRANADOS: | Gave the, uh, people a, cause it was, a little bit of Marijuana, I don't think they knew they had it, |
| SGT. MATUS: | Right. |
| GRANADOS: | Like a roach, |
| SGT. MATUS: | Oh, okay. |
| GRANADOS: | So it was like no big deal. |
| SGT. MATUS: | Okay Eric, uh, I don't have any further questions I appreciate your time, um, I understand you, you work tomorrow, right? |
| GRANADOS: | Yeah, I'm going in tomorrow. |
| SGT. MATUS: | Okay, okay like I said uh, you have anything further anything further to add or maybe something I didn't ask you and you want to bring up or? |
| GRANADOS: | No. |
| SGT. MATUS: | Okay, appreciate your time, |
| GRANADOS: | You are welcome, Sarge. |
| SGT. MATUS: | Okay, talk to you later. |

**00840**

## Ex. 24

**900**

8

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 APPLESTILL ROAD
## EL CENTRO, CA 92243

### IA 2002-007
### 2-28-02

**GRANADOS:**     Okay, bye.

**SGT. MATUS:**     Okay, (*phone hanging up*).....  I'm going to end the
interview time is approximately 1530 hours.

Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 3/14/02

00841                **Ex. 24**

901

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

| | |
|---|---|
| **SGT. MATUS:** | Okay uh, today's date is March 1, the year is 2002, time is approximately 1047 hours, this is an interview with uh, Deputy Justin Tackett, who is being represented by Attorney Brad Fields, this is in regards to Internal Affairs Investigation, 2002-007, this is uh, complaint filed by the Imperial County Sheriff's Office, regarding uh, the allegations of truthfulness.  Okay, uh, Justin, this interview is being recorded and you are admonished that you answer all questions asked of you completely and that all your answers are to be truthful.  Knowingly making false or misleading statements during this interview will be considered a separate offense that could lead in discipline up to and including termination; do you understand this admonishment? |
| **TACKETT:** | Yes. |
| **SGT. MATUS:** | *(clearing throat)* at this time, uh, I'll advise you of your rights per AB 301.  Okay, you have the right to have a representative of your choice present during this interview.  And you have chosen Attorney Brad Fields to represent you, is that correct? |
| **TACKETT:** | Correct. |
| **SGT. MATUS:** | Okay, you have the right to make your own tape recording of this interview, do you understand that? |
| **TACKETT:** | Yes. |
| **SGT. MATUS:** | *(clearing throat)* you will have access to the, to the department's tape recording of your interview if further proceedings are contemplated or prior to any further interrogation at a subsequent time.  After the interview, you are entitled to a transcribe, transcribe copy of any notes, or to any reports or complaints, except those that are deemed confidential.  You will be questioned by more than two inter, interrogators at one time during this course of this interview.  In this case I will be the sole interrogator.  If this interrogation is occurring during your off-duty time, you will |

00842 **Ex. 24**

902

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

be compensated, compensated in accordance with regular department procedures and you will not be released from employment for any time missed. This interview session will be for a reasonable period of time based on all the circumstances and you will be allowed to attend to your own personal, physical necessities. Do you understand that?

**TACKETT:**   Yes.

**SGT. MATUS:**   Okay, uh, this is strictly, uh, an administrative investigation is not a uh criminal investigation, uh, Justin Tackett, I will order you to answer any and all questions asked of you in a truthful and accurate manner, failure to do so may be deem insubordination and result of an administrative discipline, up to and including termination with your employment with the Imperial County Sheriff's Department. Do you understand what I have just explained to you?

**TACKETT:**   Yes.

**SGT. MATUS:**   Do you have any questions concerning what I have just explained to you?

**TACKETT:**   No.

**SGT. MATUS:**   Okay, any questions before we start?

**FIELDS:**   No.

**SGT. MATUS:**   Okay, uh, I allowed uh, Justin Tackett and his attorney Brad Fields to view an inter office memo generated by Deputy, correction, uh, Sergeant Manuel Avila back on February 11th regarding uh, Justin Tackett, uh, what I want to do is uh, I'm going to cover this particular memo, and ask you questions regarding uh, the complaint filed by Sergeant Avila. Uh, Justin, how long have you been employed by the Sheriff's department?

**TACKETT:**   Uh, approximately, 2 years and I believe 8 months.

**Ex. 24**
903

2

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**SGT. MATUS:**   Is that as a Deputy Sheriff or a total time?

**TACKETT:**   Total time.

**SGT. MATUS:**   Okay, how long have you been a Deputy Sheriff?

**TACKETT:**   A year and 8 months, I believe.

**SGT. MATUS:**   A year and 8 months?

**TACKETT:**   I mean a year and 10 months, I believe, it was a it was 8 months as a CO.

**SGT. MATUS:**   And you are presently assigned to where?

**TACKETT:**   To uh, North County Patrol Division.

**SGT. MATUS:**   And what are your function, what's your functions or duties?

**TACKETT:**   Uh, patrol deputy means to respond, enforce the law, any crimes I see committed uh, basically make sure that people are not getting victimized and to stop people from being victimized before it happens.

**SGT. MATUS:**   Okay, back during the latter part of uh, last year, uh, somewhere December, did you have a conversation with Sergeant Avila regarding probation or parole searches?

**TACKETT:**   In December?

**SGT. MATUS:**   Yeah.

**TACKETT:**   Uh, I don't believe in December, probably it was in January but it was in regards to parole searches, yes.

**SGT. MATUS:**   Okay, and what was that conversation about?

**TACKETT:**   Ooof about a parolee and uh, about contacting him the see if he was following his parole guideline.

**Ex. 24**
904

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

| | |
|---|---|
| SGT. MATUS: | Okay, and who was that parolee?  Do you recall his name? |
| TACKETT: | David Davila. |
| SGT. MATUS: | David Davila.  And where does David Davila live? |
| TACKETT: | Westmoreland. |
| SGT. MATUS: | In Westmoreland?  In the city of Westmoreland or outside the city of Westmoreland? |
| TACKETT: | Inside. |
| SGT. MATUS: | And when you had this conversation, conversation with Sergeant Avila, what was the uh, extent of that conversation? |
| TACKETT: | The extent was, he did not want me to doing uh, parole searches. |
| SGT. MATUS: | Was there a reason why? |
| TACKETT: | He said we were not Parole officers and uh, that basic we were not parole officers and if there was a problem with any violation, a parole officer can handle it, not us. |
| SGT. MATUS: | Did you ever do a parole search on him? |
| TACKETT: | No. |
| SGT. MATUS: | And, and why, why that?  Why didn't you do a parole search? |
| TACKETT: | Why didn't I? |
| SGT. MATUS: | Mmmh, |
| TACKETT: | Cause he told me, no. |
| SGT. MATUS: | He told you not to do it? |

**Ex. 24**

905

00845

-4-

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**TACKETT:** Correct.

**SGT. MATUS:** Okay, did you receive any type of information regarding Davila as to his status, criminal activity aside from him being on parole?

**TACKETT:** Uh, I was given information by an anonymous informant correct.

**SGT. MATUS:** And what was that information?

**TACKETT:** It was on a narcotics, narcotics.

**SGT. MATUS:** That he was involved in narcotics or?

**TACKETT:** Correct.

**SGT. MATUS:** And, and in what matter, using or dealing or?

**TACKETT:** Mostly use.

**SGT. MATUS:** Did you talk to his parole officer?

**TACKETT:** Ambrose, correct.

**SGT. MATUS:** Did you inform him of his uh, of your information?

**TACKETT:** Uh, I believe I informed him of uh, of the drug of the drug use and there was also on another parole officer, parole parolee as well.

**SGT. MATUS:** Okay, prior to uh, January 31st did you ever had any more conversation with any of your Supervisor's either Manuel Avila or whoever your Supervisor might have been out there regarding parole or probation searches?

**TACKETT:** Nnnnno.

**FIELDS:** Prior to the 31st?

**Ex. 24**

906

00846

5

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

## IA 2002-007
## 3-01-02

**SGT. MATUS:**    Correct, January, yeah.

**TACKETT:**    Prior to the 31st?

**SGT. MATUS:**    Yeah.

**TACKETT:**    No.

**SGT. MATUS:**    Aside from that one time that you talked to Manuel?

**TACKETT:**    That one time, no.

**SGT. MATUS:**    Was that, was that, the only time you talked to him about that?

**TACKETT:**    Correct.

**SGT. MATUS:**    And he had a concern that he didn't, he didn't want you to go to these uh,

**TACKETT:**    Correct.

**SGT. MATUS:**    Probation or parole searches.

**FIELDS:**    Well, uh, Can we have a moment, please?

**SGT. MATUS:**    Sure. Time is approximately uh, 1054 hours.  Okay, uh time is approximately 1056 hours, uh continuing with the interview with uh, Justin Tackett.

**FIELDS:**    Uh, wanted just clarify something reference to his last answer.

**TACKETT:**    In the report the clarification was you said if I, we had any contact as far as a discussion on the parole, parole probation any kind of search as far as parole, probation is concerned and in the reports has down as the 31st and you were asking in referenced to but the answer to that occurred

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

actually occurred on the 30th, so we did have a discussion prior.

**FIELDS:** That makes sense, in other words your question was have you talked about it prior to the 31st

**SGT. MATUS:** Right.

**FIELDS:** Although the memo says it happened on the 31st, Justin's recollection that it actually happened on the 30th so

**SGT. MATUS:** So this particular incident on the, the uh, well

**FIELDS:** The end of the month, let's say.

**SGT. MATUS:** Oh, okay, yeah, okay, when did the Davila case happen?

**TACKETT:** I, I'm not sure when the exactly date was.

**SGT. MATUS:** Was it in January of this year?

**TACKETT:** Yeah, it was in January of this year.

**SGT. MATUS:** Okay, I believed I had asked you if you had talk to any other Supervisors prior to the 31st, aside from Avila, or maybe I didn't put it specifically

**FIELDS:** No, you didn't say it that way, you said have you had any conversations with any Supervisors prior to the after Davila, prior to the 31st, Justin's answer thinking that you really meant prior to the incident that Avila is speaking about here, the answer

**SGT. MATUS:** You are talking to the uh, Calipat incident.

**FIELDS:** Correct, prior to that the answer would be no, he hadn't. but either way you said it was the 31st and Justin's recollection that it actually happened on the 30th, so technically he did have a conversation with a Supervisor, on

7

00848

**Ex. 24**
908

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

the 30th which I'm sure you are going to ask about.  Having a formality with

**SGT. MATUS:**     Sure

**FIELDS:**     Since we are dealing with the truthfulness here I just want to make sure

**SGT. MATUS:**     Sure....no problem...of course

**FIELDS:**     We're

**SGT. MATUS:**     Were on the same page.

**FIELDS:**     Exactly.

**SGT. MATUS:**     Okay, uh, as you know uh, did you go to Calipat police, was it the 30th or the 31st of January, to speak with uh, any of the officers there including the Chief?

**TACKETT:**     From my, from my recollection it was the 30th

**SGT. MATUS:**     The 30th?  Do you remember what day of the week that was?

**TACKETT:**     Uh, no, not right off hand.

**SGT. MATUS:**     Okay, you are assigned to North County Patrol, right?

**TACKETT:**     Correct.

**SGT. MATUS:**     Okay, what are your days off, normally?

**TACKETT:**     Saturday, Sunday's

**SGT. MATUS:**     Saturday, Sunday, okay so it was not a Saturday or a Sunday, it was during one of your work days.

**TACKETT:**     Uh, I do a lot of over time so I don't know if I was working that day, as far as over time or not,

**Ex. 24**

909

8

00849

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**FIELDS:** Uh, just for clarification both the 30th and the 31st were during the week, it was Wednesday and Thursday, so,

**SGT. MATUS:** It would have been during your regular work day?

**TACKETT:** Correct.

**SGT. MATUS:** Okay. Uh, Did you go to Calipat Police in the morning?

**TACKETT:** Correct.

**SGT. MATUS:** Can you tell me what time you were there?

**TACKETT:** It was in the morning sometime, I'm not exactly sure what exactly what time.

**SGT. MATUS:** What time did you go on duty that day?

**TACKETT:** 8 o'clock.

**SGT. MATUS:** 8 o'clock. Was there a specific time after you went in was it 20 minutes later after you went on duty or 30 minutes or before lunch or?

**TACKETT:** I'm not exactly sure, it was before lunch,

**SGT. MATUS:** It was before lunch, but you are not sure about the time?

**TACKETT:** No, I'm not sure exactly the time.

**SGT. MATUS:** Okay, when you went to Calipat PD who was present there, beside yourself?

**TACKETT:** Officer Granado and Chief Gomez

**SGT. MATUS:** Okay, was there any representative from the Sheriff's Department there?

**TACKETT:** Myself.

**Ex. 24**

00850     910

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**SGT. MATUS:** Just you?.......What about officer,

**FIELDS:** Do you, do you want to answer that, shaking your head doesn't do anything for the tape recordings, uh?

**TACKETT:** Yes.

**SGT. MATUS:** Just you, you said?

**TACKETT:** Just myself as far as Sheriff's Deputies.

**SGT. MATUS:** Right.

**TACKETT:** Correct.

**SGT. MATUS:** Okay was Officer De Leon there?

**TACKETT:** Uh, he showed up at a later incident not at the same time.

**SGT. MATUS:** Not the same time?

**TACKETT:** We didn't come in together, not the same time

**SGT. MATUS:** Okay, you indicated you went in at 8 o'clock that morning did you have an discussion with uh,

**FIELDS:** Well, no, he said he, he said you indicated he showed up at 8 o'clock that morning

**SGT. MATUS:** No, I'm talking about when on duty.

**FIELDS:** Oh, okay.

**SGT. MATUS:** Is that correct?

**TACKETT:** Correct.

**00851**

**Ex. 24**

911

10

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**SGT. MATUS:** Okay, did you talked with Officer De Leon regarding uh, a probation search, shortly or before you went on duty, that you wanted to do a couple of probation searches?

**TACKETT:** Officer De Leon?

**SGT. MATUS:** Right, Manuel De Leon.

**TACKETT:** At 8 o'clock?

**SGT. MATUS:** Somewhere around there? Early in the morning.

**TACKETT:** It was not that day as in regards to the probation search as far as following the guidelines of a summary probation, as far as a narcotic registrant.

**SGT. MATUS:** Did you talked with anyone that morning, that you wanted to do probation searches on a couple of individuals identified as by the last name of Shultz and Phillips?

**TACKETT:** No, not if I was following there guidelines, yes, it was with Investigator Vela and, and also Deputy De Leon.

**SGT. MATUS:** I don't know if you understand me or not? Did you talked to anyone that you wanted to do a probation search that morning in Calipat on these two individuals I just named, Shultz and Phillips?

**TACKETT:** As far as summary probation?

**SGT. MATUS:** Right, doing a search of their residence?

**TACKETT:** As far as following the terms and guidelines, yes.

**SGT. MATUS:** You did, who did you talked to?

**TACKETT:** I talked to Deputy De Leon and Investigator Vela.

**SGT. MATUS:** Okay, when did you talked to them?

### Ex. 24

00852

912

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

## IA 2002-007
## 3-01-02

| | |
|---|---|
| **TACKETT:** | In the morning. |
| **SGT. MATUS:** | In the morning, okay, and what was your cause to talk to them? |
| **TACKETT:** | I was discussing with Vela, for the fact that um, same point as with uh, Davila, separate incidents of course, um, basically it  was in reference (unintelligible) getting information and that he wasn't registered as a narcotic and was not following his terms and guidelines and that uh, he also was in violation again with his kids in the area as far as uh, child welfare and I discussed that with Deputy De Leon, and discussed that with Vela, and I also discussed with them, if uh, was looking to see as far as there summary probation inside the courts, cause we get that information as far as summary probation, since they don't have probation officers and Investigator Vela informed me that he had that paper work. |
| **SGT. MATUS:** | Okay, did you talked to your Supervisor that morning regarding this? |
| **TACKETT:** | Later on, yes. |
| **SGT. MATUS:** | How about when you were making arrangments prior to making arrangments uh, with Vela and uh, De Leon, did you talked to any of your Supervisors, of your intentions? |
| **FIELDS:** | I don't, intentions for what? |
| **SGT. MATUS:** | To do a search. |
| **FIELDS:** | What kind of search are you asking? |
| **SGT. MATUS:** | Probation search.  Had you cleared it with your Sergeant that you wanted to do a probation search? |
| **TACKETT:** | I was not doing a probation search. |

**Ex. 24**

00853      913

12

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

FIELDS:
Okay, I think that is the problem here, you are asking a question in a way that's is very confusing.

SGT. MATUS:
What were you doing?

TACKETT:
I was making sure he was following his guidelines as far as being narcotic registrant, and as far as the other person with the child welfare and Sergeant Avila at the time was not there so I discussed it at a later point.

SGT. MATUS:
So what is the difference between this individual following his guidelines in probation?

TACKETT:
Cause probation search is searching a residence to search what ever he has, as far as a narcotic registrant you have to register that is not a search, so as far as the other person with child welfare that is not a search, that is making sure that the child is not in danger.

SGT. MATUS:
Okay, did you notified the PD of this?

TACKETT:
Yes, that is the reason I went to the station.

SGT. MATUS:
Okay, so in your eyes, um or as you view it anyway, you weren't doing a probation search?

TACKETT:
Yes, that is correct.

SGT. MATUS:
Okay, and what you did at the PD, you went to notify them of this, of this information or this individuals that were in probation?

TACKETT:
Correct, and I supplied them with a copy of a summary probation so they'd so they would have (unintelligible).

SGT. MATUS:
What lead you do that, why did you focus on these two individuals?

**Ex. 24**

00854

914

13

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**TACKETT:** Why, the children is for one and also he's not complying, he's not a narcotic, he's suppose to register as a narcotic registrant.

**SGT. MATUS:** How did you know he was not complying? Did you run a check on him or what?

**TACKETT:** Well, I've had, I've known this person since, since let's say Jr. High, his parents live right across from me, I interact with him all my life.

**SGT. MATUS:** So it's somebody giving you information that they were not in compliance?

**TACKETT:** As far as, with the children?

**SGT. MATUS:** The children, not registering,

**TACKETT:** Correct, correct. As far as not registering, I didn't have knowledge of that until Investigator Vela had that information for me, but the main reason is for the children and for them having narcotics and, and in the area (unintelligible) I guess you'd say of the children.

**SGT. MATUS:** Okay, so that morning uh, when you were at the office and you went on duty there was no Supervisor present?

**TACKETT:** Not, not that not in order to contact him, no, as far as him being in the office, no.

**SGT. MATUS:** He wasn't, he couldn't be reached by telephone or pager?

**TACKETT:** That's unknown to me, I didn't know if he had that on.

**SGT. MATUS:** You don't know if your Sergeant has a pager?

**TACKETT:** What?

**SGT. MATUS:** Or a telephone?

**Ex. 24**

00855    915

14

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**TACKETT:**      I don't know if he had it on that day, no.

**SGT. MATUS:**      Who was your Sergeant that day?

**TACKETT:**      Sergeant Avila.

**SGT. MATUS:**      Avila, so you don't know if he had his pager on him or?

**TACKETT:**      As in the morning we were going 10-8 so I don't know if he had anything on him to tell you the truth.

**SGT. MATUS:**      Tried to contact him through dispatch?

**TACKETT:**      Not the dispatch, no.

**SGT. MATUS:**      So you, you guys go to Calipat PD, you give Calipat PD the information, how long where you at Calipat PD?

**TACKETT:**      Approximately I would say, 20, 20 minutes 25 minutes, somewhere around there.

**SGT. MATUS:**      Okay you had a discussion with uh, Gra- Granados and the Chief?

**TACKETT:**      Granados and the Chief, right.

**SGT. MATUS:**      When you were at the PD did you ever receive a telephone call from anyone?

**TACKETT:**      I'm nor sure if I receive or if I gave one, I'm not sure exactly but I think I think I talked to somebody, I'm not sure exactly.

**SGT. MATUS:**      Do you know who you talked to?

**TACKETT:**      Uh, to tell you the truth no, I'm trying to think back, I don't remember either talking on the phone or answering the phone I'm not sure exactly what it was all about.

## Ex. 24
00856      916

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

## IA 2002-007
## 3-01-02

**SGT. MATUS:**    Okay, did you talked to Sergeant Avila while you were at the PD?

**TACKETT:**    I don't, I don't know I know I talked to him prior before going there but as far as being there I'm not sure.

**SGT. MATUS:**    Oh, so you contacted Sergeant Avila?

**TACKETT:**    Correct, prior, correct.

**SGT. MATUS:**    And what was that discussion about?

**TACKETT:**    It was a discussion of summary probation.

**SGT. MATUS:**    And what else did he tell you?

**TACKETT:**    Ay, basically that I was not going to be doing the probation, that prior discussion, prior that that was for probation officers and parole officers, and I advise him that summary probation didn't have probation officers and he advised well, that's what he meant also to go and follow up with far as the probation, the former probation and I said okay that I was not going to initiate in any formal uh, any summary probations.

**SGT. MATUS:**    So what, what time did you talked to him?

**FIELDS:**    If you recall I mean don't, *(clearing throat)* don't make it up.

**SGT. MATUS:**    An hour or two before you went to the PD or?

**TACKETT:**    It was approximately, 20 minutes prior to going to the PD.

**SGT. MATUS:**    And talked to him in person or by telephone?

**TACKETT:**    By telephone.

**SGT. MATUS:**    Did he call you or did you call him?

**TACKETT:**    I called him.

**Ex. 24**

00857   917

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**SGT. MATUS:**   Did you use a cell phone or?

**TACKETT:**   Cell phone.

**SGT. MATUS:**   Your cell phone?

**TACKETT:**   Correct.

**SGT. MATUS:**   And this was when you had a conversation with him regarding, the probation search that you explained to him, that these guys don't have probation officers.

**TACKETT:**   Well, not probation searches as far as summary probation.

**SGT. MATUS:**   So did you tell him you were going to the PD to give them the information or?

**TACKETT:**   I told him that I was just going to go and drop off the summary sub they knew that as far as the guidelines that not being a narcotic registrant.

**SGT. MATUS:**   So when you left the PD, What happened, where did you go?

**TACKETT:**   I went, I believe I went to a call, but I'm not sure exactly which call it was

**SGT. MATUS:**   Did you ever return to the PD that day?

**TACKETT:**   I believe uh, I returned later on that day, but I'm not sure exactly what time or anything.

**SGT. MATUS:**   Was it after lunch or?

**TACKETT:**   Um, to tell you the truth I'm not sure.

**SGT. MATUS:**   Okay, when you return to the PD, was it at their request or did you return voluntarily?

**Ex. 24**

00858   918

17

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### 328 Applestill Road
### El Centro, CA 92243

### IA 2002-007
### 3-01-02

**TACKETT:** When I, which, which time?

**SGT. MATUS:** The second time, you left the PD in the morning, you dropped off the papers right?

**TACKETT:** Correct.

**SGT. MATUS:** Well let me ask you this, how many time did you go to the PD that day?

**TACKETT:** I believe the PD itself,

**SGT. MATUS:** I'm talking about Calipat PD?

**TACKETT:** You are talking about the station itself, not anywhere?

**SGT. MATUS:** How many times, how many times, did you meet with officer from Calipat PD that day?

**TACKETT:** I believe it was 3 times

**SGT. MATUS:** 3 times, first time at there office to drop off papers, dropped off papers, the second time was when?

**TACKETT:** When, they had call for assistance.

**SGT. MATUS:** Okay, what beat were you working that particular day?

**TACKETT:** I, believe it was A and B.

**FIELD:** You believe or you're sure?

**TACKETT:** Um, I believe it was A and B.

**SGT. MATUS:** Okay, when Calipat PD called for assistance, did they call for you, specifically or, or the beat officer?

**TACKETT:** No, they just called for assistance and we had just got down with 10851 vehicle and so I believe both units were in that same area so we were responding, on the assist in the other

<div align="right">

**Ex. 24**
</div>

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### 328 Applestill Road
### El Centro, CA 92243

### IA 2002-007
### 3-01-02

way, we had two agency assist at the same time, one from Brawley PD, which dispatches for Calipat also, one with the 10851, and then another in Cal-Calipat, with, we didn't know what it was in reference to yet, till we went 11-98, with Officer, which it was me, the officer.

**SGT. MATUS:** You met with the officer?

**TACKETT:** Correct.

**SGT. MATUS:** Who else met with him?

**TACKETT:** Uh, Deputy De Leon.

**SGT. MATUS:** And who handled the Brawley PD cases?

**TACKETT:** I did.

**SGT. MATUS:** And what kind of case was that?

**TACKETT:** Oh, that was a stolen vehicle.

**SGT. MATUS:** Was it like a recovery or uh?

**TACKETT:** It was, uh, actually in, in progress.

**SGT. MATUS:** In progress?

**TACKETT:** Yeah, they had caught the suspect, and uh, and uh, 10-15 them.

**SGT. MATUS:** What did they do ask for a cover unit or what?

**TACKETT:** Correct.

**SGT. MATUS:** So, uh, shortly there after there was a call or was this call, did this call came in together?

**TACKETT:** It was kind of all simultaneously, all together.

**Ex. 24**

00860          920

19

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### 328 Applestill Road
### El Centro, CA 92243

### IA 2002-007
### 3-01-02

**SGT. MATUS:** Okay, so you both response to Calipat and who did you meet there in Calipat?

**TACKETT:** Officer Granado.

**SGT. MATUS:** And, and what did he want?

**TACKETT:** He was saying that he was going to be going to the residence as far with the paperwork that I had given him, for to make sure that the person had knowledge and that he needs to comply with being a narcotic registrant.

