1
2
3
4
5
6
7
8
9
10
11

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | | |
|---|---|---|
| 12 | JUSTIN TACKETT, ) | Civil No. 04cv2459 J (PCL) |
| 13 | Plaintiff, ) | |
| 14 | v. ) | **ORDER GRANTING DEFENDANTS' MOTION** |
| 15 | COUNTY OF IMPERIAL and ) IMPERIAL COUNTY SHERIFF'S ) | **FOR SUMMARY JUDGMENT** |
| 16 | DEPARTMENT, ) | |
| 17 | Defendants. ) | |

18

19      Before the Court is Defendants County of Imperial and Imperial County Sheriff's

20  Department's ("Defendants") Motion for Summary Judgment ("Motion") as to all claims in

21  Plaintiff Justin Tackett's ("Plaintiff") Complaint.  [Doc. No. 46.]  Plaintiff has filed an Opposi-

22  tion to the Motion for Summary Judgment ("Opposition"), and Defendants have filed a Reply to

23  the Opposition ("Reply").  [Doc. Nos. 60, 66.]  Pursuant to Civil Local Rule 7.1(d)(1), the Court

24  decides the matter on the papers submitted and without oral argument.  *See* S.D. Cal. Civ. R.

25  7.1(d)(1) (2006).  For the reasons set forth below, the Court **GRANTS** Defendants' Motion for

26  Summary Judgment as to all of Plaintiff's claims.

27
28

*Background*

The following facts are either stipulated, supported by affidavit or deposition testimony, uncontroverted or viewed in the light most favorable to Mr. Tackett, the nonmoving party.  The Court excludes factual assertions that are immaterial or that are conclusions of law rather than statements of fact.

In August of 1999, Defendant County of Imperial ("County") hired Plaintiff Justin Tackett as a corrections officer in the county jail.  (*See* Tackett UMF at ¶ 1; Ex. 2, Tackett Dep. 10:1-7.)  On January 24, 2000, Plaintiff was hired by Defendant Imperial County Sheriff's Department ("Department") as a Deputy Sheriff Recruit.  (*See* Tackett UMF at ¶ 2; Defs.' Mem. Supp. Mot. Summ. J. at 2.)  County and Department are governmental agencies doing business and employing agents and employees in the County of Imperial, California.  (First Am. Compl. ("FAC") at 1-2.)  Plaintiff graduated from the police academy in June of 2000.  (*See* FAC at 5; Defs.' Mem. Supp. Mot. Summ. J. at 2.)  Plaintiff then completed Department's field training program in September of 2000 and served as a bailiff in Court Services.  (*See* Pl.'s Opp'n at 5; Tackett Dep. 10:1-7.)  In December of 2000, Plaintiff was assigned to patrol duty.  (*See* Tackett UMF at ¶ 4.)

While under the supervision of Sgt. Manuel Avila, Plaintiff alleges that he first became aware of racial preferences within the workforce.  (*See* Pl.'s Opp'n at 5.)  Plaintiff, a Caucasian male, alleges that Hispanic candidates were "invariably selected" for special assignments to which he applied.  (*See* Pl.'s Opp'n at 5.)  During his training and patrol duty, Plaintiff was involved in four vehicle accidents.  (*See* Pl.'s Opp'n at 5-6;  Defs.' Mem. Supp. Mot. Summ. J. at 3-4.)  Following the third incident, Plaintiff was suspended for two days on November 16, 2001.  (*See* Pl.'s Opp'n at 6; Defs.' Mem. Supp. Mot. Summ. J. at 3; Ex. 7.)  Plaintiff alleges that Chief Sharon Housouer changed her mind and reinstated the suspension after receiving a call from Plaintiff's attorney.  (*See* Pl.'s Opp'n at 6.)  On November 1, 2001, Plaintiff rolled his vehicle over while responding to a call, causing substantial damage to the vehicle.  (*See id*.)  Following a review by the Significant Events Review and a pre-disciplinary meeting, Plaintiff was suspended on October 18, 2002 for five days.  (*See* Pl.'s Opp'n at 6; Exs. 8, 12, 13.)

04cv2459

1  Plaintiff alleges that he was reprimanded harsher than Hispanic peers who have been involved in

2  similar incidents.  (*See* Pl.'s Opp'n at 6.)

3      Plaintiff also alleges that in October of 2001 Defendants retaliated against him after

4  making "the largest drug bust in the inland valley" because an individual connected to the drug

5  bust was personal friends with and a "high profile, campaign contributor" to both the Sheriff and

6  the District Attorney.  (*See* FAC at 3.)  Plaintiff states that the "questionable relationship of Sgt.

7  [Joe] Nava and D.A. Gilbert Otero with Niaz Mohammed led to [a] failure to properly

8  investigate the 'biggest' marijuana grow found in Imperial County. . . ."  (*See* Pl.'s Opp'n at 11.)

9  Plaintiff further states that the "only thanks Plaintiff got for this important lead was criticism and

10 an ominous warning to keep quiet and 'leave it alone.' "  (*See id.*)

11     Plaintiff again faced disciplinary action following his arrest of Randall Lackey on

12 December 28, 2001.  Plaintiff responded to a request by the Brawley Police Department to

13 investigate whether a vehicle parked at a residence was involved in an earlier hit and run.  (*See*

14 Pl.'s Opp'n at 6; Defs.' Mem. Supp. Mot. Summ. J. at 5.)  Plaintiff's investigation resulted in an

15 altercation with Mr. Lackey, the owner of the residence.  Mr. Lackey was handcuffed and

16 subsequently released pursuant to an order by Plaintiff's supervisor, Sgt. Myron King.  In a

17 Memorandum to Chief Housouer, Sgt. King stated that the incident was avoidable, that Plaintiff

18 failed to follow orders to wait for Brawley Police to arrive, that Plaintiffs "own actions instigated

19 the incident," and that "Deputy Tackett's actions unnecessarily exposed himself and the

20 Sheriff's Department to a citizen complaint or civil suit."  (*See* Ex. 14 at 363-64).  An Internal

21 Affairs investigation found that Plaintiff had "insufficient evidence to detain Mr. Lackey" and

22 violated several of the Department's Rules of Conduct, including incompetence, unbecoming

23 conduct, and failure to make an arrest in accordance with the law and department procedures.

24 (Ex. 17 at 388-90.)  Following a departmental investigation and pre-disciplinary hearing (*see* Ex.

25 19), Sheriff Harold Carter suspended Plaintiff for two days on April 5, 2003  (*see* Ex. 21 at 1).

26     Plaintiff alleges that his actions were criticized because Mr. Lackey was "the brother-in-

27 law of Sgt. King's dear friend and best man at his wedding, Tony Rohoutas, a well connected

28 individual in Imperial County."  (Pl.'s Opp'n at 7.)  Plaintiff states that he "refused to look the

3

1    other way on this matter and pressed the case to the District Attorney's office," and was "labeled

2    as a deputy who would not go along with the corrupt program engaged in by County officials."

3    (*Id.* at 8.)

4          In January of 2002, Plaintiff faced disciplinary action for his involvement in a probation

5    search.  (*See* Pl.'s Opp'n at 8.)  An investigation found that Plaintiff had "willfully disobeyed a

6    direct order from Sgt. Manuel Avila, and provided false information to Sgt. Delfino O. Matus

7    during the course of Deputy Tackett's interview."  (Ex. 24 at 841.)  The investigation further

8    found that "Sgt. Avila had ordered Deputy Tackett during the latter part of 2001, and January

9    2002, not to be conducting probation or parol searches."  (*Id.*)  The investigation ultimately

10   found that Plaintiff violated several of the Department's Rules of Conduct, including

11   insubordination and unbecoming conduct.  (*Id.* at 843.)  As a result, Plaintiff was issued two

12   Notices of Intent to Terminate, but was later suspended for thirty days in lieu of termination.

13   (*See* Exs. 25-27.)

14         Plaintiff alleges that "[i]t became clear that [he] was being targeted for refusing to go

15   along with the corruption in the county."  (Pl.'s Opp'n at 8.)  Plaintiff states that, in February of

16   2002, he verbally complained of Sgt. Avila's continued favoritism toward the Hispanic deputies.

17   (*See id.*)  Plaintiff states that on February 11, 2002, Sgt. Avila issued a memorandum to only

18   him, forbidding him from making tracking stops in the Brawley area and from placing people in

19   the back of his patrol car.  (*See id.*)  On March 4, 2002, Plaintiff filed a grievance for "continued

20   harassment, discrimination, and retaliation for filing a previous grievance."  (Ex. E.)  In the

21   grievance, Plaintiff also requested a transfer to "court division."  (*Id.*)  In March of 2002,

22   Plaintiff was transferred back to court services.  (*See* Pl.'s Opp'n at 9; Defs.' Mem. Supp. Mot.

23   Summ. J. at 2.)  However, Plaintiff alleges that Chief Housouer failed to investigate his

24   grievance.  (*See* Pl.'s Opp'n at 9.)  The Department transferred Plaintiff back to patrol duty in

25   March of 2003.  (*See* Pl.'s Opp'n at 10; Defs.' Mem. Supp. Mot. Summ. J. at 2.)

26         On May 22, 2003, Plaintiff was involved in the arrest of Reno Bertussi, a private citizen

27   suspected of assault and theft of property.  (*See* Pl.'s Opp'n at 11; Defs.' Mem. Supp. Mot.

28   Summ. J. at 8.)  On June 16, 2003, Mr. Bertussi filed a complaint against Plaintiff alleging that

1   Plaintiff and Officer Bostic "acted inhumanely and endangered [his] life" by conducting an

2   illegal search and placing him in a patrol vehicle with no air conditioning causing Mr. Bertussi

3   to suffer from heat exposure.  (Ex. 31 at 1-2.)  Plaintiff alleges that the following day he learned

4   that Mr. Bertussi was the brother-in-law of Hank Kuiper, a member of the Board of Supervisors,

5   and that Mr. Kuiper asked that the charges against Mr. Bertussi be dropped.  (*See* Pl.'s Opp'n at

6   11-12.)  Plaintiff also alleges that, in a break from departmental policy, an Internal Affairs

7   investigation was commenced while the charges against Mr. Bertussi were still pending.  (*Id.*)

8           On July 27, 2003, Plaintiff conducted a traffic stop on Ernesto Macias, searched his hotel

9   room, and arrested him.  (*See* Pl.'s Opp'n at 12.)  The district attorney to whom the case was

10  referred rejected the charges, citing that the "[Fourth Amendment] violations [are] almost too

11  numerous to list."  (Ex. 28.)  Independent investigations were commenced into both the Bertussi

12  and Macias incidents.  (*See* Exs. 29, 33.)  As a result of the two incidents, Plaintiff was issued

13  two Notices of Termination, citing as causes for the proposed discipline:  unprofessional

14  conduct, dishonesty, violation of or refusal to obey reasonable regulations, insubordination,

15  violation of rules, incompetence, and failure to follow proper procedures for arrest, search, and

16  seizure and treatment of persons in custody.  (*See* Exs. 30, 34.)