**SGT. MATUS:** So he wanted cover for that or what?

**TACKETT:** Correct.

**SGT. MATUS:** Did you guys do a search on his house?

**TACKETT:** After the (unintelligible), correct.

**SGT. MATUS:** And why did you guys do the search?

**TACKETT:** That was the officer's call, not mine.

**FIELDS:** You, you were just covering?

**TACKETT:** Correct. Just there to assist.

**SGT. MATUS:** How, what about, who's house was that?

**TACKETT:** Uh, I believe it was uh, Vern's, I don't think it was in his name but it was Verns Shultz and a Tina Phillips.

**SGT. MATUS:** Okay, so they live, live together?

**TACKETT:** Correct.

**SGT. MATUS:** Are they like husband and wife or boyfriend, girlfriend or?

# Ex. 24

00861   921

20

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### 328 Applestill Road
### El Centro, CA 92243

## IA 2002-007
### 3-01-02

**TACKETT:** I, I don't know if they are married, I know they have a child, in common, or children in common, I should say.

**SGT. MATUS:** Okay, so you guys did a, uh, a search, of the residence, did you guys find any narcotics or any anything illegal?

**TACKETT:** Uh, I don't as far, as far as I'm concern, I don't, don't know I know we I know we went inside after the officer advise us if we could come in and assist him on, on the as far as officer safety, watching the people inside but also while he is searching, if we could assist.

**SGT. MATUS:** While you were there did either you or De Leon contact the duty Sergeant or your Sergeant, which is Manuel Avila, that you are doing a uh, probation search or search on the residence?

**TACKETT:** For, uh, that we advise him of doing the search? Oh, no he knew we were assisting the agency.

**SGT. MATUS:** But he didn't know what the traffic was?

**TACKETT:** Uh, he never asked.

**SGT. MATUS:** You didn't tell him?

**TACKETT:** Well I didn't see the point till I was, we were involved in the case. I figured it anything he would of respond, and see what's going on or ask.

**SGT. MATUS:** Okay, but you didn't take the time to tell him, you know what, we are going to assist these guys on a uh?

**TACKETT:** Oh, yeah, I told him we were going to assist, I put in the radio, that we were out to assist section 7, or I was. I don't know if Deputy De Leon, I don't know if he did or not, I don't know, I don't know if he took the time either to call but I don't know.

**Ex. 24**

00862  922

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### 328 Applestill Road
### El Centro, CA 92243

## IA 2002-007
### 3-01-02

**SGT. MATUS:** When uh, Calipat police called, did they ask for you specifically?

**FIELDS:** He answered that already. Uh, go ahead.

**TACKETT:** They asked for any of us, they asked for assistance.

**SGT. MATUS:** They didn't just asked for you?

**TACKETT:** Right.

**SGT. MATUS:** They didn't say oh, I want Tackett and De Leon?

**TACKETT:** Right.

**SGT. MATUS:** When you talked to uh, Manuel Avila, Sergeant Avila, did you ever mentioned to him that you were going to assist Vela on a couple of follow ups?

**TACKETT:** I would assist him on his call, a past call, correct.

**SGT. MATUS:** Are any of these calls Avila's or Vela's cases?

**TACKETT:** Correct, one.

**SGT. MATUS:** One?, which one was that?

**TACKETT:** That was uh, the child welfare, his prior child welfare that uh, on both Tina Phillips and Vern Shultz.

**SGT. MATUS:** Did Vela ask for your assistance or did you go to Vela and say uh, I have this information, uh?

**TACKETT:** We discussed it that morning when uh when I was going over there with, with the whole as far as summary probation, and the reason I was asking for it and that's when the whole.

**SGT. MATUS:** So you initiated the whole thing yourself?

# Ex. 24

00863   923

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

## IA 2002-007
### 3-01-02

**TACKETT:**        When I was asking for summary probation, correct.

**SGT. MATUS:**      When you talked to uh, when you talked to Chief Gomez, did you explain to him that, uh, you couldn't do probation searches, you weren't allowed too?

**TACKETT:**        Yeah, I told him I was not allowed to do anything as far as any action on the summary probation clause.

**SGT. MATUS:**      Did you also tell him, that you were not allowed to be pro-active?

**TACKETT:**        Correct, I did.

**SGT. MATUS:**      Why did you tell him?

**TACKETT:**        Why did I tell him?

**SGT. MATUS:**      Why you weren't allowed to be pro-active?

**TACKETT:**        That's what I was advised.

**SGT. MATUS:**      Did you ever have any discussions with uh, Chief Housouer regarding the situation?

**TACKETT:**        Yes, I did.

**SGT. MATUS:**      And what did she advise you?

**TACKETT:**        She advise, she'd backed her Sergeant.

**SGT. MATUS:**      And what did you tell her?

**TACKETT:**        I, I told her okay, that I really can't complain with the Sergeant, she's the Chief our Chief, I mean what did you want me to say? *(laughed)*

**FIELDS:**        And, and just going to uh, briefly interrupt here, um, how is this going as the allegations of a truthfulness, I, I mean I assumed it was the conversation between Tackett and Avila,

**Ex. 24**

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-D07
### 3-01-02

and know you are talking about a conversation with others that have nothing to do....

**SGT. MATUS:**   Well my concern is uh, he was being insubordinate that the Chief had told him not to do it, also.

**FIELDS:**   Well at the beginning of the, at the beginning of the investigation, you stated that, that the allegations were untruthfulness, are you now saying that there's, there's another allegation that you refused to reveal to us at the beginning of the interview?

**SGT. MATUS:**   Well when I noticed him, I, I noticed him uh, regarding several sections of the uh, policies.

**FIELDS:**   So what is the allegations of the subordination?

**SGT. MATUS:**   Well that he was not being truthful?  But uh, not being truthful by not, not following orders.

**FIELDS:**   So what order is that he wasn't allegedly subordinated of?

**SGT. MATUS:**   Well he was told not to do certain things and he was continuing to do them, that's, that's an allegation.

**FIELDS:**   So, what order again, what, what

**SGT. MATUS:**   That he wasn't, he was told not to do any parole or probation searches.

**FIELDS:**   Okay.

**SGT. MATUS:**   We need to find out if his Chief told him the same thing,

**FIELDS:**   Okay......okay....then I guess that would be the appropriate question to ask, I mean I, I, I'd like you to

**SGT. MATUS:**   And that was what I wanted to ask.  Did she...

**FIELDS:**   Oh, go ahead.

**Ex. 24**

00865        925

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT**
**328 Applestill Road**
**El Centro, CA 92243**

**IA 2002-007**
**3-01-02**

**SGT. MATUS:**     Did she tell you not to do it?

**TACKETT:**     The discussion I had with her wasn't, it was on officer safety
and seating people in back of he seat, I don't believe we
went into discussion as far as uh, probation searches and
formal probation and then informal and uh, and parole
officers. I believe I briefly went over it and then in total
whole she agreed with her Sergeant but as far as going in to
detail I don't believe we did.

**SGT. MATUS:**     When did you have this conversation with her?

**TACKETT:**     With who?

**SGT. MATUS:**     With uh, Chief Housouer?

**TACKETT:**     I'm not sure the exact date.  I know it was uh, I'm not sure
it was a couple of days after, a couple days, couple days
after our conversation that we held that he said uh, that if I
had a problem of what he was telling me as far as uh, sitting
people in the back seat to safety, that I can discuss with the
Chief and that's when I went discussed as entire whole as in
totality of everything that was going on with Sergeant Avila,
discussed with her cause it was being applied to me and
other Deputies.

**SGT. MATUS:**     Did you ever tell Sergeant Avila or any other officers that
you felt that you being dis-discriminated, been
discriminated?

**TACKETT:**     Yes,

**SGT. MATUS:**     And who did you tell?

**TACKETT:**     Uh, numerous officers.

**SGT. MATUS:**     And what was the source of the discrimination?

**Ex. 24**

25                        00866                    926

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT**
**328 Applestill Road**
**El Centro, CA 92243**

**IA 2002-007**
**3-01-02**

| | |
|---|---|
| **FIELDS:** | Again how is this get to any of the allegation that are referenced here uh, uh I'm also looking at, at, at the memo that you put in front of us, um, noticing Deputy Tackett, referenced this uh, this, this investigations and it said the date of this incident is January 31st which we have not clarified we believe it was being the 30th so, uh you know this wouldn't put somebody on notice as to any thing outside of the particular incident that you began to put questioning on and now it's moved elsewhere. |
| **SGT. MATUS:** | Said you were assigned to uh beats A and B? |
| **TACKETT:** | I believe I was, I think. |
| **SGT. MATUS:** | Okay, is that beat in the Calipat area, is that called Calipat? |
| **TACKETT:** | It's a break of Calipat, Calipat is the dividing line. |
| **SGT. MATUS:** | Where at? |
| **TACKETT:** | Albright, I believe is Albright and uh, Albright, North and South, Albright (unintelligible) there are two of the same road, they just extend East and West. |
| **SGT. MATUS:** | So anything uh, North of Albright is what, what beat is that? |
| **TACKETT:** | North of Albright is one and two. *"Can I go to the restroom real quick"* |
| **SGT. MATUS:** | Okay, take a break, time is approximately 1119 hours. Okay, uh, time is approximately 1121 hours, continuing with the interview of Justin Tackett. Did either yourself or uh, De Leon draw a CR number for, assist outside agency, in this particular case, do you recall? |
| **TACKETT:** | I don't recall, as far as drawing them. Usually Dispatch does that, when we uh, |
| **FIELDS:** | Hold on one second. |

**Ex. 24**

927

00867

26

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**SGT. MATUS:** Okay, uh, time is approximately 1122 hours, uh we are going to pause.
Okay, uh, continuing with the interview times approximately 122 hours the interview of Justin Tackett.

**TACKETT:** I'd say usually on something like that, an agency assist, uh, dispatch automatically draws the CR for agency assist.

**SGT. MATUS:** But you didn't write a report on this, as far as you can recall or De Leon?

**TACKETT:** No, usually we don't write a report on something unless we have a violation or something.

**SGT. MATUS:** Did you guys find any narcotics, I can't remember if I asked you that or not?

**TACKETT:** Uh, you asked if I did and I said no, I didn't.

**SGT. MATUS:** Uh, did Calipat?

**TACKETT:** Uh, I'm not sure I, believe they found paraphernalia but I don't think they did anything with it, I'm not sure.

**SGT. MATUS:** Nobody was arrested?

**TACKETT:** No.

**SGT. MATUS:** Okay, did you meet with uh, Avila after the search of that house after you responded to that location?

**TACKETT:** As you mean, as in right afterwards?

**SGT. MATUS:** Mmmhmm.

**TACKETT:** No, not right after wards.

**SGT. MATUS:** Did you meet with him, on that day after the search at anytime?

**Ex. 24**

00868    928

27

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT
### 328 Applestill Road
### El Centro, CA 92243

## IA 2002-007
### 3-01-02

**TACKETT:**     During the search or after the search?

**FIELDS:**     After the search?

**TACKETT:**     Oh, after the search, um, I'm not sure if it was at the end of the shift or it was next morning but I know we had a discussion about it.

**SGT. MATUS:**     Okay, and what was that discussion about?

**TACKETT:**     That uh, he advised me that uh, that a memo was going to be written, as far as clarifying, probation, parole and even uh, informal probation, summary probation.

**SGT. MATUS:**     He was going to write that memo to you or as an order to everyone in North County, let's say?

**TACKETT:**     He just said he was going to write a memo I don't he clarified it, I don't think he said for me or anybody.

**SGT. MATUS:**     Did he write the memo, do you know?

**TACKETT:**     No, not that I know of.

**SGT. MATUS:**     I don't believe I have any further questions, uh, let me look here real quick.

**SGT. MATUS:**     Any questions?

**FIELDS:**     No, I don't believe so.

**TACKETT:**     No, I don't think so, Can we get a quick break?

**FIELDS:**     Can we get a quick break?

**SGT. MATUS:**     Okay, uh do you want to stop the interview completely or you want to say something else?

**TACKETT:**     Uh, technically, it might be else.

**Ex.24**

00869   929

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 3-01-02

**FILEDS:** Yeah, it might be something, so just give me

**SGT. MATUS:** Okay, I'm gonna uh, we're gonna take a break here for a few minutes, uh, time is approximately 1125 hours.  Okay, uh time is approximately 1126 hours, continue with the interview of Justin Tackett.

**TACKETT:** Okay you asked if there was anything I wanted to uh, add and there is, as far as when we had discussed the part about the beat and what beat I was and which I said, I believe it was A and B, but I just wanted to discussed as far as uh, normal practice within the North County division, I can't speak for the south, because I don't work for them, but usually since it's so much area that we have to cover we normally go over each others beats and sometimes we work in the same beat as far as crime wise and things like that and so it's not a different kind of practice if somebody is helping station 7 which is in A and B or somebody is helping 1 and 2 that's in the Station 8 area,  near the Brawley area, it's more or less, were you are located as close to, as close as you can get to that, to help or assist.

**SGT. MATUS:** Yeah, I understand that.  Anything else?

**TACKETT:** No, that's it.

**SGT. MATUS:** Okay, we are gonna uh, end the interview time is approximately 1127 hours.......Thank you Justin.

**TACKETT:** Thank you.

Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 3/19/02

# Ex. 24
## 00870 930

IMPERIAL COUNTY SHERIFF'S DEPARTMENT
328 Applestill Road
El Centro, CA 92243

IA 2002-007
3-01-02

**Ex. 24**

00871

931

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 01-30-02
### 871, Stn 7

**CALIPAT PD:**   Is Deputy Tackett available for, uh to assist Calipat, uh, this is Calipat PD, uh assisting me with a uh, probation search?

**DISPATCHER:**   I think he just went code 7 HT, um, uh they would of be necessary right know or you want to wait till uh?

**CALIPAT PD:**   Well, yeah, could you reach them in the air, and get an ETA when he is clear for.

**DISPATCH:**   Yeah, hold on a second.

**CALIPAT PD:**   Okay, thank you, sir.

**DISPATCH:**   Calipat, you station what, station 7?

**CALIPAT PD:**   Seven, yeah.

**DISPATCH:**   Yeah, probation what?

**CALIPAT PD:**   Uh, probation search.

**DISPATCH:**   Okay.  Station 7 unit is requesting uh, for a probation search, what would be your ETA?

**Unk Voice:**   (inaudible)

**DISPATCH:**   Okay, copy 15 to 20. Is that good with you?

**CALIPAT PD:**   Yes, sir.

**DISPATCH:**   Where at, the office?

**CALIPAT PD:**   Yeah, uh, (unintelligible) 10-19.

**DISPATCH:**   What is your, uh, radio number?

**CALIPAT PD:**   7 PAUL 2

**DISPATCH:**   7 PAUL 2

# Ex. 24

00872   932

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 01-30-02
### 871, Stn 7

**CALIPAT PD:**     Yes.

**DISPATCH:**      Okay.

**CALIPAT PD:**     Thank you, sir.

**DISPATCH:**      Bye...871, 871, EL CENTRO 2.................871, 871 EL CENTRO 2,

**871:**      Go ahead.

**DISPATCH:**      10-4, 871, station 7 unit is requesting uh, meet for a probation search, what would be your ETA,

**871:**      (unintelligible)

**DISPATCH:**      10-4, I Copy 15 to 20.  871 El Centro 2, 10-4 that's going to be with 7 Paul 2, 7 Paul 2.

**871:**      Code 4, 10-8, 10-98

**DISPATCH:**      10-4, 871.

**871:**      El Centro, 871

**DISPATCH:**      871, go ahead.

**871:**      I will be back, to assist station 7.

**DISPATCH:**      10-4.

**871:**      El Centro, 871, 10-97 the area.

**DISPATCH:**      10-4, 871.

**871:**      871, 10-98.

**DISPATCH:**      10-4, 871.

**Ex.24**

00873

933

# IMPERIAL COUNTY SHERIFF'S OFFICE
## 328 Applestill Road
## El Centro, CA 92243

### IA 2002-007
### 01-30-02
### 871, Stn 7

Typed by:
Galdy Gutierrez
Office Assistant 111
Reviewed by Sgt. Delfino O. Matus 3/15/02

**Ex. 24**

00874

· 934

3

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

### IA # 2002-007
### SUPPLEMENTAL REPORT

On November 13, 2002, at approximately 0954 hours, AIU Sgt.
Delfino O. Matus re-interviewed Sgt. Manuel Avila. The
interview was done at the request of Sheriff Harold D.
Carter. The interview was tape-recorded. Please refer to
transcription of the tape-recorded for complete details of
Sgt. Avila's interview.

The following is a summary of the tape-recorded interview.

Sgt. Avila stated that in late January 2002 he received a
telephone call from Deputy Justin Tackett who was in
Calipat. Deputy Tackett informed Sgt. Avila that he was
assisting Deputy Gabe Vela on a couple of follow-up
investigations. Sgt. Avila believes one of the cases was a
child neglect in the Westmorland area, and the other case
was a drug case in the Calipatria area. Sgt. Avila stated
that patrol officer's usually assist investigators in doing
follow-up investigations.

After talking with Deputy Tackett on telephone, Sgt. Avila
contacted Deputy Vela and asked him if Deputy Tackett was
assisting him on some of Deputy Vela's cases, and Deputy
Vela said no. Deputy Vela told Sgt. Avila that Deputy
Tackett wanted to know the conditions of probation on a
couple of individuals, because he wanted to do a probation
search.

Sgt. Avila stated that Deputy Vela told Sgt. Avila that he
(Vela) had informed Deputy Tackett to check with sergeant
before he did any probation searches.

Sgt. Avila stated after learning the information from
Deputy Vela, and approximately ten minutes after the
initial telephone call with Deputy Tackett, Sgt. Avila
telephoned Deputy Tackett, stating that Deputy Tackett was
still at the Calipat Police Department.



**Ex. 24**

1

00676 935

Sgt. Avila stated that he asked Deputy Tackett if he was doing a follow-up investigation or a probation search, and that Deputy Tackett told Sgt. Avila that he was conducting a follow-up to make sure that the individuals were complying with the conditions of their probation orders. Sgt. Avila stated he told Deputy Tackett that he didn't want him doing probation searches, stating he had previously told Deputy Tackett that he didn't want him doing probation searches.

Sgt. Avila stated that he first learned that Deputy Tackett was at the Calipat Police Department, when Deputy Tackett telephoned Sgt. Avila. Prior to that Sgt. Avila stated that he didn't know that Deputy Tackett was going to the Calipat Police Department.
/////

# ATTACHMENTS

1.  Transcription of Sgt. Manuel Avila's tape-recorded interview.
/////

# EVIDENCE LIST

1. 1-audio cassette tape with the interview of Sgt. Manuel Avila dated November 8, 2002.
/////

2

**Ex. 24**
**00677  936**

# INVESTIGATIVE SUMMARY

On February 13, 2002 the Imperial County Sheriff's
Department Administrative Investigations Unit (AIU)
received a memo from Chief Deputy Sharon Housouer
requesting an investigation regarding the conduct of North
County Patrol Deputy Justin Tackett. AIU Sgt. Delfino O.
Matus initiated an administrative investigation into Deputy
Tackett's alleged misconduct.

Sgt. Manuel Avila prepared a memo to Chief Deputy Housouer
on February 11, 2002, requesting an internal investigation
into the conduct of Deputy Tackett. The alleged misconduct
dealt with doing searches on parolees or probationers,
after being told not to do them. Deputy Tackett was
reported to be untruthful when contacted about the
searches. Deputy Tackett told Sgt. Avila that he was doing
follow-up investigations. The memo stated that the alleged
incident occurred on January 31, 2002. It was later
determined and confirmed by Deputy Tackett that the alleged
incident occurred on January 30, 2002.

During the course of the investigation Sgt. Matus
interviewed officers from the Calipatria Police Department
and the Imperial County Sheriff's Department. REFER TO THE
SUMMARIES AND TRANSCRIPTION OF THEIR INTERVIEWS FOR
DETAILS.
/////

00771   **Ex. 24**

937

# WITNESS STATEMENTS

The following summaries are from a series of witness interviews conducted by Sgt. Matus. The interviews were tape-recorded, and transcribed.

On February 19, 2002, Deputy Gabe Vela was interviewed. Deputy Vela is assigned to North County Investigations.

Deputy Vela stated on or about January 31, 2002, Deputy Tackett asked him if he wanted to assist in conducting some probation searches. Deputy Vela stated that he told him no because he was busy conducting another investigation. Deputy Tackett then asked Deputy Vela if two individuals identified as Vernoy Schultz and Tina Phillips were on probation, and Deputy Vela told Deputy Tackett that they were on summary probation.

Deputy Vela stated he gave Deputy Tackett the files on Schultz and Phillips and to make copies of them, and after making copies he returned the files to Deputy Vela.

Deputy Vela stated Deputy Tackett then asked him if he wanted to do a parole search on David Davila from the city of Westmorland. Deputy Vela stated he told him no, and told him to have Westmorland Police Department take care of their own problems. Deputy Vela also told Deputy Tackett to clear this with his sergeant, before he did anything.

Later, Deputy Vela overheard Sgt. Manuel Avila on telephone, with whom Deputy Vela believes was Deputy Tackett, indicating that he overheard a one-sided conversation. Deputy Vela stated he asked Sgt. Avila if that was Deputy Tackett he had been talking to, and Sgt. Avila stated it was. Deputy Tackett had told Sgt. Avila that he was conducting a follow-up investigation on a child endangerment case out of the Westmorland area. Deputy Vela stated he told Sgt. Avila that he didn't have a follow-up on that type of case in Westmorland, and if he did, he would follow it up himself.

Deputy Vela stated later that same day at approximately 1230 hours, he overheard the sheriff's communication center contacting Deputy Tackett. The sheriff's communication center informed Deputy Tackett that Calipatria Police Department was requesting his assistance in conducting a

6

**Ex. 24**

**00772**    938

probation search. Deputy Vela stated that Deputy Tackett responded by saying that his ETA was twenty minutes. Additionally, Deputy Vela stated that the city of Calipatria was not in Deputy Tackett's assigned area, on that particular day.

Deputy Vela stated he later contacted Deputy Manuel DeLeon by telephone, and that Deputy DeLeon informed him that they had done a probation search at the Schultz/Phillips residence in Calipatria.

Deputy Vela stated that Sgt. Avila had previously told Deputy Tackett that he (Avila) didn't want Deputy Tackett conducting probation searches.

Deputy Vela stated he has attempted to mentor Deputy Tackett in his report writing skills, because some of his reports lacked the elements or the proper information to attain successful prosecutions.

In addition, Deputy Vela was concerned with Deputy Tackett's veracity. He felt that Deputy Tackett was perhaps being less than truthful, at which point Deputy Vela stated that on particular case, in which he believed the defendant was a Robert Isaacs, that they had discussed it after going over the report and it lacked some information. However, later Deputy Vela reviewed the same case report, and the information that was not there earlier, was now included. Deputy Vela stated he spoke with Deputy Tackett about that the information, and that Deputy Tackett told him that he had spoke with the suspect and had obtained the information.

Deputy Vela believes that some of Deputy Tackett's problems are from a result of a lack of direct or immediate supervision. Stating that Deputy Tackett lacks the patrol experience, indicating that he has approximately one year of patrol experience, and at times he is making questionable decisions, when in fact a supervisor should step in and assist in making some of those decisions.

On February 19, 2002, at approximately 1031 hours, Sgt. Manuel Avila was interviewed. Sgt. Avila is assigned to North County Operations.

Sgt. Avila addressed a memo to Chief Deputy Sharon Housouer requesting an investigation regarding an incident that

7

**Ex.24**

939

occurred on January 31, 2002, that involved Deputy
Tackett's veracity.

Sgt. Avila reported that on January 31, 2002, at
approximately 1100 hours, he received a telephone call from
Deputy Tackett. Deputy Tackett informed Sgt. Avila that he
was going to assist Deputy Vela on a couple of cases,
because Deputy Vela was engaged in doing other
investigations. Sgt. Avila asked Deputy Tackett to identify
the cases, which he did, identifying them as a child
neglect case from Westmorland, and a drug case from
Calipatria.

After speaking with Deputy Tackett, Sgt. Avila met with
Deputy Vela and asked him what cases Deputy Tackett was
following up, and that Deputy Vela informed him that he
didn't request any assistance in doing follow up
investigations. Deputy Vela stated that earlier in the
morning Deputy Tackett approached him, requesting a copy of
the probation conditions on two individuals identified as
Tina Phillips and Vernon Schultz, that Deputy Tackett
wanted to search.

Sgt. Avila stated he then contacted Deputy Tackett and
asked him to identify the type of follow-up he was doing,
if he was doing follow-ups or probation searches. Deputy
Tackett told Sgt. Avila that he wasn't doing probation
searches; he was doing follow-ups on child neglect and a
drug case. Sgt. Avila stated that he asked Deputy Tackett
if the cases had been adjudicated, and Deputy Tackett
stated that they were. Deputy Tackett informed Sgt. Avila
that he was following up in making sure that the subjects
were complying with the conditions of their probation.