17          Plaintiff alleges that after the Macias incident, he "realized that his life was in serious

18  jeopardy."  (Pl.'s Opp'n at 13.)  Plaintiff further alleges that "deputies were advised not to

19  provide Plaintiff with backup and were afraid to associate with him because they were on notice

20  that they should avoid contact with Plaintiff or suffer from County's further animosity."  (*Id.*)

21  Plaintiff states that "[g]iven the statements made to him by other deputies and the clear

22  perception within the Department, Plaintiff came to the unavoidable conclusion that he had to

23  resign or else risk dying on the job."  (*Id.*)  On December 19, 2003, Plaintiff submitted a letter of

24  resignation to Sheriff Harold Carter.  (*See* Ex. J.)

25          On December 9, 2004, Plaintiff served Defendants with a Complaint, and Defendants

26  filed a Motion to Dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6).

27  [Doc. Nos. 1, 6.]  The Court denied Defendants' Motion to Dismiss pursuant to Rule 12(b)(1)

28  and granted in part Defendants' Motion pursuant to Rule 12(b)(6).  (*See generally* Order Re:

04cv2459

1  Mot. Dismiss.)  On March 22, 2005,  Plaintiff served Defendants with a First Amended

2  Complaint ("FAC"), alleging six causes of action:  (1)  race discrimination in violation of Title

3  VII of the Civil Rights Act of 1964; (2) violation of 42 U.S.C. Section 1983; (3) wrongful

4  termination in violation of California Labor Code Section 1102.5; (4) retaliation in violation of

5  public policy; (5) race discrimination in violation of the California Fair Employment and

6  Housing Act ("FEHA"); and (6) intentional infliction of emotional distress ("IIED").  (FAC ¶

7  45-91.)

8                                          *Legal Standard*

9          Summary judgment is appropriate under Rule 56 of the Federal Rules of Civil Procedure

10  on "all or any part" of a claim where there is an absence of a genuine issue of material fact and

11  the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56; *see also Celotex*

12  *Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  One of the principal purposes of Rule 56 is to

13  dispose of factually unsupported claims or defenses.  *See Celetox*, 477 U.S. at 323-24.  A fact is

14  material when, under the governing substantive law, the fact might affect the outcome of the

15  case.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *see also Freeman v.*

16  *Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997).  A dispute about a material fact is genuine if  "the

17  evidence is such that a reasonable jury could return a verdict for the nonmoving party."

18  *Anderson*, 477 U.S. at 248.  When making its determination, the Court must view all inferences

19  drawn from the underlying facts in the light most favorable to the party opposing the motion.

20  *See Matsushita Elec. Indus. Co. Ltd.  v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

21          The party seeking summary judgment bears the initial burden of establishing the absence

22  of a genuine issue of material fact.  *See Celotex*, 477 U.S. at 323.  The moving party can satisfy

23  this burden in two ways: (1) by presenting evidence to negate an essential element of the

24  nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a

25  showing sufficient to establish an element of his or her claim on which that party will bear the

26  burden of proof at trial.  *See id.* at 322-23.  If the moving party fails to discharge this initial

27  burden, summary judgment must be denied and the court need not consider the nonmoving

28  party's evidence.  *See Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

04cv2459

1    If the moving party meets the initial burden, the burden shifts to the nonmoving party to

2 "set forth specific facts showing there is a genuine issue for trial." *Anderson*, 477 U.S. at 256.

3 "The mere existence of a scintilla of evidence in support of the nonmoving party's position is not

4 sufficient." *Triton Energy Corp. v. Square D. Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) (citing

5 *Anderson*, 477 U.S. at 252); *see also Matsushita*, 475 U.S. at 586 (if the moving party meets this

6 initial burden, the nonmoving party cannot defeat summary judgment by merely demonstrating

7 "that there is some metaphysical doubt as to the material facts").   It is insufficient for the party

8 opposing summary judgment to "rest upon the mere allegations or denials of [his or her]

9 pleading." Fed. R. Civ. P. 56(e).  Rather, the party opposing summary judgment must "by [his

10 or her] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,'

11 designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex*, 477 U.S. at

12 324 (quoting Fed. R. Civ. P 56(e)).   "Disputes over irrelevant or unnecessary facts will not

13 preclude a grant of summary judgment." *See T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors

14 Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).  In addition, the Court is not obligated "to scour the

15 records in search of a genuine issue of triable fact." *Keenan v. Allan*, 91 F.3d 1275, 1279 (9th

16 Cir. 1996) (citing *Richards v. Combined Ins. Co.*, 55 F.3d 247, 251 (7th Cir. 1995)).  "[T]he

17 district court may limit its review to the documents submitted for purposes of summary judgment

18 and those parts of the record specifically referenced therein." *Carmen v. San Francisco Unified

19 Sch. Dist.*, 237 F.3d 1026, 1030 (9th Cir. 2001).

20    "Where the record taken as a whole could not lead a rational trier of fact to find for the

21 nonmoving party, there is no 'genuine issue for trial.' " *Matsushita*, 475 U.S. at 587 (citing *First

22 Nat'l Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 289 (1968)).  Moreover, "[a] district

23 court must enter summary judgment against a party who fails to make a showing sufficient to

24 establish an essential element of a claim, even if genuine factual disputes exist regarding other

25 elements of the claim." *Cunningham v. City of Wenatchee*, 214 F. Supp. 2d 1103, 1110 (E.D.

26 Wash. 2002) (citing *Celotex*, 477 U.S. at 323-24.)

27

28

04cv2459

*Discussion*

Defendants assert that Plaintiff's claims under FEHA, Title VII, California Labor Code Section 1102.5, retaliation in violation of public policy, and IIED are time-barred under the relevant statute of limitations.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 12-14.)  Defendants further argue that Plaintiff has failed to include factual allegations in his tort claim that correspond with the facts alleged in Plaintiff's FAC with respect to the alleged infliction of emotional distress.  (*See id*. at 13.)  Additionally, Defendants also move for summary judgment as to all of Plaintiff's claims.  (*See id*. at 14-25.)  For the reasons set forth below, the Court **FINDS** that Plaintiff's claims under FEHA and Title VII are time-barred and **GRANTS** Defendants' Motion for Summary Judgment as to all of Plaintiff's claims.

**I.**     **Procedural Bars to Plaintiff's Claims**

**A.**     **Timeliness of Claims under the California Torts Claims Act**

Defendants assert that Plaintiff's first cause of action (violation of California Labor Code Section 1102.5), second cause of action (retaliation in violation of public policy), and sixth cause of action (intentional infliction of emotional distress) are time barred under the California Torts Claims Act ("CTCA") for claims against a local government entity.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 12.)  According to the CTCA, a "claim [against a public entity] relating to a cause of action for death or for injury to person or to personal property . . . shall be presented . . . not later than six months after the accrual of the cause of action."  Cal. Gov't Code § 911.2 (West 2006).  Furthermore, "[u]nder . . . [S]ection 945.4, presentation of a timely claim is a condition precedent to the commencement of suit against the public entity."  *Munoz v. State of California*, 39 Cal. Rptr. 2d 860, 864 (Cal. Ct. App. 1995); *see also* Cal. Gov't Code § 945.4 (West 2006).  Here, Plaintiff filed a tort claim against the County of Imperial on June 16, 2004.  (Ex. 36.)  Accordingly, causes of action that accrued prior to December 16, 2003 would be time barred under Section 911.2.

In Plaintiff's FAC, Plaintiff alleges that he was constructively terminated on December 15, 2003.  (FAC at 6.)  However, Plaintiff, in his Opposition, states that the December 15th date

1    "is simply a typographical error in a pleading." (Pl.'s Opp'n at 14.) Plaintiff has also shown

2    that his resignation letter was file stamped, signed, and dated on December 19, 2003. (Ex. 35.)

3    Furthermore, Plaintiff, in his tort claim against the County, states that he was constructively

4    terminated on December 19, 2003. (*See* Ex. 36.)

5         While Plaintiff has not specifically alleged that any tortious actions occurred after

6    December 16, 2003, it is "the actual termination of employment that starts the statute of

7    limitations period running, not when the alleged intolerable conditions occurr[ed]" or "the date

8    on which an employee is unequivocally informed his employment will be terminated." *Colores*

9    *v. Bd. of Trs.*, 105 Cal. App. 4th 1293, 1320 (2003) (citing *Mullins v. Rockwell Int'l Corp.*, 936

10   P.2d 1246, 734 (Cal. 1997); *Romano v. Rockwell Int'l, Inc.*, 926 P.2d 1114, 1116 (Cal. 1996)).

11   Thus, "for the purposes of filing a tort claim for wrongful termination, the cause of action

12   accrues when the employment is actually terminated, whether by the employer or the employee."

13   *See id*. Therefore, Plaintiff's claim will have accrued on December 19, 2003, the date on which

14   he resigned from the Department. However, the Court's decision only determines when the

15   claim the arose, not whether the claim has any merit. For purposes of determining only whether

16   a claim is time barred, the Court does not address the merits of the claim.

17        Accordingly, the Court **FINDS** that Plaintiff's claims for violation of California Labor

18   Code Section 1102.5, retaliation in violation of public policy, and IIED are not time-barred

19   under the CTCA.

20        **B.    Consistency of Pleadings with Tort Claim**

21        Defendants argue that Plaintiff has failed to include factual allegations in his tort claim

22   that correspond with the facts alleged in Plaintiff's FAC dealing with emotional distress. (*See*

23   Defs.' Mem. Supp. Mot. Summ. J. at 13.) Specifically, Defendants argue that "Plaintiff's sixth

24   claim for relief for emotional distress is based entirely upon the allegation that Defendants

25   instructed other deputies not to provide backup to Plaintiff and 'to stay away from him,' " and

26   that Plaintiff's tort claim does not include such allegations. (*Id*.) According to Government

27   Code Section 910, a claim shall include "the date, place and other circumstances of the

28   occurrence or transaction which gave rise to the claim asserted" and a "general description of the

. . . injury, damage or loss incurred."  Cal. Gov't Code § 910 (West 2006).   If a suit against a public entity is ultimately filed, "[e]ach theory of recovery against the public entity must have been reflected in a timely claim" and "the factual circumstances set forth in the claim must correspond with the facts alleged in the complaint."  *Munoz v. State of California*, 33 Cal. App. 4th 1767, 1776 (1995) (citing *Brownell v. Los Angeles Unified School Dist.*, 4 Cal. App. 4th 787, 793-94 (1992)).   However, a claim "need not contain the detail and specificity required of a pleading, but need only fairly describe what the entity is alleged to have done."  *Stockett v. Ass'n of Cal. Water Agencies Joint Powers Ins. Auth.*, 34 Cal. 4th 441, 446 (2004).

Here, Plaintiff alleged in his tort claim that he was "subjected to false accusations, . . . numerous instances of discrimination, harassment, retaliation, [and] disparate treatment."  (Ex. 36 at 1.)  In addition, Plaintiff alleged that he "suffered past, present and future emotional distress."  (*Id*. at 2.)  Plaintiff did not specifically claim he was subjected to "intentional infliction of emotional distress."  However, as previously stated by this Court, Plaintiff's Complaint merely elaborates or adds further detail to "a claim . . .  predicated on the same fundamental actions or failures to act by the defendants."  (*See* Order Denying Mot. Dismiss at 14 (quoting *Stockett*, 34 Cal. 4th at 447).)