Sgt. Avila stated that he had previously told Deputy
Tackett, during the latter part of 2001, not to be doing
parole or probation searches, that his task was to patrol
and answer calls for service. However, if he received
information regarding a probationer or parolee, he was to
notify the appropriate agency.

Sgt. Avila stated that during the early part of January
2002, Deputy Tackett came to him, and told Sgt. Avila that
he was going to do a parole search on an individual
identified as Antonio Davila. Sgt. Avila told Deputy
Tackett that he wasn't going to do the parole search, and
that Deputy Tackett informed Sgt. Avila, that he had the

8

parole agent's permission to search Davila. Deputy Tackett
wanted to make sure that Davila was complying with the
conditions of his parole.

Sgt. Avila reminded Deputy Tackett of the last conversation
they had, where Deputy Tackett was told by Sgt. Avila that
he not be doing parole or probation searches. Once more
reiterating the issue.

Sgt. Avila stated on January 31, 2002, he overheard a
sheriff's radio transmission. The Calipatria Police
Department was requesting Deputy Tackett to assist on a
probation search. Sgt. Avila stated about an hour later he
proceeded to the Calipatria Police Department, and met with
Chief Reggie Gomez.

Sgt. Avila stated that Chief Gomez had told him that Deputy
Tackett had been there earlier, and that Deputy Tackett was
there to do a probation search in their city. Chief Gomez
also told him while Deputy Tackett was at the police
department, he heard a one sided conversation that Deputy
Tackett was having on the telephone with a sergeant, not
knowing the contents of the conversation.
Chief Gomez told Sgt. Avila that Deputy Tackett wanted the
police department's assistance in doing a probation search,
indicating that Chief Gomez didn't recall the name of
person(s) that was going to be searched.

Sgt. Avila advised that he informed Chief Deputy Housouer
about the incident, and that he was going to pursue the
issue of untruthfulness further by requesting an
investigation.

On February 27, 2002 at approximately 1506 hours, Deputy
Manuel DeLeon was interviewed. Deputy DeLeon is assigned to
North County Patrol.

Deputy DeLeon stated that on or about January 31, 2002,
between the hours of 0745 and 0830 hours, Deputy Tackett
had requested his assistance in doing a probation search on
two individuals identified as David Schultz and Tina Marie
Phillips, indicating that Deputy Tackett had their summary
probation forms. Deputy DeLeon stated that Deputy Tackett
had information that the pair was dealing in narcotics.
They scheduled to meet at the Calipatria Police Department
at approximately 1030-1100 hours.

**00775**   **Ex. 24**

941

Deputy DeLeon stated when he arrived at the Calipatria
Police Department he met with Deputy Tackett, who was
upset, informing Deputy DeLeon that the department didn't
want him to be proactive, because the department didn't
want him to do the probation search.

Deputy DeLeon stated that on that particular day he was
assigned to beat one and two, and that Deputy Tackett was
assigned to beat A and B.

Deputy DeLeon stated he did not know initially if Deputy
Tackett had permission to do the probation search from a
North County supervisor, however, later it was apparent
that he didn't have permission, because he was upset,
stating that the department didn't want him to be
proactive, disallowing him in conducting probation
searches. Deputy DeLeon believes that Deputy Tackett gave
copies of the probation summaries to Chief Gomez.

Deputy DeLeon stated while they were at the police
department at approximately 1030 hours, he overheard a
partial conversation Deputy Tackett was having with Chief
Gomez. Deputy Tackett had informed Chief Gomez that the
department didn't want him to be proactive.

Deputy DeLeon stated that they left the police department
at approximately 1100 hours, and went to lunch in Brawley,
California. While having lunch shortly after 1200 hours,
Deputy Tackett was contacted by the sheriff's communication
center. The communication center advised him that the
Calipatria Police Department was requesting a cover unit
for a probation search, and to respond to the police
department.

Deputy Tackett told Deputy DeLeon that he was going to
Calipatria to do the search, and if Deputy DeLeon was going
to assist. Deputy DeLeon stated he told Deputy Tackett that
he had to take care of other business first, before he
responded.

Deputy DeLeon stated he eventually responded to Calipatria,
and met with Calipatria Police Officer Granado and Deputy
Tackett. The location for the probation search was the
Schultz and Phillips residence. A probation search was
conducted.

**00776**

**Ex.24**

942

On February 28, 2002 at approximately 1006 hours,
Calipatria Police Chief Reggie Gomez was interviewed.

Chief Gomez stated that he was not sure of the date, but
that Deputy Tackett came into the Calipatria Police
Department at approximately 1000 hours, with a sheet of
paper of some individuals that were on probation who lived
in the city of Calipatria. Chief Gomez stated that he
recalled the last name of one of the individuals (Schultz),
but not the other individual.

Chief Gomez stated that Deputy Tackett asked him if he was
familiar with the individuals on the sheet, and that Chief
Gomez told him he was not familiar with them, indicating
that Deputy Tackett told him that the individuals were on
probation, and living in the city.

Chief Gomez stated that Deputy Tackett had mentioned that
he wanted to do a probation search, but he couldn't do it,
indicating that he (Tackett) had been instructed not to do
it by his supervisor, Sgt. Avila. They wanted him to patrol
the area patrolled by the sheriff's department, and to be
free for sheriff's department calls for service, and to
respond to the cities when requested. Chief Gomez stated
that Deputy Tackett stressed that his supervisor didn't
want him initiating calls in the cities.

Chief Gomez believes that a probation search was conducted,
but he was off duty when it was conducted.

Chief Gomez stated he later spoke with Sgt. Avila regarding
Deputy Tackett and the probation search issue.

On February 28, 2002 at approximately 1522 hours, Officer
Eric Granado was interviewed by telephone. Officer Granado
was previously employed by the Calipatria Police
Department, and is now employed by the Imperial Police
Department.

Officer Granado states he recalls that close to January 31,
2002 at approximately 1030-1100 hours, Deputy Tackett came
to the Calipatria Police Department and informed him that
he had information that Schultz and the lady, who were
presently on probation, and were known to have weapons and
drugs, and that they currently had weapons in their
possession, and if Officer Granado was interested in doing

11                          **00777**   **Ex. 24**

943

a probation search, and that it was likely that weapons and
drugs could be recovered.

Officer Granado stated that Deputy Tackett gave him a copy
of the probation forms that showed their probation status.

Officer Granado later in the day he requested assistance
from the sheriff's department on the probation search,
because he was a solo officer, and needed back-up. Officer
Granado stated that Deputies DeLeon and Tackett responded.

Officer Granado stated that Deputy Tackett had told him
earlier, that they didn't want the deputies doing work in
the cities, that they wanted them to be out in the county
doing their work.

On March 1, 2002 at approximately 1047 hours, Deputy Justin
Tackett was interviewed. Present was his attorney Brad
Fields from the attorney office of Bobbitt and Pinckard.
Deputy Tackett is assigned to North County Patrol.

Deputy Tackett stated he has been employed by the sheriff's
department for approximately two years and eight months.
And has been a deputy sheriff for approximately one year
and ten months.

Deputy Tackett stated in January he had a conversation with
Sgt. Manuel Avila regarding parole/probation searches,
stating that Sgt. Avila didn't want him doing parole
searches, because he was not a parole officer. Sgt. Avila
further advised him if there was a problem with the parolee
the parole officer would have to take care of it.

On January 30th, in the morning hours, Deputy Tackett spoke
with Deputy Vela and DeLeon, and told them that he wanted
to verify that two individuals identified as Schultz and
Phillips were on summary probation and also, if they were
in compliance with the conditions of their probation.

Deputy Tackett stated that approximately twenty minutes
prior to going to the Calipatria Police Department, he
spoke with Sgt. Avila by telephone. Sgt. Avila reiterated
that he didn't want Deputy Tackett checking probationers
and ascertaining that they were in compliance with the
conditions of their probation.

00778 **Ex.24**

944

Deputy Tackett stated on the 30th of January he went to the
Calipatria Police Department sometime before the lunch
hour, where he met with Chief Gomez and Officer Granado.
Deputy DeLeon arrived later. Deputy Tackett had gone to the
police department to provide the police department with the
probation information on Schultz and Phillips.

On January 30th, in the afternoon hours, Calipatria Police
Department called for assistance, Deputies Tackett and
DeLeon responded. Deputy Tackett stated that they assisted
Officer Granado in doing a search of the Schultz/Phillips
residence, and to make sure that they were in compliance
with their probation conditions.

Deputy Tackett stated that he or Deputy DeLeon did not
notify Sgt. Avila of the traffic in Calipatria, indicating
that Sgt. Avila knew that they were assisting Calipatria
Police Department. Deputy Tackett stated that Sgt. Avila
did not ask what was going on, and if he wanted to know he
would have responded or would have asked what was going on.

Deputy Tackett stated he later met with Sgt. Avila,
indicating that it was either the same day of the search in
Calipatria or the following morning, and Sgt. Avila
informed him that he was going to address the
probation/parole issue. Deputy Tackett stated that Sgt.
Avila was not clear if he was going to address the memo to
all North County personnel, or just to him.

Sgt. Matus reviewed the telephone conversation between
Calipatria Police and the sheriff's department
communication center that occurred on January 30th. Officer
Granado from Calipatria Police requested the assistance of
Deputy Tackett in doing a probation search. Deputy Tackett
who was at lunch indicated that his estimated time of
arrival was approximately fifteen to twenty minutes.
/////

**00779**

**Ex. 24**

13

945

# IMPERIAL COUNTY SHERIFF'S DEPARTMENT
## ADMINISTRATIVE INVESTIGATIONS UNIT

## IA # 2002-007
### SUPPLEMENTAL REPORT

On November 13, 2002, at approximately 0954 hours, AIU Sgt. Delfino O. Matus re-interviewed Sgt. Manuel Avila. The interview was done at the request of Sheriff Harold D. Carter. The interview was tape-recorded. Please refer to transcription of the tape-recorded for complete details of Sgt. Avila's interview.

The following is a summary of the tape-recorded interview.

Sgt. Avila stated that in late January 2002 he received a telephone call from Deputy Justin Tackett who was in Calipat. Deputy Tackett informed Sgt. Avila that he was assisting Deputy Gabe Vela on a couple of follow-up investigations. Sgt. Avila believes one of the cases was a child neglect in the Westmorland area, and the other case was a drug case in the Calipatria area. Sgt. Avila stated that patrol officer's usually assist investigators in doing follow-up investigations.

After talking with Deputy Tackett on telephone, Sgt. Avila contacted Deputy Vela and asked him if Deputy Tackett was assisting him on some of Deputy Vela's cases, and Deputy Vela said no. Deputy Vela told Sgt. Avila that Deputy Tackett wanted to know the conditions of probation on a couple of individuals, because he wanted to do a probation search.

Sgt. Avila stated that Deputy Vela told Sgt. Avila that he (Vela) had informed Deputy Tackett to check with sergeant before he did any probation searches.

Sgt. Avila stated after learning the information from Deputy Vela, and approximately ten minutes after the initial telephone call with Deputy Tackett, Sgt. Avila telephoned Deputy Tackett, stating that Deputy Tackett was still at the Calipat Police Department.



**Ex. 24**

00676 946

Sgt. Avila stated that he asked Deputy Tackett if he was
doing a follow-up investigation or a probation search, and
that Deputy Tackett told Sgt. Avila that he was conducting
a follow-up to make sure that the individuals were
complying with the conditions of their probation orders.
Sgt. Avila stated he told Deputy Tackett that he didn't
want him doing probation searches, stating he had
previously told Deputy Tackett that he didn't want him
doing probation searches.

Sgt. Avila stated that he first learned that Deputy Tackett
was at the Calipat Police Department, when Deputy Tackett
telephoned Sgt. Avila. Prior to that Sgt. Avila stated that
he didn't know that Deputy Tackett was going to the Calipat
Police Department.
/////

# ATTACHMENTS

1.   Transcription of Sgt. Manuel Avila's tape-recorded
     interview.
/////

# EVIDENCE LIST

1. 1-audio cassette tape with the interview of Sgt.
   Manuel Avila dated November 8, 2002.
/////

**Ex. 24**

00677 947

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:** Okay uh today's date is November 13th the year is 2002, time is approximately 0954 hours. Uh this is an interview with Sergeant Manuel Avila, uh Sergeant Avila is assigned to North County operations and presently is the Administrative Sergeant in North County. Okay this is in regards to IA number 2002-007. Manuel I've been instructed by uh Sheriff Carter to uh to interview you regarding some issues that came up during a Skelly Hearing this past week uh and what I want to do before we get into really the main questioning of the of the uh of the concern that the Sheriff's has uh I want to give a little synopsis or summary of what, of what occurred. Uh Manuel you submitted a memo I believe it was on February 11, 2002, to uh Chief House, Housouer, regarding uh Deputy Justin Tackett, can you explain to me what that memo was about?

**AVILA:** It was in regards to uh Probation Search that Deputy Tackett was doing and I had instructed him not to be doing Probation or Parole searches.

**SGT. MATUS:** What exactly did you instruct him to do?

**AVILA:** About Probation Searches?

**SGT. MATUS:** Was there anything uh that you told, told him that contact another Agency or contact Parole or Probation or?

**AVILA:** That's correct, I told him that if he had information about a certain Parolee or, or Probationer, Probationer that he should contact that person or that subjects Probation or Parole Agent. That his main function was prob uh Patrol.

**SGT. MATUS:** What about Summary Probation?

**AVILA:** I don't think we ever discussed Summary Probation.

**Ex. 24**

1

Imperial County Sheriff's Department
*Administrative Investigations Unit*
· 328 Applestill Road
El Centro, CA 92243

## IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:**   Okay.

**AVILA:**   It was Probation in general.

**SGT. MATUS:**   Okay.

**AVILA:**   So if, if it was Summary Probation it was still a Probation Search uh it would still be included but specifically for Probation or Informal Probation that, no or Summary Probation.  It was Probation period or Parole.

**SGT. MATUS:**   So when you mention Probation period, you taken into consideration Summary Probation, also?

**AVILA:**   I do, cause its still Probation Search.

**SGT. MATUS:**   Okay.

**AVILA:**   Whether it's Formal, Informal or Summary it's still a Probation Search.

**SGT. MATUS:**   Okay.  On the day in question in uh January of 2002, I think it was late January uh an issue came up where uh he wanted to do a Probation Search?

**AVILA:**   He didn't relay that to me.

**SGT. MATUS:**   Okay can you tell me anything?  Tell me about that particular day, how this came about, how you learned about it?

**AVILA:**   He gave me uh, I believe he gave me a telephone, he called me on the phone and he says that he was going to help out uh Investigator Vela on a couple of cases some follow-ups.  And then he let's say, I mean it's been almost a year ago, okay he calls me and tells me he's going to help Investigator Vela because Vela can't do a couple of follow ups in his cases.  I believe one of them was a child neglect and the other one was an H

2

00679

**Ex. 24**
949

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

|  |  |
|---|---|
|  | & S, uh the neglect was in Westmoreland and the H & S was in Calipat. |
| **SGT. MATUS:** | Okay do you recall the names of the people involved in this, the defendants? |
| **AVILA:** | Not, |
| **SGT. MATUS:** | Did he, did he identify anybody? |
| **AVILA:** | No, he didn't tell me who they where. |
| **SGT. MATUS:** | Okay.  Do you recall what time they called? |
| **AVILA:** | It was in the morning sometime. |
| **SGT. MATUS:** | Okay do you recall what shift he was working that day? |
| **AVILA:** | He was day shift. |
| **SGT. MATUS:** | And which is? |
| **AVILA:** | From 8 to 4. |
| **SGT. MATUS:** | Okay so was it sometime right after he started work that day at 8 o'clock? |
| **AVILA:** | Uh I don't recall, I know it was early morning.  Maybe 9, 10. |
| **SGT. MATUS:** | Okay so when he called you, where did he call you at? |
| **AVILA:** | He called me at the Patrol uh Sergeant's uh Office. |
| **SGT. MATUS:** | Here in Brawley? |
| **AVILA:** | Yes. |

## Ex. 24

00680      950

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:**   And he said he was assisting Deputy Vela on some follow-ups?

**AVILA:**   Yes.

**SGT. MATUS:**   Okay.

**AVILA:**   That Vela did not have time to do a couple of follow-ups and he was helping Vela.

**SGT. MATUS:**   Okay and what was your, what where your instructions when he told you that?

**AVILA:**   I told him go ahead, cause we, we usually help out, well in Patrol Officers uh assist the Investigators in, in follow ups that uh not major crimes but something that Patrol can do, which would not tie up the Investigator.

**SGT. MATUS:**   Okay. So what happened after that? Did you learned something else or?

**AVILA:**   Yes, I hanged up the phone and I walked next door and I talked to Vela, Vela was, Investigator Vela was there.

**SGT. MATUS:**   At the same Office where you where at?

**AVILA:**   No, it's next door. Uh our office is uh where, well the Brawley Station is uh when you enter it's the Secretary, then the first office on the left is the Patrol and then next to the Patrol Office is the uh Investigator's uh Office's, Office and then next to that is the uh Chief uh, Chief Housouer's Office.

**SGT. MATUS:**   Okay so you were at the Brawley Sub?

**AVILA:**   Yes, everything is all, in the same, part of the building, I guess.

00681   **Ex. 24**

4

951

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applesill Road
El Centro, CA 92243

**IA # 2002-007**
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:**   Okay so when you walked over to Vela, what happened?

**AVILA:**   I asked him if he was doing some uh follow up for him? And he said no, that he, Tackett came in and wanted a copies of those two, two person's Probation uh paper's or conditions.

**SGT. MATUS:**   Did Vela say why he wanted those uh the conditions?

**AVILA:**   Uh, uh I believe he said that he was going to go search of search him, do a Probation Search or something like that and then Vela, I remember that Vela told me, you better check with the Sergeant before you do the Probation Searches.

**SGT. MATUS:**   He told you that, Vela told you that, that he told him?

**AVILA:**   Yes, clear it or check or something to the effect that either contact me, before doing the Probation Searches.

**SGT. MATUS:**   And did he say where the Probation Search where going to be at? Let's say?

**AVILA:**   Not the specific location but the cities, one was in Westmoreland and one was in Calipat, and he did tell me that Westmoreland one, was a child neglect and the Westmoreland, uh excuse me, the Calipat was the uh H & S out of a case that, that he uh, I guess came across or generated.

**SGT. MATUS:**   Who's that?

**AVILA:**   Tackett.

**SGT. MATUS:**   Who is he?

**AVILA:**   Tackett.

00682

**Ex. 24**

952

5

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007**
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:**   Tackett?

**AVILA:**   Hmm.

**SGT. MATUS:**   Okay.  What about the names of the defendant's, do you remember them?

**AVILA:**   I think there's a Herchel or, not without looking at the reports that not right on top, top of my head.

**SGT. MATUS:**   Okay so after you learned that information from Vela what did you do?

**AVILA:**   I called him back, and I think he was in he was still at the Calipat Station, so I called him back and then I asked him, are you following up or are you doing Probation Searches?

**SGT. MATUS:**   Okay when he called you the first time, he was in Calipat?

**AVILA:**   Yes.

**SGT. MATUS:**   So when you called him, okay he called you initially, then you returned his call after he learned the information?

**AVILA:**   Yes.

**SGT. MATUS:**   And he was still in Calipat, you said?

**AVILA:**   He was still in Calipat Police Station.

**SGT. MATUS:**   Okay what was the time between the first call and the second time?

**AVILA:**   10 minutes.

**SGT. MATUS:**   10 minutes, okay when you called him, the second time, what did you tell him?

6

00683

**Ex. 24**
953

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

| | |
|---|---|
| **AVILA:** | Well I asked him first are you doing a Probation, excuse me, are you doing a follow up or you're doing a Probation Search? |
| **SGT. MATUS:** | Hmm. |
| **AVILA:** | And he said well I'm doing a follow up to make sure that there complying with their Probation orders so then I told him, that's a probation search and I've told you not to be doing that, so don't do it. |
| **SGT. MATUS:** | Okay. When you told him that, what did he say? |
| **AVILA:** | He says okay. |
| **SGT. MATUS:** | Did you tell him anything else? |
| **AVILA:** | Hmm, I don't recall if I did or not. |
| **SGT. MATUS:** | Do you recall, how long, how long that conversation lasted, the telephone call? |
| **AVILA:** | Maybe about a minute. |
| **SGT. MATUS:** | What about the first one? |
| **AVILA:** | About the same when he told me about that he was helping uh Vela with the follow up. |
| **SGT. MATUS:** | Okay. Did you know he was going to Calipat PD? |
| **AVILA:** | No. |
| **SGT. MATUS:** | So when did you learn that he was in Calipat PD? |
| **AVILA:** | When he called me. |
| **SGT. MATUS:** | When he called you the first time? |
| **AVILA:** | Yes. |

7

00684

**Ex. 24**

954

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007
11/08/02

*Interview with Sergeant M. Avila*

**SGT. MATUS:**    Did you tell him anything then?

**AVILA:**    I said okay, cause I thought that he was doing some follow up it was not it was not until I talked to Vela that I found out that he was dong Probation Search.

**SGT. MATUS:**    So when uh, so when you called him back, the second time, did you ever tell him anything about what to do with the information? That he had?

**AVILA:**    I can't be very specific, I don't recall if I said anything but, but I definitely told him he, I either told him, turn it over to the Probation Officer, don't do it, or turn it over to the Probation Officer it's, it's something like that but I'm not, I can't remember specifically what I told him.

**SGT. MATUS:**    Okay.

**AVILA:**    Other than, than don't do the searches.

**SGT. MATUS:**    Right. So after uh, after he left or after you hung up, with him, let's say, do you know what happened next? Regarding this probation issue?

**AVILA:**    The next that I hear, that I hear about this probation is, search, is about maybe 11, 12 o'clock, somewhere around there where I, I overhear uh our Dispatch uh saying that Calipat PD wanted assistance in, in a Probation Search and they specifically requested uh Tackett.

**SGT. MATUS:**    Do you know if he was working, that was his particular beat? That particular day? Was it near his beat, or do you recall?

**AVILA:**    I don't recall, but Calipat, Westmoreland, Calipat, is basically in 3-A and 3-B, AND Calipat, would, would be like a neutral A and 1 and 2 could well 3-A could uh it's almost like an neutral ground it's both,

8

**Ex. 24**
955

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:** Is a let's put it like in a line or something of, of,

**AVILA:** That's right, Calipat is a dividing line so if A and B is tied up, 1 and 2 will take it or the other way around.

**SGT. MATUS:** So when uh, so when you overheard it from uh Dispatch on your, what was their request?

**AVILA:** They were, they were going to do a probation search and they were requesting Tackett to help them out.

**SGT. MATUS:** Did they request him specifically or did he just requested a deputy (unintelligible)?

**AVILA:** No they requested Tackett.

**SGT. MATUS:** Okay so did you know if he responded? For the request?

**AVILA:** I don't recall it if he responded or not but then I went back to the office and then later I went to the, to Calipat to the Police Station.

**SGT. MATUS:** Okay do you recall how much later, about what time?

**AVILA:** It was about an hour, an hour in a half later.

**SGT. MATUS:** Was it, do you know if it was before lunch or after lunch?

**AVILA:** I think it was after.

**SGT. MATUS:** So when you responded to Calipat, who did you meet with?

**AVILA:** Chief uh Gomez.

**SGT. MATUS:** There at the PD?

**AVILA:** Yes.

00686

**00686**

**Ex. 24**
956

9

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007**
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:**   And what was that about?

**AVILA:**   I told him, well I, I asked him, if uh Deputy Tackett had been there and if, if he uh requested their assistance in probation searches?  And the Chief said yeah he came in here with some paper work that he wanted to go do a probation search.

**SGT. MATUS:**   Okay after he'd been instructed not to do them?

**AVILA:**   Nnn, I think that's when he called me, at the, in the morning.

**SGT. MATUS:**   The first time?

**AVILA:**   Yes.

**SGT. MATUS:**   Okay but prior to that, had he been instructed not to do probation searches?

**AVILA:**   Oh yes, definitely.  A couple of times, at least.

**SGT. MATUS:**   So after you talked to uh Gomez and found out that he was there to do a probation search, what did you tell Gomez?

**AVILA:**   I asked him if they had gone and done the probation search and I, I, I'm not exactly sure what he told me but I don't think that, that the probation search was done.  He did tell me he over heard him on the telephone saying something about yes, Sergeant, yes Sergeant, and then he hangs up and then uh then he leaves.

**SGT. MATUS:**   Do you think the conversation that you had, over heard Tackett was doing was the second conversation that he had with you?

**AVILA:**   Yes.

**Ex. 24**

10

00687      957

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007**
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:**    Did he say how much later he left after he talked to you?

**AVILA:**    No he didn't.

**SGT. MATUS:**    So uh to be clear this, when you learned that he was in Calipat to do a probation search, when was that?

**AVILA:**    When he called me, yeah, well let me, yeah I knew he was going to Westmoreland and Calipat for a follow up, then when he calls me, well he calls me and tells me this and then I checked with Vela and that's when I found out that he was doing Probation Searches.