Accordingly, the Court **FINDS** that Plaintiff substantially complied with the requirements of the CTCA.

## C.   Timeliness of Claims Under the California Fair Employment and Housing Act and Title VII of the Civil Rights Act of 1964

Defendants argue that Plaintiff's fourth cause of action (violation of FEHA) and fifth cause of action (violation of Title VII) are time barred pursuant to FEHA and Title VII, respectively.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 13.)  Defendants claim that Plaintiff cannot show that he was discriminated against within the allowed time to file a claim under FEHA or Title VII.  (*See id*.)  Pursuant to FEHA, "[n]o complaint may be filed after the expiration of one year from the date upon which the alleged unlawful practice or refusal to cooperate occurred. . . ."  Cal. Gov't Code § 12960 (West 2006).  Furthermore, "[i]n a State having an entity authorized to grant or seek relief with respect to the alleged unlawful practice,

1  an employee who initially files a grievance with that agency must file the charge with the [Equal

2  Employment Opportunity Commission ("EEOC")] within 300 days of the [unlawful]

3  employment practice." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101 (2002) (citing 42

4  U.S.C. § 2000e-5(e)(1) (2006)).

5        Here, Plaintiff filed a claim with the California Department of Fair Employment and

6  Housing ("DFEH") on or about September 13, 2004.[1]  (*See* Ex. 37.)  Presumably, Plaintiff did

7  not receive administrative redress.  Thus, pursuant to FEHA, unlawful employment practices

8  occurring prior to September 13, 2003, would be time barred.  In his DFEH claim, Plaintiff

9  claims that the most recent discrimination took place on December 15, 2003.  (*See id*.)  Plaintiff

10  stated that from December of 1999 and continuing he was harassed, forced to quit, denied

11  promotion, and discriminated against.  (*See id*.)  However, Plaintiff does not list specific

12  instances or acts of discrimination on the claim.

13        Plaintiff also filed a Charge of Discrimination with the EEOC on September 20, 2004.

14  (*See* Ex. 38.)  Presumably, Plaintiff also did not receive redress from this charge.  Pursuant to the

15  timeliness requirements for filing an EEOC charge, unlawful employment practices occurring

16  prior to November 25, 2003 would be time barred.  In his EEOC charge, Plaintiff states that the

17  earliest discrimination took place on December 26, 2003 and the latest on the same day.  (*See*

18  *id*.)  Plaintiff alleges that he "was discriminated against because of [his] race (White) and in

19  retaliation for [his] participation as a witness for an individual opposing discrimination."  (*See*

20  *id*.)  Specifically, Plaintiff alleged the following discriminatory acts:  on or about January 2000,

21  his "terms and conditions of employment were different than for others"; on or about November

22  16, 2001, and on a continuing basis he was issued "six disciplinary actions that non-Whites were

23  not subjected to the same adverse employment actions"; and on or about December 26, 2003, he

24  "felt forced to resign [his] position because of discriminatory actions taken against [him]."  (*Id.*)

25        In his Opposition, Plaintiff argues that his claims survive under the Continuing Violation

26  Doctrine.  (*See* Pl.'s Opp'n at 13.)  Plaintiff alleges that his "first verbal concerns were expressed

27

28        _____

        [1] On the complaint form, only the date of signature is legible.  The date on which it was filed
        cannot be ascertained from the form.

1   back in 2001 after he noticed Sgt. Avila demonstrated preference for the Hispanic deputies."

2   (*Id.*)  Plaintiff further alleges that he was unable to resolve the matter with Sgt. Avila and, as a

3   result, filed formal written grievances in March of 2002 "along with several written memoranda

4   to Chief Housouer throughout 2002."  (*Id.*)  Plaintiff alleges that "[i]t was not until his safety

5   was jeopardized that Plaintiff felt he had to resign on December 29, 2003, and then file with

6   DFEH and EEOC."  (*Id.*)

7         In *Nat'l R.R. Passenger Corp. v. Morgan*, the Supreme Court invalidated the Court of

8   Appeals for the Ninth Circuit's 'continuing violation' approach and held that "the statute

9   precludes recovery for discrete acts of discrimination that occur outside the statutory time

10  period."  *Morgan*, 536 U.S. at 105.  Before *Morgan*, the Ninth Circuit had permitted plaintiffs to

11  sue on otherwise time-barred claims "so long as they either [were] 'sufficiently related' to

12  incidents that [fell] within the statutory period or [were] part of a systematic policy or practice of

13  discrimination that took place, at least in part, within the limitations period."  *Id.*  With respect to

14  hostile work environment claims, the Court held that "consideration of the entire scope of a

15  hostile work environment claim, including behavior alleged outside the statutory period, is

16  permissible for the purposes of assessing liability, so long as an act contributing to that hostile

17  environment takes place within the statutory time period."  *Id.*  Therefore, the Supreme Court

18  limited its invalidation of the continuing violation approach to discrete actions of discrimination

19  and retaliation, but allowed consideration of actions outside the statutory period that constitute a

20  continuing hostile work environment.  *See id.*

21        Although Plaintiff has not made a specific hostile work environment claim under Title

22  VII or FEHA, such a claim would also be time-barred.  "In determining whether an actionable

23  hostile work environment claim exists, [a court should] look to 'all the circumstances,' including

24  'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or

25  humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an

26  employee's work performance.' "  *Id.* (quoting *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 23

27  (1993)).  Furthermore, in order to survive  a motion for summary judgment, a plaintiff "must

28  demonstrate that a genuine issue exists as to whether the violation continued into the relevant

1    period of limitations." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1108 (9th Cir. 1998)

2    (citing *Huckabay v. Moore*, 142 F.3d 233, 240 (5th Cir. 1998) (indicating that the continuing

3    violation doctrine "will render a complaint timely as to a course of conduct only if the complaint

4    is timely as to the most recent occurrence").

5        Here, Plaintiff has not provided factual allegations in his Complaint or Opposition that

6    any discriminatory, retaliatory, or hostile acts occurred after September 13, 2003, or November

7    25, 2003—the respective statutory limitations date for Plaintiff's FEHA and Title VII claims.  In

8    fact, Defendants assert that Plaintiff was on administrative leave during this time, and Plaintiff

9    has provided no evidence to the contrary.  (*See* Defs.' Reply at 4 (citing Devoy Decl. ¶ 6).)

10   Plaintiff also states that "Defendants' failure to provide backup with increasing regularity served

11   as the final straw for Plaintiff."  (Pl.'s Opp'n at 19.)  Yet, Plaintiff fails to allege that he was ever

12   threatened with the denial of backup or actually denied backup within the statutory time period.

13   In sum, Plaintiff has failed to establish that any act contributing to a hostile environment

14   occurred within the statutory time frame.

15       Accordingly, the Court **FINDS** that Plaintiff's claims under FEHA and Title VII are time-

16   barred under the relevant statutes of limitations.

17

18   **II.    Race Discrimination Claim in Violation of Title VII and FEHA**

19       Defendants also move for summary judgment on Plaintiff's race discrimination claims in

20   violation of FEHA and Title VII.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 22.)  Plaintiff's

21   Complaint alleges that Plaintiff "noticed that he, as well as other Caucasian and Black deputies,

22   were not provided preferential assignments given to Hispanic [d]eputies" and that "County

23   approached several [d]eputies and requested that they falsify reports regarding Caucasian

24   [d]eputies including [Plaintiff]."  (FAC at 5.)  Specifically, Plaintiff claims that "Manuel Avila,

25   Ralph Cardova, Josie Heath, Charles Jernigan, Delfino Matus and Jesse Obeso as managing

26   agents for County, and in carrying out their managerial duties, discriminated against [Plaintiff]

27   on the basis of his race."  (*Id*. at 12.)  For the reasons set forth below, the Court **GRANTS**

28

04cv2459

1   Defendants' Motion for Summary Judgment as to Plaintiff's claims under both Title VII and

2   FEHA.

3          Title VII of the Civil Rights Act of 1964 provides a federal remedy against race-based

4   employment discrimination.[2]  *See* 42 U.S.C. § 2000e (2006).  The California Fair Employment

5   and Housing Act provides a similar remedy at the state level.[3]  *See* Cal. Gov't Code § 12940

6   (West 2006).  Federal and California courts alike have utilized the same framework for

7   evaluating race discrimination claims under Title VII and FEHA.  *See Brooks v. City of San*

8   *Mateo*, 229 F.3d 917, 928 (9th Cir. 2000) (stating that courts may rely on federal Title VII

9   decision in interpreting analogous parts of FEHA).

10         In order to defeat a motion for summary judgment, a plaintiff in a Title VII case must first

11  make out a prima facie case of race discrimination.  *See Washington v. Garrett*, 10 F.3d 1421,

12  1432 (9th Cir. 1993).  To establish a prima facie case under Title VII, a plaintiff must show that

13  "(1) he is a member of a protected class; (2) he was qualified for his position; (3) he experienced

14  an adverse employment action; and (4) similarly situated individuals outside his protected class

15  were treated more favorably, or other circumstances surrounding the adverse employment action

16  give rise to an inference of discrimination."  *Fonseca v. Sysco Food Servs. of Ariz., Inc.*,  374

17  F.3d 840, 847 (9th Cir. 2004); *see also McDonnell Douglas v. Green*, 411 U.S. 732, 802 (1973).

18  If the plaintiff is able to establish a prima facie case, the burden of production then shifts to the

19  employer to articulate a legitimate, nondiscriminatory reason for the challenged action.  *See*

20  *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254 (1981).  If the employer carries this

21  burden, the plaintiff is afforded the opportunity to prove that the articulated reasons offered by

22  the employer are pretextual.  *See id.* at 253.

23

24

---

25         [2] Under 42 U.S.C. § 2000e, it is unlawful for an employer "to fail or refuse to hire or to discharge
    any individual, or otherwise discriminate against any individual with respect to his compensation, terms,
26  conditions, or privileges of employment, because of such individual's race[.]"

27         [3] Under Cal. Gov. Code § 12940, it is unlawful for an employer, "because of the race . . . of any
    person, to refuse to hire or employ the person or refuse to select the person for a training program
28  leading to employment or from a training program leading to employment, or to discriminate against the
    person in compensation or in terms, conditions, or privilege of employment."

04cv2459

1   Accordingly, in order to show a prima facie case of discrimination, "a plaintiff must offer

2   evidence that '[give[s] rise to an inference of unlawful discrimination.' " *Lowe v. City of*

3   *Monrovia*, 775 F.2d 998, 1005 (9th Cir. 1985), *as amended*, 784 F.2d 1407 (1986) (quoting

4   *Burdine*, 450 U.S. at 253).  The evidence may be either direct or circumstantial, and the amount

5   that must be produced in order to create a prima facie case is "very little." *Id*. at 1009.

6   Furthermore, "when a plaintiff has established a prima facie inference of disparate treatment

7   through direct or circumstantial evidence of discriminatory intent, he will necessarily have raised

8   a genuine issue of material fact with respect to the legitimacy or bona fides of the employer's

9   articulated reason for its employment decision." *Id*.