**SGT. MATUS:**    Okay so when you first learned about this, you didn't know he was doing a Probation Search?

**AVILA:**    Correct.

**SGT. MATUS:**    You learned that he was doing some sort of follow up for Vela?

**AVILA:**    Yes, a couple of cases.

**SGT. MATUS:**    So uh so when you talked to Vela, you re-contacted uh Tackett, is that correct?

**AVILA:**    Yes I did.

**SGT. MATUS:**    And that's when you learned that he was doing probation searches?

**AVILA:**    When Vela told me.

**SGT. MATUS:**    Okay. But you confirmed it by talking to uh Tackett?

**AVILA:**    Yes, but he didn't say the he wasn't doing probation search.

11                                    **00688**

**Ex. 24**
958

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:** What did he say?

**AVILA:** He said he was doing uh, he was following up to make sure that their, not that they are following their probation orders.

**SGT. MATUS:** Making sure that they were complying with what ever they were ordered to do?

**AVILA:** Yes.

**SGT. MATUS:** And did he identify what the compliance was that they had to be in?

**AVILA:** No, I told him that's a probation search and I told you not to be doing this, so don't do it.

**SGT. MATUS:** When uh, an Agency request's someone to assist them, uh like Calipat in this case they requested assistance and or back up assistance to do a probation search, normally do we assist an Agency like that?

**AVILA:** Yes we do.

**SGT. MATUS:** Okay, so was it unusual for Tackett to respond to Calipat, to assist them in the search?

**AVILA:** No not really because there's only two, two officers for the North end, so uh it would not be unusual.

**SGT. MATUS:** Okay. So Calipat is to say was in his beat or close to his beat it wouldn't be unusual for him to respond?

**AVILA:** Correct.

**SGT. MATUS:** Okay did you find anything unusual about that request?

**AVILA:** Uh it crossed my mind that, that, that maybe with the information that he turned over to Calipat, that they

12

00689

**Ex. 24**

959

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007
### 11/08/02

*Interview with Sergeant M. Avila*

well I'm just speculating that he might have told them call for me, but that's just speculation.

**SGT. MATUS:** After he responded to assist Calipat, did you ever talk to him regarding that issue?

**AVILA:** No.

**SGT. MATUS:** Was there a reason why?

**AVILA:** I didn't uh, I didn't want to talk to him, and I didn't I would have preferred if somebody else handle it.

**SGT. MATUS:** Was there a reason for, for that?

**AVILA:** Well it might have been because I'm not only, I'm not only his, I wasn't only his Supervisor but I'm also with the, the Association and, and that would be kind of interviewing when I knew that he'd hidden something had something wrong happened and then me going over there and trying to illicit more information from him.

**SGT. MATUS:** Right.

**AVILA:** So I would prefer if somebody different uh to handle. Uh don't know if I'm making myself kind a clear on that.

**SGT. MATUS:** Is that when you generated this memo?

**AVILA:** Uh I did it later not, not the same day.

**SGT. MATUS:** Okay, when he responded to Calipat, did any other officer respond that you know of?

**AVILA:** Not that I know of?

**SGT. MATUS:** So this particular order um on Probation Searches, has that been told to everyone that, that worked,

**Ex. 24**

13            00690        960

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

---

### IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

|  |  |
|---|---|
| | works for you? That they wouldn't be doing probation searches or was it done specifically aimed to specific Deputy Tackett? |
| **AVILA:** | I'm trying to think whether I did make a memo and indicating that no one will be conducting parole or probation searches but I'm not positive on that. |
| **SGT. MATUS:** | Okay. |
| **AVILA:** | But I had not had any, many incident's when somebody else is doing probation search. |
| **SGT. MATUS:** | Have you approached other Deputies and told then you know what you're feeling were about probation searches and as to what their duties where mainly? |
| **AVILA:** | I don't recall if I did. |
| **SGT. MATUS:** | But you've told Deputy Tackett is that correct? |
| **AVILA:** | Tackett, yes. |
| **SGT. MATUS:** | Is there a reason why? |
| **AVILA:** | Well his primary function is Patrol and, and if he goes and does Probation Searches he ties himself up and were short handed as it is, there's only two officers for the whole North County that's about 450 square miles. There's only two Deputies, if he ties himself down, he's not able to respond to any of the calls for service and that is my main concern that him getting tied up in the narcotics or whatever he gets involved in, it takes hours and this takes away from his patrol duties and that's what I kept on trying to tell him to turn over whatever information he has to the proper personnel, the proper people, so that hey have the time, to do whatever he was going to do, so that he can return to his patrol functions or stay with his patrol functions. |

**Ex. 24**

14                          00691                          961

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007
11/08/02

Interview with Sergeant M. Avila

**SGT. MATUS:**    Uh Manuel I don't think I have any further questions is there anything else maybe you'd like to add or maybe something, clear up or?

**AVILA:**    I'm not positive but I think but I think he was uh that Calipat wasn't, was not his actual beat that day and I'm not positive of that I would have to check on that but.

**SGT. MATUS:**    Okay I don't like I said I don't have any further questions uh I want to end the interview time is approximately 1015 hours, thank you.

Typed by:
Galdy Gutierrez
Office Assistant III
Reviewed by Sgt. Delfino O. Matus November 20, 2002

00692 **Ex. 24**
962

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:** For the record it's approximately uh 1:30 on uh November the uh 8th 2002. Uh present in the room is myself, uh Sheriff Harold Carter, uh Deputy Tackett, and his legal representative Fields. Uh this is a meeting for uh Deputy Tackett's response to me uh for any mitigating circumstances that he may have to mitigate a recommendation for termination that was delivered to him on October the 11th of 2002, uh citing unprofessional conduct, dishonesty, uh refuse to obey reasonable regulations as prepared by the Board by the Department head insubordination uh conduct unbecoming and uh testimony by, so are we ready to proceed here's your chance to uh explain to me any mitigating circumstances that you may have that cause me to overturn this recommendation for termination.

**FIELDS:** Thank you Sheriff um I think we've been through these before but just for the benefit of the record and for, for Justin um, we'll both be sort of presenting our, our side uh here,

**SHERIFF CARTER:** That's fine.

**FIELDS:** And um going back and forth and if at any point you have any questions of either of us or choose to wait till the end um, whatever, it's, it's certainly your, your call on that, whatever you desire, um, I think from the outset it, it's important to set the stage for um, this Deputy relative to the uh sort the, the avalanche of discipline that has been uh falling on him of late as you I think you're aware there are two other suspensions that are, are already been uh approved and are now awaiting hearing for, before the EAB um there is uh another suspension that I think probably talk about today um terms of uh another allegation

1

00693

**Ex. 24**
963

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

misconduct against, against Deputy Tackett, but I think it's important to set the stage that all of this has occurred while under the supervision of Sergeant Avila and under the, uh, under Chief Deputy Housouer, um his uh supervision prior to, this, this, this, supervision arrangement, and the supervision since he's been transferred uh up until he was put up on Administrative leave. Um has a very different view of him has a view of him as a good hard working honest Deputy and for some reason there is a disconnect with uh with these individuals and I don't want to stress it too much other than to set the stage for um the fact that there just apparent, disagreements and apparent problems uh with respect to that which I, I think have, have, you know have cause um a lot of this and really are, are at the crux of it. With respect to the termination it is based on essentially one incident, and I'm confident that once we explain our side of that incident to you, you will see that essentially um Deputy Tackett really didn't do anything wrong, he was doing as he was told by Sergeant Avila and didn't disobey his direct order with respect to the direction that Sergeant Avila did give him, with respect to doing the searches and, and initiating the search um and um essentially you know with respect to it you know he just really didn't do anything wrong um again there have been disagreements with him and, and going into, to this um to this incident um had you been given direction by Sergeant Avila not to do uh certain types of uh work?

**TACKETT:**          Yes.

**FIELDS:**          And what was that direction?

**TACKETT:**          Um, one of the directions on that type of work was searches, uh initiating parole and probation

2

**Ex. 24**
964

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestili Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | searches um, and he also later gave me a direction of no longer sitting uh people in the back seat, where there's, |
| **FIELDS:** | Okay wait, in, in terms of this? |
| **TACKETT:** | Right, |
| **FIELDS:** | No parole or probationary search? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Now to the best of your knowledge, how many other people has Sergeant Avila uh supervise while he was supervising you? In terms of you know he was (unintelligible)? |
| **TACKETT:** | The arrest in the county, right. |
| **FIELDS:** | Okay and how many, how many Deputies would that specifically be, I mean roughly? |
| **TACKETT:** | On a shift or? For? |
| **FIELDS:** | Just how many people was he the direct Supervisor for? If you know? |
| **TACKETT:** | I wouldn't say exact, approximately I would say about of and on 10 different Deputies. |
| **FIELDS:** | Okay. |
| **TACKETT:** | Somewhere around there. |
| **FIELDS:** | And to the best of your knowledge have other Deputies have been given that instructions? |
| **TACKETT:** | No. |
| **FIELDS:** | So it was just you, as far as you know? |

3

00695 **Ex. 24**
965

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay so you're not suppose to initiate any searches or uh any probationary searches or, or any anything like that is that correct? |
| **TACKETT:** | Correct any type of search. |
| **FIELDS:** | And you said any type of search, okay, um now, as far as you know with that mean if you were dispatched as back up or something like that to uh a call that you shouldn't respond to it? |
| **TACKETT:** | No as far as, as what that was, what I was told was as far as initiating any parole or probation searches, I would not initiate any myself. |
| **FIELDS:** | Okay so now on this day, the, the day in question with respect to this particular um incident, um just looking here at the package um you, you notified them that you intended to um conduct some type of, of operation, correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | What did you talked to him about?  And when I say him I mean Sergeant Avila. |
| **TACKETT:** | It was uh, Summary Probation.  It was as far as a person moving from the County area which we call it the Poe sub he recently moved into the city of Calipat, and that's what it was referring to. |
| **FIELDS:** | Okay now when you say Summary Probation, just so for the record, so we're all clear, what does that mean in terms of the type of follow-up and that type of thing? |

4

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | Summary Probation it comes with uh terms and guidelines which is uh one of the ones was that this person was a Narcotic Registrant, which when he moves in different City or County, he is suppose to go to that City or County and register as a Narcotic Registrant and the other would be a uh the search terms which, would you would have to his place, person, property to uh a search. Um the next one would also be as far as if there was an assumption that if I thought that I need to uh accumulate urine sample, something like that I would be given that opportunity if I wanted that as far as a peace officer, now the cour..., the court gives all these guidelines usually on a Summary Probation, so it's on certain guidelines, |
| **FIELDS:** | So it's basically just to boil it down it gives you as an officer certain rights to do certain things that you wouldn't miss be able to, let's say, |
| **TACKETT:** | Correct. |
| **FIELDS:** | Be as a condition of a probation you would waive some of your rights. |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay, um so with respect to this, um now you had direction not to do these types of searches is that correct? |
| **TACKETT:** | Not Summary Probation. |
| **FIELDS:** | Okay what exactly had you been given direction on ahead of time, in terms of the prior direction that you were given by Sergeant Avila? |

00697   **Ex. 24**

5

967

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:** Sergeant Avila instructed me not to do any Parole or Probation Searches for the fact that they have Parole or Probation Officers.

**FIELDS:** Okay, and that's, that is actually in here on page 2, now what your saying with the Summary Probation is that there is no parole or probationary officer assigned to that person, correct?

**TACKETT:** Correct, actually the court is the one that violate them, I mean the court gives them the peace officer that opportunity to give as far as the fourth waiver just to make sure that there following the guidelines.

**FIELDS:** So I suppose under one set of circumstances one could say that the direction of Sergeant Avila had given you not to conduct certain types of searches when it is not applied here?

**TACKETT:** Correct.

**FIELDS:** Okay but even inspite of that, you still did go to him and request permission? Correct?

**TACKETT:** Correct.

**FIELDS:** Okay so even though there was a certain way of looking at it but because there was nobody to conduct these types of follow ups, and he had given you that specific direction, but you still went and asked him, correct?

**TACKETT:** Correct.

**FIELDS:** Okay now before asking him had you done any background or any kind of work-up so that when you went to him, you could talk intelligibly about it?

6

**00698 Ex. 24**
968

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:** Yes, as most of, most on any case or any kind of activity that you're going to have as far as law enforcement or even as in regular work you're going to accumulate information or find out all or you want to find everything out and present it to that person, you're going to present to, to show, to show that, what you have prepared already and basically what happened is that I got some information from a CI about this person and I check, I already knew about this person already from prior incidents where uh, Investig, Investigator Vela, and Deputy De Leon had arrested this person, and that's how I knew that he was on Summary Probation.

**FIELDS:** Okay so, you knew that Vela and De Leon had had history with this, with this individual, with this subject?

**TACKETT:** Correct.

**FIELDS:** The suspect, okay and so you did some follow up, did you talk to those, to those particular individuals on the department?

**TACKETT:** Yeah.

**FIELDS:** Before talking to Avila?

**TACKETT:** Yes.

**FIELDS:** And what did you talk to them about?

**TACKETT:** About the case, about the information I uh obtained uh whether they wanted to participate if we were allowed to take any kind of action on it?

**00699**

7

**Ex. 24**
969

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Okay and did was it your intention just to see basically whether they would be able and interested in doing that? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay um at some point did you then go to Sergeant Avila, with the information you had to talk to him about, about whether or not he would authorize you to do that? |
| **TACKETT:** | Yes. |
| **FIELDS:** | And what did he say? |
| **TACKETT:** | He said, no, that at first he said no because they had Probation Officers and I had informed him that Summary Probation, they don't have Probation Officer's and so he goes, okay well still no, but then I asked him if I can take it to Calipat, so they would be aware this person is moving into their City and he said yes. |
| **FIELDS:** | Okay so just for clarification the person had previously resided in the County then moved to Calipat? |
| **TACKETT:** | Yes. |
| **FIELDS:** | Like recently? |
| **TACKETT:** | Yes. |
| **FIELDS:** | Okay um so at some point did you then go and um to, to Calipat PD? |
| **TACKETT:** | Yes. |
| **FIELDS:** | And when you got to Calipat PD, who was there? |

**00700** **Ex. 24**
970

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | There was, at first it was just Chief Gomez, |
| **FIELDS:** | Okay and was your conversation that you had with the Chief, I mean the conversation that you had was it, you said at first Chief Gomez but your conversation was it between you and the Chief? |
| **TACKETT:** | Well there's first it started me and the Chief and then Officer Granado came in, |
| **FIELDS:** | Okay. |
| **TACKETT:** | And then later on uh Deputy De Leon would come in. |
| **FIELDS:** | Okay but I mean your conversation I guess, I'm trying to explain, your conversation you started talking to the Chief? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay and what essentially did you tell him? |
| **TACKETT:** | Basically came in and asked him if he had known this person and he uh from what I recall said no um I told him this person moved to the County and if he had registered in, in his City he said no um I'd given it to him I said well I'm handling this over to you uh this person is in here, here's the instructions the guidelines this is the information I got as far as my, my Confidential Informant um and from there we just started discussing back and forth different types of terms, who the person was and such as that. |
| **FIELDS:** | Okay did, did the conversation or did part of the conversation ever entail why either you wouldn't or couldn't do this? |

**00701**   **Ex. 24**
971

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:** Yes, it did.

**FIELDS:** And what did that, par...part of the conversation entail?

**TACKETT:** The conversation basically entailed he asked me most law enforcement when you get usually information they usually want you, you know you catch it, you clean it, kind of thing, um so he kind a basically ask me you know why don't you guys act on it, and I just basically advised him that I was instructed that I couldn't as far as in the City, in the City activity or any activity such as like that like Sergeant Avila advised me that I drop this off that I was not allow to do a search over here on this and especially since it's in the City and the only way that I could be able to do an activity per Sergeant Avila, Avila in the City is if they required assistance and that was it.

**FIELDS:** Okay so basically you couldn't initiate but you could be back up? I mean,

**TACKETT:** Right basically what Sergeant Avila told me.

**FIELDS:** That is what he told you. So you were just relaying what the instructions you'd been given by your Sergeant?

**TACKETT:** Right.

**FIELDS:** In the process of doing that did you bad mouth Sergeant Avila, did you in any way say you know or I use bad mouth him, I mean did you I think we all use this as a general term, did you bad mouth him in any way?

**TACKETT:** No.

10
00702
**Ex. 24**
972

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**FIELDS:**     Did you badmouth the Department for not letting you do, you know Police work or anything like that?

**TACKETT:**     No.

**FIELDS:**     Okay now um you leave, at some point I imagine you, you're done you drop off the information and leave is that correct?

**TACKETT:**     Correct.

**FIELDS:**     Okay now, clear to say that at that point you just go back to your regular patrol duties for some period of time?

**TACKETT:**     Went back to patrol duties for a couple of minutes and but then ended up, me and Deputy De Leon uh for lunch I believe it was, Carls' Jr., I think it was.

**FIELDS:**     Okay, okay so lunch um at some point do you get called back to Calipat to assist?

**TACKETT:**     After I responded, yes, I did after I responded to uh a 10851 in progress in Brawley.

**FIELDS:**     Okay so 10-8-51, if

**TACKETT:**     Which is stolen vehicle,

**FIELDS:**     Is Brawley?

**TACKETT:**     Right.

**FIELDS:**     And then at some point you do get call back to this, correct?

**TACKETT:**     Correct.

11

**00703 Ex. 24**
973

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestiil Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Now, did you in any way ask the Chief to be involved you know asked anyone, the Chief, or anyone else to be involved in this, in this um action in, in Calipat? |
| **TACKETT:** | No. |
| **FIELDS:** | Um, where you aware at all that they had asked for you by name? |
| **TACKETT:** | No. |
| **FIELDS:** | Or if they had asked for you by name? And, and if so where you aware that they had asked for you by name? |
| **TACKETT:** | No, all I did was give the information and told them if they needed any assistance that we were here and just as far as that Chief Gomez said thank you and took the information and I left. |
| **FIELDS:** | So were you at some point you were at some point called back to this, to assist? |
| **TACKETT:** | Correct. |
| **FIELDS:** | But it wasn't anything you had initiated in any way? |
| **TACKETT:** | No. |
| **FIELDS:** | Um now that's basically what happened? I mean that's, that's, that's you know pretty much from beginning to end. You know that's what happened he um gets information uh puts it together, asked other Officers if they're interested, other Deputies if they're interested in assisting if he doesn't Sergeant says don't do it, but it's okay to drop it off, goes and drops it off and gets called back and assists. Now a lot |

12

00704  **Ex. 24**
974

Imperial County Sheriff's Department:
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

things are misunderstood and twist and turns
through out this but that's it from beginning to
end I mean that's a reader's digest version but
that's essentially what happened, I mean there's,
there's not any grand elaborate scheme, I mean
one, if, in order to believe that Deputy Tackett is
lying about all this you'd have to believe that
there be some elaborate scheme that involved
the Chief of Police being literally stupid enough
to buy into this, um which there's no evidence
that he is, I mean he's certainly not a stupid
man and certainly can understand if he was
being deceived by a Deputy from the Sheriff's
Department with you know no where near the
(unintelligible) experience that he has.  Um the
bottom line is that you know he was you know
with respect to allegations of insubordination he
was ordered not to conduct a search, um and he
or to, or to initiate a search, and Tackett did not
initiate this search he was, he was you know
dispatched there to assist and which is all he
did.  Um he was given permission to, to get, to
give the information to Calipatria and that's all
he did he gave it to the Chief and explained why
he couldn't do it, now did the Chief ask, did the
Chief ask you or did you, did you volunteer why
you weren't doing it or did the Chief ask you?

**TACKETT:**   No like I said, the Chief asked me, he asked me,
I basically kind a like in an expression I said if, if
uh why if we had this information, why we don't
act on it?  And that's when I relayed it back, why
we didn't.

**FIELDS:**   Okay now um did you actually do the search
even when you, did the call, what, what did you
do when you were call back to assist?

**TACKETT:**   Basically when we call, well it wasn't just me, it
was me and another Deputy, Deputy De Leon.

13                    00705        **Ex. 24**
                                        975

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

Um when we both showed up and the Officers waiting there asked if we can stand by with him as he went to approach the person and uh the subject and when he approached him we went ahead stayed in our cars actually I think Deputy De Leon got out I stayed in my car, as he talked to the person, um after I guess talking to the person the Officer said you wanted to go inside and if we would go in side and assist him and we said okay and so me and Deputy De Leon went inside with him um Officer went in one place and he asked me and De Leon to uh basically watch for the kids and watch the room while he went to uh a different room, I forgot to which room he went to first and then he advise me if I could go into one room and watch that room and just look around the room and he had uh De Leon look in on the other room and make sure there was nothing in that room and uh it was a pretty big house, and then,

**FIELDS:** But basically you were just taking direction from, from, from the Calipat Office?

**TACKETT:** Right, right, right,

**FIELDS:** Who was actually doing the search.

**TACKETT:** Right, whatever he asked us to assist him on we just went ahead and assisted him on.

**FIELDS:** Um did you have, I mean, you gave the information to Calipat, now they could have easily have just ignored it and not done anything, I mean you didn't, you didn't just to be clear, you had no part in initiating it from the perspective was that all you did was handed over to Calipat, it was up to them to do with it what they wanted to?

14

00706 **Ex. 24**
976

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

**TACKETT:**   Correct.

**FIELDS:**   Okay um and just to also be clear did you ever ask uh Chief Gomez, Granados, anybody else to ask for you? Or to you know request you by name or anything like that?

**TACKETT:**   No.

**FIELDS:**   Now there's a couple of interesting things um Sheriff that I think they're worth pointing out, in um, Avila's statement, I know you don't have a packet in front of you but just for clarification for the, for the record, Avila's statement um he talks about well first of all he says that he thinks and it's kind a ironic, but he thinks that he says or he thinks that he does state that Deputy Tackett is a good um, is a good Officer and I'm trying to find that real quick.   Um Deputy Tackett is a good Officer, good Officer in a sense he goes out there and does work he goes out there and does cases he's a go get her, and that's essentially what we have, we have somebody that is, is pro-active and in spite of the fact that he has a Sergeant that clearly is trying to you know make him less pro-active, um he's s till not being insubordinate I mean he's asking for permission, to do something Sergeant says no, do it this way so he does it that way, and, and that's the bottom line um but he does say he's a good Officer and the other thing he acknowledges which I think is perhaps the most ironic is that he acknowledges that he heard and this is this is Sergeant Avila he acknowledges that he heard um that Deputy Tackett was being dispatched to this, to this call and it's on page 7 of this statements um he, he acknowledges that he heard, heard it and it's almost like he's entrapping it, he's, he's I mean if he's gong to find fault which apparently he does, with what

15                   00707   **Ex. 24**
977

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | Deputy Tackett did, why didn't he step in and say don't go to the call, I mean has he, on other occasions when he's heard you know he's monitoring the radio obviously your monitoring the radio has he, in other occasion has he heard you or others dispatch to certain calls that he's then you know pulled you away from? |
| **TACKETT:** | Called us off? |
| **FIELDS:** | Called you off? |
| **TACKETT:** | Correct. |
| **FIELDS:** | And did he do that here? |
| **TACKETT:** | No. |
| **FIELDS:** | Again that's on page 7, so I think that's, |
| **SHERIFF CARTER:** | I think it wasn't clear on page 7 that this was the call you were going to? That you were going to do a uh probation search? |
| **TACKETT:** | Correct and I believe he even says that, |
| **FIELDS:** | When he tells me that he is going to follow up and in reality he's doing a probation search, that was in here, |
| **TACKETT:** | I think you kind a have to flip over one page. |
| **FIELDS:** | I thought it was here. |
| **TACKETT:** | Maybe in the front of it. |
| **FIELDS:** | I thought it was in the entry, yeah it's here, I'm sorry that was the untruthfulness I didn't realize (unintelligible) um I'm sorry it's on page 4 Sheriff, I'm sorry, about that time, I heard over the radio transmission on the 31st, I heard over |

00708 **Ex. 24**
978

*Imperial County Sheriff's Department*

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

the radio transmission that Calipat, that Calipat wanted assistance and then he mentioned Tackett by name to go help him on a parole search, excuse me I think it was a probationary search, so after maybe about an hour I went to Calipat and I talked to the Chief of Police and asked him and I told him that Tackett was in their city and said that was going to do a probation search and he tells me yeah he was here and I guess he was here talking to you when he was saying yes, yes Sergeant ect, but he goes on to say I mean basically he then falls up with the Chief to ask you know why Tackett etcetera. Well Tackett never asked to be for name I mean they just chose to ask, which certainly makes sense, I mean it's you know if Tackett can't initiate but you know but they want his assistance and certainly makes sense they would ask for him.

**SHERIFF CARTER:**   And, and where in Vela's statement does it say that uh Justin approached to requested to ask permission to go to Calipat?