10       **A.   Prima Facie Case**

11   Defendants seek summary judgment as to Plaintiff's Title VII and the FEHA race

12   discrimination claims on the grounds that Plaintiff has not made out a prima facie case of

13   discrimination.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 23.)  In his Opposition, Plaintiff states

14   that he "reported his concerns to his supervisors regarding the preferential assignments given to

15   the Hispanic deputies and the disparate disfavor afforded to deputies of Caucasian lineage, such

16   as [Plaintiff]."  (*See* Pl.'s Opp'n at 23 (citing Tackett UMF ¶¶ 11, 12, 18, 20-22).)

17       Plaintiff has failed to establish, or dispute with material facts, that "similarly situated

18   individuals outside his protected class were treated more favorably, or other circumstances

19   surrounding the adverse employment action give rise to an inference of discrimination."

20   *Fonseca*, 374 F.3d at 847.  In support of his discrimination claim, Plaintiff asserts that he "began

21   to notice race played a factor in Sgt. Avila's decisions, such as vacation requests or promotional

22   opportunity, in that Hispanic deputies were shown preference."  (Tackett UMF ¶ 12 (citing

23   Tackett Dep. 358:12–359:2).)  However, as Defendants correctly point out, the portion of the

24   deposition cited by Plaintiff regards a dispute over denial of vacation time based on the seniority

25   of another officer and fails to even mention race discrimination or a preference for Hispanic

26   deputies.  (*See* Tackett Dep. 358:12–359:14.)  Plaintiff also asserts that "[f]ellow deputies

27   informed Plaintiff that Avila [was] coming after him because he was a 'white deputy.' "

28   (Tackett UMF ¶ 13 (citing Tackett Dep. 503:7-10).)  Even assuming such statement does not

15

1  constitute inadmissible hearsay, Plaintiff still fails to specify the manner in which Sgt. Avila was

2  allegedly "coming after" him or an instance in which such action occurred.

3       Plaintiff also asserts that "Sgt. Pompeyo Tabarez believes it is common knowledge at

4  [the] Sheriff's department that people are treated differently because of their 'face.'  No one

5  actually told Sgt. Tabarez that Plaintiff Tackett was disciplined because of his race, but it was

6  common knowledge.  He believes that deputies are being treated differently because, in part, of

7  their race."  (Tackett UMF ¶¶ 14-15 (citing Stratton Decl. ¶¶ 17, 18, 30).)  Although the Court

8  FINDS Plaintiff's assertions to be inadmissible[4], even assuming Sgt. Tabarez actually made such

9  statements, the statements are, nevertheless, conclusory and fail to provide any basis for how it is

10 "common knowledge."

11      Plaintiff also asserts that "similar situated employees were treated more favorably" and

12 "[i]t was a known fact that Hispanic officers were not subject to the same scrutiny."  (See Pl.'s

13 Opp'n at 24 (citing Tackett UMF ¶¶ 28, 29, 30, 32, 42, 52-56, 63, 64-69).)  However, Plaintiff's

14 support for his assertions almost uniformly fail to address the issue of discrimination on the basis

15 of race.[5]  Plaintiff asserts that he "communicated to others [that] he felt he was being retaliated

16

---

17      [4] Defendants have filed objections to the Declaration of Cynthia L. Stratton.  [Doc. No. 63.]  The
Stratton Declaration is almost uniformly inadmissible.  "[W]hen a party relies on deposition testimony

18 in a summary judgment motion without citing to page and line numbers, the trial court may in its
discretion exclude the evidence."  Orr v. Bank of Am., 285 F.3d 764, 775 (9th Cir. 2002) (excluding

19 deposition testimony based on the failure to cite the page and line numbers when referring to the
deposition).  Accordingly, " 'Judges need not paw over the files without assistance from the parties.' "

20 Id. (quoting Huey v. UPS, Inc., 165 F.3d 1084, 1085 (7th Cir. 1999).  For example, Plaintiff cites to the
Declaration of Plaintiff's attorney, Cynthia Stratton, which then cites to Sgt. Tabarez' Deposition for

21 support without specifying the location of the specific testimony.  (See Stratton Decl. ¶ 17.)  Ms.
Stratton's Declaration makes numerous references to the deposition testimony of several deponents.

22 However, the Declaration does not include a specific citation to the relevant deposition transcript.
Accordingly, the Court GRANTS Defendants' Objections 1-27 to the Stratton Declaration.

23

24      [5] Additionally, Plaintiff's Exhibits D, F, G, H, I and W are inadmissible for failure to properly
authenticate.  In order to support a motion for summary judgment, documents must be properly

25 authenticated.  See Cristobal v. Siegel, 26 F.3d 1488, 1494 (9th Cir. 1994) (citing Canada v. Blain's
Helicopters, Inc., 831 F.2d 920, 925 (9th Cir.1987)); see also Orr, 285 F.3d at 773.  Accordingly,

26 "[a]uthentication is a 'condition precedent to admissibility,' and this condition is satisfied by 'evidence
sufficient to support a finding that the matter in question is what its proponent claims.' "  Orr, 285 F.3d

27 at 773 (citing Fed. R. Evid. 901(a)).  Furthermore, a "writing is not authenticated simply by attaching it
to an affidavit. . . . The foundation is laid for receiving a document in evidence by the testimony of a

28 witness with personal knowledge of the facts who attests to the identity and due execution of the
document and, where appropriate, its delivery."  Beyene v. Coleman Sec. Services, Inc., 854 F.2d 1179,
1182 (9th Cir. 1988) (quoting United States v. Dibble, 429 F.2d 598, 602 (9th Cir.1970)).  "However, a

16

04cv2459

1  against, harassed[, and] discriminated for some time." (Tackett UMF ¶ 32 (citing Tackett Dep.

2  272:19-22).) Yet, Plaintiff fails to specify how or why he "felt" he was being discriminated

3  against. In addition, Plaintiff on several occasions either admitted or was uncertain whether race

4  played a factor in the Department's hiring decisions towards Plaintiff, or failed to provide any

5  factual foundation to support his claims.[6] (See Tackett Dep. 620:5-8, 635:2-5, 639:21-23, 644:1-

6  3, 658:10-13.)

7         Under the section of Plaintiff's Opposition regarding the intentional infliction of

8  emotional distress claim, Plaintiff also asserts that "County applied an entirely different set of

9  rules to Plaintiff as compared to his Hispanic peers." (Pl.'s Opp'n at 24 (citing Tackett UMF ¶¶

10  27, 33-38, 47-51, 63).) Plaintiff asserts that discipline was issued disparately because Officers

11  Matuse and Fannin were not disciplined for rolling their vehicles and Officers Toledano,

12  Jernigan, De Leon, Avila, and Lowenthal were not disciplined for damage to their patrol cars,

13  while Plaintiff received discipline for rolling his vehicle. (See Tackett UMF ¶¶ 27, 33.)

14  However, Plaintiff fails to provide any evidence demonstrating whether or not the other officers

15  were punished or the circumstances surrounding the alleged similar incidents, making it

16  impossible to deduce whether Plaintiff was treated less favorably under similar circumstances.

17  In support of his assertion, Plaintiff cites to his deposition where he states that he "believes

18  Justine Matuse didn't get [disciplined] for crashing into a vehicle and totaling his vehicle." (See

19

20

21

22  proper foundation need not be established through personal knowledge but can rest on any manner
    permitted by Federal Rule of Evidence 901(b) or 902." Orr, 285 F.3d at 774 (citing Fed.R.Evid. 901(b)

23  (providing ten approaches to authentication); Fed.R.Evid. 902 (self-authenticating documents need no
    extrinsic foundation)). Here, Plaintiff has failed to provide any foundation for Exhibits D, F, G, H, I,

24  and W. Rather, Plaintiff has simply attached the Exhibits without making a showing of authenticity.
    Therefore, the Court **FINDS** Exhibits D, F, G, H, I, and W inadmissible.

25      [6] For example, Plaintiff testified that he "d[idn't] think [race] played a factor in the FTO
    decision." (See Tackett Dep. 620:5-8.) In response to the question of whether Plaintiff felt "that

26  the fact you weren't chosen for this position was based upon your race in any way," Plaintiff
    responded "I don't know whether it was or it wasn't." (See 635:2-5.) Also, in response to

27  questions regarding a narcotics job placement, Plaintiff testified that he did not "feel that not
    getting [the] assignment was based upon [his] race." (See 639:21-23.) In two additional

28  instances, Plaintiff admitted that race did not play a factor in not being selected for a position.
    (See 644:1-3; 658:10-13.)

17                                                                                04cv2459

1 Tackett UMF ¶ 27 (citing Tackett Dep. 496:14-25; Tackett Decl. ¶¶ 7-10[7]).) However, Plaintiff

2 has laid no factual foundation for this belief and has failed to demonstrate that the conditions of

3 Officer Matuse's accident were similar to the conditions under which he was disciplined.

4 Plaintiff also stated that he is "not sure if [Officer Fannin] ever did [receive discipline]."

5 (Tackett Dep. 262:22-23.)

6       In support for his disparate treatment claim, Plaintiff states that Mary Tackett, through her

7 job as a payroll processor, was "aware that those deputies that got stuck in the sand and had to be

8 towed out, did not suffer discipline" and that "deputies rolling cars as they reached for candy off

9 the floorboard . . . never suffered discipline." (*See* UMF ¶¶ 36-37 (citing Mary Tackett Dep.

10 22:23-23:5, 23:15-22).)  When asked how she knows that there was an incident where somebody

11 rolled a car because they were trying to get candy and they were not disciplined, Ms. Tackett

12 replied that she learned this through "casual conversations" with the Sheriff and others and could

13 not remember when such conversations occurred.  (*See*  Mary Tackett Dep. 22:23-23:5.)  Even

14 assuming that Plaintiff's cited evidence does not constitute inadmissible hearsay, Plaintiff has

15 still failed to demonstrate that other similarly situated employees were not disciplined for

16 conduct occurring under conditions similar to the incidents for which Plaintiff was disciplined.

17       Plaintiff has failed to establish, or dispute with material facts, that he was qualified for

18 each position or that similarly situated individuals outside his protected class were treated more

19 favorably.  Plaintiff has also failed to show that the circumstances surrounding the alleged

20 adverse employment actions suggest a discriminatory motive.  Thus, Plaintiff has not met even

21 his initial burden of proving a prima facie case of discrimination.

22

23       [7] Additionally, Defendants have objected to portions of paragraphs 7-10 of Plaintiff
Tackett's Declaration for lack of foundation and failure to demonstrate personal knowledge.
[Doc. No. 64.]  In his declaration, Plaintiff states that "other deputies who damaged their patrol cars,

24 were not written up," and "[d]eputies engaged in training exercises with their FTO present were never
faulted for patrol vehicle damage."  (*See* Tackett Decl. ¶ 7.)  Plaintiff further states that he saw a

25 memo written by Sgt. Gutierrez indicating that the accident was unavoidable, but that the
document was later shredded by Chief Housouer.  (*See id.* ¶ 8.)  Plaintiff also states that "the

26 vehicle sustained further damage later the same day while under the control of other deputies,"
"these deputies were not reprimanded," and "[d]espite my understandable rush to respond to the

27 bomb alert, I found that I was reprimanded more harshly that my peers."  (*See id.* ¶ 9-10.)
Plaintiff has failed to demonstrate that he has personal knowledge of or set forth any evidence

28 providing a foundation for the above assertions.  Accordingly, the Court **GRANTS** Defendants'
Objections 3-7.