**FIELDS:**   It's not, it's not a relevant statement,

**TACKETT:**   Avila not Vela.

**FIELDS:**   Sergeant Avila, Avila's statement, its on page 4.

**SHERIFF CARTER:**   That's where I am.

**FIELDS:**   Oh I'm sorry, page, where he asked for permission or that?

**SHERIFF CARTER:**   Where he asked for permission to go to Calipat?

**FIELDS:**   Um, I, I guess I'm confuse Sheriff, permission, uh?

17

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:** Uh well wait a minute,

**FIELDS:** Okay.

**SHERIFF CARTER:** Justin wanted to go do the search, he said no you can't do the search so Justin said can I take the information to Calipat?  Where is that in, in a statement?

**FIELDS:** Oh I don't let me see um,

**TACKETT:** It's gott'a be when I first talked to him.

**FIELDS:** Yeah, let me see.

**SHERIFF CARTER:** Is it, the uh in the first part of the statement?

**FIELDS:** It is, that, that wasn't what I was trying to point out to you but let me see,

**SHERIFF CARTER:** I can probably find that.

**FIELDS:** Okay.  Uh it was probably maybe right here.

**TACKETT:** It's probably right in there somewhere.   See he keeps mixing up the Davila case.

**FIELDS:** Yeah.

**TACKETT:** And that Davila the parolee, with what I'm telling her.  Well basically right where is when, when he actually calls me, cause he knew I was there, and he called me and this is where the yes, Sergeant, yes, thing is, so that's when he called me while I was at the Department saying okay now you need to go.

**FIELDS:** Well I think they also might be able to find it in um ...uh Chief Gomez acknowledges he talked to

18

00710 **Ex. 24**
980

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

Sergeant Matus but he didn't say about that, I think,

**TACKETT:**   Sergeant Avila.

**FIELDS:**   Sergeant Avila, I'm sorry. Um I think it's in let me see in the findings,

**TACKETT:**   Or it might have be in mine, but the questioned was not posed to him about it, I think.

**FIELDS:**   No it's not in a statement, I'm looking for a statement it's not that, that particular direction is not in the statement, I'm looking at the portion where um the, the portion I say on page 4 was the reference to um him to Sergeant Avila, uh stated that he heard the radio transmission and didn't do anything about it um I suppose if he hadn't given Justin the ability to at least he called for um you know if he was dispatched for those that even worst because he certainly knew there was an issue but it's interesting he talks he references in that statement on page 4 and I think it carries over to page 5, that he then went over to talk to Chief Gomez, and that Chief Gomez according to his characterization of the conversation Chief Gomez says um that you know that Justin wanted to do the search or something like that but that's certainly isn't what um what the Chief's statement is, if you look at the Chief's statement it's, it's exactly as Justin has, has characterized it that basically um he was told that you know couldn't um you know um, do the search but um and that's, that's basically it, um, he just came in and offered it, that's Chief's statement. Um, that he wanted to do a probationary search, mentioned he wanted a probationary search he said he couldn't do it, he was instructed by his Supervisor I mean this is all, paraphrasing the,

19

## Imperi██ County Sheriff's Departm██t
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

the statement of the, of the Chief um, so I, I,
don't know I mean there certainly seems to be
some conflict there between what the Chief is
saying and what, and what Sergeant uh, uh
what Sergeant Avila is saying. Um, and again
why didn't he stop him, if he knew that there
was, why didn't he stop him, if he though it was
an issue, um, it, when he heard it on the air,
which obviously he'd admits to doing. Know,
with respect of Unbecoming Conduct, uh, it
doesn't appear that anything that Justin said to,
I mean to the Chief would of certain be
unbecoming uh, he's explaining why he's there,
what's he's doing there, what information he has
and why he cant do it himself. And again if you
read the Chief's statement there's nothing in
there to indicate in any way that Justin bad
mouth either his Supervisor or the Sheriff's
Department would show certainly potentially
give rise to an allegation legitimate allegation of
unbecoming conduct. Um and that you know he
stressed Justin's stressed and again it's in the
Chief's statement, that um, his Supervisor didn't
want him, doing work and you know in other
Cities that he was there to uh you know primary
function what's to serve the communities that,
that he's designed to serve um, and that um,
you know the Chief added that he thinks you
know even after all this and after the
conversation that there's a good working
relationship etcetera certainly nothing Justin did
in any way sour any kind of relationship that
your agency has with his agency um, now it's
interesting because there's some seems to be
some difference in what was over heard by
Granados and De Leon when they came in to the
conversation that Justin was having with the
Chief and that's what I was trying to stress that
the conversation was between him and Justin, I
mean between Justin and the Chief, and the

20

00712 **Ex. 24**
982

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | others initially just came in I mean you were having a conversation with the Chief, correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | And they appeared, appeared to overhear something that was very different from what the Chief heard, well you know it's not unusual that if you come in to a conversation and overhear something that's not between you know you're not really a part of, you can easily misinterpret what's being said and you know I, I certainly would invite you to contact the Chief if, if you feel it appropriate and ask you know and re-ask him yourself you know uh man to man did, did Justin say anything to disparage either the Department or, or you know and in fact you know it's my understanding that he appreciated the information, I mean it's certainly he, he was something was unaware of is that correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | He wasn't aware of this individuals and obviously they chose, to act on it, so obviously it was information that in fact they in fact wanted I mean maybe they didn't want from the outside because they didn't know it existed but certainly it was information they didn't appreciate so to blame Justin for bringing it to their attention um seems, seems inappropriate, um and, and again it, they only way to characterize this if you were to believe that this assumption, I mean it seems unfathomable to believe that this would be some grand scheme to um conduct what would otherwise be a minor probation search I mean it's not a this isn't a big um it isn't a in the grand of schemes of things it isn't a huge deal obviously it was important to the City of Calipat and what they chose to act on it but it seems |

21

00713 **Ex. 24**
983

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

hard to believe that they would have um you know that, that Justin would contrive this whole thing just to um just to be able to do the search, um and with respect to the, the untruthfulness allegations um the well I, I think we've touch on a lot of it the, the allegation of um you know doing the search whether or not I mean it, it appears clear from the package and clear from you know from what was going on that Sergeant Avila's direction was complied with. And that Justin never lied to him about what, what you know what he was doing in, in the morning when you were gathering as you were gathering the information and um, um talking to him did you tell him anything that was untrue with respect to what you were trying to do or why you were trying to do it?

TACKETT:    No.

FIELDS:    Now again De Leon seems to be confuse when, when overhearing the conversation between Justin and the Chief and that, that apparently gives rise to some of the allegation, when you, when you're looking at the allegations um and you look into the facts here and the sheet that you have um, you know as you kind a go through it, Sergeant Avila asked him just looking trying to figure out where the untruthfulness, Sergeant Avila asked me what you were working on, you (unintelligible) to be assisting Vela in conducting a follow up investigation a couple of cases in Westmoreland, Calipat, how, how, how did that misunderstanding come about?

TACKETT:    Well it's kind a like I said I talked to the Deputies before and I told Vela and uh um Deputy De Leon that it was there case prior and basically that the fact that this is what we had

22

00714  **Ex. 24**
984

Imperi● County Sheriff's Departm●

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

and if they wanted to assist me?  And if we went back to the house and if we were able to do it and then Vela said he couldn't cause he's busy in cases and Deputy De Leon said he could and uh so I told him basically once it was approved by Sergeant Avila that we would do it and if not then we wouldn't do it.  So I think that's the reason they got mixed up, is when I was telling Sergeant Avila, when I said about, I don't know maybe if he you know after thinking about it all back after I was trying to recall it here to assist and was saying I assisted or what but even if he says he says I tell him it's been adjudicated, so I could I be assisting somebody if the case is adjudicated already, and so that's basically that's I don't know if he got his I mean his words mixed up or what but I mean as far as our conversation I told him exactly what when I said from the get go, is what I went ahead and talked to the Deputies first I went over the stuff as far as the case I went over if it was there case, asked them if they wanted to go along since it was their case that he was on summary probation for and they,

**FIELDS:**  And just to be clear the reason you got involved it was your CI that gave the information?

**TACKETT:**  Correct, my CI, my CI gave me the information um my CI that particular CI has been given a lot of information to a couple of big busts up in the North County area, so and he had told me he'd given it in the morning he had said that the stuff should be there in the morning if we acted on in the morning which is why I was trying to get everybody as far as people that were around a the time and talking to them, like when Deputy De Leon and Vela because Avila was not in the office in the morning so I went ahead and talked

23

**00715 Ex. 24**
985

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
| | to them while they were there trying to get it all together. |
| **FIELDS:** | Now it appears that there's some dis, I don't know some confusion about weather or not you were trying to do it child endangerment type follow up or a probation search, you, I mean, |
| **TACKETT:** | Well it is a child endangerment case and that's where he was and actually uh that's where the case was involved in was when he went on Summary Probation was the kid was they had some young kids, I think it was like a 6 month old, 2 year old and a 5 year old and, and uh the case prior they had narcotics and pipes and everything, laid out within the room where the kids where and, and that's what they were arrested prior well in this occasion my CI had told me not only did they had the same materials there as far as the paraphernalia but they had a load of dope that came from South County area up there that they were taking to Indio and so if we acted on that we would find that and so I went ahead and that's what I relayed and the child endangerment they get lice, within the paraphernalia is there again, the whole reason there on Summary Probation was because the kids there again the child welfare is for the same, |
| **FIELDS:** | So, so the conversations you had with Vela and De Leon and with um with Avila were touching on both subjects is that fair to say? |
| **TACKETT:** | Correct, it was touching, basically all the conversation touched was all the terms and guidelines was him to register narcotics him to search uh I was contact you know and the child welfare so I mean that's what basically we all |

24

986

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | touch on, on all our conversation in this whole, in everything, |
| **FIELDS:** | There's like allegations where he told me it was a probationary search and he told me it was a child endangerment well he's talking about the whole thing, it's the same issue, and it all doves tail together, is not, is not a manner of manipulating everything to tell somebody one thing and tell somebody something else um, everybody I mean you know the mistakes here are when people hear only what there thinking they hear instead of you know what Justin is talking to this person and tells them this and then tells this person this but the bottom line is that you know he request permission to do one thing the Sergeant gives him instructions to do something else and he does that, and that's really what this case is about um, you know, it, it I, I don't know I mean it's just there's really not too much else to say um did you talk in the morning to De Leon or not? |
| **TACKETT:** | Yes. |
| **FIELDS:** | Okay. |
| **TACKETT:** | As we were loading our units. |
| **FIELDS:** | And did you talk to him about this particular, what you were trying to do or did you not talk to him till after um Sergeant Avila told you, you couldn't do it? |
| **TACKETT:** | No, I talked to him in the morning before all this and actually Vela. |
| **FIELDS:** | And, and I could said I just can't stress enough that in order to believe that Deputy Tackett was lying about this he would have at the out set |

25

00717   **Ex. 24**
987

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Appiestill Road

El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

had to have imagine that he could get another agency, he could dupe another agency into doing a search that they didn't want to do,

**SHERIFF CARTER:**  Well, I have a few questions in here,

**FIELDS:**  Sure.

**SHERIFF CARTER:**  Why didn't you just picked up the phone and called Calipat?

**TACKETT:**  I was already near it, um Calipat.

**SHERIFF CARTER:**  But that wasn't your beat that day or anywhere your patrol area that day, what, what were you doing there?

**TACKETT:**  Basically um as far as like with the beats, did you know Sheriff it's right down Calipat it's really the border line Albright and I had the Summary Probation paper work with me, and that's why the reason I told Avila if it was okay for me to drop it off, as a matter of fact I already had the paperwork and that way that Calipat wouldn't have to go if they needed it, they wouldn't have to go all the way to court to pull that out that I could just drop that paper work for them and that they would have that on hand and so that's the reason I went and dropped that off.

**SHERIFF CARTER:**  Didn't uh didn't Calipat act on this because you told them that you had confidential information that there were narcotics involved?

**TACKETT:**  Well I don't know what the reason that they acted on it but I gave them the information as far as my CI.

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | So they didn't just act on them because these people were on Summary pro..., Summary Probation, they acted on because you told them you had information from the CI that they were holding drugs? |
| **TACKETT:** | I don't know, I don't know why the reason they decided to finally act on it that could have been uh probably, probably the reason but, |
| **SHERIFF CARTER:** | I mean, what, what if that was the reason that or not that was the information that you gave them? |
| **TACKETT:** | Right, the Summary Probation, |
| **SHERIFF CARTER:** | Summary Probation we, we all understand, is the most least restricted kind probation. |
| **TACKETT:** | Right. |
| **SHERIFF CARTER:** | That a person could be on and uh so, so they had the information from you that these people that you believe these people were involved in drugs? |
| **TACKETT:** | Correct. |
| **SHERIFF CARTER:** | Um, and, and it's my understanding that uh that on several occasions uh Sergeant Avila and Chief Housouer had talked to you about confining and, and directing your activities into the County areas and not in the Cities, |
| **TACKETT:** | They had spoke to me, correct on Brawley. |
| **SHERIFF CARTER:** | And you understood what they were saying, to work, |
| **TACKETT:** | To work the, |

27

00719  **Ex. 24**

989

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | To work the, |
| **TACKETT:** | Oh they were telling me that uh that while I was being occupied in the City that's something could happen to the County so that I needed to pertain myself to just that area in the County. |
| **SHERIFF CARTER:** | Now and, and it's your contention, I mean you're telling me this today that uh that you, you absolutely had authorization from Sergeant Avila to take this information to Calipat? |
| **TACKETT:** | Yes. |
| **SHERIFF CARTER:** | And that's uh if he says that's not true that he's lying to (unintelligible)? |
| **TACKETT:** | Correct as and even like he says in the if you even, even the Chief Gomez and I think it was his too where he says Chief Gomez tells him he calls me at the Department cause he knows I was there and that's the reason for the Sergeant, yes, Sergeant yes, which he asked me, well you're still there? Yes, Sergeant, Okay, you know you've been there long enough, can you get out on Patrol, Yes, Sergeant and that's the reason, that's the reason why that's all he heard because I was just affirming what the Sergeant was asking, so, he even actually called me there, |
| **FIELDS:** | Uh clarify that, I'm sorry I'm not, I'm not, I'm not understanding that (unintelligible) that you're trying to make? |
| **TACKETT:** | As, as you look in, |
| **SHERIFF CARTER:** | When Sergeant Vela call him at that Department. |

28

00720   **Ex. 24**
990

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:**      Yeah Avila called me at the department.

**SHERIFF CARTER:**      Avila called me at the department,

**TACKETT:**      Cause he knew I was over there, cause I was going over there.

**FIELDS:**      Oh.

**TACKETT:**      And he just wanted me okay know it's time to leave, you should have handed off by then, go ahead and leave, so that's the reason for that, Sergeant Yes, Sergeant Yes, for that little narrative that you get, that's what it was for.

**SHERIFF CARTER:**      Did, did you ever tell um Sergeant Avila that you were assisting Gabe Vela in conducting follow up with investigations on, on a case out of Westmoreland and in Calipat?

**TACKETT:**      No like I said I don't know if he got that mixed up with what I was saying with as far as having him assist, assist me on the case that was adjudicated, and they, they were all Summary Probation for, I don't know but what I had told him was basically that this was the case, I'd asked them to assist me on, the case even asked me, has the case been adjudicated I said yes, that's the reason it's on Summary Probation, once that the case had Vela and De Leon handle.

**FIELDS:**      Well and, and just to clarify that Sheriff, if, if, Justin had said it's a case that there working on or whatever, how would they ever had gotten around to the end conclusion that um Justin wants to do the Summary Probation search and the Sergeant says no, if that had been the conversation, if the conversation had been Justin assisting Vela, on an active case or something then how would they ever gotten from

29                                    00721 **Ex. 24**
991

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

point A to point B, obviously that wasn't the conversation.

**SHERIFF CARTER:** Well Deputy Vela's in his statement as I recall, says that that Justin was not asked to assist him in any way in fact he was told I'll handle this myself on, I'm not sure, (unintelligible) in this case.

**FIELDS:** I'm sorry Vela's says what about what, I'm sorry?

**SHERIFF CARTER:** Gabe Vela, when Justin talked to him about the child endangerment case in Westmoreland, if I recall the statement correctly he told Justin that he didn't need his help.

**TACKETT:** I believe Sheriff, I think what it was I think I know what part you're talking about and that was what Vela said that he does had so many cases that he doesn't need anybody's help that he can handle themselves, that's the reason why, it wasn't I wasn't assisting them, that's, that's the whole, where were going here cause if I was assisting him there wouldn't be this case and he can have it,

**SHERIFF CARTER:** And you're saying is that Sergeant Avila said when he says that you told him that you, he said what are you doing today and you said I'm assisting Gabe Vela with probation, with some search in case in Westmoreland and um, and, and this, this Summary Probation searches that that is incorrect?

**TACKETT:** Correct, I never told that to Sergeant Avila. I told him that based on the fact again I asked them for assistance as far as Vela and De Leon and that the case was Vela's and De Leon, and

30

00722

Ex. 24
992

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

                        that they was been adjudicated and that's where the reason they were in Summary Probation.

**FIELDS:**               Like I said, sir, like I said Sheriff, they're being no way to get from point A to point B unless the conversation that Justin and Avila had entail a discussion of doing a Probationary Search because um, I mean I'm doing a, I'm doing a Summary Probation search because that's what eventually comes down to they have whatever conversation and eventually Sergeant Avila says you know you can't, I'm not gonna allow you to Do the Summary Probation search well if the conversation again was about Justin assisting Vela in, in some matter that wasn't uh, uh probationary search, then how would they ever how would he'd ever warned them or, or given then the direction not to do the Probationary or not to be the primary on the Probationary search, there'd be no way to get there, there's no way to get from point A to point B they cant assume that the conversation was Justin saying I'm going to assist Vela on some case and then, and then Avila, telling Avila that and then Avila saying well I'm ordering you not to do a Summary Probation search, that would be a total disconnect.

**SHERIFF CARTER:**     Now from reading this, (unintelligible) this case, um, what, its, its, says that in the morning in question, on the day of question Justin said I got this information on from this guy, in Westmoreland you have a case on him and maybe it's child endangerment and this guy needs to be checked out, and Vela said I'll take care of it, and I don't need any help on it.

**TACKETT:**           See and I think that part on that Sheriff too,

31                00723    **Ex.24**
993

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | And then, and then when the Summary Probation case came up in Calipat, Sergeant Avila said, Don't do any Summary Probation Searches unless you have some specific permission to do it and that's, that's what I've got out of reading this case. |
| **FIELDS:** | Okay but, |
| **SHERIFF CARTER:** | Now if that's incorrect, let me, |
| **FIELDS:** | Well I think there is, I'm looking here at the, at the portion of this testimony um with respect with Vela's testimony, I mean again, why would Justin go to Vela and talk to him about and active case when his intent all along is just to try and do a Summary Probation search it just doesn't make any, I mean it just doesn't make sense, why would I go to you and, and talk to top you about an active case that doesn't exist, I mean if he misunderstood Justin um, I suppose that's a possibility I mean he's saying here um, Tackett had asked this is from Vela, Tackett had asked me to do a Parole search, a Probation search and I said no, to clear it through Avila, so I asked Avila if that, I mean that's in here, that's in that's in page 3 of Vela's statement. So Vela, Vela asked Justin asked Vela, if, if he can you know if he wanted to help, with this probationary search. |
| **SHERIFF CARTER:** | One of the uh, I, I think, you know, one of the allegations is that when the Sergeant said, 'What are you doing" Justin said, "I'm going to assist Vela with this case in Westmoreland. |
| **FIELDS:** | Okay. |

**00724**

**Ex. 24**

994

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | And then I'm going to do this probation, this probationary search in Calipat and he went to Vela and said, it was, |
| **TACKETT:** | Do you want to pop that one too, Sheriff? |
| **SHERIFF CARTER:** | Yeah I think we better do so. |

### Side B

| | |
|---|---|
| **TACKETT:** | Okay. If I can, can I add something real quick I thinks it kind a what everybody, I mean, |
| **FIELDS:** | Go ahead. |
| **TACKETT:** | The Westmoreland thing, okay um Westmoreland thing I don't really think it was mentioned to Avila, uh as Westmoreland he but they are all thinking of is Davila mentioned parole, that day I never spoke about Davila or parole, it was on a recent on an earlier one that the one I actually went to Westmoreland that day with another, another case and I gave it to Chief Beltran and Officer and uh he said he was going to give that information to uh to Officer Mistriel which I even talked to Mistriel that day and cause Mistrial was doing search warrants and he said he was just going to have Mistriel work on it and that's that okay was given to that, that's the only reason I can see why Westmoreland is still be coming up for that day and nothing that as far as I mean if I wanted to do like Avila says I would have done the same thing with Westmoreland but I had dropped it off and they said they were going to work on it so I said okay and left. |
| **FIELDS:** | What incentive and why would, why would Justin lie about the first part the conversation with, with Vela I mean what, what incentive |

33                                00725          **Ex. 24**
                                                    995

Imperial County Sheriff's Department
### Administrative Investigations Unit
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | would there be to do that, I can understand one saying well maybe there is an incentive to um you know with respect to the Probationary search or whatever cause he wants to do the search but he tells the Sergeant about that I mean, |
| **SHERIFF CARTER:** | What, what I have Deputy Vela and Sergeant Avila? |
| **FIELDS:** | But they are not saying the same thing Sheriff? Where are they saying, where are they saying a coherent you know statement that, that then? |
| **SHERIFF CARTER:** | Vela's saying yes, Justin talked to me about this case in Westmoreland and I told him I'll handle it. Okay. |
| **FIELDS:** | But it's a different case, right? |
| **TACKETT:** | Yeah the case in Westmoreland was never his that was never, the only case that was Vela's was the one in Calipat. |
| **SHERIFF CARTER:** | And what, and what? |
| **TACKETT:** | Or was. |
| **SHERIFF CARTER:** | And what uh Avila's saying is I ask Justin "What he was doing?" and he said "I'm working with Vela on this case", he went to Vela and said "Is Justin working with you in this case" and Vela said "Hell no I told him I, I didn't need his help, I don't want his help." |
| **FIELDS:** | But? Okay. |
| **SHERIFF CARTER:** | And check with the Sergeant if he wants to do any Probationary searches, so I'm saying is that the way things happened or was it different? |

34

00726

**Ex. 24**
996

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Well I guess, I'm, even I don't know I, I'm even confuse because I, I don't know what incentive if Avila, if, if, if it occurred this way and he had the conversation with Vela and, and he says you know 'Do you need help with this" and Vela's says "No" and then he tells, and then with then go tell the Sergeant "I'm helping Vela on that?" Why, I mean why in gods green earth would somebody do that it doesn't make any sense in order for somebody to lie there has to be a reason. |
| **SHERIFF CARTER:** | Unless, unless this conversation with the Sergeant occurred before they talked about? |
| **TACKETT:** | No it didn't. |
| **FIELDS:** | But it what I think with Deputy? |
| **SHERIFF CARTER:** | I'm just trying to get to the jist of this. |
| **FIELDS:** | I understand and I, and, and it's um, a little bit difficult I think to understand uh because there's I think the problem is that people are confused and they miss they hear what they want to hear and they, and they and they don't hear some things um and I'm trying to look here in page on page 2 and page 3 of all the statements so that we can see exactly what he said and um Vela's says that Justin asked if he wanted to do a parole search on a person name David Davila out of Westmoreland, did that occurred on that day? |
| **TACKETT:** | No that was, that was the one he, he even says at the beginning I didn't say that I, asked him when he first warned me about doing Parole and Probation searches that's where that first came up and that was that deal was on Davila. |

35

00727

**Ex. 24**
997

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**FIELDS:**      I'm looking here um, Tackett came in here and asked if I wanted to do some Probationary searches with him and I said, "No, I was to busy and asked me if a person name Tina Phillips and Vernon Schultz were on Probation" and I said "Yes they are on Summary Probation" is that the case where talking about?

**SHERIFF CARTER:**      Yes.

**TACKETT:**      Correct.

**FIELDS:**      Okay, I keep a file on all the people, and bla, bla, bla, was that around the same time? That was on the same day, that was on the morning, gave him my file, told him just to make copies and to give it back to me, and he asked me if, if I wanted to do a parole search on a person name David Davila out of Westmoreland and I said "No" Davila is a small fish he doesn't have anything etcetera, etcetera, etcetera. Was that part of that day's conversation?

**TACKETT:**      No, the Davila wasn't cause he like I said there was a part of what when were talking about Westmoreland but it wasn't on David Davila or doing any kind of Parole Search or nothing like that.