04cv2459

1    Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to

2    Plaintiff's discrimination claim under both Title VII and FEHA.

3    **B.    Retaliation**

4    While not specified in his complaint, Plaintiff alleges in his Opposition to Summary

5    Judgment that "County's repercussions against Plaintiff following the expression of his concerns

6    . . . constituted a violation of [FEHA and Title VII]."  (*See* Pl.'s Opp'n at 23.)  Similar to

7    disparate treatment claims, the burden shifting analysis provided by *McDonnell Douglas*, as

8    outlined above, also governs retaliation claims.  *See Yartzoff v. Thomas*, 809 F.2d 1371, 1375

9    (9th Cir. 1987).  In order to establish a prima facie case of retaliation, a plaintiff must show that

10   (1) she engaged or was engaging in protected activity, (2) the employer subjected her to an

11   adverse employment decision, and (3) there was a causal link between the protected activity and

12   the employer's action.  *Id.*; *see also Brooks*, 229 F.3d at 928.  Additionally, "[c]ausation

13   sufficient to establish the third element of the prima facie case may be inferred from

14   circumstantial evidence, such as the employer's knowledge that the plaintiff engaged in

15   protected activities and the proximity in time between the protected action and the allegedly

16   retaliatory employment decisions."  *Id.* at 1376.

17   Plaintiff has met the first prong of a prima facie case of retaliation by showing that he, in

18   at least one instance, engaged in protected activity.  Plaintiff alleges that he "verbally

19   complained of Sgt. Avila's continued favoritism toward the Hispanic deputies."  (*See* Pl.'s

20   Opp'n at 8.)  In support of this assertion, Plaintiff cites to his entire deposition.  (*See* UMF ¶ 20

21   (citing Tackett Dep., vol. 1).)  However, "when a party relies on deposition testimony in a

22   summary judgment motion without citing to page and line numbers, the trial court may in its

23   discretion exclude the evidence."  *Orr*, 285 F.3d at 775.  Since Plaintiff has relied on deposition

24   testimony without citing to page and line numbers, the Court excludes this evidence.

25   Additionally, as indicated above, several of Plaintiff's purported complaints attached as exhibits

26   are unauthenticated and therefore inadmissible.[8]  (*See* Exs. D, F, H, I.)  However, on March 4,

27   2002, Plaintiff filed a grievance for "continued harassment, discrimination, and retaliation" with

28

_____

   [8] *See supra* n.5.

04cv2459

1    County.  (*See* Ex. E.)  The Court FINDS that this grievance report filed by Plaintiff with County

2    constitutes protected activity.  *See Passantino v. Johnson & Johnson Consumer Prods., Inc.*, 212

3    F.3d 493, 506 (9th Cir. 2000) (finding employee's complaints to employer concerning alleged

4    sex discrimination to be protected activity).

5         However, Plaintiff has failed to demonstrate that he was subjected to an adverse

6    employment action.  Plaintiff alleges that Sgt. Avila forbade him from making traffic stops

7    within incorporated city limits and from placing individuals in the back of his patrol car.  (*See*

8    Pl.'s Opp'n at 8.)  However, Plaintiff misstates the counseling memo that he cites as support for

9    his assertion.  In the counseling memo, Sgt. Avila states that he told Plaintiff "not to make[]

10   traffic stops in the City of Brawley," because "Brawley has its own [p]olice [d]epartment" and

11   Plaintiffs "primary duties are in the unincorporated areas of Imperial County."  (*See* Ex. L; Ex. 1

12   to Avila Dep.)  Sgt. Avila also indicated that Plaintiff was "not to place anyone in the back of

13   your unit, unless they were under arrest."  (*See id*.)  Plaintiff was not forbidden to place

14   individuals in the back of his patrol vehicle under all circumstances.

15        Even assuming that the above action take by Sgt. Avila constitutes an adverse

16   employment action, Plaintiff has still failed to satisfy the third prong–establishing a causal link.

17   Plaintiff has not provided evidence indicating that Sgt. Avila knew of his grievance prior to the

18   date on which the counseling memo was issued.  In fact, Plaintiff states that "no one . . . ever

19   talked to Sgt. Avila regarding Plaintiff's discrimination complaint."  (*See* Pl.'s Opp'n at 23.)

20   Therefore, Plaintiff is unable to establish a causal link through circumstantial evidence of Sgt.

21   Avila's knowledge of the complaint.  Plaintiff has also failed to provide a temporal connection

22   indicating a retaliatory motive.  In fact, Plaintiff's March 4, 2002, grievance was filed after the

23   counseling memo was issued by Sgt. Avila.  (*See* Exs. E, L.)

24        Accordingly, the Court **GRANTS** summary judgment on Plaintiff's retaliation claim

25   under both Title VII and FEHA.

26   **C.    Failure to Take Remedial Measures**

27        Plaintiff also alleges that "County's failure to remediate these concerns . . . constituted a

28   violation of [FEHA and Title VII]."  (*See* Pl.'s Opp'n at 23.)  However, a claim for failure to

take remedial or preventative measures is dependent on a finding of discrimination.  *See Tritchler v. County of Lake*, 358 F.3d 1150, 1154-55 (9th Cir. 2004); *Trujillo v. North County Transit Dist*., 63 Cal. App. 4th 280, 289 (1998).  Since Plaintiff has failed to set forth a genuine issue of material fact as to the alleged race discrimination claim, a claim of failure to prevent such discrimination cannot survive summary judgment.  Therefore, Plaintiff's claim for failure to prevent discrimination meets a similar fate.

Accordingly, the Court **GRANTS** summary judgment on Plaintiff's claim for failure to prevent discrimination under both Title VII and FEHA.

**III.   Wrongful Termination in Violation of California Labor Code Section 1102.5 and Retaliation in Violation of Public Policy**

Defendants also move for summary judgment as to Plaintiff's claims alleging wrongful termination and retaliation in violation of California Labor Code Section 1102.5 and public policy.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 14-19.)  Defendants argue that Plaintiff has failed to set forth a prima facie case of wrongful termination or retaliation, and that Defendants have established legitimate, non-retaliatory reasons for disciplining Plaintiff.  (*See id.*)  Plaintiff, however, states that he engaged in several instances of protected activity and claims that the "retaliatory backlash which followed shortly after [Plaintiff's] reports included groundless suspensions, denied merit increases, unfounded write-ups, and false internal audits."  (*See id*. at 8.)  Plaintiff's claim for retaliation in violation of public policy is premised on the same allegations.  (*See id*. at 8-10.)  For the reasons set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim of wrongful termination and retaliation in violation of California Labor Code Section 1102.5 and public policy.

Pursuant to California Labor Code Section 1102.5:

(b) An employer may not retaliate against an employee for disclosing information to a government or law enforcement agency, where the employee has reasonable cause to believe that the information discloses a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation[, and]

21

04cv2459

(c) An employer may not retaliate against an employee for refusing to participate in an activity that would result in a violation of state or federal statute, or a violation or noncompliance with a state or federal rule or regulation.

Cal. Labor Code § 1102.5 (West 2006). Similar to disparate treatment claims, the burden shifting analysis provided by *McDonnell Douglas*, as outlined above, also governs retaliation claims under Section 1102.5. *See Patten v. Grant Joint Union High School*, 134 Cal. App. 4th 1378, 1384 (2005). In order to establish a prima facie case of retaliation under Section 1102.5, "a plaintiff must show (1) she engaged in a protected activity, (2) her employer subjected her to an adverse employment action, and (3) there is a causal link between the two." *Id.*

**A.    Protected Activity**

Plaintiff alleges that he engaged in several instances of protected activity. First, Plaintiff states that he "reported his concerns of interference with law enforcement activities to his superiors" and that if Plaintiff "had acted as his superiors instructed and disregarded criminal activity or falsified his reports," he would have violated laws pursuant to Section 96.5(a)[9] and 137(c)[10] of the California Penal Code, as well as Government Code Section 53894.[11] (*See id.* at 6-7.) Further, Plaintiff alleges that he reported his concerns regarding disparate treatment in violation of Government Code § 12940[12] and instructions given to other deputies not to provide backup to Plaintiff. (*See id.* at 7.) Defendants assert that Plaintiff has "no evidence to establish

---

[9] Section 96.5(a) provides that "[e]very judicial officer, court commissioner, or referee who commits any act that he or she knows perverts or obstructs justice, is guilty of a public offense punishable by imprisonment in a county jail for not more than one year." Cal. Penal Code § 96.5(a) (West 2006).

[10] Section 137(c) provides that "[e]very person who knowingly induces another person to give false testimony or withhold true testimony not privileged by law or to give false material information pertaining to a crime to, or to withhold true material information pertaining to a crime from, a law enforcement official is guilty of a misdemeanor." Cal. Penal Code § 137(c) (West 2006).

[11] Section 53894 provides that "[a]n officer of a local agency wilfully and knowingly rendering a false report is guilty of a misdemeanor." Cal. Gov't Code § 53894 (West 2006).

[12] Plaintiff's claim of retaliation for reporting FEHA violations is discussed above. Accordingly, Plaintiff's Section 1102.5 claim for retaliation for expressing concerns of FEHA violations also fails to survive summary judgment.

22

04cv2459

1   that he ever disclosed a violation of law to Defendants, or that he refused to participate in any

2   activity constituting a violation of law." (*See* Defs.' Mem. Supp. Mot. Summ. J. at 16.)

3       Section 1102.5 "is a whistle blower statute, pure and simple, and is designed to protect an

4   employee from being persecuted from his employer for reporting to government officials what

5   the employee reasonably believes to be some form of illegal conduct." *Stiesberg v. State of Cal.*,

6   80 F.3d 353, 358 (9th Cir. 1996).[13] "To survive summary judgment, [a] plaintiff [is] not required

7   to prove an actual violation as long he reported his 'reasonably based suspicions' of the illegal

8   activity." *Love v. Motion Industries, Inc.*, 309 F.Supp.2d 1128, 1135 (N.D. Cal. 2004) (citing

9   *Green v. Ralee Engineering, Co.*, 19 Cal. 4th 66, 87 (1998)). Additionally, complaints that

10  encompass only "internal personnel matters . . . rather than the disclosure of a legal violation" do

11  not qualify as a protected activity. *Patten v. Grant Joint Union High School*, 134 Cal. App. 4th

12  at 1385.

13      Plaintiff's claim of retaliation for expressing his concerns regarding FEHA violations is

14  discussed above. In his Opposition, Plaintiff alleges that "he protested the lapses in policy and

15  Defendants' failure to honor the foremost directive of a law enforcement officer, which is to

16  uphold the law and protect the public interest." (*See* Pl.'s Opp'n at 26 (citing Tackett UMF ¶¶

17  87, 89, 92, 116-17, 122-24).) Plaintiff alleges that he "complained to Sgt. Tabarez . . . regarding

18  Sgt. King's inappropriate conduct and conflict of interest related to prohibiting Plaintiff from

19  including [a] battery charge in [the] citation against Lackey." (*See* Tackett UMF ¶ 87.) Plaintiff

20  also states that he "informed Deputy District Attorney Collings about Mr. Lackey's battery upon

21  an officer." (*See* Tackett UMF ¶ 89.) However, Plaintiff has not stated that he informed the

22  D.A. of any violation committed by Defendants. Plaintiff also states that he "complained that

23  the District Attorney [and] Sheriff conspired not to file charges against Lackey." (*See* Tackett

24

25

---

26      [13] Defendants reliance on *Steisberg* is misplaced. In *Steisberg*, the Ninth Circuit found that the
    plaintiff did not report any illegal conduct by the employer, but rather only reported the illegal conduct

27  of the daughters of the California Highway Patrol commissioner through traffic citations. *Steisberg*, 80
    F.3d at 358. Here, Plaintiff is not alleging that he only reported the illegal conduct of others, but he is

28  alleging that he reported Defendants' illegal conduct through their interference with investigations and
    retaliation and discrimination against Plaintiff.