**SHERIFF CARTER:**      So you're saying Vela was confused?

**TACKETT:**      Correct.

**SHERIFF CARTER:**      So when did this conversation took place?

**TACKETT:**      Not when the place I mean he I think he's getting confuse with David Davila and the other guy I was talking to him about from

**00728**   **Ex. 24**
998

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestili Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
| | Westmoreland that I went to drop the papers of to the Chief and that was that. |
| **FIELDS:** | And that's, that's the Phillip's that's Shultz's incident? |
| **TACKETT:** | No that's another person another incident that I just gave the information to uh Westmoreland on. |
| **FIELDS:** | Another one? |
| **TACKETT:** | Yeah that was just, just another Summary Probation information I just gave to them. |
| **FIELDS:** | I, I, I guess I'm failing to see what the, what the connection I mean if he, the allegation of untruthfulness is related to the statement that he made to Vela, these would be the statement he made to Avila, that doesn't have anything to do with this incident. |
| **SHERIFF CARTER:** | Well I think it goes to show the state of mind of the individual, also think that, I'm trying to get to the facts as to whether or not uh these statements were actually made to the Sergeant and if the Sergeant went to Vela and said are you helping, is Justin helping you and he said "No, he's not" uh and, and I guess the bottom line is, the allegation here is that you intentionally went to Calipat and arrange for this search so that you can participate on? |
| **TACKETT:** | Correct that's the allegation. |
| **SHERIFF CARTER:** | That's the allegation. |
| **TACKETT:** | Correct. |

00729 **Ex. 24**
999

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **SHERIFF CARTER:** | And that what you're telling me is that no time did you discuss with Deputy De Leon or the Calipatria Officer about arranging for you and or De Leon to back him up when he did this search? |
| **TACKETT:** | No, all I said, like I said Sheriff, all I |
| **SHERIFF CARTER:** | When you, when you left Calipatria there was no understanding that a search was going to be made? |
| **TACKETT:** | Correct the only understanding when we left was that well that I told them is if there was any assistance needed from the department, the only way we can respond per Sergeant Avila for me and for the Deputies is if they call for assistance. |
| **SHERIFF CARTER:** | And there was no intent on your part to arrange for them to call for assistance? |
| **TACKETT:** | No. |
| **SHERIFF CARTER:** | Now did you ever make a statement to the Calipatria Chief of Police, that, that your Supervisor's wouldn't let you do your job? |
| **TACKETT:** | No, I said that the Supervisor wouldn't allow me to do anything within the City, like I said and that they were uh said I was a little to proactive because I needed to slow down within the areas, that was said. |
| **SHERIFF CARTER:** | Okay. |
| **FIELDS:** | I mean, you know again, I guess Sheriff, when it comes down to it, is that there are some I would say misunderstandings about what was said and to whom it was said, because people are hearing parts of conversations and not you know and, |

38

00730    **Ex. 24**

1000

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

and what frequently happens, and it's not unusual, is that people will over hear part of conversation and try to put two and two together in their minds and end up with five instead of four um they think something happened but they don't know it, and that's apparently what's happened here because we have a situation where we have um an individual that is being you know subject to termination , I mean that's the most severe, you know that, that obviously that you can do administratively, and it's over a lot of misunderstandings and if there's not any where that, that is I mean you, know there's this confusion about what Vela and Avila say you know or he says to Vela when he says to Avila but certainly it's not untruthfulness if most that's confusion because again when it comes down to untruthfulness we, we need to have there has to be some reason to do it and there just wouldn't be a reason for him to tell Sergeant Avila, he's assisting Vela on something when Vela say's you know he's not doing it, I mean it wasn't the conversation, the conversation was you know Vela's worked on this and, and you know I'd asked him, and, and you know I want to do a search now, it was something that Vela had done before, its some how on all that Sergeant Avila misunderstands that it's an active case instead of a case of you know Probationary case but again that can't even be it because they eventually get around so you cant do a probationary search, that, that certainly doesn't make any sense and when you wind up the rest of it from beginning to end there is no Insubordination there. is no Conduct Unbecoming there is no Untruthfulness it's just a Deputy' is trying to do he's job within some seemingly severe um restrictions by his Sergeant that no one else has no one else is restrictive in this way um no one else is, is being you know

39

00731

**Ex. 24**
1001

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

being treated this way and again, I, I implore you to not only ask you know I mean the Chief and others to related to this incident, but to ask about this Deputy's conduct with others that, that, other's that he's has worked with on your Department, both before and after um who have a very different version of, of this and I know that you're aware of some of the allegations relating to, to, to Sergeant Avila and, you know some of the things that he did in terms of you know as a Probationary sergeant, he's coming in and, and everything but the reality is that there are you know significant supervision issues related to things going on in the north County, early (unintelligible) of this time, I don't know whether they still exist but with the Probationary Sergeant and with the Chief Deputy that was out for extended periods of time, and just you know a total lack of and, and, in, in an area of the County but it was apparently not anywhere near as you know terms of service not given maybe the same level of service or at least in terms of Deputy's positioning Deputies in having the ability to have more supervision it just doesn't exist in, in that part of the County and that kind of takes us into the other allegations of the Suspension but I want to make sure you know we touch on all your concerns related to the termination before we move on to that.

**SHERIFF CARTER:**   I don't have any other questions.

**FIELDS:**   With respect with the suspension um again there is a significant issue related to the um related to um Supervision? And you know this is a Deputy that doesn't have a lot of experience in the field and you know there you know that night of, of the day that this occurred um Sergeant King admitted I think he in the

40

**Ex. 24**

1002

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

package he, he was covering two areas of responsibility and apparently where no um you know um no there was no cover units anywhere you know within you know miles and miles, miles of, of, of Justin and so it isn't as so if he had the benefit of having a lot of man power, in order to effectuate what he was trying to do and you know this isn't this one is certainly isn't the case of him being proactive and it's kind a interesting to just oppose this with the termination where you know the implication is he being too proactive so where going to criticizes him for being to proactive and here part of the criticizing is for not being proactive enough he's, he's dispatch by Brawley PD to go to the scene and is criticize for not doing more of an investigation for not going up close and trying to figure out whether this, this vehicle had been moved or could have been close, etcetera he was asked to go to the scene see if there's a vehicle like that and, and then call in, which is exactly what he did, it's a remote area I mean this is I mean it's dark at night, correct?

TACKETT:            Correct.

FIELDS:             Um and um you know where you asked to do anything but just go to the scene and see if there's a vehicle there that matches the description?

TACKETT:            Right and to stand by after, after I get the information on what the vehicle looks like.

FIELDS:             Is that what you did?

TACKETT:            Correct.

FIELDS:             Where you asked to do any follow up investigation?

41

00733   **Ex. 24**
1003

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | No. |
| **FIELDS:** | Did you on your own initiate any follow up investigation that you were not asked to do? |
| **TACKETT:** | No. |
| **FIELDS:** | Um, did you have did you understand the Brawley PD, excuse me, that was going to be in route based upon your call in with the information you had? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay now this is how it starts now from there everything that happens is based on a couple of things, it's based on um you know the circumstances again time and area of the County with respect to being dark, of being fairly remote area of the County and there being you know no real adequate cover for him under, under other circumstances or other circumstances or based on his and I'm saying lack of um experience but he's experiences are different than let's say your experiences you know Sheriff with, with all your years of experience in law enforcement and he's going to see in and react to things in the field differently than you might uh and differently with somebody that has maybe less experience or that has 10 years of experience I mean there's just differences and again there you know there wasn't any you know supervisor near by that you can request you know any kind of assistance from at least you know given any circumstances he thought he was waiting for Brawley PD to turn over to Brawley PD and that was going to be it, right? |
| **TACKETT:** | Correct. |

00734 **Ex. 24**
1004

42

## Imperial County Sheriff's Department
### *Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Okay now, so you didn't go out of your way to do more than you were asked to do with respect to seeing the rust or the cobwebs or anything? |
| **TACKETT:** | Well I didn't see those. |
| **FIELDS:** | Yeah, how, how far was the vehicle from you know like the area that you were the driveway area where was the vehicle in relation to um to that, was it right in front of you? |
| **TACKETT:** | It was um well my vehicle was on the roadway which runs I guess you can say perpendicular it runs off this side which on my driver's side I can see from my side down the driveway, their driveway which would be the other driveway which is probably the other driveway I think it's like 10 or 15 yards or something like that. I'm not exactly sure, how, how long it is but you could see at the end of the driveway sitting at the end of the driveway. |
| **FIELDS:** | Well the driveway I mean its, it's like a side of the house, correct? |
| **TACKETT:** | Correct, I mean the driveway is off to the side of the I mean, |
| **FIELDS:** | If the lot, if the lot is, if the lot is rectangular, |
| **TACKETT:** | Rectangular shape. |
| **FIELDS:** | Right, rectangular shape, it's like this and the for the Sheriff's perspective the let's say the front of the house is where the Sheriff is sitting, and where, we would be in the back of the house where, it's a lot of lot I should say, |
| **TACKETT:** | If it's rectangle like this the house is here the front door and the side door are here in the |

43

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | other side on the other side, the driveway goes right along the property line on the side and this is where the jeep would be right here as if, |
| **FIELDS:** | Well make, let's make this tablet, just for clarification let's make this table the property, |
| **TACKETT:** | Okay, |
| **FIELDS:** | Um and the main street is, |
| **TACKETT:** | Perpendicular direct behind it, perpendicular to, here is, here is the house, |
| **FIELDS:** | Let's say, let's say it runs that way okay or what shape is the lot, is the shape? |
| **TACKETT:** | Rectangular. |
| **FIELDS:** | Okay but rectangular is it narrow to the sides like this, like? |
| **TACKETT:** | It's narrow like the table like it is right now, the Sheriff on the other side of us, it's narrow like that. |
| **FIELDS:** | Okay, |
| **TACKETT:** | The, the width, the, the length of it, |
| **FIELDS:** | It's much deeper? |
| **TACKETT:** | Right. |
| **FIELDS:** | Okay. |
| **TACKETT:** | It's on the roadway, to the other end of the, |
| **FIELDS:** | Well say, well say that's the roadway, where's the house? |

00736   **Ex. 24**
*1006*

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:**       The house would be on the Sheriff's side.

**FIELDS:**        Okay and where's?

**TACKETT:**       On the upper portion.

**FIELDS:**        And where's the uh so the house occupies like one quadrant and the, the rest of it is vacant uh front to the side and around the back?

**TACKETT:**       Right from what I can, I don't know what's on the back of the lot but all I, but as far as the driveway and this area right here around the house and where the jeep was, was dirt, I think there was like a, like a shed structure like for cover kind of thing, right to the opposite side of the jeep.

**FIELDS:**        Now where is now so, so the jeep is a way back you know basically beside the house correct?

**TACKETT:**       It's like behind the house and off, off set.

**FIELDS:**        Okay so it's some distance from the street, then in other words, it's not right there.

**TACKETT:**       No it's not right at the street, no.

**FIELDS:**        Okay. Um and again it is dark, correct?

**TACKETT:**       Correct.

**FIELDS:**        Okay now essentially the, the criticism, does, doesn't it appear to be any problems with what Justin did, or it doesn't appear to be any criticism what Justin did, I don't think there should be a problem but any criticism at least until um you know he gets up there and he sees and calls in and etcetera, but apparently the, the two problems or the two (unintelligible), general

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestili Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02
Skelly Hearing with Deputy Justin Tackett

areas of problems are one, um whether he intentionally intends to draw out the people to have some kind of confrontation and two his attitude you know which Sergeant or his attitude sort of after the confrontation and just for clarification you did throw some light onto the property I mean that is true, correct?

**TACKETT:** Correct, yes.

**FIELDS:** Okay, now did you light up the house, what did you do exactly and why?

**TACKETT:** Okay um say you're, this is the lot, right, there's the house, okay you're right there, in the middle, okay I put my light on from the car out to the side, and I put my light on the vehicle, wasn't Brawley I told them to stand by, I didn't want to loose sight of my vehicle especially if it had been in a hit and run, so I left the lights on the vehicle, on this side of the house, right on the front, not on the house on the front, on the front, I put on my alley light because the stream goes straight, but on the alley light where it goes right across the front door, and then on this side since the other door was back by the jeep, I put it straight off, not on the house, but straight off, so anybody came out of the doors, along with my reds and blues on, my steadies they would know that not only was there a peace officer but I'd be able to see if there were any guns because just prior to that me and Sergeant Altamirano we went into somebody into the County property with no lights other than the flash lights, and the guy came out with a double barrel shot gun pointing at us, and we almost shot and killed him, as a matter of fact he was and he even said if you would have like your lights on or something like that, that no one came out

46

00738 **Ex. 24**
1008

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

|  |  |
|---|---|
|  | especially that late in the evening that I wouldn't of came out with the shot gun, and, |
| **FIELDS:** | This is like two in the morning, right or something like that? |
| **TACKETT:** | Right. |
| **FIELDS:** | Okay so your mind set was you needed to throw some light into the areas where you can see an individual coming out of the house and, |
| **TACKETT:** | And they would know who I am. |
| **FIELDS:** | And even though red and blues going? |
| **TACKETT:** | Right. |
| **FIELDS:** | Okay um did you light on to the house? |
| **TACKETT:** | No. |
| **FIELDS:** | Okay um, when okay so you're rationale out for putting the lights the way you did, was that, I mean was it officer safety thing for you? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Okay and that was just basically while Brawley was in route? |
| **TACKETT:** | Right, which should be like 5 minutes of that, cause it's right off, |
| **FIELDS:** | Sure. |
| **TACKETT:** | It's not even five miles from the City limits of Brawley. |

47

00739 **Ex. 24**
1009

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Appiestili Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Now when you heard um now when the individual came out did you hear any I mean did you hear anything any commotion any thing about what may have brought him out? |
| **TACKETT:** | No. |
| **FIELDS:** | Okay |
| **TACKETT:** | He just came out and asked me what was going on and uh as I approached him, like I said I saw the scratch on his back, so I asked him, I asked him what his name was and he said (unintelligible) and I said okay this is what I'm doing here and I then identified myself and told him Brawley was in route, and uh we just went from there, that's when I went ahead and asked for his ID cause uh he gave me the name and what the R/O of Jeep was so it already puts him as the person owned this so I know who Brawley probably wants to talk to, if that's uh their particular jeep, |
| **FIELDS:** | Was there anything unusual about the individual wen he came out in terms of his physical appearance? |
| **TACKETT:** | All I can say is that he ha pants on but he had that red mark on his back, it's like a scratch and that was that, |
| **FIELDS:** | So did you I mean you had something suspicious about this person? |
| **TACKETT:** | Correct. |
| **FIELDS:** | Um based upon his physical appearance and based upon the vehicle that had you know? |
| **TACKETT:** | That was described to me, right. |

48

00740   **Ex. 24**

1010

Imperial County Sheriff's Department

*Administrative Investigations Unit*

328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Had been described to you. Did you immediately taken you know detained him? In terms of you know physically detained him? |
| **TACKETT:** | No I just chit-chatted with him and told him that we just wait for Brawley to let him know as far as the jeep, it's there investigation, that I had no knowledge other than it was a hit and run and the vehicle that they described was potentially the vehicle in the back that was sitting off the driveway and he said "Okay". |
| **FIELDS:** | Now certainly Sheriff would have had enough of that time to detained him if he wanted to you know legally he could have detained him at that time but he chose not to, I mean here's a guy that isn't trying to create a con, uh, uh provoke anything, he tells you know I had to throw light because based up my previous experience and this other call we try not to there's you know people have dogs I mean did you hear dogs or anything? |
| **TACKETT:** | Yeah, the dogs, the dogs is what I, what I believe is the reason why he eventually came out of the house because if anyone out in the Country, I have relative's out there and that's the reason they have dogs to alert when somebody is outside and when you have dogs most time, when they start barking, you're gonna come outside and see what is it and I believe that's, |
| **FIELDS:** | And, and you come out with a shotgun? |
| **TACKETT:** | Yeah, exactly. |
| **FIELDS:** | And so you wanted to be able to see who is coming out if anybody and make sure that you're, you're lights, you know, you're |
| **TACKETT:** | Identify myself and whoever was there. |

49

00741

**Ex.24**

1011

**Imperial County Sheriff's Department**

*Administrative Investigations Unit*

328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018

11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **FIELDS:** | Okay, so he doesn't take him into custody, he doesn't, doesn't do the very most that he could do, he's trying to talk to him, reason with him until Brawley gets there. Now is, how is that going, how is your conversation going with him, now in terms of going okay not going well? |
| **TACKETT:** | Actually it was going well, we're just chit-chatting, he was telling me about the jeep and how his son was the one that uh had, had wrecked it and that I told him you know what I don't know as far as that but I said and we just chit-chatted about him being out here and living out in the Country and, and basically when I was chit-chattering him, just basically until Brawly got there, I mean, I wasn't expecting Brawley to be that long, but they said they initially got lost and took kind a, a while. |
| **FIELDS:** | Okay now, did it eventually, did it eventually get agitating in waiting or is there eventually some problem and if so how does that happened? |
| **TACKETT:** | Uh the agitation or I guess you can say the problem, arouse after the wife had came out, she peeked her head out and told the husband was what going on and I told her what was going on and uh and I told her the same thing what, what I told the husband and just asked her if she was alright to like I did with the husband and I asked her if the kids were all okay, just in case they were in that vehicle you didn't know and uh she said yeah and she just told the husband why don't you just come inside cause it's cold outside, and that's when I said well I said ma'am you mind going inside and getting a sweater for your husband and shoes?  And she said, no I don't mind so she went back in and he stayed out with me and she closed the door and went back inside and I kept talking to him, oh then a |

50

**Ex. 24**
1012

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

minute later even that and he just decides to he says "You know I'm going inside" he didn't say he was cold he just said "I'm going inside I'm tired of waiting" So I was like okay and I said, "You know what Sir, I need for you to stay out here, Brawley is already coming in route there're going to want to talk to you, you're the owner of the vehicle, you know what you're just going to be real quick they should be here any minute know, and I told him basically was 148, about obstruct, resisting, delaying an officer of his duties and, and he said, "Well I'm tired of waiting, I'm not going to wait anymore and I don't care what you're going to do" and so he started walking again, so I rounded him up pretty good, and I grabbed his elbow and I said "Sir", cause he's just walking away from me, I said "Sir you need go ahead and stay right here" and then again he decided to pull his elbow away and so I walked in front of him, put my hand out set out my arms "Sir, you got to stop here if you don't stop here I'm going to have to arrest you for 148?" and he's all like, "I don't care" and he slaps my arm out of the way, pushes right through me, and goes towards the door so when he just pushed through me, I just reached out and grabbed his hand and it came across my cuff, put him on the end and even then he was still, then he started wrestling with me, trying to, trying to kick my leg, and so I just kept going in circles trying to get his arm, cause I didn't want to hurt him, I still, I still, know it's a Brawley investigation and now I'm going to (unintelligible)to much proactivity, this was the last thing for them, to get mad of me to stir-up something else, as it was going to North County and so I was being you know going around trying to get his hand and um still, I still couldn't get his hand so his wife comes out with this sweater of course in her hand and uh starts

00743    **Ex. 24**
1013

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

telling him "What, what are you doing you stupid?", you know starts calling him names and just telling him "Just cooperate put your hand on the back" and finally that's when he put his hand on his back and I cuffed him and put him on the back of the unit. And that's where the problem all basic started, was all focused on right there. Which his probably like 8 minutes from when I got there to when that happened was 8 minutes, it wasn't like it was hour, two hours, or three hours.

**FIELDS:**  So basically you had warned him repeatedly before you took any you know action?

**TACKETT:**  Right and I mean and, and like I said I did I mean I warned him, I think more than enough times, I was being friendly as I could and then when he finally got as close as he did to the door I had to take him to custody especially after he hit me and, and if it was all for me I mean that's, to me that's the farthest thing you can go is when you assault a peace officer and so that's when I from there took him to custody.

**FIELDS:**  Okay now um even then did you have I mean did you use any, I mean any OC any kind of you know?

**TACKETT:**  No like I said I didn't want to hurt the guy, and you know I was like I told you like oh this stuff is going on in North County and I knew they're already be a problem as far as that but I knew I had to take him into custody so I wasn't going to go and beat him down or, or slam him on the ground, or anything like that, I just wanted to get him the handcuffs on get him in custody and put him back in the unit.

**Ex. 24**

1014

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**FIELDS:** Okay now Sergeant King eventually arrived is that correct?

**TACKETT:** Correct.

**FIELDS:** Now was there anything interesting about you know tell, telling them that the Sergeant was going to be there or anything like that?

**TACKETT:** Right the, the wife, Mrs. Lackey, uh she was waiting as I told her what, what the husband was going, was going to jail for assault, and uh she got mad and so she said "Is your Supervisor coming?" and I said "Yes" and uh at that time Myron, Myron King the Sergeant uh came over the radio and was just advising oh are you still code 4, and so I said 10-4, or I think it was something like that, or heard, his voice came up, or over the radio, and she said, "Is that Myron King?" and I said, "Yes it is" and she said basically when he gets here it'll all be handled and I didn't have to worry about it, basically to that, to that nature and,

**FIELDS:** So she recognized his voice?

**TACKETT:** Right over the radio, right.

**FIELDS:** Okay now are you aware of any kind of relationship between Sergeant King and these individuals?

**TACKETT:** No, none at that time, no.

**FIELDS:** Okay did you find out later any kind of something other than?

**TACKETT:** Oh well from I don't know as far as like it's kind a like hear-say I mean what people telling but supposedly they go hunting together, real good I

00745  **Ex. 24**
1015

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

    mean they say that they are related to the Rouhotas's and the Rouhotas neighbor came up that day and when he got there and uh and a big old hoopla came out about how they go hunting and stuff like that together and how they know I guess at birthday parties or something like that the Rouhotas sending private invitation out to you for certain people and that kind of thing.

**FIELDS:** But she recognize, obviously recognize Sergeant King's voice?

**TACKETT:** Correct.

**FIELDS:** Okay now apparently this didn't get issue um or are you aware of the circumstances of that I mean of why or who, who rejected it?

**TACKETT:** I knew who rejected it and uh it was do you want, Deborah Owen, the District Attorney, she rejected it, she handles special, special prosecution on child cases for last I heard and then during that time I guess she was um,

**FIELDS:** Who would normally receive this?

**TACKETT:** Uh Deputy uh Dist, uh Chris Collins is who we usually takes over the North County when I would go, when I was working actually investigations for a little while and when we worked North County more easily we would take those reports down and that's who we usually take them too.

**FIELDS:** Now and I'm not sure why it got rejected or not is not really of an issue but it seems to go to a different person but um Sergeant King when he got there um did he urge you to essentially to let him go and to drop it?

54

00746

Ex.24
1016

Imper⬤ County Sheriff's Departm⬤t
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

**IA # 2002-007/# 2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | He just basically by gones be by gones kind a thing. |
| **FIELDS:** | And what was the nature of your conversation with him in other words he eventually got to the point on ordering you to you know let him go and you complied with his order, correct? |
| **TACKETT:** | Correct. |
| **FIELDS:** | So you, you weren't insubordinate? |
| **TACKETT:** | No. |
| **FIELDS:** | Right, um did you at least have some level of you know discussion with him reference what the disposition to this matter was going to be? |
| **TACKETT:** | Yes quite a bit. (Ha) |
| **FIELDS:** | And, what was the nature of the conversation? |
| **TACKETT:** | Uh the nature of the conversation basic came down to that these people knew the Sheriff, the ex-Sheriff and the people of the community and that if it wasn't dropped that there would be a civil law suit there would be a complaint uh and an Internal Affair and such as that nature kind of conversation and just to let it drop so nothing would be, be brought up about it. |
| **FIELDS:** | And did you think it was odd that he would be talking about it complaint like that, right out in the field in front of these individuals? |
| **TACKETT:** | Yes, cause like I said the, the thing that was really odd too was the fact that he came to me and uh and uh the, the tone of voice, I mean. |

55        **00747**        **Ex.24**
1017

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**FIELDS:**    But the bottom line here is you, you wanted to arrest somebody for what you perceived as a crime?

**TACKETT:**    Correct.

**FIELDS:**    Technically speaking, it was a crime?

**TACKETT:**    Correct.

**FIELDS:**    Correct and eventually it got to the point where you were order not to pursue it and you complied with the order?

**TACKETT:**    Correct.

**FIELDS:**    So you know Sheriff I'm not sure, I what the criticism really here is I mean obviously there's an individual that um you know has filed a claim and he's trying to get some money out of the County and um, you know, there, there is nothing at least on the surface of the Deputy did wrong, I mean did he provoke them to come out of the house, well why, when you're trying to provoke somebody to come out of the house, I don't think you shine a light, it's 2 in the morning there's no guarantee that would provoke anybody to do anything, you, you know you knock on the door and I mean if you 're going to try to provoke somebody come out, you knock on the door. "Anyone in there", you know I'm trying to like figure out what's going on here, bla, bla, bla, didn't do that so I mean to say he provoked him to come out, I mean that's it's conclusionary is what we have in the other things where it just doesn't make sense.  You wouldn't provoke someone just by shining a light because most houses and I'm sure this one too, he said he was awoken in his claim form, he said he was awoken by the light, most people if

00748    **Ex. 24**
1018

**Imperial County Sheriff's Department**
*Administrative Investigations Unit*
328 Applestili Road
El Centro, CA 92243

IA # **2002-007**/# **2002-018**
11/08/02

Skelly Hearing with Deputy Justin Tackett

you shine a light in front of, if a cop shines a light on front of my house I sure of heck wouldn't wake up, I mean there's, most master bedrooms are protected from the front of the house, for not for just that reason, but most are, usually in the back of the house, I mean it would seem very unusual to shine a light on the house even if he was shining it in the house, to provoke somebody to come out so that, that allegation is just ridiculous. I mean and the other part of it, is you know the confrontation itself, he'd described it to you, he's doing everything he can not to provoke the individual, he you know, he's trying to tell him you know I, I, figuring you know for Officer safety and other reason he cant let him go back in the house and he's trying to encourage him verbally every way shape or form to comply with his command and it's only when it's the guy is basically pushing him off just completely that he, that he actually you know handcuffs him and then with respect to the, the conversation the actions with the Sergeant, um there having a conversation, the Sergeant is saying you know I think it's inappropriate, it seems inappropriate to me if you talk to him about it out in the field, let them go, there going to complain against you, um, uh but he chose to do that, and um, you know the Deputy disagrees you know Serge, he, he assaulted me and I, I think you know it's the wrong thing to do, it's legitimate disagreement I suppose and eventually comes down to I mean it comes down to let's say it's not something like oh the Serge order he order me to do it, I'll do it but you know I'm, I, I, I not other wise comfortable to do it or something like that, I mean,

TACKETT:          Or he, he, he kept asking me what I was going to do, what I was going to do? And, and kind a

57

00749

**Ex. 24**
1019

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007 / # 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

referring like if he wanted that to happened and so I asked him, well, if you want me to do this, I mean if you order me to do this, I'll do it, I said but if you're asking me what I will do as far as my opinion in what, in what, I believe is, is a just here, is I'll take him to custody and he said, he said, okay, well is that the case, well I'm going to order you to uh sign and release him for 148, which I did.