04cv2459

1   UMF ¶ 92.)  However, Plaintiff again fails to provide any evidence as to the nature of his

2   complaint or of what violations he specifically complained.

3          Additionally, Plaintiff states that "he protested that the marijuana investigation was

4   intentionally impeded" by D.A. Otero and through having warned Mr. Mohammed beforehand.

5   (*See* Tackett UMF ¶ 117 (citing Tackett Dep. 522:6-22; 580:22-581:17.)  As Defendants

6   correctly point out, the cited deposition testimony does not state that Plaintiff complained to

7   anyone about the alleged interference.  Plaintiff also states that he "protested the change in the

8   Bertussi case handling form and the false accusations brought against Plaintiff," and that "Gary

9   Tackett also sent a letter to Sheriff Carter over these events."  (*See* Tackett UMF ¶ 124 (citing

10  Tackett Decl. ¶¶ 14, 18.; Gary Tackett Dep. 57:12-23, 74:50-75:11, 75:13-77:24; Ex. W.)

11  However, the cited evidence does not reference any specific complaints or to whom such

12  complaints were made.[14]

13         In addition, Plaintiff asserts that he protested the unequal property damage discipline, the

14  unequal back-seat memo, the false probation write-up, the denial of backup, and the code of

15  silence.  (*See* Pl.'s Opp'n at 16 (citing Tackett UMF ¶¶ 28-30, 32, 42, 52-56, 63-69, 138).)

16  However, Plaintiff's evidence almost uniformly fails to indicate that Plaintiff in fact made the

17  alleged complaints or to whom the complaints were made.[15]  Also, Plaintiff has failed to show

18  that the alleged complaints were based on a violation of law or Plaintiff's unwillingness to

19  engage in any illegal action.  Only Exhibit E (Plaintiff's grievance against Sgt. Avila) provides

20  evidentiary support for Plaintiff having actually filed a complaint with County based on an

21  alleged legal violation.  (*See* Ex. E.)  However, as described above, Plaintiff has failed to set

22

23         [14] Additionally, Plaintiff has not provided the Court with pages 74-77 of Gary Tackett's
     deposition, and Ex. W is unauthenticated and thus inadmissible for purposes of summary judgment, as
24   described above. Defendants have also objected to paragraph 18 of Plaintiff Tackett's Declaration for
     lack of foundation and failure to demonstrate personal knowledge.  [Doc. No. 64.]  Plaintiff simply
25   states that he "later learned that the Case Handling form on the Bertussi matter had been changed and
     the charges . . . dropped at the Sheriff department's request.  Changing a case handling form is
26   something that is never done."  (*See* Tackett Decl. ¶ 18).  Plaintiff has failed to demonstrate personal
     knowledge of how he learned of such actions or how he knows that changing a case handling form is
27   never done.  Accordingly, the Court **GRANTS** Defendants' Objection 10.

28         [15] For example, Plaintiff states that he "believes he did." (Tackett Dep. 270:16.)
     Additionally, as described above, Plaintiff's exhibits D, F, G, H, and I are unauthenticated and thus,
     inadmissable.

1  forth any genuine issue of material fact that he was retaliated against in response to that

2  grievance.

3      In response to an interrogatory asking Plaintiff to "state all facts upon which Plaintiff

4  bases the contention that Plaintiff 'reported his concerns' . . . .," Plaintiff stated that he "reported

5  actions by Sergeant Avila to Chief Housouer, Assistant Sheriff Schneewind, Sheriff Carter, and

6  County by filing grievances along with verbally complaining." (*See* Resp. Interrog. 6; Ex. 5 at

7  6.) Plaintiff also stated that he "reported illegal or hostile actions by Sergeant Avila and Chief

8  Housouer to Sergeant Tabarez Sr. And Sergeant David Obeso." (*See id*.) In response to an

9  interrogatory requesting that Plaintiff "state all facts upon which Plaintiff bases the contention

10  that Plaintiff 'expressed his concern that he would be complicit in these crimes if he complied

11  with his superiors orders' . . . .," Plaintiff stated that he "advised Chief Housouer of the

12  perceived problems noted in the federal lawsuit after Plaintiff received memos of actions only

13  targeting him."   (*See* Resp. Interrog. 7; Ex. 5 at 7.) However, Plaintiff has failed to set forth

14  any specific facts indicating what concerns he was reporting or when such reports were made.

15  Additionally, in response to questions regarding Sgt. Avila's alleged order to not conduct

16  probation or parole searches, Plaintiff testified that he was not sure of what the substance of the

17  state or federal law was that he felt was being violated. (*See* Tackett Dep. 323:14-20.) Plaintiff

18  also testified that he could not recall whether his report to Chief Housouer "put it in [the]

19  context" of a violation of state or federal law." (*See* Tackett Dep. 323:14-20.)

20      Although Plaintiff's Complaint and Opposition to Summary Judgment are far from

21  models of clarity, the Court does not find that Plaintiff has failed entirely to put forth any

22  genuine issue of material fact that he was engaged in protected activity.  For example, Plaintiff

23  has shown that he filed a grievance with Chief Housouer based on the alleged discrimination and

24  retaliation by Sgt. Avila.  (*See* Ex. E.)   However, Plaintiff's evidence almost uniformly fails to

25  demonstrate that Plaintiff in fact made the alleged complaints, to whom the complaints were

26  made, or the specific concerns about which Plaintiff was allegedly complaining.

27

28

04cv2459

### B.    Adverse Employment Action and Causal Link

Plaintiff alleges that he suffered adverse employment actions including: property damage write-ups, "back seat restriction," work hour violation, probation write-up, the denial of backup, investigations, and the Defendants' alleged encouragement of other officers to bear false witness against Plaintiff.  (*See* Pl.'s Opp'n at 16 (citing Tackett UMF ¶¶ 27, 33-41, 47-51, 62-73, 90-91, 95-96, 101, 127-28, 131, 150).)   In California, an employee seeking recovery on a claim of retaliation must show she suffered an adverse employment action that "materially affects the terms, conditions, or privileges of employment, rather than simply that the employee has been subjected to an adverse action or treatment that reasonably would deter an employee from engaging in the protected activity."  *Yanowitz v. L'Oreal USA, Inc.*, 36 Cal. 4th 1028, 1051 (2005); *see also Patten*, 134 Cal. App. 4th at 1388 (applying the "materiality" test to claims under Section 1102.5).

As described above, Plaintiff has failed to show any adverse action based on Sgt. Avila's memo regarding Plaintiff's use of the back seat in stops.  In fact, Plaintiff mischaracterizes Sgt. Avila's memo as prohibiting Plaintiff from placing suspects in the back seat of the patrol car under any situation.  Additionally, Plaintiff has failed to show that the alleged "work-hour" violation constitutes an adverse employment action that materially affects the terms or conditions of his employment.[16]  With respect to Plaintiff's allegation that Defendants issued an order not to provide him with backup, Plaintiff fails to put forth any evidence that such an order was given or that he was placed in a situation where backup failed to show due to Defendants' alleged order.  Plaintiff states that "Deputies such as J.L. Lopez were specifically told to stay away from Plaintiff."  (*See* Tackett UMF ¶ 64.)  Even assuming Plaintiff's evidence does not constitute inadmissible hearsay, Plaintiff also fails to state who allegedly told Lopez to "stay away" from Plaintiff.  Additionally, Plaintiff's cited deposition testimony indicates that there was one incident "where [he] felt response was slow" and that he just had a "personal feeling"

---

[16]  Additionally, in support for the contention that Plaintiff's alleged eighteen hour shift constituted an adverse employment action, Plaintiff simply cites to the declaration of his attorney which then cites to Chief Sharon Housouer's deposition testimony.  Since Plaintiff failed to cite to the location of such testimony, the Court excludes such evidence.

04cv2459

1   that the slow response was due to an order by the Department.  (*See* Tackett Dep. 469:5-24.)  In

2   sum, Plaintiff has failed to show that he was in fact ever threatened with no backup or an

3   incident where backup failed to show.  Plaintiff also failed to provide support for his contention

4   that his peers were encouraged to "bear false witness against him," that his peers ever falsely

5   testified against him, that they were threatened for supporting him, or how this adversely

6   affected Plaintiff's employment.

7         While the Court finds that the discipline for property damage, and the probation and

8   suspension of Plaintiff do constitute adverse employment actions, Plaintiff has failed to put forth

9   any evidence that such actions were causally linked to Plaintiff's engagement in protected

10  activity.  First, Plaintiff has failed to put forth any facts showing a temporal connection between

11  the actions.  Plaintiff simply states that the "retaliatory write-ups of Plaintiff closely followed his

12  engagement in protected activity."  (*See* Pl.'s Opp'n at 16.)  However, Plaintiff does not put

13  forth any facts showing a close time-frame, such as dates or length of time between his alleged

14  protected activity and the adverse actions.  Additionally, Plaintiff has failed to show that Sheriff

15  Carter, who was the final decision maker with respect to the disciplinary actions taken against

16  Plaintiff, ever knew that Plaintiff engaged in any protected activity under Section 1102.5.  *See*

17  *Morgan v. Regents of Univ. of Cal.*, 88 Cal. App. 4th 52, 69 (2000) (*See* Exs. 7, 13, 21, 27; *see*

18  *also* Carter Decl. ¶ 12.)  In addition, Plaintiff testified that he did not feel he was the victim of

19  retaliation relating to "the drug bust" (*see* Tackett Dep. 420:9-12) and that he did not feel that the

20  notice of termination stemming from the "Bertussi incident" was given because he complained

21  about any violation of state or federal law (*see* Tackett Dep. 436: 21-437:5).  Plaintiff has

22  therefore failed to show a causal connection between the alleged protected activity and the

23  adverse employment actions.

24        Plaintiff has, thus, failed to set forth a prima facie case of retaliation pursuant to Section

25  1102.5.  However, even assuming that Plaintiff was able to meet this initial burden, Defendants

26  have, nevertheless, provided legitimate and nondiscriminatory reasons for the disciplinary

27  actions.