**FIELDS:**   I mean one can, and I think it comes down to the whole thing I mean one can one Monday morning quarterback the, I mean the reality is, is Deputies in the field make you know, thousands of decisions, and, and every day they make you know hundred of decisions about, should I stop this person, not to stop this person, should I do this, that, the other, and there are times where people you know have to do different things because there level of experience, their level of training and things like that but um, you know with respect with this allegation um you know within the letter of everything Deputy Tackett didn't do anything wrong and if it's a matter of you know he's not as experience or not as well trained is as we hope then you know make it a training issue. You know I mean it, it but what, what, what, what did he actually do wrong, nothing, and it really, it really comes down to the fact that there's individuals that are trying to um looking him extrao, other than extraordinary microscope, and, and a microscope that, that other's haven't had to deal with it and frankly that no one could, could live up to, you could write up a package on every arrest or every contacted that a, that a Deputy makes but the reality is that somebody under somebody else's opinion and, and heinsight you're going to be able to make it look like or try to make it look

58

00750

**Ex. 24**
1020

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

like or try to make it look like they did something wrong but that's not police work, I mean you, you, you, you spend the time training investing into these individuals so that you, you hope that they make the best decision's that they can but you can't question every little thing that they do and this is a perfect example of this, I, I, I don't know the justification for why um it was handle this way why you know why the IA was done while the claim is still going forward apparently with the County or, or what, what ever is certainly doesn't make any sense but um he certainly did not use excessive force he certainly was not insubordinate, he didn't do anything wrong and um to criticizes him for that is inappropriate and you know we'd ask that with respect to both of these that you exonerate them, I mean here's a Deputy that hopefully has a long career in front of him and if you were to sustained specially with the termination sustained it I mean you'd never gonna be able to work in Law Enforcement again and I mean the reality is that there are some problems between him and, and Sergeant Avila that apparently you know haven't existed anywhere else then you know, then uh I mean maybe he shouldn't work for Sergeant Avila like, like he wasn't now, I mean things are going fine in court's right?

**TACKETT:**  Right.

**FIELDS:**  And before he worked for the Sergeant things were going fine too, right?

**TACKETT:**  Right.

**FIELDS:**  And I don't know if there's a disconnect or some you know other things going on here that are just bigger than Justin and he's sort of just know looked at from a different perspective but I

59

00751

**Ex. 24**

1021

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestilli Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

think when you start hearing about Sergeant's giving order to one individual that they don't give to the rest of their, their squad, you know, riff-raff you know but I hope it does it maybe he is being a bit differently and yeah maybe he is a little proactive but I mean for gosh sake if that's the worst thing that you can say · about somebody then you know then certainly I would think you wouldn't want to terminate that individual.

**SHERIFF CARTER:**  Well discussing this with his Chief, the Sergeant uh if he'd been proactive catching uh hay thieves or tractor thieves or whatever, um that was that would have been one thing but doing Brawley PD's job or Calipat PD's job, that's not what were paying him for, investigate a message that were trying to get across is that we have all these ·issues in the County, I mean this is how they explained it to me.

**FIELDS:**  Sure.

**SHERIFF CARTER:**  We have all these issues in the County we don't need our Deputies picking up stuff from the cities,

**FIELDS:**  Well, well,

**SHERIFF CARTER:**  Unless they happen to run into it.

**FIELDS:**  Sure and all, all I can, I can say is that with respect with both of these I mean and I know that there's some difference of opinion as to whether or not this Deputy manipulated the Chief Police of Calipatria to do a search or something and then convince somebody even if there's no evidence other than to call him back I mean there is no evidence in any of that as far as I know, um that it, that it didn't happen in

00752  **Ex.24**
1022

Imperial County Sheriff's Department
Administrative Investigations Unit
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

that way but I think what's, what's necessary to remember with respect to the termination that was he was he was called by, by a Sheriff's Dispatch to assist in Calipatria with the Brawley incident he is called by Sheriff's Dispatch to assist in Brawley if the rule is going to be don't have him do anything outside of the County then somebody needs to tell Dispatch not to assigned this Deputy to anything outside of the County's jurisdiction because it isn't like either of these incident's I mean yeah he did some of the preliminary work because of his confidential informant that was in you know telling him about this incident with Calipat, but once he was told you know don't do it, and you know can you take it over there, yeah that's fine I mean there's other than driving it over to Calipat he's not doing anything else, and I mean and that's the thing is that it's not that he's actively just patrolling Calipat or Brawley I mean it wasn't like he was patrolling Brawley and happened to see this he was dispatch to go to, to check it and so um I mean that's correct?

TACKETT:     Well correct, can I, I just want to add something to that, um is, set up, is because I'm so active that it looks like I'm doing a lot in Brawley and Calipat but if you look at my time periods that I'm working, and you look at my stat's none of most of the crimes that happen occurred during my time period because I'm actively patrolling, I don't sit anywhere I don't sit at a gas station I don't do nothing, I'm actively patrolling uh most stuff I hit in the cities I hit I just running into or I might you know initiate something in, in that time but most of the stuff, you'd look a lot on our bigger thefts and our, our crimes um those I was solving and that's the reason they had even put me in investigations in North County, uh the hay thieve that we caught up there, I had gotten

61                    00753        **Ex. 24**
1023

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestili Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

all that information on that guy I actually heard it on the scanner one day I was at home, when Deputy De Leon pulled the guy over and actually came up on him, and him and another Officer, the Deputy uh what's his name? From Calexico, he's from Calexico another Officer that just recently became a Deputy and he, I was on my Nextel telling him the guy was a crook and telling him to check up on stuff and tell him to call which farmer I mean because that I already knew all these stuff, it's just that's to the naked eye when you see all these big things in the cities there saying well you're doing to much work in there when it's not really I'm doing to much work, I'm covering the whole area, the whole County and, and I just run through these things when I go to the cities, and that's when they finally said well since you run into them that we're going to ban you from the city which was for the reason on that memo that you no longer go to the cities, and if you respond, if you see a crime being committed you advise the department and keep driving, I mean that's what it finally came down too, it wasn't that I wasn't covering my area I mean there was no crimes in my area to be commit, nobody called to say I wasn't doing my job over there I was, busy while I was talking to everybody in the County, you'll ask all the farmers out there I was stopping at hay stacks talking to farmers I was stopping to farmers and talking about abandoned houses, I was doing all of that stuff so I wasn't like I was focusing in just Brawley and Calipat.

**SHERIFF CARTER:**     Well you know I think that I don't think that's there any quarrel, people don't have any quarrel, with uh your abilities, I have heard that and on this entire process you know all these Internal Affairs things that had come I haven't heard anybody quarrel with your ability, I think there,

00754

**Ex. 24**
1024

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

there concern, that I've heard is that they don't necessary think that you listen to them when they talk to you in this last, Lackey,

**TACKETT:** The Lackey?

**SHERIFF CARTER:** The Lackey you were raised in the North end?

**TACKETT:** Correct.

**SHERIFF CARTER:** You don't know this guy?

**TACKETT:** No.

**SHERIFF CARTER:** Never met him before?

**TACKETT:** No, I know the Rouhotas, which I later found out which I know they lived next door but I never knew Lackey, I never knew who he was.

**SHERIFF CARTER:** And uh when you had you're conversation with him about this Jeep did he tell you that the Jeep had been parked for months.

**TACKETT:** He told me to park there and to told me to roll over and I uh advised him the same thing which I told the, the female that this was Brawley's investigation that if had nothing to do with me that all I'm here is to do to see if this particular jeep that they describe is here and there were going to be in a few minutes so for me to go out there and do my investigation on that I had nothing to do because then that would bring me into the case and having go to court.

**FIELDS:** See that's the, the catch 22, this Deputy is in is that he criticizes in one case,

**SHERIFF CARTER:** But he interjected himself into this case, he was talking to this man?

63                    00755  **Ex. 24**
                                    1025

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Applestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**TACKETT:**           Correct.

**SHERIFF CARTER:**    Talking to him?

**TACKETT:**           Correct.

**SHERIFF CARTER:**    About this case and he says that jeep hasn't been moved in months and, and your testimony is that you can't, you couldn't tell that?

**TACKETT:**           No, I couldn't tell that unless I mean if I went over there and looked at it and would of seen for rust and cobwebs I could of but like I like I said I wasn't there to do any of that that was to me I was trying to stay away from that cause they were already been found upon like I said and you see.

**SHERIFF CARTER:**    But if, if your job was just to see if the jeep was there and await for Brawley PD, why didn't you just parked down the road with lights out (unintelligible)?

**TACKETT:**           Cause I was already on, I was already on the property, the dogs were already barking the jeep was there they told me to stand by so I'm they already took off on the jeep and I didn't know if it was still running I didn't want to lose sight and have them go back in the lot there is a back of the lot if it hadn't been stop so I figured I'd go and standby with the jeep wouldn't lose track of the jeep as far as the evidence, as far as it was, and that the dogs were barking cause the guy didn't come out they live in the North County You said, I know people come out no matter what when dogs bark, I mean they want to see who is out there on their property because you got thieves out there you got tractors, that they steal the hay or,

64

00756 **Ex. 24**
1026

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestiil Road
El Centro, CA 92243

IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:**   All that makes sense, we all understand that, if my dogs were barking if I had one I'd go outside too and (unintelligible).

**FIELDS:**   I mean you know and I think really when it comes down to is and I know I already said this I don't want to sound like a broken record but um you know it's easy for especially more experience people sometimes criticizes of us as a more experience person but you have to keep in mind this is a Deputy that doesn't have a tremendous amount patrol experience but even then I think he certainly gives you a good faith explanation for everything he did that doesn't violate any policies and if you know if some jerk decides to file a claim against the County well, that's certainly not a standard by which anyone uses to discipline people or you know everyone you discipline and you know he fact is that you know he, he just didn't do anything wrong whether other ways he could have done it sure, I mean no doubt I mean, there, there, there always in your line of work there's a million ways to skin the cat and when it comes down to is, is the way that he skin it that it violate a policy or is it illegal.  And the fact is no, and if it's not then you know unless it's just some bladen or horrible conduct unbecoming that just made maybe slipped through the cracks but everyone would know, is, is wrong which is certainly isn't the case here, then, then there's no discipline you know it's very simple um and uh there's just uh some forces out there that really don't like this individual and that's unfortunate because like I said I think this one is a good example that he's just not been given the same benefit of the doubt that, that everyone else has with respect to, to what they do and what they say and how they act and you know every Deputy was subject to, to the microscope this Deputy is under um I

65

**Ex. 24**
1027

Imperi █ County Sheriff's Departm █
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

cant tell you our, our Office would need about 50 more Attorney's because we'd be out here everyday with you and it's just not fair that this individual is subject to what, what he is being subject too, he's on Administrative leave, I mean some people say hey that's, that's a vacation well it, it sure is taken a lot of, this is a young Deputy is not like he can just walk out the door and after 30 years and have his retirement and etcetera I mean he's got the rest of his career in front of him and if you don't, you know drastically alter what's in front of you right now um, you know something that doesn't et over turned at some later stage, I mean he's going to lose his job, he's going to uh, he's never going to be able work in Law Enforcement again, and you know given the, the doubt that I hope we created in your mind as to you know whether or not some of these things happened the ways that they really were said to have happened and whether or not there's really any untruthfulness, whether or not there's really any him insubordination weather or not there's really any serious policy violation and either of these cases I would certainly hope that you, you take a fresh look at it and um and conclude that there are no certainly no serious policy violation in either case and reinstate them put him back to work put him to, you know he was doing well in Courts put him back you know to work there for a while, let him, let him get his feet under them and then and, and start back fresh again I mean you know we, we're not happy with the fact that you know it's, it's very difficult for him, this is a very difficult time for anyone and you can probably explain that better than everybody but you know he loves nothing more than to go back to work tomorrow or Monday or what ever um and we certainly hope you do that, I don't know if there's anything else you want to say?

66

**Ex. 24**
1028

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

### IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

| | |
|---|---|
| **TACKETT:** | This basic is the same deal that you just said I mean I could understand a lot of people that told me I kind a enjoy it's a paid vacation but to me it's not I mean I put a lot things off in my education, I could have gone to a lot of places but this is the job I love and people say that's the reason why I'm too active is that I'm I love my job too much, is why I sometimes don't get that, that I just need to slow down and relax and enjoy, enjoy the career and to me like I said I you know there is ways that you can handle differently and like what we discussed I mean there are ways you can have things differently go back and look at it but, but as far as that time and what I did I don't think I did anything wrong, I still don't believe that there was anything wrong I, think there was still other ways I could handle it but I don't think I did anything wrong and I like I said I just like to come back and go to work like I as doing and I for my point of view in for I mean for what I saw and couple other people would see is that I was doing really good, I mean other than certain incidents like were basically going on in North County I mean that's here nor there but I mean everybody can see that I was doing a pretty, a pretty good job. |
| **FIELDS:** | And you know what I think about everything Avila had to say in his statement like he said he is basically a good Deputy it just had some issues with him and you know I, I think we all agree there's some issues between um between Justin and, and, and the Sergeant and, and it's unfortunate but um you know again we certainly hope that uh and if you have any questions on either of the cases that we haven't answered certainly we'd be happy to do that. |

00759   **Ex. 24**

*1029*

Imperial County Sheriff's Department
*Administrative Investigations Unit*
328 Appiestill Road
El Centro, CA 92243

## IA # 2002-007/# 2002-018
11/08/02

Skelly Hearing with Deputy Justin Tackett

**SHERIFF CARTER:**   Okay no, I don't have, I don't have any other questions, I don't have any further questions anything further from you?

**FIELDS:**   I don't think so.

Typed by:
Galdy Gutierrez
Office Assistant III

00760   **Ex. 24**
1030





# IMPERIAL COUNTY SHERIFF'S OFFICE
# HAROLD D. CARTER
SHERIFF-CORONER-MARSHAL

*October 3, 2002*

*Justin Tackett*
*Deputy Sheriff*
*547 S. Rio Vista*
*Brawley, CA 92227*

**RE:   NOTICE OF PROPOSED DISCIPLINARY ACTION**

*Dear Deputy Tackett:*

*You are hereby officially notified that I propose to terminate your employment with the Imperial County Sheriff's Department as a Deputy Sheriff, effective October 11, 2002. You have the right to have this decision reviewed through an informal conference with Sheriff Carter or his designee and an evidentiary hearing before the Employment Appeals Board.*

*Whether or not you request an evidentiary hearing before the Employment Appeals Board, your termination shall be imposed if you do not appeal this decision within the requisite five (5) day appeal period and/or if the decision is affirmed through the informal conference with the Sheriff or his designee. The specific acts, omissions, causes and reasons upon which this proposed disciplinary action is based are set forth herein and in the documents attached hereto and incorporated herein by reference as though fully set forth.*

*The causes for the proposed discipline are as follows:*

## COUNTY ORDINANCE

| | |
|---|---|
| **24452(a)** | **Unprofessional Conduct;** |
| **24452(c)** | **Dishonesty;** |
| **24452(g)** | **Violation of or Refusal to Obey Reasonable Regulations Prescribed by the Board of Supervisors or by the Department Head;** |
| **24452(j)** | **Insubordination:** |

## IMPERIAL COUNTY SHERIFF'S DEPARTMENT POLICY & PROCEDURES

| | |
|---|---|
| 2.1.01 | *Violation of Rules* |
| 2.1.02 | *Insubordination* |
| 2.1.06 | *Unbecoming Conduct* |
| 2.5.09 | *Testimony* |

**00057**

**Ex. 25**

1031

October 3, 2002
Page 2

The specific acts or omissions upon which the proposed discipline is based are
set forth below:

During the latter part of 2001, Sergeant Manuel Avila, your direct supervisor,
repeatedly instructed you to cease engaging in parole or probation searches
because your primary function, as a patrol officer, was to patrol and answer calls
for service. He told you that in the event you received any information regarding
any parolee or probationer, you were to confine your activity to notifying the
responsible agency. On more than one occasion, you acknowledged that you
understood this order.

Early in January 2002, you went to Sgt. Avila and informed him that you
intended to conduct a parole search of one Antonio Davila. You admitted that you
did not have a case pending against Davila, but just wanted to make sure he
was complying with the terms of his parole. Sgt. Avila instructed you to not do
the parole search and again repeated his order that you were not to conduct
probation or parole searches.

Despite these clear and repeated direct orders, on or about January 30, 2002,
based on anonymous information, you determined to conduct a probation search
on two individuals (Schultz and Phillips) located in Calipatria. You failed to
obtain the authorization of any Department supervisor and instead began
recruiting deputies to assist you in the forbidden probation search.

During the morning of January 30, 2002 Sgt. Avila asked what you were working
on and you falsely claimed to be assisting Deputy Gabe Vela in conducting a
follow-up investigation on a couple of cases out of Westmoreland and Calipatria.
When Sgt. Avila checked with Dep. Vela, he discovered that he had not requested
your assistance in any case.   Sgt. Avila was told that you were trying to conduct
a probation search on the two aforementioned individuals.

Sgt. Avila contacted you again on January 30, 2002 and asked what type of
follow-up investigations you were doing. You falsely stated that they were not
probation searches. Instead, you characterized them as a child neglect case and
a drug case. The Sergeant asked you if these cases were already adjudicated.
You admitted that they were but that you wanted to be sure that they were in
compliance with their probation conditions. Sgt. Avila thereupon again directly
ordered you to refrain from conducting any probation searches. This did not
deter you.

In furtherance of your plan to circumvent direct orders, you appeared at the
Calipatria Police Department and solicited the assistance of Officer Eric Granado
in your efforts to put together the probation search. While there, you complained
to Calipatria Chief Reggie Gomez about the Sheriff's Department and your order
to refrain from engaging in probation searches.

00058 **Ex. 25**

1032

October 3, 2002
Page 3

That afternoon, Ofc. Granado called the ICSO, specifically requesting your assistance in conducting a probation search at the Schultz/Phillips residence in Calipatria. Both yourself and Deputy Manuel DeLeon responded to assist. You failed to notify Sgt. Avila of this development.

Despite direct orders to the contrary, you managed to arrange and then conduct the probation search of these two individuals. This was not an accident. The witness statements and the circumstances leading up to the probation searches that afternoon establish that you engaged in an elaborate ruse to circumvent a direct order repeatedly given to you. More than once, your peers warned you not to involve yourself in a probation search without your Sergeant's permission. As part of this scheme, you repeatedly lied to your supervisor, playing word games with him. You dragged other peace officers into your manipulations and cast the Department and your supervisor into a poor light.

Your efforts to arrange and conduct the prohibited probation search consumed the better part of your working day. Despite your claims to more than one peace officer that drugs and guns would be found at the subject location, the search yielded only a single marijuana roach. No one was arrested and no citation was issued.

When you were interviewed in this matter, you denied that you went to the Calipatria Police Department to arrange this probation search, but only to drop off the information on the two probationers in question. Both Deputies DeLeon and Vela directly contradicted your statement, clearly recalling that you were attempting to arrange your conducting this probation search, which was in direct violation of your orders.

During your interview on March 1, 2002, you also attempted to mislead the investigator and engaged in word games, denying that what was involved was a probation search, and claiming that you were only checking to see if these probationers were 'following their guidelines'. This evasion on your part was dishonest. The 'guidelines' in question were the terms and conditions of their probation; checking to see if a probationer is 'following guidelines' is nothing more than a probation search. Every officer you spoke to that morning recalled your soliciting a probation search, not a 'following guidelines' check. When Calipatria PD called the Sheriff's dispatch, they requested assistance in a probation search; they also specifically asked for you by name. And, of course, a probation search was actually conducted that day, although you tried to deny responsibility by asserting you were only there as backup.

In knowingly and intentionally violating Sgt. Avila's repeated direct orders, you violated the ICSO Rules of Conduct. Your conduct demonstrates a determined, premeditated plan to circumvent your supervisor's direct orders. Your elaborate plans encompassed using and manipulating other law enforcement officers to

**Ex. 25**
1033

October 3, 2002
Page 4

assist you in your deception.  Far from being accidental or inadvertent, your actions betray a calculated contempt for any direct orders with which you disagree.

Your actions seeking to enlist other law enforcement officers and agencies is also unbecoming conduct, in that it solicited others to assist you in violating direct orders and thereby cast yourself and the Department in a poor light.  Almost as disturbing are your actions regarding Chief Gomez, wherein you disparaged your direct orders, your supervisors and the Department as a whole.  Your actions placed your own selfish interests before those of the Department or of fellow peace officers.

Finally, in repeatedly attempting to deceive both Sgt. Avila on the day in question and Sgt. Matus during his investigation of this matter, you have made clear both that you knew you were engaged in misconduct and that you intended to respect no authority over you.  No aspect of a law enforcement officer's duties is more critical than honesty and truthfulness, regardless of the consequences to himself or others.  A deputy who cannot be trusted to tell the truth is a person who cannot be trusted with a badge or a gun either.

The thread that runs through your subject activities is your repeatedly placing yourself above and before (1) the Department itself and its mission on behalf of the community, (2) your supervisors and their orders to you, (3) your fellow peace officers and their ethical obligations, and (4) your own ethical obligations as a sworn peace officer.  You are not a law unto yourself but no more than an appointed deputy charged with enforcing the laws of the State of California and the County of Imperial.

In weighing the appropriate disciplinary consequence for your actions herein, my first consideration must be a level of punishment that will guarantee such misconduct will not reoccur.  Your repeated manipulations in circumventing your supervisor's clear, direct orders, including your solicitation of the participation of others, was egregious misconduct.  Peace officers, charged with enormous powers, must adhere to various orders, rules and laws, regardless of whether they are inclined to agree with them.  Aggravating the gravity of your offense is the fact of your dishonesty before and afterwards.  In lying, you have demonstrated that you cannot be trusted to tell the truth, particularly where the truth does not suit your objectives.

We all make mistakes.  Mature adults acknowledge errors and accept responsibility.  You have neither acknowledged your actions were misguided nor accepted any responsibility for your actions.

There is no legitimate basis on which this Department can continue to entrust you with the solemn duties of a Deputy Sheriff.

00060   **Ex. 25**
1034

October 3, 2002
Page 5

Therefore, I must conclude that no remedy short of your termination can protect our community, this Department and the County's peace officers.

You have the right to respond to the matters raised in this notice both orally and in writing, prior to the end of the workday on Tuesday, October 8, 2002. **You must request this informal conference with Sheriff Carter or his designee and schedule it with him within the five (5) workday period.** Any response, which you timely provide will be considered by him before final action is taken.

If you do not agree with this discipline you may contact the Sheriff's Administrative office either in writing to 328 Applestill Road, El Centro, 92243 or by phone at (760) 339-6301 to schedule an appointment with Sheriff Carter or his designee. If you do not respond in writing or by phone by Tuesday, October 8, 2002 by 1700 hours, the proposed discipline will be imposed.

Whether or not you respond to this letter or request an informal conference, if the discipline becomes final on October 8, 2002, as a regular full-time employee, you have the right to file an appeal of your suspension with the Imperial County Employment Appeals Board within ten (10) working days pursuant to Chapter 10.5 of Division 4 of Title 2 of the Codified Ordinances of Imperial County.