28

04cv2459

### C.      Legitimate, Nondiscriminatory Reasons and Pretext

Even assuming that Plaintiff has established a prima facie case, which he has not,
Defendants have articulated legitimate, nondiscriminatory reasons explaining why Plaintiff was
subjected to departmental discipline.  Defendants have provided evidence through disciplinary
documentation and investigation reports detailing legitimate reasons for Defendants' disciplinary
action against Plaintiff.  (*See* Exs. 7, 8, 10, 12, 13, 17, 21, 24, 27, 29, 33.)  Defendants'
articulated legitimate reasons for Plaintiff's discipline include: several instances involving
damage to his patrol vehicle, and instances where Defendants found that Plaintiff had failed to
follow orders and proper protocol, such as in the "Lackey," "Bertussi," and "Macias" incidents,
as provided in detail above.  Once a defendant has provided a legitimate, nondiscriminatory
reason for the adverse action, the burden shifts back to the plaintiff to show that the proffered
reason is actually a pretext for retaliation.  *See Patten*, 134 Cal. App. 4th at 1384. However,
"[a]n employee in this situation can not 'simply show the employer's decision was wrong,
mistaken, or unwise," but "[r]ather, the employee must demonstrate such weaknesses,
implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered
legitimate reasons for its action that a reasonable factfinder could rationally find them 'unworthy
of credence.' "  *Morgan*, 88 Cal. App. 4th at 75 (citations omitted).  Additionally,
"[c]ircumstantial evidence of 'pretense' must be 'specific' and 'substantial' in order to create a
triable issue with respect to whether the employer intended to discriminate on an improper
basis." *Id.* at 69 (citing *Goodwin v. Hunt Wesson, Inc*., 150 F.3d 1217, 1220 (9th Cir. 1998)).

Here, Plaintiff has failed to produce any specific, substantial evidence of pretext to
uphold his claim of unlawful retaliation.  Plaintiff again states that he "was the only deputy
forbidden from placing suspects in the back seat of his patrol vehicle" and that other peers
suffered no or little discipline for damaging their vehicles.  (*See* Pl.'s Opp'n at 16.)  However, as
stated above, Plaintiff has failed to put forth any evidence that he was singled out or that his
peers suffered little or no discipline for incidents occurring under similar circumstances.  With
respect to the "Lackey incident," Plaintiff alleges that he "received reprimand even though his
actions in this event were in conformity with County policy."  (*See id.* at 17.)  In support of this

04cv2459

1   contention, Plaintiff states that in Sgt. Tabarez' opinion it is never permissible for a suspect to

2   strike an officer.  (*See id.*)  However, Plaintiff only cites to his attorney's declaration in support

3   and fails to provide a citation to Sgt. Tabarez' purported testimony.  (*See* Tackett UMF ¶ 83-84.)

4   Additionally, even if Sgt. Tabarez had testified as such, Plaintiff still fails to show how he

5   proceeded in conformity with proper procedures or how he was issued greater discipline.

6        Plaintiff also asserts that the "Mohammed incident" is another example of pretext and that

7   Plaintiff's actions "solidified his reputation as a whistle blower and those close to him advised

8   him to "leave it alone." (*See* Pl.'s Opp'n at 17.)  However, Plaintiff fails to show any connection

9   between his actions in this incident and any resulting adverse employment action indicative of

10   pretext.  Plaintiff also relies on his description of the "Betrussi incident" to show that

11   Defendants' actions were pretextual.  (*See id.*)  Plaintiff states that "[t]he manner in which the

12   case handling form was mysteriously changed . . . is yet another example of how the County

13   treated individuals differently . . . ." (*See id.*)  Plaintiff also states that it was "disturbing" how

14   Under Sheriff Jerigan pursued the internal affairs investigation while the criminal matter was

15   still pending and a fellow deputy was asked to give an untrue statement and to "just give us

16   Tackett." (*See id.*)  However, Plaintiff only cites to uncorroborated and inadmissible hearsay[17]

17   (*see* Tackett UMF ¶ 127) or to his attorney's declaration rather than the location of the purported

18   testimony (*see* Tackett UMF ¶ 132).  Plaintiff also fails to provide support, besides rehashing

19   conclusory allegations and citation to unauthenticated documents, for the fact that the

20   investigation was in violation of departmental policy.  (*See* Tackett UMF ¶¶ 96, 124 .)

21        Plaintiff also states that "County's self-initiated  investigation of the Macias matter" was

22   in violation of policy since there was no complaint on file.  (*See* Pl.'s Opp'n at 17.)  However,

23   Plaintiff only relied on a statement allegedly made by Sheriff Carter in an unidentified

24   newspaper article on an unknown date.  (*See* Tackett UMF ¶ 95.)  Nevertheless, Plaintiff fails to

25

26        [17] Hearsay is an out of court statement offered to prove the truth of what it asserts.  Fed.
    R. Evid. 801(c).  Here, Plaintiff offers the out of court statement "Just give us Tackett and they
27   will leave you alone." (Tackett UMF ¶ 127.)  The statement is offered to prove that other
    deputies were threatened and asked to provide untruthful statements about Plaintiff. Hearsay
28   statements are admissible only if they fall within one of the exceptions set forth in the Federal
    Rules of Evidence.  *See* Fed. R. Evid. 803, 804.  However, the statement is not admissible under
    any of the hearsay exceptions set forth in the Federal Rules of Evidence.

04cv2459

1    show how having no complaint on file constitutes circumstantial evidence of pretext or how this
2    casts doubt on the investigation and its findings.  Plaintiff also fails to provide any factual
3    foundation of personal knowledge of his contention that Deputy Lindberg was "proposed for
4    termination after he affirmed that Plaintiff properly obtained consent from Macias" and was then
5    "miraculously rehired."  (*See* Pl.'s Opp'n at 17.)  Plaintiff also fails to provide support for his
6    contention that "it was well known within the force that Plaintiff was being targeted and anyone
7    who supported him was deemed to be against the County and thereby targeted for retaliation as
8    well."  (*See* Pl.'s Opp'n at 18 (citing Tackett UMF ¶¶ 70-73, 127, 128, 150).)  Plaintiff again
9    relies on hearsay (*see* Tackett UMF ¶¶ 127, 150) and fails to provide a citation to the purported
10   testimony by Sgt. Tabarez (*see* Tackett UMF ¶¶ 72-73).  Nevertheless, Plaintiff does not provide
11   any evidence to cast doubt on the specific disciplinary actions and investigations conducted by
12   the department against Plaintiff.  Plaintiff also states that there is "evidence of corruption," but
13   fails to show how such alleged corruption provides evidence of pretense as to Plaintiff's
14   discipline.  (*See* Pl.'s Opp'n at 18.)

15        Plaintiff also points to his reputation and work history as a good officer.  (*See id.*)
16   Plaintiff states that Sgt. Avila, Sgt. King, Sgt. Tabarez, Chief Housouer, and Sheriff Carter "all
17   agreed that Plaintiff Tackett was an energetic and dedicated officer, who had a high arrest rate,
18   was above average as compared to his peers, [and] performed 50% more traffic stops than his
19   peers."  (*See id.* (citing UMF ¶¶ 6-10).)  Even assuming that Plaintiff's proffered evidence is
20   admissible, Plaintiff has still failed to show how this casts doubt on the lengthy disciplinary
21   findings and investigations brought against Plaintiff.  While Plaintiff continually points to his
22   "high arrest rate," he does not show how this high arrest rate would make his being legitimately
23   disciplined implausible or inconsistent.  Plaintiff also alleges that "Sheriff Carter stated that the
24   discipline against him 'had nothing to do with anything he did.' "  (*See id.* (citing UMF ¶ 157).)
25   However, Plaintiff cites to the deposition of Mary Tackett who stated that Sheriff Carter had
26   made the statement to her, could not remember when such statement was made to her, and failed
27   to provide a factual foundation for what "discipline" Sheriff Carter was referring.  (*See* Mary
28   Tackett Dep. 48:2-49:15.)  Lastly, Plaintiff questions how he could have been faulted with

04cv2459

1    policy infractions if there was no policy manual in effect.  (*See* Pl.'s Opp'n at 18.)  However,

2    Plaintiff does not show or allege that without such a manual he was unable to determine whether

3    the actions for which he was suspended were against policy.  In fact, Plaintiff cites to an

4    unauthenticated deposition testimony by Sgt. Avila, where Sgt. Avila states that he relied on

5    Academy training and experience and that officers were sent for further training during their

6    career.  (*See* Avila Dep. 25:12-23.)

7         Therefore, the Court **FINDS** that Plaintiff has failed to show that Defendants' legitimate

8    and nondiscriminatory reasons were pretextual.

9         **D.   Constructive Discharge**

10        Plaintiff also alleges that he was constructively discharged by Defendants through their

11   refusal to provide him with backup and their "relentless mission to silence his protest of

12   governmental misconduct."  (*See* Pl.'s Opp'n at 18-19.)  "[T]he standard by which a constructive

13   discharge is determined is an objective one—the question is 'whether a reasonable person faced

14   with the allegedly intolerable employer actions or conditions of employment would have no

15   reasonable alternative except to quit.' "  *Colores v. Bd. of Trs.*, 105 Cal. App. 4th 1293, 1305

16   (2003) (quoting *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1248 (1994)).  Furthermore,

17   "[i]n order to establish a constructive discharge, an employee must plead and prove, by the usual

18   preponderance of the evidence standard, that the employer either intentionally created or

19   knowingly permitted working conditions that were so intolerable or aggravated at the time of the

20   employee's resignation that a reasonable employer would realize that a reasonable person in the

21   employee's position would be compelled to resign."  *Id.* (quoting *Turner*, 7 Cal. 4th at 1248).

22   And, "[f]or purposes of this standard, the requisite knowledge or intent must exist on the part of

23   either the employer or those persons who effectively represent the employer, i.e., its officers,

24   directors, managing agents, or supervisory employees."  *Id.*

25        In support of his claim for constructive discharge, Plaintiff again alleges that he was

26   refused backup, that other deputies were retaliated against for supporting Plaintiff, that he was

27   treated disparately, and was issued writeups and investigations conducted in retaliation for his

28   complaints and refusal to participate in illegal conduct.  (*See* Pl.'s Opp'n at 18-19.)  As

1   described above, Plaintiff has failed to provide any evidence that he was threatened or actually

2   denied backup or that he was treated disparately.  Plaintiff has failed to show that others were

3   threatened or retaliated against for supporting Plaintiff.  Additionally, Plaintiff has not shown

4   that any of the investigations or disciplinary actions were retaliatory.

5       Plaintiff has thus failed to put forth any genuine issue of material fact that he was "faced

6   with the allegedly intolerable employer actions or conditions of employment" or that Defendants

7   intentionally permitted such alleged actions.  Therefore, the Court **FINDS** that Plaintiff has

8   failed to establish a claim for constructive discharge.

9       Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to

10  Plaintiff's claim of wrongful termination and retaliation in violation of California Labor Code

11  Section 1102.5 and public policy.[18]

12

13  **IV.    42 U.S.C. 1983 Claim**

14      Defendants also move for summary judgment on Plaintiff's Section 1983 claim as

15  inadequate as a matter of law.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 19.)  Plaintiff's

16  Complaint alleges that "County, under color of authority of statute, ordinance, regulation,

17  custom, usage and/or of the State, caused [Plaintiff] to be deprived of his rights, privileges and

18  immunities secured by the Constitution and other laws."  (FAC at 10.)  As Defendants correctly

19  point out, Plaintiff fails to specify in the Complaint which constitutional rights have been

20  violated.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 19; *see generally* FAC at 10-11.)  However,

21  in his Opposition, Plaintiff states that "he waives his claim that County violated his rights under

22  the 4th, 6th, 7th, 8th, and 13th [sic] amendments" and he now focuses on "County's violation of his

23

24

25

26      [18] Plaintiff's claim of retaliation in violation of public policy is also based on the Defendants'
    alleged violation of Section 1102.5 and the same factual allegations as the claim pursuant to Section
27  1102.5.  (*See* FAC at 8-10.)  Therefore, the Court **FINDS** that Plaintiff's public policy claim also fails to
    survive summary judgment.  *See Love*, 309 F.Supp.2d at 1135 (citing *Rivera v. Nat'l R.R. Passenger*
28  *Corp.*, 331 F.3d 1074, 1079-80 (9th Cir. 2003).  Additionally, Plaintiff's claim for retaliation in
    violation of Section 12940 is discussed above.