**THIS DOCUMENT WILL BE PLACED IN YOUR OFFICIAL PERSONNEL FILE ALONG WITH ALL ATTACHMENTS WITHIN 30 WORKING DAYS OF THE DATE OF YOUR RECEIPT OF THIS LETTER. PRIOR TO THE EXPIRATION OF THE ABOVE PERIOD, YOU HAVE THE RIGHT TO SUBMIT A STATEMENT WHICH WILL BE ATTACHED TO THIS DOCUMENT AND PLACED IN YOUR PERSONNEL FILE.**

Sincerely,

Harold D. Carter
Sheriff-Coroner-Marshal

By:     Sharon Housouer
        Chief Deputy

HDC:SH:ba

Enclosures:     Copy of County Ordinance 24452
                Copy of Department Policies and Procedures
                Copy of Internal Affairs File

*I hereby acknowledge that I have received, read and am aware of the contents of this Notice of Proposed Disciplinary Action.*

Signature _____     Date _10/03/02_____

00061

**Ex. 25**
1035




# IMPERIAL COUNTY SHERIFF'S OFFICE
## HAROLD D. CARTER
### SHERIFF-CORONER-MARSHAL

*February 24, 2003*

*Justin Tackett*
*Deputy Sheriff*
*547 S. Rio Vista*
*Brawley, CA  92227*

**RE:    SECOND NOTICE OF PROPOSED DISCIPLINARY ACTION**

*Dear Deputy Tackett:*

*You are hereby officially notified that I propose to terminate your employment with the Imperial County Sheriff's Department as a Deputy Sheriff. You have the right to have this decision reviewed through an informal conference with Sheriff Carter or his designee and an evidentiary hearing before the Employment Appeals Board.*

*Whether or not you request an evidentiary hearing before the Employment Appeals Board, your termination shall be imposed if you do not appeal this decision within the requisite five (5) day appeal period and/or if the decision is affirmed through the informal conference with the Sheriff or his designee. The specific acts, omissions, causes and reasons upon which this proposed disciplinary action is based are set forth herein and in the documents attached hereto and incorporated herein by reference as though fully set forth.*

*The causes for the proposed discipline are as follows:*

**COUNTY ORDINANCE:**

| | |
|---|---|
| 24452(a) | **Unprofessional Conduct;** |
| 24452(c) | **Dishonesty;** |
| 24452(g) | **Violation of or Refusal to Obey Reasonable Regulations Prescribed by the Board of Supervisors or by the Department Head;** |
| 24452(j) | **Insubordination;** |

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT POLICY & PROCEDURES:**

| | |
|---|---|
| 2.1.1 | *Violation of Rules* |
| 2.1.2 | *Insubordination* |
| 2.1.6 | *Unbecoming Conduct* |
| 2.5.09 | *Testimony* |

**Ex. 26**

00063 1036

February 24, 2003
Page 2

The specific acts or omissions upon which the proposed discipline is based are set forth below:

During the latter part of 2001, Sergeant Manuel Avila, your direct supervisor, repeatedly instructed you to cease engaging in parole or probation searches because your primary function, as a patrol officer, was to patrol and answer calls for service. He told you that in the event you received any information regarding any parolee or probationer, you were to confine your activity to notifying the responsible agency. On more than one occasion, you acknowledged that you understood this order.

Early in January 2002, you went to Sgt. Avila and informed him that you intended to conduct a parole search of one Antonio Davila. You admitted that you did not have a case pending against Davila, but just wanted to make sure he was complying with the terms of his parole. Sgt. Avila instructed you to not do the parole search and again repeated his order that you were not to conduct probation or parole searches.

Despite these clear and repeated direct orders, on or about January 30, 2002, based on anonymous information, you determined to conduct a probation search on two individuals (Schultz and Phillips) located in Calipatria. You failed to obtain the authorization of any Department supervisor and instead began recruiting deputies to assist you in the forbidden probation search.

During the morning of January 30, 2002 Sgt. Avila asked what you were working on and you falsely claimed to be assisting Deputy Gabe Vela in conducting a follow-up investigation on a couple of cases out of Westmoreland and Calipatria. When Sgt. Avila checked with Dep. Vela, he discovered that he had not requested your assistance in any case. Sgt. Avila was told that you were trying to conduct a probation search on the two aforementioned individuals.

Sgt. Avila contacted you again on January 30, 2002 and asked what type of follow-up investigations you were doing. You falsely stated that they were not probation searches. Instead, you characterized them as a child neglect case and a drug case. The Sergeant asked you if these cases were already adjudicated. You admitted that they were but that you wanted to be sure that they were in compliance with their probation conditions. Sgt. Avila thereupon again directly ordered you to refrain from conducting any probation searches. This did not deter you.

You appeared at the Calipatria Police Department and solicited the assistance of Officer Eric Granado in your efforts to put together the probation search.

That afternoon, Ofc. Granado called the ICSO, specifically requesting your assistance in conducting a probation search at the Schultz/Phillips residence in

**Ex. 26**

1037

*February 24, 2003*
*Page 3*

*Calipatria. Both yourself and Deputy Manuel DeLeon responded to assist. You failed to notify Sgt. Avila of this development.*

*Despite direct orders to the contrary, you managed to arrange and then conduct the probation search of these two individuals. This was not an accident. The witness statements and the circumstances leading up to the probation searches that afternoon establish that you engaged in a series of actions to circumvent a direct order repeatedly given to you. More than once, your peers warned you not to involve yourself in a probation search without your Sergeant's permission. As part of this scheme, you repeatedly lied to your supervisor, playing word games with him. You involved other peace officers in your manipulations and cast the Department and your supervisor into a poor light.*

*Your efforts to arrange and conduct the prohibited probation search consumed the better part of your working day. Despite your claims to more than one peace officer that drugs and guns would be found at the subject location, the search yielded only a single marijuana roach. No one was arrested and no citation was issued.*

*When you were interviewed in this matter, you denied that you went to the Calipatria Police Department to arrange this probation search, but only to drop off the information on the two probationers in question. Both Deputies DeLeon and Vela directly contradicted your statement, clearly recalling that you were attempting to arrange your conducting this probation search, which was in direct violation of your orders.*

*During your interview on March 1, 2002, you also attempted to mislead the investigator and engaged in word games, denying that what was involved was a probation search, and claiming that you were only checking to see if these probationers were 'following their guidelines'. This evasion on your part was dishonest. The 'guidelines' in question were the terms and conditions of their probation; checking to see if a probationer is 'following guidelines' is nothing more than a probation search. Every officer you spoke to that morning recalled your soliciting a probation search, not a 'following guidelines' check. When Calipatria PD called the Sheriff's dispatch, they requested assistance in a probation search; they also specifically asked for you by name. And, of course, a probation search was actually conducted that day, although you tried to deny responsibility by asserting you were only there as backup.*

*In knowingly and intentionally violating Sgt. Avila's repeated direct orders, you violated the ICSO Rules of Conduct. Your conduct demonstrates a determined, premeditated plan to circumvent your supervisor's direct orders. Your elaborate plans encompassed using and manipulating other law enforcement officers to assist you in your deception. Far from being accidental or inadvertent, your actions betray a calculated contempt for any direct orders with which you disagree.*

00065

**Ex. 26**
1038

*February 24, 3003*
*Page 4*

*Your actions seeking to enlist other law enforcement officers and agencies is also unbecoming conduct, in that it solicited others to assist you in violating direct orders and thereby cast yourself and the Department in a poor light. Your actions placed your own selfish interests before those of the Department or of fellow peace officers.*

*Finally, in repeatedly attempting to deceive both Sgt. Avila on the day in question and Sgt. Matus during his investigation of this matter, you have made clear that you knew you were engaged in misconduct. No aspect of a law enforcement officer's duties is more critical than honesty and truthfulness, regardless of the consequences to himself or others. A deputy who cannot be trusted to tell the truth is a person who cannot be trusted with a badge or a gun either.*

*The thread that runs through your subject activities is your repeatedly placing yourself above and before (1) the Department itself and its mission on behalf of the community, (2) your supervisors and their orders to you, (3) your fellow peace officers and their ethical obligations, and (4) your own ethical obligations as a sworn peace officer. You are not a law unto yourself but no more than an appointed deputy charged with enforcing the laws of the State of California and the County of Imperial.*

*I have reviewed the transcript of your first Skelly conference in this matter and the additional investigation conducted afterwards. Nothing therein has caused me to substantially alter my view of this matter.*

*At no time have you taken any responsibility for inappropriate actions or admitted any error in your course of conduct. During your interviews and at your first Skelly conference with the Sheriff, you had more than ample opportunity to demonstrate insight and remorse. If you expect criminal violators to be willing to 'own up' to their actions, you should be able to model that more mature behavior.*

*We all make mistakes. Mature adults acknowledge errors and accept responsibility. You have done neither.*

*In weighing the appropriate disciplinary consequence for your actions herein, my first consideration must be a level of punishment that will guarantee such misconduct will not reoccur. Your repeated manipulations in circumventing your supervisor's clear, direct orders, including your solicitation of the participation of others, was egregious misconduct. Peace officers, charged with enormous powers, must adhere to various orders, rules and laws, regardless of whether they are inclined to agree with them. Aggravating the gravity of your offense is the fact of your dishonesty before and afterwards. In lying, you have demonstrated that you cannot be trusted to tell the truth, particularly where the truth does not suit your objectives.*

**Ex. 26**

*February 24, 2003*
*Page 5*

*There is no legitimate basis on which this Department can continue to entrust you with the solemn duties of a Deputy Sheriff.*

*Therefore, I must conclude that no remedy short of your termination can protect our community, this Department and the County's peace officers.*

*You have the right to respond to the matters raised in this notice both orally and in writing, prior to the end of the workday on March 3, 2003.* **You must request this informal conference with Sheriff Carter or his designee and schedule it with him within the five (5) workday period.** *Any response, which you timely provide will be considered by him before final action is taken.*

*If you do not agree with this discipline you may contact the Sheriff's Administrative office either in writing to 328 Applestill Road, El Centro, 92243 or by phone at (760) 339-6301 to schedule an appointment with Sheriff Carter or his designee.  If you do not respond in writing or by phone by Monday, March 3, 2003 by 1700 hours, the proposed discipline will be imposed.*

*Whether or not you respond to this letter or request an informal conference, if the discipline becomes final on March 3, 2003, as a regular full-time employee, you have the right to file an appeal of your suspension with the Imperial County Employment Appeals Board within ten (10) working days pursuant to Chapter 10.5 of Division 4 of Title 2 of the Codified Ordinances of Imperial County.*

***THIS DOCUMENT WILL BE PLACED IN YOUR OFFICIAL PERSONNEL FILE ALONG WITH ALL ATTACHMENTS WITHIN 30 WORKING DAYS OF THE DATE OF YOUR RECEIPT OF THIS LETTER.  PRIOR TO THE EXPIRATION OF THE ABOVE PERIOD, YOU HAVE THE RIGHT TO SUBMIT A STATEMENT WHICH WILL BE ATTACHED TO THIS DOCUMENT AND PLACED IN YOUR PERSONNEL FILE.***

*Sincerely,*

*Harold D. Carter*
*Sheriff-Coroner-Marshal*

*By:*   *Sharon Housouer*
       *Chief Deputy*

HDC:SH:bq

Enclosures:   Copy of County Ordinance 24452
              Copy of Department Policies and Procedures
              Copy of Internal Affairs File

February 24, 2003
Page 6

*I hereby acknowledge that I have received, read and am aware of the contents of this Second Notice of Proposed Disciplinary Action.*

Signature _____   Date __02/24/03__



IMPERIAL COUNTY SHERIFF'S OFFICE

*HAROLD D. CARTER*

SHERIFF•CORONER•MARSHAL



*April 4, 2003*

*Justin Tackett*
*Deputy Sheriff*
*547 S. Rio Vista*
*Brawley, CA  92227*

**RE:    *FINAL NOTICE OF DISCIPLINARY ACTION***

*Dear Deputy Tackett:*

*You are hereby officially notified that I am suspending you for a period of thirty (30) working days without pay from your employment with the Imperial County Sheriff's Department as a Deputy Sheriff.  You have the right to have this decision reviewed through an evidentiary hearing before the Employment Appeals Board.*

*Whether or not you request an evidentiary hearing before the Employment Appeals Board, your suspension shall be imposed.  For this matter, your suspension shall be for the following dates: April 10, 11, 15, 16, 17, 18, 22, 23, 24, 25, 29, 30 and May 1, 2, 6, 7, 8, 9, 13, 14, 15, 16, 20, 21, 22, 23, 27, 28, 29, 30, 2003.*

*The specific acts, omissions, causes and reasons upon which this disciplinary action is based are set forth herein and in the documents attached hereto and incorporated herein by reference as though fully set forth.*

*The causes for the discipline are as follows:*

**COUNTY ORDINANCE:**

**24452(a)     Unprofessional Conduct;**
**24452(g)     Violation of or Refusal to Obey Reasonable Regulations Prescribed by the Board of Supervisors or by the Department Head;**
**24452(j)     Insubordination:**

**IMPERIAL COUNTY SHERIFF'S DEPARTMENT POLICY & PROCEDURES:**

|  |  |
|---|---|
| **2.1.1** | **Violation of Rules** |
| **2.1.2** | **Insubordination** |
| **2.1.6** | **Unbecoming Conduct** |

00306        **Ex. 27**

1042

P.O. Box 1040, El Centro, Ca. 92244-1040 / Phone (760) 339-6311  Fax  760  339-634    www.icso.org
An Equal Opportunity Employer

*April 4, 2003*
*Page 2*

*The specific acts or omissions upon which the discipline is based are set forth below:*

*During the latter part of 2001, Sergeant Manuel Avila, your direct supervisor, repeatedly instructed you to cease engaging in parole or probation searches because your primary function, as a patrol officer, was to patrol and answer calls for service. He told you that in the event you received any information regarding any parolee or probationer, you were to confine your activity to notifying the responsible agency. On more than one occasion, you acknowledged that you understood this order.*

*Early in January 2002, you went to Sgt. Avila and informed him that you intended to conduct a parole search of one Antonio Davila. You admitted that you did not have a case pending against Davila, but just wanted to make sure he was complying with the terms of his parole. Sgt. Avila instructed you to not do the parole search and again repeated his order that you were not to conduct probation or parole searches.*

*Despite these clear and repeated direct orders, on or about January 30, 2002, based on anonymous information, you determined to conduct a probation search on two individuals (Schultz and Phillips) located in Calipatria. You failed to obtain the authorization of any Department supervisor and instead began recruiting deputies to assist you in the forbidden probation search.*

*During the morning of January 30, 2002 Sgt. Avila asked what you were working on and you falsely claimed to be assisting Deputy Gabe Vela in conducting a follow-up investigation on a couple of cases out of Westmoreland and Calipatria. When Sgt. Avila checked with Dep. Vela, he discovered that Vela had not requested your assistance in any case. Sgt. Avila was told that you were trying to conduct a probation search on the two aforementioned individuals.*

*Sgt. Avila contacted you again on January 30, 2002 and asked what type of follow-up investigations you were doing. You falsely stated that they were not probation searches. Instead, you characterized them as a child neglect case and a drug case. The Sergeant asked you if these cases were already adjudicated. You admitted that they were but that you wanted to be sure that they were in compliance with their probation conditions. Sgt. Avila thereupon again directly ordered you to refrain from conducting any probation searches. This did not deter you.*

*You appeared at the Calipatria Police Department and solicited the assistance of Officer Eric Granado in your efforts to put together the probation search.*

*That afternoon, Ofc. Granado called the ICSO, specifically requesting your assistance in conducting a probation search at the Schultz/Phillips residence in*

00307    **Ex. 27**
1043

*April 4, 2003*
*Page 3*

*Calipatria. Both yourself and Deputy Manuel DeLeon responded to assist. You failed to notify Sgt. Avila of this development.*

*Despite direct orders to the contrary, you managed to arrange and then conduct the probation search of these two individuals. This was not an accident. The witness statements and the circumstances leading up to the probation searches that afternoon establish that you engaged in a series of actions to circumvent a direct order repeatedly given to you. More than once, your peers warned you not to involve yourself in a probation search without your Sergeant's permission. As part of this scheme, you repeatedly misled your supervisor, playing word games with him. You involved other peace officers in your manipulations and cast the Department and your supervisor into a poor light.*

*Your efforts to arrange and conduct the prohibited probation search consumed the better part of your working day. Despite your claims to more than one peace officer that drugs and guns would be found at the subject location, the search yielded only a single marijuana roach. No one was arrested and no citation was issued.*

*When you were interviewed in this matter, you denied that you went to the Calipatria Police Department to arrange this probation search, but only to drop off the information on the two probationers in question. Both Deputies DeLeon and Vela directly contradicted your statement, clearly recalling that you were attempting to arrange your conducting this probation search, which was in direct violation of your orders.*

*During your interview on March 1, 2002, you also attempted to mislead the investigator and engaged in word games, denying that what was involved was a probation search, and claiming that you were only checking to see if these probationers were 'following their guidelines'. This evasion on your part was insubordinate and dishonest. The 'guidelines' in question were the terms and conditions of their probation; checking to see if a probationer is 'following guidelines' is nothing more than a probation search. Every officer you spoke to that morning recalled your soliciting a probation search, not a 'following guidelines' check. When Calipatria PD called the Sheriff's dispatch, they requested assistance in a probation search; they also specifically asked for you by name. And, of course, a probation search was actually conducted that day, although you tried to deny responsibility by asserting you were only there as backup.*

*In knowingly and intentionally violating Sgt. Avila's repeated direct orders, you violated the ICSO Rules of Conduct. Your conduct demonstrates a determined, premeditated plan to circumvent your supervisor's direct orders. Your elaborate plans encompassed using and manipulating other law enforcement officers to assist you in your deception. Far from being accidental or inadvertent, your actions betray a calculated contempt for any direct orders with which you*

**Ex. 27**

00308      1044

April 4, 2003
Page 4

disagree.

Your actions seeking to enlist other law enforcement officers and agencies is also unbecoming conduct, in that it solicited others to assist you in violating direct orders and thereby cast yourself and the Department in a poor light. Your actions placed your own selfish interests before those of the Department or of fellow peace officers.

Finally, in repeatedly attempting to deceive both Sgt. Avila on the day in question and Sgt. Matus during his investigation of this matter, you have made clear that you knew you were engaged in misconduct. No aspect of a law enforcement officer's duties is more critical than honesty, regardless of the consequences to himself or others.

The thread that runs through your subject activities is your repeatedly placing yourself above and before (1) the Department itself and its mission on behalf of the community, (2) your supervisors and their orders to you, (3) your fellow peace officers and their ethical obligations, and (4) your own ethical obligations as a sworn peace officer. You are not a law unto yourself but no more than an appointed deputy charged with enforcing the laws of the State of California and the County of Imperial.

I have reviewed the transcript of your first Skelly conference in this matter and the additional investigation conducted afterwards. Nothing therein has caused me to substantially alter my view of this matter.

At no time have you taken any responsibility for inappropriate actions or admitted any error in your course of conduct. During your interviews and at your first Skelly conference with the Sheriff, you had more than ample opportunity to demonstrate insight and remorse. If you expect criminal violators to be willing to 'own up' to their actions, you should be able to model that more mature behavior.

We all make mistakes. Mature adults acknowledge errors and accept responsibility. You have done neither.

Finally, despite your representative's April 2, 2003 Skelly response to the Second Notice of Proposed Disciplinary Action, I conclude that the one year statute of limitations in Government Code Sec. 3304 (d) does not preclude your discipline in this instance. Based upon your and your representative's statements during your first Skelly conference, wherein you made new factual assertions not contained in your interview statement, we conducted additional investigation to determine the validity of some of these assertions. Therefore, subparagraphs (e) and (g) of Sec. 3304 apply in this instance.

**Ex. 27**

00309

1045

*April 4, 2003*
*Page 5*

*Based upon the above, I find that you violated the above referenced laws, ordinances, policies and procedures by your actions. In weighing the appropriate disciplinary consequence for your actions herein, my first consideration must be a level of punishment that will guarantee such misconduct will not reoccur. Your*

*repeated manipulations in circumventing your supervisor's clear, direct orders, including your solicitation of the participation of others, was egregious misconduct. Peace officers, charged with enormous powers, must adhere to various orders, rules and laws, regardless of whether they are inclined to agree with them. Aggravating the gravity of your offense is the fact of your lack of candor before and afterwards.*

*Therefore, I must conclude that a suspension of thirty (30) working days represents a minimum discipline for misconduct of this degree. You will be subsequently notified of dates of your suspension.*

*You have the right to respond to the matters raised in this notice in writing.*

*As a regular full-time employee, you also have the right to file an appeal of your suspension with the Imperial County Employment Appeals Board within ten (10) working days pursuant to Chapter 10.5 of Division 4 of Title 2 of the Codified Ordinances of Imperial County.*

*All relevant documents have either already been provided or are attached for your review.*

***THIS DOCUMENT WILL BE PLACED IN YOUR OFFICIAL PERSONNEL FILE ALONG WITH ALL ATTACHMENTS WITHIN 30 WORKING DAYS OF THE DATE OF YOUR RECEIPT OF THIS LETTER. PRIOR TO THE EXPIRATION OF THE ABOVE PERIOD, YOU HAVE THE RIGHT TO SUBMIT A STATEMENT WHICH WILL BE ATTACHED TO THIS DOCUMENT AND PLACED IN YOUR PERSONNEL FILE.***

*Sincerely,*

*Harold D. Carter*
*Sheriff-Coroner-Marshal*

*By:    Harold D. Carter*
      *Sheriff-Coroner-Marshal*

HDC:SH:ba

Enclosures:     Copy of County Ordinance 24452
                Copy of Department Policies and Procedures

00310   **Ex. 27**
        1046

April 4, 2003
Page 6


I hereby acknowledge that I have received, read and am aware of the
contents of this Final Notice of Disciplinary Action.

Signature_____   Date___04/05/03_____

**Ex. 27**

1047

§ 24452.                *Disciplinary Procedures*

§ 24452.      Cause for Disciplinary Action.

The causes justifying disciplinary action against a County employee shall include, but not limited to, the following:

(a)   Immoral or unprofessional conduct;

(b)   Deliberate or repeated absence form duty without authorization;

(c)   Dishonesty;

(d)   Incompetence;

(e)   Evident unfitness for service;

(f)   Physical or mental condition unfitting him to discharge his duties;

(g)   Violation of or refusal to obey reasonable regulations prescribed by the Board of Supervisors or by the department head;

(h)   Conviction of a felony or a crime involving moral turpitude;

(i)   Neglect;

(j)   Insubordination;

(k)   Continued absence after exhaustion of sick leave, compensation overtime, vacation and leave of absence;

(l)   Improper political activity which constitutes a violation of Federal or State laws or ordinances of the County of Imperial; (Ord. No. 703; eff. Aug. 31, 1979, retroactive to June 29, 1979.)

(m)   Neglect or willful damage to public property or waste of public supplies or equipment;

(n)   Falsifying information on employment application, personnel records or County records;

(o)   Gambling on County premises;

(p)   Drinking or possessing any alcohol beverage on County premises or on County time;

(q)   Reporting to work while under the influence of alcohol or drugs;

(r)   Sleeping on duty.

**Ex. 27**

MANUAL     ...CIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

SUBJECT:
    RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.

PAGE   2

2.1.01    <u>VIOLATION OF RULES</u>

EMPLOYEES SHALL NOT COMMIT ANY OTHER ACTS OR OMIT ANY OTHER ACTS WHICH CONSTITUTE A VIOLATION OF ANY OF THE RULES, REGULATIONS, DIRECTIVES, ORDERS OR POLICIES OF THIS DEPARTMENT, WHETHER STATED IN THIS GENERAL ORDER OR ELSEWHERE.   IGNORANCE OF THE RULES, REGULATIONS, DIRECTIVES, ORDERS, OR POLICIES SHALL NOT BE CONSIDERED AS A JUSTIFICATION FOR ANY SUCH VIOLATIONS.   EMPLOYEES SHALL BE RESPONSIBLE FOR THEIR OWN ACTS, AND THEY SHALL NOT SHIFT TO OTHERS THE BURDEN OF RESPONSIBILITY FOR EXECUTING OR FAILING TO EXECUTE A LAWFUL ORDER OR POLICE DUTY.

2.1.02    <u>INSUBORDINATION</u>

EMPLOYEES SHALL PROMPTLY OBEY ANY LAWFUL ORDERS OF A SUPERVISING EMPLOYEE.   THIS WILL INCLUDE ORDERS RELAYED FROM AN EMPLOYEE SUPERVISOR BY AN EMPLOYEE OF THE SAME OR LESSER RANK.

00313    **Ex. 27**

IMPERIAL COUNTY SHERIFF'S OFFICE

MANUAL OF POLICIES AND PROCEDURES

| DATE | DISSEMINATION | TITLE | NUMBER |
|------|---------------|-------|--------|
|      |               | RULES OF CONDUCT | 2.1 |

SUBJECT:

RULES OF CONDUCT, IMPERIAL CO. SHERIFF'S DEPT.      PAGE 5

2.1.05    CONFORMANCE TO LAWS

A. EMPLOYEES SHALL OBEY ALL LAWS OF THE UNITED STATES, OF THIS STATE, AND OF THE LOCAL JURISDICTION.

B. AN INDICTMENT OR INFORMATION FILED AGAINST AN EMPLOYEE, OR A CONVICTION OF THE VIOLATION OF ANY LAW SHALL BE CAUSE FOR DISCIPLINARY ACTION.

1.06    UNBECOMING CONDUCT

EMPLOYEES SHALL CONDUCT THEMSELVES AT ALL TIMES, BOTH ON AND OFF DUTY, IN SUCH A MANNER AS TO REFLECT MOST FAVORABLY ON THIS DEPARTMENT. CONDUCT UNBECOMING OF AN EMPLOYEE SHALL INCLUDE THAT WHICH TENDS TO BRING THIS DEPARTMENT INTO DISREPUTE OR REFLECTS DISCREDIT UPON THE EMPLOYEE AS A MEMBER OF THIS DEPARTMENT, OR THAT WHICH TENDS TO IMPAIR THE OPERATION AND EFFICIENCY OF THIS DEPARTMENT.

00314

**Ex. 27**

1050