1st [sic] amendment rights to engage in free speech."[19]  (*See* Pl.'s Opp'n at 22.)  For the reasons

set forth below, the Court **GRANTS** Defendants' Motion for Summary Judgment as to

Plaintiff's Section 1983 claim for a First Amendment violation.

Generally, to state a claim under Section 1983 , "a plaintiff must allege the violation of a

right secured by the Constitution and laws of the United States, and must show that the alleged

deprivation was committed by a person acting under the color of state law." *West v. Atkins*, 487

U.S. 42, 47 (1988).  A municipality can be sued under Section 1983 for monetary, declaratory,

and injunctive relief if an official policy statement, ordinance, regulation, decision officially

adopted, or custom is responsible for the deprivation of a constitutional right.  *Monell v. Dep't of

Soc. Serv. of City of New York*, 436 U.S. 658, 690 (1978).  Municipalities are only liable for acts

it "officially sanctioned or ordered."  *City of St. Louis v. Praprotnik*, 485 U.S. 112, 123-24

(1988).  Moreover, a city cannot be held liable for constitutional torts committed by an employee

under the theory of respondeat superior.  *Monell*, 436 U.S. at 691.

The Supreme Court has concluded that decisions by subordinate employees do not

necessarily reflect official policy.  *Collins v. City of Harker Heights*, 503 U.S. 115, 122 (1992)

(citing *St. Louis v. Praprotnik*, 485 U.S. 112 (1988)).  Moreover, evidence of one incident of

unconstitutional activity is not sufficient to impose Section 1983 liability, *unless* there is proof

that the incident was caused by an unconstitutional municipal policy attributable to a municipal

policy maker. *City of Oklahoma City v. Tuttle*, 471 U.S. 808, 824 (1985) (emphasis added).  The

existence of an unconstitutional policy and its origin must be separately established and proven.

*Id.*  Additionally, the policy must be the "moving force" behind the constitutional violation.

*Monell*, 436 U.S. at 694; *Polk County v. Dodson*, 454 U.S. 312, 326 (1981).   In other words, to

establish liability under Section 1983 against the County, Plaintiff must show that (1) he was

---

[19] It is within the Court's discretion whether to treat new claims raised on summary judgment as a motion for leave to amend the pleadings, which under Federal Rule of Civil Procedure 15(a) shall be freely given when justice so requires. *See Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th 2000) (denying motion to amend complaints because permitting amendment would prejudice the defendant); Fed. R. Civ. Pro. 15(a) (2006).  Here, Defendants have had the opportunity to conduct discovery and adequately respond to Plaintiff's First Amendment claim.  Therefore, the Court will consider Plaintiff's Section 1983 claim for violation of Plaintiff's First Amendment rights only.

deprived of a constitutional right; (2) the County had a policy; (3) the policy "amounts to deliberate indifference" to Plaintiff's constitutional rights; and (4) the policy was the "moving force" behind the deprivation of Plaintiff's constitutional rights. *See Van Ort v. Estate of Stanewich*, 92 F.3d 831, 835 (9th Cir. 1996). Furthermore, in order "to establish a First Amendment Claim against a public employer [the employee must show that]: (1) The employee engaged in constitutionally protected speech, (2) the employer took adverse employment action against the employee, and (3) the employee's speech was a 'substantial or motivating' factor in the adverse action." *Freitag v. Ayers*, -- F.3d --, 2006 WL 3110975 at 11 (9th Cir. 2006) (citing *Coszalter v. City of Salem*, 320 F.3d 968, 973 (9th Cir. 2003)).

### A.    First Amendment Violation

In his Opposition, Plaintiff alleges that he engaged in a protected activity under the First Amendment by making "internal complaints on matters of public concern." (*See* Pl.'s Opp'n at 22.) Plaintiff further alleges that he "sounded the alert to police misconduct in covering up the crimes of friends and family." (*See* id.)

"When a citizen enters government service, the citizen by necessity must accept certain limitations on his or her freedom." *Garcetti v. Ceballos*, 126 S.Ct. 1951, 1958 (2006) (citing *Waters v. Churchill*, 511 U.S. 661, 671 (1994)). However, the Supreme Court has recognized that "a citizen who works for the government is nonetheless a citizen" and the "First Amendment limits the ability of a public employer to leverage the employment relationship to restrict, incidentally or intentionally, the liberties employees enjoy in their capacities as private citizens. *Id*. (citing *Perry v. Sindermann*, 408 U.S. 593, 597 (1972)). The underlying premise of public employee-speech jurisprudence has been that "while the First Amendment invests public employees with certain rights, it does not empower them to "constitutionalize the employee grievance." *Id*. at 1959 (citing *Connick v. Meyers*, 461 U.S. 138, 154 (1983)).

In *Garcetti*, the Supreme Court recently held that "when public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Id*. at 1960. The Supreme Court found that a deputy district attorney "did

04cv2459

1    not speak as a citizen by writing a memo that addressed the proper disposition of a pending

2    criminal case.  *Id.*  Accordingly, in the present case, the controlling factor is whether Plaintiff

3    made his statements pursuant to his duties as a deputy sheriff.  *See id.* at 1659-60; *see also*

4    *Freitag v. Ayers*, -- F.3d --, 2006 WL 3110975 at 13 (9th Cir. 2006) (remanding to district court

5    to determine whether making a complaint regarding prison conditions "all the way up to the

6    Director of [the California Department of Corrections] at the state capitol" is within the official

7    duties of a correctional officer).  However, whether an employee expressed her views inside the

8    office rather than publicly or whether the employees expression concerned the subject matter of

9    her employment is not dispositive.  *See Garcetti*, 126 S.Ct. at 1959.

10        Here, Plaintiff alleges that he made the following "internal complaints":  1) complaining

11   to Sgt. Tabarez regarding Sgt. King's inappropriate conduct and conflict of interest related to

12   prohibiting Plaintiff from charging Mr. Lackey; 2) informing the deputy district attorney about

13   Mr. Lackey's charges; 3) protesting how the investigation was handled by the district attorney in

14   Mr. Mohammed's case[20]; 4) protesting the handling of Mr. Bertussi's case and the false

15   accusations brought against Plaintiff[21]; and 5) complaining to Chief Deputy Sharon Housouer

16   regarding an alleged "code of silence" and a grievance against Sgt. Avila.  (*See* Pl.'s Opp'n at 22

17   (citing Tackett UMF ¶¶ 87, 89, 92, 116-17, 122-24, 138).)  Plaintiff argues that "[f]iling a

18   grievance and calling to attention his supervisors' illegal actions are not part of Plaintiff's

19   normal every day job duties."  (*See id.*)  Defendants counter that "[t]hese 'complaints' concern

20   matters that Plaintiff was required to perform such as charging suspects, submitted cases to the

21   District Attorney and investigating drug cases."  (*See* Defs.' Reply at 7.)

22        As in *Garcetti*, Plaintiff's internal grievances concerning the mishandling and

23   interference with cases do not constitute protected activity since he was not speaking as a citizen.

24   Plaintiff has additionally not set forth any evidence that such actions were not part of his job

25   description.  Furthermore, it is clear to the Court that a police officer is required to protest

26   improperly made investigations and inform district attorneys of charges against suspects.

27   ─────────────

28        [20] Plaintiff does not specify to whom the alleged protest was made.

         [21] Plaintiff does not specify to whom the alleged protest was made.

04cv2459

1   However, Defendants have not shown that deputies are required to air complaints about the

2   alleged "code of silence."  Additionally, the Court does find, as described above, that Plaintiff's

3   grievance against Sgt. Avila constitutes protected speech.  (*See* Ex. E.)

4          However, even assuming that Plaintiff's conduct was protected, Plaintiff has failed to put

5   forth evidence establishing a genuine issue of material fact as to whether "the employee's speech

6   was a 'substantial or motivating' factor in the adverse action."  *See Freitag*, -- F.3d --, 2006 WL

7   3110975 at 11 (9th Cir. 2006) .  As described above, Plaintiff has not set forth evidence showing

8   that Sgt. Avila or Sheriff Carter knew that Plaintiff had engaged in protected activity or specific

9   facts indicating a temporal connection.  Additionally, as described above, Defendants have

10  provided evidence that there were legitimate and nondiscriminatory reasons for imposing the

11  disciplinary action on Plaintiff.

12         Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to

13  Plaintiff's Section 1983 claim for a First Amendment violation.

14

15  **V.      Intentional Infliction of Emotional Distress**

16         Defendants also move for summary judgment on Plaintiff's claim that he was subject to

17  IIED.  (*See* Defs.' Mem. Supp. Mot. Summ. J. at 24-25.)  In order to establish a prima facie case

18  of IIED, a plaintiff must prove:  "(1) extreme and outrageous conduct by the defendant with the

19  intent to cause, or reckless disregard for the probability of causing, emotional distress; (2)

20  suffering of severe or extreme emotional distress by plaintiff; and (3) plaintiff's emotional

21  distress is actually and proximately the result of defendant's outrageous conduct."  *Conley v.*

22  *Roman Catholic Archbishop of San Francisco*, 85 Cal. App. 4th 1126, 1133 (2000).

23  Additionally, "[c]onduct to be outrageous must be so extreme as to exceed all bounds of that

24  usually tolerated in a civilized community."  *Id.*

25         Here, Plaintiff has failed to put forth any genuine issue of material fact that Defendants

26  acted with extreme or outrageous conduct with the intent to cause (or even reckless disregard for

27  the probability of causing) emotional distress.  In his Opposition, Plaintiff again alleges that he

28  was treated disparately as compared to his Latino peers and those willing to overlook illegalities;

04cv2459

that he "endured months of harassment, contrived discipline, and [second] guessing; that Defendants threatened not to and failed to provide backup; and that other deputies were asked to "give Tackett up." (*See* Pl.'s Opp'n at 24-25.)  However, as described above, Plaintiff has failed to provide any evidence to establish a genuine issue of material fact as to the allegations of discrimination, failure to provide backup, or retaliation.  Therefore, Plaintiff has failed to set forth a prima facie case of IIED.

Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment as to Plaintiff's claim of IIED.

### *Conclusion*

For the reasons set forth above, the Court **GRANTS** Defendants' Motion for Summary Judgment as to all of Plaintiff's claims.

**IT IS SO ORDERED.**

DATED:  November 14, 2006

_____
HON. NAPOLEON A. JONES, JR.
United States District Judge

cc: Magistrate Judge Lewis
    All Counsel of Record

37

04cv2459